# Exhibit A

Exhibit A

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and | : | IN THE COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA |
| ALAN CHRISTOPHER REDMOND, | : | CIVIL DIVISION |
| Plaintiffs | : | |
| vs. | : | NO.: 14-17117 |
| | : | |
| JASON SCOTT JORDAN, | : | |
| Defendant | : | Assigned to: Timothy J. Rowley, J. |

## DECISION AND VERDICT

Introduction

1.      As will be clear, the Court accepted nearly all of Defendant Jason Scott Jordan's Corrected Proposed Findings of Facts.  Before doing so, the Court reviewed the listed Findings of Facts and where appropriate, double checked the citations to the trial transcript for accuracy and reviewed my copious notes taken during the trial.

2.      The Court, throughout much of the Facts Established referred to Defendant Jason Scott Jordan as "Jordan" and Plaintiff Alan Christopher Redman as "Redmond".

3.      References to Exhibits identified as Plaintiff's Exhibits were so marked as the trial consisted solely of the claims of Jordan as a Counter Claim Plaintiff.

Facts Established

4.      National Brokers of America, Inc. ("NBOA") became incorporated in February of 2013, and Redmond operated NBOA as an insurance sales call center.

5.      Because NBOA was not profitable at that time, and because Jordan had approximately 13 years' experience in sales, closing deals, and setting up and managing insurance call centers, Redmond induced Jordan to leave his family in Florida and moved

1

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

to Pennsylvania to set up and run the NBOA call center in July 2013.

6. By written employment agreement dated July 31, 2013 (the "Employment Agreement") which was marked as Plaintiff's Exhibit 1, Jordan was hired as an employee of NBOA.

7. Plaintiff's Exhibit 1 was drafted by NBOA's attorney and requires that modifications be in writing.

8. At the time Jordan was hired as an employee of NBOA in July 2013, Redmond was the sole owner of NBOA and NBOA was on the brink of financially failing.

9. Between July 31, 2013 and October 31, 2013, NBOA paid Jordan $23,778.00 less than the sum that was due under the Employment Agreement and such sum is itemized accurately within Plaintiff's Exhibit 17.

10. When NBOA was unable to pay Jordan what he was owed under the Employment Agreement, Redmond offered 50% of the NBOA stock to Jordan as non-voting stock and Jordan declined such offer as it left Redmond as a voting shareholder and Jordan would have been non-voting.

11. As of November 1, 2013, Redmond and Jordan became 50/50 shareholders of NBOA each having exactly 1 voting stock and those two stocks being all of the stock that were issued. Plaintiffs Exhibit 2-B, 3, 4, and 5 memorialize this and the signatures on these documents are those of Redmond and Jordan respectively.

12. Redmond confirmed Jordan's 50% ownership of NBOA in directing the accountant to list Redmond and Jordan as 50/50 owners of NBOA stock in the 2013 tax returns.

13. At no time after November 1, 2013 did Jordan resign his employment or

2

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

management or ownership of NBOA.

14.     As of November 25, 2013, Jordan and Redmond were the only Directors and Shareholders of NBOA. See Plaintiff's Ex 3.

15.     Plaintiff's Exhibit 6 is the governing Amended and Restated Bylaws of NBOA.

16.     The Shareholder's Agreement dated November 1, 2013 (the "Shareholder's Agreement") found at Plaintiff's Exhibit 2-B has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

17.     The Amended and Restated Bylaws of NBOA at (the "Bylaws") found at Plaintiff's Exhibit 6 has not been amended or superseded and was in effect at all times relevant to the dispute in this case.

18.     Section 2.07 of the Bylaws required a majority of the votes to take action and thus consent of both Redmond and Jordan was required to take action under the Bylaws.

19.     Although Section 3.04 of the Bylaws required notice of any special meeting of the Directors, Redmond never gave Jordan notice of a special meeting of the Directors to discuss Redmond's plan to freeze Jordan out of NBOA.

20.     JORDAN WAS NEVER REMOVED AS A FIFTY PERCENT SHAREHOLDER AND AS A DIRECTOR OF NBOA.

21.     From November 2013 until August 4, 2014, Redmond and Jordan took equal pay, took equal distributions, acted at all times as having equal authority in the management of NBOA. They were the only shareholders, and were the only directors.

22.     From November 2013 until August 4, 2014 Redmond and Jordan were the

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

only two officers and they intended to each have equal authority despite having different titles as officers. See Plaintiff's Exhibit 31.

23.    From November 2013 until August 4, 2014 Redmond and Jordan agreed that Redmond would have primarily responsibility for the corporate finances and Jordan would have primary responsibility for the operations of NBOA.

24.    Although NBOA was in a very poor financial condition prior to November 2013, from such time until August 4, 2014, NBOA became very profitable.

25.    NBOA's gross sales in 2013 were approximately $365,000 and in 2014 they increased to over four million.

26.    This new profitability of NBOA in 2014 was due to Jordan's contributions.

27.    From January 2014 until August 4, 2014, NBOA went from doing one health insurance sale per day to 1,000 per month.

28.    On August 4, 2014, Redmond changed the locks on the NBOA place of business without giving Jordan a key and posed an armed guard at the NBOA place of business so that Jordan could not enter (the "Freeze Out").  Further, on such date and continuing through the present, Redmond has (1) prevented Jordan from participating in the operations and management of NBOA, (2) refused to provide Jordan with any financial or management information of NBOA excepting litigation discovery, (3) kept earnings, profits, and distributions solely for himself without sharing any with Jordan, (4) publicly claimed to be a 100% owner of NBOA, and (5) treated Jordan in all respects as a total stranger to NBOA and not a Director or Shareholder of NBOA.

29.    In short, on August 4, 2014, Redmond froze Jordan out of NBOA (the "Freeze Out") and such Freeze Out continues through the present.

4

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

30. Prior to the Freeze Out both Jordan and Redmond had access to NBOA's bank accounts.

31. Prior to the Freeze Out Jordan and Redmond took equal dividends from NBOA.

32. Prior to the Freeze Out Redmond stated to NBOA employees that Jordan "is the best at what he does." Plaintiff's Exhibit 30.

33. The reason that Redmond wrongfully Froze Out Jordan was because Redmond decided NBOA was finally making money and Redmond didn't need Jordan any longer as the call center was set up and running. Plaintiff' Exhibit 41 at p.3

34. Prior to the Freeze Out, Redmond had offered investors one percent on nonvoting stock of NBOA for the sum of $250,000.

35. After the Freeze Out, Redmond sold Ron Pack (Plan Z, LLC) 4% of NBOA's stock for $250,000. Plaintiff's Exhibit 34

36. Following Redmond's Freeze Out of Jordan in 2014, he took $250,000 from Plan Z, LLC in 2015 in exchange for 4% of NBOA's stock and then Redmond did to Plan Z, LLC essentially the same thing he did to Jordan—i.e., he suddenly claimed that Plan Z, LLC was not a stockholder, he used C. Malcolm Smith to file tax returns that Redmond and Smith knew were incorrect, and he kept all of the investment for himself without ever buying out or repaying Plan Z, LLC.

37. C. Malcolm Smith was not a credible witness. He provided no credible testimony in support of Redmond. In many cases his own written correspondence contradicted his testimony.

38. Redmond failed to give Jordan notice of any shareholders meetings

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

following the Freeze Out and the same was in violation of the Bylaws.

39.    Since the Freeze Out Redmond had continuously prevented Jordan from any involvement as a Director of NBOA and had failed to share NBOA's financial information with Jordan.

40.    Since the Freeze Out Redmond has completely failed to keep or produce any corporate documents for NBOA.

41.    Redmond's timing of the Freeze Out was just as the open enrollment period for the health insurance marketplaces selling newly mandated health insurance by the government under the Affordable Care Act were starting and Redmond and Jordan both knew that this would be a financial benefit to NBOA due to huge numbers of people that would be in the market to purchase health insurance.

**42.    \* Regarding the Shareholders' Agreement (Plaintiff's Exhibit 2 B): At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:**

> a.  **consent of Jordan for transfer of Jordan's 1 voting stock under Section 1.2;**
>
> b.  **actual authority to terminate Jordan's employment or management of NBOA under Section 1.3;**
>
> c.  **event requiring mandatory repurchase of Jordan's Stock under 1.3 or 1.4;**
>
> d.  **event of a sale triggering valuation under Section 2.1; or**

\*Paragraphs 42, 43 and 44 are in bold print to highlight the Court's finding that these proven facts are the key to this decision.

6

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

e. event terminating the Shareholders' Agreement under Section 2.6 before the 2019 Bankruptcy of NBOA filed by Redmond.

43.   Jordan never surrendered to the NBOA his certificate for NBOA stock under Section 2.6 of the Shareholders' Agreement.

44.   Regarding the Amended Bylaws: At trial Redmond failed to present any evidence that immediately leading up to or after the Freeze Out there was any:

a. quorum of the shareholders required under Section 2.03 or 3.08 for any NBOA business;

b. written notice of a meeting required under Section 2.04 or 2.05;

c. removal of Jordan as a Director under Section 3.02;

d. regular or special meeting of the Board under Section 3.06, or 2.07;

e. consent to informal action by Jordan under Section 3.09;

f. removal of Jordan as a Director under Section 3.14;

g. resignation of Jordan as an officer under Section 4.02;

h. election of a successor to Jordan as an officer under Section 4.05

i. keeping of proceedings of the shareholders and of the Directors as required by Section 7.01;

j. transfer of Jordan's shares made on the books of NBOA as would have been required under Section 8.02 if any transfer took place;

k. proper authority under Section 8.03 for Redmond's payment to himself of dividend or distribution;

l. written notice given to Jordan as required under Section 9.03;

m. consent by Jordan of informal action by Shareholders under Section

7

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

**9.06.**

45.    At all times following the August 4, 2014 Freeze Out, Redmond violated Section 8.05 of the Amended Bylaws in paying dividends of NBOA to himself only and not to Jordan.

46.    At all times following the August 4, 2014 Freeze Out, Redmond violated Section 9.08 of the Amended Bylaws in not furnishing to Jordan annual financial statements of NBOA.

47.    Jordan gave notice of his dissent of Redmond's Freeze Out actions by filing a Counterclaim against Redmond on December 11, 2014 (see Paragraph 109).

48.    The Shareholders Agreement and Amended Bylaws do not vary the applicable law which affords redress in this situation — i.e., Redmond acting *ultra vires* to freeze Jordan out of NBOA and keep all benefits of NBOA solely for himself.

49.    The NBOA tax returns from 2013-2017 (Plaintiff's Exhibits 9-13) were prepared by accountant, C. Malcolm Smith, with information provided by Redmond.

50.    Redmond knowingly and intentionally lied to C. Malcolm Smith to induce the materially false statement on the 2014-2017 NBOA returns that Redmond was the owner of 100% of the NBOA shares.

51.    Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,907.27 at Neiman Marcus) directly from the NBOA financial account and the same are recorded on the NBOA General Ledger (Plaintiff's Exhibits 12-16) and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 ("Redmond's Personal Expenses") and are in addition to funds taken by Redmond as reported on the NBOA tax returns.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

52.     Redmond provided no documents at trial to support a finding that Redmond's Personal Expenses were claimed by Redmond as income on his personal tax returns and thus this Court finds that the $604,126.45 taken from NBOA for Redmond's Personal Expenses was taken by Redmond in addition to all other funds taken by Redmond as documented on Redmond's personal tax returns.

53.     Much of the testimony by Redmond's accountant, C. Malcolm Smith, was not found to be credible as it was serving only to Redmond's interest and not supported by documents that, if they existed, would certainly have been in the possession of C. Malcolm Smith, and or Redmond's counsel and would have been presented by Redmond at trial.

54.     Testimony by Redmond's accountant, C. Malcolm Smith, that Redmond's Personal Expenses were somehow subsumed within Redmond's claimed capital gains income was not credible when year after year from 2014 through 2017 he permitted Redmond to continue to run all of Redmond's personal expenses through the NBOA books without changing or stopping this clearly improper conduct and with no documentation from C. Malcolm Smith to support such assertion.

55.     Following the Freeze Out, Redmond took $116,738.60 in cash from NBOA. Plaintiff's Exhibit 20.

56.     Redmond provided no evidence to suggest that the $116,738.60 in cash taken by Redmond from NBOA accounts from the time of the Freeze Out through 2/2/2018 was anything other than cash misappropriated by Redmond from NBOA that was not reported on any tax return and thus it is found that such funds were knowingly, wrongfully taken by Redmond from NBOA in addition to funds reported on tax returns.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

57.     Following the Freeze Out, Redmond wired the sum of $56,000 paid by wire to Redmond's mother, Maria Redmond.

58.     Redmond provided no evidence to suggest that the $56,000 paid to Redmond's mother from the time of the Freeze Out through 7/24/2017 was for any legitimate business purpose for value received, and thus it is found that such funds are deemed as knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

59.     Redmond provided no evidence of any legitimate business purpose for value received justifying the $361,782.72 paid by Redmond from NBOA's funds to another of Redmond's companies in which he is a 96% owner, Bene Market, LLC  and thus it is found that such funds are knowingly misappropriated by Redmond from NBOA and are in addition to funds reported on tax returns.

60.     Following the Freeze Out, in 2017 and 2018 Redmond misappropriated NBOA's book of residual business to his new company, Bene Market, LLC at a discounted rate and without the consent of Jordan and such transfer produced the shutting down of NBOA in 2018.

61.     As a result of Redmond's misappropriation of NBOA's valuable book of business to Bene Market, LLC in 2017, the latter's gross receipts went from $764,545 in 2016 to $17,295,549 in 2017. See Plaintiff's Exhibits 43 and 44.

62.     Public advertisements of NBOA and Bene Markets, LLC as a single business entity were done by or at the direction of or with Redmond's knowledge. See Plaintiff's Exhibits 24, 25, and 26.

63.     From August 11, 2014 through February 6, 2018, Redmond, without

10

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

Jordan's authorization, spent $270,945.05 from NBOA funds on lawyers in the instant action. See Plaintiff's Exhibit 27.

64.    Despite the Court expressly informing Redmond's counsel that evidence should be provided to confirm that no portions of these legal fees were related to the instant action and despite having every opportunity to do so at trial where documents, if any, would certainly be in Redmond's possession, Redmond failed to present any evidence showing what portion of the $270,945.05 was unrelated to the instant matter. .

65.    Redmond had no authority to spend $270,945.05 on legal fees and he personally derived a benefit from the use of the same in his defense in this case and thus the sum of $270,945.05 is properly considered to be misappropriated from NBOA by Redmond and is in addition to aforementioned funds misappropriated by Redmond as reported on the tax returns.

66.    Exhibit 28 is an accurate accounting of money misappropriated from NBOA by Redmond since the August 4, 2014 Freeze Out of Jordan, showing the amount of $3,065,899.33 (which sum does not include either the $270,945.05 in unauthorized attorneys' fees or the sum of $361,782.72 misappropriated by Redmond to Bene Market, LLC). Thus, the total known sum that Redmond misappropriated from NBOA following the Freeze Out is $3,698,627.10.

67.    Redmond's personal assets included four companies in Ireland as of 2015 (Plaintiff's Exhibit 41).

68.    Because of Redmond's refusal to comply with the Court's Orders to appear at a deposition, at which time he would have been deposed regarding his personal assets as relevant to the issue of punitive damages, by Order dated August 31, 2021, Redmond

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

was precluded from testifying at trial.

69.     Aside from the filing of tax returns (which contained material misstatements of fact regarding ownership) Redmond failed to observe any corporate formalities of NBOA following the Freeze Out.

70.     Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interest and rights as between Redmond and Jordan. Plaintiff's Exhibit 42 at 54-63.

71.     Redmond caused NBOA to file for Chapter 7 Bankruptcy in May 2019. (Plaintiff's Exhibit 42 at 10:23).

72.     Redmond failed to provide any explanation for the $764,164 "Administrative Fee" claimed on the Bene Market, LLC 2016 tax return and thus pursuant to the accompanying K-1 for Redmond, $733,963 is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 43.

73.     Redmond took $2,842,276 from Bene Market, LLC in 2017 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 45.

74.     Redmond took $1,294,182 from Bene Market, LLC in 2018 as "Guaranteed

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 46.

75.    Redmond took $3,125,623 from Bene Market, LLC in 2019 as "Guaranteed payments" and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 47.

76.    Redmond took $3,801,821 from Bene Market, LLC in 2020 as W-2 wages and thus this sum is properly attributed as income misappropriated by Redmond from an NBOA asset without Jordan's consent in addition to the sum shown on the NBOA tax returns.  See Plaintiff's Exhibit 48.

77.    In summary, in addition to the $3,698,627.10 that he took directly from NOBA Redmond also took from Bene Market, LLC at least the following sums:

   a. 2016: $733,963

   b. 2017: $2,842,276

   c. 2018: $1,294,182

   d. 2019: $3,125,623

   e. 2020: $3,801,821

   Total taken by Redmond from Bene Market, LLC through 2020: **$11,797,865**

78.    Thus, the sum of money that Redmond misappropriated from NBOA and Bene Market, LLC, and did not share with Jordan, equals **$15,496,492**.

79.    While Redmond did not disclose the general ledger for Bene Market, LLC, the tax returns contain indicia that Redmond continues running his personal spending

13

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

through Bene Market, LLC and characterizing the same as business expenses. See Plaintiff's Exhibits 43-48 showing $80,969 for 2017 travel, $71,392 for 2018 travel, and $34,386 for 2019 travel with no testimony that insurance sales require any travel.

80.     Despite the fact that Redmond verified in the Pleadings that Jordan did all sorts of bad acts that he claimed in the Pleadings may have justified Redmond's Freeze Out of Jordan, Redmond failed to provide any witness or any evidence at trial to testify to any of the alleged bad Acts.   Thus, the net effect was that Redmond relied on his unproven pleadings and by serially filing bankruptcy on the eve of trial to create the seven year pendency of this litigation so that he could hold Jordan at arm's length while he drained NBOA's coffers and then moved all assets over to Bene, Market, LLC.

81.     As a result of Redmond's conduct, Jordan has suffered personally and professionally (including being forced to relocate out of state) and the expense over more than seven years in seeking to protect his interests in this matter.

The Court enters the following Verdict:

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

NATIONAL BROKERS OF AMERICA,   :   IN THE COURT OF COMMON PLEAS
INC., and   :   BERKS COUNTY, PENNSYLVANIA
ALAN CHRISTOPHER REDMOND,   :   CIVIL ACTION - LAW
        Plaintiffs,   :   No. 14-17117
           :
        v.   :
           :
JASON SCOTT JORDAN,   :
        Defendant   :   Assigned to Judge Timothy J. Rowley

---

## VERDICT SLIP

The Court finds in favor of Defendant, Jason Scott Jordan and against Plaintiff, Alan Christopher Redmond.

(1)    Compensatory damages including pre-judgment interest in the amount of $8,105,197.20.

(2)    Punitive/exemplary damages in the amount of $5,000,000.00.

(3)    Total damage award $13,105,197.20

BY THE COURT:

TIMOTHY J. ROWLEY, J.

Received County of Berks Prothonotary's Office on 12/20/2021 9:24 AM Docket No. 14-17117

# Exhibit B

Exhibit B

**Judge:** Madelyn S. Fudeman, J.                    **Filed:** 08/08/2014
**SubType:** Summons

**Attorney(s)**

**NATIONAL BROKERS OF AMERICA INC**

Valz, Norman M

Deming, Osmer S

*** VS ***

**JORDAN, JASON SCOTT**

Lewis, Benjamin J

Mayle, Dominic

Ready, Joel A

| Date | Summary |
|---|---|
| 08/08/2014 | Tort Other: Trespass - writ issued to Atty |
| 08/08/2014 | Certificate of Addresses |
| 08/08/2014 | Pltf's Emergency Motion/Petition for Preliminary Injunction w/Prop Order |
| 08/11/2014 | Order Denying Pltf's Emergency Motion/Petition for Preliminary Injunction |
| 08/11/2014 | Notice and copies issued to all parties 8/12/14 |
| 08/13/2014 | Order of 8/8/14 Deft is barred from entering property at 2525 N 12th Street, Reading, PA 19605 and shall remain 1,000 yards away from same. Order may be enforced by Sheriff of Berks County, Reading Police Dept and any law enforcement agency empowered to do so. |
| 10/26/2014 | Appearance of William R. A. Rush, Esquire as counsel for Pltf w/Svc |
| 10/28/2014 | Complaint-$750,000.00 plus... |
| 11/25/2014 | Praecipe to Enter Appearance of David W Crossett, Esq for Defendant Jordan |
| 11/25/2014 | Certificate of Service of Deft's Praecipe to Enter Appearance |
| 12/11/2014 | Deft's Answer with New Matter/Counterclaim to Complaint |
| 12/11/2014 | Exhibits/Records |
| 12/11/2014 | Proposed Order Re: Petition |
| 12/11/2014 | Deft's Motion/Petition for Order Appointing a Neutral Third-Party Appraiser |
| 12/11/2014 | Proposed Order(Rule) |
| 12/11/2014 | Proposed Order Re: Petition for Order & Responses |
| 12/11/2014 | Motion/Petition for Order Directing Indemnification of Deft |
| 12/11/2014 | Proposed Order(Rule) |
| 12/11/2014 | Certificate of Addresses |
| 12/11/2014 | Stipulation to Add Alan Christopher Redmond as Party Pltf |
| 12/11/2014 | Certificate of Service of Answer, Stipulation, Petitions, prop Orders & Srvc upon Counsel for Pltfs by Reg Mail on 12/11/14 |
| 12/15/2014 | No Sheriff's Service of Civil Complaint upon Deft Jason Scott Jordan by Deputizing the Chester County Sheriff |
| 12/15/2014 | Rule Returnable Order of 12/12/14 issuing rule upon National Brokers of America Inc to show cause in 30 days RE: Petition for Order Directing Immediate Indemnification of Jason Scott Jordan and Petition for Order Appointing a Neutral Third Party Appraiser.  Arg 2/25/15.  Notice of entry of this Order shall be provided to all parties by moving party |
| 01/06/2015 | Pltf's Reply to Deft's New Matter/Crossclaim and New Matter to Deft's Counterclaim |
| 01/06/2015 | Pltf's Reply to Deft's Pet for Order Appointing a Neutral Third Party Appraiser under 15 PA CSA 1579 |
| 01/06/2015 | Pltf's Reply to Deft's Pet for Order Directing Immediate Indemnification of Deft |
| 01/20/2015 | Deft's Answer/Reply/Response to New Matter of Pltf |

| | |
|---|---|
| 01/20/2015 | Certificate of Service of Answer upon Counsel for Pltfs on 1/20/15 by Reg Mail |
| 01/28/2015 | Deft's Motion/Petition to Compel Pltfs' Response to Deft's Interrogatories and Request for Production of Documents |
| 01/28/2015 | Proposed Order |
| 01/28/2015 | Proposed Rule Returnable Order |
| 01/28/2015 | Certificate of Addresses |
| 01/28/2015 | Certificate of Service of Deft's Petition to Compel Pltf's Response to Deft's Interrogatories & Request for Prodcution of Docs, Prop Order, Prop Rule to Show Cause, Cert of Addresses & Cert of Svc upon William Rush, Esquire on 1/28/15 by regular mail |
| 02/03/2015 | Order of 2/2/15 Granting Deft's Motion to Compel |
| 02/03/2015 | Notice and copies issued to all parties 2/4/15 |
| 02/20/2015 | Deft's Petition for Sanctions against Pltfs for Pltfs' Willful Failure to Comply with Court Order dated 2/2/15 |
| 02/20/2015 | Proposed Order |
| 02/20/2015 | Proposed Order/Rule |
| 02/20/2015 | Certificate of Addresses |
| 02/20/2015 | Certificate of Service of Deft's Pet for Sanctions, Prop Orders, Cert of Address and Svc |
| 02/24/2015 | Rule Returnable Order of 2/24/15 to Show Cause Argument to be held on 2/25/15 @1:30pm |
| 02/27/2015 | Order of 2/26/15 Denying Pet for Immediate Indemnification of Jason Scott Jordan, the Pet to appoint a neutral third party appraiser is Grantin and the Pet for sanctions against the Pltf is Denied |
| 02/27/2015 | Notice and copies issued to all parties 3/2/15 |
| 03/26/2015 | Deft's Motion for Partial Summary Judgment dismissing Count II of Pltfs' Complaint |
| 03/26/2015 | Memorandum |
| 03/26/2015 | Proposed Order re: Partial Summary Judgment |
| 03/26/2015 | Deft's Petition for Reconsideration of Immediate Indemnification of Deft |
| 03/26/2015 | Proposed Order re: pet for reconsideration |
| 03/26/2015 | Certificate of Service of mtn for partial summary, pet for reconsideration, prop orders and svc |
| 03/26/2015 | Certificate of Addresses |
| 04/08/2015 | Order of 4/8/15 Denying Deft's Petition for Reconsideration of Immediate Indemnification of Deft |
| 04/08/2015 | Notice and copies issued to all parties 4/9/15 |
| 04/09/2015 | Stipulation |
| 04/09/2015 | Proposed Scheduling Order of |
| 04/09/2015 | Certificate of Service |
| 04/09/2015 | Certificate of Addresses |
| 04/13/2015 | Scheduling Order of 4/13/15; Pre-Trial Settlement Conference scheduled for 10/14/14 @ 1:30pm |
| 04/13/2015 | Notice and copies issued to all parties 4/13/15 |
| 04/17/2015 | Pltfs' Reply to Deft's Motion for Partial Summary Judgment Dismissing Count II of Pltfs' Complaint |
| 04/27/2015 | Pltf's Motion/Petition for/to Quash Discovery and Subpoena w/Prop Order |
| 04/27/2015 | Proposed Order re: Petition to Quash Discovery and Subpoena |
| 04/27/2015 | Certificate of Service of Petition to Quash Discovery and Subpoenas |
| 04/30/2015 | Order of 4/30/15 Granting Petition to Quash Discovery and Subpoena |
| 04/30/2015 | Notice and copies issued to all parties 4/30/15 |
| 05/04/2015 | Service of Praecipe for Argument and Brief |

| | |
|---|---|
| 05/04/2015 | Deft's Praecipe for Argument on 6/15/15 Re: Deft's Motion for Partial Summary Judgment Dismissing Count II of Pltfs Complaint |
| 06/11/2015 | Pltf's Memorandum/Brief Re: Deft's Motion for Partial Summary Judgment Dismissing Count II of Pltf's Complaint |
| 06/24/2015 | Order of 6/23/15 re: Argument - Deft's Mtn for Partial Summary Judgment is denied |
| 06/24/2015 | Notice and copies issued to all parties 6/25/15 |
| 07/30/2015 | Pltf's Motion/Petition to Strike Objections & Compel Deft to Answer Discovery of Pltf |
| 07/30/2015 | Proposed Order Re: Motion |
| 07/30/2015 | Exhibits/Records |
| 07/30/2015 | Exhibits/Records |
| 07/30/2015 | Exhibits/Records |
| 07/30/2015 | Exhibits/Records |
| 07/30/2015 | Pltf's Motion/Petition for/to Revoke Stipulation and Vacate Scheduling Order w/Svc, Prop Rule |
| 07/30/2015 | Proposed Order |
| 07/30/2015 | Exhibits/Records |
| 07/30/2015 | Exhibits/Records |
| 08/03/2015 | Order of 8/3/15 Granting Pltf's Motion to Strike Objections & Compel Deft to Answer Discovery of Pltf |
| 08/03/2015 | Notice and copies issued to all parties 8/5/15 |
| 08/12/2015 | Appearance of Osmer S. Deming, Esquire and Deming Law Office as co-counsel with William Rush, Esquire and Rush Law Group, LLC behalf Plaintiffs |
| 08/12/2015 | Certificate of Service of Entry of Appearance |
| 08/13/2015 | Rule Returnable Order of 8/11/15 sched arg for 9/16/15 on Pltfs' Mtn to Revoke Stip and Vacate Scheduling Order |
| 08/13/2015 | Notice and copies issued to all parties 8/14/15 |
| 09/27/2015 | Stipulation requesting Scheduling Order |
| 09/27/2015 | Proposed Scheduling Order |
| 10/08/2015 | Stipulation Requesting Amended Scheudling Order |
| 10/08/2015 | Proposed Amended Scheduling Order of Sipulation Req Amended Schedulingt Order |
| 10/19/2015 | Amended Scheduling Order of 10/15/15.  Pretrial Settlement Conference scheduled for 3/16/16.  Copies and notice sent 10/19/15. |
| 01/19/2016 | Order of 1/14/16 upon Consideration of Pltf's Extending Deadline for Discovery & Answer - It is Ordered that Paragraph "1" of Court's Order dated 10/15/15 is Modified to Read: The discovery deadlines are suspended until further Order of the Court. Additionally, the parties shall identify and exchange curriculum vitae for all expert witnesses and any reports and /or responses to expert witnesses' discovery no later than February 15, 2016. Remainder of Said Order shall remain Unmodified. Notice & Copies sent on 1/19/16 |
| 02/15/2016 | Pltf's Motion/Petition for Summary Judgment as to Count I of Deft's Counterclaim on 2/15/16 |
| 02/15/2016 | Proposed Order Re: Motion |
| 02/15/2016 | Certificate of Service of Motion upon Counsel for Deft by Reg Mail on |
| 02/15/2016 | Certificate of Addresses |
| 02/15/2016 | Exhibits/Records A |
| 02/18/2016 | Order of 2/17/16, scheduling Argument for 3/21/16 re: Pltf's Motion for Partial Summary Judgment.  Copy and notice sent 2/18/16. |
| 03/01/2016 | Deft's PreTrial Memorandum |
| 03/01/2016 | Certificate of Service of Deft's PreTrial Memorandum |
| 03/02/2016 | Proposed Order Re: Joint Motion of All Parties to Compel the PA Dept of Insurance to Comply w/Subpoena Requesting Documentation |

| | |
|---|---|
| 03/02/2016 | Exhibits/Records |
| 03/07/2016 | Order of 3/3/16 Granting Joint Motions of Pltfs & Defts to Compel Compliance. PA Dept of Insurance is Ordered to provide Pltfs' Counsel with Materials Requested in Subpoenas of 2/1/16 within 10 days. Notice & Copy sent on 3/7/16 |
| 03/14/2016 | Brief in Support of Pltfs' Motion for Partial Summary Judgment as to Count I of Deft's Counterclaim |
| 03/14/2016 | Certificate of Service of Brief in Support of Pltf's Motioin for Partial Summary Judgment as to Deft's Counterclaim I |
| 03/14/2016 | Deft's Memorandum of Law in Opposition to Pltfs' Mtn for Partial Summary Judgment as to Count I of Deft's Counterclaim |
| 03/14/2016 | Exhibits A-C |
| 03/14/2016 | Certificate of Service of Deft's Memorandum of Law in Opposition to Pltfs' Mtn for Partial Summary Judgment as to Count I of Deft's Counterclaim |
| 03/23/2016 | Order of 3/218/16 Cancelling Pre-Trial Conference for 3/16/16. Counsel may request a Pre-Trial Conference when appropriate by written Request to the Undersigned. Notice & Copy sent on 3/23/16 |
| 04/06/2016 | Order of 4/5/16 DENYING Pltf's Motion for Partial Summary Judgment as to Count I of Deft's Counterclaim & Opposition thereto. Notice & Copy sent on 4/6/16 |
| 04/26/2016 | Pltfs' Motion/Petition to Stay Proceedings Pending Outcome of Dept of Insurance Investigation |
| 04/26/2016 | Exhibits/Records |
| 04/26/2016 | Exhibits/Records |
| 04/26/2016 | Exhibits/Records |
| 04/26/2016 | Exhibits/Records |
| 04/26/2016 | Exhibits/Records |
| 04/27/2016 | Pltf's Proposed Order Re: Motion to Stay Proceedings Pending Investigation Outcome |
| 05/03/2016 | Order of 5/2/16 Granting Pltfs' Motion to Stay Pending Outcome of Dept of Insurance Investigation. All Proceedings are Stayed pending a final Outcome and Assessment of final penalties. Notice & Copy sent on 5/3/16 |
| 05/27/2016 | Deft's Answer to Pltf's Motion to Stay Proceedings pending Outcome of Department of Insurance Investigation |
| 05/27/2016 | Petition by Jason Scott Jordan for Argument to Stay Proceedings pending Outcome of Department of Insurance Investigation |
| 05/27/2016 | Certificate of Service of Deft's Answer to Pltfs' Motion to Stay Proceeding, Deft's Petition for Argument and Reconsideration of Pltfs' Motion to Stay Proceedings |
| 05/27/2016 | Exhibits/Records |
| 05/27/2016 | Proposed Order re: Deft's Petition for Argument and Reconsideration of Pltfs' Motion to Stay Proceedings |
| 05/27/2016 | Proposed Order |
| 06/02/2016 | Order of 5/31/16, scheduling Argument for 6/15/16 re: Defts' Petition for Argument and Reconsideration of Pltfs' Motion to Stay Proceedings.  Copy and notice sent 6/2/16. |
| 06/20/2016 | Order of 6/17/16 Stay of Proceedings is extended ninety (90) days from the date of this Order - There will be no further extensions. Discovery is permitted while the stay is in effect. Either party may certify this matter for arbitration or trial at the conclusion of the 90 day stay. Copy and notice sent 6/21/16. |
| 08/31/2016 | Deft's Motion to Comepl Pltfs' to Answer Deft's Second Supplementary Interrogatories and Second Supplementary Requests for Production of Documents |
| 08/31/2016 | Memorandum/Brief |
| 08/31/2016 | Proposed Order re: Motion to Compel |
| 08/31/2016 | Certificate of Service of Deft's Motion to Compel Brief in Support, Prop Orders and Cert of Svc |
| 09/01/2016 | Rule Returnable Order of 8/31/16, Rule issued upon Respondent - re: Motion to Compel Pltfs to answer Deft's Second Supplementary Interrogatories and Second Supplementary Requests for Production of Documents for 9/16/16 before discovery master.  Copy and notice sent 9/2/16. |
| 09/27/2016 | Discovery Master Recommendation and Order of 9/26/16.  Copy and notice sent 9/27/16. |
| 09/29/2016 | Proposed Order regarding Trial Certificate |
| 10/04/2016 | Order of 10/3/16, Approving Trial Certificate.  Jury Trial Demanded.  Copy and notice sent 10/4/16. |

| | |
|---|---|
| 10/13/2016 | Order of 10/12/16, Scheduling PreTrial on 11/30/16.  Copy and notice sent 10/14/16. |
| 10/24/2016 | Appearance of Adam J Tragone Esq for Pltfs w/ Cert of Service |
| 10/26/2016 | Motion for Reconsideration of this Honorable Court's Order of 9/27/16 and for Protective Order |
| 10/26/2016 | Proposed Order re: Resconsideration & Protective Order |
| 10/26/2016 | Proposed Rule |
| 10/26/2016 | Certificate of Service of Motion for Reconsideration and Protective Order |
| 10/26/2016 | Exhibits/Records |
| 10/26/2016 | Exhibits/Records |
| 10/26/2016 | Exhibits/Records |
| 10/28/2016 | Rule Returnable Order of 10/27/16, Rule issued upon Respondents to answer within 30 days - re: motion for reconsideration and protective order.  Arg 11/30/16.  Copy and notice sent 10/28/16. |
| 11/10/2016 | Petition to Allow Deft to Participate in Pretrial Settlement Conference by Phone |
| 11/10/2016 | Proposed Order |
| 11/10/2016 | Certificate of Service |
| 11/10/2016 | Pltfs' Reply to Deft's Petition to Allow Deft to Participate in Pretrial Settlement Conference by Phone |
| 11/15/2016 | Order of 11/14/16, Court's Order of 10/12/16 is amended to allow Deft to participate in the Pretrial Settlement Conference on 11/30/16 by phone, if necessary.  Deft is represented by counsel.  If input from Deft is needed the Court will permit counsel to call and speak to client. |
| 11/22/2016 | Answer/Reply/Response |
| 11/22/2016 | Certificate of Service |
| 11/22/2016 | Deft's PreTrial Conference Memorandum with cert of service |
| 11/23/2016 | PreTrial Memorandum of Pltfs' w/Cert of Svc |
| 12/02/2016 | Order of 12/1/16, Denying Pltfs' Motion for Reconsideration of 9/27/16 Order and for Protective ORder.  Parties and counsel are attached for Jury Trial for 7/10/17 through 7/14/17. |
| 02/28/2017 | Deft's Petition for Sanctions Against Pltf's For Pltf's Willful Failure to Comply with Court Order dated 12/1/16 |
| 02/28/2017 | Certificate of Service of Deft's petition for Sanctions, Proposed Order, Rule to Show Cause |
| 02/28/2017 | Proposed Order re: Sanctions Against Pltf's |
| 02/28/2017 | Proposed Rule re: Sanctions Against Pltf's |
| 03/02/2017 | Rule Returnable Order of 3/1/17, Rule issued upon Respondent to answer within 20 days - re: petition for sanctions.  Arg/hrg 3/22/17.  Copy and notice sent 3/3/17. |
| 03/09/2017 | Pltf's (?) Motion for Partial Summary Judgment as to Counts II, III, IV and V of Deft's Counterclaim with Cert of Service |
| 03/09/2017 | Proposed Order re Motion for Partial Summary Judgment |
| 03/09/2017 | Exhibit |
| 03/09/2017 | Exhibit |
| 03/10/2017 | Pltf's Petition for Sanctions w/ svc |
| 03/10/2017 | Proposed Rule re: Pltf's Petition for Sanctions |
| 03/10/2017 | Proposed Order re: Pltf's Petition for Sanctions |
| 03/10/2017 | Exhibit |
| 03/10/2017 | Exhibit |
| 03/10/2017 | Exhibit |
| 03/10/2017 | Exhibit |
| 03/10/2017 | Exhibit |

| | |
|---|---|
| 03/10/2017 | Exhibits |
| 03/15/2017 | Rule Returnable Order of 03/13/17. An evidentiary hearing will be held on 05/04/17 on Pltf's Petition for sanctions. Copy and notice sent 03/15/17 |
| 03/22/2017 | Pltf's Reply to Deft's Petition for Sanctions against Pltfs for Pltfs' Willful Failure to Comply with Court Order dated 12/1/16 w/Cert of Svc |
| 03/31/2017 | Order of 03/30/17 Continuing Hearing from 03/22/17 to 04/05/17 by agreement of counsel. Copy and notice sent 03/31/17 |
| 04/07/2017 | Notices and copies sent 04/07/17. |
| 04/07/2017 | Order of 04/05/17. re: Deft's Motion for sanctions. |
| 04/10/2017 | Order of 04/07/17, the Court wishes to clarify its previous order that all parties MUST be present at hearing on 05/04/17. Copy and notice sent 04/10/17 |
| 04/11/2017 | Deft's Answer to Pltfs' Petition for Pa.R.C.P 4019 Sanctions |
| 04/11/2017 | Certificate of Service of Deft's Reply to Pltfs' Petition for Pa.R.C.P. 4019 Sanctions, Prop Order and Cert of Svsc |
| 04/11/2017 | Proposed Order re: Deft's Reply to Pltfs' Petition for Pa.R.C.P. 4019 Sanctions, Deft's Response, hearing, if any and argument. |
| 04/27/2017 | Pltf's Brief Concerning Corporate Valuation |
| 04/27/2017 | Proposed Order re: "book value" |
| 04/27/2017 | Exhibits |
| 04/27/2017 | Exhibits |
| 04/27/2017 | Certificate of Service of Pltf's Brief |
| 04/27/2017 | Deft./Counterclaiming Pltf's Memo re: Proper Valuation of a Company. |
| 04/27/2017 | Certificate of Service of Deft./Counterclaiming Pltf's Memo re: Proper Valuation of a Compan |
| 05/04/2017 | Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion |
| 05/04/2017 | Certificate of Service of Deft's Petition for Leave to Amend Counterclaim to include Count for Conversion, Prop Prder, Prop Rule to Show cause and Cert of Svc. |
| 05/04/2017 | Proposed Order re: Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion |
| 05/04/2017 | Proposed Rule re: Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion |
| 05/17/2017 | Rule Returnable Order of 05/17/17. Rule is issued upon Pltf's to answer within 20 days. re: Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion. The motion shall be decided without argument unless requested by either party and granted by court. Copy and notice sent 05/18/17 |
| 05/26/2017 | Order of 05/25/17 Denying Pltf's Motion for Partial Summary Judgment. Copy and notice sent 05/26/17 |
| 05/31/2017 | Order of 05/26/17 granting ain part and deying in part Pltf's Petition for Sanctions and Deft's Response. Pltfs may swerve deft with written interrogatories on any outstanding discovery issues; Pltfs' are granted their request to secure and prepare their own expert evidents and all other requests for relief are denied. |
| 06/01/2017 | Deft's Petition for Scheduling of Trial |
| 06/01/2017 | Certificate of Service of Deft's Petition for Scheduling of Trial, Proposed Order, and Cert of Service |
| 06/01/2017 | Proposed Order re: Deft's Petition for Scheduling of Trial |
| 06/06/2017 | Pltfs' Reply to Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion w/ svc |
| 06/07/2017 | Scheduling Order of 06/06/17. Four day trial to commence at 9am on 11/13/17. See order for deadlines. |
| 10/05/2017 | Joint Petition of the Parties Requesting this Honorable Court to Issue Rulings as to All Outstanding Motions w/ svc |
| 10/16/2017 | Order of 10/13/17, that "Book value" is the controlling standard. Copies and notices sent 10/16/17 |
| 10/16/2017 | Order of 10/13/17 Granting Deft's Petition for Leave to Amend Counterclaim to Include Count for Conversion and the Counterclaim is hereby amended to include such count. Copies and notices sent 10/16/17 |
| 11/02/2017 | Deft's Motion for Reconsideration regarding Valuation w/ svc |
| 11/02/2017 | memo w/ Proposed Order |

| | |
|---|---|
| 11/02/2017 | Certificate of Service of Deft's Motion for Reconsideration Regarding Valuation and Memorandum of Law in Support of Deft's Motion for Reconsideration Regarding Valuation and Certificate of Service |
| 11/03/2017 | Pltfs' Reply to Deft's Motion for Reconsideration w/ svc |
| 11/03/2017 | Pltfs' Brief in Opposition to Deft's Motion for Reconsideration Regarding Valuation |
| 11/03/2017 | Exhibits |
| 11/03/2017 | Exhibits |
| 11/03/2017 | Exhibits |
| 11/06/2017 | Pltf's Motion for Reconsideration fo this Court's Order Permitting Amendment of Deft's Counterclaim to Add a Count of Conversion w/ svc |
| 11/06/2017 | Proposed Order re: motion for reconsideration |
| 11/06/2017 | Pltfs'  Motion in Limine w/ svc |
| 11/06/2017 | Proposed Order re: Motion for Reconsideration |
| 11/06/2017 | Proposed Order re: Deft's Motion for Reconsideration |
| 11/06/2017 | Order of 11/06/17 that the Order dated 06/06/17 scheduling this matter for a four-day jury trial is vacated and the matter is removed from the trial ready list. Copies and notices sent 11/08/17 |
| 11/06/2017 | Proposed Order re: Deft's Petition to Dissolve Preliminary Injunction |
| 11/06/2017 | Deft's Petition to Dissolve Injunction |
| 11/06/2017 | Certificate of Service of Deft's petition to dissolve inunction |
| 12/07/2017 | Deft's Praecipe for Argument for 01/02/18. |
| 12/07/2017 | Deft's Affidavit of Service for Argument Court |
| 12/07/2017 | Certificate of Service of Deft's Memo, Motion for Partial Summary Judgment, Brief in support, Motion for the Appointment of a custodian, brief in support of motion, praecipe for argument and cert of svc |
| 12/07/2017 | Brief in support of Deft's Motion for the Emergency Appointment of a Custodian of National Brokers of America, Inc. on Cause of deadlock and Fraudulent Exclusion |
| 12/07/2017 | Jordan's Motion for the Emergency Appointment of a Custodian of National Brokers of America, Inc Under 15 PA.C.S.A S1767 on Cause of Deadlock and Fraudulent Exclusion |
| 12/07/2017 | Brief in support of Jordan's Motion for Partial Summary Judgment Dismissing all Counts of Pltfs' Complaint and Resolving Liability in Jordan's Favor for Jordan's counterclaims |
| 12/07/2017 | Deft's Memo re: The proper measure of damages |
| 12/07/2017 | Deft's motion for Partial Summary Judgment Dismissing all Counts of Pltfs' Complaint and resolving liability in Jordan's Favor for Jordan's Counterclaims |
| 12/07/2017 | Proposed Order re: Motion for the emergency appointment of a custodian of national brokers of america inc |
| 12/07/2017 | Proposed Order re: Jordan's Motion for Partial Summary Judgment and Pltf's Response |
| 12/07/2017 | Proposed Rule re: Motion for the Emergency Appointment of a Custodian |
| 01/02/2018 | Pltf's Answer to Deft's Motion for Partial Summary Judgment w/ svc |
| 01/02/2018 | Pltfs' Answer to Deft's Motion for the Emergency Appointment of A Custodian of National Brokers of America, Inc. Under 15 PA.C.S.A S 1767 on Cause of Deadlock and Fraudulent Exclusion w/ svc |
| 01/02/2018 | Brief in Support of Pltfs' Replies to All Deft's Outstanding Motions and In Support of Prior Motion to Dismiss Deft's Counterclaims w/ svc |
| 01/04/2018 | Deft's Memo re: Trial readiness |
| 01/04/2018 | Proposed Order re: outstanding motions and petitions and answers thereto and oral argument |
| 01/04/2018 | Certificate of Service Memo re: Trial Readiness, Prop Order, and Cert of Service |
| 01/05/2018 | Order of 01/04/18, following argument on 01/02/18, it is hereby ordered that counsel for Pltf. shall have 30 days from the date of this order to file a response to Deft's Motion for Summary Judgment. copies and notices sent 01/05/18 |
| 01/10/2018 | Pltfs' Proposed Transcription Order for Hearing of 10/25/17 |
| 01/12/2018 | Order of 01/12/18 Authorizing Transcription request by William Rush, Esq. of proceeding on 10/25/17. |

| | |
|---|---|
| 01/12/2018 | Notices and copies sent 01/17/18 |
| 02/08/2018 | Notice of Lodging of Transcript of 10/25/17 |
| 02/08/2018 | Transcription of 10/25/17 - Lodged |
| 02/09/2018 | Pltf's Answer/Reply/Response to Deft's Mtn for Partial Summary Judgment w/Cert of Service |
| 02/09/2018 | Proposed Order |
| 02/23/2018 | Transcription  of Argument on 10/25/17 - Filed |
| 02/27/2018 | Deft's Answer to Pltfs' Motion for Summary Judgment. |
| 02/27/2018 | Certificate of Service of Deft's Answer to Pltfs' Motion for Summary Judgment |
| 03/08/2018 | Pltf's Petition to Set Trial Date and for Decision on Outstanding Issues |
| 03/08/2018 | Certificate of Service of Petition to Set Trial Date and for Decision on Outstanding Issues |
| 04/02/2018 | Brief in Opposition to Pltfs' Motion for Summary Judgment w/ svc |
| 04/02/2018 | Certificate of Service of Brief |
| 04/13/2018 | Order of 04/11/18 Denying Deft's Motion for Reconsideration in its entirety. Copies and notices sent 04/13/18 |
| 04/13/2018 | Order of 04/11/18 Denying Deft's Motion for Appointment of a Custodian. Copies and notices sent 04/13/18 |
| 04/13/2018 | Order of 04/11/18 Denying Deft's Petition to Dissolve Injunction. Copies and notices sent 04/13/18 |
| 04/13/2018 | Order of 04/12/18 Denying Pltfs' motion for Reconsideration on Allowing the Conversion Claim. Copies and notices sent 04/13/18 |
| 04/13/2018 | Order of 04/12/18 Denying Deft's Motion for Partial Summary Judgment. Copies and notices sent 04/13/18 |
| 04/13/2018 | Order of 04/12/18 Denying Pltf's Motion for Partial Summary Judgment. Copies and notices sent 04/13/18 |
| 04/24/2018 | Notice of Appeal by Deft Jason Scott Jordan to Superior Court of Pennsylvania from the Orders entered in this matter on 4/11/18 together with a copy of said Docket Entries, Request for Copy of Transcript and Certificate of Service of said Appeal. Copy of Appeal mailed to Superior Court of Pennsylvania on 4/24/18 by Prothonotary of Berks County by Certified Mail Return Receipt |
| 04/24/2018 | Request for Copy of Transcription |
| 04/30/2018 | Docketing Appeal in Superior Court to No. 698 MDA 2018 |
| 05/02/2018 | Order of 05/01/18 Directing Appellant to File a Concise Statement. Copies and notices sent 05/02/18 |
| 05/09/2018 | Attach Return Receipt Card to Appeal to Superior Court |
| 05/22/2018 | Proposed Rule w/Petition to Set Trial Date, Cert of Compliance and Cert of Svc |
| 05/22/2018 | Concise Statement of Matters Complained of on Appeal |
| 06/18/2018 | Praecipe for Argument on 8/6/18 RE: Deft's Petition to Set Trial Date |
| 06/18/2018 | Affidavit of Service for Argument Court of Praecipe for Argument, Proposed Order and Petition to Set Trial Date |
| 07/31/2018 | Correspondence from Superior Court re: overdue records |
| 08/03/2018 | Order of 8/1/18 cancelling Argument for 8/6/18 RE: Deft's Petition to Set Trial Date. Copies and Notice sent 8/3/18. |
| 08/27/2018 | Opinion of 8/23/18 regarding Appeal Filed On 4/24/18.  Copies and Notices sent 8/27/18 |
| 08/28/2018 | Transmittal of Record to Superior Court on 8/29/18 |
| 08/28/2018 | Notice of Record Documents sent 8/29/18 |
| 09/17/2018 | Decision from Superior Court - appeal withdrawn and discontinued |
| 09/17/2018 | Entire Record returned from Superior Court |
| 09/25/2018 | Attach Return Receipt Card to transmittal of record to Superior Court |
| 09/28/2018 | Deft's Petition to Set Trial Date |
| 09/28/2018 | Certificate of Compliance |

| | |
|---|---|
| 09/28/2018 | Certificate of Service of Petition to Set Trial Date, Certificate of Compliance and Certificate of Service |
| 09/28/2018 | Proposed Order |
| 10/04/2018 | Order of 10/2/18 scheduling a four-day jury trial for 2/25/19 commencing at 9:00 am through 3/1/19. Copies and Notice sent 10/4/18 |
| 12/20/2018 | Deft's Proposed Transcription Order for Hearing of 1/2/18 |
| 12/24/2018 | Order of 12/21/18 Authorizing Transcription of entire proceeding held on 01/02/18 infront of Judge Rowley. Notice and copies sent 12/24/18. Copy sent to chief Court reporter |
| 01/02/2019 | Notice of Lodging of Transcript for Hearing of 1/2/18 |
| 01/02/2019 | Transcription for Hearing of 1/2/18 - Lodged |
| 01/28/2019 | David W Crosett's Proposed Transcription Order for pretrial conference on 01/24/19 in front of Judge Rowley |
| 01/28/2019 | Order of 01/28/2019. re: following a pretrial conference. See order for details |
| 02/14/2019 | Order of 02/14/19 Authorizing Transcription from pretrial conference on 01/24/19. Notice and copies sent. Copy sent to Karen Moran. |
| 02/15/2019 | Transcription for Hearing of 1/2/18 - Filed |
| 02/21/2019 | Bankruptcy Notice for National Brokers of America, Inc. |
| 02/21/2019 | Correspondence of Suggestion of Bankruptcy |
| 02/21/2019 | Certificate of Service of Notice of Bankruptcy Stay, Notice of Bankruptcy Case Filing and Cert. of Service upon Brenna H. Mendelsohn, Esq., William Rush, Esq., and David W. Crossett, Esq. by First Class Mail on 02/21/19 |
| 02/21/2019 | Order of 02/21/19 scheduling Jury Trial for 02/25/19 at 9:00 A.M. |
| 02/21/2019 | Notice of Lodging of Transcript for Hearing of 1/24/19 |
| 02/21/2019 | Transcription for Hearing of 1/24/19 - Lodged |
| 02/21/2019 | Pltfs' Motion for Reconsideration of This Honorable Court's Order of 02/21/19 with Service |
| 02/22/2019 | Plaintiffs' Motion for Reconsideration of this Honorable Court's Order of February 21, 2019. |
| 02/25/2019 | Order of 02/22/19 Granting Motion for Reconsideration of the Court Order of 02/21/19. The Order of 02/21/19 is Vacated and the trial of this matter scheduled for 02/25/19 is cancelled. Notice and Copies sent 02/25/19. |
| 02/25/2019 | Transcription for Hearing of 1/24/19 - Filed |
| 03/01/2019 | Defendant's Jason Scott Jordan's Petition to Reschedule Trial |
| 03/01/2019 | Certificate of Service of Petition to Reschedule Trial, Certificate of Compliance, Proposed Order, and this Certificate of Service upon William Rush, Esq., and Brenna H. Mendelsohn, Esq. by U.S. Mail 1st Class on 03/01/19 |
| 03/01/2019 | Certificate of Compliance |
| 03/01/2019 | Proposed Order Re: Petition to Reschedule Trial |
| 04/17/2019 | Deft's Petition to Set Trial Date |
| 04/17/2019 | Proposed Order re: Defts Petition to Set Trial Date |
| 04/17/2019 | Certificate of Compliance |
| 04/17/2019 | Certificate of Service of Petition to Set Trial Date, Cert of Compliance and Cert of Svc upon William Rush, Esq by first class on 04/17/19. |
| 05/13/2019 | Deft's Pretrial Petition |
| 05/13/2019 | Proposed Order re: Pretrial Petition |
| 05/13/2019 | Proposed Rule re: Petition |
| 05/13/2019 | Certificate of Compliance |
| 05/13/2019 | Certificate of Service of Pretiral Petition, prop Order, Prop Rule, cert of compliance and cert of svc |
| 05/15/2019 | Rule Returnable Order of 05/14/19 Rule issued upon Plaintiff  to answer within 10 days. Re: Foregoing Defendant's Petition. Notice and Copies sent 05/15/19. |

| | |
|---|---|
| 05/22/2019 | Order of 05/17/19 scheduling Five Day Jury Trial for 09/09/19 through 09/13/19 at 9:00am. Notice and Copies sent 05/22/19. |
| 05/29/2019 | Pltfs' Answer/Reply/Response to Deft's Motion |
| 06/07/2019 | Praecipe for Argument on 7/1/19 RE: Deft's Pre-Trial Petition w/Afrdvt of Svc for Argument Court of Praecipe for Argument, Proposed Order and Pre-trial Petition |
| 07/12/2019 | Order of 7/11/19, after consideration of Deft's Pretrial Petition: Deposition of Alan Redmond and a corporate designee of National Brokers of America Inc may be taken by Deft's Counsel within 45 days of order date; Because punitive damages can be sough in this case against Alan Redmond, Deft's Counsel may conduct discovery involving Alan Redmond's personal finances.  Copies and notice sent 7/12/19. |
| 08/07/2019 | Proposed Order re: Pltfs' Motion and Pltfs' Motion for Protective Order and to Stay All Discovery Pursuant to PA R.C.P. 4012, 4013 Pending Outcome of Pre-Trial Motions and the Setting of a New Trial Date w/ Cert of Svc |
| 08/12/2019 | Order of 08/11/19 granting Pltf's Motion for Protective order and Stay of Discovery in part and denying in part. The Deposition shall be scheduled to accommodate counsels pre-planned vacation. The motion in all other respects is denied. Copies and Notices sent 8/12/19. |
| 08/28/2019 | Order of 8/28/19 re: state and federal tax returns. Failure to comply with this order will result in significant sanctions. Copies and notice sent 8/28/19. |
| 08/28/2019 | Order of 8/27/19 RE: Discovery. Copies and Notices sent 8/28/19 |
| 09/03/2019 | Pltfs' Motion in Limine to Dismiss Deft's Count for Conversion, and to Dismiss All Claims for Punitive Damages w/ Cert of Svc |
| 09/03/2019 | Pltf's Motion in Limine to Dismiss Alan C. Redmond as a Party w/ Cert of Svc |
| 09/05/2019 | Order of 9/5/19 - bankruptcy counsel for Pltf, Atty Joseph Bambrick, appear in Courtroom 9 of the Berks County Courthouse on Monday 9/9 @ 8:30am. Copies and notice sent 9/6/19 (no service made - email domain does not exist). |
| 09/06/2019 | Deft's Memorandum of Law In Support of Severance of Parties for Trial w/ Cert of Svc |
| 09/10/2019 | Order of 09/09/19 continuing Jury Trial to the week of 01/27/19. Jury selection will begin on 01/27/19 @9am. Copies and notice sent 09/10/19 |
| 09/17/2019 | Order of 9/16/19 continuing Jury Trial from 9/9/19 to 1/27/20. Copies and notice sent 9/17/19. |
| 01/21/2020 | Order of 1/16/20 case has been removed to Federal Court therefore jury trial scheduled on 1/27/20 is cancelled. Copies and notice sent 1/21/20. |
| 01/30/2020 | Notice of Filing of Notice of Removal to United States District Court for the Eastern District of Pennsylvania |
| 01/30/2020 | Certificate of Service of Notice of Filing of Notice of Removal and Cert of Svc |
| 01/30/2020 | Certificate of Compliance |
| 01/06/2021 | Copy of Order filed in US Bankruptcy Court Eastern District of PA Case No 19-15488, Adversary Proceeding 20-16-pmm remanding case back to Court of Common Pleas of Berks County |
| 01/06/2021 | Exhibits/Records |
| 01/21/2021 | Correspondence re: setting status hearing |
| 02/19/2021 | Order of 2/16/21 scheduling Status Conference for 4/9/21 virtually by Microsoft Teams. Rule 236 notice and copies provided on 2/19/21. |
| 04/13/2021 | Appearance of Norman M. Valz, Esq. for Pltf |
| 04/13/2021 | Order of 4/12/21 Status Conference held 4/9 is continued to 4/14 via virtual platform, Microsoft Teams. Rule 236 notice and copies provided on 4/13/21, including Adam J. Tragone, Esq. and Norman M. Valz, Esq. |
| 04/19/2021 | Deft's Motion for Sanctions |
| 04/19/2021 | Brief In Support of Deft's Motion for Sanctions |
| 04/19/2021 | Exhibits A-F |
| 04/19/2021 | Certificate of Service of Deft's Motion for Sanctions, with accompanying brief in support, exhibits, and proposed order, Deft's Motion in Limine on Market Comparables, with accompanying exhibits and proposed order, and this Cert of Svc |
| 04/19/2021 | Deft's Motion in Limine on Admissibility of Market Comparables Expert Testimony |
| 04/19/2021 | Exhibits A-C |
| 04/19/2021 | Proposed Order re: Granting Deft's Motion in Limine |

| 04/19/2021 | Proposed Order re: Granting Deft's Motion for Sanctions |
| 04/20/2021 | Certificate of Service of Deft's Motion for Sanctions, with accompanying brief in support, exhibits, and proposed order, Deft's Motion in Limine on Market Comparables, with accompanying exhibits and proposed order, and this Cert of Svc |
| 04/20/2021 | Withdrawal of Appearance of Julie J. Marburger, Esq. for Pltf, National Brokers of America Inc. |
| 04/27/2021 | Order of 4/27/21 scheduling Argument for 6/2/21 re: Deft's Motion for Sanctions and Motion in Limine on Market Comparables. The Court is granting the request for continuance as there has been a recent change in counsel. Rule 236 notice and copies provided on 4/27/21. |
| 05/10/2021 | Pltfs' Answer to Deft's Motion in Limine to Allow an Alternative Appraisal Method |
| 05/10/2021 | Proposed Order re: Denying Motion in Limine |
| 05/10/2021 | Affidavit of Verification |
| 05/10/2021 | Certificate of Service |
| 05/10/2021 | Exhibits/Records |
| 05/10/2021 | Exhibits/Records |
| 05/10/2021 | Pltfs' Answer to Deft's Motion for Sanctions |
| 05/10/2021 | Proposed Order re: Denying Motion for Sanctions |
| 05/10/2021 | Affidavit of Verification |
| 05/10/2021 | Certificate of Service |
| 05/24/2021 | Order of 5/21/21 counsel in the above captioned matter are attached for Jury Selection and one week Jury Trial scheduled to begin on Monday 9/20/21 @9:00 AM. See Order for deadlines. Rule 236 notice and copies provided on 5/24/21. |
| 06/07/2021 | Order of 6/6/21 Granting Deft's Motion for Sanctions. Rule 236 Notice and copies provided on 6/7/21 |
| 06/16/2021 | Order of 6/15/21, upon consideration of Deft's Motion for Limine and Pltf's responses, said motion is Denied.  The Court re-reviewed all of the pleadings including exhibits generated nearly 4 years ago as well as the present Motion in Limine "to allow an alternative appraisal method" and Deny said Motion in Limine.  The Court stands by its Order of 10/13/17.  "Book Value" is the controlling standard.  Rule 236 notice and copies provided on 6/16/21, including Adam J Tragone, Esq. |
| 08/12/2021 | Deft Jordan's Motion for Sanctions |
| 08/13/2021 | Proposed Order RE Jordan's Motion for Sanctions |
| 08/20/2021 | Pltf's Response in Opposition to Deft's Motion for Sanctions |
| 08/20/2021 | Proposed Order |
| 08/20/2021 | Exhibits/Records |
| 08/20/2021 | Affidavit of Verification |
| 08/20/2021 | Certificate of Service of attached pleading |
| 08/23/2021 | Pltfs' Motion in Limine to Preclude the Introduction of Business Valuations Other than Book Value |
| 08/23/2021 | Proposed Order re - granting pltfs' motion in limine |
| 08/23/2021 | Exhibit |
| 08/23/2021 | Exhibit |
| 08/23/2021 | Exhibit |
| 08/23/2021 | Verification |
| 08/23/2021 | Certificate of Service of pleading |
| 08/27/2021 | Deft', Jordan's Brief in Opposition to Pltfs' Motion In Limine To Preclude The Introduction of Business Valuations Other Than Book Value |
| 08/27/2021 | Certificate of Service of Brief in Opposition to Plaintiffs' Motion in Limine to Preclude the Introduction of Business Valuations Other Than Book Value and this Certificate of Service |

| | |
|---|---|
| 09/01/2021 | Order of 8/19/21, by the agreement of counsel for the parties, the matter will be tried before the court and the demand for a trial by jury is withdrawn.  Said trial will take place on 9/20 and 9/21 are reserved for said bench trial.  Rule 236 notice and copies provided on 9/1/21. |
| 09/02/2021 | Order of 8/31/21, Granting Jordan's Motion for Sanctions.  Redmond is precluded from offering testimony in this matter at trial and finder of fact in this matter will be notified that Redmond is not permitted to testify at trial as a sanction against him.  Counsel for Redmond is precluded from calling any witnesses at trial to testify to any matter that is within the reasonably expected personal knowledge of Redmond.  Counsel for Jordan may introduce at trial some or all of Redmond's statements provided in deposition without calling Redmond as a witness at trial.  Redmond is sanctioned for willfully failing to comply with court ordered discovery and will failure to appear at 8/12/21 deposition and must within 5 business days pay to Cornerstone Law Firm the sum of $10,484.50.  Trial for this matter will begin on 9/20/21 as previously scheduled.  Rule 236 notice and copies provided on 9/2/21. |
| 09/02/2021 | Order of 8/31/21, upon consideration of Pltf's motion in limine to preclude the introduction of any evidence or testimony by Deft offering any valuation of National Brokers of America Inc other than book value as previously ordered by the court, the motion is Granted.  Rule 236 notice and copies provided on 9/2/21. |
| 09/22/2021 | Proposed Transcription Order re: Trial on 09/20/21 and 09/21/21 |
| 09/29/2021 | Order of 9/3/21, Authorizing Transcription of proceedings held on 9/20/21 and 9/21/21.  Rule 236 notice and copies provided on 9/29/21, including Karen Moran, Ch Crt Rpt. |
| 10/28/2021 | Pltf's Motion/Petition for Entry of Judgment w/Prop Order |
| 10/28/2021 | Exhibit A |
| 10/29/2021 | Notice of Lodging of Transcript of Proceedings of 9/20/21 & 9/21/21 - LODGED |
| 10/29/2021 | Transcription of Proceedings of 9/20/21 & 9/21/21 - Lodged |
| 11/04/2021 | Order of 11/3/21, The parties Findings for Fact, Conclusion of Law and a Poposed Verdict shall be filed at 12:00 Noon November 24, 2021.  Rule 236 Notice & Copies provided 11/4/21 |
| 11/04/2021 | Transcription of Proceedings of 9/20/21 & 9/21/21 - Filed |
| 11/05/2021 | Order of 11/3/21, Judgment in favor of Cornerstone Law Firm and againt Pltf Alan Christopher Redmond - $10,484.50. |
| 11/05/2021 | Rule 236 Notice and Copies provided on 11/5/21 |
| 11/09/2021 | Pltf's Request for Copy of Transcription of proceedings of 09/20/21 & 09/21/21 |
| 11/18/2021 | Entry of Appearance of Eric E. Reed, Esq. on behalf of  Pltf. Alan Christopher Redmond with Cert. of Service |
| 11/24/2021 | Pltf. Alan Christopher Redmond  Proposed Findings of Facts and Proposed Order with Cert. of Service |
| 11/24/2021 | Deft's Proposed Findings of Fact and Proposed Conclusions of Law |
| 11/24/2021 | Certificate of Service |
| 12/02/2021 | Pltf, Alan's Objections to Proposed Findings of Fact and Conclusions of Law w/Cert of Service |
| 12/02/2021 | Pltf's Notice of Appeal to Superior Court from Judgment entered 11/3/21 w/Cert of Service |
| 12/02/2021 | Addendum |
| 12/02/2021 | Request for Copy of Transcription |
| 12/03/2021 | Deft's Praecipe to Substitute corrected Proposed Findings of Fact and Conclusions of Law |
| 12/03/2021 | Proposed Verdict Slip |
| 12/03/2021 | Certificate of Service |
| 12/07/2021 | Pltf, Alan Christopher's Exceptions/Objections to Corrected Proposed Findings of Fact and Conclusions of Law |
| 12/13/2021 | Order of 12/13/21 Granting Praecipe to Substitute Jason Scott Jordan's Corrected Proposd Findings of Fact and Proposed Conclusions of Law.  Rule 236 Notice & Copies provided 12/13/21 |
| 12/13/2021 | Order of 12/13/21 Denying Alan Christopher Redmond's Objections To Proposed Findings Of Fact And Conclusions Of Law.  Rule 236 Notice & Copies provided 12/13/21 |
| 12/13/2021 | Copy of Notice of Appeal from Judgment entered 11/3/21, docket entries & Check to higher court sent to Superior Court by Certified Mail on 12/13/21 |
| 12/20/2021 | Docketing Appeal in Superior Court to Case No 1621 MDA 2021 |

| | |
|---|---|
| 12/20/2021 | Decision and Verdict Slip in favor of Deft, Jason Scott and against Pltf, Alan Christopher Redmond - $13,105,197.20 |
| 12/20/2021 | Rule 236 Notice and Copies provided on 12/20/21 |
| 12/27/2021 | Order of 12/27/21 Directing Appellant to File a Concise Statement of Errors Complained of on Appeal.  Rule 236 Notice & Copies provided 12/27/21 |
| 12/30/2021 | Proposed Order w/Notice Regarding Transcript, and Pltf, Alan Christopher Redmond's Motion for Post-Trial Relief and Cert of Svc |
| 12/30/2021 | Pltf, Alan Christopher Redmond's Brief In Support of Motion for Post-Trial Relief and Cert of Svc |
| 12/30/2021 | Affidavit of William R.A. Rush, Esq. |
| 12/30/2021 | Affidavit |
| 12/30/2021 | Exhibits/Records |
| 12/30/2021 | Exhibits/Records |
| 01/11/2022 | Order of 1/6/22. The above-captioned case is reassigned from the Honorable James E Gavin to the Honorable Jeffrey K Sprecher. Rule 236 Notice and copies provided on 1/11/22 |
| 01/13/2022 | Pltf, Alan Christopher Redmond 's Concise Statement of Errors Complained of On Appeal w/cert of service |
| 01/13/2022 | JORDAN, JASON SCOTT (Defendant)'s Brief in Opposition to Pltf's Motion for Post-Trial Relief |
| 01/13/2022 | Exhibits/Records |
| 01/13/2022 | Proposed Order re: Deny Motion for Post-Trial Relief |
| 01/13/2022 | Service of Brief in Opposition, Proposed Order, and Cert of Service |
| 01/14/2022 | Amended Order of 1/14/22. The above-captioned case is reassigned from the Honorable James E Gavin to the Honorable Jeffrey K Sprecher. Rule 236 Notice and copies provided on 1/14/22 |
| 01/17/2022 | Certificate of Service Pltf's Concise Statement of Errors Appealed on 01/13/2022 via pre-aid first Class U.S. Mail |
| 01/27/2022 | Order of 01/21/22 scheduling Argument for 02/22/22. Rule 236 Notice and Copies provided on 01/27/22 |
| 02/17/2022 | Pltf. Alan Christopher Redmond's Reply in Support of Motion for Post-Trial Relief with Cert. of Service |
| 03/18/2022 | Pltf Alan Christopher Redmond's Notice of Appeal Dismissal and Supplemental Brief regarding Motion for Post Trial Relief w/Svc |
| 03/18/2022 | Copy of Order filed in Superior Court #1621 MDA 2021 - Appeal Quashed |
| 03/31/2022 | Judgment on Verdict by Order of 3/30/22 against Deft in the amount of $13,105,197.20. Rule 236 Notice and copies provided on 3/31/22, including Adam J Tragone Esq **ENTERED IN ERROR** |
| 03/31/2022 | Amended Judgment on Verdict by Order of 3/31/22 against Pltfs in the amount of $13,105,197.20. Rule 236 Notice and copies provided on 3/31/22, including Adam J Tragone Esq |
| 03/31/2022 | Rule 236 Notice and Praecipe for Judgment provided on 3/31/22 |
| 04/05/2022 | Deft's Motion to Compel Pltf Alan Christopher Redmond to Answer Interrogatories in Aid of Execution |
| 04/05/2022 | Proposed Order re: Deft's Motion to Compel |
| 04/05/2022 | Exhibits/Records |
| 04/05/2022 | Proposed Rule re: Deft's Motion to Compel |
| 04/07/2022 | Order of 4/6/22 scheduling hearing for 4/29/22 before Discovery Master. Re: Deft's Motion to Compel Pltf Alan Christopher to Answer Interrogatories in Aid of Execution. Rule 236 Notice and Copies Provided on 4/7/22. |
| 04/19/2022 | Pltf's Notice of Appeal to Superior Court from Judgement of 03/31/22 w/ Cert of Service |
| 04/21/2022 | Copy of Notice of Appeal, Cert of Services, Docket Entries, & Check in amount of $90.25 sent to Superior Court by Certified Mail on 04/21/22 |
| 04/25/2022 | Copy of Order filed in Superior Court #1621 MDA 2021 is Quashed. |
| 04/27/2022 | Pltf, Alan Redmond's Proposed Order re: Pltf's Motion to Stay Judgement Execution Pending Appeal |
| 04/27/2022 | Exhibits/Records |
| 04/27/2022 | Pltf, Alan Redmond's Motion to Stay Judgement Execution Pending Appeal w/ Brief in Support of Motion of Pltf, Alan Redmond to Stay Execution Pending Appeal |

| 04/28/2022 | Order of 04/27/22 re: Deft's Motion to Compel. Pltf Alan Christopher Redmond shall within 20 days of the date of this Order provide full and complete response without objections to the Interrogatories in Aid of Execution. Rule 236 Notice & Copies provided on 04/28/22. |
| 05/02/2022 | Order of 04/29/22 Directing Appellant to File a Concise Statement. Rule 236 Notice & Copies provided on 05/02/22. |
| 05/03/2022 | Order of 05/02/22 Scheduling rule returnable & hearing on 06/13/22 re: Pltf's motion to stay judgement pending the outcome of Redmon's appeal of the judgement to the Superior Court. Rule 236 Notice & Copies provided on 05/03/22. |
| 05/04/2022 | Pltf, Alan Redmond's Motion for Reconsideration of 04/27/22 Order w/ Cert of Service |
| 05/04/2022 | Proposed Order re: Pltf's Motion for Reconsideration |
| 05/04/2022 | Order of 05/04/22 Granting Alan Redmond's Motion. The Order from 04/27/22 is VACATED & the disposition of Deft's Motion to Compel Redmond to Answer Deft's Interrogatories in Aid of Execution will be governed by the Court's ruling on Redmond's Motion to Stay the Execution pending appeal. Rule 236 Notice & Copies provided on 05/04/22. |
| 05/05/2022 | Docketing Appeal in Superior Court to #642 MDA 2022 |
| 05/23/2022 | Pltf, Alan Christopher Redmond's Concise Statement of Errors Complained of on Appeal w/ Cert of Service |
| 05/23/2022 | Attach Return Receipt Card to notice of appeal |
| 06/01/2022 | Statement in Lieu of Opinion of Appeal filed on 04/19/22. Rule 236 Notice & Copies provided on 06/01/22. |
| 06/01/2022 | Notice of Record Documents sent 6/1/2022 |
| 06/01/2022 | Transmittal of Record to Superior Court |
| 06/27/2022 | Order of 6/24/22 Continuing Hearing to 7/19/22. Rule 236 notice and copies provided on 6/27/22 |
| 06/27/2022 | Attach Return Receipt Card to notice of appeal |
| 06/27/2022 | Attach Return Receipt Card to transmittal to Superior Court |
| 07/19/2022 | Order of 7/18/22 Hearing continued to 9/22/22. Rule 236 notice and copies provided on 7/19/22 |
| 08/10/2022 | Order of 8/9/22 Hearing continued to 9/23/22. Rule 236 notice and copies provided on 8/10/22 |
| 09/08/2022 | Entry of Joel A Ready, Esq for Deft and Withdraw of Appearance of David W Crossett, Esq for Deft w/ Cert of Service |
| 09/20/2022 | Order of 9/20/22. Hearing continued to 10/20/22. Rule 236 notice and copies provided on 9/20/22 |
| 10/20/2022 | Amended Order of 10/19/22. Hearing continued to 10/20/22. Rule 236 notice and copies provided on 10/20/22 |
| 10/21/2022 | Order of 10/20/2022 Continuing Hearing to 11/30/2022. Rule 236 Notice and Copies Provided on 10/21/2022. |
| 10/21/2022 | Order of 10/20/2022 Granting Motion and that Execution and Any Efforts in Aid of Execution on the Judgment Entered in this Case is Stayed Pending Further Court Order. Rule 236 Notice and Copies Provided on 10/21/2022. |
| 11/02/2022 | Deft's Brief in Opposition to Pltf's Motion to Stay Execution Pending Appeal |
| 11/02/2022 | Certificate of Service of Deft's Brief in Opposition to Pltf's Motion to Stay Execution Pending Appeal w/ cert of service |
| 11/15/2022 | Deft's Motion and Memorandum of Law for a Supersedeas Bond and Other Relief |
| 11/15/2022 | Proposed Order |
| 11/15/2022 | Certificate of Service of Deft's Motion and Memorandum of Law, Proposed Order w/ cert of service |
| 12/02/2022 | Order of 12/1/22. The stay is lifted in part for discovery in aid of execution to occur. any execution is continued to be stayed pending further order of court or decision of the Superior Court. Rule 236 notice and copies provided on 12/2/22 |
| 08/21/2023 | Appearance of Dominic Mayle Esq. - Defendant |
| 08/21/2023 | Deft's Motion and Memorandum to Lift Stay Pending Appeal |
| 08/21/2023 | Proposed Order |
| 08/21/2023 | Certificate of Service of Deft's Motion and Memorandum to Lift Stay Pending Appeal |
| 08/23/2023 | Withdrawal of Appearance of Eric E. Reed, Esq. for Pltf Alan Christopher Redmond |

| | |
|---|---|
| 08/23/2023 | Certificate of Service of Notice of Withdrawal |
| 09/08/2023 | Pltf's Response in Opposition to Deft's Motion to Lift Stay of Judgment Execution Pending Appeal and Brief |
| 09/08/2023 | Proposed Order |
| 09/08/2023 | Affidavit of Verification |
| 09/08/2023 | Certificate of Service |
| 10/06/2023 | Withdrawal of Appearance of William Rush Esq. for Pltfs w/Cert of Service |
| 10/06/2023 | Withdrawal of Appearance of Osmer S. Deming Esq. for Pltf |
| 10/18/2023 | Appearance of Benjamin J. Lewis Esq. for Defendant |
| 10/18/2023 | Certificate of Service of Appearance of Benjamin J. Lewis Esq. for Defendant |
| 10/18/2023 | Deft's Praecipe for Determination |
| 10/18/2023 | Certificate of Service of Deft's Praecipe for Determination |
| 12/13/2023 | Correspondence to Judge Fudeman dated 12/13/23 RE: Request to Lift Stay Pending Appeal w/Proposed Order |
| 12/13/2023 | Certificate of Service of Correspondence and Cert of Service |
| 12/19/2023 | Correspondence to Judge Fudeman from Pltfs' Attorney RE: Response to Letter Request by Counsel for Jason Jordan to Lift Stay Pending Appeal |
| 01/25/2024 | Decision from Superior Court - grant appellee's application to lift stay pending appeal.  Vacate the stay of execution of judgment entered by trial court on 10/21/2022. |
| 03/14/2024 | Docketing Appeal in Supreme Court to #135 MAL 2024 |
| 05/02/2024 | Deft's Motion for Charging Order |
| 05/02/2024 | Proposed Order |
| 05/02/2024 | Certificate of Service of Motion for Charging Order, Proposed Charging Order and Cert of Service |
| 05/06/2024 | Deft's Motion for Charging Order |
| 05/06/2024 | Proposed Order |
| 05/06/2024 | Certificate of Service of Motion for Charging Order, Proposed Charging Order, Cert of Service |
| 05/08/2024 | Deft's Motion to Compel Answers to Interrogatories in Aid of Execution |
| 05/08/2024 | Exhibits A-D |
| 05/08/2024 | Proposed Order |
| 05/08/2024 | Certificate of Service of Motion to Compel Answers to Interrogatories in Aid of Execution, Exhibits, Proposed Order, and Cert of Service |
| 05/24/2024 | Pltf Alan Redmon's Answer to Motion for Charging Order against Arc Realty |
| 05/24/2024 | Proposed Order |
| 05/24/2024 | Affidavit of Verification |
| 05/24/2024 | Certificate of Service of Deft's Motion for a Charging Order |
| 05/28/2024 | Pltf, Alan Redmond's Answer to Motion for Charging Order against Bene Market and Redmond Group Investments, LLC |
| 05/28/2024 | Proposed Order |
| 05/28/2024 | Exhibit (A) |
| 05/28/2024 | Exhibit (B) |
| 05/28/2024 | Affidavit of Verification |
| 05/28/2024 | Certificate of Service of Deft's Motion for a Charging Order |
| 05/28/2024 | Pltf, Alan Redmond's Answer to Motion to Compel Responses to Discovery in Aid of Execution |
| 05/28/2024 | Proposed Order |

| | |
|---|---|
| 05/28/2024 | Exhibit (A) |
| 05/28/2024 | Exhibit (B) |
| 05/28/2024 | Affidavit of Verification |
| 05/28/2024 | Certificate of Service Deft's Motion to Compel |
| 06/17/2024 | Deft's Motion to Correct the Judgment |
| 06/17/2024 | Exhibit A |
| 06/17/2024 | Certificate of Service of Motion to Correct the Judgment, Exhibits, Proposed Order and this Cert of Service |
| 06/18/2024 | Proposed Order RE: Deft's Motion to Correct the Judgment |
| 07/09/2024 | Order of 7/5/24 scheduling Argument for 8/21/24 re: Pltf's and Deft's Motion for Charging Order. Rule 236 notice and copies provided on 7/9/24. |
| 07/09/2024 | Pltf's Brief in Partial Opposition to Motion to Correct Judgment |
| 07/09/2024 | Proposed Order |
| 07/09/2024 | Affidavit of Verification |
| 07/09/2024 | Certificate of Service of the Attached Pleading |

---

Complaint                                    10/28/2014

**Plaintiff**

NATIONAL BROKERS OF AMERICA INC                          Valz, Norman M

Tragone, Adam J

REDMOND, ALAN CHRISTOPHER                          Valz, Norman M

Tragone, Adam J

**Defendant**

JORDAN, JASON SCOTT                          Crossett, David W

---

Judgment by Order                                    11/05/2021

**Defendant**

REDMOND, ALAN CHRISTOPHER

**Other**

CORNERSTONE LAW FIRM

---

Verdict - Jury                                    12/20/2021

**Plaintiff**

JORDAN, JASON SCOTT                          Ready, Joel A

**Defendant**

REDMOND, ALAN CHRISTOPHER

---

Judgment on Verdict                                    03/31/2022

**Plaintiff**

JORDAN, JASON SCOTT                          Ready, Joel A

**Defendant**

NATIONAL BROKERS OF AMERICA INC

REDMOND, ALAN CHRISTOPHER

# Exhibit C

# Exhibit C

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

**CORNERSTONE LAW FIRM, LLC**
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

| | |
|---|---|
| JASON SCOTT JORDAN,<br><br>Plaintiff,<br><br>v.<br><br>BENE MARKET, LLC, ALAN CHRISTOPHER REDMOND, individually and doing business as "The Lead House," and STEPHANIE MILLER,<br>Defendants. | COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL-ACTION<br><br>Docket No.:<br><br>JURY TRIAL OF 12 DEMANDED |

## COMPLAINT

NOW COMES, Plaintiff, Jason Scott Jordan, by and through counsel, who hereby submits this Complaint and states the following:

## PARTIES

1.    Plaintiff, Jason Scott Jordan, is an adult individual and resident of Florida.

2.    Defendant, Bene Market, LLC, is a Pennsylvania limited liability company with offices at 4 South 4th Street, Reading, PA 19605.

3.    Alan Christopher Redmond is an adult individual who resides at 2005 Regency Drive, Wyomissing, PA 19610.

4.    Stephanie Miller is an adult individual with a last known address of 485 Knorr Road, Gettysburg, PA 17325.

## GROUNDS FOR RELIEF

5.    An owner and manager of Bene Market, LLC is Alan Christopher Redmond.

1

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

6.      Redmond has dual-citizenship with the United States of America and the Republic of Ireland.

7.      National Brokers of America, Inc. ("NBOA"), Alan Christopher Redmond ("Redmond"), and Jason Scott Jordan ("Jordan") are parties to the action at Docket No. 2014-17117 in the Berks County Court of Common Pleas (the "Prior Action").

8.      In the Prior Action, on December 20, 2021, the Court entered a Decision and Verdict, awarding $13,105,197.20 in damages in favor of Jason Scott Jordan and against Alan Christopher Redmond. A true and correct copy of the foregoing Decision and Verdict is attached hereto as Exhibit A and incorporated by reference.

9.      The Court found that Jordan and Redmond were 50/50 owners of NBOA. [Ex. A ¶ 11].

10.     The Court found, "NBOA's gross sales in 2013 were approximately $365,000 and in 2014 they increased to over four million," and, "This new profitability of NBOA in 2014 was due to Jordan's contributions." [Ex. A ¶¶ 25-26].

11.     The Court found that, beginning on August 4, 2014, Redmond froze out Jordan from NBOA. [Ex. A ¶¶ 28-29].

12.     The Court found, "Following the Freeze Out, Redmond paid for his personal (and extravagant) expenses (including a strip club, Babies-R-Us, jewelers, and $118,907.27 at Neiman Marcus) directly from the NBOA financial account and the same are record on the NBOA General Ledger . . . and accurately summarized on Plaintiff's Exhibit 18 in the amount of $604,126.45 ('Redmond's Personal Expenses') and are in addition to funds taken by Redmond as reported on the NBOA tax returns." [Ex. A ¶ 51].

13.     The Court found that Redmond misappropriated $116,738.60 in cash payments from NBOA. [Ex. A ¶¶ 55-56].

14.    The Court found that Redmond misappropriated NBOA's book of business by transferring it to Bene Market, LLC at a discounted rate and without Jordan's consent. [Ex. A ¶ 60].

15.    The Court found at length:

> Redmond misappropriated the services of employees and assets (including NBOA's clients) of NBOA and transferred the same to an identical business, Bene Market, LLC. The latter was engaged in selling the same products, using the same office space and same furniture and equipment for Redmond's own personal benefit and to the detriment of Jordan without Jordan's consent. Based on the foregoing, Bene Market, LLC is found to be a mere continuation of NBOA for purposes of ownership interests and rights as between Redmond and Jordan.

[Ex. A ¶ 70].

16.    The Court found that Redmond misappropriated $270,945.05 in legal fees paid by NBOA for his personal defense in the Prior Action. [Ex. A ¶¶ 63-65].

17.    The Court found "the total known sum" of misappropriations from NBOA caused by Redmond was at least $3,698,627.10. [Ex. A ¶ 66].

18.    In the Prior Action, by Order filed March 31, 2022, the Court directed the Prothonotary to enter and index the verdict as a judgment for Jason Scott Jordan, which thereby made Jordan a judgment creditor as to Redmond.

19.    On August 19, 2019, during the pendency of the Prior Action, Redmond caused the formation of Bene Market, LLC.

20.    **Nine days later**, on August 28, 2019, Redmond was deposed in the Prior Action, a transcript of that deposition testimony is attached as Exhibit B and incorporated by reference.

21.    During his deposition testimony in the Prior Action, Redmond asserted that he created Bene Market, LLC in May of 2016:

Q.    When was Bene Market, LLC organized as a business?

A.    My goodness. May, 2016, I believe. April or May, 2016, David.

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

[Ex. B (Tr. 55:9-12)].

22.     Redmond admitted Bene Market, LLC was providing the same financial services as NBOA, namely, selling life, health, and accident insurance policies on behalf of insurance carriers. [Id. at 56:6-9, 58:10-16]. By selling insurance policies on behalf of carriers, Bene Market, LLC receives ongoing revenue from those carriers for so long as the policies are in place, called "earned revenue." [Id. at 63:23-25 to 64:1-2].

23.     Redmond testified that he owns 96% of the membership interests of Bene Market, LLC and that Stephanie Miller owns 4%. [Id. at 55:1-8].

24.     Redmond testified that Bene Market, LLC commenced business operations after he shut down NBOA. [Id. at 60:1-5].

25.     Redmond testified that Bene Market, LLC hired employees from NBOA. [Id. at 60:13-24].

26.     Consistent with his persistent pattern of deception and half-truths, Redmond equivocated how many former NBOA employees were hired by Bene Market, LLC, where he first said, "less than three" [Ex. B (Tr. 60:22-24)], but then admitted, "maybe five to eight, approximately." [Id. at 62:19-21].

27.     Stephanie Miller is the former Chief Financial Officer of NBOA and followed Redmond over to Bene Market, LLC. [Id. at 43:12-16, 52:21-22].

28.     Redmond refused to testify whether he caused NBOA to transfer its assets to Bene Market, LLC, feigning ignorance that he needed to ask his accountant. [Id. at 40:2-14]. Then Redmond equivocated by acknowledging NBOA transferred assets, feigning ignorance over the amount for which the assets sold and that he needed to ask Stephanie Miller. [Id. at 43:5-12]

29.     On information and belief, Redmond caused NBOA to transfer its assets, including its contracts with insurance carriers, to Bene Market, LLC for no valuable consideration and to

4

fraudulently avoid liability to Jordan.

30.     Redmond refused to testify on how much he was being paid a year from Bene Market, LLC, feigning ignorance that he needed to ask his accountant. [Id. at 95:20-22].

31.     In the Prior Action, the Court found that Redmond gave himself "Guaranteed payments" from Bene Market, LLC, as income misappropriated from an NBOA asset. [Ex. A ¶¶ 73-76].

32.     The Court found, "In summary, in addition to the $3,698,627.10 that he took directly from NBOA Redmond also took from Bene Market, LLC at least the following sums," that is, $733,963 in 2016, $2,842,276 in 2017, $1,294,182 in 2018, $3,125,623 in 2019, and $3,801,821 in 2020, which sum totals $11,797,865.00. [Ex. A ¶ 77].

33.     The Court also found that Bene Market, LLC was "an identical business" to NBOA and a "mere continuation of NBOA for the purposes of ownership interest and rights as between Redmond and Jordan." [Ex. A ¶ 70].

34.     Redmond follows a regular pattern of fraud and self-dealing, by overleveraging Bene Market, LLC so that it appears to have no profits while paying himself an inflated salary and recharacterizing his personal expenses as business expenses, in order to fraudulently avoid liability to Jordan.

35.     Upon information and belief, the inclusion of Stephanie Miller as 4% owner of Bene Market, LLC is an economic sham, where no distributions to owners have been made (and are not intended to be made) and to further a fraudulent purpose of trying to shield assets from liability to Jordan.

<div align="center">

**COUNT I:    UNJUST ENRICHMENT**
*Plaintiff v. all Defendants*

</div>

36.     The forgoing paragraphs are incorporated by reference as though fully set forth herein.

37.     Jordan and Redmond were 50/50 owners of NBOA.

<div align="center">5</div>

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

38.    Redmond has transferred assets fraudulently from NBOA to Bene Market, LLC in order to shield those assets from liability to Jordan.

39.    Miller is the former Chief Financial Officer of NBOA and followed Redmond over to Bene Market, LLC.

40.    Redmond and Miller both have ownership interests in Bene Market, LLC.

41.    Redmond has a 96% ownership interest and Miller has a 4% ownership interest in Bene Market, LLC.

42.    Redmond also misappropriated funds from NBOA for his own personal benefit.

43.    As a result of these transfers and misappropriations, all Defendants have received a benefit of assets as well as the resulting appreciation of those assets, which benefit and appreciation belong to Jordan and of which Jordan has been deprived.

44.    Jordan is entitled to restitution for the value of the benefits conferred, in an amount equal to his proportionate share of the fair market value of Bene Market, LLC plus all related profits and appreciation.

45.    Additionally, the assets transferred from NBOA to Bene Market, LLC must be preserved in order to prevent irreparable injury to the rights and interests of Jordan in the Prior Action.

46.    There exists no other adequate remedy at law by which this irreparable injury to the rights and interests of Jordan can be prevented.

47.    In the absence of the appointment of a receiver, even greater damage to the rights and interests of Jordan will result.

WHEREFORE, Plaintiff, Jason Scott Jordan, requests judgment in his favor, and against Defendants, Alan Christopher Redmond, Bene Market, LLC, and Stephanie Miller, for restitutionary damages in an amount equal to Plaintiff's proportionate share of the fair market

6

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

value of Bene Market, LLC, plus all related profits and appreciation, as well as the appointment of a temporary receiver to Bene Market, LLC, together with prejudgment and post-judgment interest, and such other relief as the Court deems reasonable, just, or necessary.

### COUNT II:    PIERCING THE CORPORATE VEIL
*Plaintiff v. Bene Market, LLC*

48.    The forgoing paragraphs are incorporated by reference as though fully set forth herein.

49.    Jordan and Redmond were 50/50 owners of NBOA.

50.    Miller is the former Chief Financial Officer of NBOA and followed Redmond over to Bene Market, LLC.

51.    Redmond and Miller both have ownership interests in Bene Market, LLC.

52.    Redmond has a 96% ownership interest and Miller has a 4% ownership interest in Bene Market, LLC.

53.    As Redmond owned half of NBOA and now owns almost all of Bene Market, LLC, there exists here a substantially common ownership between the two entities.

54.    Redmond has transferred assets fraudulently from NBOA to Bene Market, LLC in order to shield those assets from liability to Jordan.

55.    As it pertains to both NBOA and Bene Market, LLC, there exists here such unity of interest and ownership that the separate personalities of the corporations and the individual no longer exist.

56.    Upon information and belief, Bene Market, LLC is a façade for Redmond's personal dealings.

57.    Upon information and belief, Bene Market, LLC disregards all corporate formalities and operates its business without regard for the LLC as an entity.

58.    The specific and unusual circumstances here call for an exception to the general rule that the corporate entity should be recognized and upheld.

7

59.     Justice demands that the corporate form be disregarded where that form has been used to protect fraud.

60.     Additionally, the assets transferred from NBOA to Bene Market, LLC must be preserved in order to prevent irreparable injury to the rights and interests of Jordan in the Prior Action.

61.     There exists no other adequate remedy at law by which this irreparable injury to the rights and interests of Jordan can be prevented.

62.     In the absence of the appointment of a receiver, even greater damage to the rights and interests of Jordan will result.

WHEREFORE, Plaintiff, Jason Scott Jordan, requests judgment in his favor, and against Defendant, Bene Market, LLC, ordering the piercing of its corporate veil and holding the individual owners severally and personally liable on all counts to this action, as well as the appointment of a temporary receiver to Bene Market, LLC, together with prejudgment and post-judgment interest, and such other relief as the Court deems reasonable, just, or necessary.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: July 26, 2022          By:    /s/ Joel A. Ready, Esquire
_____
Joel A. Ready, Esquire
Attorney I.D. #321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875
*Counsel for Plaintiff*

8

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

**VERIFICATION**

I am Jason Scott Jordan, the Plaintiff in the within instrument.  I hereby verify that facts set forth herein are true and correct to the best of my knowledge, information and belief and that this verification is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: _____

_____
Jason Scott Jordan

Received County of Berks Prothonotary's Office on 07/28/2022 12:07 PM Prothonotary Docket No. 22-11757

9

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

FOX ROTHSCHILD LLP
BY:    Eric E. Reed, Esquire (Pa. No. 204692)
Stephanie Ohnona, Esquire (Pa. No. 328939)
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000

Attorneys for Defendants
Bene Market LLC and Alan
Christopher Redmond

Norman M. Valz, Esquire (Pa. No. 61338)
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
(215) 756-2424
nvalz@msn.com

IN THE COURT OF COMMON PLEAS
BERKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| JASON SCOTT JORDAN,<br>                    Plaintiff,<br><br>            v.<br><br>BENE MARKET, LLC, ALAN CHRISTOPHER REDMOND, individually and d/b/a "The Lead House," and STEPHANIE MILLER,<br>                    Defendants. | CIVIL ACTION No. 22-11757 |

## ANSWER AND NEW MATTER TO COMPLAINT

Defendants[1] Bene Market, LLC ("Bene Market") and Alan Christopher Redmond ("Redmond") answer the Complaint of Plaintiff, Jason Scott Jordan ("Jordan") as follows:

1.    Admitted that Jordan is an adult individual.  Defendants lack knowledge or information sufficient to answer the allegation regarding Jordan's residency and therefore deny them.

2.    Denied as stated.

---

[1]    By stipulation approved by the Court, the Complaint is dismissed as to Defendant Stephanie Miller, and she is no longer a party to this action.

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

3.      Admitted that Redmond is an adult individual.  The allegation regarding his residence address is denied.

4.      By stipulation approved by the Court, the Complaint is dismissed as to Defendant Stephanie Miller, and she is no longer a party to this action.

5.      Admitted that Redmond is a member of Bene Market.  The remaining allegations of this paragraph are denied.

6.      Denied.

7.      Admitted.

8.      Admitted that, on December 20, 2021, the Berks County Court of Common Pleas entered a Decision and Verdict in Case No. 14-17117 (the "Prior Action"), and awarding a total of $13,105,107.20, including compensatory damages of $8,105,197.20 and $5 million in punitive damages in Jordan's favor and against Redmond.  The ensuing judgment is on appeal.

9.      Denied as stated.  The cited provision includes a finding that Redmond and Jordan became 50/50 shareholders of National Brokers of America, Inc. ("NBOA") as of November 1, 2013.

10.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

11.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

142341749.1 - 2/7/2023 10:43:40 AM                    2

12.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

13.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

14.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

15.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

16.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

17.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

18.     Denied as stated.  An order and amended order as reflected on the docket of the Prior Action resulted in the entry of judgment.

19.     Denied as stated.  As reflected in the records of the Delaware Department of State, Bene Market was formed on May 25, 2016.

20.     Denied that a deposition transcript was attached to the Complaint.

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

142341749.1 - 2/7/2023 10:43:40 AM                3

21.     Denied that a deposition transcript was attached to the Complaint, but admitted that Bene Market was formed on May 25, 2016 as reflected in the records of the Delaware Department of State.

22.     Denied as stated.  Denied that a deposition transcript was attached to the Complaint, but admitted that Bene Market sold health and disability coverage and benefit products and received commissions for such sales.

23.     Denied that a deposition transcript was attached to the Complaint.  Admitted that Redmond had a 96 percent membership interest and Miller had a four percent membership interest in Bene Market, but that this is no longer the case.

24.     Denied that a deposition transcript was attached to the Complaint.  Admitted that Bene Market commenced business operations after NBOA ceased business operations.

25.     Denied that a deposition transcript was attached to the Complaint.  Admitted that Bene Market hired some personnel who had previously worked for NBOA.

26.     Denied that a deposition transcript was attached to the Complaint.  Denied that Redmond engaged in a "persistent pattern of deception and half-truths."  Admitted that Bene Market hired some personnel who had previously worked for NBOA.

27.     Denied that a deposition transcript was attached to the Complaint.  Denied that Miller "followed" Redmond.

28.     Denied that a deposition transcript was attached to the Complaint.  The remaining allegations of this paragraph are denied.

29.     Denied.

30.     Denied that a deposition transcript was attached to the Complaint.  The remaining allegations of this paragraph are denied.

142341749.1 - 2/7/2023 10:43:40 AM                    4

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

31.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

32.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

33.     Denied as stated, as Jordan has characterized and only partially cited the Decision and Verdict.  Redmond refers to the larger Decision and Verdict for the proper context, and notes that the judgment that followed the Decision and Verdict is on appeal.

34.     Denied.

35.     Denied.

### Count I – Unjust Enrichment (Plaintiff v. Defendants)

36.     Bene Market and Redmond incorporate their answers in the foregoing paragraphs as if restated here.

37.     Denied as stated.  Admitted that Jordan was afforded a 50 percent shareholder interest in NBOA, which he lost in connection with his termination as asserted in the Prior Action, the judgment in which is on appeal.

38.     Denied.

39.     Denied as stated.  Admitted that Miller was the CFO of NBOA.  Denied that Miller "followed" Redmond.

40.     Denied.

41.     Denied.

42.     Denied.

142341749.1 - 2/7/2023 10:43:40 AM                              5

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

WHEREFORE, Bene Market and Redmond request that the Court dismiss the Complaint and award them such other relief as may be appropriate.

### Count II – Piercing the Corporate Veil (Plaintiff v. Bene Market)

48.    Bene Market and Redmond incorporate their answers in the foregoing paragraphs as if restated here.

49.    Denied as stated.  Admitted that Jordan was afforded a 50 percent shareholder interest in NBOA, which he lost in connection with his termination as asserted in the Prior Action, the judgment in which is on appeal.

50.    Denied as stated.  Admitted that Miller was the CFO of NBOA.  Denied that Miller "followed" Redmond.

51.    Denied.

52.    Denied.

53.    This is an assertion of law to which no answer is required.  To the extent that an answer is required, denied.

54.    Denied.

55.    This is an assertion of law to which no answer is required.  To the extent that an answer is required, denied.

56.    Denied.

142341749.1 - 2/7/2023 10:43:40 AM                    6

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

WHEREFORE, Bene Market and Redmond request that the Court dismiss the Complaint and award them such other relief as may be appropriate.

## NEW MATTER

Bene Market and Redmond may rely on the following affirmative or special defenses in this matter:

1. Jordan fails to state claims on which relief can be granted.

2. Jordan improperly asserts claims for unjust enrichment in that cannot establish that he conferred any benefit on Bene Market or Redmond.

3. Jordan cannot demonstrate entitlement to pierce the corporate veil.

4. Jordan fails to allege any basis for imposing joint and several liability and cannot demonstrate that the appointment of a receiver is warranted.

5. Jordan's claims fail in that they erroneously rely on issue or claim preclusion as to the Prior Action.

6. Jordan's claims fail in that Bene Market and Redmond breached no duty or obligation to him by operation of contract or law.

7. Jordan's claims are barred, in whole or in part, by the statute of limitations.

8. Jordan's claims are barred, in whole or in part, by his prior breach of contract.

142341749.1 - 2/7/2023 10:43:40 AM 7

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

9. Jordan's claims are barred, in whole or in part, by the doctrines of setoff and recoupment.

10. Jordan's claims fail for the reasons stated in the appeal of the judgment in the Prior Action, which is docketed as appeal number 642 MDA 2022 before the Pennsylvania Superior Court.

11. Jordan's claims are barred, in whole or in part, by the doctrines of laches, estoppel, and unjust enrichment.

12. Jordan's claims are barred, in whole or in part, by the economic loss doctrine and gist of the action doctrine.

13. Jordan's claims are barred, in whole or in part, because punitive damages cannot be imputed to a nonparty to an underlying proceeding.

14. Jordan's claims are barred by the doctrine of unclean hands and for failure of consideration for at least the reasons that, in order to procure his position with NBOA, he falsely claimed that he was licensed to sell insurance in Pennsylvania and elsewhere, and that he had sufficient education and experience to do so, that he had no criminal record, and that he had the professional capability to serve as sales manager.

15. Bene Market and Redmond reserve the right to amend to assert different or additional defenses as the case proceeds and discovery warrants.

142341749.1 - 2/7/2023 10:43:40 AM                   8

WHEREFORE, Bene Market and Redmond respectfully requests that this Court dismiss the Complaint and award them such other relief as may be appropriate.

Respectfully submitted,

/s/ Eric E. Reed
Fox Rothschild LLP
Eric E. Reed, Esquire
Stephanie Ohnona, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000
(215) 299-2150 (facsimile)

Norman M. Valz, Esquire
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
Tel. 215.756.2424
Fax 215.827.5758

*Attorneys for Defendants Bene Market LLC
and Alan Christopher Redmond*

Dated:  February 7, 2023

Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757

142341749.1 - 2/7/2023 10:43:40 AM                 9

**Received County of Berks Prothonotary's Office on 02/07/2023 10:46 AM Prothonotary Docket No. 22-11757**

IN THE COURT OF COMMON PLEAS
BERKS COUNTY, PENNSYLVANIA

JASON SCOTT JORDAN,

               Plaintiff,

    v.

BENE MARKET, LLC, ALAN CHRISTOPHER
REDMOND, individually and d/b/a "The Lead
House," and STEPHANIE MILLER,

               Defendants.

CIVIL ACTION No. 22-11757

## CERTIFICATE OF SERVICE

I certify that on February 7, 2023, a true and correct copy of the foregoing Answer and

New Matter was filed with the court using the electronic filing system, which will provide notice

and a copy to the below, and a copy was also sent by email:

Joel A. Ready, Esquire
CORNERSTONE LAW FIRM, LLC
8500 Allentown Pike, Suite 3
Blandon, PA  19510
*Counsel for Plaintiff*

**FOX ROTHSCHILD, LLP**

   /s/ Eric E. Reed
Eric E. Reed, Esquire
Stephanie Ohnona, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000
(215) 299-2150 (facsimile)

*Attorneys for Defendants Bene Market LLC
and Alan Christopher Redmond*

Dated:  February 7, 2023

# Exhibit D

# Exhibit D



**COMMONWEALTH OF PENNSYLVANIA**
*Department of State*
*Bureau of Corporations and Charitable Organizations*
PO Box 8722
Harrisburg, Pennsylvania 17105-8722
**ARTICLES OF INCORPORATION - NONPROFIT**
Fee: $125

| Pennsylvania Department of State |
| --- |
| **-FILED-** |
| File #: 0003613454 |
| Date Filed: 1/9/2023 |

0003613454

B0502-3894 01/09/2023 12:25 PM Received by Pennsylvania Department of State

---

## DSCB: 15-5306/7102 (rev. 2/2017)

In compliance with the requirements of 15 Pa.C.S. § 5306 (relating to articles of incorporation) or 15 Pa.C.S. § 7102 (relating to cooperative corporations generally), the undersigned, desiring to incorporate a nonprofit/nonprofit cooperative corporation, hereby state(s) that:

**Nonprofit Corporation Type**

| | |
| --- | --- |
| Filing type | Domestic Nonprofit Corporation |
| Nonprofit filing subtype | Nonprofit Corporation |

**Corporation Name**

| | |
| --- | --- |
| Business name | Alan Redmond Charitable Foundation |

**Effective Date**

The filing shall be effective when filed with the Department of State

The corporation is incorporated under the Nonprofit Corporation Law of 1988 for the following purpose or purposes.

Charitable donations for the benefit of Communities and Educational organizations

**Additional Information**

**The corporation does not contemplate pecuniary gain or profit, incidental or otherwise.**

☒ The incorporators constitute a majority of the members of the committee authorized to incorporate such association by the requisite vote required by the organic law of the association for the amendment of such organic law.

This corporation shall have members.

**Registered Office**

The address of this corporation's proposed registered office in this Commonwealth is

LEGAL: NORMAN VALZ
8 MORGAN DR
READING, PA 19608-1753

BERKS

**Stock**

The corporation is organized on a nonstock basis

**Incorporators**

| Name of individual or organization | Address |
| --- | --- |
| Alan C. Redmond | 8 Morgan Drive<br>Reading, PA 19608 |

**Additional provisions of the articles, if any**

Additional provisions

**Electronic Signature**

IN TESTIMONY WHEREOF, the incorporator(s) has/have signed these Articles of Incorporation

| *Alan C. Redmond* | *01/09/2023* |
| --- | --- |
| Alan C. Redmond | Date |

Page 1 of 1

# Exhibit E

Exhibit E



**Register of Wills and Clerk of Orphans' Court Division
of the Court of Common Pleas
of Berks County, Pennsylvania**

# MARRIAGE CERTIFICATION

I, Suzanne M. Myers, Clerk of Orphans' Court of Berks County, do hereby certify that:

### SHANNON   KROEMMELBEIN , 39

### and

### ALAN  CHRISTOPHER  REDMOND , 39,

were duly married on December 4th, 2021; and that a return of the solemnization of said marriage is

recorded in marriage Vol. 486   No. 307 and having been solemnized by  REV. BETH PALUBINSKY,

MINISTER OF THE GOSPEL on December 4th, 2021 at PHILADELPHIA, PHILADELPHIA County,

PA.

Witness my hand and seal this 31st day of May, 2024.

_____

Clerk of the Orphan's Court

_____

Asst Clerk of the Orphan's Court

# Exhibit F

Exhibit F

  

**INSTRUMENT # 2022035109**

RECORDED DATE: 08/31/2022 03:09:38 PM

5106417-0022L

## Mary Kozak
## Berks County Recorder of Deeds

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | |
|---|---|
| **Document Type:**   DEED | **Transaction #:**                    5889320 |
| | **Document Page Count:**     4 |
| | **Operator Id:**                      lmessersmith |

**PARCEL ID(s): (See doc for additional parcel #'s)**
96439615633786

**SUBMITTED BY:**
Wyomissing Abstract, LLC
1100 BERKSHIRE BLVDSUITE 100

WYOMISSING, PA 19610
(610) 372-8201

**\* PROPERTY DATA:**

Municipality:          WYOMISSING BOROUGH
School District:       SD WYOMISSING|WILSON

**\*\* PLEASE SEE DOCUMENT OR INDEX FOR ADDITIONAL PROPERTY DATA**

| | | |
|---|---|---|
| **CONSIDERATION/SECURE AMT:** | $2,800,000.00 | |
| **TAXABLE AMOUNT:** | $2,800,000.00 | **INSTRUMENT #: 2022035109** |
| **FEES / TAXES:** | | Recorded Date: 08/31/2022 03:09:38 PM |
| RECORDING FEES: DEED | $14.75 | |
| AFFORDABLE HOUSING FEE | $11.50 | I hereby CERTIFY that this document is recorded |
| RECORDS IMPROVEMENT FUND | $5.00 | in the Recorder of Deeds Office in Berks County, |
| JUDICIAL FEE | $40.25 | Pennsylvania. |
| WRIT TAX | $0.50 | |
| PARCEL ID FEE | $10.00 | |
| WYOMISSING BOROUGH | $14,000.00 | |
| STATE RTT | $28,000.00 | |
| WYOMISSING SD | $14,000.00 | |
| **Total:** | $56,082.00 | **Mary Kozak** |
| | | **Recorder of Deeds** |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 5

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

Prepared by:
Wyomissing Abstract, LLC
925 Berkshire Boulevard, Suite 100
Wyomissing, PA 19610
(610) 898-6210
File No. 15081-WA

Return to:
Wyomissing Abstract, LLC
925 Berkshire Boulevard, Suite 100
Wyomissing, PA 19610

Premises:
2 High Road
Wyomissing, PA 19610

Borough of Wyomissing
Parcel No 96-4396-15-63-3786

# This Deed, made this 24th day of August, 2022,

# Between,

**Patrick J. Shields and Margaret M. Shields, husband and wife**

> (hereinafter called the Grantors), of the one part, and

**Shannon Kroemmelbein**

> (hereinafter called the Grantee), of the other part,

# Witnesseth, That in consideration of **$2,800,000.00** and other Good and Valuable Consideration

in hand paid, the receipt whereof is hereby acknowledged, the said Grantors does hereby grant and convey unto the said Grantee, her heirs and assigns,

**See Attached Exhibit A**

# EXHIBIT A

.

PREMISES A

ALL THAT CERTAIN tract or piece of land together with the two and one-half story brick dwelling house, garage, and other improvements thereon erected, lying on the Easterly side of High Road, 60 feet wide, North of Lauers Lane, situate in the Borough of Wyomissing, County of Berks, and Commonwealth of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point in the Eastern building line of High Road, a corner of property now or late belonging to Wyomissing Foundation, Inc.; thence leaving said High Road and extending along said property now or late belonging to Wyomissing Foundation, Inc. North seventy-eight degrees twenty-nine minutes East (N. 78°29' E.), a distance of two hundred ninety-nine and sixty-one one-hundredths feet (299.61') to a point; thence extending along property now or late of the Borough of Wyomissing South eleven degrees thirty minutes East (S. 11° 30' E.), a distance of three hundred fifty-seven and sixty-eight one-hundredths feet (357.68') to a point; thence extending along property now or late belonging to Marriott D. Sturgis and Lottie B. Sturgis, his wife, South eighty-three degrees five minutes West (S. 83°05' W.), a distance of three hundred thirty-two and sixty-five one-hundredths feet (332.65') to a point in the curve of the aforesaid Eastern building line of High Road. Thence extending along said building line of High Road along the arc of a curve deflecting to the left, having a radius of eight hundred fifty feet (850'), a central angle of fifteen degrees forty-five minutes fifty-four seconds (15°45' 54"), a distance along the arc of two hundred thirty-three and eighty-eight one-hundredths feet (233.88'), said arc having a chord bearing of North three degrees thirty-seven minutes three seconds West (N. 03°37' 03" W.), a distance along the chord of two hundred thirty-three and fourteen one-hundredths feet (233.14') to a point of tangent in said building line; thence continuing along said building line of High Road North eleven degrees thirty minutes West (N. 11°30' W.), a distance of one hundred and three one-hundredths feet (100.03') to the place of beginning.

CONTAINING in area two and four hundred thirty-three one-thousandths (2.433) acres.

Berks County Records-1c30095-pmm   Document # 2023059909/24   Registered 09/09/24 14:59:10 08/31/2022 03:09:38 PM
Exhibit    Page 62 of 296

**Legal Description- Page 2**

PREMISES B

ALL THAT CERTAIN irregular shaped lot or piece of ground representing that area lying between the former right-of-way line of High Road and the new right-of-way line of High Road, adjacent to property belonging to Joseph F. Welch on the East side of High Road, as shown on High Road - Relocation and Subdivision, dated May 25, 1984, prepared by McCloud, Scatchard, Derck and Edson, Landscape Architects, for Wyomissing Foundation, Inc., recorded in Berks County records in Plan Book No. 134 page 35, situate in the Borough of Wyomissing, County of Berks, and Commonwealth of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point in the Eastern right-of-way line or building line of High Road at P.C.C. Station 17 plus 03.14, a corner of property belonging to Marriott D. Sturgis and Lottie B., his wife; thence extending in a Northerly direction along the new right-of-way line of said High Road as shown on said Plan the three following courses and distances, viz: (1) along the arc of a curve deflecting to the left, having a radius of 363.23 feet, a central angle of 20 degrees 24 minutes 50 seconds, a distance along the arc of 129.42 feet, said arc having a chord bearing of North 14 degrees 29 minutes 02 seconds West, a distance along the chord of 128.73 feet to a point of tangent; (2) North 24 degrees 41 minutes 27 seconds West, a distance of 55.70 feet to a point of curve; and (3) along the arc of a curve deflecting to the right, having a radius of 1817.57 feet, a central angle of 04 degrees 38 minutes 57 seconds, a distance along the arc of 147.48 feet, said arc having a chord bearing of North 22 degrees 21 minutes 58 seconds West, a distance along the chord of 147.44 feet to a point in line of property belonging to the Borough of Wyomissing. Thence leaving said right-of-way line of High Road and extending along said property belonging to the Borough of Wyomissing North 69 degrees 56 minutes 30 seconds East, a distance of 30.00 feet to a point; thence extending in a Southerly direction along the former right-of-way line of High Road, being along property belonging to Joseph F. Welch and Marcia P., his wife, the two following courses and distances, viz: (1) South 20 degrees 02 minutes 29 seconds East, a distance of 100.04 feet to a point of curve, and (2) along the arc of a curve deflecting to the right, having a radius of 850.00 feet, a central angle of 15 degrees 45 minutes 53 seconds, a distance along the arc of 233.87 feet, said arc having a chord bearing of South 12 degrees 09 minutes 33 seconds East, a distance of 233.14 feet to the place of beginning.

CONTAINING in area 0.1308 acres.

BEING THE SAME PREMISES WHICH Joseph F. Welch and Marcia P. Welch, his wife, by Deed dated 07/27/2000 and recorded 07/28/2000 in the Office for the Recorder of Deeds in and for the County of Berks, and Commonwealth of Pennsylvania in Record Book 3225, Page 51, granted and conveyed unto Patrick J. Shields and Margaret M. Shields, husband and wife.

**THE ACTUAL CONSIDERATION IS $2,800,000.00**

**And** the said Grantors doth hereby covenant to and with the said Grantee that they, the said Grantors, their successors, SHALL and WILL, Specially Warrant and forever defend the herein above described premises, with the hereditaments and appurtenances, unto the said Grantee, her heirs, against the said Grantors and against every other person lawfully claiming or who shall hereafter claim the same of any part thereof, by, from or under them or any of them.

In Witness Whereof, the said Grantors have caused these presents to be duly executed, the day and year first above written.

_____
Patrick J. Shields

_____
Margaret M. Shields

State of Pa                                    County of Berks

ON this, the 24 day of August 2022, before me the undersigned officer, personally appeared      Patrick J. Shields and Margaret M. Shields, husband and wife   known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

```
Commonwealth of Pennsylvania - Notary Seal
KAREN S MILLS - Notary Public
Berks County
My Commission Expires Mar 24, 2023
Commission Number 1113198
```

_____
Notary Public

Grantee Mailing Address:

2 High Road
Wyomissing . Pa
19610

# Exhibit G

# Exhibit G

  

**INSTRUMENT # 2021009280**

RECORDED DATE: 03/03/2021 03:13:17 PM

4988305-0017

**Mary Kozak**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | |
|---|---|
| **Document Type:**   AGREEMENT | **Transaction #:**                5683512<br>**Document Page Count:**      4<br>**Operator Id:**                   dfuoco |
| **PARCEL ID(s): (See doc for additional parcel #'s)**<br>65439514344377 | **SUBMITTED BY:**<br>Wyomissing Abstract, LLC<br>1100 BERKSHIRE BLVDSUITE 100<br><br>WYOMISSING, PA 19610<br>(610) 372-8201 |

**\* PROPERTY DATA:**

**\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA**

| **FEES / TAXES:** | | |
|---|---|---|
| RECORDING FEES: AGREEMENT | $66.50 | |
| RECORDS IMPROVEMENT FUND | $5.00 | |
| WRIT TAX | $0.50 | |
| PARCEL ID FEE | $10.00 | |
| **Total:** | $82.00 | |

**INSTRUMENT #: 2021009280**
Recorded Date: 03/03/2021 03:13:17 PM

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Berks County, Pennsylvania.



**Mary Kozak**
**Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 5

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

Prepared By:    Michael J. Gombar, Jr., Esquire
Masano ♦ Bradley, LLP
1100 Berkshire Boulevard, Suite 201
Wyomissing, PA 19610
(610)-372-7700

Return To:    Michael J. Gombar, Jr., Esquire
Masano ♦ Bradley, LLP
1100 Berkshire Boulevard, Suite 201
Wyomissing, PA 19610

Property Address:    400 East Wyomissing Avenue
Borough of Mohnton, Berks County, Pennsylvania
Parcel No. 65439514344377

## MEMORANDUM OF AGREEMENT

This MEMORANDUM OF AGREEMENT (this "Memorandum") is made as of the 17th day of December, 2020, by and between SJS - GTC, L.P., a New Jersey limited partnership ("SJS"), and ARC REALTY LLC, a Delaware limited liability company ("ARC").

## BACKGROUND

A.    SJS and ARC are parties to a certain Lease With Purchase Agreement (Installment Sales) dated November 10, 2020 (the "Agreement"), pursuant to which ARC has agreed to lease and purchase from SJS, by making Installment Payments (as defined in the Agreement) on account of the Purchase Price (as defined in the Agreement), that certain parcel of real estate comprising appx. 16.09 acres together with all buildings and improvements located thereon that is numbered and known as 400 East Wyomissing Avenue in the Borough of Mohnton, Berks County, Pennsylvania - Parcel No. 65439514344377, as more fully described in that certain Deed recorded at Record Book 3157, page 08881, Berks County Records (the "Premises").

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, INTENDING TO BE LEGALLY BOUND HEREBY, the parties hereto acknowledge and/or agree as follows:

1.    The Background Clauses set forth above are incorporated herein by reference.

2.    The term of the Agreement shall commence as of December 14, 2020 and expire as of September 1, 2024.

3.    As long as no default under the Agreement has occurred, ARC shall have the right and ability to purchase the Premises from SJS at any time during the term of the Agreement.

4.       Original copies of the Agreement are in the possession of SJS and ARC. The Agreement contains other terms not herein set forth but which are incorporated by reference herein for all purposes, and this Memorandum is executed for the purpose of placing parties dealing with the Premises on notice of the existence of the Agreement and, where appropriate, its contents, and shall ratify and confirm all other terms of the Agreement as fully as if the same had been set forth herein. Additional information concerning the terms of the Agreement can be obtained by persons with a legitimate interest therein from SJS or ARC.

5.       This Memorandum is intended for recording purposes only, and does not modify, supersede, diminish, add to or change all or any of the terms of the Agreement in any respect. To the extent that the terms hereof are inconsistent with the terms of the Agreement, the terms of the Agreement shall control.

6.       This Memorandum may be executed simultaneously or in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. The parties agree that facsimile or electronic signatures of this Agreement shall be deemed effective and equivalent to original signatures.

[ REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK
SIGNATURE PAGE IMMEDIATELY FOLLOWS ]

IN WITNESS WHEREOF, the parties hereto, INTENDING TO BE LEGALLY BOUND HEREBY, have executed this Memorandum as of the day and year first above written.

<u>SJS:</u>

SJS - GTC, L.P.
By: SJS Developers, Inc., its General Partner

By:

Steven Cravitz, President
STEPHEN

<u>ARC:</u>

ARC Realty LLC

By:

Alan C. Redmond, President and CEO

[NOTE: ALL SIGNATURES MUST BE PROPERLY NOTARIZED]

STATE OF _New Jersey_

COUNTY OF _Burlington_

: ss

On this 17th day of _December_, 2020, before me, a notary public, the undersigned officer, personally appeared Steven Cravitz, who acknowledged himself to be the President of SJS - GTC, L.P., a New Jersey limited partnership, and that he as such officer, being authorized to do so, executed the within instrument for the purposes therein contained by signing the name of the partnership by himself as such officer.

In Witness Whereof, I hereunto set my hand and official seal, the day and year aforesaid.

_Dina M. Zornes_
Notary Public

Dina M. Zornes
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires on April 11, 2022

STATE OF _PA_

COUNTY OF _Berks_

: ss

On this 15th day of _December_ 2020, before me, a notary public, the undersigned officer, personally appeared Alan C. Redmond, who acknowledged himself to be the President and CEO of ARC REALTY LLC, a Delaware limited liability company, and that he as such officer, being authorized to do so, executed the within instrument for the purposes therein contained by signing the name of the company by himself as such officer.

In Witness Whereof, I hereunto set my hand and official seal, the day and year aforesaid.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Gregory J. Lewis, Notary Public
Berks County
My commission expires April 30, 2022
Commission number 1189560
Member, Pennsylvania Association of Notaries

# Exhibit H

# Exhibit H

 



4856951-0006

**INSTRUMENT # 2019019377**

RECORDED DATE: 06/18/2019 09:06:19 AM

**Frederick C. Sheeler**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | | |
|---|---|---|
| **Document Type:  DEED** | **Transaction #:** | 5455026 |
| | **Document Page Count:** | 4 |
| | **Operator Id:** | KDiFazio |

| | |
|---|---|
| **PARCEL ID(s): (See doc for additional parcel #'s)**<br>96439614322819 | **SUBMITTED BY:**<br>RUSH LAW GROUP, LLC<br>38 N 6TH STRET<br><br>READING, PA 19601 |

**\* PROPERTY DATA:**

Municipality:        WYOMISSING BOROUGH
School District:      SD WYOMISSING|WILSON

\*\* PLEASE SEE DOCUMENT OR INDEX FOR ADDITIONAL PROPERTY DATA

**\* ASSOCIATED DOCUMENT(S):**

| | | |
|---|---|---|
| **CONSIDERATION/SECURE AMT:** | $1.00 | **INSTRUMENT #: 2019019377** |
| **TAXABLE AMOUNT:** | $0.00 | Recorded Date: 06/18/2019 09:06:19 AM |
| **FEES / TAXES:** | | |
| RECORDING FEES: DEED | $14.75 | I hereby CERTIFY that this document is recorded |
| AFFORDABLE HOUSING FEE | $11.50 | in the Recorder of Deeds Office in Berks County, |
| RECORDS IMPROVEMENT FUND | $5.00 | Pennsylvania. |
| JUDICIAL FEE | $40.25 | |
| WRIT TAX | $0.50 | |
| PARCEL ID FEE | $10.00 | |
| **Total:** | $82.00 | **Frederick C. Sheeler**<br>**Recorder of Deeds** |

## OFFICIAL RECORDING COVER PAGE

Page 1 of 5

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

**Prepared By:**
**Rush Law Group, LLC**
**38 N. 6th Street**
**Reading, PA 19601**
**(610) 413-5337**

**Return To:**
**Alan C. Redmond**
**2005 Regency Drive**
**Wyomissing, PA 19610**

**Premises:**
**2005 Regency Drive**
**Wyomissing Borough**

**Parcel ID: 96-4396-14-32-2819**

# THIS DEED, made this 5th day of June, 2019,

# BETWEEN,

**ARC REALTY, L.L.C., a Delaware Limited Liability Company** (hereinafter called

the "Grantor"), of the one part, and

**And**

**ALAN C. REDMOND** (hereinafter called the "Grantee"), of the other part.

**WITNESSETH,** That in consideration of **$1.00** and other Good and Valuable Consideration.

in hand paid, the receipt is hereby acknowledged, the said Grantors do hereby grant and convey
unto the said Grantee, its successors and assigns,

**See Attached Exhibit A**

## Exhibit A

**ALL THAT CERTAIN** lot or piece of ground lying on the Northern side of **Regency Drive,** a 50 feet wide street, between Logan Avenue and Greenbriar Court, said lot being known as Lot No. 38 as shown on Spruce Lane Plan of Lots, dated 6/3/1985, laid out for Spruce Lane Development Co., Inc., and recorded in Berks County Records in Plan Book No. 144 Page 32, situate in the **Borough of Wyomissing,** County of Berks, Commonwealth of Pennsylvania, being more fully bounded and described as follows, to wit:

**BEGINNING** at a point in the Northern building line of Regency Drive, being a corner between Lot No. 37 and 38 of said Plan of Lots; thence leave said building line of Regency Drive and extending in a Northerly direction along Lot No. 37 belonging to Frederick J. Rowan and Bernice T. Rowan, his wife, by a line making a right angle with the said building line of Regency Drive, a distance of 140.00 feet to a point in line of property belonging to the now or late Berks Development Corp., reserved as a Green Belt Area; thence extending in an Easterly direction along said property reserved as a Green Belt Area, by a line making a right angle with the last described line, a distance of 91.04 feet to a point, a corner of Lot No. 39 of said Plan Lots; thence extending in a Southerly direction along said Lot No. 39, belonging to Albert M. Griffith, 3rd, by a line making an interior angle of 97 degrees 55 minutes 44 seconds with the last described line, a distance of 135.56 feet to a point in the curve of the Northern building line of Regency Drive, thence extending in a Westerly direction along said building line of Regency Drive, being along the arc of a curve deflecting to the right, having a radius of 600.00 feet, a central angle of 7 degrees, 55 minutes, 44 seconds, a distance along the arc of 83.03 feet to a point of tangent in said building of Regency Drive; thence continuing along said building line of Regency Drive in a Westerly direction, by a line tangent to the last described curve, a distance of 26.97 feet to the place of beginning.

**CONTAINING** in area: 13,949.66 square feet.

**BEGINNING THE SAME PREMISES WHICH** SALVATORE ANZALONE and JUDY ANN ANZALONE, HUSBAND AND WIFE., by Deed dated 4/26/2019 and recorded 5/07/2019 in the Office for the Recorder of Deeds in and for the COUNTY of BERKS, and COMMONWEALTH of PENNSYLVANIA with instrument number 2019014035, granted and conveyed unto ARC REALTY.

AND the said Grantor doth hereby covenant to and with the said Grantee that they, the said Grantor, its owners and their heirs, SHALL AND WILL, Specially Warrant and forever defend the herein above described premises, with the hereditaments and appurtenances, unto the said Grantee, his successors and assigns, against the said Grantor and against every other person lawfully claiming or who shall hereafter claim the same of any part thereof, by, from or under him, her or any of them.

IN WITNESS WHEREOF, the said Grantor has caused these presents to be duly executed, the day and year first above written.

_____
Witness (Print):

_____
ARC Realty LLC
By: Alan C. Redmond, Sole Owner

Commonwealth of Pennsylvania    :
County of Berks                 :

On this, the 5th day of June, 2019, before me the undersigned Officer, personally appeared Alan C. Redmond, known to me (or satisfactorily proven) to be the same person whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Commonwealth of Pennsylvania

```
Notarial Seal
STEPHANiE F MILLER – Notary Public
CITY OF READING, BERKS COUNTY
My Commission Expires Aug 23, 2021
```

_____
Notary Public

Grantee Mailing Address:

2005 Regency Drive
Wyomissing, PA 19610

RECORDER'S USE ONLY

**1830019105**

## pennsylvania
DEPARTMENT OF REVENUE    (EX) MOD 04-19 (FI)

# REV-183
BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

## REALTY TRANSFER TAX
## STATEMENT OF VALUE
COMPLETE EACH SECTION

| RECORDER'S USE ONLY | |
|---|---|
| State Tax Paid. | |
| Book: | Page: |
| Instrument Number | |
| Date Recorded | |

### SECTION I    TRANSFER DATA

Date of Acceptance of Document

| Grantor(s)/Lessor(s) | Telephone Number | Grantee(s)/Lessee(s) | Telephone Number |
|---|---|---|---|
| ARC Realty, LLC | 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 | Alan C. Redmond | 814-440-9068 |
| Mailing Address | | Mailing Address 2005 Regency Drive | |

| City | State | ZIP Code | City | State | ZIP Code |
|---|---|---|---|---|---|
| Wyomissing | PA | 19610 | Wyomissing | PA | 19610 |

### SECTION II    REAL ESTATE LOCATION

| Street Address | City, Township, Borough |
|---|---|
| 2005 Regency Drive | Wyomissing Borough |

| County | School District | Tax Parcel Number |
|---|---|---|
| Berks | Wyomissing | 96439614322819 |

### SECTION III    VALUATION DATA

Was transaction part of an assignment or relocation?    ☐ YES    ⬤ NO

| 1. Actual Cash Consideration $1.00 | 2. Other Consideration + $0.00 | 3. Total Consideration = $1.00 |
|---|---|---|
| 4. County Assessed Value $494,200.00 | 5. Common Level Ratio Factor x 1.46 | 6. Computed Value = $721,532.00 |

### SECTION IV    EXEMPTION DATA - Refer to instructions for exemption status.

| 1a. Amount of Exemption Claimed $ 1.00 | 1b. Percentage of Grantor's Interest in Real Estate 100 % | 1c. Percentage of Grantor's Interest Conveyed 100 % |
|---|---|---|

**2. Check Appropriate Box Below for Exemption Claimed.**

☐ Will or intestate succession. _____
                             (Name of Decedent)                 (Estate File Number)

☐ Transfer to a trust. (Attach complete copy of trust agreement and all amendments.)

☐ Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)

☐ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)

    Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

⬛ Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

*Transfer from LLC to single member of LLC which was incorporated On 5/9/2016*

### SECTION V    CORRESPONDENT INFORMATION - All inquiries may be directed to the following person:

| Name | Telephone Number |
|---|---|
| William R.A. Rush, Esq. | 610-413-5337 |

| Mailing Address | City | State | ZIP Code |
|---|---|---|---|
| 38 N. 6th Street | Reading | PA | 19601 |

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

Signature of Correspondent or Responsible Party _____    Date *6/5/19*

FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.

**1830019105**    **1830019105**

**PAGE 1**

# Exhibit I

# Exhibit I

| | | |
|---|---|---|
| NATIONAL BROKERS OF OF AMERICA, INC.,<br>    Plaintiff, | :<br>:<br>: | CIVIL ACTION – LAW |
| | : | |
| v. | : | |
| | : | No. 14-17117 |
| JASON SCOTT JORDAN,<br>    Defendant. | :<br>: | |

### ALAN REDMOND's OBJECTIONS AND ANSWERS
### TO FIRST INTERROGATORIES IN AID OF EXECUTION OF JUDGMENT

Alan Redmond ("Redmond"), by and through undersigned counsel, hereby submits the following Objections and Answers to First Interrogatories in Aid of Execution of Judgment:

### GENERAL STATEMENT AND OBJECTIONS

1.      Redmond objects to Defendant's First Set of Interrogatories to the extent the same purport to impose obligations beyond those set forth in the applicable Rules of Civil Procedure.

2.      Redmond objects to Defendant's First Set of Interrogatories insofar as they seek information protected by the attorney-client privilege or the attorney work product doctrine.  Such information will not be provided.

3.      Redmond objects to Defendant's First Set of Interrogatories to the extent they seek information in the public record which is equally available to the Defendant.

4.      Any statements herein that responsive documents will be produced should not be taken to mean that any such documents actually exist, but only that if they exist and can be located through a reasonable search of Redmond's records, they will be produced.

5.      By making a specific objection to a particular Interrogatory, Redmond does not imply that the specific objection is not applicable to any other particular response, or that the general objections are not applicable to that response.

1

6.      While Redmond has responded to these Interrogatories, he does so without waiver of any rights to object to any further inquiry or any effort to compel responses beyond those provided herein.

## ANSWERS TO INTERROGATORIES

1.      Identify your legal name, home address, date of birth, Social Security Number, driver's license number (with expiration date), and any telephone number used by you for any purpose.

ANSWER:  **Alan Redmond, 1198 Reading blvd, Wyomissing, pa 19610, Social: xxx-xxx-5092, phone number: 814-440-9068. DL: 29-309-475**

2.      Identify all your passports, including Passport Number, Passport Expiration Date, and Passport Issuing Country.

ANSWER:  **Objection.  Redmond's passport is not reasonably calculated to lead to the discovery of relevant or admissible evidence.**

3.      Identify your national citizenship, including whether you have dual-citizenship status, and your citizenship among any of the States or territories within the United States of America.

ANSWER:  **United Kingdom.**

4.      Since August 4, 2014, identify all real properties where for a minimum of 30 nonconsecutive days you have slept overnight and whether or not titled in your name.

ANSWER:  **Objection.  Where Redmond sleeps is not reasonably calculated to lead to**

**the discovery of relevant or admissible evidence, and further, such request is sought in bad faith and intended to cause unreasonable annoyance, embarrassment, and oppression in violation of Pa.R.C.P. 4011(a) and (b).**

5.      Identify all of your current real properties, directly or indirectly owned by you or under your control or by any entity of which you possess an ownership or membership interest.

ANSWER:  **Objection.  This interrogatory is confusing and ambiguous as to what is meant "all of your current real properties, directly or indirectly owned by you or under your control."  Redmond does not understand the scope of this ambiguous interrogatory.  Without waiver of same, Redmond owns the following real property: 2005 regency drive, Wyomissing, pa, 19610.**

6.      Based on your answer to Interrogatory No.  5,  identify  all fixtures, goods, equipment, inventory, farm products, and timber therein which have a value of $50 or more.

ANSWER: **Objection.  This interrogatory is confusing and ambiguous as it refers to Interrogatory No. 5, which requests "all of your current real properties, directly or indirectly owned by you or under your control."  Redmond does not understand the scope of this ambiguous interrogatory.  Without waiver of same, Redmond owns the real property identified in Interrogatory No. 5.  As to the fixtures, goods, equipment located in such real property, pursuant to Pa.R.C.P. 4006(b), the answer to such questions may be derived from the Defendant's own inspection of the premises, if he so chooses.**

7.      Since August 4, 2014, identify all of your real properties you have conveyed, including the grantee.

ANSWER: **Objection.  This interrogatory is overly broad in terms of the temporal scope.  Without waiving same, the following are real property transactions since Defendant obtained a judgment: None.**

3

**8.** Identify all of your rights to oil, gas, timber, or other minerals before extraction.

ANSWER:  **Objection.  This interrogatory is vague and confusion as to its reference to the meaning of "before extraction."  Without waiver of same, Redmond does not own any of the above.**

**9.** Identify all your leases and leasehold interests. For each of the foregoing, specify whether you are the lessor or lessee.

ANSWER:  **2005 regency drive, Wyomissing, pa, 19610. Lessor.**

**10.** Identify all collections of currency and coins in your possession, including historical collections.

ANSWER:  **None.**

**11.** Identify any and all institutions in which you maintain a safe deposit box.

ANSWER: **None.**

**12.** Since August 4, 2014, identify all of your transfers of money and coins, including historical collections, which exceeded $1,000 per transaction.

ANSWER:  **Objection.  This interrogatory is overly broad and not reasonably calculated to lead to relevant or admissible evidence.  Identifying all monetary**

4

**transactions since August 2014 is beyond the scope of reasonable discovery as it would include payments Redmond may have made for such basic needs as food, shelter, utilities, clothing and similar items for value.**

13.     Identify all of your current sources of income, including self-employment, rental income, general intangible, payment intangible, proceeds, noncash proceeds.

ANSWER: **Rental income. Consulting income**.

14.     Since August 4, 2014, identify all of your sources of income, including self-employment and rental income.

ANSWER: **Objection.  This interrogatory is overly broad and not reasonably calculated to lead to relevant or admissible evidence.  Identifying all sources of income since August 2014 is beyond the scope of reasonable discovery.  Without waiver of same, below are the sources of Redmond's income since the date of Defendant's judgment:**

**Consulting income.**

**Rental income.**

**15.**     Identify all cash registers where you have authority to withdraw money and coins.

ANSWER:  **Objection.  This interrogatory is vague and confusing as to what is meant by "cash registers."  This Interrogatory is also overly broad and not reasonably calculated to lead to relevant or admissible evidence.  This Interrogatory makes no distinction between "cash registers" owned by Redmond and those which he may have authority over as an agent of a principal.  Without waiver of same,  Mr Redmond has been unable to secure a bank account based on his credit and banking history. Mr. Redmond does not own a bank account.**

**16.**     Identify all of your current financial assets within the meaning of 13 Pa.C.S. § 8102. For each of the foregoing, identify the person who serves as an intermediary.

ANSWER:  **Objection.  This Interrogatory is vague and confusing and requires Redmond to make legal conclusions as to the referenced statute as to the legal meaning of terms such as "a security," "securities intermediary" as well as "a certificated or uncertificated security, a security certificate or a security entitlement."  Redmond is not required to interpret complicated statutes containing such legal terms in answering discovery.**

6

**17.**     Since August 4, 2014, identify all of your financial assets within the meaning of 13 Pa.C.S. § 8102 which you transferred to another person. For each of the foregoing, identify the person to whom you transferred the same, as well as the identity of the person who served as an intermediary.

ANSWER:  **Objection.  This Interrogatory is vague and confusing and requires Redmond to make legal conclusions as to the referenced statute as to the legal meaning of terms such as "a security," "securities intermediary" as well as "a certificated or uncertificated security, a security certificate or a security entitlement."  Redmond is not required to interpret complicated statutes containing such legal terms in answering discovery.**

**18.**     Identify all of your current accounts, commodity accounts, securities accounts, rights to payment evidence by chattel paper or an instrument, bonds, commercial tort claims, deposit accounts, investment property, letter-of-credit right or letters of credits, and rights to payment for money or funds advanced or sold.

ANSWER:  **Objection.  This Interrogatory is vague and confusing and requires Redmond to make legal conclusions on the meaning of "chattel paper" and "commercial tort claims."  Without waiver of same, based on Redmond's layperson understanding, he does not have any of the above apart from 2005 regency drive, Wyomissing, pa, 19610 which is currently in foreclosure.**

19.    Arising on and after August 4, 2014, identify all of your accounts, commodity accounts, securities accounts, rights to payment evidence by chattel paper or an instrument, bonds, commercial tort claims, deposit accounts, investment property, letter-of-credit right or letters of credits, and rights to payment for money or funds advanced or sold.

ANSWER: **Objection.  This Interrogatory is vague and confusing and requires Redmond to make legal conclusions on the meaning of "chattel paper" and "commercial tort claims."  Without waiver of same, based on Redmond's layperson understanding. Mr. Redmond does not own any of the above.**

20.    Identify all your proprietorships that you identify as a going concern.

ANSWER:  **Objection.  This Interrogatory is vague and confusing as to what is meant by a "proprietorship."  This is a legal term that may have multiple or alternative meanings.  By way of further response, this Interrogatory is vague and confusing as to what is meant by a "going concern."  Without waiver of same, assuming this Interrogatory is requesting the names of businesses which Redmond solely owns, and which are financially stable enough to meet obligations, he states as follows: I have a number of personal judgements and personal guarantees that will likely result in personal bankruptcy in the next 1-2 months.  I own – NBOA Inc., Bene Market LLC, The Redmond Group, Redmond marketing.**

8

21.   Identify your proprietorships owned at any and all times since August 4, 2014, whether a going concern or not.

ANSWER:  **Objection.  This Interrogatory is vague and confusing as to what is meant by a "proprietorship."  This is a legal term that may have multiple or alternative meanings.  Further, requesting information from 10-years ago is overly broad.  By way of further response, this Interrogatory is vague and confusing as to what is meant by a "going concern."  Without waiver of same, assuming this Interrogatory is requesting the names of businesses which Redmond solely owns, and limiting same to the date the Judgment was entered in this matter, he states as follows:  I am unsure of what this means. Please elaborate or be specific.  I own – NBOA Inc, Bene Market LLC, The Redmond Group, Redmond Marketing.**

22.   Identify all entities anywhere in the world in which you have an ownership interest, or managerial rights, or where you exercise control, or any of the foregoing.

ANSWER:  **Objection.  This Interrogatory is vague and confusing as to what is meant by "exercise control" and "managerial rights."  This Interrogatory is also overly broad since it calls for information about entities in which Redmond has no ownership interest.  Without waiver of same, Redmond has ownership interest in the following entities:**

**NBOA Inc.**

**Bene-Market LLC.**

**The Redmond group LLC**

**Redmond Marketing LLC**

9

**23.** Identify all trusts anywhere in the world which have been created for the benefit of you or anyone in your household since August 4, 2014.

ANSWER: **Objection. This Interrogatory is overly broad in requesting information from ten years ago. Without waiving same, Redmond will provide information since the Judgment was entered in this matter, as follows: I do not own any trusts.**

**24.** Identify your mortgages, promissory notes, security agreements, surety agreements, personal guarantees, or unsecured loans. For each of the foregoing, specify whether you are the creditor or debtor.

ANSWER: **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Reedy. Please also refer to the Complaint in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.**

**25.** Identify all Financial Statements prepared by you, or on your behalf, which were submitted to any lending institution. For each of the foregoing, identify the lending institution and the person who assisted you in preparing the Financial Statement.

ANSWER: **Mr. Redmond has not applied for personal loans.**

**26.** Identify by name and company each accountant you have used since August 4, 2014.

ANSWER: **Objection as to any discovery served upon Redmond's accountant would be subject to the Pennsylvania Accountant-Client Privilege under 63 P.S. §9.11a, and thus this request is not reasonably calculated to lead to the discovery of relevant or admissible evidence.**

**27.** State with specificity how you maintain your financial books and records, including whether the same are maintained in electronic format, and where the same are stored.

ANSWER:  **Objection.  This Interrogatory is vague and confusing as to what is meant by "maintain" and "financial books and records."**

28.    Identify your judgment creditors, including the names of their attorney, the amount due and owing, and the court and docket number where the judgment issued.

ANSWER:  **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Reedy as well as the plaintiff's counsel in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.**

29.    Identify all of your other obligations not referenced in the preceding interrogatories, including alimony payments, child support payments, and delinquent tax liabilities.

ANSWER:  **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Reedy as well as the plaintiff's counsel in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.**

12

**30.** Identify your current pensions, retirement accounts, retirement savings accounts, and government benefits, including Social Security Benefits, whether from the United States or from a foreign country.

ANSWER: **Objection. Under Pennsylvania law, retirement savings vehicles like retirement accounts (IRAs), 401(k), 403(b) accounts, pensions and employee stock ownership plans (ESOPs) are generally exempt from creditor claims. 42 Pa.C.S. § 8124 (enumerating the tyes of retirement funds and accounts that shall be exempt from attachment or execution on a judgment).**

**31.** Identify all of your current motor vehicles, manufactured homes, mobile homes, trailers, aircraft, yachts, ships or sea-going vessels. For each of the foregoing, include the make, model, year of manufacture, liens and identity of lienholder, registration, license, or vehicle identification number.

ANSWER: **Cadillac Escalade 2017.**

13

**32.** Since August 4, 2014, identify all of the following you transferred: motor vehicles, manufactured homes, mobile homes, trailers, aircraft, yachts, ships or sea-going vessels. For each of the foregoing, include the make, model, year of manufacture, liens and identity of lienholder, registration, license, or vehicle identification number.

ANSWER:  **Objection.  This Interrogatory is overly broad in requesting information from ten years ago.  Without waiving same, Redmond will provide information since the Judgment was entered in this matter, as follows:  None.**

**33.**      Identify your life insurance contracts. For each of the foregoing, identify the serial or policy number or numbers, the face amount, the exact name and address of the insurance company, the named beneficiary or beneficiaries and their present address.

ANSWER:  **None.**

**34.**    Identify all other of your assets or personal property, which are not otherwise covered in the preceding interrogatories and valued at $1,000 or more.

ANSWER:  **None.**

**35.**    Regardless of whether you characterize it as a gift or for valuable consideration, identify all transfers of property of any kind made by you since August 4, 2014 to your parent, stepparent, spouse, former spouse, child, stepchild, former stepchild, or relative by blood or marriage, or to a partnership where you are a partner, or to an entity where you are a director, officer, or person in control. For each of the foregoing, include all jewelry, such as engagement rings and wedding bands and the face value of such.

> ANSWER:  **Objection.  This Interrogatory is overly broad as it would include, for example, payments for child support, alimony, and all gifts to relatives for the past ten years, which is unreasonable and not calculated to lead to the discovery of admissible evidence.  By way of further answer, this Interrogatory is sought in bad faith and intended to cause unreasonable annoyance, embarrassment, and oppression in violation of Pa.R.C.P. 4011(a) and (b).**

Dated: March 19, 2024          By:    ___/s/ Norm Valz_____
                                              Norm Valz, Esquire

15

## VERIFICATION

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the  foregoing statements made by me are willfully false, I am subject to punishment.

3/19/2024
Date

ALAN CHRISTOPHER REDMOND

# Exhibit J

# Exhibit J

| | | |
|---|---|---|
| NATIONAL BROKERS OF OF AMERICA, INC., | : | CIVIL ACTION – LAW |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 14-17117 |
| JASON SCOTT JORDAN, | : | |
| Defendant. | : | |

## ALAN REDMOND's *SUPPLEMENTAL* OBJECTIONS AND ANSWERS TO FIRST INTERROGATORIES IN AID OF EXECUTION OF JUDGMENT

Alan Redmond ("Redmond"), by and through undersigned counsel, hereby submits the following *Supplemental* Objections and Answers to First Interrogatories in Aid of Execution of Judgment (the supplemental information is *italicized*):

## GENERAL STATEMENT AND OBJECTIONS

1.      Redmond objects to Defendant's First Set of Interrogatories to the extent the same purport to impose obligations beyond those set forth in the applicable Rules of Civil Procedure.

2.      Redmond objects to Defendant's First Set of Interrogatories insofar as they seek information protected by the attorney-client privilege or the attorney work product doctrine.  Such information will not be provided.

3.      Redmond objects to Defendant's First Set of Interrogatories to the extent they seek information in the public record which is equally available to the Defendant.

4.      Any statements herein that responsive documents will be produced should not be taken to mean that any such documents actually exist, but only that if they exist and can be located through a reasonable search of Redmond's records, they will be produced.

5.      By making a specific objection to a particular Interrogatory, Redmond does not imply that the specific objection is not applicable to any other particular response, or that the general objections are not applicable to that response.

1

6.      While Redmond has responded to these Interrogatories, he does so without waiver of any rights to object to any further inquiry or any effort to compel responses beyond those provided herein.

### ANSWERS TO INTERROGATORIES

1.      Identify your legal name, home address, date of birth, Social Security Number, driver's license number (with expiration date), and any telephone number used by you for any purpose.

> ANSWER:  **Alan Redmond, 1198 Reading blvd, Wyomissing, pa 19610, Social: xxx-xxx-5092, phone number: 814-440-9068. DL: 29-309-475**

2.      Identify all your passports, including Passport Number, Passport Expiration Date, and Passport Issuing Country.

> ANSWER:  **Objection.  Redmond's passport is not reasonably calculated to lead to the discovery of relevant or admissible evidence.**

3.      Identify your national citizenship, including whether you have dual-citizenship status, and your citizenship among any of the States or territories within the United States of America.

> ANSWER:  **United Kingdom.**

4.      Since August 4, 2014, identify all real properties where for a minimum of 30 nonconsecutive days you have slept overnight and whether or not titled in your name.

> ANSWER:  **Objection.  Where Redmond sleeps is not reasonably calculated to lead to**

2

**the discovery of relevant or admissible evidence, and further, such request is sought in bad faith and intended to cause unreasonable annoyance, embarrassment, and oppression in violation of Pa.R.C.P. 4011(a) and (b).**

**5.**      Identify all of your current real properties, directly or indirectly owned by you or under your control or by any entity of which you possess an ownership or membership interest.

ANSWER: **Objection.  This interrogatory is confusing and ambiguous as to what is meant "all of your current real properties, directly or indirectly owned by you or under your control."  Redmond does not understand the scope of this ambiguous interrogatory.  Without waiver of same, Redmond owns the following real property: 2005 regency drive, Wyomissing, pa, 19610.**

**6.**      Based on your answer to Interrogatory No.  5,  identify  all fixtures, goods, equipment, inventory, farm products, and timber therein which have a value of $50 or more.

ANSWER: **Objection.  This interrogatory is confusing and ambiguous as it refers to Interrogatory No. 5, which requests "all of your current real properties, directly or indirectly owned by you or under your control."  Redmond does not understand the scope of this ambiguous interrogatory.  Without waiver of same, Redmond owns the real property identified in Interrogatory No. 5.  As to the fixtures, goods, equipment located in such real property, pursuant to Pa.R.C.P. 4006(b), the answer to such questions may be derived from the Defendant's own inspection of the premises, if he so chooses.**

**7.**      Since August 4, 2014, identify all of your real properties you have conveyed, including the grantee.

ANSWER: **Objection.  This interrogatory is overly broad in terms of the temporal scope.  Without waiving same, the following are real property transactions since Defendant obtained a judgment: None.**

3

**8.** Identify all of your rights to oil, gas, timber, or other minerals before extraction.

ANSWER: **Objection. This interrogatory is vague and confusion as to its reference to the meaning of "before extraction." Without waiver of same, Redmond does not own any of the above.**

**9.** Identify all your leases and leasehold interests. For each of the foregoing, specify whether you are the lessor or lessee.

ANSWER: **2005 regency drive, Wyomissing, pa, 19610. Lessor.**

**10.** Identify all collections of currency and coins in your possession, including historical collections.

ANSWER: **None.**

**11.** Identify any and all institutions in which you maintain a safe deposit box.

ANSWER: **None.**

**12.** Since August 4, 2014, identify all of your transfers of money and coins, including historical collections, which exceeded $1,000 per transaction.

ANSWER: **Objection. This interrogatory is overly broad and not reasonably calculated to lead to relevant or admissible evidence. Identifying all monetary**

4

**transactions since August 2014 is beyond the scope of reasonable discovery as it would include payments Redmond may have made for such basic needs as food, shelter, utilities, clothing and similar items for value.**

13. Identify all of your current sources of income, including self-employment, rental income, general intangible, payment intangible, proceeds, noncash proceeds.

ANSWER: **Rental income. Consulting income**.

14. Since August 4, 2014, identify all of your sources of income, including self-employment and rental income.

ANSWER: **Objection. This interrogatory is overly broad and not reasonably calculated to lead to relevant or admissible evidence. Identifying all sources of income since August 2014 is beyond the scope of reasonable discovery. Without waiver of same, below are the sources of Redmond's income since the date of Defendant's judgment:**

**Consulting income.**

**Rental income.**

**15.**     Identify all cash registers where you have authority to withdraw money and coins.

ANSWER:  **Objection.  This interrogatory is vague and confusing as to what is meant by "cash registers."  This Interrogatory is also overly broad and not reasonably calculated to lead to relevant or admissible evidence.  This Interrogatory makes no distinction between "cash registers" owned by Redmond and those which he may have authority over as an agent of a principal.  Without waiver of same,  Mr Redmond has been unable to secure a bank account based on his credit and banking history. Mr. Redmond does not own a bank account.**  *By way of supplemental answer, Mr. Redmond does not own a "cash register" as that term is traditionally understood as a point of sales device in a retail establishment.  Assuming this interrogatory is asking about bank accounts, as previously indicated Mr. Redmond does not own a bank account.  He also does not control a bank account as an authorized user or signatory of any bank accounts.*

**16.**     Identify all of your current financial assets within the meaning of 13 Pa.C.S. § 8102. For each of the foregoing, identify the person who serves as an intermediary.

ANSWER:  **Objection.  This Interrogatory is vague and confusing and requires Redmond to make legal conclusions as to the referenced statute as to the legal meaning of terms such as "a security," "securities intermediary" as well as "a certificated or uncertificated security, a security certificate or a security entitlement."  Redmond is not required to interpret complicated statutes containing such legal terms in answering discovery.**     *Without waiver of same, and by way of supplemental answer, to the extent this interrogatory is asking about financial assets*

6

*such as a wide array of investments -- stocks, bonds, notes, debentures, limited*

*partnership interests, oil and gas interests and investment contracts – Mr. Redmond*

*does not own any such assets.*

**17.** Since August 4, 2014, identify all of your financial assets within the meaning of 13 Pa.C.S. § 8102 which you transferred to another person. For each of the foregoing, identify the person to whom you transferred the same, as well as the identity of the person who served as an intermediary.

ANSWER: **Objection. This Interrogatory is vague and confusing and requires Redmond to make legal conclusions as to the referenced statute as to the legal meaning of terms such as "a security," "securities intermediary" as well as "a certificated or uncertificated security, a security certificate or a security entitlement." Redmond is not required to interpret complicated statutes containing such legal terms in answering discovery.** *Without waiver of same, and by way of supplemental answer, to the extent this interrogatory is asking about financial assets such as a wide array of investments -- stocks, bonds, notes, debentures, limited partnership interests, oil and gas interests and investment contracts – Mr. Redmond does not own any such assets.*

**18.** Identify all of your current accounts, commodity accounts, securities accounts, rights to payment evidence by chattel paper or an instrument, bonds, commercial tort claims, deposit accounts, investment property, letter-of-credit right or letters of credits, and rights to payment for money or funds advanced or sold.

ANSWER: **Objection. This Interrogatory is vague and confusing and requires Redmond to make legal conclusions on the meaning of "chattel paper" and**

8

**"commercial tort claims." Without waiver of same, based on Redmond's layperson**

**understanding, he does not have any of the above apart from 2005 regency drive,**

**Wyomissing, pa, 19610 which is currently in foreclosure.**

19. Arising on and after August 4, 2014, identify all of your accounts, commodity accounts, securities accounts, rights to payment evidence by chattel paper or an instrument, bonds, commercial tort claims, deposit accounts, investment property, letter-of-credit right or letters of credits, and rights to payment for money or funds advanced or sold.

ANSWER: **Objection. This Interrogatory is vague and confusing and requires**

**Redmond to make legal conclusions on the meaning of "chattel paper" and**

**"commercial tort claims." Without waiver of same, based on Redmond's layperson**

**understanding. Mr. Redmond does not own any of the above.**

20. Identify all your proprietorships that you identify as a going concern.

ANSWER: **Objection. This Interrogatory is vague and confusing as to what is**

**meant by a "proprietorship." This is a legal term that may have multiple or**

**alternative meanings. By way of further response, this Interrogatory is vague and**

**confusing as to what is meant by a "going concern." Without waiver of same,**

**assuming this Interrogatory is requesting the names of businesses which Redmond**

**solely *or partially* owns, and which are financially stable enough to meet obligations,**

**he states as follows: I have a number of personal judgements and personal**

9

**guarantees that will likely result in personal bankruptcy in the next 1-2 months.**

*Mr. Redmond* **owns** *in full or in part* **the following entities – NBOA Inc., Bene**

**Market LLC, The Redmond Group, Redmond Marketing.**

**21.** Identify your proprietorships owned at any and all times since August 4, 2014, whether a going concern or not.

ANSWER:  **Objection.  This Interrogatory is vague and confusing as to what is meant by a "proprietorship."  This is a legal term that may have multiple or alternative meanings.  By way of further response, this Interrogatory is vague and confusing as to what is meant by a "going concern."  Without waiver of same, assuming this Interrogatory is requesting the names of businesses which Redmond solely *or partially* owns, and which are financially stable enough to meet obligations, he states as follows: I have a number of personal judgements and personal guarantees that will likely result in personal bankruptcy in the next 1-2 months. *M r .   R e d m o n d*  owns *in full or in part* the following entities – NBOA Inc., Bene Market LLC, The Redmond Group, Redmond Marketing.**

**22.** Identify all entities anywhere in the world in which you have an ownership interest, or managerial rights, or where you exercise control, or any of the foregoing.

ANSWER: **Objection.  This Interrogatory is vague and confusing as to what is meant by "exercise control" and "managerial rights."  This Interrogatory is also overly broad since it calls for information about entities in which Redmond has no ownership interest.  Without waiver of same, Redmond has ownership interest in the following entities:**

**NBOA Inc.**

**Bene-Market LLC.**

**The Redmond group LLC**

**Redmond Marketing LLC**

11

**23.** Identify all trusts anywhere in the world which have been created for the benefit of you or anyone in your household since August 4, 2014.

ANSWER: **Objection.  This Interrogatory is overly broad in requesting information from ten years ago.  Without waiving same, Redmond will provide information since the Judgment was entered in this matter, as follows:  I do not own any trusts.**

**24.** Identify your mortgages, promissory notes, security agreements, surety agreements, personal guarantees, or unsecured loans. For each of the foregoing, specify whether you are the creditor or debtor.

ANSWER: **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Ready.  Please also refer to the Complaint in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.  *By way of supplemental answer, the PFS supplied identifies the only real property Mr. Redmond owns – 2005 Regency Drive, Wyomissing, PA 19610, and identifies the mortgage information concerning that property.  The PFS statement therefore provides the information requested in this Interrogatory.***

**25.** Identify all Financial Statements prepared by you, or on your behalf, which were submitted to any lending institution. For each of the foregoing, identify the lending institution and the person who assisted you in preparing the Financial Statement.

ANSWER: **Mr. Redmond has not applied for personal loans.**

12

**26.** Identify by name and company each accountant you have used since August 4, 2014.

ANSWER: **Objection as to any discovery served upon Redmond's accountant would be subject to the Pennsylvania Accountant-Client Privilege under 63 P.S. §9.11a, and thus this request is not reasonably calculated to lead to the discovery of relevant or admissible evidence.**

**27.** State with specificity how you maintain your financial books and records, including whether the same are maintained in electronic format, and where the same are stored.

ANSWER: **Objection. This Interrogatory is vague and confusing as to what is meant by "maintain" and "financial books and records."** *Without waiver of same, and by way of supplemental answer, to the extent this interrogatory is asking for "financial records" such as tax returns, Mr. Redmond has already produced such documents to Plaintiffs, and those tax returns are hereby incorporated by reference. Other than tax returns, Mr. Redmond does not keep any personal "financial books and records."*

13

28. Identify your judgment creditors, including the names of their attorney, the amount due and owing, and the court and docket number where the judgment issued.

ANSWER: **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Ready as well as the plaintiff's counsel in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.** *By way of supplemental answer, the PFS supplied identifies the only real property Mr. Redmond owns – 2005 Regency Drive, Wyomissing, PA 19610, and identifies the mortgage information concerning that property. The PFS statement therefore provides the information requested in this Interrogatory.*

29. Identify all of your other obligations not referenced in the preceding interrogatories, including alimony payments, child support payments, and delinquent tax liabilities.

ANSWER: **Please refer to the PFS statement previously submitted by Attorney Valz to Attorney Ready as well as the plaintiff's counsel in <u>CBSG, Inc. d/b/a Par Funding v. Redmond,</u> Feb. Term 2022 No. 022794 in Philadelphia Court of Common Pleas, which was already sent to Jordan's Counsel.**

14

**30.** Identify your current pensions, retirement accounts, retirement savings accounts, and government benefits, including Social Security Benefits, whether from the United States or from a foreign country.

ANSWER:  **Objection.  Under Pennsylvania law, retirement savings vehicles like retirement accounts (IRAs), 401(k), 403(b) accounts, pensions and employee stock ownership plans (ESOPs) are generally exempt from creditor claims.  42 Pa.C.S. § 8124 (enumerating the tyes of retirement funds and accounts that shall be exempt from attachment or execution on a judgment).**

**31.** Identify all of your current motor vehicles, manufactured homes, mobile homes, trailers, aircraft, yachts, ships or sea-going vessels. For each of the foregoing, include the make, model, year of manufacture, liens and identity of lienholder, registration, license, or vehicle identification number.

ANSWER:  **Cadillac Escalade 2017.**

15

**32.** Since August 4, 2014, identify all of the following you transferred: motor vehicles, manufactured homes, mobile homes, trailers, aircraft, yachts, ships or sea-going vessels. For each of the foregoing, include the make, model, year of manufacture, liens and identity of lienholder, registration, license, or vehicle identification number.

ANSWER:  **Objection.  This Interrogatory is overly broad in requesting information from ten years ago.  Without waiving same, Redmond will provide information since the Judgment was entered in this matter, as follows:  None.**

**33.** Identify your life insurance contracts. For each of the foregoing, identify the serial or policy number or numbers, the face amount, the exact name and address of the insurance company, the named beneficiary or beneficiaries and their present address.

ANSWER:  **None.**

**34.**    Identify all other of your assets or personal property, which are not otherwise covered in the preceding interrogatories and valued at $1,000 or more.

ANSWER:  **None.**

**35.**    Regardless of whether you characterize it as a gift or for valuable consideration, identify all transfers of property of any kind made by you since August 4, 2014 to your parent, stepparent, spouse, former spouse, child, stepchild, former stepchild, or relative by blood or marriage, or to a partnership where you are a partner, or to an entity where you are a director, officer, or person in control. For each of the foregoing, include all jewelry, such as engagement rings and wedding bands and the face value of such.

> ANSWER:  **Objection.  This Interrogatory is overly broad as it would include, for example, payments for child support, alimony, and all gifts to relatives for the past ten years, which is unreasonable and not calculated to lead to the discovery of admissible evidence.  By way of further answer, this Interrogatory is sought in bad faith and intended to cause unreasonable annoyance, embarrassment, and oppression in violation of Pa.R.C.P. 4011(a) and (b).** *Without waiver of same, and by way of supplemental answer, Mr. Redmond has not transferred any motor or other transportation vehicles or real estate owned by him since the judgment was entered in this matter.*

Dated:  May 10, 2024          By:  _____

                                             Norman Valz, Esquire

17

## VERIFICATION

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the  foregoing statements made by me are willfully false, I am subject to punishment.

5/10/2024
Date                                                        ALAN CHRISTOPHER REDMOND

18

# Exhibit K

# Exhibit K

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No.<br><br>Involuntary Chapter 11 |

**AFFIDAVIT OF ETHAN SHALTER**

Ethan Shalter, being duly sworn according to law, deposes and says the following:

1.      I am an adult individual and resident of Berks County, Pennsylvania, and process can be served on me at 1369 Claire Dr., Birdsboro, PA 19508.

2.      The information contained in this Affidavit was learned during the course of my employment with Alan Christopher Redmond ("Redmond"), operating through a Delaware limited liability company called Seguro Medico, LLC ("Seguro").

3.      Seguro operated from an office building in Spring Township (Berks County), Pennsylvania, having a post office address of 8 Morgan Drive, Reading, PA 19608 (the "Office").

4.      From approximately April 15, 2024 through July 11, 2024, I was employed by Redmond to work for Seguro. During that time, my job title was Manager for the Reporting Department. It was Redmond who interviewed me for the position and decided to hire me.

5.      Notwithstanding my job title, I worked closely with other Seguro employees responsible for selling health and dental insurance, as well as other employees responsible for human resources and administration.

6.      I discovered that Seguro was regularly engaged in selling health and dental insurance contracts to ordinary consumers but was not licensed with the Pennsylvania Department of Insurance. Additionally, Seguro hired employees for the task of selling, soliciting, or negotiating

1

such contracts without any Insurance Producer license from the Pennsylvania Department of Insurance, contrary to the statute of 40 P.S. §§ 310.1 and 310.3(a).

7. Myself and other employees at Seguro regularly used proprietary insurance sales software that was licensed to a company called Bene Market, LLC, which is also not licensed with the Pennsylvania Department of Insurance.

8. Redmond described his role as "President" of Seguro. I observed that Redmond regularly managed the day-to-day operations of Seguro, arriving in his Bentley and wearing flip flops in the Office during business hours. In particular, he hired and fired employees and directly provided training and instruction to employees on selling, soliciting, and negotiating insurance contracts. Additionally, Redmond regularly engaged in writing and rewriting insurance products. Redmond, himself, does not have any valid license with the Pennsylvania Department of Licensing, contrary to the statute of 40 P.S. §§ 310.1 and 310.3(a).

9. Where issuing paychecks to Seguro employees, Redmond as a regular practice does not use his name but signs these documents under the name of another person, such as "Zeus Barrios" or "Arthur W. Walsh, Jr." Additionally, I periodically received payments through online applications (called, "cash apps"), which in those circumstances the sender would be a person other than Seguro.

10. Attached as Exhibit 1 is a true and correct copy of a paycheck I received from Seguro, dated May 28, 2024, and containing a pre-stamped signature for "Arthur W. Walsh, Jr."

11. Attached as Exhibit 2 is a true and correct copy of a pay stub I received from Seguro, dated May 28, 2024, reflecting my hourly rate of $25.00.

12. From the proprietary software that I was required to use at Seguro, I learned that Redmond has additional companies that are being operated in a similar fashion as Seguro, using

2

the same proprietary software and being conducted under the name of Arthur W. Walsh, Jr. or any variation of such name. These include QuickHealth Care and Benefits Now.

13.     The employees at Seguro are expected to sell insurance policies under another person's name and meet their 40 to 50 deal counts per week. In fact, I observed the Seguro Vice President falsely state his name while answering phone calls to sell or resell insurance policies to purchasers.

14.     Redmond regularly fired sales employees at Seguro, often without any cause. During my employment, Seguro went through more than 30 different sales employees. I believe and aver that this was part of Redmond's strategy to prevent any sales employees from staying long enough to learn or appreciate the illegality of their employment.

15.     When I was hired to work at Seguro, Redmond informed me that I was "salaried," and therefore not entitled to overtime compensation. During my employment, however, I regularly worked in excess of 40 hours during a regular work week and did not receive any overtime compensation as required by applicable law.

16.     My pay has been inaccurate since I began working at Seguro. For instance, my paystubs would fluctuate between gross wages of $1,400 and $1,700, instead of $2,000. Moreover, Redmond uses a service provider, PayCore, which does not disclose any dates or number of hours that I worked so that I could verify the accuracy of the payment.

17.     Attorney Norman Valz was employed by Redmond, Seguro, or both, and several times I saw Attorney Valz at the Office during normal business hours for Seguro. In my opinion, Attorney Valz at all times knew the illegality of the Seguro operations.

18.     At some point in late June or early July of this year, Redmond approached me with a proposed new contract, asking that I take a position as a "Ministry Specialist" with a business

3

called, "Benefits Now." The proposed new contract would have lowered my pay to $15.00 an hour, asserting that I was exempt from overtime pay, and that the work week would exceed 40 hours.

19.     Despite the religious language, Benefits Now involves selling health share policies to consumers who self-identify as Christian, and it is Redmond's strategy to specifically target Amish and Mennonite communities.

20.     A true and correct copy of the proposed new contract is attached as Exhibit 3.

21.     I never agreed to the proposed new contract and refused to sign the same.

22.     On July 11, 2024, I was terminated from Seguro without any explanation, literally, while I was consulting on the phone with my personal attorney, Bejamin J. Lewis, Esquire.

23.     For the pay period of June 28, 2024 through July 11, 2024 (representing not less than 75 hours at $25.00 an hour), my pay stub erroneously recites that I earned $1,511.92 in wages from Seguro instead of $1,800.00, before any tax withholding was applied. After tax withholding was applied, the take-home pay for that period was $1,264.04. However, I believe and aver that I worked in excess of 75 hours for that same pay period.

24.     Even if I had worked 75 hours only during the foregoing pay period, no explanation is provided by Redmond or Seguro why my gross pay was $1,511.92 instead of not less than $1,800.00, prior to tax withholding. Before that same pay period, I did not owe any debts to Seguro of any kind, having already repaid a $1,000 loan that was made to me at the outset of my employment.

25.     From my review of all hours that I worked for Seguro, and even taking into account a $1,000 personal loan that I repaid, I believe and aver that Redmond and Seguro improperly withheld at least $1,036.08 in wages that were due and owing under our existing contract for employment. That computation does not include overtime compensation.

4

26.    Based on the foregoing, I believe and aver that Redmond and Seguro are jointly liable to me for having violated the Wage Payment and Collection Law, 43 P.S. § 260.1, et seq., for the amount of wages that were illegally withhold, together with any other relief that I may be entitled to have by law.

27.    If called to testify in any action or proceeding involving Redmond or Seguro as a party, I can provide additional information in support of this Affidavit, including facts that I believe relate to the illegality of the Seguro operations at the direction of Redmond.

28.    I certify under penalty of perjury that the foregoing is true and correct.

Dated: _8/23/2024_

_____
Ethan Shafter

Commonwealth of Pennsylvania - Notary Seal
Anyi D. Aybar, Notary Public
Berks County
My commission expires January 31, 2028
Commission number 1442933
Member, Pennsylvania Association of Notaries

5

# Exhibit 1

# Exhibit 1



SEGURO MEDICO LLC
8 MORGAN DRIVE
READING PA 19608

MID PENN BANK
60-880/313
61

23307

Date 05/28/2024

Pay this Amount

ONE THOUSAND FOUR HUNDRED THIRTY SIX & 02/100 DOLLARS***

$*****1,436.02

50

Pay to the
Order of

ETHAN SHALTER
1369 CLAIRE DR
BIRDSBORO PA 19508

AUTHORIZED SIGNATURE

Photo Safe Deposit® Details on Back.

# Exhibit 2

Exhibit 2



**SEGURO MEDICO LLC**
8 MORGAN DRIVE
READING PA 19608

**ETHAN SHALTER**
EMPLOYEE ID: 1108
DEPARTMENT: 50
CHECK:      23307

Paycor.

FEIN:  84-4516926
Pay Period    05/03/2024  -  05/16/2024
Pay Date      05/28/2024

**FITWH**      **Filing Status: H**
**PA**         **Filing Status: M  Exemptions: 0**

| Earnings | RATE | HOUR/UNIT | CURRENT | YTD HOUR/UNIT | YTD |
|---|---|---|---|---|---|
| Hourly | 25.00 | 80.0001 | 2,000.01 | | |
| ‡Reimb | | | -200.00 | | |
| **Total** | | 80.0001 | **$1,800.01** | | |

| Taxes | CURRENT | YTD |
|---|---|---|
| FITWH | 126.19 | |
| MED | 29.00 | |
| SOC | 124.00 | |
| PA | 61.40 | |
| PAEUC | 1.40 | |
| PASRG | 20.00 | |
| PASRGL | 2.00 | |
| Total | $363.99 | |

Net Pay                                            $1,436.02

24-13093-pmm    Doc 10-2    Filed 09/09/24    Entered 09/09/24 14:59:10    Exhibit    Page 121 of 296

# Exhibit L

# Exhibit L

JASON SCOTT JORDAN,                        :      IN THE COURT OF COMMON PLEAS
                        Plaintiff          :      OF BERKS COUNTY, PENNSYLVANIA
                                           :      CIVIL ACTION – LAW
            v.                             :      NO. 22-11757
                                           :
BENE MARKET JLLC, ALAN                     :
CHRISTOPHER REDMOND, individually, :
d/b/a THE LEAD HOUSE and                   :
STEPHANIE MILLER,                          :
                        Defendants         :      ASSIGNED TO:  JAMES E. GAVIN, J.

## ORDER

AND NOW, this 8th day of December, 2023, upon consideration of the Plaintiff's

Renewed Petition for a Temporary Receiver (hereinafter referred to as the "Petition"), and after a

hearing having been held, this Honorable Court hereby ORDERS and DIRECTS that the Petition

is DENIED.

                                           BY THE COURT:

                                           _____
                                           JAMES E. GAVIN, J.

Received County of Berks Prothonotary's Office on 12/11/2023 12:44 PM Docket No. 22-11757

# Exhibit M

# Exhibit M

Received County of Berks Prothonotary's Office on 05/24/2024 3:09 AM Prothonotary Docket No. 14-17117

Norman M. Valz, Esquire
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
Phone:  (215) 756-2424
nvalz@msn.com

Attorney for Alan Christopher Redmond

| | |
|---|---|
| National Brokers of America, Inc., and Alan Christopher Redmond, | : Berks County, PA |
| | : Court of Common Pleas |
| Plaintiffs, | : |
| | : Civil Division |
| - v- | : |
| | : No. 14 17117 |
| Jason Scott Jordan | : |
| Defendant. | : |

**PLAINTIFF ALAN REDMOND'S ANSWER TO MOTION FOR CHARGING ORDER AGAINST ARC REALTY**

Plaintiff, Alan Redmond ("Redmond") avers the following to Defendant, Jason Jordan's Motion for a Charging Order against ARC Realty, LLC.

1. Defendant Redmond avers that he possesses <u>no individual interest</u> in ARC Realty, LLC, the subject of this Motion for a Charging Order.   Furthermore, all interest in said LLC is has been held with his wife as "Tenants in the Entirety."

2. Under Pennsylvania law, it is well settled that marital property cannot be attached by creditors of one spouse and such property is immune from process, petition, levy, execution, or sale. *See, e.g., Klebach v. Mellon Bank, N.A.*, 388 Pa. Super. 203, 208, 565 A.2d 448, 450 (1989) (*citing Amadon v. Amadon*, 359 Pa. 434, 59 A.2d 135 (1948); *In re Williamson*, 11 B.R. 791, 795 (Bankr.W.D.Pa.1981); *Sterrett v. Sterrett*, 401 Pa. 583, 585, 166 A.2d 1, 2 (1960); *McGary v. Lewis*, 384 Pa. 173, 119 A.2d 497 (1956)).

3. The husband and wife are considered a single entity which owns 100% of the property. *Di Florido v. Di Florido*, 459 Pa. 641, 331 A.2d 174 (1975).

Received County of Berks Prothonotary's Office on 05/24/2024 3:09 AM Prothonotary Docket No. 14-17117

4.  "[N]either [spouse] has an individual portion separated, or can be reached by the creditors of either spouse." *Madden v. Gosztonvi Savings & Trust Co*, 331 Pa. 476, 482, 200 A. 624 (1938); *see also Howard Savings Bank v. Cohen*, 414 Pa. Super. 555, 607 A.2d 1077 (1992).

Wherefore, Plaintiff Alan Redmond respectfully requests that this Court deny Defendant's Motion against ARC Realty and further reserves the right to supplement this response as may be necessary.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/      Norman M. Valz
Norman M. Valz, Esquire
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
Phone:  (215) 756-2424
nvalz@msn.com

</div>

Dated:  May 22, 2024                    Attorney for Alan Christopher Redmond

# Exhibit N

# Exhibit N

Received County of Berks Prothonotary's Office on 05/28/2024 8:21 PM Prothonotary Docket No. 14-17117

Norman M. Valz, Esquire
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
Phone:  (215) 756-2424
nvalz@msn.com

Attorney for Alan Christopher Redmond

| | | |
|---|---|---|
| National Brokers of America, Inc., and Alan Christopher Redmond, | : | Berks County, PA |
| | : | Court of Common Pleas |
| Plaintiffs, | : | |
| | : | Civil Division |
| - v- | : | |
| | : | No. 14 17117 |
| Jason Scott Jordan | : | |
| Defendant. | : | |

### PLAINTIFF ALAN REDMOND'S ANSWER TO MOTION FOR CHARGING ORDER AGAINST BENE MARKET and REDMOND GROUP INVESTMENTS, LLC

Plaintiff, Alan Redmond ("Redmond") avers the following to Defendant, Jason Jordan's

Motion for a Charging Order against Bene Market, LLC and Redmond Group Investments, LLC.

1.      Admitted, however it should be noted that there is a pending Motion in Federal

Bankruptcy Court for Enforcement of the Automatic Stay, and Vacating Jason Jordan's

Judgment and Enjoining Mr. Jordan and his counsel from pursuing claims related to this case.

(See Exhibit "A").

2.      Admitted.

3.      Denied as stated.    Bene Market is not presently an operational company.

4.      Answering party is without knowledge to affirm or deny.

5.      Denied as stated.  On March 31, 2022, judgment was entered against both

Plaintiffs National Brokers of America, Inc. and Alan Redmond, which was improper and in

Received County of Berks Prothonotary's Office on 05/28/2024 8:21 PM Prothonotary Docket No. 14-17117

direct violation of the automatic bankruptcy stay and Bankruptcy Court Order, as more fully set forth in the Motion attached as Exhibit "A."

6.    Denied as stated as Mr. Redmond has no affiliation with RGI.

7.    Statement of law not requiring denial or affirmation.

8.    Not requiring statement in denial or affirmation.

9.    Statement of law not requiring denial or affirmation.

10.   Unclear statement.

11.   Denied as stated.

12.   Statement of law not requiring denial or affirmation.

13.   Not requiring statement in denial or affirmation.

## NEW MATTER

14.   Defendant Redmond avers that he possesses no affiliation, ownership interest, or agency directly or indirectly with Redmond Group Investments, LLC.    On information and belief, this LLC is owned and operated by someone with no affiliation or relationship to Defendant Redmond who possesses the same family name.

15.   Defendant Redmond avers that Bene Market, LLC is not an active operational company and possesses minimal assets – however said Bene Market is presently the Defendant or Co-Defendant in some significant active litigation where it is the Defendant (Scalia vs. Bene Market, Eastern District of Pennsylvania 5:2020cv04265), (American Workers Insurance Services, Inc. v. Bene Market LLC, Texas Northern Bankruptcy Court 4:2021ap04066). Bene Market's potential liabilities through said litigation are quite substantial.

16.   Jordan is already in direct litigation with Bene Market regarding alleged obligations it holds pursuant to Jordan's judgment entered against National Brokers of America. (See Jordan vs. Bene Market, et al.  Berks County 22-11757).   Thus, this Motion for a

2

Received County of Berks Prothonotary's Office on 05/28/2024 8:21 PM Prothonotary Docket No. 14-17117

Charging Order can be seen as an attempt to circumvent Jason Jordan's own litigation which is pending before the Hon. James E. Gavin.

17.     In this above-mentioned litigation (Berks County No. 22-11757) Jordan initiated against Bene Market, the Hon. James E. Gavin has already ruled against Jordan's Motion for the Appointment of a Receiver over Bene Market, LLC (See Exhibit "B" attached herewith.)

18.     The co-defendant in this matter, National Brokers of America, Inc. has filed a Motion in Federal Bankruptcy Court (EDPA 19-15488-pm) Enforcement of the Automatic Stay, and Vacating Jason Jordan's Judgment and Enjoining Mr. Jordan and his counsel from pursuing claims related to this case. (See Exhibit "A" for Bankruptcy Motion).

Wherefore, Plaintiff Alan Redmond respectfully requests that this Court deny Defendant's Motion for Charging Orders and reserves the right to supplement this response as may be necessary.

Respectfully submitted,

/s/      Norman M. Valz
Norman M. Valz, Esquire
Norman M. Valz & Associates, P.C.
441 Irvington Road
Drexel Hill, PA  19026
Phone:  (215) 756-2424
nvalz@msn.com

Dated:  May 28, 2024          Attorney for Alan Christopher Redmond

3

# Exhibit O

# Exhibit O

## PERSONAL FINANCIAL STATEMENT

PERSONAL FINANCIAL STATEMENT as of December 15, 2023 OF Alan Redmond of 2005 Regency Dr, Wyomissing, PA 19610, USA (the "Applicant") FOR Bochetto and Leintz of Philadelphia, PA.

**BACKGROUND:**

This Personal Financial Statement is being made for the purpose of: personal use.

Applicant's Personal Information

Name: Alan Redmond

Address: 2005 Regency Dr, Wyomissing, PA 19610, USA

Phone: (814) 440-9068

Employer: Consultant

Position: Consultant

Number of years at position: 4

## Section 1. Balance Sheet

| Assets | Value |
|---|---|
| Cash on hand | $2,400.00 |
| Cash in Bank - See Section 3 | $2,432.17 |
| Retirement Accounts - See Section 4 | $ |
| Motor Vehicles - See Section 5 | $22,450.00 |
| Real Estate - See Section 6 | $799,999.00 |
| Investments - See Section 7 | $ |
| Cash Value Life Insurance | $ |
| Other Assets: Household furniture, Cadillac Escalade 2017 | $30,300.00 |
| **Total Assets** | $857,581.17 |

| Liabilities | Value |
|---|---|
| Unpaid Taxes | $52,000.00 |

| | |
|---|---|
| Loans Payable to Financial Institution - See Section 8 | $652,400.00 |
| Other Loans - See Section 9 | $ |
| Credit Cards - See Section 10 | $1,041.44 |
| Amount Owing on Motor Vehicle - See Section 5 | $2,100.00 |
| Amount Owing on Real Estate - See Section 6 | $684,000.00 |
| Other Liabilities: Bene-Market payroll taxes and interest/penalities 2018-2020, Personal Loan from Alan Redmond made to NBOA Inc and Bene-Market for payroll and Operations, eidl loan for bene market - personal guaranteed, NBOA Inc. Bankruptcy trustee, Lead generation company - marketing for Bene-Market llc and NBOA Inc. - personally guaranteed loan | $6,169,653.29 |
| **Total Liabilities** | $7,561,194.73 |

| | |
|---|---|
| **Net Worth** | $-6,703,613.56 |

## Section 2. Annual Income/Contingent Liabilities

| Annual Income | Value | Contingent Liabilities | Value |
|---|---|---|---|
| Salary | $ | Endorser/Guarantor | $30,188,192.00 |
| Commissions/Bonuses | $64,000.00 | Legal Claims | $1,400,000.00 |
| Real Estate Income | $50,000.00 | Other Contingent Liabilities | NA |
| Investment Income | NA | | |
| Other Income | NA | | |
| **Total Annual Income** | $114,000.00 | **Total Contingent Liabilities** | $31,588,192.00 |

## Section 3. Cash in Bank

| Bank Name | Bank Address | Account Number | Name of Account Holder | Balance of Deposit |
|---|---|---|---|---|
| Santander | | ███████ | Alan Redmond | $2,432.17 |
| Total | | | | $2,432.17 |

## Section 4. Retirement Accounts

| Description | Amount |
|---|---|
| Dont have one | $ |
| Total | $ |

## Section 5. Motor Vehicles

| Description of Motor Vehicle (Year, Model) | Value of Motor Vehicle | Amount Owing |
|---|---|---|
| Cadillac Escalade 2017 | $22,450.00 | $2,100.00 |
| Total | $22,450.00 | $2,100.00 |

## Section 6. Real Estate

| Description of Property | Market Value | Amount Owing on Property |
|---|---|---|
| 2005 regency drive, Wyomissing, PA, 19610 | $799,999.00 | $684,000.00 |
| Total | $799,999.00 | $684,000.00 |

## Section 7. Investments

| Description of Investments | Market Value |
|---|---|
| None | $ |
| Total | $ |

## Section 8. Loans Payable to Financial Institution

Page 3 of 4

| Description | Amount Owing |
|---|---|
| Automobile loan | $2,400.00 |
| Mortgage | $650,000.00 |
| **Total** | $652,400.00 |

## Section 9. Other Loans

| Description | Amount Owing |
|---|---|
| | $ |
| **Total** | $ |

## Section 10. Credit Cards

| Name on Card | Type of Card | Card Number | Amount Owing |
|---|---|---|---|
| Alan C Redmond | Capital one | XXXX XXXX XXXX ▮ | $1,041.44 |
| **Total** | | | $1,041.44 |

The Applicant certifies that all the information provided in this statement is true and accurate as of December 15, 2023. The Applicant authorizes Bochetto and Leintz to make any inquiries that Bochetto and Leintz feels is necessary to verify the information in this financial statement.

_____

Alan Redmond

©2002-2023 LawDepot.com®

# Exhibit P

Exhibit P

**IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL BROKERS OF | : | CIVIL ACTION – LAW |
| AMERICA, INC., and ALAN | : | |
| CHRISTOPHER REDMOND, | : | NO 14-17117 |
| **Plaintiffs** | : | |
| | : | JURY TRIAL DEMANDED |
| vs. | : | |
| | : | |
| JASON SCOTT JORDAN, | : | Assigned to Judge |
| **Defendant** | : | Timothy Rowley |

_____

**DEPONENT:**  ALAN C. REDMOND VOL. I

**DATE AND TIME:**  Wednesday, August 28, 2019
at 9:20 a.m.

**LOCATION:**  Cornerstone Law Firm, LLC
8500 Allentown Pike, Suite 3
Blandon, PA  19510

_____

BERKS COURT REPORTING SERVICE
By:  Lori A. Dilks
PA Court Reporter
10 Fox Glen Drive
Sinking Spring, Pennsylvania 19608
(610) 678-9984
berkscourtreporting@gmail.com

1

APPEARANCES:

RUSH LAW GROUP, LLC
By: William Rush, Esquire
38 North 6th Street
P.O. Box 758
Reading, PA 19603

Representing the Plaintiffs


CORNERSTONE LAW FIRM, LLC
By: David W. Crossett, Esquire
8500 Allentown Pike
Suite 3
Blandon, PA 19510

Representing the Defendant


ALSO PRESENT:

Katherine Downing, Esquire



_____

STIPULATION: It has been stipulated by and between counsel that they waive the reading, signing and sealing of the transcribed testimony by the witness and the filing of the original with the Court, and all objections, except as to form, until the time of trial.

2

## I N D E X

| WITNESS | EXAMINED BY | PAGE |
|---|---|---|
| Alan C. Redmond | Mr. Crossett | 5 |

**3**

PROCEEDINGS

ALAN C. REDMOND

was called as a witness and, having been first duly sworn by the Reporter-Notary Public, was examined and testified as follows:

MR. CROSSETT: We're here for the deposition addressed to National Brokers of America, Inc., the corporate designee. Are you the corporate designee for NBOA, Inc.?

MR. REDMOND: Yes.

MR. CROSSETT: We'll have everyone say who they are on the record. I'm David Crossett, Counsel for Jason Scott Jordan in this matter.

MR. RUSH: I'm William Rush, Counsel for Alan C. Redmond and National Brokers of America, Inc.

MR. REDMOND: Alan Redmond, owner of NBOA, National Brokers of America.

MS. DOWNING: Katherine Downing, in-house Counsel for Bene Market. I'm here today in the capacity of merely observing and not participating in this deposition.

MR. CROSSETT: You're an attorney?

MS. DOWNING: I am.

MR. CROSSETT: Where are you licensed?

MS. DOWNING: I'm licensed in New Jersey

and Florida. I'm pending admission to the Pennsylvania Bar. It's Bene Market, B-E-N-E M-A-R-K-E-T.

MR. CROSSETT: Is there an Inc. or anything at the end or no?

MS. DOWNING: It's LLC.

BY MR. CROSSETT:

Q. So this will be the Corporate Designee deposition, which was properly noticed on August 9th, 2019.

Mr. Redmond, did you receive a copy of the Corporate Designee Deposition Notice?

MR. RUSH: Yes.

THE WITNESS: Yeah.

BY MR. CROSSETT:

Q. I understand that you looked at your attorney, and he just answered for you. Are you aware personally whether you received it?

A. Yes.

Q. When did you receive it?

A. I'm not sure.

Q. What steps have you taken in preparation to be deposed today as a Corporate Designee?

A. I spoke with William and Kate.

Q. Kate being Attorney Downing?

A. Correct.

Q. Have you looked at any documents in preparation for today?

A. Not so much, no.

Q. Have you looked at any documents at all in preparation for today?

A. Yes.

Q. What documents?

A. We looked at the Deposition Notice, correct, we looked at profit and loss statements for NBOA, we looked at tax returns for NBOA, so the financial documents.

Q. Anything else?

A. No.

Q. Did you bring any documents with you today?

A. No.

Q. What is your current role with NBOA?

A. NBOA is in the process of being dissolved. This is the height of it. They have a meeting with you, David Crossett, so this is the height of it over the last five or six months. There is some debt.

I started for NBOA so millions of dollars of debt that the company was in, so what I do on a daily basis if an issue arises with someone who wants to collect

it, then I'll negotiate that debt on behalf of NBOA.

Q. What is your current role, title with NBOA?

A. Owner.

Q. Do you have any other current title?

A. No.

Q. What policies and procedures did NBOA have in 2013 and 2014 regarding discipline and termination for employees of NBOA?

A. We had an employee handbook.

Q. Do you have that with you?

A. No.

Q. Why not?

A. What's that?

Q. Why not?

A. You would need to request that, correct, Bill, through discovery?

MR. RUSH: I assume so. I don't know if it's ever been requested.

THE WITNESS: Have you requested that through discovery?

BY MR. CROSSETT:

Q. Did you bring it with you today?

A. No.

Q. Did you look at it in preparation for

today's deposition?

A. I'm aware of some of the policies and procedures in the employee handbook.

Q. When was that document created?

A. I believe that would have been December, 2013, if not before that.

MR. RUSH: I have to interject. This doesn't seem to have anything to do with the finances, which is what discovery is limited to at this time.

MR. CROSSETT: The Notice of Deposition for the Corporate Designee lists several categories, and the first one is the one I just asked him about.

BY MR. CROSSETT:

Q. This employee handbook, your testimony is it was created about December of 2013?

A. Approximately. I would need to check with the previous HR person who worked for me for NBOA.

Q. Is there someone more knowledgeable than you about the policies and procedures that NBOA had in place in 2013 and '14 regarding discipline and termination of employees of NBOA?

A. Of NBOA? That's what we're talking about? It would have been the previous HR Manager, who's no longer with NBOA, as NBOA is defunct and dissolved.

8

Q. Are there any other employees of NBOA besides yourself?

A. No.

Q. Have you ever disclosed this employee handbook in discovery in this matter?

A. To you, to David Crossett?

Q. Yes.

A. No. I don't think it's been requested, David. Have you made that request?

Q. What other policies and procedures of NBOA regarding employee discipline and termination were in place in 2013 and 2014 other than the employee handbook?

A. We did a pretty good job of following the employee handbook to the letter of the way it was written. So the employee handbook was the be all and end all. If someone was in violation of some of the policies -- the be all and end all.

Q. I think you started to say if somebody was in violation of that.

A. We would follow --

MR. RUSH: I object. I'm going to go ahead and advise my client not to answer any more questions along these lines. Your Petition and the Court's Order limit your discovery, and your questioning

9

clearly to Alan Redmond's personal finances and the finances of NBOA. That was your Petition and the Order doesn't allow anything about a handbook. This has already been covered in Mr. Redmond's prior deposition. If you ask him, I'm just going to object to all of it going forward and advise him not to answer.

MR. CROSSETT: What questions are you advising your client not to answer?

MR. RUSH: Anything apart from NBOA finances. With the understanding that we are currently deposing Mr. Redmond in his capacity as the Corporate Designee, and that in his capacity individually that would be an intermission and then a restart to the deposition.

MR. CROSSETT: Is your objection the same for him individually?

MR. RUSH: Yes.

MR. CROSSETT: Are you going to give him the same instruction individually?

MR. RUSH: Yes.

BY MR. CROSSETT:

Q. You mentioned that NBOA is defunct. What do you mean by that?

A. We filed Chapter 7 back in May, I believe. Is that right, Bill? Approximately May, David. The Chapter 7 didn't go through, so we're in the

10

process of starting to dissolve the company in the next week or so as it doesn't serve anything for its previous employees or me and is a burden on my time.

Q. Why didn't the Chapter 7 go through?

MR. RUSH: Objection, but you can answer.

THE WITNESS: I believe that due to my workloads, the capacity that I had, which is looking after my current employees, we really didn't have the time to provide all the necessary documentation. So we put it on ice, so to speak, and now we're in the process of dissolving the company.

BY MR. CROSSETT:

Q. When you said you're in the process of dissolving the company, who is we?

A. Myself and whichever attorney I -- I'm in the process of researching dissolution. And then I will advise with Bill as to what the steps really are. Bill and I have been very busy over the last two, three months, Bill -- or excuse me, David, so we'll probably discuss that this week, I imagine, after we finish this deposition.

Q. Do you have any plans to file anything by way of dissolution or bankruptcy before trial starts on September 9?

MR. RUSH: I'll object to that only

11

because that hasn't been discussed, but obviously --

THE WITNESS:  And the answer is that I'm unsure.  You know, we're not trying to file it before trial.  It is a time constraint thing.  You know, if I get to it, I'm sure he will notify you, but there's no rush to do this, if that makes sense.

BY MR. CROSSETT:

Q.    Attorney Rush represented in correspondence to me that you had planned to file bankruptcy prior to the September 9th trial.  Is that true?

A.    It's an option, but I'm not -- I can't give you a definitive answer based on my -- based on my time constraints.  I know Kate is not participating, but if you were to depose her, which I'm sure you want to, she'll tell you that we're very busy at the moment.

Q.    Who's your bankruptcy lawyer?  I should be clear, I just want to ask you because you're here as a Corporate Designee.  Who is NBOA's bankruptcy lawyer?

A.    I'm not exactly sure who we're using.

Q.    Do you have any idea?

A.    No.

MR. RUSH:  Are you asking currently, or are you asking back when it was filed?

THE WITNESS:  I don't remember these

**12**

things because I'm so busy, you know.

BY MR. CROSSETT:

Q.    Does NBOA have a bankruptcy lawyer engaged currently?

A.    They do not.

Q.    Do you have any meetings set to get a bankruptcy lawyer?

A.    No.  No.

Q.    When is the last time NBOA was actively -- when is the last time NBOA had any employees besides you?

A.    That would have been at the beginning -- first quarter of 2016.  So you could say March, 2016.

Q.    That's when the last employee, aside from you, was terminated?

A.    I believe so.  I can certainly --

MR. RUSH:  David, when you say employee, do you mean the legal Department of Labor definition of employee or employee, even if a contractor, 1099?  I just need clarification on that.

BY MR. CROSSETT:

Q.    Mr. Redmond, do you understand what I mean when I say employee?

A.    I understand.  For what I believe you mean, it's people who are in contract with NBOA, have an

**13**

employee contract, are getting paid from NBOA payroll, that's my definition as an entrepreneur.

Q.    So March, 2016 was the last time NBOA had any employees.  Is that correct?

A.    That would be correct.  As I said in the beginning of this questioning, approximately I can get you that exact date through Bill.

Q.    What actions has NBOA taken in 2019?

A.    For?

Q.    Any purpose.

A.    We attempted to file the Chapter 7.  I attempted to file the Chapter 7.  There have been outstanding Department of Insurance complaints that were caused by, you know, previous employees.  I think you might be aware of them, but, you know, that's really it, you know, taking care of complaints.

We're talking less than half a dozen complaints with various state departments.  There have been issues, letters received, demand letters in regards to the debt, D-E-B-T.  Sorry about the Irish accent.  And I've been trying to -- many of these demand letters are NBOA's debt, but also my debt.  I personally guaranteed a lot of debts after Jason left, millions of dollars to ensure that NBOA would continue to operate.

When we got to March, 2016, approximately

**14**

-- we can get you that exact date -- it made more sense to begin a new company.  So anyway, the answer to your question, we've got some complaints coming from the Department of Insurance which were caused by previous employees.

There's a bunch of debt that I'm trying to negotiate myself out of because many of these debtors are personal guarantees by me.  So NBOA technically, as an entity, owes me millions of dollars, but because they are personal guarantees, David, I need to do the right thing and make sure that there's money being borrowed, and I need to pay it back if it's a PG, if it's a personal guarantee.

Q.    What debts have been asserted against NBOA -- what debts are currently asserted against NBOA?

A.    There's a list.  So there's -- when you receive commissions from an insurance carrier, David, it's on an advance basis.  Okay?  So there's approximately 4 million dollars of advanced debt with various insurance carriers.

There's also personally guaranteed loans where I have borrowed money from various lending and banking institutions, and that approximates 5 and a half to 6 million dollars.

Then we also have the issue with previous

**15**

employees attempting and selling unlicensed, without a license, such as his client, Jason Jordan.

Q. What is the amount of the debts that are being claimed against NBOA relating to allegedly unlicensed sales people?

A. You're looking at approximately 25 to 30,000, I believe, but again, I can get you these exact numbers. There's a lot of them. So NBOA is millions of dollars in debt to me. Yeah.

Q. You mentioned a 5.5 to 6 million dollar debt. What was that for?

A. What do you mean what was it for?

Q. What does it arise from?

A. We needed to take money just to stay in operations at NBOA, so I borrowed the money personally as Alan Redmond, and I put that money into NBOA. NBOA is also on that. When you sign up for a loan of that magnitude, David -- I don't know if you've ever done that before, I'm going to assume you haven't, but when you borrow that type of money from an institution, a lending operation, you have to personally guarantee that. So that is going to supersede NBOA paying it. I have to personally guarantee that, if that makes sense. Does that make sense?

Q. What other debt does NBOA have?

16

A. What's that?

Q. What other debt does NBOA currently have?

A. Other debt, that's about it. I think we are in the 8 to 12 million dollar debt range. Yeah.

Q. What assets does NBOA currently have?

A. Assets, there might be some computers that aren't being used, a little bit of furniture. I would estimate on a P&L assets are going to be around 15 to $20,000, David.

Q. And that would be computers and furniture?

A. Yeah.

MR. RUSH: If I may interject, only because I didn't see the bankruptcy attorney, I believe there are also several copy machines.

THE WITNESS: Oh, yes. So equipment, furniture, computers, equipment, office equipment, electronics technology, mice, M-I-C-E.

BY MR. CROSSETT:

Q. What other assets does NBOA currently have?

A. That's it.

Q. At some point NBOA sold their future income; correct?

A. Correct. It was the mechanism for

17

receiving loans. Okay? So there was some sale of receipts to receive the loan to continue operations. Without the cash infusion from my personal guarantee loans, NBOA would have been bankrupt in -- my approximation is the beginning of 2015.

Q. You mentioned you have --

A. Which means 80 people would have been out of a job. So when you're a business owner -- you're a partner here -- when you're a business owner, you have to make decisions to ensure that your people are protected. It's a concept in business, David. So if you have to borrow money personally to ensure that 80 kids are able to continue their jobs in Reading, so be it. That's what you have to do.

Q. What debt of NBOA are you personally liable for?

A. I'm paying all debt personally. Any money that we borrowed or we have accrued, I'm personally taking care of that, every single penny.

Q. Are you a personal guarantor on all of those debts that you talked about?

A. No.

Q. Which debts that you talked about are you a personal guarantor for?

A. There's a loan company out of

18

Philadelphia called Par Funding, P-A-R, I'm a personal guarantor there.

Q. How much is that?

A. I'll need to get you the exact number. I have this in one box, David, you know, one, so I can manage my bandwidth, so I'm going to give you the whole bucket and then I can make an approximation. But I can certainly provide you with that.

Capital Advance Services, 2.3 million personally guaranteed on behalf of NBOA. Precise Leads, L-E-A-D-S.

Q. How much is that one?

A. It's approximately a hundred to 120,000 currently. You asked me the question before, what do I do for NBOA. That's an example. That just fell on my plate, so it's either a hundred or 120 based on insurance. You know, I'm not going to tell you it's 120 or -- I can negotiate it to 90,000, so approximately.

We have -- when you receive your commission advances from the insurance carrier, you have to sign a personal guarantee for that, also. When you're such a young company as NBOA, that is in the ballpark around of 2.1 to 2.2 million dollars.

Q. How is that different from the 4 million dollar advance debt that you talked about earlier?

19

A.    It's the mechanism of the -- so when you produce, when you sell an insurance policy, David, you will be paid in advance from the advancer. Okay? When you take a loan, it's a different mechanism.

So if you take a loan, you're receiving the cash immediately. When you're producing -- you sell an insurance policy, you're receiving it in advance for an insurance policy. That's occurring debt on the back end. So the mechanism is a multiple in a block of business over an accrued financial mechanism which will result in 4, 5, 6 million dollars. And what insurance producers do is they use that money to build their operations.

The business has zero value until you're able to stop these advances and build your block of business on an as-earned basis.

Q.    You said earlier that there's approximately 4 million dollars of advanced debt from insurance companies; correct?

A.    That's the layman's terms. The insurance companies -- there's the insurance company, there's the distributor, which would be myself, right, and then you have what's called a TPA in the middle, a Third Party Administrator. We don't collect premiums as a distributor, as a licensed insurance agent, so when a client says if you sign up for a policy for yourself and your family through Blue Cross. We sell the policy, the TPA collects the premium, and then the TPA sends the premium to the insurance carrier, to Blue Cross in this instance. And there's a fourth party called an advancer or a funder, and the funder will advance the commissions to the TPA, and the TPA will pay us.

Now, in doing that, every time you sell a policy, you're actually going into debt, personal debt, because that mechanism that I'm talking about results in an advanced balance, an advanced debit balance it's called technically. So you can have a phenomenal year and sell thousands and tens of thousands of policies, but at the end of the day -- so with any market so Kate gets paid, I have to take on advanced debt or we wouldn't be able to afford to expand the business. And it's the same thing with NBOA.

So that's approximately all the debt. I looked at those last night. There's one other advancer or funder out there. I just don't want to put it on the record. It's $985,000. I can't remember if it's NBOA or Bene Markets. I don't know which one it is.

Q.    You testified there's approximately 4 million dollars of advanced debt. Then you testified that you have personally guaranteed about 2.1 to 2 point million dollars of that debt. Is it true that you have not personally guaranteed the entire amount of the advanced debt?

A.    No, everything has been guaranteed. 2.1 million dollars with an advancer, the advancers for Bene Market and NBOA. And there's approximately another 1.5 to 2 million dollars for another advancer, as well.

Q.    So the entire 4 million dollar advanced debt has been personally guaranteed by you?

A.    Yes, sir.

Q.    Other than the 2.3 million for Capital Advantage Services --

A.    Advance, A-D-V-A-N-C-E.

Q.    Other than the 2.3 million, the hundred thousand and approximately 4 million, what else have you personally guaranteed?

MR. RUSH:  For NBOA?

THE WITNESS:  For NBOA?

BY MR. CROSSETT:

Q.    Correct.

A.    I believe that's it, David. I'm 95 percent sure that's it.

MR. RUSH:  David, I need a moment.

(Discussion between Attorney Rush and the witness.)

THE WITNESS:  So there was another one, also, Inside Response. It's a lead company.

BY MR. CROSSETT:

Q.    You personally guaranteed this?

A.    Correct. That was initially around $500,000.

MR. RUSH:  680.

THE WITNESS:  $680,000.

BY MR. CROSSETT:

Q.    How much is it today?

A.    275,000 that I'm paying on a monthly basis personally.

Q.    When did NBOA sell its future income?

A.    I'll need to get you that, David. I'm not sure.

Q.    Did you look at the Corporate Designee Notice before you came here today?

A.    What's that?

Q.    Did you look at the Corporate Designee Notice before you came here today?

A.    Sounds a little bit of sarcasm. I think I'm being very forthright here. You know, there's a lot of information about a company that I'm no longer operating, but I'm the Corporate Designee. Is it in your discovery?

Q.    Yes.

A. It is?

Q. Did you read over the Notice of Deposition for the Corporate Designee?

A. Yeah.

Q. Did you see on there, No. 3, it says I was going to ask you questions about, quote, the sale of future income of NBOA as referenced in correspondence from C. Malcolm Smith to William Rush dated September 21st, 2017?

A. So there's semantics. I don't know the dates exactly. I don't want to give you the wrong dates because I understand how you operate. Okay?

THE REPORTER: Excuse me?

THE WITNESS: Can you just start spelling shit to her? Operate, spell it, because when I'm talking, I lose my focus when I'm dealing with a guy that's been sued three times.

MS. DOWNING: Her job is to take --

THE WITNESS: I understand what her job is. Spell operate, O-P-E-R-A-T-E. So the semantics, I told you I would get you the date. We'll get you the dates.

BY MR. CROSSETT:

Q. So you don't know the date as you sit here today?

A. I don't know the date right now.

Q. Was it one time or multiple times when future income of NBOA was sold?

A. Multiple times.

Q. Do you have an estimate as to approximate years when it was done?

A. I don't have that.

Q. Was it before the last employee of NBOA ceased working, which would have been, I think you testified, approximately March, 2016?

A. What's the question again?

Q. Was the future income of NBOA sold before the last employee of NBOA left in approximately March of 2016?

A. Yes, that would be -- that would make sense. If you have employees that you're trying to support, it would happen before instead of after. Does that make sense, David?

Q. How much money did NBOA receive from the sale of future income?

A. So you have Par Funding and Capital Advance Services. It's right there. Do you see that?

Q. Tell me how much it was.

A. It's right there. I'm not going to answer the same question twice.

MR. RUSH: It's a slightly different question.

THE WITNESS: Yeah, but he can just add them up.

BY MR. CROSSETT:

Q. How much money did NBOA receive from the sale of its future income?

A. Add them up. It's right there. I just went over it for 35 minutes with you. So right there (indicating). Add. Can you do that? There's like an application on your phone, it's a calculator, just add it up. It's right there. We just went through it for 40 minutes.

Q. To what entity did NBOA sell its future income?

A. Par Funding and Capital Advance Services.

Q. So sometime before March of 2016, NBOA sold its future income to Par Funding and Capital Advance Services. Is that correct?

THE WITNESS: Why does he keep asking me the same question different ways?

MR. RUSH: Just --

THE WITNESS: Why? I'm getting agitated. I'm wasting my time.

MR. RUSH: I understand. Just answer. It's easy.

THE WITNESS: What's the question, David?

BY MR. CROSSETT:

Q. So sometime before March, 2016, NBOA sold its future income to both Par Funding and Capital Advance Services. Is that correct?

A. Didn't you ask that question three or four times? Didn't I answer that? How many times have I answered that, David, in the last 15 minutes? How many times? I would estimate three to four.

Q. Are you refusing to answer the question?

A. I've answered the question a number of times. You'll be able to check this lovely lady's writing over here at the end, and you'll see that I've answered the question. Next question.

Q. Whose decision was it at NBOA to sell NBOA's future income?

A. It would be my decision.

Q. Was it solely your decision?

A. At the time we had a CFO to give me input into financial decisions.

Q. Who was that?

A. Stephanie Miller.

Q. So she advised you, but you ultimately

made the decision.  Is that correct?

A.   So we came to the decision together.  No one advised each other.  She has an M.B.A., she's a CPA accountant, and I have business experience, so the decision was made mutually to sustain NBOA by selling future receipts.

Q.   During what time period was Ms. Stephanie Miller CFO of NBOA?

A.   Stephanie, I believe, came on board at the end of 2014.

Q.   Did she start as CFO then?

A.   She came on as a staff accountant.  So she came on as an accountant for me and moved her way into a CFO position.

Q.   When did she become CFO?

A.   I'm not exactly sure.  I would say six to seven months during her tenure and turned to CFO.

Q.   So sometime late 2014, is that your estimate, she became CFO?

A.   So to go back again, I believe I said 2015 -- end of 2014, six months to seven months after that, so you're looking at mid 2015.

Q.   When did she cease being CFO?

A.   March, 2016 approximately, when NBOA stopped operating.

28

Q.   But the decision was made by you; correct?

A.   For what?

Q.   To sell NBOA's future income.

A.   You keep going back to the same question.

MR. RUSH:  I'm advising him not to answer.

THE WITNESS:  You keep going back to the same question.  Your attorney tricks, they're not going to work.  You keep going back to the same question, and ultimately the company's in debt.  We have a book value, and you're harassing me by wasting my time and wasting everybody else's time.

This is the game you play, though; correct?  Isn't this why you're being sued three times?  You do this.  So I don't care about these two.  I'm not going to sit here and have you ask me the same question over and over with your attorney tricks in different ways to trip me up.  Do you understand?  Do you get that?  Next question.

And it's not a win because you feel like you're agitating me.  I'm just calling you out on your bullshit because you tried to do this last time.  We got into this and you got schooled, so if you want to do this for the next two hours, let's do it, big boy, bring it on.

29

Next question.  Don't ask me the same question five times.  It's not gonna work.

Don't go back to the dates, David, switch them up.  Don't go back to the money.

I'm going to ask your -- answer your question once and that's it, and then we're going to get to discovery or not when he objects to it, and then this is all gonna go away, and you're going to be left holding a legal bag of $200,000 of fees with a three-time felon who presented himself as a licensed insurance agent, who was on Class A drugs when he was working for NBOA.

You're going to be left with a $250,000 bag.  And also, what we're going to do -- off the record.  Can we go off the record?

BY MR. CROSSETT:

Q.   We will not go off the record.  Continue.

A.   Okay.  What we're gonna do is we're going to report you to the Bar.  Do you understand?  Because we have made offers that you haven't presented to your clients.  You actually admitted that to Bill.

So this is what's going to happen if you keep wasting my time.  If you keep agitating me and not treating me with respect and asking me the same question over and over and over again, this is what we're gonna do.  Do you understand?  I think that's going to be your third

30

lawsuit in the last two months.

Q.   Are you ready for the next question?  Are you done?

A.   You know what?  I'm not done.  Does that make sense, David?  Do you get that?

Q.   Are you ready for the next question?

A.   Excuse me?

Q.   Are you ready for the next question?

A.   Nope, not ready yet.  Ask me again in about 45 seconds.

MR. CROSSETT:  Attorney Rush, I'm asking that you ask your client to answer the next question.

THE WITNESS:  Don't engage with him.  I'll be ready in 39 seconds.  I'm taking a mental break from the absurdity of this guy's line of questioning.

(Brief pause.)

THE WITNESS:  David, look, look, I'm ready, go ahead.

BY MR. CROSSETT:

Q.   Why was NBOA --

A.   Wait, no, I'm ready now.  Go ahead.  I'm ready.

Q.   For the benefit of the Court Reporter, I would ask that you let me finish my question --

A.   Certainly.

31

Q.    -- entirely --

A.    Go right ahead.

Q.    For the benefit of the Court Reporter, I'd ask that you let me finish my question entirely, and then you can answer, and I'll give you the same courtesy. Does that make sense?

A.    You haven't been giving me the same courtesy. You've been asking me the questions over and over and over again in different ways to trip me up. I'm letting you know that I know what you're doing, and I'd ask you to kindly stop. Does that make sense, David?

Q.    Why was NBOA's future income sold?

A.    Why was what? Can you repeat that?

Q.    Why was NBOA's future income sold?

A.    When you have a bank balance in the red based on the catastrophic damage left by your client -- do you understand -- when you have a bank balance in the red, you need to borrow money to pay people like this (indicating), employees.

Q.    You're pointing to your attorney. Is that correct?

A.    I'm pointing to Kate Downing, my associate, who's not one of my employees. So to explain the concept, because that's how entrepreneurs in

business -- true business owners think, if you have a negative bank balance, you need to borrow money to ensure that employees get paid. I think that makes sense. Now, rephrase your question six different ways.

Q.    To make sure I understood you, did you say that Ms. Downing is your associate or your employee or your attorney or all three?

A.    What did you say?

Q.    Ms. Downing --

A.    Ms. Downing was being used in this example -- did you get the example?

MS. DOWNING: Yes.

THE WITNESS: Villanova graduate; right? Ms. Downing is being used as a wonderful example of what an employee looks like. So in this example, this analogy, okay, this parable of having a negative bank account, Ms. Downing is used to explain it to you. Do you understand?

So she, in this analogy, is an employee, and for you to pay -- thank you for nodding, David, you're getting it, buddy -- you need to borrow money to take your company out of the red to pay your 80 employees.

Now, here's the thing. Your client -- I'm going to go on the offense, just so he understands that we're sick of this -- your client came up from Florida from Health Insurance Innovations, okay, who we'll depose,

by the way, and they told us that he was a licensed agent. This is a 400 million dollar company. We brought him up as a licensed agent to sell on the phones. He did a good job for the first three months, but then he started to take drugs, heavy drugs. You know this. You talked to him, but you can't talk because this is your ordeal.

So when that happens, we had to take action to remove him from the company. That was valued negative, below zero. There's no value in the company. And if you want to talk about partnership, I paid this young man between 92 and $120,000. Now, if he's a partner, he would have got zero on his distribution because the company wasn't making any money.

So your search to find money from me personally, this is why I get upset. It's a personal attack on me that you're trying to go for punitive damages. I don't know if it's been objected to, but it's not fair. It's wasting my time. We tried -- I tried to keep NBOA open, and when we go to trial and all the witnesses, all the previous employees take the stand, they're going to say in front of the Judge, this guy was on drugs, we found out this guy wasn't licensed, we found out that this guy wasn't doing his job correctly, and he got sent back to Florida.

If he had to still be here, David, as a partner, the company would have folded within a month of him initially leaving. One month. At the time we had 37 employees on staff. They wouldn't have been able to pay their rents or their bills.

Analogy again, Kate, an employee of mine at the moment, wouldn't have had a job. She has three kids, so what do you do? You take personal guaranteed money to keep the company going. That's what you have to do. Does that make sense?

But all these issues were caused by your client. Your client brought the heat from the Department of Insurance in Pennsylvania. Your client sold unlicensed. Your client violated his fiduciary responsibility. Your client didn't care about the employees. That's why he was removed from the company. Your client was in violation of the employee handbook, which I signed. There's a code of ethics and conduct in business. Your client has violated every single thing. Because you need to make money on this case, you need to make money on this case because you've spent hundreds of hours on it.

I'm letting you know now you should have taken our first settlement offer that we made, which was very handsome; correct, Bill? So you could have paid

yourself. You have wasted your time for two and a half years.

BY MR. CROSSETT:

Q. What was your first settlement offer?

A. When was the first settlement offer, Bill? Let's use these attorneys.

MR. RUSH: I honestly don't recall at this point. 2015 to 20 --

THE WITNESS: Three or four. Wait, are you questioning -- is that allowed in a deposition? You should depose Bill on that. I don't know when the settlement offer was, but I would say there's been two to three of them; correct?

MR. RUSH: More.

THE WITNESS: More than that. So let me ask you -- I'm deposing you now. Dave, are you telling me that you don't know when the settlement offers were?

BY MR. CROSSETT:

Q. Let me make sure you understood my question.

A. I did understand it. When was -- you asked Bill a question.

Q. That's not what I asked.

A. When was the first settlement offer was your question.

36

Q. What was the first settlement offer, in what amount?

A. You tell me. You received the settlement offer.

Q. Mr. Redmond, do you know what the first settlement offer was?

A. Do you know what the first settlement offer was? You should know that.

Q. Are you refusing to answer the question?

THE WITNESS: I'm refusing to answer the question, Bill.

MR. RUSH: I don't think you know.

THE WITNESS: I don't even know. It was probably about two years ago with this guy over here, two and a half years ago. Was that on your line of questioning? BY MR. CROSSETT:

Q. Do you what the second or most recent settlement offer is that you believe NBOA made?

THE WITNESS: What was the second offer?

BY MR. CROSSETT:

Q. I see you're asking your attorney Mr. Rush. Do you know?

MR. RUSH: Do you know offhand?

THE WITNESS: Again, let's go back to the concept of bandwidth. When you have hundreds of

37

employees, you don't have time for miniscule things like that. When you have to remember -- I'm assuming you have -- what is an average attorney -- ten, ten cases a month? I'm assuming you have ten cases. You remember all the details, right, every single detail?

I have hundreds of moving parts a day. So your tonality with me, you know, suggesting that I should know that is absurd. That's what annoys me about you. Your tonality. And this is what annoys everybody -- it's your tonality. It's your smugness.

You need to have respect for the other. I came in here ready to play ball and give you all the answers that I could give you. Your hardball tactic with me and your tonality and rewording questions just isn't going to work, son. It's not gonna work. I'm just going to be difficult, and I'll make us all sit here until 5 p.m. Do you understand?

Go on ahead, ask your next question. Let's get through this.

BY MR. CROSSETT:

Q. You didn't answer my last question which was, do you know what the most recent settlement offer that NBOA made to my client was? Yes or no.

A. What --

Q. You're talking to your attorney and

38

looking at your attorney. Do you know the answer?

MR. RUSH: Just answer yes or no. I can't imagine you know.

THE WITNESS: No.

BY MR. CROSSETT:

Q. I think you testified in maybe one of your hypotheticals that there were approximately 80 employees of NBOA at the time that this --

A. No, I didn't say that, David.

Q. How many employees did NBOA have, approximately, at the time that it sold its future income?

A. I'm not sure when we sold our future income. I'll need to check on that for you.

Q. How many employees --

A. I can't answer your second question about employees 'cause I don't know the date of future receivable sales.

Q. How many employees did NBOA have at the height of its employees?

A. Approximately 79.

Q. How were Par Funding and Capital Advance Services chosen as the buyer or buyers of the sale of NBOA's future income?

A. Myself and the current CFO spent time,

39

weeks, analyzing what the best buyer would be.

Q. Have any assets of NBOA been sold to Bene Market, LLC?

A. I'll need to check on that, David.

Q. Do you know?

A. I don't.

Q. What would you need to check to find that out?

A. I would need to check -- I would need to walk into the accountant's office and say, is there any loan documents or is there any sale of computers to NBOA -- to Bene Markets two years ago or three years ago, over three years ago because I just don't remember. I just don't remember.

Q. Other than the sale of future income, what other assets has NBOA sold or transferred?

A. There's not a lot of assets that NBOA had or has. I think I gave you that. I can actually give you that number. So virtually zero.

Q. Were there any other assets, other than the sale of future income, that NBOA has transferred or sold?

A. Were there any other assets apart from the sale of future income? Sale of future income is not an asset. Do you understand that accounting-wise? Sale

40

of future receivables falls on the balance sheet as an accounts payable. Okay? That means that I have to pay. I know attorneys aren't versed on this, but let's verse all attorneys in the room. Kate you probably know this and so do you, Bill.

It's a loan. It sits on -- it's a payable. It doesn't sit on as an asset. You got it? Assets are tangible and intangible goods. I've already told you what assets NBOA has.

Q. When NBOA sold its future income, did it receive money?

A. When NBOA sold its future income, did it receive money. Let's talk about --

THE REPORTER: They did? Sorry.

MS. DOWNING: He was just repeating his question.

MR. CROSSETT: Ma'am, are you participating in the deposition?

MS. DOWNING: No, I'm not. Excuse me.

MR. CROSSETT: Thank you.

BY MR. CROSSETT:

Q. Mr. Redmond, did NBOA receive any money when it sold or transferred its future income?

A. David, you know, you're not repeating the question correctly. You know, you're saying

41

transfer. There was no transfer of future income. I've explained it to you, son, that we sold future income. Now, that's future income that would have never been received because of the advanced debt so, technically, there was no future income.

We were using the block of business as collateralization to receive money to keep operations going. We were doing that because we lost our carrier due to Jason Jordan's activities, which actually caused me 6.4 million of real income, which you'll find out at trial. I gave away a little bit of strategy, but it's true, but we lost 6.4 million.

Q. How did NBOA lose 6.4 million?

A. Jason Jordan sold illegally as an unlicensed agent. A Department of Insurance investigation opened in -- help me out here, 2015?

MR. RUSH: I'm ethically bound to correct something --

THE WITNESS: Go ahead.

MR. RUSH: -- when it is wrong. And the fact is two Department of Insurance investigations opened, Pennsylvania in 2014 and -- Department of Pennsylvania in 2014, and for the exact same alleged conduct and the exact same set of facts Department of Ohio in 2015. So we cannot refer to the investigation. It is two

42

investigations, both of which are ongoing, just to correct the record.

THE WITNESS: Thank you, Bill.

BY MR. CROSSETT:

Q. Mr. Redmond --

A. Yes, David.

Q. -- when NBOA sold its future income, did it receive any money?

A. Yes. That's usually how a sale of future income goes.

Q. How much money did it receive?

A. I believe check with my former CFO.

Q. Is your former CFO still an employee of any company that you're associated with?

A. Stephanie Miller followed me to Bene Markets, so she's very easily accessible.

Q. Do you have an estimate?

A. If you were a good boy, I could literally -- if you were a nice guy, I could literally have that information to Bill for you today, but, again, I'm sure that'll be answered in discovery -- or not.

Q. Do you have an estimate of how much money NBOA received from the sale of future income?

A. I don't, David. We'll need to check on that for you.

43

Q.   Does NBOA have any bank accounts currently with funds in them?

A.   There is a bank account, I believe -- I'm not exactly sure which bank it is, but it's less than a hundred dollars.

Q.   Are there any other bank accounts in NBOA's name that has funds in them?

A.   No.  Dave, there's going to be a Nutcracker recital, by they way.  Isn't that fun?  Daddy/daughter dance.  I think it's cute.  My daughter's five and a half years old.  Let's talk about me.  My daughter's five and a half years.  We did a daddy/daughter dance about 60 days ago.  We had a blast, so we're doing a Nutcracker recital in the Walnut Theatre, her and I and like 16 other fathers.

You should do it.  Wouldn't that be fun, you and I doing that?  I lost my train of thought.

Q.   What shareholders has NBOA had since August 4th, 2014?

A.   None.

Q.   Aside from you?

A.   Just me.

MR. RUSH:  I need to speak to that.

(Attorney Rush conferred with the witness.)

44

THE WITNESS:  There was Plan Z, but based on their improper filing of that -- we initially thought that they were a shareholder.  I believe it was four percent, but they improperly filed it, which means they weren't insurable there, so just to give you the full story so you don't think I'm being deceptive.

MR. CROSSETT:  Just let the record reflect that the second part of that answer was given after Attorney Rush spoke with the deponent.

MR. RUSH:  And I would state for the record that there was the illegality or impropriety of the LLC, as they structured it, was pointed out and executed by the company accountants for NBOA.  So when I or Mr. Redmond references the impropriety, that is secondhand information provided by the professionals hired to handle such matters.  But regardless of that, they were four percent shareholders until the accountant stepped in.

I do not recall the time frame on that, but there's a rather famous letter I wrote that's in evidence in some Court case, so that would be the end date.

THE WITNESS:  Dave, do you have any water?

MR. CROSSETT:  Sure.  There's a coffee machine and there's a --

THE WITNESS:  Would you mind if I grabbed

45

some water?

MR. CROSSETT:  That's fine.

(Short recess was taken.)

MR. CROSSETT:  Back on the record.

MR. RUSH:  I'll just note for the record briefly that no conversations took place between Mr. Redmond and myself during the break.

BY MR. CROSSETT:

Q.   We were talking earlier, Mr. Redmond, about Plan Z and their association with NBOA as a shareholder and then the dispute about that.  And I think you testified their ownership interest was about four percent.  Is that what you said?

A.   About four percent.

Q.   How much did they pay NBOA for that?

A.   250,000.

Q.   How was that number arrived at?

A.   I believe it was negotiated.

Q.   Did you do that negotiation?

A.   Yeah.

Q.   That's a yes?

A.   Yes.

Q.   Did you have any basis for arriving at that number based on the entire value of the company?

A.   It was not based on valuation.  It was

46

based on potential.

Q.   How was it calculated?  Tell me how you processed and came to that number.

A.   If you want to partake in NBOA, I need $250,000 for four percent.

Q.   Has that money been returned to Plan Z?

A.   No.

MR. RUSH:  David, I'm sorry, in full, in part, at all?

BY MR. CROSSETT:

Q.   I'll ask you, Mr. Redmond.  Has it been returned in full, in part, at all?

A.   In part.

Q.   How much has been returned?

A.   I need to get you that number, David.  I'm not exactly sure.  Estimation, approximately $50,000.

Q.   Do you know approximately when that was done?

A.   It would have begun mid last year in monthly payments.

Q.   Who were those monthly payments made to?

A.   Plan Z.

Q.   They were paid from NBOA directly to Plan Z?

47

A. They were paid from me to Plan Z.

Q. Were they paid to the owner of Plan Z?

A. It would have been to Plan Z, it would have said on the check, and then I would believe that they were disbursed right amongst their shareholders.

Q. And you said approximately it started last year?

A. Approximately, yes.

Q. Were there monthly payments, you said?

A. Correct.

Q. How much was paid each month?

A. It would have added up to approximately 50,000, so between 5 and 15,000 a month. Jason borrowed money from Plan Z, for the record. Jason Jordan borrowed money from Plan Z.

Q. Was the money paid to any intermediary, or was it paid directly to Plan Z? To make sure it's clear, was the money given to any third party with instructions for them to give it to Plan Z or directly from NBOA to Plan Z?

A. That's a good question. It could have went to their attorneys. I believe it went to Cohen & Grigsby. Cohen, C-O-H-E-N, Grigsby, G-R-G-S-B-Y [sic], second largest law firm in the country. Sorry, I'm not agitated, I just got -- my bandwidth is -- this is

48

costing me money.

So it would have went to either Plan Z or Cohen & Grigsby.

Q. When was the last payment made?

A. It would have been between six and eight months ago.

Q. What corporate documents of NBOA have been executed from January 1st, 2014 to present?

A. What corporate documents have been preferred for NBOA. I'm not exactly sure, David. I would need to go back to the NBOA filing cabinet and get you that information, which I can provide to Bill.

Q. As you sit here today, you just don't know what corporate documents of NBOA were executed from January 1st, 2014, but you think you have the information somewhere?

A. Yes.

Q. Do you know if any resolutions by the NBOA Board of Directors have been executed during that time frame?

A. I would make a guess that they have.

Q. Do you know one way or the other, or is it just a guess?

A. It's a guess.

Q. When was the last meeting of the NBOA

49

Board of Directors or NBOA shareholders?

A. I would imagine that would have been within the last two years.

Q. Do you recall specifically, or are you just guessing?

A. I don't recall specifically. I can get you that information.

Q. What dividends have been paid from NBOA to shareholders from August 4th, 2014 to present?

A. August 4th, 2014 to present --

Q. Let me see if I can help you out a little bit. August 4th, 2014 is the approximate date when my client was no longer on the premises at NBOA.

A. Was removed from the premises due to being on Class A drugs and having a lack of fiduciary responsibility. Is that what you meant?

Q. So from August 4th, 2014 to present, what dividends have been paid from NBOA to its shareholders?

A. I'm not sure.

MR. RUSH: Who are you including in the shareholders? Do you mean Plan Z or do you mean Plan Z and Alan C. Redmond?

BY MR. CROSSETT:

Q. I mean anyone paid out as a shareholder by NBOA. You're not sure based on that clarification?

50

A. I'm not sure. Correct.

MR. RUSH: I think we provided NBOA's tax returns, '13, '14, '15, '16 and '17 and I presume that information --

THE WITNESS: So let me re-answer the question. You have that information, David. Look at the tax returns.

BY MR. CROSSETT:

Q. Are the tax returns accurate, to the best of your knowledge?

A. Are the tax returns accurate? To the best of my knowledge, the tax returns were filed by a third party CPA. I would imagine that, like you, he cares about his license. I would say that the tax returns are 110 percent accurate.

Q. Again, we're talking about the NBOA tax returns; correct?

A. Um-hum.

MR. RUSH: Yes?

THE WITNESS: Correct.

BY MR. CROSSETT:

Q. What reimbursement or compensation or wages or dividends or bonuses or fringe benefits or any other monetary benefit have you received since January 1st, 2019 from NBOA?

51

A.    Zero.

Q.    How about in the calendar year 2018?

A.    Very marginal.

Q.    Do you have an estimate?

A.    I don't, David.  2018, excuse me, David, I do.  Zero.  2017?

Q.    Yes.

A.    Zero.

Q.    How about 2016?

A.    Not exactly sure.  It's three and a half years ago.

Q.    What would you need to look at to know?

A.    I would need to contact my accountant. I believe he's been on vacation the last two to three weeks.  It's been hard to access him.

Q.    Did NBOA have any policies in place related to payment or reimbursement of travel or business expenses from August 4th, 2014 to present?

A.    I'll need to check.

Q.    Where would you check?

A.    I would check with the former CFO.

Q.    Ms. Miller?

A.    Correct.  And also the accountants, David.

Q.    What funds has NBOA paid to legal Counsel

52

in relation to the current lawsuit that we're here for today?

MR. RUSH:  I object to that.  And I'll advise him not to answer.

MR. CROSSETT:  On what grounds?

MR. RUSH:  It's privileged.  What he's spending money on is a privileged communication.  If you're referring to his business expense --

MR. CROSSETT:  I'm not asking for the specifics of what work was done.  I just want to know the number.

MR. RUSH:  On the balance sheet, I think those would be in the tax returns.

MR. CROSSETT:  They're not.  There is a lump sum for legal fees, but there's no breakdown for funds related to this matter as opposed to any other matter.  This was specifically noticed in our Corporate Designee.

So it is discoverable because we have a claim for indemnification, and one of the relevant elements is whether the company indemnified itself and/or Mr. Redmond in this matter.  So same question.  What legal funds has NBOA paid in this matter, meaning their lawsuit that we're here for today in the deposition.

MR. RUSH:  If you know.

53

THE WITNESS:  I need to contact the accountant.

BY MR. CROSSETT:

Q.    You don't know?

A.    No.

Q.    Is that a no, you said?

A.    No.

Q.    What amount of legal funds has been paid by NBOA in defending you personally in this lawsuit?

A.    I'll need to check.

Q.    What is your role with Bene Market, LLC?

A.    I am the owner and Acting CEO.

Q.    Are you the sole member?

A.    No.

Q.    Who are the other members?

A.    Stephanie Miller.

Q.    Who else?

A.    That's it.

Q.    What percentage of -- before I ask that, is it B-E-N-E, Market with a space between it or no space?

A.    A space.

Q.    There is a space.  Is Bene Market, LLC -- where is that company incorporated?

A.    Delaware.

54

Q.    What ownership interest do you have in that?

A.    96.

Q.    Pardon me?

A.    96 percent.

Q.    And Stephanie Miller has the remaining four percent.  Is that correct?

A.    Yes.

Q.    When was Bene Market, LLC, organized as a business?

A.    My goodness.  May, 2016, I believe. April or May, 2016, David.

Q.    Sometime after the last employee of NBOA was terminated?

A.    Exactly.

Q.    What sort of business is Bene Market, LLC?

A.    Bene Market is a marketing agency.

Q.    Can you elaborate on that?

A.    Yep.  Bene Market markets financial products to consumers.

Q.    How is Bene Market similar in what it does to what NBOA did?

A.    How is it similar?

Q.    Correct.

55

A.   It practices licensed selling. Do you get the joke there, brother? It's compliant. It doesn't hire drug addicts and drug dealers who have three felonies. You know, the usual run of the mill differences in corporate America.

Q.   Does it market the same type of financial services that NBOA marketed?

A.   You could say that -- you can interpret it as similar products.

Q.   Can you give me an example of ways the products are similar or dissimilar?

A.   The products that I sell with Bene Market have -- you know, in the insurance and financial services business there's different levels of carriers, and I would say the Bene Market's -- NBOA was selling products of a lesser value to the consumer, and Bene Market is selling an extreme amount of value to the consumer based on benefits and the mechanism of the product works.

Q.   What classes of financial services did NBOA sell?

A.   NBOA was licensed to sell life, health and accident. Now, within them realms, David, there is thousands of different skews of products. The next question is what licenses did Bene Market have.

56

Q.   That's right, that's the next question. What --

A.   Killing it. Killing it. Life, health and accident, but the products that Bene Market sells and the way Bene Market sells them as services to clients are extremely different than the way Jason was servicing and selling the products, which was illegal, the way he was doing it. Just for the record, Jason Jordan sold products illegally.

MR. CROSSETT:  We're going to go off the record for a second to take this phone call.

(Conference call with Judge Rowley.)

MR. CROSSETT:  We're back on the record. We went off the record and had a phone conference with Judge Rowley, and Attorney Rush and I participated in that.

Attorney Rush, can we put on the record that we will begin the deposition next week on Thursday, September 5th at 9 o'clock in my office, and I'll get you out a Deposition Notice accordingly?

MR. RUSH:  That is correct.

MR. CROSSETT:  We've agreed to that regardless of what date the Court picks, we're in agreement on that.

MR. RUSH:  Even though the Court is saying

57

the 6th?

MR. CROSSETT:  Right.

MR. RUSH:  Yes.

MR. CROSSETT:  And we're in agreement that the documents will be disclosed 24 hours before that, which would be by 9 a.m. --

MR. RUSH:  9 a.m. on Wednesday morning, September 4th.

BY MR. CROSSETT:

Q.   Mr. Redmond, we were talking before the break about NBOA and Bene Market and the differences and similarities. Am I correct to understand that your statement is that both NBOA and Bene sell life, health and accident insurance, but that one of the differences is that Bene and NBOA sold different types of policies?

A.   Correct.  Yeah.

Q.   What other differences in the services provided between the two companies is there?

A.   The services that are provided with NBOA were to approximately 10 to 12 states, and Bene Market services 42, 43 states. And then the biggest difference is we sell compliantly compared to when Jason was a Sales Director we did not.

Q.   Has NBOA received any complaints from any insurance regulatory company regarding sales that

58

occurred after August 4th, 2014?

A.   When you sell a policy for insurance -- when you sell an insurance policy, it can stay on the books, the client can keep the policy forever if they wanted to. So the complaints that we received were in direct correlation after Jason left to Jason's actions and training techniques with the NBOA staff.

Q.   So I understand you're saying that they were in direct correlation with his training. My question was a little different. Were there any complaints by the insurance oversight that arose based on actions allegedly committed after August 4th, 2014?

A.   I'll need to check.

Q.   What would you need to check?

A.   I need to check with the previous -- I actually would be able to find that out from Stephanie.

MR. RUSH:  Stephanie Miller.  Right, Stephanie Miller, when you say Stephanie, just to be clear?

THE WITNESS:  Yeah, Stephanie Miller.

BY MR. CROSSETT:

Q.   What is the principal place of business that Bene Market uses?

A.   4 South Fourth Street, Reading, PA, 19602, third floor.

59

Q.   When did operations start for Bene Market?

A.   It would have been after NBOA stopped doing business, so April -- mid April, early May of 2016, David.

Q.   Just to make sure you answered my question, I had asked you earlier when it was incorporated. My question is, when did operations start? Did it start about the same time it was incorporated?

A.   It would have been right around -- it would have been between one and three months after. Pretty quickly.

Q.   How many employees does Bene Market have today?

A.   69.

Q.   How many of those employees are former NBOA employees?

A.   I was having the accountant pull this information yesterday because he does payroll, David. I knew that question was gonna come up. He was unavailable the last three or four days.

NBOA terminated its employees. We did a re-interviewing process at Bene Market. I believe, David, less than three.

Q.   Is that less than three the number of

**60**

current Bene Market employees who were formally employed by NBOA, or is that the number of NBOA employees that were engaged when Bene Market started up?

A.   Correct, it would have been when Bene Market started up. I was a little confused with the question, but yes, correct.

Q.   When Bene Market opened for business, it hired, you said, less than three of NBOA's former employees?

A.   Yes. The initial question was yes, that many people who are currently employed by Bene Market that were NBOA former employees. I answered less than three. I would need to check and compare payroll sheets back at that time to get you an accurate answer. I couldn't guess.

If you're asking, but you're not, but I'll put it on the record. If you're asking how many employees that were there when Jason left, that would be minimal. A number of people were fired and terminated due to their behavior and their involvement with Jason after he left the company.

Q.   Do you recall approximately how many employees NBOA had the month before it shut down?

A.   The month before it shut down, David, would be less than 30.

**61**

Q.   Do you recall how many employees NBOA hired, say, in the first two months of its operations?

A.   NBOA, after its first two months of operations, I personally hired 30 people in the first two to three months before Jason came on board.

Q.   Maybe you misunderstood. You said before Jason came on board?

A.   Yeah, when did he come on board?

Q.   I'm talking about Bene Market, not NBOA.

A.   Oh, Bene Market.

Q.   I'll make sure the question is clear. I think you said that NBOA terminated approximately 30 employees in the last month of operations.

A.   Yeah, that sounds about right.

Q.   My question was, in the first few months of Bene Market operations, how many employees did it hire?

A.   Between 15 and 20, approximately.

Q.   Can you give me an estimate of those 15 or 20 how many of them had ever worked for NBOA?

A.   Maybe five to eight, approximately.

Q.   And Stephanie Miller is the part owner of Bene Market. Is she also the CFO of Bene Market?

A.   Correct, that's the corporate role that she fulfills for me.

**62**

Q.   Are there any other individuals at Bene Market in a management position who were ever employed with NBOA?

A.   I'm sorry, can you repeat that?

Q.   Other than Stephanie Miller and yourself, are there any other employees of Bene Market that are in management positions that were ever employed by NBOA?

A.   There is Sara Fry, F-R-Y, previously Sara Adams. She wasn't married when she was with NBOA. And she is married, when she's fulfilling her management role with Bene Market. She was terminated after Jason Jordan left, pretty quickly after. And she reapplied -- she applied to work for Bene Market and myself again at the start of this year. So there was a two or three year gap there.

In management roles, no. There's no one. It's myself and Stephanie are the old guards, so to speak, from NBOA. My other C level executives are new people.

Q.   So Ms. Fry is not a Manager for Bene?

A.   Ms. Fry is. She is. She oversees a lot of the HR issues. Would I call her a Manager? Yeah, she has delegation authority.

Q.   As I understand it, a business like NBOA, the health insurance policies that NBOA had sold would generate ongoing revenue as long as the policy was in

**63**

place; correct?

A. Correct.

Q. Is that expected ongoing revenue what you refer to as future income?

A. Yes. As earned, as I had referred to. As earned, E-A-R-N-E-D.

Q. So the property -- what was the principal place of business of NBOA when it shut down -- before it shut down?

A. Stone Point Corporate Center on 12th Street in Reading, Pennsylvania, Muhlenberg Township.

Q. And what was the previous principal place of business of NBOA?

A. That was the principal place of business.

Q. That was the only one for it?

A. Correct.

Q. Was Stephanie Miller ever an owner of NBOA?

A. No. And to touch on your point about residual income, residual as-earned income, future income, as you said, the future of income does not present itself to be collectible until the Advance balance -- the Advance balance is satisfied, which was personally guaranteed by me.

64

So you could have technically -- this is an analogy -- unrelated to NBOA, you could have a million dollars of as-earned business per month, but you could have a 10 million dollar Advance balance. And this will never see the light of day until this Advance pays off a million dollars a month rent. It will never see the light of day until you satisfy it. So contractually, this is not NBOA's income.

I guess I'm rephrasing my answer to the question that you just asked me about future income -- or did it have future income -- so I apologize.

This is owned by the Advance company, which uses a UCC-1 filing mechanism to own that block as collateralization until the Advance balance is paid off, David.

So there could be -- right now NBOA has zero as earned income, but even if it did have half a million dollars of future income -- monthly income, David, it would literally -- it would not be NBOA's income because it is owned by the Advance company.

Q. So, as I understand you, the company that advances money, they have the first right to the future income.

A. Yep, as in the UCC-1, correct. They're in first position.

65

Q. So then how would NBOA be paid anything by the two companies that purchases its future income?

A. So the -- good question -- the companies that we used -- NBOA used are called Merchants Capital Advance is, so they're not technically a financial institution, a very high interest rated loan. So if you borrow half a million dollars when you're in a crunch, they'll take these out on daily payments.

So do you understand that mechanism -- the way they govern themselves as an MCA, Merchant Capital Advance, is they find the loophole and Marshall County in New York, basically -- Marshall County, New York County, so they are able to lend money under the disguise of buying future receipts. It's not that at all.

On my balance sheet it sits as a loan, like it's a loan. It's not a -- it's not a -- it's not technically purchase of receipts. They will look at your revenue per month, David, and then they will see if you can afford daily payments. So they related that to myself. That's the first time in my 15 years of business that I've ever had to take an MCA.

For the record, that was because Jason Jordan blew up my relationship based on his unlicensed selling with my carrier at the time, which was Health Insurance Innovations. So what I had to do was I had to

66

go and borrow money quickly to find a new carrier because we didn't have income for months.

Q. How did my client blow up your relationship with Health Insurance Innovations?

A. We received a call on a cease and desist letter from Health Insurance Innovations stipulating that Jason Jordan had worked at our company -- excuse me -- Jason Jordan had worked at our company and that there was unlicensed selling going on. And they also knew this from the investigative report that's public from the Department of Insurance in Pennsylvania.

So a carrier has the right to terminate based on the contractual obligations that I have with them, that if they feel like you're not acting in a fiduciary way or ethically, they can terminate your contract.

That block of business -- this is good information for you -- that block of business, the as-earned portion, was approximately $850,000. My Advance balance had been paid down from 2000 -- for September, 2014 to the end of 2015 had been paid down to 3 million dollars -- 2.9 million in four months. This 850,000 was going to start to pay out to NBOA, and based on your client's actions, I lost $850,000 a month times potentially 12 months of that. That's usually how long

67

the policies persist. So you're talking close to 10 million dollars.

The reason I said 6 million earlier is because I was being conservative with persistencies 'cause some policies cancel, right, you know, there's an attrition rate.

So just, hypothetically, I believe that your client has cost me close to all that debt plus 10 million dollars of as-earned business.

Q.   What's still not clear is when the as-earned income or the future income, as your accountant listed it, when that was sold, who got the money?

A.   NBOA. But the only reason NBOA got the money is because I personally guaranteed it.

Q.   So it was basically a loan using your as-earned income as collateral?

A.   Incorrect. As I explained, it was a loan based on our revenue and based on my personal guarantee. So the loan wouldn't have been received if I didn't have a house. So technically, if I default on that loan, these people can come and take my house, my car, anything that I own.

So when we go down to book value, which is what it's based on, negatives, and when we go down to is there anything to collect, sure. I will give you

**68**

50 percent of NBOA. Now, please have Jason make the check out to NBOA for 6 to 7 million dollars. I would love to pay myself back.

Q.   What valuations have been done at NBOA, that you're aware of, since its inception?

A.   I believe you and Jason did a valuation. I think -- is that correct? This is erroneous. I think it was a value of 15 million dollars. The accountant has provided Bill with a letter, which I believe should have been provided to you. It shows that NBOA has a negative valuation.

MR. RUSH:   On the record, they were all provided.

BY MR. CROSSETT:

Q.   Have there been any other valuations of NBOA?

A.   No, sir.

Q.   Have there ever been any other agreements or statements that you've made regarding the value of NBOA?

A.   No. Can you clarify? How would I....

Q.   Well, have you ever made any statements as to what NBOA is worth outside of this litigation?

A.   Just to anybody?

Q.   Correct.

**69**

A.   No. Everybody at NBOA was being funded by me. Everybody knew NBOA was in debt all the way up until the bankruptcy was filed.

Q.   What corporate documents regarding NBOA's value were submitted in relation to the divorce proceeding between you and your wife?

A.   Were submitted? Whatever her attorney requested, I assume. Tax returns, P&Ls, I imagine, balance sheets. I believe the accountant, C. Malcolm Smith, provided them with all the P&Ls, balance sheets, '13, '14, '15, '16 documentation. And it was deemed that NBOA had a negative valuation.

But because I was fighting for 50/50 custody of my children, it would appear from those Court documents that you probably reviewed that Carolyn had a valuation of a million dollars, which is -- Carolyn and Jason are very similar. They have a co-dependent tendency based on their relationships with their alcoholic fathers which comes out of narcissism and further co-dependency. So they're going to try and extract from that, me, and that's broke. I have no money.

Q.   You have no money you said?

A.   NBOA has no money. Excuse me.

Q.   You said Carolyn, referring to Carolyn Redmond, your former wife?

**70**

A.   Um-hum.

Q.   Is that a yes?

A.   Yes.

Q.   She had a valuation of the company at a million dollars. Is that what you said?

A.   I believe that's what she said in Court. Yeah.

Q.   Did you ever receive any documents supporting her suggested valuation of 1 million dollars for NBOA?

A.   No. NBOA's never had a valuation of more than zero ever in the history of it being open.

Q.   How did she calculate the 1 million dollars?

A.   She probably plucked it out of mid-air, you know. I can't talk about how my ex-wife thinks. If I knew that, I'd probably still be married.

Q.   During the course of the divorce proceedings, did you or your lawyer ever receive a copy of a valuation from Carolyn or her attorney?

A.   I honestly don't remember. I don't believe so, but this is a period in my life that I just don't remember.

MR. RUSH:   I object. We're discussing divorce proceedings. You're asking for stuff that he

**71**

didn't prepare, and he wouldn't know anything about it. It would have been received by his divorce attorneys not present. That would be more appropriate --

THE WITNESS: I would tell you if I had a valuation. I just don't -- that I don't know.

BY MR. CROSSETT:

Q. What was the time when Carolyn estimated the value of NBOA at 1 million dollars?

A. It would have been -- that would have been coming close to getting divorced, so beginning of 2018 when the leverage game started to play. She started to leverage money for the kids.

Q. And was that her -- your understanding -- was that her value of NBOA at that time? I understand she gave it to you at that time. Was she doing a prior valuation at an earlier time?

MR. RUSH: I'm going to have to object here. You're asking what somebody else did and was outside of his control and was represented by Counsel.

THE WITNESS: I would assume that she made this number up out of thin air.

MR. RUSH: We're 11:30, David.

THE WITNESS: You would make my day if you'd depose her. That would be awesome.

MR. RUSH: I'm open to that.

72

THE WITNESS: Yeah. Six hours of a deposition.

MR. RUSH: Do you want to do it next week?

THE WITNESS: Maybe I would get six hours with my children. It would be awesome, you know.

MR. RUSH: Not only that, but she also was the Secretary of the company.

BY MR. CROSSETT:

Q. You've testified repeatedly about Stephanie Miller having significant knowledge of NBOA finances.

A. She does.

Q. And she's currently an employee/owner with you at Bene Market?

A. Correct.

Q. I understand she's not currently an employee at NBOA because --

A. Yes, sir.

Q. Would you be willing to present her to finish this deposition as the Corporate Designee next week?

MR. RUSH: It's up to you. It's awkward.

THE WITNESS: Let me tell you why I hesitate. She is working on other projects, you know, and I'm conscious that things like this agitate people. They

73

agitate me, as you can see. I don't like to put people in a position where they have to waste their time, so to speak, respectfully, David, and come and sit here and get beat up by an attorney and -- so I care about Stephanie.

A telephonic deposition would be no problem. Because Stephanie is 64 years old. This is her last swan song; right? So I don't want to -- with that business she's trying to retire in the next two years, so I don't want to agitate her further. After she had life-threatening -- she'd have to watch her stress level, David, is what I'm saying. But a telephonic deposition would be --

MR. RUSH: Several documented life-threatening illnesses, David.

THE WITNESS: I wasn't being elusive there. I'm just -- you know, I would need to run it by her. For me, yes, of course, but I would need to run it by her. If she said no, then I'd have to respect that because it could heighten her stress and hypertension and I would have to come myself.

BY MR. CROSSETT:

Q. The challenge I have is I submitted to you a Notice of Deposition with a lot of specific areas I wanted to ask questions about.

A. Certainly.

74

Q. And I understand you have a lot to do, but many of the areas your response was you don't know, you're not sure, you'd have to look, have to talk to Stephanie. And so we can either file a motion with the Court -- I understand she's not an employee, but it seems to me that she's the person that may know the answer to these questions the best.

A. I understand.

Q. That's the reason I'm asking so we can, perhaps, avoid the Court games.

A. I agree. What would be great is if you sent to Bill, as soon as possible, the questions that you don't feel I answered and you allow Stephanie to respond to them in writing so she doesn't have to -- respectfully, you guys play a game in this room. You know, it is what it is. There's leverage, there's inverse leverage, there's all the bullshit of the day, excuse my French, dear, that you guys do. If you submit us questions, we will answer them questions for you in writing with exact answers.

But this stuff, it's for the birds, you know, respectfully. It's just that it's -- I get agitated and Stephanie will get -- she's worse than me. She'll get agitated, also. So if you submit, David, would it be fair to say you could submit these questions that you feel you

75

need more info on under the guise of discovery, and we will present them within 48 hours? Would that work?

Q. I appreciate the offer. Unfortunately, or fortunately, a deposition is a different tool than written Interrogatories. We can continue this one to give you time to get answers for the questions you didn't know. The remaining questions I have are somewhat short, I hope.

What funds has NBOA given to charity from August 4th, 2014 to present?

A. We had two charitable give-aways, David. We had $12,000 to the homeless shelter in Reading, the Hope Mission for men who are trying to get back on their feet, men who've been going through a divorce, believe it or not, are coming back from the military. And then we did 5,000 to a small outfit, Kids, K-I-D-S, That Ball, B-A-L-L, out of New York. That was $5,000. Technically, we give them that money even though we owed that money to the Advance company, but I felt -- I thought they were kids.

There might be a few other throw-aways. There might be like Drew Bell, for instance, the Reading -- Drew, D-R-E-W, Drew, Andrew Bell, for instance -- this is an example -- just sent me an e-mail asking for a few hundred dollars. So if I dug into charity and charitable

76

contributions in the P&L, I would be able to get you the breakdown, but that's 95 percent of them.

Q. What presentations have been made by NBOA to potential investors or lenders after August 4th, 2014?

A. We were not -- Plan Z would be it. We were not in presentation mode, M-O-D-E.

Q. Was any other entity presented with a presentation as a potential investor after August 4th, 2014?

A. I do not believe so, but I'll need to check.

Q. Who made the presentation to Plan Z?

A. It would have been myself. It would have been myself.

Q. What was presented?

A. We would have showed them financial statements and models of sales presented in Excel format. Excel, E-X-C-E-L.

Q. Other than NBOA and Bene Market, what other companies do you have an ownership interest in?

A. I'm not answering that question.

MR. RUSH: I'll advise him not to answer at this time. We'll review the discovery responses.

MR. CROSSETT: Why not? Why are you advising him not to answer?

77

MR. RUSH: What basis does it have?

MR. CROSSETT: The Court permitted me to take the deposition of Mr. Redmond regarding his personal finances.

MR. RUSH: Yes, it did.

MR. CROSSETT: Are you instructing your client not to answer that question?

MR. RUSH: Yes, sir. At this time, yes, sir, without an offer of proof. I specifically said I wanted to adjourn till the next round of this deposition, which is for next Thursday.

MR. CROSSETT: What we're going to do is we're going to do all that we can on Mr. Redmond's personal deposition, and then we'll get the documents and we'll continue the deposition once we have the documents. You can instruct him not to answer, if you want to.

BY MR. CROSSETT:

Q. So I want to ask you questions now in your personal capacity, and I'm going to ask you --

A. Well, I'm leaving.

MR. RUSH: Yeah, I think we've got the deposition scheduled for next week.

THE WITNESS: We can do this here. I want to spend time with the kids.

MR. RUSH: You need documentation. We're

78

coming back for a second deposition. Preserve those questions for that time when you have the documentation.

MR. CROSSETT: We have a properly noticed deposition for Mr. Redmond this morning. I'm going to ask questions --

MR. RUSH: Yes, and you started those questions as a Corporate Designee.

THE WITNESS: We're going to take two minutes. I want to talk to you outside for a second.

(Short recess was taken.)

MR. RUSH: Back on the record. We're happy to answer those questions. Mr. Redmond has a matter he must attend to. This deposition can be adjourned to that time. You're moving on to personal from all the corporate. That is a separate deposition.

Yes, you properly noticed it. It in light of the fact that we have a deposition due next week, and you're going to continue the Corporate Designee, he would prefer to answer at that time and he'll answer all of those for you. We are not objecting to answering those questions.

MR. CROSSETT: Are you objecting to Mr. Redmond being deposed in his personal capacity now, today, right now here?

MR. RUSH: I'm asking for a professional

79

courtesy that he has a meeting he must attend. He can't leave his children abandoned.

MR. CROSSETT: What I want to know is, are you going to instruct your client not to answer questions now?

MR. RUSH: He has to leave now, David. That is what I'm telling you. So he doesn't have time to answer the questions now.

MR. CROSSETT: Well, I'm going to ask the questions, and he can answer them or not.

THE WITNESS: David, how many questions are there, sir? Can I ask you how many questions? I just don't remember when -- how many questions are there?

MR. CROSSETT: I don't have a set number of questions. It will depend on what sort of answers you give, Mr. Redmond.

THE WITNESS: Every question that I'm going to answer here, I'm going to say I don't know. So can we skip the semantics and let me go and get the kids, or is he going to play this leverage game to make you look stupid in front of the Judge? What are we doing here?

MR. RUSH: You to have answer the questions or will answer the questions, but he has something that he has to attend to, which you yourself have acknowledged, and we have a deposition now scheduled

80

for a week from today.

THE WITNESS: You had knowledge of this, David, two hours ago.

MR. RUSH: I'm waiving any objection to the questions about his personal finances. We just discussed them outside. I'm waiving any objection to it. You'll get to ask your questions. What I am asking for is you to allow Mr. Redmond to do what he must do. That is what I'm saying. Don't try to reask my question, are you asking this, David. That is what I am asking.

MR. CROSSETT: We have a deposition.

MR. RUSH: I'm aware. You stated. We also have a deposition next week at the same time, which is a continuation of the Corporate Designee deposition that you started today. You made that very clear. You're now asking to move on to the personal one without the corporate one being completed.

And actually, you're asking there to be a substitute Corporate Designee, which I don't think is even possible under the structure of the depositions at all to complete the second half of the deposition started by a different designee. That aside, you've got your Corporate Designee, now you want to move on to the personal.

MR. CROSSETT: That is correct.

MR. RUSH: Okay. And what I am asking

81

since we are due back here and I'm waiving any objection to these questions at that time, on the record, I have no objections to the questions about his personal finances or his holdings. I am asking you to excuse Mr. Redmond for the day.

MR. CROSSETT: I understand your request. I'd like to start the deposition and get some way into it in advance of getting any documents --

MR. RUSH: Let's set a time now where it stops.

MR. CROSSETT: Ready for the first question?

THE WITNESS: No. We're going to take two minutes.

MR. RUSH: A time now that we're going to stop, that's what I'm asking.

MR. CROSSETT: Just note that Mr. Redmond has just walked out of the room.

(Mr. Redmond exited the conference room.)

MR. RUSH: I'm sure she has.

(Short recess was taken.)

(Discussion was held off the record.)

MR. CROSSETT: I'm reserving my right to continue the deposition of the Corporate Designee next --

MR. RUSH: Thursday, September 5th, 9 a.m.

82

MR. CROSSETT: I want to move on to begin questions just directed to Mr. Alan Redmond in his individual capacity that were properly noticed by Notice of Deposition dated August 9th, 2019. We'll do this under one transcript. Counsel and I agreed not to make it a separate transcript today.

MR. RUSH: Correct. There will be one transcript for today's proceedings.

BY MR. CROSSETT:

Q.   So Mr. Redmond, I'm now asking you questions in your individual capacity, not as a Corporate Designee of NBOA. Does that make sense?

A.   Um-hum.

Q.   Is that a yes?

A.   That's a yes.

Q.   What business or professional partnership or joint venture are you an owner of or own any interest in?

A.   I'll need to check that for you. I'm not sure.

Q.   You don't know of any businesses that you own any --

A.   NBOA and Bene Market.

Q.   Do you know of any other businesses?

A.   I'll need to check with my accountant.

83

Next question.

Q.   Do you understand that you are under oath today?

A.   Um-hum.

Q.   Is that a yes?

A.   Um-hum.

MR. RUSH:  You have to say yes or no.

THE WITNESS:  Yes.

BY MR. CROSSETT:

Q.   Your testimony under oath is that you don't know, other than NBOA or Bene Market, whether you own any ownership interest in a business or professional partnership or joint venture?

A.   There's other entities, and we'll be happy to provide a list.

Q.   What are they?

A.   I don't know.  I'll need to check with my accountant.  I'm not sure what's in business, what's out of business.  I'm not sure what filings have been made to keep them in business.  I'm not sure if something's been dissolved.  There's multiple businesses, and before I go on the record and tell you them, I have to check with my accountant.

Q.   What business do you know you own a part of?

84

A.   NBOA and Bene Market.

Q.   And that's all you know of?

A.   Correct.

Q.   What is your total annual income for the year 2018?

A.   I'll to have check with my accountant. I'm not sure.

Q.   Do you have an estimate?

A.   I don't, sir.

Q.   Have you filed --

A.   Extensions were filed for 2018.

Q.   Have you filed your 2017 taxes personally?

A.   Correct.

Q.   Who filed them?

A.   C. Malcolm Smith & Company out of Wyomissing, Pennsylvania.

Q.   What was your gross income for --

A.   You just asked that, David.  I told you I don't know.  I'll need to check with my accountant.

Q.   I asked for 2018.  Do you know for 2017?

A.   No.

Q.   Do you know for 2016?

A.   No.

Q.   Do you have an estimate for any year in

85

the past six years how much money you made in a year?

A.   No.

Q.   Can you ballpark it?

A.   No.  I think I would be doing you a disservice by ballparking it when I don't know.

Q.   What entity are you a shareholder or stockholder in?

A.   NBOA and Bene Market and I'll have to check with my accountant on the others.

Q.   What entity are you a Director of?

A.   NBOA and Bene Market.  I'll have to check on the others with my accountant.

Q.   Have you talked to your accountant at all recently about what entities you may be an owner or shareholder of?

A.   I have not.

Q.   How would your accountant know what entities you were a Director of?

A.   My accountant takes on a mentorship role with me, and he also helps me with business formation.

Q.   Have you been to any Corporate Board meetings in the last 12 months?

A.   I believe so, yes.

Q.   What company?

A.   NBOA and Bene Market.

86

Q.   Have you been to any Corporate Board meetings in the last 12 months with any other company?

A.   No.

Q.   Have you had any meetings that you attended as a Director of any other company besides Bene Market and NBOA?

A.   No.

Q.   What was your monthly income for July, 2019?

A.   Unsure.  I'll need to check with my accountant.

Q.   Can you estimate your monthly income for any month in the last five years?

A.   No, I cannot ballpark it.  I'll need to check with my accountant to get you exact numbers.

Q.   Would there be any other time frame that you could estimate, whether it was daily or weekly or quarterly?

A.   No.  I'll need to check with my accountant.

Q.   Where do you live currently?

A.   In Wyomissing, Pennsylvania.

Q.   What's the address?

A.   2005 Regency Drive.

Q.   Do you rent?

87

A. No.

Q. Do you own it?

A. Correct.

Q. When did you purchase it?

A. (No response.)

MR. RUSH: I don't know.

THE WITNESS: I'll need to check with my accountant.

BY MR. CROSSETT:

Q. Within the last how many --

A. Six months, probably within the last six months, David, but again, I'll check with my accountant.

Q. How much did you purchase it for?

A. I'm unsure. I'll need to check with my accountant.

Q. Did you go to closing yourself?

A. No, I did not.

Q. Who went to closing for you?

A. I dont know. I'll need to check with -- Bill?

MR. RUSH: I didn't attend the closing.

BY MR. CROSSETT:

Q. Is there a mortgage on the property?

A. I'll need to check with my accountant.

Q. You don't know if you owe a mortgage on

**88**

2005 Regency Drive?

A. I'm unsure. I'll need to check. When you have multiple things going on, David, you usually assign things to other people.

Q. Are you the sole owner of the house that you live in?

A. I'm unsure. I'll need to check with my accountant.

Q. Do you think you might own it with somebody else?

A. I don't know. I'll need to check with him.

Q. Are you married?

A. No, I am not, David. Are you?

Q. The funds that you used to purchase the 2005 Regency Drive property, where did you get those funds?

A. I don't know if I purchased it. Remember? I need to check with my accountant. Nice try, though.

Q. I think your testimony was that you purchased it approximately six months ago. Did I misunderstand you?

A. You may have, but I'll need to check with my accountant.

**89**

Q. What's the current market value of the property at 2005 Regency Drive?

A. I have no idea.

Q. Did you make the offer to purchase it, or did someone else make the offer?

A. I'm unaware. I'll need to check my notes.

Q. Did you use a realtor to purchase the property?

A. I don't know if we did.

MR. RUSH: If I can chime in, I do have knowledge of that. A realtor was involved. I do not recall if this realtor was employed in any way by Mr. Redmond or any of his people.

BY MR. CROSSETT:

Q. Other than the property you just talked about at 2005 Regency Drive, do you own any interest in any other real estate in Pennsylvania?

A. I'm unsure.

Q. Who would know?

A. I'll need to check with my accountant, I think.

Q. Do you own any interest in real estate outside of Pennsylvania?

A. I'll need to check with my accountant.

**90**

Q. Do you know?

A. I'll need to check with my accountant.

Q. Does that mean that you don't know the answer to that question?

A. I am fuzzy on that answer and will need to check with my accountant.

Q. Do you own any interest in real estate outside of the United States of America?

A. No. That screwed you up because you thought it was yes because your client lied to you; right?

Q. Before you lived at 2005 Regency Drive, where did you live?

A. In Gilbertsville. I'm not sure of the address.

Q. Did you own the property?

A. No.

Q. Were you renting?

A. Yep. Yes. Excuse me, yes, Y-E-S.

Q. Have you owned any other property in Pennsylvania other than 2005 Regency Drive at any time in the last five years?

A. Nope. You've got six minutes till I gotta get the kids.

MR. RUSH: It was Marjessa Drive.

**91**

THE WITNESS: You're right.

MR. RUSH: It's Marjessa Drive.

THE WITNESS: M-A-R-J-E-S-S-A.

MR. RUSH: I don't remember the street address.

THE WITNESS: 30 Marjessa Drive, Gilbertsville, PA.

BY MR. CROSSETT:

Q. What would you need to do between now and next Thursday to figure out the answer to the questions I've asked you so far?

A. What do you think? Who do I need to talk with? You know the answer to that. Now you're just wasting time. Who? Who? It begins with A and ends in accountants.

Q. In the past four years, have you transferred or conveyed or sold any interest in real estate?

A. I need to talk to my accountant. I'm unsure. Genuinely unsure.

Q. Do you hold a mortgage or other security interest in any real estate?

A. I have to check with the accountant. I'm unsure.

MR. RUSH: Are you asking if he's the

lender?

BY MR. CROSSETT:

Q. Hold a mortgage. Do you own or have any interest in, either individually or jointly, any motor vehicles?

A. The motor vehicle I have is an Escalade, 2017. It is financed through Santander Bank.

Q. Is it in your name?

A. Correct.

Q. Solely?

A. Correct.

Q. How much is owed on it?

A. Approximately $48,000.

Q. Do you own any other vehicles?

A. No.

Q. Do you own any other non-automobile vehicles, like boats, something like that?

A. No.

Q. What is your estimation of the market value of your Escalade?

A. $35,000.

Q. Do you own or have any interest in any corporate stocks, bonds or other investment contracts?

A. Nope.

Q. For Bene Market, I'm assuming you had to

or the company had to get loans to have operating funds for the business when you started up. Is that correct?

A. Why would you assume that? Can he make assumptions?

Q. Is it correct that Bene Market received loans for operating --

A. Generally interested.

MR. RUSH: He's asking a question.

THE WITNESS: What was the question?

BY MR. CROSSETT:

Q. Did Bene Market take out any loans for operating expenses at any time?

A. Yes. We answered that on the previous deposition -- the previous section.

Q. Did you personally guarantee those loans?

A. All of them.

Q. Did you put any property that you owned up as collateral for those loans?

A. I'll need to check with my accountant.

Q. Do you know the answer?

A. No. I need to check with my accountant. I need to have him review the documents to see what collateralization occurred, if any.

Q. Do you know of any assets that you have that might induce someone to lend money to a company that you own?

A. To answer your previous question and this question, no. I need to check with my accountant.

Q. Do you have any pension or 401K plan which you have an interest?

A. No.

Q. Do you have any savings or checking accounts in your name?

A. Yes.

Q. What bank are they with?

A. I'm unsure where my personal bank accounts are. I need to check with C. Malcolm Smith & Company.

Q. You don't know the name of any bank that your personal accounts are in?

A. I know that blows your mind because you're a hundred and fifty grand a year guy, but I just don't know where I personally bank. I don't know. I need to check with my accountant.

Q. Do you make more than 150 grand a year?

A. I will need to check with my accountant. I'm not sure.

Q. Do you know how much money you have in any bank accounts that are in your name?

A. Personal bank accounts, less than

$5,000.

Q. Do you know how much money is in the bank account of Bene Market?

A. No, I do not.

Q. Can you estimate?

A. No, I cannot.

Q. Does Bene Market own the property --

A. No.

Q. -- that it uses?

A. No.

Q. Who owns the property?

A. Soirse, S-O-I-R-S-E, LLC.

Q. Does Bene Market rent the property from Soirse?

A. Correct. I have the third floor.

Q. Do you have any currency of the United States or any foreign jurisdiction in your possession or control regardless of where it's stored?

A. What was the question?

Q. Do you have any currency in your possession or control --

A. No.

Q. You have no money, no cash?

A. In foreign currencies?

Q. United States or foreign.

**96**

A. There's approximately less than $5,000 in my personal accounts. But in cash?

Q. Correct.

A. No.

Q. Do you own any stocks or bonds?

A. Nope.

Q. Do you have any interest in any patent, copyright or royalties?

A. No.

Q. Can you estimate the value of your liabilities?

A. Personal liabilities?

Q. Yes.

A. North of 18 million dollars.

MR. RUSH: I know it's been answered. I'm only going to object because of the wording of the question.

THE WITNESS: It's erroneous.

MR. RUSH: Liability of any kind is your question?

MR. CROSSETT: That's right.

BY MR. CROSSETT:

Q. Are there additional liabilities of any kind other than the 18 million that you referenced?

A. There could be more, but I'm ballparking

**97**

for you 18 million.

Q. Are you a beneficiary of any trust?

A. No.

Q. Do you own or have any interest in any other assets that we haven't discussed so far this morning that have a value of over 10,000?

A. I don't believe so.

Q. Within the past six years, have you transferred, gifted, disposed or destroyed any item of personal property having a value of $10,000 or more?

A. No. At the divorce, potentially. I don't know if that's a transfer, though. She got the --

MR. RUSH: That's a separate issue, David. He's not qualified to answer.

THE WITNESS: That's not me being an asshole to you. That's me being just -- I really don't -- in the divorce there was alimony, child support. I don't know how that falls into, you know, the --

MR. RUSH: Off the record.

MR. CROSSETT: On the record.

MR. RUSH: On top of that, the tax laws have changed.

BY MR. CROSSETT:

Q. What assets did your wife get in the divorce?

**98**

A. I'm not sure. I'll need to review the divorce papers again.

Q. Is there a divorce document that lists what assets she received or would receive?

A. I'm not sure. I'll need to contact my family Counsel.

MR. RUSH: I'm not the divorce attorney, so I've never seen any. I have a conflict with Carolyn Redmond, so....

BY MR. CROSSETT:

Q. Have you given any gifts away in the last six years --

A. No.

Q. -- with a value of $5,000 or more?

A. No.

Q. Has any company that you own an ownership interest, other than NBOA, given any charitable donation in excess of $5,000 in the last six years?

A. No.

Q. Are there any Judgments on record against you personally?

A. Yes, multiple.

Q. Can you itemize them?

A. I wanted to help the kid out here and see if I can give him some information. Capital Advance

**99**

Services had a Judgment, GTR had a Judgment, Inside Response had a Judgment all against myself and NBOA.

Q. How much was the Capital Advance Services Judgment?

A. 2.8 million -- north? 3.5.

MR. RUSH: Close to 4, as I recall, initially.

THE WITNESS: This was a debt assumed by myself personally to keep the doors open after your client caused me to lose millions of dollars.

BY MR. CROSSETT:

Q. How much is owned on the Capital Advance Services Judgment today?

A. Currently? I'm not sure.

Q. Have you paid some of the 4 million dollars down?

A. Yes. I'm not sure how much. I need to check with my accountant.

Q. How much is the Judgment for GTR?

A. It was approximately 148,000. It has been paid down. I'm not sure what the balance is.

Q. How about Inside Response, same question, how much was the initial Judgment and how much now?

A. Approximately 650.

Q. K?

**100**

A. 650 K, 275,000 left in balance. Unsure what the payments are per month. I need to check with my accountant.

Q. I'm sorry, I missed the second number that's currently owed.

A. Is that GTR?

Q. The 650 was initial. What's the current payoff, approximately?

A. I think it's 275.

Q. Any other Judgments against you personally other than those three?

MR. RUSH: Yes. Bortmes. It was paid. B-O-R-T-M-E-S.

MR. CROSSETT: How much is owed on that one now?

MR. RUSH: There's nothing owed on it, but it was personal.

BY MR. CROSSETT:

Q. Any other Judgments that are currently outstanding?

A. I think Crystal Bortmes was a hundred or 50 -- 50,000.

Q. Any other Judgments that are currently outstanding?

A. I don't recall, but I can definitely get

**101**

you. I think that's the big ones.

MR. RUSH: Dolan Construction.

THE WITNESS: Oh, 18,500. Excuse me.

MR. RUSH: Dolan, D-O-L-A-N.

BY MR. CROSSETT:

Q. Are each of these four, Capital Advance Services, GTR, Inside Response and Dolan Construction, are they all related to NBOA?

A. Yes, sir.

MR. RUSH: David, this has to be off the record. It's personal. I'm trying to help you. Just go off the record.

MR. CROSSETT: Sure.

(Discussion was held off the record.)

BY MR. CROSSETT:

Q. Is there any Judgment creditor currently attempting to execute on any Judgment against you?

A. Yes.

Q. Which ones?

A. I'm not sure.

Q. How do you know the answer is yes?

A. Because he nodded his head.

Q. Attorney Rush did?

A. Yes.

MR. RUSH: He's not aware, but there are

**102**

Sheriff sales scheduled.

THE WITNESS: Against NBOA.

MR. RUSH: Inside Response is one. Capital Advance has and threatens to on a regular basis. There was another and I can't recall myself.

BY MR. CROSSETT:

Q. Has anyone issued to you personally Interrogatories in Aid of Execution?

A. Could you explain that?

MR. RUSH: You'll need to clarify. I need a time frame.

BY MR. CROSSETT:

Q. In the last six years, has anyone ever issued to you personally Interrogatories in Aid of Execution?

MR. RUSH: He may not recall. I do know the answer. The answer is yes.

THE WITNESS: Yes.

MR. CROSSETT: Do you know who it was?

MR. RUSH: Give me a moment. Who terminated you, the termination you were discussing earlier? Off the record.

(Discussion was held off the record.)

MR. RUSH: Whatever company, the official name is for Health Insurance Innovations through PNC Bank,

**103**

I believe under a Pittsburgh docket, issued discovery in Aid of Execution.

THE WITNESS:  Based on unlicensed selling by Jason Jordan.

BY MR. CROSSETT:

Q.    Mr. Redmond, have you provided responses to those Interrogatories in Aid of Execution?

A.    We would have, yes.

Q.    Do you know if you did?

MR. RUSH:  As far as I know, either we did or the issue -- we worked something out prior.

THE WITNESS:  I would have assumed the personal debt potentially, David.  Again, I can get you the answers.

MR. RUSH:  They went away one way or the other that I can recall.  This was several years ago.  The same week his divorce happened, so it was within a week.

BY MR. CROSSETT:

Q.    Do you have any other liabilities or obligations financially against you personally that have been discovered?

A.    No.

Q.    Do you have any other assets that you own personally, either individually or jointly, that we haven't discussed today?

104

A.    No.

MR. CROSSETT:  What I'll do is we'll conclude the deposition at this time --

THE WITNESS:  Thank you, David.

MR. CROSSETT:  -- understanding that we'll continue it to be finished next week.

MR. RUSH:  We will continue both depositions at 9 a.m. Thursday.

(Whereupon, the deposition adjourned at 12:10 o'clock p.m.)

105

CERTIFICATE

I, Lori A. Dilks, the officer before whom the deposition of ALAN C. REDMOND was taken, do hereby certify that ALAN C. REDMOND, the witness whose testimony appears in the foregoing deposition, was duly sworn by me on August 28, 2019, and that the transcribed deposition of said witness is a true record of the testimony given by him; that the proceedings are herein recorded fully and accurately to the best of my ability; that I am neither attorney nor counsel for, nor related to any of the parties to the action in which this deposition was taken; and, further, that I am not a relative of any attorney or counsel employed by the parties hereto or financially interested in this action.

_____Lori Dilks_____
Lori A. Dilks

PA Court Reporter
Notary Public in and for the
Commonwealth of Pennsylvania

My Commission expires
November 29, 2019

106

# Exhibit Q

# Exhibit Q

Received County of Berks Prothonotary's Office on 08/13/2021 12:43 PM Prothonotary Docket No. 14-17117

Received County of Berks Prothonotary's Office on 09/02/2021 12:44 PM Docket No. 14-17117

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC., and ALAN CHRISTOPHER REDMOND, | : : : | IN THE COURT OF COMMON PLEAS BERKS COUNTY, PENNSYLVANIA CIVIL ACTION - LAW |
| Plaintiffs, | : : | |
| v. | : : | No. 14-17117 |
| JASON SCOTT JORDAN, | : : | |
| Defendant. | : | Assigned to Judge Timothy J. Rowley |

**<u>ORDER</u>**

AND  NOW,  this  ___31st___  day  of  ___AUGUST_____, 2021, upon consideration of Jordan's Motion for Sanctions, evidence presented on August 13, 2021, and any response thereto, the Court finds that:

1.  Upon Motion by Jordan, by Order dated September 26, 2016, this Court granted a Motion to Compel Alan Christopher Redmond ("Redmond") to produce discovery.

2.  Upon a Motion by Jordan for Sanctions, by Order dated June 6, 2021, this Court granted the request for sanctions and required Redmond to appear for a deposition.

3.  Thereafter, following several deposition dates set by Jordan's counsel for the deposition of Redmond which were canceled by Redmond's counsel, Redmond's deposition was again properly noticed to be held at Cornerstone Law Firm at 1:00 p.m. on August 11, 2021 for *in person* attendance by Redmond.

4.  On August 11, 2021, Counsel for Redmond stated that Redmond would not appear in person for the August 12, 2021 deposition.

5.  Following such suggestion, a phone conference was held on August 11, 2021 by the Court with Attorney Crossett (for Jordan) and Attorney Valz (for Redmond) participating and the issue of Redmond's anticipatory noncompliance with the Notice of Deposition was brought to the Court's attention.

1

Received County of Berks Prothonotary's Office on 08/13/2021 12:43 PM Prothonotary Docket No. 14-17117

Received County of Berks Prothonotary's Office on 09/02/2021 12:44 PM Docket No. 14-17117

6. On August 11, 2021, the Court orally indicated that Redmond must appear in person at his deposition or face sanctions.

7. Notwithstanding the clear Order of the Court, Redmond willfully refused to appear at his properly noticed deposition on August 12, 2021.

8. Following numerous delays which have been objected to by Jordan, trial for this matter is set to begin on September 20, 2021 and any further delay of trial would be prejudicial to Jordan.

9. Consequentially, sanctions against Redmond are warranted.

Accordingly, it is hereby ORDERED and DECREED that Jordan's Motion for Sanctions is GRANTED as follows:

1. Redmond is precluded from offering any testimony in this matter at trial.

2. The finder of fact in this matter will be notified that Redmond is not permitted to testify at trial as a sanction against him.

3. Counsel for Redmond is precluded from calling any witnesses at trial to testify to any matter that is within the ~~knox~~ reasonably expected personal knowledge of Redmond with the Court to make the determination of what issues would reasonably be in his personal knowledge.

4. Counsel for Jordan may introduce at trial some or all of Redmond's statements provided in deposition without calling Redmond as a witness at trial.

~~Admissible evidence of Redmond's net worth (which is relevant to the issue of punitive damages against him) will include expert testimony by Randall C. Raifsnider, ASA, CVA, of the CPA firm, Herbein & Company, Inc. as to the value of National Brokers~~

2

~~of America, Inc. with respect to market comparables as presented in his expert report dated~~

~~August 3, 2017.~~

6. Redmond is sanctioned for willfully failing to comply with court-ordered discovery and for his willful failure to appear at his properly notice deposition on August 12, 2021 and thus must within five business days pay to Cornerstone Law Firm the sum of $ 10,484.50          in legal tender as reasonable attorneys' fees incurred by Jordan.

7. Trial for this matter will begin on September 20, 2021 as previously scheduled with the undersigned being the finder of fact.

BY THE COURT:

_____

Timothy J. Rowley, *J.*

Received County of Berks Prothonotary's Office on 08/13/2021 12:43 PM Prothonotary Docket No. 14-17117

Received County of Berks Prothonotary's Office on 09/02/2021 12:44 PM Docket No. 14-17117

3

# Exhibit R

# Exhibit R

NATIONAL BROKERS OF AMERICA,   :   IN THE COURT OF COMMON PLEAS
INC.,   :   BERKS COUNTY, PENNSYLVANIA
and   :   CIVIL ACTION - LAW
ALAN CHRISTOPHER REDMOND,   :
      Plaintiffs,   :   No. 14-17117
   :
      v.   :   JURY TRIAL DEMANDED
   :
JASON SCOTT JORDAN,   :
      Defendant.   :   Assigned to Judge Timothy J. Rowley

## PROPOSED ORDER

AND NOW ON THIS __3__ DAY OF __November__, 2021, upon

consideration of Plaintiff's Petition for Entry of Judgment, it is hereby ORDERED that the

Prothonotary is directed to immediately enter judgment in the above-captioned matter against

Plaintiff, Alan Christopher Redmond, in the amount of $10,484.50 in favor of Cornerstone Law

Firm and immediately enter the same on the judgment index.

BY THE COURT:

_____

Hon. Timothy J. Rowley, Judge

Received County of Berks Prothonotary's Office on 10/28/2021 3:19 PM Prothonotary Docket No. 14-17117

Received County of Berks Prothonotary's Office on 11/05/2021 10:33 AM Docket No. 14-17117

Cornerstone Law Firm

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

                        :

                        :

                        :

Vs.

                        :       CASE NO.  14-17117

                        :       CIVIL  DIVISION

Alan Christopher Redmond

                        :

                        :

## NOTICE OF ENTRY OF JUDGMENT

TO:  Alan Christopher Redmond

You are hereby notified in accordance with Pa. R.C.P. 236 that a judgment has been entered against you.

JONATHAN K. DEL COLLO
ACTING PROTHONOTARY

DATE:  Novermber 3, 2021        BY: *allison Bitting*

                                     Deputy Prothonotary

Judgment Paid 14-17117
Berks County Prothonotary Office

*5275904 R*    11/22/2021  2:39 PM

Received County of Berks Prothonotary's Office on 11/22/2021 2:39:44 PM  Prothonotary Docket No. 14-17117

**BERKS COUNTY**

**Prothonotary Office**

11/22/2021 2:38:54 PM ptabitti
#160579

```
**Docket Number: 14-17117 Judgment by Order
   Judgment Paid                      38.00
   eFiling Fee                        15.00

Total:                                53.00

   Check                              53.00
Total Payments:                       53.00

Change Due:                            0.00
```

Received County of Berks Prothonotary's Office on 11/22/2021 2:39:44 PM  Prothonotary Docket No. 14-17117

# Exhibit S

# Exhibit S

REV bL008 11

PA DEPARTMENT OF REVENUE
BUREAU OF COMPLIANCE
LIEN SECTION
PO BOX 280948
HARRISBURG PA 17128-0948



**pennsylvania**
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

**CERTIFIED COPY OF LIEN**

COURT OF COMMON PLEAS OF
BERKS COUNTY,
PENNSYLVANIA

ALAN C C REDMOND
SHANNON  KROEMMELBEIN
2 HIGH RD
WYOMISSING PA  19610-2500

| | |
|---|---|
| Docket Number | 24-11072 |
| Docket Date | |
| ID Number | 5092 / 3470 |
| Notice Date | 6/7/2024 |
| Letter ID | L0025883928 |
| Lien ID | 213015 |

To the Prothonotary of said court: Pursuant to the laws of
the Commonwealth of Pennsylvania, there is herewith
transmitted a certified copy of a lien to be entered of record
in your county.



State Tax Lien 24-11072
**Berks County Prothonotary Office**

*5812360 R*    6/14/2024    3:44 PM

**Summary of lien**

| Tax Type | Account ID | Tax | Total |
|---|---|---:|---:|
| Personal Income Tax | 5017 / 2264 | 41,830.00 | 49,303.67 |
| | | **41,830.00** | **49,303.67** |
| | | Filing Fee(s) | 25.00 |
| | | Satisfaction Fee(s) | 13.00 |
| | | Settlement Total | 49,341.67 |

**INTEREST CALCULATION DATE: 8/21/2024**

The undersigned, The Secretary of Revenue (or authorized delegate) of the Commonwealth of Pennsylvania, certifies this to be a true
and correct copy of a lien against the above-named taxpayer for unpaid tax, interest, additions or penalties thereon due from such
taxpayer and which, after demand for payment thereof, remains unpaid. The amount of such unpaid tax, interest, additions or penalties
is a lien in favor of the Commonwealth of Pennsylvania upon the taxpayer's property - real, personal, or both - as the case may be.

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case
Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential
information and documents.

*Sean Washington*                                                          6/7/2024

SECRETARY OF REVENUE (OR AUTHORIZED DELEGATE)                              DATE

PART 1 - TO BE RETAINED BY RECORDING OFFICE

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM Prothonotary Docket No. 24-11072

## COMMONWEALTH OF PENNSYLVANIA

### VS

### ALAN C C REDMOND
### SHANNON  KROEMMELBEIN

---

## NOTICE OF TAX LIEN

Filed this _____ day of

_____, _____, _____ at _____m.

---

## LIENS FOR TAXES

Liens for corporation taxes arise under § 1401 of the Fiscal Code, 72 P.S. § 1404, as amended.
Liens for personal income tax and employer withholding tax arise under § 345 of the Tax Reform Code of 1971, 72 P.S. § 7345, as amended.
Liens for realty transfer tax arise under § 1112-C of the Tax Reform Code of 1971, 72 P.S. § 8112-C as amended.
Liens for liquid fuels tax arise under § 13 of the Liquid Fuels Tax Act, 72 P.S. § 2611-M, as amended.
Liens for fuel use tax arise under § 13 of the Fuel Use Tax Act, 72 P.S. § 2614.13, as amended.
Liens for motor carriers road tax arise under Chapter 96 of the PA Vehicle Code (75 PA. C.S. 9615).
Liens for inheritance tax and estate tax arise under the Inheritance and Estate Tax Act of 1982, Act of Dec. 13, 1982, P.L. 1086, No. 225 § 1 et.seq., 72 PA. C.S.A. § 1701 et. seq. For decedents with date of death prior to Dec. 13, 1982, liens arise under the Inheritance and Estate Tax Act of 1961, 72 P.S. § 2485 101 et. seq.
Liens for state and local sales, use and hotel occupancy tax and public transportation assistance fund taxes and fees arise under § 242, Act of March 4, 1971, No.2, as amended, 72 P.S. § 7242.
Liens for motorbus road tax arise under Chapter 98 of the PA Vehicle Code (75 PA C.S. 9815).
Liens for liquid fuels and fuels tax and oil company franchise tax imposed in §9502 of the Vehicle Code (75 PA C.S. §9502) arise under Chapter 98 of the PA Vehicle Code (75 PA. C.S. §9013).

## AUTOMATIC REVIVAL AND PRIORITY OF NOTICE

The Notice of Lien is automatically revived and does not require refiling of the notice by the Commonwealth. Any Notice of Lien filed by the Commonwealth shall continue to maintain its priority.

## PAYMENT OF ACCOUNT

Prior to paying account, call (717) 425-2495 Extension 91111 for the payoff total. Payment may be made by check or money order payable to the PA DEPARTMENT OF REVENUE. Please include the Account ID and daytime telephone number on the check and mail payment to PA DEPARTMENT OF REVENUE PO BOX 280948, HARRISBURG PA 17128-0948.

## LIENS FOR TAXES, PENALTIES, AND INTEREST

Corporation tax liens arise at the time of settlement/assessment and are liens upon the franchises and property, both real and personal, with no further notice. The filing of a Notice of Lien with a county Prothonotary is not a requisite, and the lien remains in full force and validity from the date of settlement/assessment.

Inheritance tax liens are liens on real estate, which continue until tax is paid.

Personal income tax, employer withholding tax, realty transfer tax, sales and use tax, liquid fuels tax, motor carriers road tax and motorbus tax liens are liens upon the real and personal property of taxpayers but only after they have been entered and docketed of record by the Prothonotary of the county where such property is situated. The lien has priority from the date of entry of record.

## SATISFACTION OR RELEASE OF LIEN

A certificate of satisfaction of any lien imposed may be issued when the liability (tax, interest, penalty, fees, etc.) is paid in full; or the liability has become legally unenforceable. A release of a tax lien from any property unencumbered by the tax lien will be issued upon the payment of adequate consideration.

## SETTLEMENT OF ACCOUNT

The "Total" column for each type of tax listed on this Notice of Lien includes the balance of tax due plus assessed additions and/or penalties and assessed and accrued interest up to the interest calculation date on the face of this notice.

If payment or settlement of account is made after the interest calculation date, the payment must include the lien satisfaction filing costs and accrued interest from the interest calculation date to and through the payment date.

Interest is charged on payments received after the tax reports due date and continues to accrue until the balance is paid. Interest rates can be found on Form REV-1611, available at **www.revenue.pa.gov**.

PA DEPARTMENT OF REVENUE
BUREAU OF COMPLIANCE
LIEN SECTION
PO BOX 280948
HARRISBURG PA 17128-0948



pennsylvania
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

**CERTIFIED COPY OF LIEN**

COURT OF COMMON PLEAS OF
BERKS COUNTY,
PENNSYLVANIA

ALAN C C REDMOND
SHANNON  KROEMMELBEIN
2 HIGH RD
WYOMISSING PA  19610-2500

Docket Number  24-11072

Docket Date

ID Number          5092 / 3470

Notice Date        6/7/2024

Letter ID          L0025883928

Lien ID            213015

## Itemized claims covered on lien

| Tax Type | Account ID | Period Begin Date | Period End Date | Tax | Total |
|---|---|---|---|---|---|
| PIT | 5017 / 2264 | 1/1/2022 | 12/31/2022 | 41,830.00 | 49,303.67 |
| | | | | **41,830.00** | **49,303.67** |
| | | | | Filing Fee(s) | 25.00 |
| | | | | Satisfaction Fee(s) | 13.00 |
| | | | | Settlement Total | 49,341.67 |

| Code | Tax Type |
|---|---|
| A80 | Act 80 |
| AFT | Alternative Fuels Tax |
| AGC | Cooperative Agricultural Association |
| BAL | Booking Agent License |
| BAT | Booking Agent Tax |
| CAR | Consolidated Cigarette Reporting |
| CCS | Capital Stock Tax |
| CFS | Cigarette Fire Safe |
| CFT | Consumer Fireworks Tax |
| CIG | Cigarette Stamp Tax |
| CLO | Corporate Loans Tax |
| CNI | Corporate Net Income Tax |
| CTL | Cigarette & Tobacco License |
| CTR | Cigarette & Tobacco Retail License |
| CWH | Cigarette Wholesaler Reporting |
| DCP | Directory of Corporate Partners |
| DSB | Disbursements |
| EAR | Employer Annual Reconciliation |
| ECC | Electric Cooperative Corporation |
| EST | Inheritance Tax - Estate |
| FFT | Foreign Franchise Tax |
| FID | Fiduciary |
| FIR | Financial Institution Inheritance Tax Reporting |
| FTJ | IFTA Jurisdiction |
| GDC | Gross Premiums Domestic Casualty Tax |

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

PA DEPARTMENT OF REVENUE
BUREAU OF COMPLIANCE
LIEN SECTION
PO BOX 280948
HARRISBURG PA 17128-0948

**pennsylvania**
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

**CERTIFIED COPY OF LIEN**

COURT OF COMMON PLEAS OF
BERKS COUNTY,
PENNSYLVANIA

ALAN C C REDMOND
SHANNON  KROEMMELBEIN
2 HIGH RD
WYOMISSING PA  19610-2500

Docket Number 24-11072

Docket Date

| | |
|---|---|
| ID Number | 5092 / 3470 |
| Notice Date | 6/7/2024 |
| Letter ID | L0025883928 |
| Lien ID | 213015 |

| Code | Tax Type |
|---|---|
| GDF | Gross Premiums Domestic Fire Tax |
| GDL | Gross Premiums Domestic Life Tax |
| GFC | Gross Premiums Foreign Casualty Tax |
| GFF | Gross Premiums Foreign Fire Tax |
| GFL | Gross Premiums Foreign Life Tax |
| GFT | Gross Premiums Foreign Title Tax |
| GPU | Gross Premiums Unauthorized Foreign Companies Tax |
| GRB | Gross Receipts Private Bankers Tax |
| GRC | Gross Receipts Transportation Company Tax |
| GRE | Gross Receipts Electric, Hydro-Electric and Water Power Tax |
| GRT | Gross Receipts Telecommunications Tax |
| GSL | Gross Premiums Surplus Lines Agents Tax |
| ICE | Individual Cigarette Excise Tax |
| IFT | IFTA Carrier |
| INC | Intercept Account |
| IOE | Individual OTP Excise Tax |
| LOT | Lottery |
| LTA | Local Taxing Authority (PURTA) |
| MBT | Malt Beverage Tax |
| MCT | Motor Carrier Road Tax |
| MFD | Motor Fuel Determinations |
| MFR | Motor Fuel Reimbursement |
| MFT | Motor Fuel Tax |
| MID | Domestic Marine Insurance Tax |
| MIF | Foreign Marine Insurance Tax |
| MMT | Medical Marijuana Tax |
| MTF | Mutual Thrift Federal Savings Tax |
| MTS | Mutual Thrift State Savings Tax |
| NRC | Nonresident Consolidated |
| OAR | Other Income Annual Reconciliation |
| OTP | Other Tobacco Products |
| PCT | PACT Act Reporting |
| PIT | Personal Income Tax |

PART 1 - TO BE RETAINED BY RECORDING OFFICE

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

REV bL008 11

PA DEPARTMENT OF REVENUE
BUREAU OF COMPLIANCE
LIEN SECTION
PO BOX 280948
HARRISBURG PA 17128-0948



**pennsylvania**
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

**CERTIFIED COPY OF LIEN**

COURT OF COMMON PLEAS OF
BERKS COUNTY,
PENNSYLVANIA

ALAN C C REDMOND
SHANNON  KROEMMELBEIN
2 HIGH RD
WYOMISSING PA  19610-2500

Docket Number  24-11072

Docket Date

| | |
|---|---|
| ID Number | 5092 / 3470 |
| Notice Date | 6/7/2024 |
| Letter ID | L0025883928 |
| Lien ID | 213015 |

| Code | Tax Type |
|---|---|
| PMO | Pari-Mutuel OUTs |
| PMW | Pari-Mutuel Wagering Tax |
| PTA | Public Transportation Assistance Tax |
| PTE | Pass-through Entity |
| PTL | Public Transportation Assistance License Tax |
| PTR | Property Tax/Rent Rebate |
| PTS | Property Tax Status Housing |
| PUR | Public Utility Realty (PURTA) |
| RAR | Retirement Annual Reconciliation |
| ROD | ROD County Collection |
| ROL | Inheritance Tax - Release of Lien |
| ROW | ROW County Collection |
| RPA | Responsible Party |
| RTH | Retirement Withholding Tax |
| RTT | Realty Transfer |
| SHI | Shares Tax - Title Insurance |
| SLL | Sales License |
| SLS | Sales and Use Tax |
| STE | Sales Tax Exemption |
| STN | Shares Tax - National Bank |
| STS | Shares Tax - State Bank |
| STT | Shares Tax - Trust Companies |
| TCD | Tax Collection District |
| TFE | Inheritance Tax - Transferee |
| TGA | Tavern Games Licensee Annual |
| TGD | Tavern Games Distributor |
| TGR | Small Games of Chance License |
| TGT | Tavern Games Licensee Tax |
| TPA | Trip Permitting Agency |
| TSP | Fuel Transporter |
| ULC | Unstampable Little Cigar Tax |
| VRT | Vehicle Rental Tax |
| VUT | Use Tax |
| WET | Wine Excise Tax |

PART 1 - TO BE RETAINED BY RECORDING OFFICE

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

REV bL008 11

PA DEPARTMENT OF REVENUE
BUREAU OF COMPLIANCE
LIEN SECTION
PO BOX 280948
HARRISBURG PA 17128-0948



**pennsylvania**
DEPARTMENT OF REVENUE
HARRISBURG PA  17128-2005

**CERTIFIED COPY OF LIEN**

COURT OF COMMON PLEAS OF
BERKS COUNTY,
PENNSYLVANIA

ALAN C C REDMOND
SHANNON  KROEMMELBEIN
2 HIGH RD
WYOMISSING PA  19610-2500

Docket Number *24-11072*
Docket Date
ID Number       5092 / 3470
Notice Date     6/7/2024
Letter ID        L0025883928
Lien ID          213015

| Code | Tax Type |
|------|----------|
| WOT | Other Income Withholding Tax |
| WTH | Employer Withholding Tax |

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

PART 1 - TO BE RETAINED BY RECORDING OFFICE

BERKS COUNTY

Prothonotary Office

6/14/2024 3:41:13 PM PTAEDDIN
#201403

| | |
|---|---|
| Docket Number: 24-11063 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11064 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11065 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11066 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11067 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11068 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11069 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11070 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11071 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11072 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11073 State Tax Lien | |
| State Tax Lien | 25.00 |
| Docket Number: 24-11074 State Tax Lien | |
| State Tax Lien | 25.00 |
| | |
| Total: | 300.00 |
| | |
| Check | 300.00 |
| Total Payments: | 300.00 |
| | |
| Change Due: | 0.00 |

Received County of Berks Prothonotary's Office on 6/17/2024 9:05:27 AM  Prothonotary Docket No. 24-11072

**Received County of Berks Prothonotary's Office on 3/16/2022 8:28:59 AM  Prothonotary Docket No. 22-33**

| | 1654 | Department of the Treasury - Internal Revenue Service |
|---|---|---|

**Form 668 (Y)(c)**
(Rev. February 2004)

# Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2 Lien Unit Phone: (800) 913-6050 | Serial Number 450538922 | For Optional Use by Recording Office 22·33 FT |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer BENE MARKETS LLC
ALAN REDMOND MBR

Residence   4 SOUTH 4TH STREET 3RD FLOOR
READING, PA 19602-2819

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 12/31/2021 | XX-XXX0613 | 02/21/2022 | 03/22/2032 | 332388.45 |

Federal Tax Lien 22-33 FT
**Berks County Prothonotary Office**

*5329924 R*   3/16/2022   8:21 AM

| Place of Filing Prothonotary Berks County Reading, PA 19601 | Total | $ | 332388.45 |
|---|---|---|---|

This notice was prepared and signed at _____ DETROIT, MI _____ , on this,

the _____ 07th _____ day of _____ March _____ , 2022.

| Signature for SCOTT COLWELL | Title REVENUE OFFICER (267) 941-6384 | 22-06-4819 |
|---|---|---|

(NOTE:  Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

BERKS COUNTY

Prothonotary Office

3/16/2022 8:20:18 AM plkperez
#164732

\*\*Docket Number: 22-33 FT Federal Tax Lien
  Federal Tax Lien                          38.00
Docket Number: 22-34 FT Federal Tax Lien
  Federal Tax Lien                          38.00

Total:                                      76.00

  EFT                            76.00
Total Payments:                             76.00

Change Due:                                  0.00

Received County of Berks Prothonotary's Office on 3/16/2022 8:28:59 AM  Prothonotary Docket No. 22-33

# Exhibit T

# Exhibit T

**NEBRASKA DEPARTMENT
OF INSURANCE**

BEFORE THE DEPARTMENT OF INSURANCE
STATE OF NEBRASKA

JUN 0 8 2018

**FILED**

| | |
|---|---|
| STATE OF NEBRASKA<br>DEPARTMENT OF INSURANCE,<br><br>PETITIONER,<br><br>VS.<br><br>WILLIAM CORCHADO<br>(NAIC National Producer #17817844),<br><br>RESPONDENT. | ) FINDINGS OF FACT, CONCLUSIONS<br>) OF LAW, RECOMMENDED ORDER AND<br>) ORDER<br>)<br>) CAUSE NO. A-2102<br>) |

This matter came on for hearing on May 30, 2018, before Robert M. Bell, a hearing officer duly appointed by the Director of the Nebraska Department of Insurance. The Nebraska Department of Insurance ("Department") was represented by its attorney, Robert E. Harkins. William Corchado ("Respondent") was not present and was not represented by counsel. The proceedings were recorded by Brandis Bauer, a licensed Notary Public. The Department presented evidence at the hearing and the matter was taken under advisement. The hearing officer makes the following Findings of Fact, Conclusions of Law, and Recommended Order.

<u>FINDINGS OF FACT</u>

1.      The Department is the agency of the State of Nebraska charged with licensing insurance producers.

2.      Respondent is a licensed non-resident insurance producer in the State of Nebraska whose current registered business address with the Department is c/o National Brokers of America, 2525 N 12th Street, Suite 390, Reading PA 19605-2771 and whose

registered home address with the Department is 412 Pennsylvania Ave, Reading, PA 19606-9066. Respondent's registered email addresses are william@nboainc.com and stephanie@benemartketllc.om. (See Ex. 2).

3.      On or about April 25, 2018, the Petition and Notice of Hearing were properly served upon Respondent by mailing the same to his registered business address via certified, mail return receipt requested, and to his registered home address via regular first class United States mail. On or about May 3, 2018, the signed Domestic Return Receipt from the certified mailing was returned to the Department indicating delivery.  Additionally, the first class mailing was not returned to the Department nor has the Department received notification that the letter was undeliverable.  (See Ex. 1).

4.      On or about December 21, 2017, Cynthia Williamson, an Insurance Investigator employed with the Department, sent Respondent a written inquiry by first class United States mail to Respondent's registered business address related to a complaint received by the Department from a Nebraska consumer related to Respondent's activities as an insurance producer. The letter stated that Respondent would be in violation of Nebraska law if the response was not received within fifteen business days (See Ex. 3, Attachment 1).

5.      On or about January 19, 2018, Ms. Williamson sent Respondent a written follow-up letter with copies of the previous correspondence by regular United States mail to his registered business address demanding immediate response.  The letter stated that Respondent would be in violation of Nebraska law if the response was not received within fifteen business days.  (See Ex. 3, Attachment 2).

2

6.    On or about February 12, 2018, Ms. Williamson sent Respondent another written follow-up letter with copies of previous correspondence by certified mail, return receipt requested to his registered business address demanding immediate response. The letter stated that Respondent would be in violation of Nebraska law if the response was not received within fifteen business days. On or about March 29, 2018, the certified letter was returned as unclaimed. (See Ex. 3, Attachment 3).

7.    To date, Respondent has not provided a response to the Department's inquiry. (See Ex. 3).

<div align="center">CONCLUSIONS OF LAW</div>

1.    The Department has broad jurisdiction, control, and discretion over the licensing of insurance producers in the State of Nebraska pursuant to Neb. Rev. Stat. §§ 44-101.01 and 44-4047 et seq.

2.    The Department has personal jurisdiction over Respondent.

3.    Pursuant to Neb. Rev. Stat. § 44-4059(1), the director may suspend or revoke an insurance producer's license, or may levy an administrative fine for any one or more of the following causes: (b) violating any insurance law or violating any rule, regulation, subpoena, or order of the director or of another state's insurance commissioner or director; or (h) for using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere.

4.    Pursuant to Neb. Rev. Stat. § 44-1525(11), it shall be an unfair trade practice in the business of insurance for an insurance producer, upon receipt of a written inquiry from

<div align="center">3</div>

the Department to fail to respond or request additional time to respond within fifteen working days.

5. Respondent violated <u>Neb. Rev. Stat.</u> §§ 44-4059(1)(b), 44-4059(1)(h), and 44-1525(11) as a result of the conduct set forth in the Findings of Fact.

<u>DISCUSSION</u>

The Department provided sufficient evidence to show that reasonable notice of these proceedings was provided to the Respondent. The uncontested evidence provided by the Department shows that Respondent failed to respond to inquiries of the Department. This violation shows the Respondent's incompetency in his responsibilities under Nebraska law.

The primary purpose of Nebraska insurance law and the Department is to protect Nebraska policyholders. An important aspect of this purpose is the proper investigation of consumer complaints received by the Department from Nebraskans. Insurance producers and other licensed entities who fail to respond to the inquiries of the Department thwart the ability of the Department to properly investigate Nebraska consumer complaints. This is why <u>Neb. Rev. Stat.</u> § 44-1525(11) provides failing to respond as an unfair trade practice in the business of insurance.

Respondent's violation of the Unfair Insurance Trade Practices Act and his incompetency as to his responsibilities under Nebraska law are sufficient reason to suspend or revoke his insurance producer license or to issue an administrative fine. The Hearing Officer hereby recommends that the Director find that Respondent violated

4

Neb. Rev. Stat. §§ 44-4059(1)(b), 44-4059(1)(h), and 44-1525(11) and that Respondent's insurance producer license be placed on suspended status until such time as Respondent provides a complete response to Ms. Williamson's inquires and pays a two hundred dollar fine.

<div align="center">RECOMMENDED ORDER</div>

Based on the Findings of Fact and Conclusions of Law, it is recommended that Respondent's Nebraska non-resident insurance producer license be suspended until such time as Respondent provides a complete response to Ms. Williamson's inquires and pays to the Department a two hundred dollar fine. The Nebraska Department of Insurance shall retain jurisdiction of this matter for the purpose of enabling Respondent or the Department of Insurance to make application for such further orders as may be necessary.

Dated this _8_ day of June, 2018.

STATE OF NEBRASKA
DEPARTMENT OF INSURANCE

Robert M. Bell
Hearing Officer

<div align="center">CERTIFICATE OF ADOPTION</div>

I have reviewed the foregoing Findings of Fact, Conclusions of Law, and Recommended Order and hereby certify that the Recommended Order is adopted as the official and final Order of this Department in the matter of State of Nebraska, Department of Insurance vs. William Corchado (NAIC National Producer #17817844), Cause No. A-2102.

Dated this _8_ day of June, 2018.

<div align="center">5</div>

STATE OF NEBRASKA
DEPARTMENT OF INSURANCE

*Bruce R Ramge*

Bruce R. Ramge
Director of Insurance

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Findings of Fact, Conclusions of Law, Recommended Order, and Order was served upon the Respondent by mailing a copy to Respondent's registered business address, c/o National Brokers of America, 2525 N 12th Street, Suite 390, Reading PA 19605-2771 and Respondent's registered home address 412 Pennsylvania Ave, Reading, PA 19606-9066 via certified mail, return receipt requested and regular U.S. mail, and to Respondent's registered email addresses william@nboainc.com and stephanie@benemartketllc.om  on this ___8___ day of June, 2018.

*Brandis Bauer*

# Exhibit U

# Exhibit U

# SOUTH DAKOTA
## DEPARTMENT OF LABOR AND REGULATION
## DIVISION OF INSURANCE

IN THE MATTER OF                         )

**NATIONAL BROKERS OF AMERICA,**      )        **FINAL DECISION**

**LICENSEE**                            )            **INS 18-04**

After reviewing the record and the proposed order of the Hearing Examiner in this matter,

IT IS HEREBY ORDERED that pursuant to SDCL 1-26D-4, the Hearing Examiner's Proposed Findings of Fact, Conclusions of Law and Proposed Order, dated March 8, 2018, is adopted in full.

IT IS FURTHER ORDERED that the South Dakota Business Entity License of National Brokers of America will hereby be revoked.

Parties are hereby advised of the right to further appeal the final decision to Circuit Court within (30) days of receiving such decision, pursuant to the authority of SDCL 1-26.

Dated this 13TH day of March, 2018.

_____
Marcia Hultman, Secretary
South Dakota Department of Labor and Regulation
123 W. Missouri Ave.
Pierre, SD 57501

**STATE OF SOUTH DAKOTA**
**DEPARTMENT OF LABOR AND REGULATION**

IN THE MATTER OF                                           INS 18-04
NATIONAL BROKERS OF AMERICA

**NOTICE OF ENTRY OF PROPOSED**
**FINDINGS OF FACT, CONCLUSION OF LAW,**
**AND DECISION AND FINAL DECISION**

NOTICE IS HEREBY GIVEN, that attached hereto, is a true and correct copy of the Proposed

Findings of Fact, Conclusions of Law, and Decision, and Final Decision entered by Marcia

Hultman, Secretary of the South Dakota Department of Labor and Regulation, on March 13,

2018.

Dated this 23 day of March, 2018.

Clayton Grueb
Insurance Division Legal Counsel
South Dakota Dept. of Labor and Regulation
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701
Phone (605) 394-3396
Fax    (605) 394-1824

2

## CERTIFICATE OF SERVICE

I, Clayton Grueb, the undersigned, do hereby certify that on the date shown below, a true and correct copy of the Final Decision, Proposed Findings of Fact, Conclusions of Law, and Decision with respect to the above-entitled action was sent U.S. First Class Mail thereon, to the following:

National Brokers of America
630 Fairmount, Ave NE
Warren, OH 44483

Dated this _23_ day of March, 2018.

Clayton Grueb
Insurance Division Legal Counsel
South Dakota Dept. of Labor and Regulation
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701
Phone (605) 394-3396
Fax    (605) 394-1824

## STATE OF SOUTH DAKOTA
## OFFICE OF HEARING EXAMINERS

IN THE MATTER OF                                          INS 18-04
NATIONAL BROKERS OF AMERICA,                  PROPOSED DECISION

This matter came for hearing before the Office of Hearing Examiners on March 2nd, 2018, pursuant to a Notice of Hearing issued by the South Dakota Division of Insurance ("Division") on February 7, 2018. Clayton Grueb appeared as counsel for the Division. NATIONAL BROKERS OF AMERICA (hereinafter referred to as "NATIONAL BROKERS") did not appear, either in person or through counsel. The Division admitted its Exhibits 1 through 5 into evidence and moved that the Hearing Examiner enter these Proposed Findings of Fact, Conclusions of Law, and Proposed Decision as a default disposition to this contested case.

### ISSUE

Whether the Business Entity License of NATIONAL BROKERS should be revoked due to failing to timely respond to the Division; failing to timely report an administrative action(s) to the Division; for demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere; and for violating the insurance laws of South Dakota, in violation of SDCL 58-30-167(2), (8) and (9), 58-30-193, 58-33-66, and 58-33-68.

### FINDINGS OF FACT

1. NATIONAL BROKERS was licensed by the Division as business entity on July 19, 2006. The license is currently active. (Exhibit 1).

2. NATIONAL BROKERS was the subject of administrative actions in Oregon and Nebraska. (Exhibit 2 and 3).

3. NATIONAL BROKERS failed to report the administrative actions taken by Oregon and Nebraska to the Division within 30 days. (Exhibits 2-3).

4. The Division sent inquiries to NATIONAL BROKERS at its mailing address of record on April 27, 2017 and June 13, 2017. (Exhibits 4-5).

5. NATIONAL BROKERS did not respond to the Division's inquiries. (Exhibits 4-5).

6. Any additional Findings of Fact included in the Reasoning section of this decision are incorporated herein by reference.

7. To the extent any of the foregoing are improperly designated and are instead conclusions of law, they are hereby redesignated and incorporated herein as conclusions of law.

## REASONING

This case involves a request by the Division to revoke the South Dakota Business Entity License of NATIONAL BROKERS. As a consequence of the potential loss of Respondent's livelihood from the lack of licensure, the burden of proof in this matter is higher than the preponderance of evidence standard, which applies in a typical administrative hearing. "In matters concerning the revocation of a professional license, we determine that the appropriate standard of proof to be utilized by an agency is clear and convincing evidence." *In re Zar*, 434 N.W.2d 598, 602 (S.D. 1989). Our Supreme Court has defined "clear and convincing evidence" as follows:

> The measure of proof required by this designation falls somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. The evidence need not be voluminous or undisputed to accomplish this.

*Brown v. Warner*, 78 S.D. 647, 653, 107 NW2d 1, 4 (1961).

SDCL 58-30-193 states that "[A]n insurance producer shall report to the director any administrative action taken against the insurance producer in another jurisdiction… within thirty days of the final disposition of the matter. This report shall include a copy of the order, consent order, or other relevant legal documents." SDCL 58-33-66(1) requires NATIONAL BROKERS to respond to the Division and supply requested documents within twenty days from the receipt of a request. In addition, the Division considers SDCL 58-30-167 (shown in pertinent part) as follows:

> The director may… revoke or refuse to continue, any license issued under this chapter… after a hearing… The director may… revoke… an insurance producer's… for any one or more of the following causes:
> (2)    Violating any insurance laws or rules, subpoena, or order of the director or of another state's insurance director, commissioner, or superintendent;
> (8)    Using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in this state or elsewhere;
> (9)    Having an insurance producer license, or its equivalent, denied, suspended, or revoked in any other state, province, district, or territory;

The evidence indicates that NATIONAL BROKERS violated the insurance laws of another jurisdiction, failed to report that action, and failed to respond to Division inquiries regarding the action. Applying the law to the Findings of Fact it is clear the Business Entity License of NATIONAL BROKERS is subject to revocation and should be revoked.

2

## CONCLUSIONS OF LAW

1. The Division has jurisdiction over NATIONAL BROKERS and the subject matter of this contested case. The Office of Hearing Examiners is authorized to conduct the hearing and issue a proposed decision pursuant to SDCL 1-26D-4.

2. The Division bears the burden of establishing the alleged statutory violations by clear and convincing evidence.

3. The Division established by clear and convincing evidence that NATIONAL BROKERS violated SDCL § 58-30-193.

4. The Division established by clear and convincing evidence that NATIONAL BROKERS violated SDCL § 58-33-66.

5. The Division established by clear and convincing evidence that NATIONAL BROKERS violated SDCL §§ SDCL 58-30-167 (2), (8), and (9).

6. The Division established by clear and convincing evidence that the South Dakota Business Entity License of NATIONAL BROKERS is subject to revocation.

7. Any additional Conclusions of Law included in the Reasoning section of this decision are incorporated herein by reference.

8. To the extent any of the foregoing are improperly designated and are instead findings of fact, they are hereby redesignated and incorporated herein as Findings of Fact.

Based on the above Findings of Fact, Reasoning, and Conclusions of Law, the Hearing Examiner enters the following:

## PROPOSED DECISION

The South Dakota Business Entity License of NATIONAL BROKERS should be revoked.

Dated this 8 day of March, 2018.

Ryan Darling, Hearing Examiner
Office of Hearing Examiners
523 East Capitol
Pierre, SD 57501

3

## CERTIFICATE OF SERVICE

I certify on March 8 , 2018, at Pierre, South Dakota, a true and correct copy of this Proposed Decision was mailed to each of the parties below.

Ashley Parsons
Office of Hearing Examiners


National Brokers Of America, Inc.          Clayton Grueb
630 Fairmount Ave, NE                       Division of Insurance
Warren, OH, 44483                           2330 N. Maple Ave, Suite 1
                                            Rapid City, SD 57701

# Exhibit V

# Exhibit V

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE SCALIA, SECRETARY OF LABOR,  )
UNITED STATES DEPARTMENT OF LABOR,   )
                                     )
            Plaintiff,               )
                                     )
       v.                            )   Civil Action No. 5:20-cv-4265
                                     )
                                     )   JURY TRIAL DEMANDED
BENE MARKET, LLC, NATIONAL BROKERS OF )
AMERICA, INC., ALAN REDMOND,          )
and STEPHANIE MILLER                  )
                                     )
            Defendants.              )
                                     )

## COMPLAINT

Plaintiff, EUGENE SCALIA, Secretary of Labor, United States Department of Labor ("Plaintiff") brings this action to enjoin Defendants BENE MARKET, LLC, NATIONAL BROKERS OF AMERICA, INC., ALAN REDMOND, and STEPHANIE MILLER, (hereinafter collectively referred to as "Defendants,") from violating the provisions of Sections 6, 7, and 11(c), 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, hereinafter referred to as "the Act," and for a judgment against Defendants in the total amount of back wage compensation found by the Court to be due to any of the employees of Defendants pursuant to the Act and for an equal amount due to the employees of Defendants in liquidated damages.

1.     Jurisdiction of this action is conferred upon the Court by Section 17 of the Act, 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

2.     Defendant BENE MARKET, LLC ("Bene Market") is a limited liability company duly organized under the laws of the State of Delaware, having its registered office and principal

place of business as 4 South 4th Street, 4th Floor, Reading, Pennsylvania 18602, within the jurisdiction of this Court.  Defendant Bene Market is engaged in health insurance sales to and customer service for customers located outside the Commonwealth of Pennsylvania.  Defendant Bene Market has publicly advertised itself as "NBoA/Bene Markets."

3.	Defendant NATIONAL BROKERS OF AMERICA, INC. ("National Brokers") is a corporation duly organized under the laws of the State of Ohio, having its registered office and principal place of business at 2525 North 12th Street, Suite 390, Reading, Pennsylvania 19605. Defendant National Brokers was engaged in health insurance sales to and customer service for customers located outside the Commonwealth of Pennsylvania until it ceased operations in 2018. At the time Defendant National Brokers ceased operations, Defendant Bene Market assumed control over all of the employees and business operations of Defendant National Brokers.  On or about January 20, 2019, Defendant National Brokers filed a petition to declare bankruptcy.  The petition was dismissed for failure to provide supporting documentation on April 4, 2019.  To the extent Defendant National Brokers is unable to provide adequate monetary relief for its violations of the Act due to financial insolvency, Defendant Bene Market is a successor in interest to Defendant National Brokers, and is liable for conduct of Defendant National Brokers both directly as part of a single enterprise and as a successor in interest.

4.	Defendant ALAN REDMOND ("Redmond") is founder, owner, President, and Chief Executive Officer ("CEO") of Defendant Bene Market.  Defendant Redmond is founder, owner, President, and CEO of Defendant National Brokers.  Defendant Redmond resides in Reading, Pennsylvania, which is within the jurisdiction of this Court.  Redmond is responsible for hiring and firing of employees, setting pay rates, assigning work responsibilities, and for the daily operation of the business of Defendant Bene Market.  Redmond held all the same

2

responsibilities for Defendant National Brokers during the time that National Brokers was operational.  Redmond had final authority over policies that kept employees from being paid minimum wage and overtime.  Defendant Redmond regulated the employment of persons employed by Defendants Bene Market and National Brokers, acted directly and indirectly in the companies' interest in relation to the employees, and is and was an employer of said employees within the meaning of Section 3(d) of the Act.

5.      Defendant STEPHANIE MILLER is an owner and Chief Financial Officer ("CFO") of Defendant Bene Market and CFO of Defendant National Brokers.  She resides in Gettysburg, Pennsylvania, which is within the jurisdiction of this Court.  Defendant Miller is responsible for setting pay rates and preparing payroll for and has control over payroll records of Defendants Bene Market and National Brokers.  Defendant Miller was jointly responsible for creating and implementing policies that kept employees from being paid minimum wage and overtime.  Defendant Miller has actively supervised and directed employment practices, has acted directly or indirectly in the interest of Defendants Bene Market and National Brokers in relation to their employees at all times relevant herein, and is and was an employer of said employees within the meaning of Section 3(d) of the Act.

6.      Defendants' business activities, as described herein, are and were related and performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

7.      Defendants have employed and are employing employees in and about their place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on products, goods or materials that have been moved in or produced for commerce, such as health insurance.   The

3

enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.  Therefore, the employees are employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the Act.

8.    Defendants willfully violated the provisions of Sections 6 and 15(a)(2) of the Act by paying many of their employees employed as salespeople and customer service staff in an enterprise engaged in commerce or in the production of goods for commerce at rates less than the applicable statutory minimum rate prescribed in Section 6 of the Act.  Therefore, Defendants are liable for unpaid minimum wages under Section 17 of the Act.  Defendants paid employees what it characterized as a "day rate" which, when divided by hours worked, resulted in an hourly rate less than the minimum rate for several employees.

9.    Defendants willfully violated the provisions of Sections 7 and 15(a)(2) of the Act by employing many of their employees employed as salespeople and customer service staff in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer that those prescribed in Section 7 of the Act without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.  Therefore, said Defendants are liable for the payment of unpaid overtime compensation under Section 17 of the Act.

10.    Defendants Redmond and National Brokers were subject of a previous investigation by the Department of Labor's Wage and Hour Division.  The investigation dealt with complaints that Redmond and National Brokers failed to comply with the requirements of Section 7 of the Act by failing to pay proper compensation for overtime work.  On or about April 20, 2016, Defendant Redmond represented on behalf of himself and Defendant National Brokers that he would comply with the requirements of Section 7 of the Act by compensating employees

4

at rates not less than one and a half times their regular rate for overtime hours worked. Defendant Miller had direct knowledge of this investigation and its outcome as CFO of Defendant National Brokers.

11. Following this investigation, and in spite of direct notice of the requirements of the Act, Defendants routinely required workers to perform fifty hours of work in a week, but failed to pay any of its workers the overtime premium of one and one half times the regular rate for hours worked in excess of forty hours.

12. Defendants willfully violated the provisions of Sections 11(c) and 15(a)(5) of the Act in that Defendants failed to make, keep, and preserve adequate and accurate records of many of their employees and of the wages, hours, and other conditions of employment which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516. Defendants failed to keep accurate records of hours worked by and wages due to many of their employees. For example, Defendants failed to keep records of the actual times at which employees started working or stopped working. Thus, Defendants failed to maintain accurate records regarding hours worked and wages owed for all employees.

13. Since at least March 1, 2016, Defendants have willfully violated the provisions of the Act as alleged in paragraphs 8 through 12 above. A judgment permanently enjoining and restraining the violations herein alleged is specifically authorized by Section 17 of the Act.

14. As a result of the violations alleged in paragraphs 8 through 12 above, back wages and an equal amount of liquidated damages are owed to Defendants' current and former employees, including the persons specifically listed in the attached Schedule A to the Secretary's Complaint.

15. A judgment granting recovery of said amounts is specifically authorized by Sections 16(c) and 17 of the Act.

WHEREFORE, cause having been shown, the Secretary prays for judgment against

Defendants:

(1)     For an injunction issued pursuant to Section 17 of the Act permanently enjoining

and restraining Defendants, their officers, agents, servants, employees, and those

persons in active concert or participation with Defendants who receive actual

notice of any such judgment, from violating the provisions of Sections 6, 7, 11(c),

15(a)(2), and 15(a)(5) of the Act; and

(2)     For judgment pursuant to Section 16(c) of the Act, finding Defendants liable for

unpaid minimum wage and overtime compensation due to certain of Defendants'

current and former employees listed in the attached Schedule A for the period

March 1, 2016 through at least June 6, 2020, and for an equal amount due to

Defendants' current and former employees in liquidated damages.  Additional

amounts of back wages and liquidated damages may also be owed to certain

current and former employees listed in the attached Schedule A for violations

continuing after June 6, 2020, and may be owed to certain current and former

employees presently unknown to the Secretary for the period covered by this

Complaint, who may be identified during this litigation and added to Schedule A;

or;

(3)     In the event liquidated damages are not awarded, for an injunction issued pursuant

to Section 17 of the Act restraining Defendants, their officers, agents, employees,

and those persons in active concert or participation with Defendants, from

withholding the amount of unpaid minimum wages and overtime compensation

found due defendants' employees and prejudgment interest computed at the

6

underpayment rate established by the Secretary of the Treasury pursuant to 26

U.S.C. § 6621.

FURTHER, Plaintiff prays that this Honorable Court award costs in his favor, and an

order granting such other and further relief as may be necessary and appropriate.

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands

that all eligible claims be tried before a jury.

Respectfully submitted,

For the Secretary:

Kate S. O'Scannlain
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

By:/s/Alexander Gosfield
Alexander E. Gosfield
Trial Attorney
PA ID # 209537
Office of the Solicitor, Region III
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA 19106-3306
215-861-5124
215-861-5162 (fax)
Gosfield.alexander.e@dol.gov

U.S. DEPARTMENT OF
LABOR
Attorneys for Plaintiff

## Schedule A

|     | Last Name | First Name |
| --- | --- | --- |
| 1. | Abouomar | Lori |
| 2. | Abreu | Christian |
| 3. | Acevedo | Miguel |
| 4. | Acosta | Jonathon |
| 5. | Aguyao | Francisco |
| 6. | Albarran | Naomi |
| 7. | Albino | Jason |
| 8. | Al-Kalbami | Mohammad |
| 9. | Allen | Walter |
| 10. | Almonte | Kuery |
| 11. | Ammons | Nahya |
| 12. | Anderson | Amelia |
| 13. | Andino | Jonathan |
| 14. | Andino | Kimberly |
| 15. | Andrews | Kaylah |
| 16. | Angelo | Janessa |
| 17. | Arroyo | Jocelyn |
| 18. | Arroyo | Lillian |
| 19. | Aviles | Marco |
| 20. | Badia | Hazel |
| 21. | Baldwin | Justin |
| 22. | Barrto-Ferrao | Ana |
| 23. | Bashore | Alysha |
| 24. | Batista | Nicholas |
| 25. | Battle | Gixaly |
| 26. | Becker | Brynn |
| 27. | Bello | Luis |
| 28. | Benjimin | Ben |
| 29. | Bennett | Allana |
| 30. | Bethea | Theodore |
| 31. | Black | Ceonie |
| 32. | Bonilla | Rosemarie |
| 33. | Borges | Dalia |
| 34. | Boron | Kadajah |
| 35. | Boston | Jasmin |

| | | |
|---|---|---|
| 36. | Bowman | Angela |
| 37. | Breece | Patricia |
| 38. | Brown | Imani |
| 39. | Brown | Isaiah |
| 40. | Brown | Tim |
| 41. | Burdine | Zhykeir |
| 42. | Burgos | DeJanira |
| 43. | Burnatowski | Deborah |
| 44. | Butler | Maurice |
| 45. | Butler | Michea |
| 46. | Caltagirone | Celeste |
| 47. | Canals | Chadricka |
| 48. | Cannon | Gardiner |
| 49. | Carabello | Julian |
| 50. | Carrion | Omari |
| 51. | Castaneda | Andrea |
| 52. | Castaneda | Sandra |
| 53. | Cayo | Debby |
| 54. | Chalmers | Keith |
| 55. | Chirieleison | Mary Jo |
| 56. | Clark | Kyesha |
| 57. | Claudio- Estevez | Roberto |
| 58. | Cofresi | Brittney |
| 59. | Collazo | Dasanie |
| 60. | Colomer | Lisa Marie |
| 61. | Contreras | Emely |
| 62. | Copeland | Lekeya |
| 63. | Corchado | William |
| 64. | Cruz | Derryck |
| 65. | Cruz | Valerie |
| 66. | Cruz Soto | Pamela |
| 67. | Dalton | Patrick |
| 68. | Davis | Eric |
| 69. | Davis | Kadeeja |
| 70. | Davis | Maribel |
| 71. | Davis | Nehemiah |
| 72. | Davy | Latoya |
| 73. | Deforge | Mason |
| 74. | Amy | Dejesus |

2

| 75.  | Kesha     | Deleon           |
|------|-----------|------------------|
| 76.  | Chantelle | Delgado          |
| 77.  | Bailey    | Delp             |
| 78.  | Sasha     | Diaz             |
| 79.  | Julitzza  | Domena           |
| 80.  | Oliver    | Duverge          |
| 81.  | Michael   | Echavarria       |
| 82.  | Chinyere  | Ekeanyanwu       |
| 83.  | Arkad     | Espinal          |
| 84.  | Farrah    | Espinosa         |
| 85.  | John      | Esteves          |
| 86.  | Laticia   | Evans            |
| 87.  | Raishaun  | Evans            |
| 88.  | Rosemary  | Fabian           |
| 89.  | Christy   | Fair             |
| 90.  | Michael   | Fasano           |
| 91.  | Casey     | Fazio            |
| 92.  | Zealicia  | Feliciano        |
| 93.  | Alyssa    | Ferguson         |
| 94.  | Odeny     | Fernandez        |
| 95.  | Jonathon  | Figura           |
| 96.  | Janelle   | Fleischood       |
| 97.  | Jonathan  | Fletcher         |
| 98.  | Katelyn   | Forringer        |
| 99.  | Juliana   | Foxx             |
| 100. | Haley     | Frank            |
| 101. | Nathan    | Fredrick         |
| 102. | Christine | Freeman          |
| 103. | Briana    | Fritchman        |
| 104. | Brandon   | Fryer            |
| 105. | Stephanie | Fuentes          |
| 106. | Robert    | Fullard          |
| 107. | Hadiyah   | Gaither          |
| 108. | Jorge     | Garcia           |
| 109. | Kiona     | Garcia           |
| 110. | Earl      | Gay              |
| 111. | Keanu     | German           |
| 112. | Keviel    | German           |
| 113. | Ashley    | Ghahremani-Amin  |

| | | |
|---|---|---|
| 114. | Matthew | Giambona |
| 115. | Deeanna | Gomez |
| 116. | Lawanda | Gomez |
| 117. | Jasmin | Gonzalez |
| 118. | Kathy | Gonzalez |
| 119. | Yesenia | Gonzalez |
| 120. | Jaquan | Gordon |
| 121. | Rohan | Gordon |
| 122. | Darnell | Graham |
| 123. | Tiffany | Graham |
| 124. | Erica | Gregory |
| 125. | Alexis | Griggs |
| 126. | Nicholas | Guercia |
| 127. | Soliel | Guerrero |
| 128. | Fatima | Gutuerrez |
| 129. | Anthony | Guzman |
| 130. | Daniel | Guzman |
| 131. | Ashley | Hardy |
| 132. | Zakiya | Harris |
| 133. | Antonio | Harrison |
| 134. | Andre | Hawkins |
| 135. | Chadwick | Hawthorne |
| 136. | Shylisse | Heck |
| 137. | Kacy | Helena |
| 138. | Rannisha | Henderson |
| 139. | Corbin | Hendrix |
| 140. | Frandy | Heredia |
| 141. | Shaileen | Herrera |
| 142. | Brian | Hess |
| 143. | Hailey | High |
| 144. | Allysa | Hoffmaster |
| 145. | Tori | Hoffmaster |
| 146. | Jennifer | Holeman |
| 147. | Katerina | Hood |
| 148. | Craig | Hyatt |
| 149. | Patricia | Jefferson |
| 150. | Jerrika | Jentsch |
| 151. | Joseph | Jimenez |
| 152. | Erica | Julia |

| 153. | Janiqa | Kauffman |
|---|---|---|
| 154. | Aviance | Kearse |
| 155. | Gianna | Keeney |
| 156. | Jessica | Keller |
| 157. | Marco | Laureano |
| 158. | Rondiu | Leggett |
| 159. | Carvin | Leonard |
| 160. | Ryan | Levan |
| 161. | Amamelia | Lirino |
| 162. | Joselyn | Little |
| 163. | Valeria | Little |
| 164. | David | Lopez |
| 165. | Emely | Lopez |
| 166. | Karyna | Lopez |
| 167. | Steven | Lopez |
| 168. | Tanisha | Lopez |
| 169. | Yadhary | Lopez |
| 170. | Keven | Louis |
| 171. | Jean | Lozano |
| 172. | Luis | Lugo |
| 173. | Jerry | Lujan |
| 174. | Francine | Luna |
| 175. | Henriella | Madera |
| 176. | Kyle | Madeya |
| 177. | Brean | Magaro |
| 178. | Kenny | Marcus |
| 179. | Victor | Marrero |
| 180. | Abel | Martell-Mendez |
| 181. | Luis | Martinez |
| 182. | Miguel | Marty |
| 183. | Marie | Massillon |
| 184. | Lamar | Mauldin |
| 185. | Terrell | McDonald |
| 186. | Allen | Mcleod |
| 187. | Francisco | Medina |
| 188. | William | Medina |
| 189. | Angelo | Melendez |
| 190. | Trisha | Michael |
| 191. | Gregory | Miller |

| 192. | Emery | Mitchell |
|---|---|---|
| 193. | Van | Mobley |
| 194. | Jonah | Modesto |
| 195. | Na-Asia | Molyneaux |
| 196. | Angel | Montez |
| 197. | Jamez | Morales |
| 198. | Jasmine | Morales |
| 199. | Rashawn | Moran |
| 200. | Jarvis | Morgan |
| 201. | Bryan | Navarette |
| 202. | Lisa | Negron |
| 203. | Cellynette | Nieves |
| 204. | Xavanna | Olivera |
| 205. | Clari | Oquendo |
| 206. | Monique | Ortega |
| 207. | Darwin | Pacheco |
| 208. | Jannice | Pacheco |
| 209. | Melissa | Pacheco |
| 210. | Chelsea | Pagan |
| 211. | Shasta | Parham |
| 212. | Aryanna | Parker |
| 213. | Valerie | Parsons |
| 214. | Daniel | Pasquarello |
| 215. | Anthony | Paula |
| 216. | Emily | Perez |
| 217. | Gabriel | Perez |
| 218. | Gabrielle | Perez |
| 219. | Glendaly | Perez |
| 220. | Hiriam | Perez |
| 221. | Juliza | Perez |
| 222. | Luis | Perez |
| 223. | Gharline | Pierre Paul |
| 224. | Kiarra | Pippen |
| 225. | Sadot | Pizarro |
| 226. | Tanika | Powell |
| 227. | Deasia | Price |
| 228. | Krystal | Prieto |
| 229. | Mitchell | Protheroe |
| 230. | Walter | Pruitt |

| | | |
|---|---|---|
| 231. | Anthony | Pufko |
| 232. | Nailea | Ramirez |
| 233. | Yohemi | Ramirez |
| 234. | Jeannelys | Ramos |
| 235. | Franklin | Reifsnyder |
| 236. | Ann Marie | Riley |
| 237. | Charis | Ritter |
| 238. | Ashley | Rittle |
| 239. | Natalie | Riveira |
| 240. | Ivonne | Rivera |
| 241. | Barbara | Rivera-Laporte |
| 242. | Alysha | Robles |
| 243. | Ashley | Robles |
| 244. | Alex | Rodgers |
| 245. | Alberto | Rodriguez |
| 246. | Brian | Rodriguez |
| 247. | Jeffrey | Rodriguez |
| 248. | Joshua | Rodriguez |
| 249. | Nashalie | Rodriguez |
| 250. | Aryana | Rodriquez |
| 251. | Daniel | Rodriquez |
| 252. | Elizabeth | Rojas-Mendoza |
| 253. | Brandon | Roland |
| 254. | Jamilex | Roman |
| 255. | Antonio | Romelis |
| 256. | David | Romero |
| 257. | Louis | Rosario |
| 258. | Shardonay | Rostick |
| 259. | Cheyenne | Rudis |
| 260. | David | Rudolph |
| 261. | Neishmary | Ruiz |
| 262. | Aaron | Russell |
| 263. | Shawn | Russell |
| 264. | Kira | Salaneck |
| 265. | Merelyn | Salcedo |
| 266. | Betsy | Sanchez |
| 267. | Jessenia | Sanchez |
| 268. | Dre-lynn | Sanders |
| 269. | Juan | Santiago |

| 270. | Jessica | Santos-Baljuer |
|------|---------|----------------|
| 271. | Stacy | Schadler |
| 272. | Catherine | Sharp |
| 273. | Joshua | Sheriff |
| 274. | Maddelyn | Shingle |
| 275. | Nissa | Showell |
| 276. | Katelyn | Silvous |
| 277. | Zeiquail | Sims |
| 278. | Amanda | Smith |
| 279. | Keidy | Soriano |
| 280. | Quanijha | Spradley |
| 281. | Chaniera | Stewart |
| 282. | Colin | Stiles |
| 283. | Aimee | Street |
| 284. | Yakira | Sudler |
| 285. | Diana | Super |
| 286. | David | Thomas |
| 287. | Jesus | Tolentino |
| 288. | Amanda | Torres |
| 289. | Andros | Torres |
| 290. | Jiodanny | Torres |
| 291. | Manuel | Torres |
| 292. | Miguel | Torres |
| 293. | Melody | Torres-Mena |
| 294. | Paola | Valentin |
| 295. | Kenneth | VanDine |
| 296. | Amya | Vasquez |
| 297. | Josue | Vega |
| 298. | Benjamin | Vereen |
| 299. | Bella | Vializ |
| 300. | Maria | Vializ |
| 301. | Raisa | Vidal |
| 302. | Kevin | Villegas-Del Valle |
| 303. | Khadijah | Walker |
| 304. | Lynden | Watson |
| 305. | Shannon | Webber |
| 306. | Amanda | Weinrich |
| 307. | Jai | Whitlock |
| 308. | La'shawn | Wilkerson |

| 309. | Dayquan | Williams |
|------|---------|----------|
| 310. | James | Williams |
| 311. | Kahla | Williams |
| 312. | Terrell | Williams |
| 313. | Jakera | Wilson |
| 314. | Amy | Wojciecowski |
| 315. | Robin | Wright |
| 316. | Tyrone | Wright |
| 317. | Darryl | Wynn |
| 318. | Ariana | Yerger |

# Exhibit W

# Exhibit W

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
Gaetan J. Alfano, Esq(I.D. No. 32971)
Richard J. Parks, Esq (I.D. No. 40477)
John W. Kettering, Esq (I.D. No. 316945)
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
Email: gja@pietragallo.com
rjp@pietragallo.com
jk@pietragallo.com


*Filed and Attested by the Office of Judicial Records 28 FEB 2022 11:41 am S. RICE*

*Attorneys for Ryan K. Stumphauzer, Esq as the court appointed receiver for Complete Business Solutions Group, Inc.*

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. by and through its Court-Appointed Receiver RYAN K. STUMPHAUZER | IN THE COURT OF COMMON PLEAS OF PHILADELHIA COUNTY, PENNSYLVANIA |
| Plaintiff, | |
| v. | CIVIL ACTION |
| ALAN REDMOND | NO. _____ |
| Defendant. | |

## NOTICE TO DEFEND

TO:  ALAN REDMOND
4 S 4th St
Reading, PA 19602

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY**

Case ID: 220202794

**OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

<u>AVISO</u>

Le han demando a usted en la corte.  Si usted quiere defen derse de estas demandas expuestas en las paginas siguientes, usted tiene viente dias de plazo al partir de la fecha de la demanda y la notification.  Hace falta ascentar una comparencia escrita o en persona o con un aborgado y entregar a la corte en forma escrita sus defensas o sus objections a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y pueda continuar la demanda eyn contra suya sin previo aviso o notification.  Ademas, la corte puede decider a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder ainero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By:    /s/ Gaetan J. Alfano
Gaetan J. Alfano

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**
Gaetan J. Alfano, Esq(I.D. No. 32971)
Richard J. Parks, Esq (I.D. No. 40477)
John W. Kettering, Esq (I.D. No. 316945)
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
Email:  gja@pietragallo.com
      rjp@pietragallo.com
      jk@pietragallo.com

*Attorneys for Ryan K. Stumphauzer, Esq as
the court appointed receiver for Complete
Business Solutions Group, Inc.*

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. by and through its Court-Appointed Receiver RYAN K. STUMPHAUZER<br><br>    Plaintiff,<br><br>v.<br><br>ALAN REDMOND<br><br>    Defendant. | IN THE COURT OF COMMON PLEAS OF PHILADELHIA COUNTY, PENNSYLVANIA<br><br><br>CIVIL ACTION<br><br>NO. _____ |

## COMPLAINT

AND NOW, comes the Plaintiff, Complete Business Solutions Group, Inc through its

court-appointed Receiver Ryan K. Stumphauzer, Esq. and his counsel, Pietragallo Gordon Alfano

Bosick & Raspanti, LLP and files the following Complaint in Civil Action stating as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Ryan K. Stumphauzer, Esq is the court-appointed receiver (the "Receiver") for

Plaintiff, Complete Business Solutions Group, Inc ("CBSG" or "Plaintiff") in the case styled *SEC*

*v. Complete Business Solutions Group, Inc. d/b/a Par Funding* pending in the United States

District Court for the Southern District of Florida, case No. 20-cv-81205-RAR (the "Receivership

Case"). CBSG has a business address of 141 N. 2nd Street Philadelphia, Pennsylvania 19106.

Case ID: 220202794

The Receiver's address is One Biscayne Tower, Two S. Biscayne Boulevard, Suite 1600, Miami, Florida 33131.

2.      Defendant, Alan Redmond ("Redmond") is an adult individual believed to have a business address 4 S 4th St. Reading, PA 19602.

3.      Redmond agreed to jurisdiction and venue in Philadelphia County, Pennsylvania pursuant to the relevant Agreements (as defined herein).

## PROCEDURE

4.      On July 27, 2020, the United States District Court for the Southern District of Florida ("Receivership Court") appointed Ryan K. Stumphauzer as the Receiver for Complete Business Solutions Group, Inc. d/b/a PAR Funding and other entities that CBSG improperly used to commingle investor funds.

5.      On August 13, 2020 the Court issued an Amended Order Appointing Receiver (the "Amended Receivership Order"), which directed all persons or entities owing a debt or obligation to pay such obligations to the Receiver according to the terms reached with the applicable Receivership Entity.[1] *See* Amended Receivership Order at 9, No. 20-81205, ECF No. 141.

---

[1] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding"); Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC;, RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; and ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Fund 2 LP; MK Corporate Debt Investment Company LLC; Capital Source 2000, Inc.; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consulting, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; 500 Fairmount Avenue, LLC; Liberty Eighth Avenue LLC; Blue Valley Holdings, LLC; LWP North LLC; The LME 2017 Family Trust; Recruiting and Marketing Resources, Inc.; Contract Financing Solutions, Inc.;

Case ID: 220202794

6.     The Amended Receivership Order also vested the Receiver with authority to investigate, prosecute, defend, or resolve actions in any legal proceeding in order to recover or conserve the assets of the Receivership Entities. *Id.* at 14-15

7.     Finally, the Amended Receivership Order incorporated a Litigation Injunction that stayed all "Ancillary Proceedings" in their entirety and enjoined all Courts having any jurisdiction thereof from taking or permitting any action until further Order of the Receivership Court. *Id.* at 12.

8.     The Receivership Court previously issued an Order lifting the litigation injunction against the Defendant.

**FACTUAL BACKGROUND**

9.     Upon information and belief, Redmond is the officer, president, and/or owner of National Brokers of America Inc., National Brokers of America LLC, and Bene Market LLC.

10.    Beginning in approximately 2015, CBSG entered into a series of Agreements For The Purchase And Sale Of Future Receivables with National Brokers of America Inc., National Brokers of America LLC, and/or Bene Market LLC (collectively the "Merchants"). Pursuant to these Agreements, CBSG purchased certain accounts receivable from the Merchants.

11.    In connection with, and as an incorporation term of the Agreements, Redmond executed a guarantee thereby personally guaranteeing the Merchants obligations under each of the Agreements.

12.    Currently, eight (8) agreements between CBSG, Merchants. and Redmond, are in default. These are listed below as follows:

---

Stone Harbor Processing LLC; and LM Property Management LLC, and the receivership also includes the properties located at 568 Ferndale Lane, Haverford PA 19041; 105 Rebecca Court, Paupack, PA 18451; 107 Quayside Dr., Jupiter FL 33477; and 2413 Roma Drive, Philadelphia, PA 19145.

Case ID: 220202794

| Date | Type | Outstanding Balance | Attached as Exhibit |
|---|---|---|---|
| 11/19/19 | Reload | $23,677,499.40 | Exhibit A |
| 03/17/20 | Reload | $4,115,719.23 | Exhibit B |
| 05/15/20 | Reload | $1,262,834.29 | Exhibit C |
| 06/03/20 | New | $1,072,500.00 | Exhibit D |
| 06/17/20 | New | $642,932.35 | Exhibit E |
| 07/01/20 | Reload | $2,347,999.00 | Exhibit F |
| 07/13/20 | Reload | $1,646,134.04 | Exhibit G |
| 07/23/20 | New | $528,000.00 | Exhibit H |
| **TOTAL** | | $   35,293,618.31 | |

(collectively the above are the "Agreements")

13.     Pursuant to the terms of the Agreements, the named Merchants were obligated to make periodic payments to CBSG. See i.e Exhibit A at ¶ 1. (identifying Merchant's obligation to provide Daily Specified Amount to CBSG until purchase price is repaid)

14.     For each Agreement, Redmond executed a guarantee thereby personally guaranteeing the respective Merchant's obligations. Id. at p.18 ("The undersigned Guarantor(s) hereby guarantees to Purchaser, Merchant Seller's performance of all of the representations, and warranties made and terms, conditions, obligations and covenants undertaken by Merchant Seller in the Agreement for the Purchase and Sale of Future Receivables (the "Purchase Agreement"), as may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").

15.     Redmond further agreed that CBSG may enforce its rights against Guarantor in each agreement without first seeking enforcement against the respective Merchant. Id. ("In the

Case ID: 220202794

event Merchant Seller violates its representations and warranties under or breaches any term or condition or obligation or covenant under the Purchase Agreement, Purchaser may enforce its rights under this Guaranty without first seeking to obtain payment from Merchant Seller, any/or other guarantor, or any Collateral, Additional Collateral, and/or Cross-Collateral Purchaser may hold pursuant to this Guaranty or any other guaranty.")

16.     Pursuant to the terms of the Agreement, default occurs, *inter alia*, in the event "(i) Merchant Seller's failure to make any payment required under this Purchase Agreement.". . . ." Id. at p. 8-9, ¶ 10(h).

17.     In the event of default, CBSG is authorized to accelerate all amounts and fees due. Id. at p. 9, ¶ 11(a) ("Immediate payment of the full value of the Receivables Purchased Amount, Additional Payments, and any and all other fess due under this Purchase Agreement, less the amount of Receivables delivered and Additional Payments made under this Purchase Agreement")

18.     Further, in the event of default, Defendant is obligated to pay to CBSG reasonable costs associated with the breach and enforcement of the Agreement Id. at p. 11, ¶ 16 ("Merchant Seller shall be responsible for and pay to Purchaser all costs Purchaser incurs in enforcing this Purchase Agreement and its rights and remedies under this Purchase Agreement, including attorney fees (for in-house counsel or outside counsel Purchaser retains to represent it), court costs and/or fees, and costs of collection.")

19.     On or about July 27, 2020 the United States District Court for the Southern District of Florida appointed the Receiver as the receiver for CBSG, and related entities, in *Securities and Exchange Commission v. Complete Business Solutions Group, Inc. et al.* at case number No. 20-cv-81205-RAR.

20. As identified in the Amended Order Appointing Receiver and the Order Granting Motion to Expand Receivership Estate, attached hereto as Exhibit I, the Receiver possesses the right to act on behalf of CBSG under the Agreement.

## DEFAULT

21. Merchants last made a payment on July 31, 2020. Since that date neither the Merchants, nor Guarantor, have made payment as required under the Agreements.

22. The Guarantor's failure to make payments to CBSG since July 31, 2020 is a default of the guarantee provisions in the Agreements.

23. As a result of the defaults, CBSG has declared the entire obligation due under the terms of the guarantees under all Agreements immediately payable in full by Redmond.

24. Redmond owes $35,293,618.31 pursuant to his guarantees.

25. Further, Redmond is obligated to pay CBSG reasonable attorneys' fees and costs.

## COUNT I
## BREACH OF CONTRACT

26. Plaintiff incorporates the foregoing Paragraphs as if fully set forth herein again at length.

27. Defendant voluntarily and knowingly executed the Agreements, and guarantees, with full knowledge of their content and legal binding effect.

28. The Agreements are a valid and binding contract which includes personal guarantees by Redmond.

29. The relevant Merchants have all breached their Agreements subject to the Defendant's Guaranty by failing to make payments when due to CBSG.

30. The Guarantor has breached his Agreement(s) of Guaranty in each instance by failing to perform the Merchants' obligations which includes tendering the necessary payments.

Case ID: 220202794

31.     Plaintiff may enforce its rights against Redmond without first seeking relief from any the Merchants. Id. at p.18

32.     The total amount due and owing by Defendant to Plaintiff is $35,293,618.31 together with continuing interest, reasonable attorneys' fees and the costs of this action.

WHEREFORE, Plaintiff Complete Business Solutions Group, Inc through its court-appointed Receiver Ryan K. Stumphauzer, Esq., hereby demands judgment in its favor and against Defendant Alan Redmond in the amount of $35,293,618.31, plus costs, interest, attorneys' fees, and any other relief that this Court deems necessary, just and appropriate.

## COUNT II
## PROMISSORY ESTOPPEL

33.     Plaintiff incorporates the foregoing Paragraphs as if fully set forth herein again at length.

34.     Plaintiff pleads the following cause of action in the alternative to Count I pursuant to Pa.R.C.P. 1020(c) and 1021(a). See Schreiber v. Republic Intermoadal Corp., 375 A.2d 1285, 626-27 (Pa. 1977).

35.     To the extent that the Agreements, or any portion thereof, is found to be non-binding and/or unenforceable, Defendant received, appreciated, accepted, and benefited from CBSG's funding.

36.     CBSG and Merchant entered into an agreement whereby Plaintiff purchased the Merchants' accounts receivable in exchange for pre-determined periodic re-payments.

37.     CBSG entered into that agreement based upon its justifiable reliance that Redmond would fulfill the representations, promises, and warranties made by Merchants including the agreement to make certain payments as well as the Redmond promises of Guarantee and Surety.

Case ID: 220202794

38.    In reliance upon those promises CBSG purchased accounts receivable which CBSG would not have done had Merchants, and Redmond individually not agreed to pay the amounts agreed upon.

39.    Defendant has failed to abide by its promises, causing Plaintiff to suffer damage.

40.    As a direct result of its justifiable reliance upon Defendant's representations, promises, and warranties, Plaintiff has been damaged in an amount in excess of $35,293,618.31.

WHEREFORE, Plaintiff Complete Business Solutions Group, Inc through its court-appointed Receiver Ryan K. Stumphauzer, Esq., hereby demands judgment in its favor and against Alan Redmond in the amount of $35,293,618.31, plus costs, interest, attorneys' fees, and any other relief that this Court deems necessary, just and appropriate.

## COUNT III
## UNJUST ENRICHMENT

41.    Plaintiff incorporates the foregoing Paragraphs as if fully set forth herein again at length.

.42.    Alternatively to Counts I and II, Plaintiff also states a claim against Defendant for unjust enrichment pursuant to Pa.R.C.P. 1020(c) and 1021(a). *See Schreiber*, 375 A.2d at 626-27.

43.    To the extent that the Agreements, or any portion thereof, is found to be non-binding and/or unenforceable, Redmond has received, appreciated, accepted, and benefited from CBSG's purchase.

44.    Redmond has not paid or otherwise compensated Plaintiff for the $35,293,618.31 plus costs, continuing interest, and attorneys' fees.

45.    Redmond has been, and will continue to be, unjustly enriched if he is not required to pay Plaintiff the outstanding amounts due plus interest and attorney's fees.

*Remainder of Page Intentionally Left Blank*

Case ID: 220202794

WHEREFORE, Plaintiff Complete Business Solutions Group, Inc. through its court-appointed Receiver Ryan K. Stumphauzer, Esq., hereby demands judgment in its favor and against Alan Redmond in the amount of $35,293,618.31, plus costs, interest, attorneys' fees, and any other relief that this Court deems necessary, just and appropriate.

Respectfully submitted:

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

_/s/ Gaetan J. Alfano_
Gaetan J. Alfano, Esq (I.D. No. 32971)
Richard J. Parks, Esq (I.D. No. 40477)
John W. Kettering, Esq (I.D. No. 316945)
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
gja@pietragallo.com
rjp@pietragallo.com
jk@pietragallo.com

_Attorneys for Ryan K. Stumphauzer, Esq the court-appointed Receiver for Complete Business Solutions
Group, Inc._

Dated:  February 28, 2022

6840371

Case ID: 220202794

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
Gaetan J. Alfano, Esq(I.D. No. 32971)
Richard J. Parks, Esq (I.D. No. 40477)
John W. Kettering, Esq (I.D. No. 316945)
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082
Email:  gja@pietragallo.com
      rjp@pietragallo.com
      jk@pietragallo.com

*Attorneys for Ryan K. Stumphauzer, Esq as*
*the court appointed receiver for Complete*
*Business Solutions Group, Inc.*

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. by and through its Court-Appointed Receiver RYAN K. STUMPHAUZER | : IN THE COURT OF COMMON<br>: PLEAS OF PHILADELHIA COUNTY,<br>: PENNSYLVANIA |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| ALAN REDMOND | : NO. _____ |
| Defendant. | : |

## VERIFICATION

I, Ryan K. Stumphauzer, as Receiver for the Plaintiff hereby deposes and says subject to

the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities that the facts

set forth in the foregoing Complaint in Civil Action are true and correct to the best of my

knowledge, information and belief.

 

_____
Ryan K. Stumphauzer, Receiver

Case ID: 220202794

# Exhibit X

# Exhibit X

**Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390**

**IN THE COURT OF COMMON PLEAS
OF BERKS COUNTY, PENNSYLVANIA**

**CIVIL ACTION - LAW**

WBL SPO II, LLC

|  | : | No. |
| , Plaintiff | : | |
|  | : | |
| v. | : | |
| ALAN C. REDMOND | : | |
|  | : | |
| , Defendant | : | |

**CERTIFICATION REGARDING STATUS OF FORECLOSED PREMISES**

Pursuant to the Administrative Order dated December 1, 2011 establishing the Berks County Residential Mortgage Foreclosure Diversion Program, Civil Docket No. 11-38, and all related Orders entered thereafter, I hereby certify that this action:

Check the appropriate one:

_____ involves a consumer credit transaction (as defined in Pa.R.C.P. 2950) which is secured by a mortgage on owner occupied residential property.

___X___ does not involve a consumer credit transaction, or is not secured by a mortgage on owner occupied residential property.

The undersigned verifies that the statements made herein are true and correct to the best of my knowledge, information and belief. I understand that this statement is made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 8/31/2023_____                    _____
                                           Signature of Plaintiff or Counsel for Plaintiff

**DEFENDANTS MAY CHALLENGE THIS CERTIFICATION IF THEY BELIEVE THAT THEY ARE ELIGIBLE FOR THE CONCILIATION PROGRAM BY PETITIONING THE COURT OR BY CONTACTING BERKS COMMUNITY ACTION PROGRAM at (610) 375-7866 or MIDPENN LEGAL SERVICES at (610) 376-8656 DIAL ZERO.**

**LOS DEMANDADOS PUEDEN DISPUTAR ESTE CERTIFICADO SI ELLOS REUNEN LOS REQUISITOS DEL PROGRAMA DE CONCILICACION, PUEDEN HACERLO AL PRESENTAR UNA PETICION AL TRIBUNAL O AL CONTACTAR A BERKS COMMUNITY ACTION PROGRAM al (610) 375-7866 O A MIDPENN LEGAL SERVICES al (610) 376-8656 PRESIONE CERO.**

LUNDY, BELDECOS & MILBY, P.C.
By: Jessica M. Gulash, Esquire (#208463)
450 N. Narberth Avenue, Suite 200
Narberth, PA 19072
(610) 668-0772
jgulash@lbmlaw.com

COURT OF COMMON PLEAS
BERKS COUNTY

No.

REINSTATED 09/15/23

J. K. DEL COLLO   Prothonotary

Deputy



WBL SPO II, LLC
     v.
ALAN C. REDMOND

## NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

### NOTICE

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601
Telephone (610)375-4591
www.BerksBar.org**

### AVISO

**Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

**USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE.   SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO.  ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.**

**SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.**

**Servicio de Recomendación para Contratar Abogados
del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
www.BerksBar.org**

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

**LUNDY, BELDECOS & MILBY, P.C.**                    ATTORNEYS FOR PLAINTIFF
By:    **JESSICA M. GULASH, ESQUIRE (#208463)**
**450 N. Narberth Avenue, Suite 200**
**Narberth, PA  19072**
**(610) 668-0772**
**jgulash@lbmlaw.com**

---

| | |
|---|---|
| **WBL SPO II, LLC, successor by assignment from WBL SPO I, LLC, successor by assignment from WORLD BUSINESS LENDERS, LLC** <br> **c/o World Business Lenders, LLC** <br> **150 Clearbrook Road, Suite 125** <br> **Elmsford, NY 10523** | **COURT OF COMMON PLEAS** <br> **BERKS COUNTY** <br><br> **CIVIL ACTION** <br><br> **No.** |
| **Plaintiff,** <br> **v.** <br><br> **ALAN C. REDMOND** <br> **2005 Regency Drive** <br> **Reading, PA** <br><br> **Defendant.** | |

---

## COMPLAINT IN MORTGAGE FORECLOSURE

1.      Plaintiff WBL SPO II, LLC, successor by assignment WBL SPO I, LLC, successor by assignment from World Business Lenders, LLC, is a Delaware limited liability company with an address as captioned.

2.      Defendant Alan C. Redmond is, upon information and belief, an adult individual with an address as captioned.

3.      On or about February 24, 2021, World Business Lenders, LLC ("**World Business**") made a loan in the principal sum of $500,000.00 (the "**Loan**") to Seguro Medico, LLC ("**Seguro**") pursuant to the terms set forth in a Business Promissory Note and Security Agreement dated February 24, 2021 (the "**Note**").

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

4.    A true and correct copy of the Note is attached hereto and made a part hereof as Exhibit "1."

5.    Plaintiff, either directly or through an agent, has possession of the Note, and Note has been duly indorsed to Plaintiff.

6.    The Loan  was provided to Seguro for business purposes.

7.    In connection with the Loan, Seguro executed a Business Loan Purpose Affidavit in which it acknowledged that the Loan would be used "for business purposes only, and not for personal, consumer, family or household purposes."

8.    A true and correct copy of the Business Loan Purpose Affidavit is attached hereto and made a part hereof as Exhibit "2."

9.    On or about February 24, 2021, Defendants executed a Continuing Guaranty, Personal (the "**Guaranty**") in which he agreed to be personally liable for Seguro's obligations pursuant to the Loan.

10.    A true and correct copy of the Guaranty is attached hereto and made a part hereof as Exhibit "3."

11.    On or about February 24, 2021, in order to secure repayment of the Loan, Defendant executed a Mortgage on the real property known as and located at 2005 Regency Drive, Wyomissing, Berks County, Pennsylvania (the "**Property**").

12.    A true and correct copy of the Mortgage is attached hereto as Exhibit "4."

13.    The Mortgage was recorded by the Berks County Recorder of Deeds on Jue 2, 2021, at Instrument Number 2021027513.

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

14. On or about March 14, 2022, World Business assigned the Mortgage to WBL SPO I, LLC by virtue of an Assignment of Mortgage dated March 14, 2022, and recorded by the Berks County Recorder of Deeds on March 21, 2022, at Instrument Number 2022011773 ("**AOM 1**").

15. A true and correct copy of AOM 1 is attached hereto and made a part hereof as Exhibit "5."

16. On or about March 14, 2022, WBL SPO I, LLC assigned the Mortgage back to World Business by virtue of an Assignment of Mortgage dated March 14, 2022, and recorded by the Berks County Recorder of Deeds on March 21, 2022, at Instrument Number 2022011774 ("**AOM 2**").

17. A true and correct copy of AOM 2 is attached hereto and made a part hereof as Exhibit "6."

18. On or about March 14, 2022, World Business then assigned the Mortgage to Plaintiff by virtue of an Assignment of Mortgage dated March 14, 2022, and recorded by the Berks County Recorder of Deeds on March 21, 2022, at Instrument Number 2022011775 ("**AOM 3**").

19. A true and correct copy of AOM 3 is attached hereto and made a part hereof as Exhibit "7."

20. Defendant is the real owner of the land and improvements subject to the Mortgage, as assigned.

21. A true and correct copy of the legal description of the Property is attached hereto and made a part hereof as Exhibit "8."

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

22.    The Note required Seguro to repay the principal balance, interest, and other sums due in accordance with the terms set forth therein.

23.    Seguro is in default of the Note due to its failure to make the required payments of principal and interest as and when due.

24.    The Loan matured on February 17, 2023.

25.    Upon maturity, neither Seguro nor Defendant paid all principal, interest, and other sums due and owing.

26.    Notice pursuant to Act 6, 41 P.S. §101, *et seq.* was not required to be served on Defendant.

27.    Notice pursuant to the Homeowner's Emergency Mortgage Assistance Act of 1983, 35 P.S. §1680.401c *et seq.*, as amended by 12 Pa. Code, Chapter 31 (Act 91), was not required to be served on Defendant.

28.    As a consequence of the above-described events of default, the amount due under the Note and Mortgage is as follows:

| | |
|---|---|
| Principal: | $356,237.81 |
| Pre-Payment Premium: | 53,435.67 |
| Interest (through 8/15/23)*: | 16,584.04 |
| Attorney's Fees (per Note; through 8/15/23): | 7,835.24 |
| Sub-Total: | $372,821.85 |
| (Less Escrow Balance) | - (25,000.00) |
| **GRAND TOTAL:** | **$401,257.52** |

* Interest continues to accrue on the amounts due at the rate of $351.36 per diem.

29.    No prior judgment has been entered on said Note or Mortgage in any jurisdiction.

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

WHEREFORE, Plaintiff WBL SPO II, LLC hereby demands judgment in mortgage foreclosure on the property known as and located at 2005 Regency Drive, Wyomissing, Berks County, Pennsylvania, in its favor and against Defendant Alan C. Redmond, in the amount of $401,257.52 as of August 15, 2023, together with all costs, including attorney's fees, costs, and interest at the contractual rate accrued through the date of judgment.

**LUNDY, BELDECOS & MILBY, P.C.**

Date:  8/31/2023            By:  _____

**JESSICA M. GULASH, ESQUIRE**
*Attorney for Plaintiff*

## VERIFICATION

I, John Murphy, verify that I am an Authorized Signatory for WBL Servicing, LLC, as servicer for WBL SPO II, LLC; that I am authorized to make this Verification; and that the facts set forth in the foregoing are true and correct to the best of my knowledge, information, and belief. This Verification is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____
JOHN MURPHY

Received County of Berks Prothonotary's Office on 08/31/2023 11:45 AM Prothonotary Docket No. 23-13390

# Exhibit Y

# Exhibit Y

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN WORKERS** | ) | |
| **INSURANCE SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:23-cv-02081-SES** |
| | ) | |
| **BENE MARKET LLC,** | ) | **Judge Jennifer P. Wilson** |
| **ALAN REDMOND, AND** | ) | |
| **STEPHANIE MILLER** | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff American Workers Insurance Services, Inc. ("AWIS" or "Plaintiff"), through their undersigned counsel, Freeman Mathis & Gary LLP, files this First Amended Complaint against Alan Redmond ("Redmond") and Stephanie Miller ("Miller"), and in support thereof, avers as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(2), which vests this Court with jurisdiction over actions between citizens of different States.

## EXHIBIT A

2.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) because it is a judicial district in which, upon information and belief, a Defendant resides and because, upon information and belief, all Defendants are citizens of Pennsylvania.

## PARTIES

3.    Plaintiff AWIS is a Texas corporation with its principal place of business in Rockwall, Texas.

4.    Defendant Redmond is, upon information and belief, a citizen of Pennsylvania and resides at 2005 Regency Drive, Reading, Pennsylvania.

5.    Defendant Miller is, upon information and belief, a citizen of Pennsylvania and resides at 485 Knorr Road, Gettysburg, Pennsylvania.

## FACTUAL ALLEGATIONS

6.    AWlS and American Health Care Management, Inc. ("AHCM") work together to facilitate the sale and service of health and welfare benefit products issued by insurance carriers and other benefit providers.

7.    AWlS is an insurance agency and marketing entity.  It is engaged in the business of packaging various association life, health and

accident insurance benefits, discount services, and other programs for sale to customers (the "Plan(s)").  In the normal course of its business, AWIS contracts with agents, also referred to as producers, to market and sell the Plans.  The agents are paid on a commission basis, established by applicable agreements and corresponding commission schedules, in exchange for acting on AWIS's behalf.

8.    AHCM is a third-party administrator responsible for collecting premiums and other amounts due for the Plans purchased by the customers, also referred to as members, and remitting them to the parties to whom they are owed.  A portion of the premiums collected go to pay for commissions earned by AWIS' agents.

9.    In October 2018 AWIS entered into that certain AWIS, LLC Agent Contract dated October 3, 2018 (the "Agent Contract") with Bene Market, LLC.  Pursuant to the Agent Contract, Bene Market agreed to be an agent of AWIS to market and sell the Plans. Upon information and belief, at the time AWIS and Bene Market entered into the Agent Contract, as well as both before and after the Agency Agreement was in effect, Redmond and Miller were members of Bene Market, with Redmond having a 96% ownership interest and Miller having a 4%

ownership interest.

10. Section 4 of the Agent Contract provides the terms of Bene Market's commission-based compensation. "Commission shall be payable in accordance with the commission schedule attached as Exhibit A based on premiums actual received and recorded by AWIS."

11. Additionally, in accordance with industry practice, Bene Market is given the opportunity to apply for and receive advance payments on future commissions. Section 4.8 of the Agent Contract provides the terms and means for advance payment of future commissions ("Commission Advances").

12. Section 4.8.1 of the Agent Contract provides, as follows:

> 4.8.1. Acceptance. It is understood and agreed that AWIS, at its sole discretion may make advances to PRODUCER against future credited commissions on application for Plans submitted to AWIS by Agent. Such advances shall not constitute a loan, and shall instead be an assignment and sale of the commission and such purchased assets shall be made in lieu of payment of credited commission as provided in Exhibit A. These amounts are based on insurance premiums on production on completed applications. The amount advanced shall be determined in the sole discretion of AWIS. PRODUCER agrees to that AWIS shall have all rights to commissions, or proceeds thereof, subject to the advance. PRODUCER'S acceptance and deposit of any advance commissions from AWIS shall constitute acceptance of the terms and conditions of this Section by

PRODUCER.

(emphasis original)

13.    As set forth in Section 4.8.1, the commission advances do not constitute loans from AWIS to Bene Market.  As such, AWIS's recovery of Commission Advances is dependent upon the customers' continued payment of premiums.

14.    Upon information and belief, Bene Market employed its own agents to market and sell the Plans on behalf of Bene Market (the "<u>BM Team</u>").  After the Agent Contract was executed, the BM Team sold Plans and signed up new members for AWIS.  Correspondingly, Bene Market applied for and AWIS agreed to make commission advances to Bene Market on account of those sales.

15.    Less than a year after the execution of the Agent Contract, AWIS began to receive notices from state and federal regulatory agencies of complaints made by customers who purchased Plans from Bene Market.  Furthermore, AWIS was also made aware that Bene Market agents were apparently selling products on AWIS's behalf from an entity not approved by AWIS.  Due to risks of running afoul with state and federal regulations on account of these customer complaints, AWIS

terminated the Agent Contract by letter dated August 2, 2019.

16. Eventually, AWIS noticed that a number of customers who acquired Plans from Bene Market agents terminated their Plans or stopped paying premiums. Without the customers paying premiums, AWIS was unable to recoup the Commission Advances made to Bene Mart.

17. Based upon conversations representatives of AWIS had with customers, it became apparent to AWIS that Bene Market was improperly moving AWIS members, by contacting such members and convincing them to replace the AWIS Plans with alternative products that are not AWIS products. Bene Market was able to convince those members to move to alternative products by making misrepresentations about AWIS's business and financial condition or by taking other wrongful actions.

18. As a result of Bene Market's improper actions, AWIS suffered damages and losses because it was unable to recover the Commission Advances previously made to Bene Mart. At present, approximately $8 million in Commission Advances remain unpaid to AWIS.

19. On October 14, 2021, AWIS and AHCM filed Adversary

Proceeding Number 21-04066-mxm against Bene Market in the United States Bankruptcy Court, Northern District of Texas, in connection with Chapter 11 Case Numbers 19-44208-mxm11 and 1944209-mxm11, styled "In re: American Workers Insurance Services, Inc." and "Association Health Care Management, Inc.", respectively, seeking to recover from Bene Market the unpaid Commission Advances ("Adversary Proceeding"). The Adversary Proceeding has been abated, pending completion of arbitration proceedings between AWIS and Bene Market.

20.     During the course of the Adversary Proceeding, AWIS discovered, and alleges upon information and belief, that before, during, and potentially after the period that the Agent Contract was in effect, and while Bene Market was insolvent, Bene Market made cash payments to Redmond and Miller totaling millions of dollars, with such payments being characterized, at least in part, as purportedly either "guaranteed payments " or "wages."

21.     On information and belief, in 2017, Bene Market transferred and paid to Redmond $421,088.00 in "guaranteed payments." On information and belief, in 2018, Bene Market transferred and paid to Redmond $1,294,182.00 in "guaranteed payments" and $2,058,858.00 in

"wages." On information and belief, in 2018, Bene Market transferred and paid to Miller $113,800.00 in "guaranteed payments" and $85,786.00 in "wages." On information and belief, in 2019, Bene Market transferred and paid to Redmond $3,125,623.00 in "guaranteed payments" and $4,514,938.00 in "wages." On information and belief, in 2019, Bene Market transferred and paid to Miller $45,000.00 in "guaranteed payments" and $188,122.00 in "wages."

22.    AWIS believes that evidence will be obtained during discovery that will show a number of additional transfers of Bene Market's assets to and for the sole benefit of Redmond and/or Miller, including without limitation, during the time that Bene Market was receiving Advance Commissions which remain unpaid to AWIS.

## CLAIMS FOR RELIEF

### COUNT ONE: FRAUDULENT TRANSFER – VIOLATIONS OF 12 Pa. C.S. § 5104(a)(1) (Against All Defendants)

23.    AWIS hereby reasserts and incorporates the allegations in the preceding paragraphs as though fully set forth herein.

24.    Under Section 5104(a)(1) of the Pennsylvania Uniform Voidable Transactions Act ("UVTA") (f/k/a the "Uniform Fraudulent Transfer Act"), 12 Pa. C.S. § 5101, *et seq.*, a transfer is fraudulent as to a

creditor, whether the creditor's claim arose before or after the transfer was made …," if the debtor made the transfer "with the actual intent to hinder, delay, or defraud any creditor."

25. Section 5104 further provides that in determining "actual intent to hinder, delay or defraud", the relevant factors include, *inter alia*, whether: (i) the transfer was to an insider; (ii) the transfer was not for reasonably equivalent value; (iii) the debtor was insolvent before the transfer, or became insolvent shortly after the transfer, with insolvency presumed from the inability to pay one's bills when due; and (iv) the transfer occurred shortly before or shortly after the transfer was made. Id., see also 12 Pa. C.S. § 5102.

26. At all relevant times, Defendants Redmond and Miller have been insiders of Bene Market.

27. Assets of Bene Market have been transferred to Redmond and Miller with actual intent to hinder, delay, or defraud Bene Market's creditors.

28. AWIS was a creditor of Bene Market before and/or at the time of the transfers of Bene Market's assets as set forth above.

29. The transfers of Bene Market's assets were made, in whole or

in part, with the intent to hinder, delay, and/or defraud AWIS as well as other creditors of Bene Market.

30.    In approving, participating in, and receiving the transfers of Bene Market's assets, Defendants Redmond and Miller acted outrageously, willfully and/or with reckless indifference to the rights of Bene Market's creditors, including AWIS.

31.    On information and belief, Bene Market may have engaged in other fraudulent transfers of its assets to Redmond and/or Miller.

32.    All the specific information about the transfers of money from Bene Market to Redmond and/or Miller, and, possibly, other transfers of Bene Market's assets, is within the exclusive control of Defendants.

33.    Section 5108 of the UVTA provides that to the extent a transfer is voidable under the Act, the creditor may recover judgment for the value of the assets against the first transferee(s) of the asset(s). 12 Pa. C.S. § 5108(b).

WHEREFORE, Plaintiff AWIS requests that:

a.    A judgment be entered in Plaintiff's favor and against Defendants Redmond and Miller in an amount equal to the lesser of (i) the value of the money fraudulently transferred to them from Bene

Market, or (ii) the amount of any judgment awarded to AWIS in the Adversary Proceeding;

b.     Defendants Redmond and Miller be required to account for all of the assets that were transferred to them with the intent to hinder, delay or defraud Bene Market's creditor – AWIS;

c.     The Court issue an injunction prohibiting Redmond and Miller from transferring or receiving any additional assets of Bene Market without receiving reasonably equivalent value in exchange;

d.     The Court award punitive damages to AWIS for Defendants Redmond and Miller's outrageous, reckless and willful misconduct; and

e.     The Court grant such other relief as it deems just, including without limitation, pre- and post-judgment interest and costs.

## COUNT TWO: FRAUDULENT TRANSFER – VIOLATION OF 12 Pa. §§ 5104(a)(2) and 5105

34.     AWIS hereby reasserts and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

35.     Section 5104(a)(2) of the UVTA provides that a transfer is "fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made …," if the debtor did not receive a reasonably equivalent value in exchange for the transfer, and the debtor was

engaged in business or transactions for which the assets of the debtor were "unreasonably small."

36.    Section 5105 of the UVTA provides that a transfer is "fraudulent as to a creditor whose claim arose before the transfer" if the debtor did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time, or became insolvent as a result of the transfer.

37.    Assets of Bene Market were transferred to Defendants Redmond and Miller without Bene Market receiving a reasonably equivalent value in exchange.

38.    At the time of the transfers set forth above, Bene Market was engaged in transactions, including at least in part its transactions with AWIS, for which its assets were unreasonably small.

39.    On information and belief, at or about the time of the transfers set forth above, Bene Market was insolvent, or became insolvent, as a result of the transfers.

40.    AWIS was a creditor of Bene Market at the after and/or at the time of the transfers of Bene Market's assets as set forth above.

41.    In approving, participating in, and receiving the transfers of

Bene Market's assets, Defendants Redmond and Miller acted outrageously, willfully and/or with reckless indifference to the rights of Bene Market's creditors, including AWIS.

42.    On information and belief, Bene Market may have engaged in other fraudulent transfers of its assets to Redmond and/or Miller.

43.    All the specific information about the transfers of money from Bene Market to Redmond and/or Miller, and, possibly, other transfers of Bene Market's assets, is within the exclusive control of Defendants.

44.    Section 5108 of the UVTA provides that to the extent a transfer is voidable under the Act, the creditor may recover judgment for the value of the assets against the first transferee(s) of the asset(s). 12 Pa. C.S. § 5108(b).

WHEREFORE, Plaintiff AWIS requests that:

a.    A judgment be entered in Plaintiff's favor and against Defendants Redmond and Miller in an amount equal to the lesser of (i) the value of the money fraudulently transferred to them from Bene Market, or (ii) the amount of any judgment awarded to AWIS in the Adversary Proceeding;

b.    Defendants Redmond and Miller be required to account for all

of the assets that were fraudulently transferred to them;

c.     The Court issue an injunction prohibiting Redmond and Miller from transferring and/or receiving any additional assets of Bene Market without receiving reasonably equivalent value in exchange;

d.     The Court award punitive damages to AWIS for Defendants Redmond and Miller's outrageous, reckless and willful misconduct; and

e.     The Court grant such other relief as it deems just, including without limitation, pre- and post-judgment interest and costs.

Respectfully submitted,

Date: March 19, 2024

*/s/ Justin J. Boron*
JUSTIN J. BORON (324797)
1600 Market Street, Suite 1210
Philadelphia, PA 19103
Phone: (215) 279-8072
jboron@fmglaw.com
*Attorney for Plaintiff*
*American Workers*
*Insurance Services, Inc.*

# <u>CERTIFICATE OF SERVICE</u>

I, Justin J. Boron, Esquire hereby certify that a true and correct copy of the within Plaintiff's First Amended Complaint on this 19th day of March, 2024, has been served upon all interested parties.

**FREEMAN MATHIS & GARY, LLP**

Dated: March 19, 2024                    By:

*/s/ Justin J. Boron*
JUSTIN J. BORON (324797)
1600 Market Street, Suite 1210
Philadelphia, PA 19103
Phone: (215) 279-8072
jboron@fmglaw.com
Attorney for Plaintiff
American Workers
Insurance Services, Inc.

# Exhibit Z

# Exhibit Z

United States Bankruptcy Court

Eastern District of Pennsylvania

In re:                                                                                Case No. 19-15488-pmm

National Brokers of America, Inc.                                                     Chapter 7

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0313-4 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jul 02, 2024 | Form ID: pdf900 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

**Symbol     Definition**

+        Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 04, 2024:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + National Brokers of America, Inc., 354 Penn Street, Reading, PA 19602-1010 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 04, 2024                              Signature:              /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 2, 2024 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| BARRY W. SAWTELLE | on behalf of Creditor Shoreline Financial Group  LLC bsawtelle@kozloffstoudt.com, dgabala@kozloffstoudt.com;gtooth@kozloffstoudt.com |
| CHARLES N. SHURR, JR. | on behalf of Creditor Shoreline Financial Group  LLC cshurr@kozloffstoudt.com, lbemis@kozloffstoudt.com;hdavis@kozloffstoudt.com;jkrallis@kozloffstoudt.com |
| DANIEL HONG | on behalf of Creditor Jason Scott Jordan daniel@cornerstonelaw.us valeria@cornerstonelaw.us,jovan@cornerstonelaw.us,steve@sottolaw.com,CornerstoneLawFirmLLC@jubileebk.net,no_reply@ecf.inforuptcy.com |
| DANIEL HONG | on behalf of Creditor Joel A. Ready daniel@cornerstonelaw.us valeria@cornerstonelaw.us,jovan@cornerstonelaw.us,steve@sottolaw.com,CornerstoneLawFirmLLC@jubileebk.net,no_reply@ecf.inforuptcy.com |

District/off: 0313-4 | User: admin | Page 2 of 2

Date Rcvd: Jul 02, 2024 | Form ID: pdf900 | Total Noticed: 1

DANIEL HONG
on behalf of Creditor Cornerstone Law Firm  LLC daniel@cornerstonelaw.us,
valeria@cornerstonelaw.us,jovan@cornerstonelaw.us,steve@sottolaw.com,CornerstoneLawFirmLLC@jubileebk.net,no_reply@ecf.inforuptcy.com

DAVID P. HEIM
on behalf of Intervenor Alan Redmond dheim@bochettoandlentz.com  mtrout@bochettoandlentz.com

DAVID W. CROSSETT
on behalf of Defendant Jason Scott Jordan david@cornerstonelaw.us  erica@cornerstonelaw.us

DAVID W. CROSSETT
on behalf of Creditor Jason Scott Jordan david@cornerstonelaw.us  erica@cornerstonelaw.us

GEORGE BOCHETTO
on behalf of Intervenor Alan Redmond gbochetto@bochettoandlentz.com
mtrout@bochettoandlentz.com;tbaker@bochettoandlentz.com

HOLLY SMITH MILLER
on behalf of Trustee ROBERT H. HOLBER hsmiller@gsbblaw.com  abrown@gsbblaw.com

JOEL A. READY
on behalf of Creditor Joel A. Ready info@cornerstonelaw.us

JOEL A. READY
on behalf of Creditor Cornerstone Law Firm  LLC info@cornerstonelaw.us

JOEL A. READY
on behalf of Creditor Jason Scott Jordan info@cornerstonelaw.us

MICHAEL I. ASSAD
on behalf of Creditor Jimmy Christopher Davis help@cibiklaw.com
noreply01@cibiklaw.com;noreply02@cibiklaw.com;noreply03@cibiklaw.com;noreply04@cibiklaw.com;noreply05@cibiklaw.com;cibiklawpc@jubileebk.net;cibiklaw@recap.email;ecf@casedriver.com

NORMAN M. VALZ
on behalf of Debtor National Brokers of America  Inc. nvalz@msn.com

ROBERT H. HOLBER
trustee@holber.com  rholber@ecf.axosfs.com

ROBERT H. HOLBER
on behalf of Trustee ROBERT H. HOLBER trustee@holber.com  rholber@ecf.axosfs.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

WILLIAM J. BURNETT
on behalf of Accountant Sharer Petree Brotz & Snyder william.burnett@flastergreenberg.com
william.burnett@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;krystall.hasker@flastergreenberg.com

WILLIAM J. BURNETT
on behalf of Trustee ROBERT H. HOLBER william.burnett@flastergreenberg.com
william.burnett@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;krystall.hasker@flastergreenberg.com

WILLIAM J. BURNETT
on behalf of Attorney Flaster/Greenberg P.C. william.burnett@flastergreenberg.com
william.burnett@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;krystall.hasker@flastergreenberg.com

WILLIAM J. BURNETT
on behalf of Plaintiff National Brokers of America  Inc. william.burnett@flastergreenberg.com,
william.burnett@ecf.inforuptcy.com;jennifer.vagnozzi@flastergreenberg.com;krystall.hasker@flastergreenberg.com

TOTAL: 22

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:

NATIONAL BROKERS OF AMERICA, INC.

Chapter 7

Debtor.

Bankruptcy No. 19-15488-pmm

_____    _____

## **ORDER**

**AND NOW**, this __2nd__ day of __July_____, 2024, upon consideration of the Motion to Intervene for Purposes of Debtor's Motion for Enforcement of the Automatic Stay, Vacating of Judgments as Void, and Enjoining Jason Scott Jordan From Pursuing Claims in Berks County Civil Docket 14-17117, filed by Proposed Intervenor, Alan C. Redmond, it is hereby **ORDERED** that the Motion is **GRANTED.**

Alan C. Redmond is hereby granted Interested Party status with respect to the Debtor's Motion [ECF No. 179] and he and/or his counsel of record are permitted to be heard at the Court's July 2, 2024, 11 A.M. hearing for said Motion.

BY THE COURT:

_____
Hon. Patricia M. Mayer, U.S.B.J.

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

In re:

NATIONAL BROKERS OF AMERICA,            Chapter 7
INC.

Debtor.                                  Bankruptcy No. 19-15488-pmm

_____          _____

**NON-PARTY ALAN C. REDMOND'S MOTION TO INTERVENE IN SUPPORT OF
DEBTOR'S MOTION FOR ENFORCEMENT OF THE AUTOMATIC STAY,
VACATING OF JUDGMENTS AS VOID, AND ENJOINING JASON SCOTT JORDAN
FROM PURSUING CLAIMS IN BERKS COUNTY CIVIL DOCKET 14-17117**

Non-party Alan C. Redmond ("Redmond"), through undersigned counsel, requests that

the Court enter an order allowing him to intervene in the motion of Debtor, National Brokers of

America, Inc., ("Debtor") to enforce the automatic stay, void the judgments entered in Berks

County Pennsylvania against Debtor, Alan C. Redmond, and Bene Market, LLC, enjoining Jason

Scott Jordan from pursuing claims against the same in Berks County, Pennsylvania, Court of

Common Pleas Civil Docket 14-17117, and issuing sanctions against Joel Ready, Esq. and

Cornerstone Law Firm.

**INTRODUCTION**

Redmond is one of the parties subject to judgments entered in a Berks County case, in

which (as set forth in the motion of Debtor) a judgment of more than $13 million was entered in

favor of Jason Jordan, despite the automatic stay in this Court. Additionally, the automatic stay

is being violated in another case in Berks County, in which Jason Jordan seeks the Debtor's

assets in a suit against Alan C. Redmond, Bene Markets, LLC and Stephanie Miller.

As Redmond is an "interested party" under Bankr. R. 2018(a), he is entitled to permissive intervention: the judgment and the second action affect his property interests, along with the interests of the Debtor.

## FACTUAL SUMMARY

Below is an abbreviated list of proceedings in Pennsylvania and before this Court which are relevant to the content and context of the present Motion

### A. Pennsylvania Proceedings

On October 28, 2014, Debtor filed a Complaint against Jason Scott Jordan ("Jordan") in the Berks County, Pennsylvania, Court of Common Pleas seeking recovery on claims of Breach of Contract and Defamation, Berks County Civil docket 14-17117 ("the Berks Matter"). In the Berks Matter, Debtor claimed that Redmond, then sole owner of Debtor, offered employment and ownership interest to Jordan upon assurances that Jordan had a clean criminal history and was licensed to sell insurance; despite said assurance, after entering into an employment and ownership sharing contract with Jordan, it was learned Jordan had a substantial criminal history and was not licensed to sell insurance. Jordan was also alleged to have 2 DUI charges and work performance issues, resulting in Jordan's lack of access to work premises, after which Jordan began making false, defamatory statements against Debtor on social media which damaged Debtor.

Jordan counterclaimed on breach of contract and breach of fiduciary duty, sought an appraiser, and added Redmond as a party. Jordan's claims were for illegal termination and loss of rights as a shareholder of Debtor. After a bench trial was held in September 2021, a Decision and Order of December 20, 2021, that Redmond was liable to Jordan for $8,105,197.20 in

2

compensatory damages, $8,105,197.20 in compensatory damages, for a total amount of $13,105,197.20.

After post-trial motions, on March 31, 2022, Judge Sprecher issued an Amended Verdict, entering judgment in the amount of $13,105,197.20 against "**the Plaintiffs**", including the Debtor, the debtor for whom a stay was and remains in place through this Honorable Court.

On July 28, 2022, Jordan, by and through Joel Reedy, Esq. and Cornerstone Law Firm, filed a civil suit in the Berks County, Pennsylvania Court of Common Pleas against Bene Markets LLC ("Bene"), Redmond, and Stephania Miller ("Miller") asserting a claim of Unjust Enrichment, seeking to pierce Bene's corporate veil, and demanding damages and a receivership, Berks County Civil Docket 22-11757 ("the Pending Matter"). The Pending Matter alleges misappropriation of nearly $4 million of Debtor funds, misappropriation of Debtor's book of business by transferring it to Bene at a discounted rate, and that Bene is simply a continuation of Debtor under another name. In the Pending Matter, Jordan is thus seeking the Debtor's assets in direct violation of the automatic stay.

**B.    Present Bankruptcy Proceedings**

1. The instant Bankruptcy proceeding was initiated by the Debtor's Chapter 7 petition on September 3, 2019. On January 30, 2020, Jordan removed the Berks matter to this Court, docketed as Adversary Proceeding 20-000016. On January 4, 2021, the Honorable Patricia M. Mayer signed a "Consent Order to Remand State Court Claims Against Alan Christopher Redmond to State Court and to Lift Stay for State Court Claims by Jason Scott Jordan Against Alan Christopher Redmond" entered into between Jordan and Chapter 7 Trustee, Robert H. Holber.

3

2. Pursuant to this Consent Order, Jordan was allowed to pursue claims **against Redmond only** as they were not core proceedings involving property of the Debtor's estate:

> Notwithstanding the Initial Stay Relief Order, the automatic stay (including a stay under 11 U.S.C. § 362) is hereby lifted as it applies to claims by Jason Scott Jordan against Alan Christopher Redmond in the State Court Action *provided however that such State Court Action shall not include any claims against the Debtor* or the Trustee nor shall the Trustee be required to participate in any discovery in the State Court action.

Exhibit "E" to Debtor Motion, Consent Order at ¶ 5 (emphasis added). At no point, at any time, for any duration, was the stay lifted as to Debtor or as to property of the Debtor's estate.

## LEGAL ARGUMENT

Intervention is permitted under Bankruptcy Rule 2018(a), under which "the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr. P. 2018(a). On a motion for intervention, the court may consider whether the proposed intervenor's interest is one being adequately represented by another party already in the case, and whether intervention would cause undue delay or prejudice. *In re Beulah Rd. Land Co.*, No. 13-23148-CMB, 2013 WL 6384344, at *1 (Bankr. W.D. Pa. Dec. 5, 2013). Good cause for intervention can be established by demonstrating an "economic or similar interest related to the case." *Id.*

Here, it is apparent that Redmond has an "economic or similar interest" to the issue at hand, namely whether the automatic stay was violated by Jordan and his counsel. While the claims as to Redmond were ruled to not be core proceedings at an earlier phase in these proceedings, the March 31, 2022, Amended Verdict in the Berks County case elevated Redmond's economic interests to those of the Debtor. And the entire gist of the Pending Matter is an attempt to claim that assets of Bene are actually assets of the Debtor—allegations that place the Pending Matter squarely within the jurisdiction of this Court as a "core proceeding." 28

4

U.S.C.A. § 157(b)(2)(o) ("other proceedings affecting the liquidation of the assets of the estate").[1] Redmond has a right to be heard, and to be represented, with respect to any hearing on the motion filed by the Debtor with respect to the violations of the automatic stay and conduct of Jordan and his counsel with respect to this Court, as his interests—economic and as a member or owner of Bene—are implicated by the motion, the Amended Verdict, and the Pending Matter.

Redmond, therefore, seeks leave to intervene, and file his joinder to the Debtor's motion (attached hereto as Exhibit "A").

## CONCLUSION

Redmond respectfully requests that his motion to intervene be granted so that he may take part in consideration of the motion of the Debtor concerning violation of the automatic stay.

BOCHETTO & LENTZ, P.C.

Dated: June 27, 2024            By:    /s/ George Bochetto
                                       George Bochetto, Esquire (27783)
                                       David P. Heim, Esquire (84323)
                                       1524 Locust Street
                                       Philadelphia, PA 19102
                                       (215) 735-3900
                                       gbochetto@bochettoandlentz.com
                                       dheim@bochettoandlentz.com

                                       *Attorneys for Alan C. Redmond*

---

[1] Even should the Court decide that Redmond's interests are not "core," they are certainly related claims that could affect the Debtor's estate, and this Court may make preliminary rulings. *In re Jamuna Real Est., LLC*, 357 B.R. 324, 331 (Bankr. E.D. Pa. 2006) (veil-piercing claims are related to the bankruptcy estate).

## CERTIFICATE OF SERVICE

I, *George Bochetto, Esquire*, hereby certify that a true and correct copy of the forgoing was

filed electronically through this Court's ECF System and is available for viewing and downloading

from this Court's ECF System. I further certify that an electronic copy of the foregoing was served

upon all parties of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Dated:  <u>June 27, 2024</u>          By:    <u>*/s/ George Bochetto, Esquire*</u>
                                           GEORGE BOCHETTO, ESQUIRE

Case 19-45809-pmm Doc 180 Filed 09/09/24 Entered 09/09/24 Desc Main
Document Page 8 of 49

# Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:

NATIONAL BROKERS OF AMERICA,            Chapter 7
INC.

    Debtor.                                          Bankruptcy No. 19-15488-pmm

_____   _____

**<u>INTERVENOR ALAN C. REDMOND'S MOTION JOIN DEBTOR'S MOTION FOR ENFORCEMENT OF THE AUTOMATIC STAY, VACATING OF JUDGMENTS AS VOID, AND ENJOINING JASON SCOTT JORDAN FROM PURSUING CLAIMS IN BERKS COUNTY CIVIL DOCKET 14-17117</u>**

Non-party Alan C. Redmond ("Redmond"), through undersigned counsel, joins in the motion of National Brokers of America, Inc., ("Debtor") to enforce the automatic stay, void the judgments entered in Berks County Pennsylvania against Debtor, Alan C. Redmond, and Bene Market, LLC, enjoining Jason Scott Jordan from pursuing claims against the same in Berks County, Pennsylvania, Court of Common Pleas Civil <u>Docket 14-17117</u>, and issuing sanctions against Joel Ready, Esq. and Cornerstone Law Firm.

                                                **BOCHETTO & LENTZ, P.C.**

Dated:  <u>June 27, 2024</u>      By:   *<u>/s/ George Bochetto</u>*
                                     George Bochetto, Esquire (27783)
                                     David P. Heim, Esquire (84323)
                                     1524 Locust Street
                                     Philadelphia, PA 19102
                                     (215) 735-3900
                                     <u>gbochetto@bochettoandlentz.com</u>
                                     <u>dheim@bochettoandlentz.com</u>

                                   *Attorneys for Alan C. Redmond*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:

NATIONAL BROKERS OF AMERICA,      Chapter 7
INC.

     Debtor.                         Bankruptcy No. 19-15488-pmm

---

### <u>CERTIFICATION OF FEES INCURRED BY INTERVENOR ALAN C. REDMOND</u>

I, David P. Heim, Esquire, hereby certify to the following:

1. I am a licensed attorney in the Commonwealth of Pennsylvania and a partner at the law firm of Bochetto & Lentz, P.C.

2. I represent Intervenor Alan C. Redmond in this matter.  I am submitting this Certification of Fees at the direction of the Court during the July 2, 2024 hearing on the Debtor's Motion for Enforcement of the Automatic Stay [ECF # 179].

3. Mr. Redmond is responsible for the payment for legal fees necessary to file and prosecute the Debtor's Motion to Enforce Automatic Stay ("Motion to Enforce") as well as the fees for his Motion to Intervene concerning that Motion.

4. Mr. Redmond is also responsible for the payment of the legal fees necessary to defend against Jason Jordan's Berks County Action, filed in 2022, against Bene Market LLC and Mr. Redmond, Berks County Civil Docket 22-11757, which, as stated in the Motion to Enforce, and during the July 2, 2023 hearing, was filed in violation of this Court's automatic stay.

5. The fees incurred in connection with the Motion to Enforce, the Motion to Intervene, and to defend Mr. Jordan's Berks County Action, Civil Docket 22-11757, are compensable based on Mr. Jordan's and his counsel's violation of the automatic stay.

6.  A copy of the Docket in Mr. Jordan's Berks County Action is attached hereto as Exhibit "A."

7. A review of the Berks County Docket reveals the action was filed in July 2022 and since that time approximately 70 court filings were docketed, including Preliminary Objections, a hearing on those preliminary objections, an initial Petition for Receiver, a hearing on that Petition for Receiver, a renewed Petition for Receiver, and a hearing on that renewed Petition for Receiver.

8. Mr. Jordan further propounded written discovery in the Berks County Action, which required responses and production of documents.

9. The Final Pre-trial Conference for Mr. Jordan's Berks County Action is scheduled for July 12, 2024.

10. In continued willful violation of the automatic stay, and despite this Court's admonitions that the Berks County Action is in violation of the automatic stay, Mr. Jordan and his counsel continue to litigate that action, having filed a Pre-trial Memorandum as recently as July 9, 2024, a copy of which is attached as Exhibit "B."

11. I performed legal work for Mr. Redmond in both Mr. Jordan's Berks County Action and in this matter in connection with Mr. Redmond's Motion to Intervene and the Motion to Enforce.

12. My hourly rate in 2023 – when I performed legal work for Mr. Redmond in defense of Mr. Jordan's claims in the Berks County matter – was $495.  My hourly rate was increased in 2024 to $525 for all client matters, including Mr. Redmond's.

13. I have been a licensed attorney in the Commonwealth for over twenty-four (24) years since November 1999.  I am a partner at the law firm Bochetto & Lentz, P.C.  My practice is dedicated to litigation matters.  I concentrate on litigating complex commercial litigation matters.  I have appeared in state, federal and bankruptcy courts around the Country.

14. A copy of my firm's detailed time records for the work I and other members of my firm performed for Mr. Redmond in Mr. Jordan's Berks County Action and in this matter is attached as Exhibit "C."

15.  I and other members of my firm spent a total of 31.95 hours in connection with Mr. Jordan's Berks County Action and this matter.  The total attorney's fees incurred in this regard was $16,584.75.  See Ex. C.

16. Aside from myself and my firm, the other attorneys who performed legal services in connection with the Motion to Enforce and to defend Mr. Jordan's Berks County Action, Civil Docket 22-11757 are:   Norman Valz, Esquire, Eric Reed, Esquire, William Rush, Esquire, and Osmer Deming, Esquire.

2

17. Mr. Valz was counsel of record for Mr. Redmond and Bene Market in Mr. Jordan's Berks County matter.  He also is counsel of record for the Debtor in this matter.

18. Mr. Valz has been a licensed attorney in the Commonwealth for thirty-three (33) years since 1991.  Mr. Valz's detailed time records are attached hereto as Exhibit "D."

19. Mr. Valz's payment arrangements are that he is paid a flat rate on a bi-weekly basis for thirty hours of billable work, which amounts to an hourly rate of $ 183.33.  He spent a total of 99.5 hours defending against Mr. Jordan's claims in the Berks County Action and filing and prosecuting the Debtor's Motion to Enforce in this matter.  Mr. Valz's total attorney fees incurred in defending Mr. Jordan's Berks County Action and prosecuting the Motion to Enforce are $18,205, which is reflected in his detailed billing records attached as Ex. D.

20. Mr. Reed represented Mr. Redmond and Bene Market LLC in Mr. Jordan's Berks County Matter.  Mr. Reed was at the time of his representation a partner in the law firm of Fox Rothschild LLP in the firm's commercial litigation department.  Mr. Reed has been a licensed attorney in the Commonwealth for 18 years since 2006.

21. Mr. Reed's detailed time records are attached hereto as Exhibit "E."  His hourly rate was $695.  He was assisted by an associate, Stephanie Ohnona, whose hourly rate was $410.  Fox Rothschild's total attorney fees incurred in defending Mr. Jordan's Berks County Action was $44,929.93.

22. Mr. Rush represents Mr. Redmond and the Debtor and was the primary researcher and draftsman for the Motion to Enforce.  Mr. Rush has been a licensed attorney in the Commonwealth for over thirteen (13) years since 2008.

23. Mr. Rush's detailed time records are attached hereto as Exhibit "F."  His hourly rate is $400.  He spent a total of 35.9 hours researching and drafting the Motion to Enforce.  Mr. Rush's total attorney fees incurred in researching and drafting the Motion to Enforce was $14,360.

24. Mr. Deming represents the Debtor in this action and entered his appearance in this matter on July 1, 2024.

25. Mr. Deming has experience in complex commercial litigation matters, including bankruptcy matters.   Mr. Deming attended the July 2, 2024 hearing.  Mr. Deming has been a licensed attorney in the Commonwealth for twenty-four (24) years since 2000.

3

26. Mr. Deming's detailed time records are attached hereto as Exhibit "G." His hourly rate is $250/hour. He spent a total of 4.6 hours reviewing the Motion to Enforce and bankruptcy docket and attending the July 2, 2024 hearing. Mr. Deming's total attorney fees incurred was $1,150.

27. Based on the foregoing, the total attorney fees incurred in defending Mr. Jordan's Berks County Action and prosecuting the Motion to Enforce are as follows:

- Bochetto & Lentz: $16,584.75

- Norm Valz: $18,205

- Fox Rothschild/Eric Reed: $44,929.93

- William Rush: $14,360

- Osmer Deming: $1,150

**Total Fees: $95,228.93**

28. The above attorney fees were reasonable and necessary to defend Mr. Jordan's Berks County Action – filed in violation of the automatic stay – and to draft, research, file and prosecute the Motion to Enforce.

29. The attorney's rates set forth above are reasonable and consistent with market rates according to each attorney's experience, the level of expertise, and the nature of the engagement.

30. Mr. Redmond as the responsible party for the foregoing attorney fees respectfully requests that the Court enter an Order directing respondents Jason Jordan and his counsel, Joel Ready, Esquire, and law firm Cornerstone Law Firm, jointly and severally, to pay same to Mr. Redmond's counsel, David P. Heim, Esquire, within twenty (20) days based on the willful and continuing violation of this Court's automatic stay.

*/s/ David P. Heim*

Dated: <u>July 10, 2024</u>

_____

David P. Heim, Esquire

4

## <u>CERTIFICATE OF SERVICE</u>

I, *David P. Heim, Esquire*, hereby certify that a true and correct copy of the forgoing was

filed electronically through this Court's ECF System and is available for viewing and downloading

from this Court's ECF System for all parties of record. I further certify that an electronic copy of

the foregoing was served upon the following through this Court's ECF System and via email:

Joel A. Ready, Esquire
CORNERSTONE LAW FIRM
8500 Allentown Pike, Suite 3
Blandon, PA 19510
joel@cornerstonelaw.us
**Counsel for Jason Scott Jordan**

**BOCHETTO & LENTZ, P.C.**

Dated: July 10, 2024 By: */s/ David P. Heim, Esquire*
DAVID P. HEIM, ESQUIRE

# Exhibit AA

# Exhibit AA









# Client Testimonials

"Charles was very helpful. He was knowledgeable and reassuring. He made sure all my questions were answered and I understood my coverage, how to login to view my information and he took the time to ensure I received the documents.

He provided excellent customer service, if it was possible to give him 10 stars ⭐ I would!"

*Rosa A.*

"Very helpful! Got insurance set up right away and at a price we can afford!"

*Emily M.*

"Liz was very pleasant to talk to she took all my info and my questions and concerns, said she would check into what was going on and give me a call back.

Within an hour she called me back and reassured me that we are covered, and gave me and I'd number the claims department said to use. Was so nice to talk with Liz and felt calm after hanging up."

*Ginger K.*

# Exhibit BB

# Exhibit BB



Form Revision Date 07/2016

# ANNUAL STATEMENT
For use by DOMESTIC LIMITED LIABILITY COMPANY

*(Required by Section 207, Act 23, Public Act of 1993)*

| | |
|---|---|
| Identification Number: | 802704059 |

Annual Statement Filing Year:   2024

**1. Limited Liability Company Name:**

BENEFITS NOW, LLC

**2. The street address of the limited liability company's registered office and name of the resident agent at that office:**

1. Resident Agent Name:   CT CORPORATIONSYSTEM

2. Street Address:   40600 ANN ARBOR ROAD EAST

   Apt/Suite/Other:   SUITE 201

   City:   PLYMOUTH

   State:   MI                                   Zip Code: 48170

3. Mailing address of the registered office:

   P.O. Box or Street Address:   40600 ANN ARBOR ROAD EAST

   Apt/Suite/Other:   SUITE 201

   City:   PLYMOUTH

   State:   MI                                   Zip Code: 48170

This annual statement must be signed by a member, manager, or an authorized agent.

Signed this 13th Day of February, 2024 by:

| Signature | Title | Title if "Other" was selected |
|---|---|---|
| Norman M. Valz | Authorized Agent | |
| | | |

By selecting ACCEPT, I hereby acknowledge that this electronic document is being signed in accordance with the Act. I further certify that to the best of my knowledge the information provided is true, accurate, and in compliance with the Act.

jm Decline        jm Accept

# *MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS*

## *FILING ENDORSEMENT*

**This is to Certify that the**  2024  ANNUAL STATEMENT

**for**

BENEFITS NOW, LLC

**ID Number:**   802704059

**received by electronic transmission on**   February 13, 2024   **, is hereby endorsed.**

**Filed on**   February 13, 2024   **, by the Administrator.**

**The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.**



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 13th day of February, 2024.*

*Linda Clegg, Director*
*Corporations, Securities & Commercial Licensing Bureau*

# Exhibit CC

Exhibit CC



Form Revision Date 07/2016

## CERTIFICATE OF ASSUMED NAME
For use by DOMESTIC LIMITED LIABILITY COMPANY

*Pursuant to the provisions of Act 23, Public Acts of 1993, the undersigned execute the following Certificate:*

| | |
|---|---|
| 1. The identification number assigned by the Bureau is: | 802704059 |
| 2. The name of the limited liability company is: | BENEFITS NOW, LLC |

3. The assumed name under which business is to be transacted is:

    DENTAME

This document must be signed by an authorized officer or agent (corporations); a member, manager, or an authorized agent (limited liability companies); or general partner (limited partnerships):

Signed this 10th Day of January, 2023 by:

| Signature | Title | Title if "Other" was selected |
|---|---|---|
| Norman M Valz | Authorized Agent | |
| | | |

By selecting ACCEPT, I hereby acknowledge that this electronic document is being signed in accordance with the Act. I further certify that to the best of my knowledge the information provided is true, accurate, and in compliance with the Act.

      jn Decline     jn Accept

# *MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS*

# *FILING ENDORSEMENT*

**This is to Certify that the**   CERTIFICATE OF ASSUMED NAME

for

BENEFITS NOW, LLC

**ID Number:**    802704059

to transact business under the assumed name of
DENTAME

**received by electronic transmission on**   January 10, 2023   **, is hereby endorsed.**

**Filed on**    January 12, 2023   **, by the Administrator.**

**The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.**

Expiration Date: December 31, 2028



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 12th day of January, 2023.*

*Linda Clegg, Director*
*Corporations, Securities & Commercial Licensing Bureau*

# Exhibit DD

# Exhibit DD

**BOCHETTO & LENTZ, P.C.**
By: David P. Heim, Esquire
Attorney I.D. No. 84323
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
dheim@bochettoandlentz.com

*Filed and Attested by the*
*Office of Judicial Records*
*19 AUG 2024 09:06 am*
*G. IMPERATO*

*Attorney for Defendant/Third-Party Plaintiff*
*Alan Redmond*

|  |  |  |
|---|---|---|
| **COMPLETE BUSINESS SOLUTIONS, GROUP, INC., by and through its court-appointed receiver RYAN K. STUMPHAUSER** | : : : : : | COURT OF COMMON PLEAS, PHILADELPHIA COUNTY |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | FEBRUARY TERM, 2022 |
| **ALAN REDMOND,** | : : : | No. 2794 |
| Defendant/Third Party Plaintiff, | : : | |
| v. | : : : | |
| **JASON SCOTT JORDAN,** | : : : | |
| Additional Defendant. | : : | |

## NOTICE

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia County Bar Association
1101 Market Street, 10th Floor
Philadelphia, PA 19107
Telephone: (215) 238-6300

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requier que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Philadelphia County Bar Association
1101 Market Street, 10th Floor
Philadelphia, PA 19107
Telephone: (215) 238-6300

Case ID: 220202794

**BOCHETTO & LENTZ, P.C.**
By: David P. Heim, Esquire
Attorney I.D. No. 84323
1524 Locust Street
Philadelphia, PA 19102                     *Attorney for Defendant/Third-Party Plaintiff*
(215) 735-3900                             *Alan Redmond*
(215) 735-2455 (fax)
dheim@bochettoandlentz.com

| | | |
|---|---|---|
| **COMPLETE BUSINESS SOLUTIONS,** | : | COURT OF COMMON PLEAS, |
| **GROUP, INC., by and through its** | : | PHILADELPHIA COUNTY |
| **court-appointed receiver RYAN K.** | : | |
| **STUMPHAUSER** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | FEBRUARY TERM, 2022 |
| | : | |
| **ALAN REDMOND,** | : | NO. 2794 |
| | : | |
| Defendant/Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **JASON SCOTT JORDAN,** | : | |
| | : | |
| Additional Defendant. | : | |
| | : | |

## AMENDED JOINDER COMPLAINT

Defendant, Alan Redmond, by and through his attorneys, Bochetto and Lentz, P.C., hereby files the following Amended Joinder Complaint against Additional Defendant Jason Jordan ("Additional Defendant" or "Jordan"), and, in support thereof, avers as follows:

### PARTIES

1.    Defendant and Third-Party Plaintiff, Alan Redmond ("Redmond"), is an adult individual residing in Berks County, Pennsylvania. Redmond is an owner of National Brokers of America, Inc. ("NBOA") and Bene Market LLC ("Bene Market"), which at relevant times hereto operated as an insurance producer selling insurance products in numerous states around the

Case ID: 220202794

Country.

2.      Additional Defendant, Jason Scott Jordan ("Additional Defendant" or "Jordan"), is a resident of Florida, with an address at 10802 NW 56th Ct, Coral Springs, FL 33076-3103.

### JURISDICTION AND VENUE

3.      This Court has specific personal jurisdiction over the Additional Defendant in that the Additional Defendant's acts and conduct giving rise to this Joinder Complaint all occurred in the Commonwealth of Pennsylvania.

4.      Venue is proper in Philadelphia because Plaintiff filed its claims in this judicial district seeking to collect certain debts against Defendant and Third-Party Plaintiff Redmond that were incurred for the benefit of NBOA and/or Bene Market, which are entities that Additional Defendant has claimed an ownership in.

### FACTS COMMON TO ALL COUNTS

5.      Jordan and Redmond each owned 50% of NBOA, which was an insurance producer selling insurance products – mostly healthcare insurance plans – in numerous states around the Country.

6.      In or about 2014, Jordan and Redmond had a falling out, resulting in Jordan leaving the NBOA business, but Jordan claimed he maintained his 50% ownership of NBOA.

7.      Thereafter, Jordan and Redmond engaged in litigation in Berks County, Pennsylvania Court of Common Pleas, Civil Docket # 14-17117 ("Berks Matter").

8.      In the Berks Matter, Jordan asserted counterclaims against Redmond and NBOA for breach of contract, breach of fiduciary duty, and the appointment of an appraisal of NBOA.

9.      The gravamen of Jordan's claims in the Berks Matter were that NBOA and Redmond improperly terminated his employment, "froze" him out of the business in violation of

3

his rights as a shareholder and deprived him of the value of his 50% ownership of the business.

10.     On September 3, 2019, NBOA filed a Chapter 7 bankruptcy in the Eastern District of Pennsylvania, Bankruptcy Docket No. 19-15488-pmm, and the Berks Matter was removed to the Bankruptcy Court under an Adversary Proceeding Docket No. 20-00016.

11.     On January 4, 2021, the Bankruptcy Court entered an Order remanding Jordan's claims against Redmond in the Berks Matter back to the Berks County, Court of Common Pleas. Jordan's claims against NBOA remained stayed.

12.     A bench trial was held in the Berks County matter, after which, on December 20, 2021, Redmond was found liable to Jordan for a total amount of $13,105,197.20.

13.     Redmond filed post-trial motions in the Berks Matter, and the post-trial motions were denied on March 31, 2022, at which time a judgment was entered against Redmond and NBOA in the amount of $13,105,197.20 ("Berks Judgment").

14.     An appeal was filed from the Berks Judgment, but the Pennsylvania Superior Court affirmed.

15.     Thereafter, Jordan applied to the Superior Court to lift the stay of the Berks Judgment, which was granted, permitting Jordan to proceed with execution proceedings based on the Berks Judgment.

16.     Separately, Jordan filed a second civil suit in the Berks County, Pennsylvania Court of Common Pleas, Civil Docket # 22-11757 against Bene Markets LLC, Redmond and Stephanie Miller, asserting a claim of unjust enrichment and a claim to pierce the corporate veil of Bene Markets, which is a company owned by Redmond and Miller ("Berks-Bene Matter").

17.     In the Berks-Bene Matter, Jordan claims an ownership interest in Bene Market, alleges that Bene Market is just a façade for Redmond, that Bene Market's corporate veil should

4

Case ID: 220202794

be pierced, and a receiver should be appointed over Bene Market.

18. The Berks-Bene Matter is pending and is actively being prosecuted by Jordan.

19. Jordan is also actively seeking to execute upon his $13 million Berks Judgment against Redmond, which arose out of Jordan's claim that he was deprived of the value from his ownership of NBOA and that Bene Market is a mere continuation of NBOA and a façade of Redmond.

20. Meanwhile, the Plaintiff in this case – Complete Business Solutions Group, Inc. ("CBSG") – is enforcing a debt of NBOA and Bene Market against Redmond personally, seeking as much as $35 million, pursuant to personal guarantees allegedly signed by Redmond.

21. Redmond's personal guarantee was required for NBOA and Bene Market to obtain much needed financing to continue to operate the business. Such financing was used to generate revenue for the companies, which was the basis upon which Jordan was awarded a judgment against Redmond in the Berks Matter.

22. While Redmond is defending CBSG's claims and disputes CBSG's entitlement to collect the alleged $35 million debt, Jordan nevertheless claims to be a 50% owner of NBOA and apparently claims the same ownership interest in Bene Market as well.

23. To allow Jordan to collect on his $13 million judgment against Redmond – which is based on the claimed value of Jordan's ownership in NBOA and Bene Market – without contributing to satisfying Plaintiff's claimed debt against Redmond personally would be completely inequitable and unjust.

24. NBOA is bankrupt with a pending Chapter 7 proceeding and Redmond is foreclosed from and is not seeking to pursue any claims against NBOA.

25. Bene Market is also not operational and insolvent.

Case ID: 220202794

26.      Jordan claims to be an owner of NBOA and indirectly an owner of Bene Market.

27.      As a claimed owner of NBOA and Bene Market, Jordan should be required to shoulder at least 50 % of the debt that Redmond is being charged to pay by Plaintiff CBSG.

28.      Otherwise, Jordan will be the recipient of the benefit of the financing from CBSG via his $13 million judgment against Redmond but would not have any obligation to pay down CBSG's asserted claims, leaving Redmond exposed to both the $13 million Jordan judgment and the $35 million CBSG claimed debt.

## COUNT I – UNJUST ENRICHMENT

### Redmond v. Jordan

29.      Redmond hereby incorporates the averments of the Joinder Complaint as if same were fully set forth herein at length.

30.      Under Pennsylvania law, "when a person receives a benefit from another, and it would be unconscionable for the recipient to retain that benefit, the doctrine of unjust enrichment requires the recipient to make restitution." *Myers-Macomber Engineers v. M.L.W. Construction Corp.*, 271 Pa. Super. 484, 414 A.2d 357 (1979).

31.      Unjust enrichment occurs where: (1) benefits are conferred on a defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 666 A.2d 327 (1995).

32.      Jordan has been conferred a benefit from Redmond in that he has obtained a $13 million judgment in the Berks Matter against Redmond based on Jordan's claims that Redmond deprived him of his 50% ownership interest in NBOA.

33.      The Berks Judgment, in whole or in part, is based on a valuation of Jordan's

6

Case ID: 220202794

purported 50% interest in NBOA, which he claims he was deprived of.

34. Jordan also claims to have an ownership interest in Bene Market and seeks to pierce Bene Market's corporate veil in the Berks Bene Matter.

35. CBSG claims Redmond is personally liable for approximately $35 million under a personal guarantee, which personal guarantee was required by CBSG in order for NBOA and Bene Market to obtain much needed financing to continue business operations.

36. The financing that was provided by CBSG was used to generate revenue for the companies NBOA and later Bene Market, which is the basis upon which Jordan was awarded a judgment against Redmond in the Berks Matter and claims an entitlement to a judgment against Bene Market in the Berks Bene Matter.

37. Allowing Jordan to retain his $13 million judgment and collect that amount against Redmond, a judgment which is derived from the purported value of Jordan's ownership interest in NBOA and/or Bene Market, while Jordan has no responsibility or obligation to satisfy the debt asserted by CBSG against Redmond, would give rise to a grave injustice.

38. Jordan is seeking to retain his rights to his $13 million judgment without being exposed to any legal responsibility associated with the financing of the companies that, in part, was used as the calculus to arrive at his judgment amount.

39. It would be inequitable for Jordan to retain the benefit of his $13 million judgment without paying any of CBSG's asserted debts that are currently being asserted against Redmond.

40. For Jordan to retain his $13 million judgment against Redmond based on the value of Jordan's purported ownership interest in NBOA and/or Bene Market, while Redmond is simultaneously held personally liable for $35 million of NBOA and Bene Market debts by CBSG, would be unconscionable and the doctrine of unjust enrichment requires Jordan to make restitution

Case ID: 220202794

to avoid such an unconscionable result.

**WHEREFORE**, Redmond, as Third-Party Plaintiff, requests a judgment against Third-Party Defendant Jordan in a sufficient amount such that Jordan is required to make full restitution and/or indemnify Redmond to avoid the unjust enrichment described herein, and that Jordan's $13 million judgment in the Berks Matter be used to off-set any amount found to be owed to Plaintiff CBSG.

## COUNT II – PIERCING CORPORATE VEIL

41.     Redmond hereby incorporates the averments of the Joinder Complaint as if same were fully set forth herein at length.

42.     Jordan claims to be 50% owner of NBOA and Bene Market, the two debtors of the Plaintiff's underlying alleged debts, which are being pursued against Redmond personally.

43.     As aforesaid, NBOA and Bene Market are insolvent and no longer operating.

44.     As a personal guarantor for debts of NBOA and Bene Market, Redmond has rights to be indemnified by NBOA and Bene Market, but because NBOA is bankrupt and Bene Market is insolvent, neither is capable of meeting such indemnity obligations.

45.     To avoid such an unjust result, the corporate veils of NBOA and Bene Market should be pierced such that Jordan, who claims to be an owner of each such entity and is therefore considered an "insider," is required to answer for the indemnity obligations of NBOA and Bene Market to Redmond to the extent Plaintiff's claims are proven and an amount is determined to be owed to Plaintiff. *See, e.g., Mortimer v. McCool,* 255 A.3d 251 (Pa. 2021) (acknowledging equitable nature of veil piercing theory, noting that "Pennsylvania courts' equity powers should not be so restricted" so as to preclude this type of legal claim.); s*ee, also., Judd v. Guye*, 2018 WL 3460435 (Tenn. Ct. App. Jul. 17, 2018)(affirming "insider" veil piercing claim by one 50%

8

Case ID: 220202794

shareholder to hold co-shareholder liable for corporate debt); *Hibbs v. Berger*, 430 S.W.3d 296, 309 (Miss. Ct. App. 2014)("we agree with the *Schattner* court and hold that under 'appropriate circumstances' a minority shareholder may attempt to pierce the corporate veil and impose the corporate obligation upon another shareholder.")

**WHEREFORE**, Redmond, as Third-Party Plaintiff, requests the corporate veils of NBOA and Bene Market be equitably pierced such that a judgment against Third-Party Defendant Jordan be entered in a sufficient amount such that Jordan is required to make full restitution and/or indemnify Redmond to avoid the unjust enrichment described herein, and that Jordan's $13 million judgment in the Berks Matter be used to off-set any amount found to be owed to Plaintiff CBSG.

<div align="right">

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

</div>

Dated: August 19, 2024      By:    */s/ David P. Heim*

David P. Heim, Esquire
*Attorney for Defendant and Third-Party Plaintiff Alan Redmond*

Case ID: 220202794

**VERIFICATION**

I, Alan Redmond, Defendant and Third-Party Plaintiff in the above matter, hereby verify the facts set forth in this Amended Joinder Complaint are true and correct to the best of my knowledge, information and belief.  I am aware that this verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities.


Dated:  August 19, 2024                              */s/ Alan Redmond*_____
                                                     Alan Redmond

Case ID: 220202794

## <u>CERTIFICATE OF SERVICE</u>

I, *David P. Heim, Esquire*, hereby certify that a true and correct copy of the forgoing was

filed electronically through this Court's ECF System and is available for viewing and downloading

from this Court's ECF System. I further certify that an electronic copy of the foregoing was served

upon the following through this Court's ECF System and via e-Mail:

<div align="center">

Gaetan J. Alfano, Esquire
PIETRAGALLO GORDON
ALFANO BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
gja@pietragallo.com
**ATTORNEY FOR PLAINTIFF**

Joel Ready, Esquire
CONERSTONE LAW
8500 Allentown Pike, Suite 3
Blandon, PA 19510
joel@cornerstonelaw.us
**ATTORNEY FOR ADDITIONAL DEFENDANT**

</div>

**BOCHETTO & LENTZ, P.C.**

Dated: August 19, 2024              By:   */s/ David P. Heim, Esquire*
                                           DAVID P. HEIM, ESQUIRE

Case ID: 220202794

# Exhibit EE

# Exhibit EE

J-A13017-23

Filed 01/19/2024

| | | |
|---|---|---|
| NATIONAL BROKERS OF AMERICA, INC. AND ALAN CHRISTOPHER REDMOND | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| JASON SCOTT JORDAN | : : | No. 642 MDA 2022 |
| APPEAL OF: ALAN CHRISTOPHER REDMOND | : : : | |

Appeal from the Order Dated March 31, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
14-17117

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

ORDER

And now this 18 day of January, 2023, we herein grant Appellee's Application to Lift Stay Pending Appeal.  Therefore, we vacate the stay of execution of the judgment entered by the trial court on October 21, 2022. *See* Pa.R.A.P. 1732.


PER CURIAM

---

[*] Former Justice specially assigned to the Superior Court.

J-A13017-23

- 2 -