## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | : |
| | : **INVOLUNTARY CHAPTER 11** |
| **ALAN CHRISTOPHER REDMOND,** | : |
| | : |
| **Debtor.** | : **Bankruptcy No. 24-13093 (PMM)** |
| | : |

**EXPEDITED MOTION OF ALAN CHRISTOPHER REDMOND TO (I) DISMISS THE INVOLUNTARY CHAPTER 11 PETITION BECAUSE IT DOES NOT MEET THE STATUTORY REQUIREMENTS OF 11 U.S.C. §303(b) AND IT IS A BAD FAITH FILING, (II) VACATE THE TEMPORARY RESTRAINING ORDER, (III) REQUIRE A BOND TO BE POSTED BY PETITIONING CREDITORS PURSUANT TO 11 U.S.C. § 303(e), AND (IV) AWARD PUNITIVE DAMAGES AGAINST THE PETITIONING CREDITORS PURSUANT TO 11 U.S.C. §303(i)(2).**

Alan Christopher Redmond, by and through his undersigned proposed attorneys, hereby files this Expedited Motion Requesting this Honorable Court to (I) Dismiss the Involuntary Chapter 11 Petition as a Bad Faith Filing, (II) Vacate the Temporary Restraining Order as entered by this Court on September 10, 2024, (III) require Jason Scott Jordan, Cornerstone Law Firm, LLC and Ethan Shalter to post a bond pursuant to 11 U.S.C. § 303(e), and (IV) Award Punitive damages against Jason Scott Jordan, Cornerstone Law Firm, LLC and Ethan Shalter (the "Dismissal Motion"), and respectfully avers as follows:

## BACKGROUND

1. On September 3, 2024, an involuntary chapter 11 petition (the "Involuntary Petition") was filed against Alan Christopher Redmond (the "Putative Debtor") by Jason Scott Jordan, Cornerstone Law Firm, LLC and Ethan Shalter (collectively, the "Petitioning Creditors").[1]

---

[1] The involuntary petition and TRO Motion, defined infra, contain numerous factual and legal deficiencies and the Dismissal Motion only addresses the most prominent and fatal errors.  The Debtor will raise in his response to the TRO Motion and at time of trial all the deficiencies, falsehoods and legal misstatements and reserve the right to do so.

Additionally, the Putative Debtor is seeking discovery before the hearing scheduled on September 18, 2024 to address the bad faith filing issues only.  The Putative Debtor intends to notice up discovery prior to the hearing and will seek a brief adjournment of the hearing if the case is not dismissed immediately for lack of a third creditor.

1

2.      As required by Official Form 105, the Involuntary Petition includes a statement from each of the Petitioning Creditors that they each hold a claim that is non-contingent and undisputed against the Putative Debtor and the amount of each claim[2] (the "Petitioning Creditors Statement"). *See* D.N 2.

3.      Simultaneously with the filing of the Involuntary Petition, the Petitioning Creditors filed an Ex Parte Motion for Special Relief[3] requesting that this Court grant a temporary restraining order (the "TRO Motion").

4.      The TRO Motion requested the Bankruptcy Court to enter an ex parte temporary restraining order severely limiting the Putative Debtor's activity.  Attached to the TRO Motion were a number of exhibits including an affidavit of Ethan Shalter (the "Shalter Affidavit"), a former employee of Seguro Medico, LLC.

5.      In reliance on the documents attached to the TRO Motion, including the Shalter Affidavit, on September 10, 2024, this Honorable Court entered an order granting in part the TRO Motion (the "Restraining Order").

6.      The Court set a further hearing on Wednesday September 18, 2024 at 10:00 a.m. to determine whether a preliminary injunction should be imposed.

7.      The Shalter Affidavit alleges that he was terminated from his position at Seguro Medico, LLC without any explanation and that he was owed money when he was terminated.

---

[2] Jason Scott Jordan alleges he holds a non-contingent undisputed claim against the Putative Debtor in the amount of $13,105,197.20; Cornerstone Law Firm, LLC holds a non-contingent undisputed claim against the Putative Debtor in the amount $10, 484.50 and Ethan Shalter holds a non-contingent undisputed claim against the Putative Debtor in the amount of $1,036.00. The Petitioning Creditors Statement alleges that the Putative Debtor has less than twelve creditors; this is incorrect and a quick read of the TRO Motion, defined *infra*, supports that the Debtor has twelve or more creditors.

[3] Upon review of the docket, a motion to seal the record was also filed on September 3, 2024 but that motion was denied and an order was entered on the docket on September 4, 2024 requiring the TRO Motion to be filed on the docket.

Shalter Affidavit, ¶¶22 -23.   The Petitioning Creditors rely on his alleged non-contingent undisputed claim to file the Involuntary Petition. *See* D.N. 2.

8.     However, as set forth in the Affidavit of Tonya Hatmaker (the "Hatmaker Affidavit") on August 6, 2024, Ethan Shalter ("Shalter") acknowledged in a letter that his final pay was given to him on August 6, 2024 and he signed an "Exit Mutual Release, Waiver of Rights, Hold Harmless, Covenant Not to Bring Legal or Administrative actions Against Other Party Related to Specific Matters (the "Mutual Release").   A true and correct copy of the Hatmaker Affidavit with the Mutual Release is attached hereto and incorporated herein as Exhibit "A."

9.     The Mutual Release acknowledged that Shalter, one of the three comprising the Petitioning Creditors, was not owed ***any money*** from his employer.   *See* Hatmaker Affidavit Exhibit "A."

10.     Moreover, the Hatmaker Affidavit also makes clear that Shalter was not employed by the Putative Debtor.

11.     Despite signing the Mutual Release, Shalter alleges in the Shalter Affidavit that he is in fact owed money from the Putative Debtor. *See* Shalter Affidavit, at ¶ 23-26.

12.     The Putative Debtor does not want this Court to overlook the simple facts that **SHALTER SIGNED A FALSE AFFIDAVIT.  THE OTHER PETITIONING CREDITORS, UPON INFORMATION AND BELIEF, PARTICIPATED IN THE PREPARATION OF THE FALSE AFFIDAVIT.   ALL ARE JOINTLY AND SEVERALLY LIABLE FOR ACTUAL DAMAGES, PUNITIVE DAMAGES AND ATTORNEYS' FEES.**

13.     As of today's date, the Putative Debtor, as well as several other individuals and companies, are unable to accept any income in cash, unable to pay any expenses in cash, unable to engage in any transfer of property as well as other restrictions per the terms of the Restraining

Order despite the fact that the Involuntary Petition was filed in bad faith and without legal justification.

14.    As set more fully below, the Involuntary Petition must be dismissed as it was filed without the requisite number of creditors.  As set forth above and in the Hatmaker Affidavit, Shalter was never a bona fide creditor as he was never owed any money.  Moreover, the Involuntary Petition was filed in bad faith as it was filed as a tactical maneuver by Jason Scott Jordan ("Jordan") attempting to get payment on his judgment alleging false statements against Putative Debtor.  Based on the facts more fully set forth below, the Putative Debtor requests that this Court immediately dismiss the bankruptcy and, if not dismissed, require the Petitioning Creditors to post a bond in an amount of at least $500,000 to indemnify the Putative Debtor and all the separate and distinct legal entities that have been dragged into this fraudulent bankruptcy, vacate the Restraining Order and grant compensatory damages, attorneys' fees and punitive damages. Regardless of whether the Involuntary Petition is dismissed, the case must stay open for adjudication of contempt, sanctions and bad faith filing for the misconduct of the Petitioning Creditors.

### THE BASIS FOR RELIEF AND THE REASONS THEREFOR

**I.      There Are Not Three Petitioning Creditors As Required  to Commence An Involuntary When A Putative Debtor Has Twelve or More Creditors.**

15.    The Bankruptcy Code's requirements for commencing an involuntary petition are set forth in section 303(b) of the Bankruptcy Code. *See* 11 U.S.C. § 303(b).  Section 303(b)(1) requires that in cases where there are twelve (12) or more creditors of the putative debtor, at least three (3) qualifying creditors that hold non-contingent, undisputed, unsecured claims in an aggregate amount of at least $18,600 join as petitioning creditors to collectively file the involuntary petition.  11 U.S.C. § 303(b)(1).

16.     Here, the filing of this Involuntary Petition was filed with less than the requisite creditors and therefore must be dismissed.

17.     Shalter acknowledged in the Mutual Release that he received his final paycheck on August 6, 2024 and that he is not owed **any money**. *See* Hatmaker Affidavit at Exhibit "A."

18.     Since Shalter does not have any bona fide claim against the Putative Debtor, there are not the requisite creditors needed to initiate the Involuntary Bankruptcy.

19.     Without at least three petitioning creditors, the requirements set forth in section 303(b)(1) of the Bankruptcy Code are not met.   As such, the Involuntary Petition must be dismissed.

**II.     The Involuntary Petition was filed in Bad Faith.**

20.     Even where petitioning creditors have met all of the requirements for filing an involuntary bankruptcy, the bankruptcy case may still be dismissed if it was filed in bad faith. *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 335(3rd Cir. 2015).

21.     Courts have opined that "the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *Id. citing In re Reid,* 773 F.2d 945, 946 (7th Cir.1985).

22.     The Bankruptcy Code's requirement of good faith seeks to prevent improper involuntary filings and "[a]t its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 335 *citing In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 119 (3d Cir.2004).

23.     In order to dismiss an involuntary bankruptcy on the basis of bad faith, "the debtor

5

must show by a preponderance of the evidence that the creditors acted in bad faith." *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 335 *citing In re Petralex Stainless Ltd.,* 78 B.R. 738, 743 (Bankr.E.D.Pa.1987). The Court will use a "totality of the circumstances" standard to determine if bad faith exists. *In re Forever Green Athletic Fields, Inc.*, 804 F.3d at 336.

24.     "In conducting this fact-intensive review, courts may consider a number of factors, including, but not limited to, whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing." *Id.*

25.     In *In re Forever Green Athletic Fields, Inc.*, the Bankruptcy court dismissed the involuntary petition as being filed in bad faith applying the totality of circumstances test and the third circuit affirmed the decision. *Id.* at 337. The court based its decision on a multitude of facts, including that the petitioning creditor, (i) made clear he had a litigation strategy of using "any means necessary to force payment" of his lien, (ii) acted in a way that "ran counter to the spirit of collective creditor action," (iii) used the bankruptcy proceeding to exert pressure on the debtor and gain a personal advantage, (iv) did not conduct any diligence regarding payments to other creditors, and (v) filed the petition days before he was required to file a brief in the related state court proceeding between the parties. *Id.* at 336–37.

26.     Similarly, in reviewing the "totality of the circumstances" surrounding the filing of

6

the Involuntary Petition it is clear that the Petitioning Creditors' filing was done in bad faith. First, they did not meet the statutory criteria for filing the Involuntary Petition. The filing was nothing more than Jordan's attempt to assert pressure on the Putative Debtor and get him to pay his judgment. Jordan made no attempt to determine whether Shalter was a bona fide creditor of the Putative Debtor. If he had made any inquiry, he would have known that Shalter was not a bona fide creditor of the Putative Debtor.

27. Furthermore, Jordan is using the bankruptcy proceeding to exert pressure on the Putative Debtor. The TRO Motion specifically states that Jordan has been unsuccessful in collecting on his judgment. Jordan is attempting to use the bankruptcy proceeding for his own personal gain which should not be permitted.

28. Jordan's motivation for filing the Involuntary Petition runs counter to the spirit of the Bankruptcy Code, equal playing field for all creditors. As referenced in the TRO Motion, Jordan is not the only creditor of the Putative Debtor. Using the filing of the Involuntary Petition to obtain a "leg up" in collecting on his judgment is exactly the type of behavior that the Bankruptcy Code seeks to avoid.

29. Accordingly, the Involuntary Petition should be dismissed as a bad faith filing.

**III.    The Temporary Restraining Order Should Be Vacated**

30. When Courts are determining whether a temporary restraining order should be granted, "the Court 'must be convinced that the following factors favor granting preliminary relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.'" *In re Advanced Marketing Services, Inc.*, 360 B.R. 421 (Bankr. D. Del 2007) *citing*

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578, 586 (3d Cir.2002).

31.     In order for the Petitioning Creditors to be successful in obtaining a temporary restraining order, they must establish that there is a "strong probability of success on the merits of the litigation." *In re Advanced Marketing Services, Inc.,* 360 B.R. at 421.  Here, the Petitioning Creditors do not have a strong likelihood of success as the Involuntary Petition was not properly bought. Thus, the Petitioning Creditors cannot satisfy this prong.

32.     Moreover, the Petitioning Creditors cannot show that they will suffer irreparable harm without injunctive relief.  The Petitioning Creditors must also show "harm which cannot be redressed by a legal or an equitable remedy following a trial." *In re Advanced Marketing Services, Inc.,* 360 B.R. at 428. "The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id. citing Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989). "[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *In re Advanced Marketing Services, Inc.,* 360 B.R. at 428 *citing Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92 (3d Cir.1992). Further, Courts have opined that "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *In re Advanced Marketing Services, Inc.,* 360 B.R. at 428 *citing Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988). "The Third Circuit has also noted 'that a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement.'" *Id. citing Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir.1987).

33.     Here it is clear that money damages will satisfy the Petitioning Creditors.  Jordan is seeking nothing more than an avenue to collect on his judgment.  Shalter lied in his affidavit alleging that money was owed to him when he knew it was not to provide that avenue for Jordan.

Since adequate money damages belies a claim of irreparable injury, the Restraining Order must be vacated.

34.     It is unequivocal that a balancing of the factors show that Restraining Order was not properly entered as it was based on inaccurate facts and blatant lies set forth in the Shalter Affidavit.

35.     More importantly, there was no jurisdictional basis for the Involuntary Petition as it was filed in bad faith and with the knowledge that there were not the requisite creditors needed under the statute.  Without the Involuntary Petition, there would be no legal vehicle to file a TRO.  Therefore, there is no basis for the TRO.

IV.     **Damages Should Be Granted To the Putative Debtor.**

36.     This Court should grant damages, including compensatory damages, reasonable attorneys' fees, and punitive damages, to the Putative Debtor.

37.     The Bankruptcy Code provides for the allowance of damages when an Involuntary petition is dismissed.  *See* 11 U.S.C. §303(i)(1) and (2).

38.     Section 303(i)(2) of the Bankruptcy Code provides, in pertinent part:

if the court dismisses a petition under this section  . . .and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A)  costs; or

(B)  reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith for –

(A)  any damages proximately caused by such filing; or

(B)  punitive damages.

*See* 11 U.S.C. §303(i)(1) and (2).

39.     Courts have granted putative debtors punitive damages when the evidence shows that a petitioning creditor acted "with intentional malice" or that its conduct was "particularly egregious." *See, U.S. Bank, N.A. v. Rosenberg,* 741 Fed Appx. 887, 890 (3rd Cir. 2018).

40.     In the case *In re Skyworks Ventures, Inc.,* the Court awarded costs, reasonable attorney's fees and  punitive damages to the putative debtor where a law firm with unpaid legal fees filed an involuntary petition as a settlement tactic. *In re Skyworks Ventures, Inc.,* 431 B.R. 573 (Bankr. D.N.J. 2010).   The Court opined that the law firm knew their ability to file an involuntary petition was questionable as the claim was subject to a bona fide dispute.   *Id.*at 577. The Court further held that the law firm did not do the due diligence necessary to determine the creditors of the putative debtor and an alternative forum existed to resolve their dispute. *Id.*at 578-579.

41.     Similarly, Petitioning Creditors' actions in filing the Involuntary Petition and TRO Motion were done with the intent to cause harm to the Putative Debtor, any company he had an interest in and any of his associates' companies.  Jordan orchestrated the filing and attached the Shalter Affidavit which contained blatant lies.  Akin to the law firm in the *In re Skyworks* case, Jordan lead the charge to file the Involuntary Petition to apply pressure on the Putative Debtor and get a "leg up" on executing on his judgment.  This is the exact egregious behavior that Courts have opined that punitive damages are warranted.

42.     Accordingly, Alan Redmond respectfully requests this Court enter an order granting an award of compensatory damages, attorney fees' and punitive damages against each of the Petitioning Creditors.

WHEREFORE, Alan Christopher Redmond respectfully requests this Honorable Court to

immediately dismiss the bankruptcy, vacate the Restraining Order and grant an award of compensatory damages, attorneys' fees and punitive damages to Alan Christopher Redmond and against the Petitioning Creditors for their bad faith in filing the Involuntary Petition.

**CIARDI CIARDI & ASTIN**

Dated: September 13, 2024                    By:  _____
Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA 19103
(T) (215) 557-3550
(F) (215) 557-3551
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com
*Proposed Attorneys for Alan Christopher Redmond*