## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

## PETITIONERS' EXPEDITED MOTION FOR SANCTIONS FOR FRAUD ON THE COURT AND FOR RELATED RELIEF

Petitioning Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter file this Expedited Motion, seeking sanctions for fraud on the Court and for related relief, as follows:

## INTRODUCTION

On September 18, 2024, Alan Christopher Redmond called Tonya Hatmaker to the witness stand, the HR Director for Seguro Medico, LLC — a company where Redmond ostensibly is just a "consultant" while he personally guarantees its debts — and the Court relied on her testimony on the question of Ethan Shalter's claim under 11 U.S.C. § 303 and, to the material detriment of Shalter, ruled that his claim was disputed as a result. Hatmaker's testimony was perjury and the purported "Separation Agreement and Release" she offered as true and correct to the Court is a forgery. Petitioners retained a nationally acclaimed expert forensic document examiner, Khody R. Detwiler, who has provided a preliminary report that the "Separation Agreement and Release" submitted at ECF No. 20-1, and as described in Hatmaker's affidavit the Court considered on September 18th, is a collective forgery. In particular, these documents contain what purports to be three signatures of Shalter, but all three signatures are identical, signifying a common source instead of a wet signature, whereas Tonya Hatmaker's signatures in all three places are different. In other words, Hatmaker gave wet signatures with a pen, but Shalter's signatures were copied and

1

pasted by a computer, photocopier, or other device. Hatmaker, testifying under oath, claimed that Shalter signed with a pen and not with any electronic device, which is a physical impossibility and demonstrates she lied under oath to the Court. Shalter never signed these documents, as he testified. Mr. Detwiler's final report is not yet complete and he may uncover more than he already has.

This is relevant now for several reasons. First, we ask the Court to reopen its finding that Shalter's claim is disputed under 11 U.S.C. § 303 and sanction Redmond that his Section 303(b) objection to Shalter's standing as a creditor is forfeited, and that Redmond has further forfeited his "bad faith" claim for dismissal. Second, we ask the Court to impose sanctions for the thousands of dollars that Petitioners have incurred as a result of having to investigate, retain an expert forensic examiner, and prove Debtor's fraud on the Court. Finally, and as further shown in the Grounds for Relief, below, this case has become nasty and we need the Court's supervision.

(1)   Based on Hatmaker's perjury and the forged Separation Agreement and Release, Attorney Albert Ciardi, III, Esquire has, in writing, erroneously accused Attorney Joel Ready of submitting a perjured affidavit by Ethan Shalter, and demanded to take Joel Ready's deposition and asserted that attorney-client privilege is waived on Ciardi's own suggestion and without any court order. Despite the fact that the U.S. District Court for the Eastern District of Pennsylvania has entered a permanent injunction against Alan Christopher Redmond from violating the Fair Labor Standards Act (FLSA), Attorney Ciardi thinks he has enough to pierce the attorney-client privilege of Petitioners. But on September 18, 2024, Redmond testified and his counsel did not ask him one question whether Shalter's testimony was wrong.

(2)   Despite failing to obey a subpoena to produce the original copy of the Separation Agreement and Release into Court on September 18th, counsel for Redmond have declined to produce even a photocopy of their original photocopy for our forensic expert to review. [Exhibit

2

B]. They refuse even to e-mail a PDF of this document or submit a thumb drive with the same and all meta data that we requested.

(3)     Petitioners made discovery easy for Redmond by propounding written discovery requests in lieu of any deposition, including interrogatories asking him to describe what he did with all the $35,000,000+ in assets of Bene Market, LLC, which he caused to cease operations in the middle of litigation in Jason Scott Jordan v. Bene Market, LLC, Alan Christopher Redmond, et al., C.A. No. 22-11757 (C.P. Berks). But his attorney, Nicole Nigrelli, Esquire, has notified Petitioners' counsel in writing that Redmond will not produce documents relating to his transfers of assets, including the ARC Realty, LLC ownership interests that he re-titled in his name and his wife's name as tenancies by the entireties at or before Jordan's $13 million civil judgment, or answer even basic questions of authenticity for documents he signed and filed with the Berks County Court of Common Pleas. Where Redmond has raised a "bad faith" claim for dismissal, the U.S. Court of Appeals for the Third Circuit held as to involuntary petitions that this Court must consider whether "there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets," inter alia. In re Forever Green Athletic Fields, Inc., 804 F.3d 328, 336 (3d Cir. 2015). Thus, Redmond has opened the door for discovery whether he has made fraudulent transfers to avoid paying his creditors or whether he's preferentially paying the creditors he likes while purposefully making himself poor so he doesn't pay the creditors he doesn't like. These facts destroy his "bad faith" claim, and are also relevant on the merits of an order for relief under 11 U.S.C. § 303(h)(1), and he won't participate in discovery as a result.

(4)     Even though Jason Scott Jordan just tested positive for COVID-19, and where they already had an opportunity to subject him to direct- and cross-examination on his claim by forcing him to come into Court on September 18th, counsel for Redmond are demanding that Jordan appear for

3

a deposition and to appear again in Court on October 1st.

(5)     Ethan Shalter is underemployed with responsibilities to a young family, where his car has broken down and where his claim against Redmond is small in amount, Redmond's counsel are still demanding that Shalter be deposed at their Philadelphia office 1.5 hours away, given the requested alternative of taking Shalter's deposition by electronic means.

Accordingly, we need this Court's intervention to set reasonable limits on discovery and to impose sanctions for Redmond's fraud on the Court.

## GROUNDS FOR RELIEF

I.     **Alan Christopher Redmond Obtains a Favorable Ruling from the Court based on Perjury and Forgery.**

A.     **The Separation Agreement and Release Purportedly Signed by Ethan Shalter.**

On September 13, 2024, at ECF No. 20, Redmond filed an Expedited Motion to Dismiss and appended an Affidavit of Tonya Hatmaker. In the Affidavit, Hatmaker asserted under oath and falsely that she conducted an exit interview of Ethan Shalter on August 6, 2024 and during that interview he "signed" documents, i.e., an August 6, 2024 Exit Interview Letter, an Exit Mutual Release form, and a Final Pay Agreement and Release. [ECF No. 20-1, Aff. ¶¶ 4-7]. Her Affidavit references an Exhibit B, being Shalter's final paystub, but it was omitted from the filing at ECF No. 20. Redmond's counsel filed that document at ECF No. 32, incorporated by reference, which is relevant as shown below because it corroborates that Shalter wasn't fully compensated.

Appended to the Hatmaker Affidavit are the same documents she references. These three documents each purportedly contain Shalter's signature. The Court will observe, however, that Shalter's signatures are identical on each whereas Hatmaker's three signatures are different.

By Response to the Motion to Dismiss, Petitioners put Redmond's counsel on notice that the documents Hatmaker submitted were a forgery. [ECF No. 26, at 4].

4

September 18, 2024 was supposed to be a hearing on whether a preliminary injunction should issue. Shortly before, and consistent with their representations to the Court [ECF No. 20 at 1 n.1], Redmond's counsel sought a teleconference with the Court and asked for an adjournment of the hearing. By then, Petitioners' counsel had served subpoenas on relevant witnesses and incurred more than $2,500.00 in process server fees. Redmond's counsel erroneously represented to the Court that we did not satisfy the numerosity of creditors' requirement and obtusely claimed that Subsection (b)(2) of 11 U.S.C. § 303 does not incorporate by reference the requirements of Subsection (b)(1), particularly the exclusion of claims subject to a bona fide dispute for purposes of the 12-Creditor-Rule. The Court granted Redmond's request and adjourned the preliminary injunction hearing and converted September 18th into a hearing on whether the numerosity requirement was satisfied.

On September 18, 2024, Redmond relied exclusively on Tonya Hatmaker's testimony to contradict Shalter's. For instance, when Redmond's counsel called Redmond to the witness stand, they did not ask him one question whether Shalter's testimony was false or erroneous. [See Ex. A, Tr. 60 to 71].

Tonya Hatmaker was called to the witness stand. As further shown below, her testimony contains perjury. She, again, asserted that she conducted an exit interview with Ethan Shalter. [Ex A, Tr. 35:1-24]. She asserted that she handed Shalter "paperwork" consisting of a Separation Agreement and Release. [Id. at 36:10-20]. Petitioners timely objected to any reference to these documents because we subpoenaed and asked for the original. [Id. at 36:19-25 to 37:1-17]. The Court permitted Redmond's counsel to lay a foundation for the documents' admissibility. Hatmaker explained that she has a "copy" of the original documents "sitting on my desk," which she obtained through a copy machine and did not bring into Court. [Id. at 37:19-25 to 38:1-14].

5

Petitioners had served subpoenas on both Redmond and Seguro Medico, LLC for the original documents with any meta data. Hatmaker explained that the documents submitted to the Court at ECF No. 20-1 were scanned by her, using her cell phone, a few days prior at the request of Attorney Heim. [Ex. A, Tr. 38:15-21; Tr. 54:15-25 to 55:1-6]. She has a master document that she prints off her computer at Seguro Medico. [Id. at 45:18-24]. She agreed that she could have produced the original photocopy in her possession if asked by the Court. [Id. at 54:12-14].

Redmond's counsel, Nicole Nigrelli, Esquire, noted an objection to the Court that Redmond asked Ethan Shalter to produce these documents "which was not obtained" [Ex. A, Tr. 38:22-25], when Attorney Nigrelli knew that Shalter contended the documents were forgeries. Petitioners' counsel rejoined that the original copy, sitting on Hatmaker's desk, should have been brought into Court rather than relying on a photo scan by Hatmaker's phone. [Id. at 39:10-17]. Hatmaker admitted she had knowledge of the subpoena to bring these documents before Attorney David Heim—Redmond's personal attorney who also represents Seguro Medico—raised a speaking objection. [Id. at 46:9-25]. The Court informed Petitioners' counsel that, whether there was any willful noncompliance with the subpoena, "I'm not going to allow you to make the [adverse] inference today." [Id. at 47:1-15].

Hatmaker asserted that Shalter signed the Separation Agreement and Release, manually and with a pen and made express that no electronic devices were used:

Q.     [D]id he sign physically with a pen?

A.     Yes.

Q.     Do you remember what kind of pen, blue, black?

A.     I do not.

Q.     But he signed? It wasn't like an electronic signature of some sort, correct?

6

A.    No.

[Ex. A, Tr. 44:1-8]. She said the exit interview and signing consumed less than five minutes. [Id. at 48:19-25 to 49:1-6].

Attorney Heim also questioned Hatmaker:

Q.    Is it your belief, Ma'am, that the copy of the exit interview document that was attached to your affidavit were copies of the original documents that Mr. Shalter signed?

A.    That is correct.

* * *

Q.    Is there any doubt in your mind that the copy of the exit interview documents, which were attached to your affidavit are true and correct copies of the original documents that Mr. Shalter signed?

A.    Yes, sir.

Q.    Okay. And your belief is that Mr. Shalter took the original documents with him out of the building at that time?

A.    That is correct.

[Ex. A, Tr. 52:14-25 to 53:1-17].

Shalter, conversely, testified that there was no exit interview. [Ex. A, Tr. 15:12-20]. He never signed the documents described by Hatmaker. [Id. at 140:18-20]. He testified that his pay stubs regularly omitted necessary information, such as the number of hours worked, which caused him to be concerned about whether he wasn't being fully paid. He voiced that concern to Redmond, among others. [Id. at 28:2-13].

Over Petitioners' objection, the Court admitted into the record Hatmaker's affidavit at ECF No. 20-1 but not the documents attached thereto. [Ex. A, Tr. 148:7-25]. The Court ruled that Jason Scott Jordan and Cornerstone Law Firm, LLC were qualified creditors under 11 U.S.C. § 303(b). Based in part on Hatmaker's perjured affidavit and testimony, the Court further ruled that Shalter's

7

claim was disputed under Section 303(b). [Id. at 179].

**B.     Redmond or His Agents Engaged in Transposition Fabrication.**

As a result of what happened on September 18th, Petitioners retained a nationally acclaimed forensic document examiner, Khody R. Detwiler. He is a member of the American Academy of Forensic Sciences (AAFS) and a member of the Executive Committee of the American Society of Questioned Document Examiners. He is published in his profession, and is a former Vice Chair of the Academy Standards Board for the AAFS.

Mr. Detwiler has begun an examination of the Separation Agreement and Release submitted to the Court at ECF No. 20-1. A final report is not yet ready. However, he has submitted a preliminary report and informed the Court that the three signatures, purportedly of Ethan Shalter, are identical on the Separation Agreement and Release. [Exhibit C]. This is called "transposition fabrication." [Id. at 3]. As a result, the three signatures are collectively not genuine. It is a physical impossibility for human beings to perfectly and manually replicate their own signature in that manner, which means that the purported Shalter signatures were inserted into the documents using a device, whether a computer or photocopier.

**C.     Redmond's Evidence Shows Ethan Shalter was Not Fully Compensated.**

Redmond presented no other evidence to dispute Shalter's employment status or the terms and conditions of his compensation other than his PayCor Statement that Redmond filed with the Court at ECF No. 32. This document, on its face, shows that Ethan Shalter was not fully compensated for his employment.

Redmond's counsel moved for the admission of, and the Court admitted, Ethan Shalter's Affidavit submitted at ECF No. 10-1. [Ex. A, Tr. 150:3-25 to 151:1-12]. Shalter testified, in correction of his Affidavit, that his last day of work was July 25, 2024. [Ex. A, Tr. 11:16-18]. Redmond's counsel did not examine Shalter as to the terms and conditions of his employ, and the

8

Court will observe that the Hatmaker affidavit, likewise, omits Shalter's start date and the terms and conditions of his compensation. Thus, Redmond presented no evidence to contradict Shalter's affidavit relative to this compensation.

In the Affidavit, Shalter swore under oath that his start-date with Seguro Medico was April 15, 2024. [Ex. PD-3, Shalter Aff. ¶ 4]. His hourly rate was $25.00, and he regularly worked in excess of 40 hours a week without overtime compensation. [Id. ¶¶ 11, 15].

Thus, April 15 to July 25, 2024 constitutes 14 weeks and three business days. If one week constitutes at least 40 work hours, then mathematically: ($25.00 x 40 x. 14) + ($25.00 x 8 x 3) = **$14,600.00**. Redmond's PayCore Statement filed with the Court at ECF No. 32 shows that Shalter's gross salary, before any tax withholding is applied, is **$12,109.90**. Thus, Redmond's own evidence demonstrates that Shalter was not compensated fully.

## II.    Redmond's Counsel Want to Put Attorney Joel A. Ready on Trial and Squander Limited Time with Fruitless Depositions, in Philadelphia, of Creditors the Court has Already Ruled as Having Qualified Claims under Code Provision 303(b).

The U.S. District Court for the Eastern District of Pennsylvania, at C.A. No. 5:20-CV-04265-JLS, entered a summary judgment ruling. In respect of Redmond's stewardship of Bene Market, LLC, the District Court determined that Redmond was a statutory employer under the Federal Fair Labor Standards Act (FLSA), had willfully violated Section 7 of the FLSA for overtime pay compensation, Section 6 for Minimum Wage of the FLSA and Section 11(c) for Recordkeeping under the FLSA. [Exhibit E]. Additionally, the District Court entered a permanent injunction against Redmond for any future FLSA violations. [Id. ¶ 12].

Despite Redmond having a judicially determined history of violating employment laws relating to compensation and overtime—and now being subject still to a permanent injunction—Redmond's counsel want to put Attorney Joel A. Ready on trial and unilaterally pierce the attorney-client privilege, by asserting that Shalter's Affidavit is false based on the same perjury

and forgery shown in Part I. On September 16, 2024, Albert Ciardi, III, Esquire wrote to undersigned counsel, "Mr. Ready, You filed a bad faith involuntary [petition] with a non-existent creditor who submitted a false affidavit. The Involuntary petition was the only premature act. You are a witness. Be guided accordingly." [Exhibit F].

Significantly, even though the Court ruled that Redmond had less than 12 creditors and Jordan and Cornerstone Law Firm, LLC hold qualified claims under 11 U.S.C. § 303(b)(2), Attorney Ciardi has asserted that Petitioners' attorney-client privilege is pierced and Attorney Ready should be deposed and called as a witness on October 1st:

> We expect to see all petitioning creditors, **including yourself**, in court on 10/1 where you each will be cross examined. As Mr. Shalter has said his materially false and perjurious Affidavit was procured under the advice of counsel, the privilege is now waived, and we will most certainly address that with both you and him on the stand and at your deposition.

> * * *

> I assume you have advised Mr. Shalter of his right to not incriminate himself which I will do at the inception of the deposition. Please be guided accordingly.

[Exhibit G (emphasis added)]. Attorney Ciardi is continuing Redmond's fraud on the Court, by asserting that Shalter's Affidavit is false based on Hatmaker's perjury and forged documents. Furthermore, where Redmond's counsel moved for the admission of Shalter's Affidavit into evidence on September 18, 2024 [Ex. A, Tr. 150:3-25 to 151:1-12], it's unclear why they have not waived all objections to such Affidavit.

Despite having opportunity to cross-examine Ethan Shalter concerning his claim, Redmond's counsel admitted into evidence Shalter's affidavit on September 18th. It is inappropriate for such counsel to have done that while simultaneously asserting that the affidavit is false. Thus, there's no point in holding a deposition of Shalter at this time. However, we have made Shalter available for deposition by electronic means, but Redmond's counsel are demanding

that Shalter appear at their Philadelphia office on September 26, 2024—despite Shalter's economic hardship and that his car has broken down. It is roughly a two-hour drive from Berks County to counsel's Philadelphia office, an unnecessary hardship given the small amount of Shalter's claim.

Jason Scott Jordan resides in Florida and it is a material hardship to constantly force him to travel to Reading, Pennsylvania, where there is no apparent purpose for his testimony at this juncture. At the hearing on September 18th, Redmond's counsel did not call Jason Scott Jordan, despite demanding his presence. On cross-examination, Redmond's counsel asked Jordan exactly four questions. [Ex. A, Tr. 139:14-25]. Consequently, Redmond's counsel have no good faith basis for further deposing or calling Jordan as a witness. In addition, Jordan has now become sick with COVID-19. But Redmond's counsel are demanding that Jordan appear for a deposition and also appear for the hearing on October 1, 2024. With all due respect, the Court has already ruled that Jordan has a qualified claim under 11 U.S.C. § 303(b). Jordan is a judgment creditor and Redmond may not collaterally attack the judgment. Jordan represented to the Court that he relied on his counsel to conduct an investigation in this case, that he relies on the veracity of Ethan Shalter as to Shalter's own claim, that reliance is made on all 296 pages of exhibits submitted to the Court at ECF No. 10-1, and on all publicly-sourced information such as all court proceedings where Redmond is a party. [ECF No. 50, at 2]. Anything beyond that will involve an invocation of attorney-client privilege and work product doctrine. Jordan relied on his counsel, as Jordan's agent, to investigation this case—most people hire attorneys for that reason. Consequently, any further deposition or hearing testimony of Jordan does not serve any apparent purpose and appears to be an improper attempt to delve into privileged matter.

Despite having opportunity to cross-examine a corporate representative for Cornerstone law Firm, LLC on September 18, 2024, Redmond's counsel are demanding a deposition of such a

representative at their Philadelphia office on September 26th. The Court ruled that Cornerstone

has a qualified claim under 11 U.S.C. § 303(b). What relevance is there at this point? Cornerstone

represented to the Court that it relied on the veracity of Shalter as to his own claim, in addition to

all 296 pages of exhibits submitted to the Court at ECF No. 10-1 and on all publicly-sourced

information about Alan Christopher Redmond, including all court proceedings where Redmond is

a party. [ECF No. 50, at 3]. Anything beyond that will involve an invocation of attorney-client

privilege and work product doctrine.

At a minimum, the Court should hold a teleconference and ask Redmond's counsel to

describe in detail what subjects they want to cover with Jordan and Cornerstone Law Firm, LLC,

and why the evidence provided to them thus far is insufficient. The Court should additionally

require Redmond to pay for any flight and lodging costs if Jordan's in-person testimony is needed.

**III.   Redmond's Counsel are Unilaterally Exempting Redmond from Participation in Written Discovery Whether He is Generally Paying His Debts as the Same Become Due and Whether He Engaged in Fraudulent Transfers to Avoid Paying Creditors.**

With the limited time before October 1, 2024, Petitioner Jason Scott Jordan made this

process easy for Redmond by propounding written discovery requests only. We did not ask for

any deposition of Redmond. Thus, Redmond can cooperate with his counsel in obtaining relevant

records to the merits of the order for relief, namely, whether Redmond "is generally not paying

such debtor's debts as such debts become due," 11 U.S.C. § 303(h)(1).

Additionally, having sought dismissal of the Involuntary Petition on the grounds of bad

faith, Alan Christopher Redmond has opened the door as to the following, non-exhaustive factors

for the Court's consideration:

> the creditors satisfied the statutory criteria for filing the petition; the involuntary
> petition was meritorious; the creditors made a reasonable inquiry into the relevant
> facts and pertinent law before filing; **there was evidence of preferential payments**
> **to certain creditors or of dissipation of the debtor's assets**; the filing was
> motivated by ill will or a desire to harass; the petitioning creditors used the filing

12

to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.

*In re* Forever Green Athletic Fields, Inc., 804 F.3d 328, 336 (3d Cir. 2015) (emphasis added). Accordingly, Petitioners are entitled to discover all information relative to the foregoing.

All written discovery propounded to Redmond's counsel contained a "Notice to Counsel," which quoted the above-noted Third Circuit case and put them on notice that we are entitled to discover records of whether Redmond has engaged in preferential payment of creditors and fraudulent transfers of assets. Despite these notices and the applicable law, Redmond's counsel is unilaterally exempting Redmond from participation in discovery. On September 24, 2024, Attorney Nicole Nigrelli submitted an e-mail in Exhibit H. Attorney Nigrelli stated, "Most, if not almost all, of these requests are not appropriate." [Ex. H, at 1]. Attorney Nigrelli claims our requested material "is not relevant to the dismissal motion before the Court." [Id.]. She claims Redmond will not produce any evidence relative to Shalter's compensation—despite submitting Shalter's Paycor Statement at ECF No. 32.

We served Requests for Admission that Redmond admit the authenticity of the documents at ECF No. 10-1, after Petitioners' counsel notified Redmond's counsel that the same documents are designated as exhibits for admission at the October 1, 2024 hearing. [Exhibit I]. Thus, whether Redmond does not object to authenticity is relevant for October 1st. Attorney Nigrelli, however, has called the RFAs "inappropriate," indicating her client will not answer or will raise a meritless objection without review. [Exhibit H, at 1].

### <u>STANDARD OF REVIEW</u>

Under 11 <u>U.S.C.</u> § 105, bankruptcy courts are on par with Article III courts with the "inherent power" to "sanction abusive litigation practices," Law v. Siegel, 571 U.S. 415, 421

(2014), which is "a scope broader than that of Bankruptcy Rule 9011, including monetary sanctions." Knowles Bldg. Co. v. Zinni (In re Zinni), 261 B.R. 196, 201 (6th Cir. B.A.P. 2001). Fraud on the court is not governed by Bankruptcy Rule 9011, the latter relates to papers presented to the court rather than setting aside a judgment or ruling procured by fraud, Fed. R. Civ. P. 60(b)(3), or fraud on the court, Fed. R. Civ. P. 60(d)(3). The difference between Civil Rule 60(b)(3) and (d)(3) is that the former more liberally applies upon a showing that the adversary "engaged in fraud or misrepresentation that prevented the movant from fully and fairly presenting his case." Williams v. Living Hope Southeast, LLC (In re Living Hope Southwest Med. Servs., LLC), 525 B.R. 95, 102 (8th Cir. B.A.P. 2015) (quotation omitted).

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobile Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989) (citations omitted). The judiciary possess "inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." Id. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991).

"Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms," such as forgery, perjury, unsworn falsification, or "gross misbehavior," Aoude, 892 F.2d at 1118-19, where used either to obtain a court action or where the conduct "had not yet ripened into the subversion of justice that would have been the result" if not found out, Commonwealth v. Orie, 33 A.3d 17, 26 (Pa.Super. 2011); Commonwealth v. Harper, 890 A.2d 1078, 1082 (Pa.Super. 2006). An evidentiary hearing is necessary before any monetary sanctions can be imposed;

otherwise, "Where the sanctionable conduct occurred in the presence of the court, there are no issues that a hearing could illuminate and hence the hearing would be pointless." Kapco v. C & O Enter., 886 F.2d 1485, 1494-95 (7th Cir. 1989); Rogal v. Am. Broadcasting Companies, 74 F.3d 40, 45 (3d Cir. 1996). A balancing test is unnecessary, because courts "can order dismissal or default where a litigant has stooped to the level of fraud on the court." Aoude, 892 F.2d at 1119.

## ARGUMENT

I.   **After Holding a Hearing, the Court Should Vacate Its Ruling that Ethan Shalter Holds a "Disputed" Claim and Impose Sanctions on Redmond, Including Forfeiture of His "Bad Faith" Claim.**

As shown in the Standard of Review, above, the Court is obligated to give Redmond a hearing on this question of sanctions for fraud on the Court by submitting Tonya Hatmaker's perjury, including her Affidavit that references the forged documents, and for attempting to admit into the record her forged documents, and the Court may do so on October 1, 2024. We will present the expert testimony at that hearing of Khody R. Detwiler, our forensic document examiner. But for the forgeries and perjury obtained by Redmond, Petitioners would not have incurred the substantial costs of hiring Mr. Detwiler. It bears mention, and the Court should find it highly relevant, that at the hearing on September 18, 2024, Redmond's counsel called Redmond to the witness stand and did not ask him one question whether Ethan Shalter's testimony was false. Redmond admitted that Jesus Barrios is a vice president of Seguro Medico; but Redmond stopped short of telling the Court who is the President of Seguro Medico—leaving Shalter's Affidavit uncontested that Redmond, himself, is the President. Thus, Redmond had nothing to contradict Shalter's testimony than Hatmaker and her forged documents—and Redmond's counsel moved for the admission of Shalter's Affidavit into the record as substantive evidence, thereby waiving any objections to the competency of that evidence. Without Hatmaker's perjured testimony and her forged documents, Redmond offered the Court no evidentiary basis to determine that Shalter's

15

claim was disputed under 11 U.S.C. § 303(b).

In addition to sanctions, the mere facts of the forgery and perjury are also probative under 11 U.S.C. § 303(b). That Redmond committed fraud on the Court by forgery and Hatmaker's perjury are indicia of Redmond's control over Seguro Medico while purportedly holding himself out as a "consultant." These crimes benefited Redmond only; there was no benefit to Seguro Medico. In fact, Hatmaker admitted that Seguro Medico offered no consideration for the Release that Shalter purportedly signed and the last paycheck was already owed to him. [Ex. A, Tr. 43:12-16]. Thus, the Release was unenforceable on its face. It is unusual in general for a business to break the law by committing forgery and perjury in a court proceeding, much less for the personal benefit of one who is merely a consultant. Thus, the fraud on the court, here, has a tendency to prove Redmond's control over Seguro Medico, as Ethan Shalter had originally told the Court. Shalter, therefore, was telling the truth.

Because the Court's subject-matter jurisdiction is independently conferred under 28 U.S.C. § 157(b)(1), "The requirements of section 303(b)" of the Bankruptcy Code "'are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings.'" *In re AMC Investors, Inc.*, 406 B.R. 478, 482 (Bankr. D. Del. 2009) (quoting Rubin v. Belo Broad. Corp. (*In re Rubin*), 769 F.2d 611, 614 n.3 (9th Cir. 1985)). Therefore, a debtor can waive or forfeit by wrongdoing any standing requirements under Section 303 of the Code if "there is fraud, trick, artifice or scam by an alleged debtor." *In re Moss*, 249 B.R. 411, 424 (Bankr. N.D. Tex. 2000) (requirement of three petitioning creditors forfeited). "[T]his approach is consistent with the implicit requirement that both debtors and creditors act in good faith in the context of involuntary cases." 2 COLLIER ON BANKRUPTCY ¶ 303.14[8].

16

Under Civil Rule 60 and the Court's inherent power, including 11 U.S.C. § 105, the Court should vacate its ruling on September 18, 2024 that Shalter's claim is "disputed," and sanction Redmond by forfeiting his challenge to Shalter's Section 303(b) standing to have filed the Involuntary Petition and further forfeiting Redmond's claim of "bad faith." It's well settled that he who seeks equity must practice equity. Where Redmond has been adjudicated in the U.S. District Court for the Eastern District of Pennsylvania for having violated the Federal Fair Labor Standards Act (FLSA) and Redmond is now subject to a permanent injunction against further FLSA violations, and where Redmond's own evidence (as shown in the Grounds, Part I.C, supra) demonstrates that Shalter was not fully paid by Seguro Medico, LLC and Redmond's counsel presented no contrary evidence of Shalter's compensation at September 18th, Redmond's claim to "bad faith" was already untenable. Shalter's Affidavit, which Redmond's counsel moved into evidence on September 18, 2024 and had thereby waived all objections to the same, sets forth the factual basis for Redmond's control over Seguro Medico, including the fact that Redmond conducted the interview of Shalter, made the hiring decision, and exercises supervision over employees as a manager. That brings Redmond within the meaning of a statutory employer under the FLSA and Wage Payment and Collection Law, whether he claims to be a consultant or not. See, e.g., 43 P.S. § 260.2a (definition of "employer"); In re Konidaris, 87 B.R. 846, 853 (Bankr. E.D. Pa. 1988); 29 U.S.C. § 203(d) (Fair Labor Standards Act). Redmond doesn't escape that determination simply because someone else cut a paycheck to Ethan Shalter.

In addition to the perjury and forgery already described, Redmond's "bad faith" claim was a meritless contention to begin with. At the same hearing on September 18th, 2024, the Court received into evidence Redmond's answers to interrogatories in aid in execution in the Berks County Court of Common Pleas. Those answers contain materially false statements about

17

Redmond's assets as well as the number of creditors that he had. As a matter of law, "bad faith" is not shown where the debtor misrepresented "in the state court proceeding" the number of creditors. *In re* R&A Bus. Assocs., 1999 U.S. Dist. LEXIS 15903, at *11 (E.D. Pa. Oct. 14, 1999).

Before the same judge of this Court is the case of *In re* National Brokers of America, Inc., Case No. 19-15488-PMM. The Court may judicially notice its own docket, at ECF No. 179, at Page 10-12, where NBOA asked the Court to extend the automatic stay for the benefit of Redmond. [Exhibit J]. Redmond controls NBOA and is its president. On the same docket, at ECF No. 189, Redmond moved to intervene and **joined** in NBOA's request for extending the automatic stay for his protection. [Exhibit K].

Finally, by asking the Court to adjourn the TRO hearing, Redmond soaked Petitioners with more than $2,500.00 in costs for service of process of subpoenas for that hearing and forced Jason Scott Jordan to undertake unnecessary travel expenses to come into Court on September 18th, where Redmond did not even call Jordan as a witness and did not engage in any meaningful examination of Jordan. At that hearing, Redmond's counsel conceded during oral argument that Jordan was a judgment creditor: "That's fair, Your Honor. . . we're not disputing that he has a judgment." [Ex. A, Tr. 163:5-13]. Precisely why Jordan should not have been forced to be there. Redmond should be sanctioned for such costs that we will prove to the Court on October 1st.

Based on the foregoing, sanctions are warranted here.

II. **If Redmond Will Not Participate in Written Discovery, by Producing Corroborating Evidence Whether He is Paying His Debts as They Become Due and Whether He is Fraudulently Transferring Assets to Make Himself Poor, Then He Can be Sanctioned with Judgment Entered against Him as a Sanction.**

With the limited time before October 1st, we made this process very easy for Redmond. We did not ask for any deposition. Instead, we submitted a Request for Documents, Request for Interrogatories, and Request for Admissions. Briefly stated, the Court will readily see that these

requests are reasonably calculated to be responsive to the essential elements of whether Redmond was generally paying his debts as the same became due under 11 U.S.C. § 303(h)(1) and in rebuttal to his bad faith claim whether he is engaged in preferential treatment of creditors, fraudulently conveying assets to make himself poor, or both, which the U.S. Court of Appeals for the Third Circuit expressly held are relevant factors as applied to involuntary petitions. *In re* Forever Green Athletic Fields, Inc., 804 F.3d 328, 336 (3d Cir. 2015). Where Debtor's counsel asserts that it is not relevant whether Redmond engaged in fraudulent transfers, the Third Circuit expressly held otherwise and stated the bankruptcy courts must consider whether "there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets," inter alia. Id. Redmond is not free to cherry-pick the factors articulated in Forever Green Athletic Fields.

For the Requests for Production of Documents ("RFP") [Exhibit L], we asked for Redmond's employment contracts, whether he's called a consultant or not (No. 6). We asked for payment information relative to Ethan Shalter (Nos. 1-4). We asked for the original copies of the forged documents with any meta data (No. 5). We asked for all documents relative to the disposition of assets of Bene Market, LLC and any transfers that Redmond made to his wife or any relatives (Nos. 7-10). We asked for documents of all transfers by Redmond to the Alan Redmond Charitable Foundation (No. 11). We asked for Redmond's federal income tax returns from 2020 through the present with all schedules (No. 12). For all of Redmond's undisputed creditors in this proceeding, we asked for all documents evidencing his payment of those debts and any contracts or contract modifications with those creditors (Nos. 16-17). For Redmond's delinquent tax liens, we asked for all documents relative to the tax liability determination (No. 18). We asked for copies of the internal governing documents, including LLC operating agreements, for the entities associated with Redmond, including ARC Realty, LLC—where he purportedly

retitled ownership into his name and his wife as tenancies by the entireties (No. 19).

None of that information was burdensome, and much of it overlapped with our interrogatories in aid of execution which were propounded on Redmond more than half a year ago. Furthermore, even as a consultant, Redmond provides managerial authority and works with Tonya Hatmaker at Seguro Medico, LLC. Redmond, therefore, has access to Shalter's employment records and can produce the same.

For the First Set of Interrogatories [Exhibit M], we carefully asked Redmond to describe when his debts became due for his List of Creditors he filed with the Court at ECF No. 48 (No. 1). We asked him to describe in detail his disposition of all assets of Bene Market, LLC (No. 2). We asked him to describe in detail all transfers of assets to himself and his wife as tenancies by the entireties or to his wife only or to any entity his wife owned (No. 3). We asked him to describe his relationship with Seguro Medico, LLC, Arthur W. Walsh, Jr. and several insiders (No. 4). We asked him to identify all business entities that he currently owns or where he has managerial authority, and to identify the jurisdiction where that entity is organized and an address for service of process (Nos. 5-6). We asked about his bank accounts, his current sources of income and compensation (including compensation in-kind), financial assets. (Nos. 6-9). These are substantially the same information we asked in the interrogatories in aid of execution in the Jordan Case before the Berks County Court of Common Pleas. Again, Redmond had more than half a year to have prepared answers to these questions.

By letter to Redmond's counsel [Exhibit I], Petitioners re-designated all 296 pages of exhibits at ECF No. 10-1 as exhibit that will be offered into evidence on October 1, 2024. We therefore propounded a Request for Admissions [Exhibit N], asking Redmond whether he contests the authenticity of any of these documents. Our Interrogatories, likewise, asks him to describe the

factual basis of his contention against authenticity if he won't admit the same. The purpose here is to conserve the Court's time on October 1st for exhibits that should be undisputed, particularly where the same are signed by Redmond or submitted by his counsel. If Redmond's counsel will not stipulate to the admissibility of these documents, then RFAs are warranted here.

For Redmond to use his counsel to unilaterally exempt himself from having to produce responsive documents that go directly the merits of Section 303(h)(1) and his "bad faith" claim, the Court can sanction Redmond by deeming his contentions under both to waived, if he does not fully and completely respond to all discovery requests.

## III.    The Court's Supervision over Discovery is Necessary Here.

The Court should hold an immediate conference call to resolve the problems described in this Part. Redmond cannot exempt himself from discovery or engage in misdirection and fraudulent assertions that Petitioners have lost the attorney-client privilege due to the forgeries and perjury of Redmond's own evidence. "In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure," id. (quotation omitted), such as "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). "The injury must be shown with specificity," and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Pansy, 23 F.3d at 786 (quotation omitted). "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order" mains on the party seeking closure. Id. at 786-87.

21

**A.      The Court Should Compel Production of the Original Copy of the Separation Agreement and Release, together with Meta Data.**

Redmond's counsel refuse to provide Petitioners' counsel with a copy of the original photocopy that Hatmaker had in her possession of the purported Separation Agreement and Release, which our expert maintains are forgeries. They could do that right now, and will not. The Court should compel that production, including a thumb drive with all meta data, for the inspection of our forensic document examiner.

Trying to duck this request, Redmond's counsel assert that Redmond is not Seguro Medico. The objection is meritless: Redmond was the party who submitted the forged and perjured evidence to the Court, which created his duty to authenticate and justify the admissibility and veracity of the same. Based on Shalter's Affidavit, which Redmond's counsel admitted into the record on September 18th as substantive evidence, Redmond has managerial authority over Seguro Medico's employees, holds himself out as the President of Seguro Medico, and has access to employee records. Furthermore, Redmond produced Shalter's PayCor Statement at ECF No. 33, showing his access to employment records and, at the minimum, the voluntary cooperation of Seguro Medico, LLC.

**B.      Attorney Joel A. Ready is Not a Witness.**

On this record, Redmond has not overridden Petitioners' attorney-client privilege and Attorney Joel A. Ready is not a witness here. Redmond cannot, on his own suggestion, override the privilege and pierce it by continuing the fraud on the Court through the forgeries and perjury of Hatmaker. Redmond is subject to a permanent injunction in the U.S. District Court for the Eastern District of Pennsylvania against further violations of the Fair Labor Standards Act. On September 18th, the Court received evidence of Redmond's perjury and materially false answers in his response to interrogatories in aid of execution in the Berks County Court of Common Pleas.

No evidence has been shown to prove that what Ethan Shalter said was incorrect. On the contrary, Redmond's own Paycor Statement shows that Shelter is underpaid. [Grounds for Relief, Part I.C, supra]. In fact, when Redmond's counsel called Redmond to the witness stand on September 18, 2024, they did not ask him one question whether Shalter's testimony was false or erroneous. [See Ex. A, Tr. 60 to 71]. It is bizarre that Redmond's counsel would have admitted Shalter's Affidavit into the record as substantive evidence on September 18, 2024, only to afterwards claim it is false. If it was hypothetically false, then Redmond had a duty to object and keep it out of the record. But by bringing it in, Redmond admits it was substantive evidence the Court was free to consider under the weight of the evidence.

C.     **Ethan Shalter and Cornerstone Law Firm, LLC Can be Deposed by Electronic Means or at Cornerstone Law Firm's Blandon Office.**

Given the low amount of Shalter's claim, his lack of financial resources, that his vehicle has broken down, and his obligations to care for his family as a young father, it is an unnecessary hardship for Shalter to travel at least 1.5 hours one-way into Philadelphia. Opposing counsel can depose Shalter by electronic means or travel to Blandon and use Cornerstone Law Firm's office for deposition. Furthermore, the Court should clarify there is no waiver of attorney-client privilege on this record and direct Redmond's counsel to respect the privilege.

Cornerstone Law Firm, LLC's corporate representative, likewise, can be deposed by electronic means. It is an unnecessary hardship for our representative to travel at least 1.5 hours one-way into Philadelphia.

D.     **There's No Reason to Keep Compelling the Attendance of Jason Scott Jordan or, Alternatively, Redmond Should Pay for Travel and Lodging Expenses.**

Jordan is presently sick with COVID-19. He resides in Florida. He is a judgment creditor and Redmond may not collaterally attack the judgment. Jordan relied on his counsel to conduct the investigation in this case. Ordinary people regularly hire lawyers for that purpose. Jordan relied

on the veracity of Ethan Shalter for Shalter's own claim, in addition to all 296 pages of exhibits at ECF No. 10-1, as well as all publicly-sourced information, including court cases where Redmond is a party. We have shown the Court that Redmond has a permanent injunction against him for violations of the Federal Fair Labor Standards Act (FLSA).

While Redmond has not shown the relevance of any further testimony of Jordan at this time, at a minimum the Court should authorize him to testify by electronic means on October 1, 2024. Alternatively, the Court order Redmond to reimburse Jordan for all travel and lodging expenses for the hearing on October 1, 2024.

## **CONCLUSION**

**WHEREFORE**, based on the foregoing, Petitioners request that the Court schedule the determination of this Motion for October 1, 2024, where Debtor has an opportunity to respond, and then enter the following relief:

(1)     Sanction Debtor for the costs of investigation of the forgeries and perjury described in the Motion and which Debtor submitted at ECF No. 20-1 and at the September 18, 2024 hearing, including the cost of hiring forensic document examiner, Khody R. Detwiler, and all costs for service of process of subpoenas for the TRO hearing that was originally scheduled for September 18, 2024, and for the travel costs of having Jordan attend a hearing on September 18, 2024.

(2)     Sanction Debtor by vacating the Court's ruling on September 18, 2024, that Ethan Shalter's claim was "disputed" and holding that Debtor has forfeited any challenge to Shalter's standing under 11 U.S.C. § 303(b) and has further forfeited Debtor's "bad faith" claim for dismissal.

(3)     Compel Debtor to give full and complete answers to Jason Scott Jordan's First Set of Requests for Production of Documents, First Set of Interrogatories, and First Request for Admissions and, if Debtor fails to do so, sanction Debtor by holding that he has forfeited any

24

challenge under 11 U.S.C. § 303(h)(1) and enter an order for relief as a result.

(4)    Compel Debtor to immediately provide to Petitioners' counsel an electronic copy of the original photocopy of the purported Separation Agreement and Release that Debtor had submitted at ECF No. 20-1, and to provide a thumb drive with all related meta data to those documents.

(5)    Hold a conference call with the parties and, after affording the parties an opportunity to be heard, grant protective relief as follows: All depositions before October 1, 2024 will be had by electronic means or at Cornerstone Law Firm, LLC's Blandon office; Petitioners' attorney-client privilege and work product doctrine are preserved and may not be inquired into by Debtor's counsel; Jason Scott Jordan is authorized to testify by electronic means if called by any party on October 1, 2024; and Attorney Joel A. Ready is not a witness and may not be called as such, whether by deposition or at the October 1, 2024 hearing.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: September 25, 2024          By:    /s/ Joel A. Ready
                                          Joel A. Ready, Esquire
                                          PA Attorney I.D. # 321966
                                          8500 Allentown Pike, Suite 3
                                          Blandon, PA 19510
                                          (610) 926-7875

25