**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN'S RESPONSE IN OPPOSITION TO DEBTOR'S APPLICATION TO EMPLOY RUSH LAW GROUP AS SPECIAL COUNSEL NUNC PRO TUNC**

Objecting creditor, Jason Scott Jordan, files this Response in opposition to Debtor's Application to Employ Rush Law Group as Special Counsel Nunc Pro Tunc (the "Application") and submit the following:

**FACTS**

On October 17, 2024, a grand jury indicted Debtor for six counts under 26 U.S.C. § 7202 under an allegation that, while operating Bene Market, LLC, he aggregately withheld $1,068,680.47 in federal income taxes from employees but did not remit the same to the U.S. Government. [Exhibit A, Doc. 1 (Unsealed Indictment), United States v. Alan Redmond, Crim. A. No. 5:24-CR-00376-JLS (E.D. Pa. Oct. 17, 2024)]. That $1,068,680.47 remains unaccounted for. The Court may judicially notice from the docket in that case that William Rush, Esquire, entered his appearance for the Debtor and signed the Conditions of Release Order [Exhibit At, Doc. 7], but did not apply to this Court to approve his representation in that case.

On October 29, 2024, the Debtor made a p*ro se* submission in this case as hybrid representation. In particular, while the Application is e-filed and noticed by Ciardi Ciardi & Astin, the Application is not itself signed by such counsel but by Debtor himself. [See ECF No. 103 at 3]. The Application discloses that payments were made to Rush Law Group within 90 days pre-

Petition. But the Application does not disclose the amount or the source of such payments to Rush Law Group—whether payments were made by Debtor, by his spouse, or by another person. The Application appends a Declaration from Attorney William Rush. In the Declaration, Attorney Rush discloses that his firm received three payments totaling $25,000.00. [ECF No. 103-2 ¶ 5]. He does not disclose the source of the payments, e.g., Debtor, his spouse, or another person, or the manner of the payments, e.g., check or cash. [See id.]. Neither does Attorney Rush disclose any invoicing for services rendered. On the surface, the payments to Rush Law Group are rounded figures and appear to be retainers for litigation, not payments for services rendered. For instance, Attorney Rush provides that, on August 30, 2024, his firm received $5,000.00 payment for representation in WBL-SBO II v. Alan Redmond, C.A. No. 23-13390 (C.P. Berks). [Id.]. From the docket in that case, attached as Exhibit B, the Court may judicially notice that Attorney Rush did not enter his appearance in that case until September 4, 2024. [Exhibit A (entry for Sept. 4, 2024)].

Additionally, the litigation disclosed indicates that Debtor was less than forthcoming about his debts on his Schedules. In Debtor's Schedules (Official Form 107), Question 6 inquired, "During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?" Debtor answered, "No." [ECF No. 75, at 25]. On Question 16, Debtor was asked whether he owns or has an interest in "cash." He answered, "No." [Id. at 10]. At trial on the order for relief, Debtor represented to the Court, "I don't have a bank account," and "I haven't had a bank account for about a year and two months." [Exhibit C (Tr. 127:1-7)]. Consequently, unless Debtor committed perjury, he maintains that he did not personally pay Rush Law Group, did not have any cash, and did not have any bank accounts. So, how did Rush Law Group obtain $25,000?

In the Application, Debtor discloses ongoing "custody and support" litigation involving his former wife at Redmond v. Redmond, C.A. No. 2016-0917 (C.P. Montgomery). But he didn't

2

disclose any outstanding child support arrears on his Schedules. As seen at ECF No. 85, at 8, Question 6a directed Debtor to disclose his "Domestic support obligations." He reported "$0.00."

In the Application, no representation is made to the Court whether Debtor, or his counsel, attempted to seek concurrence from the Assistant U.S. Trustee before filing the same. The Debtor's Section 341 Initial Interview is scheduled for November 22, 2024 at 10:45 a.m. [ECF No. 101].

## ARGUMENT

This Application contains serious indicia of fraud on the Court and, potentially, fraud on the Government of the United States, and no representation is made whether the concurrence of the Assistant U.S. Trustee was sought here. On his Schedules and from his testimony in Court, Debtor maintains he doesn't have any cash, doesn't own any bank accounts and, for the past 1.5 years, did not own any bank accounts, and did not personally pay any creditor within 90 days pre-Petition. So, how did Rush Law Group obtain $25,000? Where did that come from? If Debtor used any amount of the $1,068,680.47 that he failed to pay over to the U.S. Government as payments for his personal defense in private litigation, then the Court cannot approve this request. Debtor holds such money as a special fund for the Government of the United States. 26 U.S.C. § 7501. Under the Bankruptcy Code, he is therefore a constructive trustee and the money is not part of the bankruptcy estate but, rather, subject to turnover. 11 U.S.C. § 541(d); Remington Rand Corp.—Delaware v. Business Sys., 830 F.2d 1260, 1269 (3d Cir. 1989) ("A trustee may be required to turn over to the beneficiary of a state law constructive trust the property that the debtor holds subject to such a trust."). Thus, Debtor is duty-bound to recover from Rush Law Group and turnover to the Government any amounts traceable to the $1,068,680.47 as a special fund.

Second, this Application is inappropriate "hybrid representation" in violation of 28 U.S.C. § 1654. "This section does not confer a right upon a party" to represent himself and by counsel

3

"simultaneously, which is often called 'hybrid representation.'" *In re* Trinsey, 115 B.R. 828, 833

(Bankr. E.D. Pa. 1990). The Application is signed by Debtor but not by his counsel, the latter only

noticing and e-filing the same, which is a violation of Fed. R. Bankr. P. 9011. Under that rule,

counsel must sign every petition, pleading, written motion or other paper filed in this Court to

ensure "that to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances," the request "is not being presented for any improper

purpose," the request is "warranted by existing law" or a nonfrivolous argument for modification

of such, there is evidentiary support or likely evidentiary support for the reason "after a

representable opportunity for further investigation or discovery, etc. Fed. R. Bankr. P. 9011(b).

The entire object of having Ciardi Ciardi & Astin appointed was that Debtor is currently a debtor-

in-possession and subject to the same duties as a trustee. 11 U.S.C. §§ 327(a), 541(a) ("The

commencement of a case . . . creates an estate"), 1107(a) (debtor is subject to same duties as

trustee). With the client as a debtor-in-possession, Debtor's counsel are obligated to investigate

the merits of the Application, including the source, manner, and purpose of the payments to Rush

Law Group, to ensure such Application is not fraud on the Court and to determine if such are

preferential payments under 11 U.S.C. § 547 or subject to other provisions relative to avoidance,

turnover, "strong arm" powers, or claw back under Chapter 5 of the Code. The involvement of

Ciardi Ciardi & Astin is indispensable in involuntary cases, like this one, because "the debtor in

possession has little or no interest in being in bankruptcy and may have little incentive to act openly

and candidly with the court and parties in interest." Rushton v. Woodbury & Kesler, P.C. (*In re* C.

W. Mining Co.), 440 B.R. 878, 885-87 (Bankr. D. Utah 2010) (involuntary Chapter 11). These

same difficulties are present here and Debtor requires supervision by his counsel. Independent

counsel, as appointed by the Court, is necessary where, as here, "[d]ue to the lack of alignment of

4

incentives, a court must ensure compliance by all parties with the Bankruptcy Code." Id.

Accordingly, Ciardi Ciardi & Astin cannot circumvent its statutory and judicial duties to reasonably investigate the Debtor's requests by having Debtor sign the Application instead of counsel. Given Debtor's history of giving false, incomplete, or misleading statements under oath or unsworn falsification to authorities, Ciardi Ciardi & Astin is obligated to look for evidence to corroborate any of Debtor's assertions and to look for the source, manner, and purpose of the payments described in the Application and determine if the same are traceable to a special fund payable to the U.S. Government under 26 U.S.C. § 7501.

Jordan respectfully objects to the Application. The proper course is for the Court to deny this Application, without prejudice, but with instructions that Ciardi Ciardi & Astin fully and reasonably investigate the merits of the same and to resubmit, if proper, after Debtor's forthcoming Section 341 meeting and after determining if the Debtor's Schedules should be amended, that such submission be signed by counsel.

Finally, under 11 U.S.C. § 105, the Court can compel the Assistant U.S. Trustee assigned to this judicial district to perform its obligations under the Code. Given the seriousness of this case—an ongoing criminal action with serious criminal penalties, $1,068,680.47 as a special fund subject to turnover to the U.S. Government, in addition to the extensive debts, in the millions of dollars, that Debtor owed to his creditors pre-Petition—the active involvement of the Assistant U.S. Trustee is needed here. The Court should refer the Application to the Assistant U.S. Trustee to investigate the merits of the Application and any similar pre-Petition transfers and to permit questioning into the same at the Section 341 meeting.

## **CONCLUSION**

**WHEREFORE**, based on the foregoing, the Court should enter the proposed order,

denying the Debtor's Application without prejudice and with instructions that Ciardi Ciardi & Astin fully and reasonably investigate the merits of the same, including the need to look for evidence to corroborate the Debtor's statements and to identify the source, manner, and purpose of the payments to Rush Law Group and to any other creditors pre-Petition, and whether the same are subject to any provisions of the Bankruptcy Code or as a special fund payable to the Government of the Untied States under 26 U.S.C. § 7501, and, if proper, to resubmit the same after Debtor's Section 341 meeting, and after seeking the concurrence of the Assistant U.S. Trustee and determining whether Debtor is obligated to amend his Schedules, and that Debtor's counsel be directed to sign such and any other papers filed with the Court; and to refer the Application to the Assistant U.S. Trustee to investigate the merits and any similar pre-Petition transfer and to permit questioning into any pre-Petition transfers at the Section 341 meeting.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: November 6, 2024        By:    /s/ Joel A. Ready
                                      Joel A. Ready, Esquire
                                      PA Attorney I.D. # 321966
                                      Benjamin J. Lewis, Esquire
                                      PA Attorney I.D. # 313733
                                      8500 Allentown Pike, Suite 3
                                      Blandon, PA 19510
                                      (610) 926-7875

6