**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN'S MOTION TO COMPEL THE**
**DEBTOR TO DELIVER PROPERTY, TO EXTEND THE AUTOMATIC STAY TO ARC**
**REALTY, LLC, AND RELATED RELIEF[1]**

Creditor, Jason Scott Jordan, files this Motion to Compel the Debtor to deliver property, specifically, to direct Shannon Kroemmelbein to segregate her income from the Pottstown School District and pay into the Debtor-in-Possession account (DIP account) all other income derived from transfers by the Debtor; to compel the Debtor to provide an accounting; and to extend the automatic stay; and submits the following:

## FACTS

On his amended schedules and statement of financial affairs, the Debtor maintains he has no cash in his possession [ECF No. 111, at 4 (Schedule A/B, Question 16)], does not own any bank accounts [id. (Schedule A/B, Question 17)], and had no income from his work for Seguro Medico, LLC until very recently. As the Court can see on the Statement of Financial Affairs (Official Form 107), Debtor went from having $1,143,904.00 in income for 2021 down to $168,981.00 for 2022, to "Unknown" for 2023. [ECF No. 119, at 2 (Question 4)]. We're almost one-year out from December 31, 2023 and Debtor maintains he hasn't filed an income tax return despite having retained an accounting firm, C. Malcolm Smith & Company, P.C.

During the Section 341 hearing on Friday, November 22, 2024, Debtor admitted under oath

---

[1] The Motion filed by Jason Scott Jordan at ECF No. 129 was withdrawn [ECF No. 137].

1

that he possessed on his person a Discovery credit card, titled in the name of his wife, Shannon Kroemmelbein, which he uses for personal expenses. [Exhibit B, Tr. 12:7-8, 39:15-25]. He additionally had a business credit card for Seguro Medico, LLC on his person. [Id. at 39:15-25].

Debtor also admitted he began placing all his income into Kroemmelbein's bank accounts:

> Mr. Ready:   When did you begin placing all of your personal income in Shannon's bank account?
>
> The Witness:  When I lose my bank account with Mid Penn, when it closed, it made sense to enter my income—the rental income, also—and to operate out of her—operate the—the household out of her—her bank account.

[Id. at 55:24-25 to 56:1-4]. Debtor asserted his Mid Penn bank accounts were closed in January of 2024. [Id. at 13:8-23].

Debtor disclosed that his wife is receiving $40,000 **per month** on income from interest and dividends alone. [ECF No. 117, at 2 (Question 8b)]. This is separate from her take-home pay from her employment in the Pottstown School District. [Id. (Question 7)].

On October 29, 2024, Debtor submitted a *pro se* motion to retroactively approve $25,000.00 paid to the Rush Law Group (RLG). [ECF No. 103]. Attorney Bill Rush submitted an affidavit to the Court, representing that "RLG received the following payments *from the Debtor*, for services rendered," namely, $25,000.00 within 90 days pre-petition. [ECF No. 103-2 ¶ 5 (emphasis added)]. After Jordan opposed the same, Attorney Rush filed a Supplemental Declaration, asserting that Jordan "assumes facts that are not accurate" (perhaps caused by Attorney Rush's representations of receiving $25,000 "from the Debtor") and clarified that "RLG received ***NO*** money from the Debtor within the ninety (90) days prior to the filing of the involuntary bankruptcy petition, but rather received funds from Third Parties on behalf of the debtor, namely Shannon Kroemmelbein and entities that Ms. Kroemmelbein controls." [ECF No. 122 ¶ 3 (emphasis in original)].

Shannon Kroemmelbein married Debtor on December 4, 2021. [Exhibit C]. On October 1, 2024 — during trial on the order for relief — Debtor freely admits that he transferred assets to his wife to avoid his creditors:

Q.      What assets did you transfer to Shannon Kroemmelbein upon your marriage?

A.      There was a real estate company, ARC Realty, that I owned. And we received advice from our attorneys that we should put that company in tenants in the entirety. And that's what we did.

Q.      Okay. And what was the reason for putting it in tenants by the entirety?

[Objection overruled]

A.      We put it in tenants in the entirety. We had talked to one of our attorneys. We were in a dispute with Par Funding. And we thought that was the best course of action to protect our households—to protect our—our house that we were living in at the time.

[Exhibit A, Tr. 103:25 to 104:1-122]. During the Section 341 hearing, Debtor admitted that Ms. Kroemmelbein neither paid any consideration for these transfers nor executed any prenuptial agreements. [Exhibit B, Tr. 56:5-11].

Among other things, Ms. Kroemmelbein is a professional educator by education and experience. On information and belief, Ms. Kroemmelbein was employed full-time by the Bucks County Intermediate Unit. On October 1st, Debtor admitted this employment of hers but could not recall when she resigned before giving birth. [See Ex. A, Tr. 152:16-18].

On October 1, 2024, Debtor asserted that Ms. Kroemmelbein created and owned an insurance brokerage, Seguro Medico, LLC, with Arthur W. Walsh, Jr. But Ms. Kroemmelbein has no professional experience with insurance companies. Debtor would have everyone believe that while Ms. Kroemmelbein was working a full-time job as an educator, while pursuing a Ph.D., and while managing other significant commitments, that she was simultaneously creating a new

3

insurance business while lacking any relevant experience in the insurance industry. [Ex. A, Tr. 122:3-13].

Q. Did [Shannon Kroemmelbein] have any experience in insurance sales?

A. She did not have experience in insurance sales.

Q. Did she have any experience in insurance regulations?

A. No, she did not.

Q. Did [she] have any experience in insurance brokering?

A. No.

Q. Did [she] have any experience in insurance underwriting?

A. No.

[Id. at 123:10-18]. What qualified Ms. Kroemmelbein to launch an insurance company? "She's been around me long enough to understand what insurance is." [Id. at 122:3-8].

Debtor admitted that Ms. Kroemmelbein has resumed work in her chosen profession and took a full-time position with the Pottstown School District *this year*. [Ex. A, Tr. 106:8-16]. Debtor, on the other hand, wound-down Bene Market, LLC and began work for Seguro Medico, LLC in 2020, prior to his marriage. [Ex. A, Tr. 108:7-25 to 109:1-13]. At both that hearing, and during the Section 341 examination, Debtor continually asserts that Shannon Kroemmelbein started an insurance consultancy in Florida called "ABN" [Ex. B, Tr. 25:4-23], which upon further research we have identified as ABN Network, LLC, a Florida limited liability company that owns the fictitious names, ABN Health, Q Health, and G Health, among others. The registered address for ABN Network, LLC is 4960 NE 27th Ave., Lighthouse Point, FL 33064 [Exhibit D], which is a property owned by a man named Seni Sok, which Debtor identified during the Section 341 examination as a business partner *of his*. [Exhibit E; Exhibit B, Tr. 43:14-25 to 44:1-5 (Debtor's

4

testimony on his business relationship with Seni Sok)].

In the Berks County Court of Common Pleas, a mortgage foreclosure action is pending against ARC Realty, LLC at C.A. No. 23-13582 by WBL SPO II, LLC relating to loans in default to Seguro Medico, LLC. [Exhibit F].

## ARGUMENT

**I.    Compelling the Debtor to Segregate Shannon Kroemmelbein's Wages from the Pottstown School District from Assets She Received from Debtor and to Pay Over the Latter into the Debtor-in-Possession Account.**

This Court has an *in rem* jurisdiction over the bankruptcy estate regardless of how assets are titled. *In re* Kaiser Aluminum Corp., 343 B.R. 88, 93 (D. Del. 2006); 11 U.S.C. § 541. Where the record is read in a light most favorable to the Debtor, he has admitted to commingling his income in bank accounts titled in the name of his wife, Shannon Kroemmelbein. The facts additionally show that Debtor uses for his own expenses and controls accounts that are titled in the name of his wife. As a result of these transfers, she is receiving, in name only, $40,000 a month ($480,000.00 per year) in income from interest and dividends. When forthcoming Rule 2004 examinations and other discovery in this matter are complete, the facts are going to show the Court that Debtor has maintained, under oath, a false narrative. His wife, Shannon Kroemmelbein, didn't genuinely own Seguro Medico, Benefits Now, LLC, and ABN Network, LLC — he does. All the assets that he transferred to his wife are part of the bankruptcy estate.

This Debtor thinks he can make himself poor and avoid his creditors by transferring all his assets into his wife's name and live out of his wife's bank account. Debtor uses Ms. Kroemmelbein's name while paying his bills and legal representation. All of this has consequences under the Bankruptcy Code as well as nonbankruptcy law, such as the Uniform Voidable Transactions Act. Pending some forthcoming Rule 2004 examinations, discovery, and subpoenas that are currently being arranged, the Court should compel the Debtor to identify all assets in the

name of Shannon Kroemmelbein, and to arrange for Shannon Kroemmelbein to segregate her wages and compensation from the Pottstown School District and to pay over to a segregated Debtor-in-Possession account (DIP account) all other income derived from assets that were transferred to her by Debtor and all income received from Seguro Medico, LLC, Benefits Now, LLC, ABN Network, LLC, and ARC Realty, LLC. Under 11 U.S.C. § 105 as well as the Court's *in rem* jurisdiction in Section 541, it's well-settled that the Court may compel the Debtor to surrender property into the DIP account, which is brought by motion rather than adversary proceeding. Fed. R. Bankr. P. 7001(a).

As the Debtor in Possession, this Debtor must perform the obligations of a Chapter 11 trustee. 11 U.S.C. § 1107(a). The Trustee is obligated to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest . . ." 11 U.S.C. § 704(a)(1), incorporated by reference in id. § 1106(a)(1). Prior to plan confirmation, such funds are kept in the DIP account. Fed. R. Bank. P. 3020(a). The bankruptcy estate includes property that was improperly transferred by the Debtor and is subject to turnover or claw back. 11 U.S.C. § 541(a)(3). There's a likelihood of success on the merits that all assets transferred by Debtor to Shannon Kroemmelbein are either part of the bankruptcy estate.

**II.    Compel the Debtor to Provide an Accounting.**

The Court should order the Debtor to provide an accounting of all assets that were transferred to Shannon Kroemmelbein, and all income from Seguro Medico, Benefits Now, LLC, ABN Network, LLC, and any other business entity, which income thereof became deposited into a DIP account, after segregating her wages and compensation from the Pottstown School District.

**III.    Extending the Benefit of the Automatic Stay to ARC Realty, LLC.**

As shown in the Facts Section, there is a likelihood of success that ownership of ARC

Realty, LLC is part of the bankruptcy estate. The Court should extend the automatic stay under 11 U.S.C. § 362 and its powers in Section 105 for the benefit of ARC Realty, LLC pending further action. A Section 105 injunction is appropriate (1) "when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganization"; (2) "upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan"; and (3) "where the relationship between the non-debtor and debtor is such that a finding of liability against the non-debtor would effectively be imputed to the debtor, to the detriment of the estate." Saxby's Coffee Worldwide, LLC v. Larson (*In re* Saxby's Coffee Worldwide, LLC), 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009) (citations and internal quotations deleted). The first prong under the standard is met here.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the Court should afford the parties an opportunity to be heard, grant this Motion, and enter the proposed order:

(A) Compel the Debtor to surrender all income from sources he transferred to Shannon Kroemmelbein, except for her wages and compensation from the Pottstown School District, and all income from Seguro Medico, LLC, Benefits Now, LLC, ABN Network, LLC, ARC Realty, LLC, and any other business entity, into a Debtor-in-Possession account with a qualified depository. Such DIP account to be segregated from Debtor's existing DIP account.

(B) Compel the Debtor to provide an accounting, within 30 days, of all assets that were transferred into the name of Shannon Kroemmelbein and the sources of all income to her, other than her wages and compensation from the Pottstown School District, which became deposited into the DIP account.

7

(C)    Extend the automatic stay in favor of ARC Realty, LLC, including the proceeding at C.A.

No. 23-13582 in the Berks County Court of Common Pleas.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: December 16, 2024           By:    /s/ Joel A. Ready
                                                            Joel A. Ready, Esquire
                                                            PA Attorney I.D. # 321966
                                                            Benjamin J. Lewis, Esquire
                                                            PA Attorney I.D. # 313733
                                                            8500 Allentown Pike, Suite 3
                                                            Blandon, PA 19510
                                                            (610) 926-7875