**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN, CORNERSTONE LAW FIRM, LLC, AND ETHAN SHALTER'S MOTION TO COMPEL RULE 2004 EXAMINATION AND PRODUCTION OF DEBTOR AND HIS SPOUSE AND ASSOCIATES**

Moving Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter, file this Motion to Compel examination and production under Fed. R. Bankr. P. 2004 as to Debtor and his spouse and associates; and submit the following:

**FACTS**

On December 13, 2024, undersigned counsel served on Debtor's counsel and on counsel for other Rule 2004 examinees, including William Rush, Esquire, a request for examination and production of documents under Fed. R. Bankr. P. 2004 [Exhibit A]. We included proposed subpoenas to produce documents for all examinees other than Arthur W. Walsh, Jr. and Stephanie Farris Miller (but notice was given that proposed subpoenas were forthcoming for both of them). Debtor initially applied to the Court to retain William Rush, Esquire and Rush Law Group, LLC,[1] but, after learning of the requests described in this Motion, Debtor withdrew that request and Attorney Rush has now entered his appearance for the following nonparties: Shannon Kroemmelbein, Seguro Medico, LLC, Arthur W. Walsh, Jr., Norman M. Valz, Esquire, and Stephanie Farris Miller.

Moving Creditors are seeking document productions under Fed. R. Bankr. P. 2004:

---

[1] ECF No. 103.

| Person | Relationship to Debtor |
|---|---|
| Shannon Kroemmelbein | Spouse of the Debtor. |
| Seguro Medico, LLC | An insurance brokerage in which the Debtor claims to be a consultant while admitting that he carries a business credit card for Seguro and that his income was deposited into his wife's accounts. |
| Arthur W. Walsh, Jr. | A former employee of Bene Market, LLC who is the purported president of Seguro Medico, LLC. |
| Norman Valz, Esquire | Long-time counsel for Debtor who also performed services for Seguro Medico, LLC, Benefits Now, LLC, Bene Market, LLC, National Brokers of America, Inc. and other entities. |
| Stephanie Farris Miller | Chief Financial Officer of Seguro Medico, LLC. |
| C. Malcom Smith, III and C. Malcom Smith & Company P.C. | Regularly used by the Debtor for preparing his personal and business tax returns and managing payroll for Bene Market, LLC and Seguro Medico, LLC. |
| Mid Penn Bank | Last known deposition where Debtor used for his personal banking before transferring his assets into the name of his spouse. |

On December 18, 2024, undersigned counsel had a phone call with Attorney Albert Ciardi for the Debtor and was unable to reach an accord on the entirety of documents requested by the subpoena, although there were some items where Debtor had no objection. Attorney Ciardi indicated he was unavailable in early January for the examination by reason of a trial in another case. On information and belief, Attorney Ciardi did not object to the scope of the Rule 2004 examination. Debtor may respond to this Motion and clarify, if we are honestly mistaken on that point.

On December 23, 2024, undersigned counsel conferred with Attorney Rush by phone as the nonparty examinees (other than Mid Penn Bank). From that conversation, we represent to the Court that no agreement was reached. Undersigned counsel represents to the Court that Attorney Rush did not give any particularity to his objections other than attorney-client privilege as to Norman Valz. No other privileges were asserted. For that reason, Moving Creditors may seek to apply to the Court to file a reply brief depending on what response is filed to this Motion.

2

On December 27, 2024, undersigned counsel conferred with Attorney Brandon D. Pack, of Barley Snyder, who represents C. Malcolm Smith, III and C. Malcolm Smith & Company, P.C. Attorney Peck did not have any objections to the subpoenas to produce documents. However, it was learned that the incorrect subpoena was submitted to Attorney Peck. Efforts to follow up with Attorney Peck are made as this Motion is filed.

On January 7, 2025, multiple attempts were made to speak with the Chief Operating Officer of Mid Penn Bank, but no contact was established.

All subpoenas in Exhibit B are contemporaneously served with this Motion on Debtor's counsel and on Attorney Rush, and the specific objections to the scope are addressed in the argument below. Moving Creditors incorporate by reference Jordan's Motion to Compel the Debtor to Deliver Property, etc. [ECF No. 140] together with all its exhibits.

## STANDARD OF REVIEW

"On a party in interest's motion, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The examination may be coupled with a request to produce documents and electronically stored information by subpoena. Fed. R. Bankr. P. 2004(c). The scope of the requests include the debtor's acts, conduct, or property, the debtor's liabilities and financial condition, any matter that many affect the administration of the debtor's estate, the debtor's right to a discharge and, by reason of this case arising in Chapter 11, the operation of nay business and the desirability of its continuing, the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered, and "any other matter relevant to the case or to formulating a plan." Fed. R. Bankr. P. 2004(b).

## ARGUMENT

As set forth in our letter in Exhibit A and Jason Scott Jordan's Motion to Compel the Debtor

to Deliver Property at ECF No. 140, we maintain that Debtor has purposefully made himself poor by transferring into his wife's name all his assets and business interests and lives out of his wife's bank accounts for his personal expenses, literally. We further maintain that Debtor has not provided accurate information on all his schedules and financial statements at ECF Nos. 108 to 120. Because of the Debtor's repeated inability to truthfully disclose business entities that he owns, controls, or has managerial authority, we're obligated to subpoena nonparty witnesses for the same information. As one court put it, "Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." _In re Duratech Indus._, 241 B.R. 283, 289 (E.D.N.Y. 1999) (quotations omitted).

We go through all known objections per seriatim, and then address our requests as applied to the nonparty examinees.

**I.     Objections should be Overruled.**

**A.      The Pending Proceeding Rule.**

Rule 2004 expressly exists to allow investigation prior to any adversary proceedings. As one court put it, "Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." _In re_ Duratech Indus., 241 B.R. 283, 289 (E.D.N.Y. 1999) (quotations omitted). Debtor has raised an objection at ECF No. 170, that "2004 is not the appropriate discovery tool when adversary proceedings or contested motions are pending," citing _In re Ascentra Holdings, Inc._, 657 B.R. 339 (Bankr. S.D.N.Y. 2023). Debtor misconstrues the Pending Proceeding Rule. It is a discretionary, judicially-created rule that, for the purpose of a pending proceeding, discovery may not be sought by Rule 2004. Id. at 361. But "unrelated discovery should not be subject to those rules simply because there is an adversary proceeding pending." _In re_ Washington Mut., Inc., 408 B.R. 45, 51 (Bankr. D. Del. 2009) (quotation omitted).

Here, the pending proceedings are (1) the nondischargeability of debt held by Jason Scott Jordan and (2) the removed State action of Jason Scott Jordan v. Bene Market, LLC et al., Case No. 24-00144. Debtor has not shown any particularly whether the Rule 2004 requests Moving Creditors have submitted are tied to those proceedings and he cannot because we're broadly exploring the extent Debtor has concealed and fraudulently transferred his assets.

Furthermore, even if there were any subjects that overlapped, the Court has discretion to waive the Pending Proceeding Rule where it serves no purpose. Here, Debtor and nonparty examinees are all represented by counsel and Moving Creditors do not object to the presence of such counsel during the examination, which eliminates the primary purpose why bankruptcy courts enforce the Pending Proceeding Rule. See Wash. Mut., Inc., 408 B.R. at 50 (Rule 2004 does not afford an examinee's right of counsel to be present). Under the facts presented, nothing is achieved by piecemealing. We're entitled to the requested information and it makes no difference how we get there.

**B.      Objections Whether Certain Documents Do Not Exist.**

As to our Rule 2004 production of document requests, it is not an objection whether a document doesn't exist. The person under examination or production can certify, under oath, whether a document exists or not. The existence and nonexistence of records are properly developed in discovery. Once again, the statements of counsel for the Debtor and for the nonparty examinees are not evidence. Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 667 n.7 (Fed. Cir. 1986) ("Counsel's statements are not evidence.").

**C.      Objections Whether Business or Nonprofit Entities have a Relationship with the Debtor or Not.**

Our Rule 2004 subpoenas on the Debtor and the nonparty examinees include a list of entities known to or reasonably suspected of having a relationship with the Debtor. Contrary to

Debtor's unverified objection at ECF No. 170, ¶ 6, whether entities have any connection with

Debtor or not, "[W]here a dispute exists whether the witness was involved with the Debtor, the

examination should be allowed." 9 COLLIER ON BANKRUPTCY ¶ 2004.01[7] (citing *In re* Table

Talk, Inc., 51 B.R. 143, 146 (Bankr. D. Mass. 1985)). The absence of a relationship cannot depend

on the assertions of Debtor's counsel. "Counsel's statements are not evidence." Senza-Gel Corp.

v. Seiffhart, 803 F.2d 661, 667 n.7 (Fed. Cir. 1986). Furthermore, where this Debtor has a

demonstrated history of lacking the ability to provide accurate information, Moving Creditors are

entitled to disbelieve his credibility and to investigate and explore alternative sources of

information which do not depend on Debtor's say-so. Similarly, where Debtor asserts that a

business entity is "defunct," but public records show it to be active, Moving Creditors are

reasonably entitled to further investigate.

**D.      Debtor's Objection to Time-Limitations of Document Production— Attempting to Prevent Discovery of Fraudulent Transfers.**

In the Subpoena, Item Nos. 5, 10 and 11, which directed Debtor to produce:

5.      All of your federal income tax returns, with all schedules, including Form W2s and 1099s, for the years 2014 through the most recent filing.

\* \* \*

10.      All documents evidencing transfer of your assets, valued at $1,000.00 or more, within five years before September 3, 2024.

11.      All documents evidencing transfer of assets (1) regardless of the title of those assets, (2) caused by, or requested by, you, (3) valued at $1,000.00 or more, and (4) within five years before September 3, 2024.

\* \* \*

19.      All leases that you have signed at any time over the past 10 years.

20.      All deeds to all real property located anywhere in the world and recorded during the years 2014 through the present, and which are titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority, or control, in whole or in part.

\* \* \*

41.     All written contracts in which you were a party in your personal capacity and which you signed at any time during the past 10 years, including bank service agreements, accounting services, employment contracts, promissory notes, mortgages, escrow, brokerage, personal guarantees, suretyship agreements, and attorney-client agreements.

[Ex. B, Schedule A]. Debtor objected that he would go back two years even though five years were requested, and that he would only go back four years if 10 years were requested.

As the Court knows, the Code's turnover remedy in 11 U.S.C. § 542 can broadly apply well beyond five years. E.g., Evans v. Robbins, 897 F.3d 966 (8th Cir. 1990) (dispute lapse of six years, discovery may show that property has been abstracted from the bankruptcy estate and is still in debtor's possession). Additionally, the Uniform Voidable Transactions Act has a broadly-stated four year statute of limitations and one-year "discovery exception." 12 Pa.C.S. § 5109. Based on these provisions, Debtor cannot arbitrarily restrict the time-limitations of our requests for the sake of concealing his transfer of valuable assets that resulted in him not being able to pay his debts or to selectively pay the creditors he likes through his wife's accounts.

For the tax returns, the year 2014 corresponds to the year that the Berks County Court of Common Pleas had adjudicated that Debtor froze-out Jason Scott Jordan from their business, National Brokers of America, Inc. (NBOA). In that litigation, and now in this litigation, Debtor continued a false narrative that his businesses were "unprofitable" while he made millions. Debtor personally guaranteed a debt to Business Solutions Group, Inc. for loans which exceeded $35,000,000.00 in connection with Bene Market, LLC and NBOA. The disposition of these monies, including whether Debtor paid any of that to himself and reported the same as income, is relevant to this case.

   **E.      Debtor's Objections that Title is in the Name of Another Person.**

Debtor has globally objected to any request for document production where title to the

document is in the name of another person, whether it is his wife, Shannon Kroemmelbein, or in the name of Seguro Medico, LLC or another business entity. Debtor likewise objected that his former business, National Brokers of America, Inc. (NBOA), is in Chapter 7 bankruptcy and under the control of a trustee. With all due respect, that's not the standard. The standard is whether he has possession, access or control, not how he creatively made title to avoid his creditors. Similarly, as to NBOA, the fact that it is in bankruptcy does not prevent Debtor from providing records that are in his possession or control.

Whether Debtor wants to submit a verification, under penalty of perjury, that he doesn't possess or control or have access to certain records—that remains an option for him, if truthfully made. But that is not a ground for limiting the scope of our requests. Likewise, the appointment of a Chapter 7 trustee over NBOA is not a per se basis for lack of possession or control of records.

At the Section 341 examination, Debtor admitted he possessed a Discover credit card that was titled in his wife's name. [ECF No. 140-3, Ex. B, Tr. 12:7-8, 39:15-25]. He additionally had a business credit card for Seguro Medico, LLC. [Id. at 39:15-25]. After closing his Mid Penn bank accounts, Debtor admitted that he regularly deposited his income into accounts in the name of his wife, Shannon Kroemmelbein. [Id. at 55:24-25 to 56:1-4]. An application to retain Attorney William Rush, which is now withdrawn, initially disclosed that Rush Law Group, LLC "received the following payments *from the Debtor*, for services rendered . . ." [ECF No. 103-2 ¶ 5 (emphasis added)]. Upon further clarification, Attorney Rush explained that the payments were not from the Debtor "but rather received funds from Third Parties on behalf of the debtor, namely Shannon Kroemmelbein and entities that Ms. Kroemmelbein controls." [ECF No. 122 ¶ 3]. Debtor's counsel in this case, Ciardi, Ciardi & Astin, have disclosed that payments for their services are made "from Shannon Kroemmelbein" [ECF No. 144 ¶ 1(a)].

8

From the trial on the order on relief, the Court received into evidence a "Consultation Agreement" between Debtor and Seguro Medico, LLC. In Paragraph 10, Seguro covenanted "to provide necessary support, information and access to personnel required for Consultant to perform the agreed-upon services." In Paragraph 4, Debtor's responsibilities include human resources, locating insurance carrier vendors, technology and information systems, and marketing strategies, and standard operating procedures.

That Debtor possesses or has access or control over tax returns and records for entities where title of ownership is not in his name is a sufficient ground for him to produce the same. The object is to investigate whether Debtor has played games with title to ownership by trying to conceal assets. Therefore, it cannot be a valid objection that he lacks title while he otherwise has possession or control of the same.

Clearly, the record shows that Debtor has access to the information we requested even if title is in the name of another person. On this basis, Debtor's global objection should be overruled in its entirety, including to the extent of the following:

13.     All monthly statements for all your accounts which Shannon Kroemmelbein caused, or permitted, to be used by you and beginning five years before September 3, 2024 to the present.

14.     All monthly statements for any account (1) within your possession or control, regardless of how the account is titled, and (2) five years before September 3, 2024.

* * *

27.     All contract contracts between you and any of the following entities, or between you and any current of former owner, or current or former member, of the following entities [28 entities enumerated].

28.     All federal income tax returns, with all schedules, filed for all business entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following [28 entities enumerated].

* * *

9

40.    All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial authority, or control, or which you filed with a government agency on behalf of another person.

[Exhibit B, Schedule A]. Item 14 includes Seguro Medico, LLC, where Debtor possessed a bank card, and any other entity where he likewise has access to accounts.

**F.    Debtor's Objections on Attorney-Client Privilege.**

Item 29 of the Subpoena asked Debtor to produce all contracts between himself and Attorney Norman M. Valz and between himself and Attorney Katherine Downing. Item 30 similarly directed Debtor to produce contracts where Valz or Downing are parties even if he is not a party, to the extent of Debtor's possession or control. Additionally, Item 41 requests Debtor provide all attorney-client agreements from the past 10 years. Debtor objects on the ground of attorney-client privilege.

This evidence is relevant because several of Debtor's former counsel, such as Rush Law Group, LLC, Bochetto & Lentz, P.C., and Duane Morris, LLP, are disclosed creditors and the Court has authority to determine, in this involuntary Chapter 11 case, if any prepetition payments and property transferred were excessive. Fed. R. Bankr. P. 2017(a)(2). Thus, obtaining attorney-client agreements will provide corroborating evidence on who Debtor has retained prepetition and the nature of his debts to them. Additionally, on information and belief, Attorney Katherine Downing had assisted Debtor with business incorporation and registered agent services. Thus, obtaining any agreements with her, if any, will aid in the identification of all assets and business entities associated with Debtor, whether he truthfully disclosed them all or not.

Under Pennsylvania law, attorney-client agreements are generally not privileged in the absence of narrow exceptions. Levy v. Senate of Pennsylvania, 65 A.3d 361, 370 (Pa. 2013). Here, the Debtor can submit to the Court for *in camera* review to determine if any of these agreements

10

meet the exceptions articulated in <u>Levy</u>. The Court can direct Debtor to apply for *in camera* review before redacting any material.

As to Attorney Norman Valz, however, the crime-fraud exception overrides any claim of privilege. The attorney-client privilege "does not protect communications made for the purpose or in the course of the commission of proposed crime or fraud." *In re* <u>Investigating Grand Jury</u>, 593 A.2d 402, 406-07 (Pa. 1991). Under Pa.R.P.C. 1.2(d), a lawyer may not assist a client in avoiding payment to a creditor in violation of the Uniform Voidable Transactions Act, 12 <u>Pa.C.S.</u> § 5101(a). <u>Kruse v. Repp</u>, 543 F. Supp. 3d 654, 692 (S.D. Iowa 2021) (discussing Professional Conduct Rule 1.2(d)). In that context, the attorney-client privilege is properly overridden under the crime-fraud exception: "[W]hen a client uses the prepetition services of an attorney to hide assets from creditors," then "that attorney may testify about the hidden assets because the crime-fraud exception to the privilege applies." <u>Levin v. DeLoreto (*In re* DiLoreto)</u>, 2002 Bankr. LEXIS 2049, at *42 (Bankr. E.D. Pa. May 3, 2002) (discussing <u>United States v. Ballard</u>, 779 F.2d 287, 292-93 (5th Cir. 1986)), <u>see also</u>, <u>United States v. Richard Roe, Inc. (*In re* Richard Roe, Inc.)</u>, 68 F.3d 38, 40 (2d Cir. 1995). Therefore, "the crime-fraud exception to the privilege may arise in a bankruptcy case." <u>Levin</u>, 2002 Bankr. LEXIS 2049, at *42. "The admissibility of the evidence does not turn on the lawyer's complicity in the wrongful transaction." <u>Id.</u> at *42-43 (quotation omitted). Thus, "The crime-fraud exception is applicable even when the client alone is guilty." *In re* <u>Investigating Grand Jury</u>, 593 A.2d at 407.

On October 1, 2024 — during trial on the order for relief — Debtor freely admits that he transferred assets to his wife to avoid his creditors:

Q. What assets did you transfer to Shannon Kroemmelbein upon your marriage?

A. There was a real estate company, ARC Realty, that I owned. And we

received advice from our attorneys that we should put that company in tenants in the entirety. And that's what we did.

Q.      Okay. And what was the reason for putting it in tenants by the entirety?

[Objection overruled]

A.      We put it in tenants in the entirety. We had talked to one of our attorneys. We were in a dispute with Par Funding. And we thought that was the best course of action to protect our households—to protect our—our house that we were living in at the time.

[ECF No. 140-3, Exhibit A, Tr. 103:25 to 104:1-122]. On Pages 213-14 of that transcript, Debtor disclosed that it was Attorney Valz who provided that advice. [Exhibit C, this Motion]. Accordingly, where Valz assisted Debtor in transferring assets to avoid his creditors, the crime-fraud exception is established.

Finally, on information and belief, Debtor used his businesses to pay for Valz's services, even if the same were for the Debtor, personally. That fact, in itself, doesn't create a privilege in favor of Debtor's businesses.

**G.      Objections that Evidence was Produced to the U.S. Trustee.**

Debtor objects to Items 1 through 4, which requires Debtor to produce copies of his original birth certificate and any amendment thereto, his Social Security card, all active driver's licenses in any jurisdiction, and all passports. Debtor asserts he provided that information to the U.S. Trustee. But we know nothing of any law which obligates the U.S. Trustee to provide information to us or not, and we have been informed by Attorney Callahan that the federal Privacy Act prohibits his agency from disclosing information in the absence of a court order. We need Debtor's identifying information, including his Social Security Number, as well as the countries he has visited or can visit, to trace and identify any assets he hasn't disclosed. The objection should be overruled.

12

**II.      Individual Requests as to Nonparty Examinees.**

    **A.      Debtor's Spouse, Shannon Kroemmelbein.**

Rule 2004 is proper where the record shows that Debtor has transferred nearly all his assets into Ms. Kroemmelbein's name and that Debtor is paying his debts through her accounts. It is necessary for Ms. Kroemmelbein to identify all assets she owned prior to her marriage to Debtor; all assets transferred to her by Debtor; any evidence in her possession whether such transfers were bona fide. An examination is necessary to identify all financial practices in her personal life and marriage to Debtor, including identification of all banking and depositories used, as well as all joint account holders. An examination is also necessary to explore all her education, training, and employment history, and all commitments on her productive time whether personal or business, to determine if there's any truth to Debtor's assertions that his wife started the businesses, Seguro Medico, LLC, Benefits Now, LLC, ABN Network, LLC, and any other entity that may be learned during discovery. An examination is also necessary to identify all "insiders" within the meaning of the Bankruptcy Code, including identification of all family members.

Documents are necessary to bypass the perjury of any witness, not necessarily the one being examined under Rule 2004. The Court should also take into account that Ms. Kroemmelbein was in a substantial dating relationship and began cohabitating with Debtor for a certain amount of time before they formally married, which means their financial relationship might have begun earlier-in-time and the scope of our discovery requests must account for that. Additionally, the scope of our discovery requests is reasonably tailored to identify Ms. Kroemmelbein's net worth and ownership of assets prior to her relationship with Debtor.

Among other things, the subpoena for documents includes all of Ms. Kroemmelbein's personal and business income tax returns, together with all schedules and W2s and 1099s, from the years 2014 through the present; monthly bank account statements for accounts that were used

in connection with Debtor; contracts where she is a party or any creditor of Debtor is a party;

It is also necessary to confirm Ms. Kroemmelbein's identity, including her name at birth. Copies of her Social Security card, birth certificate, driver's licenses, and passports are necessary for our investigation to identify assets.

To the extent the subpoena seeks documents which do not exist, she may certify under oath that the same do not exist. That does not constitute an objection.

**B.      Seguro Medico, LLC and Arthur W. Walsh, Jr.**

We intend to prove that Seguro Medico, LLC is a successor to Bene Market, LLC. Debtor shutdown Bene Market, LLC and then commenced a new insurance brokerage, Seguro Medico, LLC, but claims it was started by his wife and Arthur W. Walsh, Jr. Walsh is the purported president and co-owner of Seguro. Undersigned counsel has offered for Walsh to serve as corporate representative of Seguro, and that his personal examination and as corporate representative can be conducted simultaneously.

For Seguro, a Rule 2004 examination of a corporate representative is necessary to establish its ownership, management, legal compliance, capitalization, and debt structures; all startup capital; identification of all insurance commissions; all transfers to Debtor, Shannon Kroemmelbein, or any entity associated with either of them; all employees. We additionally seek all records concerning Ethan Shalter, including payment history and original documents of the purported release and separate agreement that were submitted to the Court.

For Walsh, individually, the record shows that he has engaged in similar behavior as the Debtor by personally guaranteeing the debts of Seguro Medico, LLC and therefore the extent that Walsh is assisting in concealing Debtor's assets must be explored, including whether Walsh is working with Debtor in other businesses. Our subpoena requests all contracts between Walsh and Seguro, and between any business entity associated with Debtor, and seeks Walsh's personal tax

14

returns with all schedules and forms, to determine the economic realities of the relationship. A Rule 2004 examination is necessary to establish the extent of his knowledge of all businesses associated with Debtor, with Kroemmelbein, or both; all transfers involving any of them; all his education, training, and employment history, and all commitments on his productive time whether personal or business; all sources of income for the past five years; his licensure status; all business entities associated with him, with Debtor, or with Kroemmelbein.

Documents are necessary to bypass the perjury of any witness, not necessarily the one being examined under Rule 2004. For Seguro, the subpoenas appropriate seek income tax returns, together with schedules, all organizational documents, including bylaws and all operating and shareholder agreements; all documents evidencing startup capital or venture capital for Seguro Medico, LLC; all contracts relating to Debtor, his wife, or any entity associated with either of them; all contracts evidencing entitlement to insurance commissions. For Seguro, we additionally seek all W2s that were issued to Ethan Shalter and all documents in the possession of Seguro which bear the signature of Ethan Shalter.

Because Debtor admitted during his Section 341 examination that he carries a credit card for an account titled in the name of Seguro, we additionally seek all bank statements relating to that credit card or any other debit card that Seguro permits Debtor to use.

We have every reason to believe that Seguro is purposefully restructuring itself, during this proceeding, to help the Debtor. During his Section 341 examination, Debtor admitted that Seguro was going to begin paying him a salary, rather than paying the same to itself. For that reason, our Rule 2004 production appropriately requests all contracts with current and former managers and current and former consultants,

### C.      Attorney Norman M. Valz.

The objection of attorney-client privilege is addressed in Part I.F, <u>supra</u>. The Court doesn't

15

have to find any wrongdoing on the part of Attorney Norman M. Valz to override the privilege: "The crime-fraud exception is applicable even when the client alone is guilty." *In re* Investigating Grand Jury, 593 A.2d 402, 407 (Pa. 1991).

Additionally, for the production of documents, nearly all of the same are not privileged to begin with. We did not ask for the mental impressions or legal research of Attorney Valz. Rather, the requested documents relate to transfer of assets and evidence of ownership of assets of the Debtor, his wife, and any entity associated with either of them, including contracts, organizational documents, general ledgers, books of account, etc. These documents do not become privileged simply because in the possession of Attorney Valz. The personal tax returns, including W2s and 1099s, of Attorney Valz are also necessary to establish prepetition transfers by the Debtor or his wife to Valz, which may implicate Code provisions and nonbankruptcy avoidance laws. It's a well-established pattern of behavior that a client may hide assets by using their attorney as a conduit, whether by an IOLTA account or paying excessive attorneys' fees. See Fed. R. Bankr. P. 2017(a)(2) (excessive fees paid to attorney prepetition); United States v. Kowalski, 103 F.4th 1273, 1275 (7th Cir. 2024) ("Jan Kowalski used and abused her position as an attorney to shield her brother's assets in bankruptcy, hiding approximately $357,000 in her attorney trust account.").

### D.    Stephanie Farris Miller.

Stephanie Farris Miller was the Chief Financial Officer of Bene Market, LLC and is now the Chief Financial Officer of Seguro Medico, LLC. From her longstanding relationship with the Debtor and his companies, her knowledge of the financial affairs relating thereto, and from any books and records in her possession, she is an important witness. The production requests include any tax returns and ledgers of the business entities in her possession, in addition to contracts. Her personal income returns are also requested for the same purpose whether the Debtor is using her as a conduit for the transfer of assets.

16

**F.      C. Malcolm Smith, III and C. Malcolm Smith & Company, P.C.**

C. Malcolm Smith, III is a certified public accountant and C. Malcolm Smith & Company, P.C. is his accounting firm. Both have a longstanding relationship with the Debtor, handling both his personal income tax returns as well as business tax returns for all entities associated with him. At this time, we have not sought an examination but have limited our request to a Rule 2004 production. The subpoena seeks all ledgers for Bene Market, LLC and Seguro Medico, LLC, and federal income tax returns for both and other entities associated with the Debtor, including Benefits Now, LLC, ABN Network, LLC, and ARC Realty, LLC. The subpoena also requests any documents which evidence transfer of assets of Debtor and his spouse.

**E.      Mid Penn Bank.**

In his Section 341 examination, Debtor testified that Mid Penn Bank was the last depository where he had accounts titled in his own name before he transferred everything into his wife's name. Moving Creditors are not presently seeking an examination but, rather, a production of documents by subpoena under Rule 2004 as to Mid Penn Bank. We seek to have Mid Penn Bank produce all account-related information, including monthly bank statements, to help trace the disposition of assets. We additionally seek service agreements from Mid Penn Bank if it has any relationship with persons associated with Debtor.

**CONCLUSION**

**WHEREFORE**, based on the foregoing, the Court should grant this Motion and enter the proposed order, providing the following relief:

(A)      Overrule all objections and compel a Bankruptcy Rule 2004 examination and production of documents as to the following persons:

(1)      Debtor.

(2)      Shannon Kroemmelbein.

17

(3)     Seguro Medico, LLC.

(4)     Arthur W. Walsh, Jr.

(5)     Norman M. Valz, Esquire.

(6)     Stephanie Farris Miller.

(7)     C. Malcolm Smith, III and C. Malcolm Smith & Company, P.C.

(8)     Mid Penn Bank.

(B)     Overrule Debtor's attorney-client privilege as to Norman W. Valz.

(C)     Direct Debtor to apply to the Court for *in camera* review for any other claim of attorney-

client privilege.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: January 7, 2025          By:     /s/ Joel A. Ready
                                        Joel A. Ready, Esquire
                                        PA Attorney I.D. # 321966
                                        Benjamin J. Lewis, Esquire
                                        PA Attorney I.D. # 313733
                                        8500 Allentown Pike, Suite 3
                                        Blandon, PA 19510
                                        (610) 926-7875