**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN, CORNERSTONE LAW FIRM, LLC, AND ETHAN
SHALTER'S EMERGENCY MOTION FOR SANCTIONS**

Moving Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter, file

this Motion under 11 U.S.C. § 105(a) for emergency sanctions; and submit the following:

**FACTS**

I.     **In a First Plan of Reorganization, Debtor Proposes to Use $3.58 Million of His Wife's Money to Pay a Fraction of the $62,986,902 in Aggregate Claims while Releasing His Wife and All Persons in the World for All Assets Debtor Transferred to Them and without Any Disclosure.**

Before the Court could hear and decide pending motions relative to compelling the

formation of a creditors' committee and Bankruptcy Rule 2004 discovery, which are scheduled to

be heard on February 11, 2025, the Debtor filed a First Plan of Reorganization at ECF No. 221 and

a proposed Disclosure Statement at ECF No. 222.

The Debtor noticed the Disclosure Statement for approval by the Court on February 25,

2025, requiring all interested parties to file objections by February 18, 2025.

The First Plan of Reorganization contains, among other things:

(1)     An involuntary release of Debtor's wife, Shannon Kroemmelbein, and any and all persons

anywhere in the world for "all" causes of action "to recharacterize the ownership of property or

assets." [ECF No. 221 § 13.3 at 21].

(2)     Only the Debtor may object to any claims after confirmation and only the Debtor has

authority to settle all claims against him without court approval. [Id. §§ 13.2, 15.3].

1

(3)     Debtor has the right to setoff and withhold payment as to any creditor based on any unliquidated claim asserted by the Debtor. [Id. § 7.1(d), at 15].

(4)     Debtor is the disbursing agent. [Id. § 5.4].

(5)     All payments are "null and void" if a check is not deposited or cash in 90 days after issuance. [Id. § 7.1(c)].

(6)     The Debtor proposes that his wife will fund the plan with $2,933,350.00 for unsecured creditors paid out over the course of two years [id. § 3.4], in addition to payments of $544,032.85, $38,457.97, and $64,357.98 for three secured creditors [id. §§ 3.1 to 3.3.]. The unsecured claims aggregate $62,986,902.

(7)     The Debtor disclosed that he paid $1,054,856.04 to the Internal Revenue Service, presumably, using assets he transferred to his wife. [Id. at § 4.2 n.1 at 13].

(8)     The Debtor proposes the authority modify the Plan after confirmation and without court approval. [Id. § 11.3].

Debtor's proposed Disclosure Statement fails to disclose the following:

(1)     The totality of assets that he transferred into his wife's name or to any other person who will ostensibly be covered by the involuntary release.

(2)     The pendency of the criminal action against Debtor at Case No. 5:24-CR-00376-JLS in the U.S. District Court for the Eastern District of Pennsylvania for the felony offense of Tax Evasion, 26 U.S.C. § 7202, which has an authorized sentence of five years of imprisonment per infraction. The Indictment alleges six counts, aggregating in $1,068,680.47 of monies that Debtor withheld from employee salary for tax purposes but did not remit to the U.S. Government. [Exhibit A]. Under the U.S. Sentencing Guidelines, the Debtor has an offense level of 36 which, assuming no further modifications, carries a recommended sentence of between 188 months and 235 months

(or, 15.66 and 19.58 years).

**II.     Debtor Has Persistently Failed to Give Full and Complete Information on His Forms and Schedules and Obstructed Rule 2004 Discovery by Raising Objections Where He Lacked Standing.**

At ECF No. 180, Debtor reports that he received $1,143,904.00 in tax year 2021 as income, but that his income dwindled to $0.00 in tax year 2023. In the schedule at ECF No. 117, Question 8b (Page 2), Debtor disclosed that his wife, Shannon Kroemmelbein, is receiving $40,000 per month just from interest and dividends alone. Official Form 107, Question 27, requires Debtor to disclose all business entities where he had actual or beneficial ownership within four years pre-petition. Official Schedule A/B, Question 19, requires Debtor to disclose all current ownership of business entities. Debtor initially submitted these schedules on November 8, 2024 at ECF Nos. 108 to 120.

During his Section 341 Examination, the Debtor disclosed that he had, within four years prepetition, owned additional business entities that were not disclosed on Official Form 107, Question 27. Following the examination, Debtor amended Official Form 107 at ECF No. 180 to provide for additional entities while asserting they are "defunct." [ECF No. 180, Question 27, at 7-8]. One of these entities is NextGen Leads, LLC. [Id.]. During the Section 341 Examination, Debtor disclosed that this entity was formed in either Delaware or Pennsylvania. [Exhibit E, Tr. at 43:14-19]. A search of the public registries by the Delaware and Pennsylvania departments of state showed there is no entity in Pennsylvania but an active entity in Delaware. [Exhibit B, File No. 5471889, Delaware Department of State]. Upon further investigation,[1] this entity is headquartered in San Diego, California, and is actively selling "leads," i.e., potential customer information, to insurance brokers (available at https://nextgenleads.com). Hypothetically, if this is not the entity

---

[1] The San Diego entity is the same Delaware limited liability company per the records of the California Secretary of State. [File No. 201403510089, California Department of State].

Debtor had meant, it certainly raises a difficult question of fact that warrants further investigation.

Further investigation showed that ostensibly "defunct" entities were, in fact, shown to be active by public records. The Turner House of Reading, LLC [File No. 6912108, Pennsylvania Department of State], which Debtor omitted from his original Schedule A/B and Form 107, is in active standing with the Pennsylvania Department of State. Debtor nevertheless claims the entity is defunct based on his uncorroborated say-so. [ECF No. 180, at 8].

On December 20, 2024, Moving Creditors filed a Motion to Compel Rule 2004 Production as to Nonparty Registered Agents and State Departments, at ECF No. 157. The subpoenas were directed at five registered agents which Debtor had a history of retaining for business services, as well as the Delaware and Pennsylvania departments of state. The subpoenas are intended to locate additional business entities that may have a relationship with the Debtor, after it was clear the Debtor had not fully disclosed all the information required by Official Form 107 and Schedules A/B, as well as investigate whether Debtor was the owner of entities where he claimed he was just an independent contractor.

The Debtor filed an Objection at ECF No. 170. Debtor did not assert any attorney-client privilege, but stated, "The Debtor reserves and preserves all attorney client privilege which he may have." [ECF No. 170 ¶ 1]. Debtor further objected for lack of notice on the parties being subpoenaed. [Id. ¶ 3]. The Debtor raised additional objections for which he lacks standing. [Id. ¶¶ 2, 4-10].

As a result, Moving Creditors obtained process servers and served the subpoenas and filed returns of service on the docket. [ECF Nos. 194 to 198, 205 to 206].

After we filed the returns of service, Debtor's counsel submitted a demand on January 21, 2025, asserting that no court order had been entered, "Accordingly, *please withdrawal (sic) all of*

*the subpoenas immediately*." [Exhibit C (emphasis in original)]. The next day, we submitted a letter in response. Among other things, we stated, "Please give a responsive explanation why, in your opinion, nonparties are prevented from voluntarily cooperating with our request for nonprivileged documents rather than waiting for a court order." [Exhibit D at 2]. Debtor's counsel declined to give such a responsive explanation.

That same day, Moving Creditors filed an amended Rule 2004 Motion to Compel, attaching all corrected subpoenas (the originals had erroneous dates due to the change from the year 2024 to 2025), and asking for leave to file subpoenas for such records from additional registered agents and business service-providers. [ECF No. 211].

## **ARGUMENT**

As a matter of law, "The bankruptcy court shall establish procedures for referring any case that may contain a materially fraudulent statement in a bankruptcy schedule" to the U.S. Attorney in this district for investigation. 18 U.S.C. § 158(d). Under 11 U.S.C. § 105(a), this Court has inherent power to regulate its own proceedings and to impose sanctions for bad faith. *In re* Usokin, 61 B.R. 869, 873 (Bankr. E.D.N.Y. 1986) (citing *In re* Hammett, 28 B.R. 1012, 1018 (E.D. Pa. 1983)).

The Debtor announced that he paid off his $1,054,856.04 debt to the IRS, and that he proposes using his wife's assets to pay $2,933,350.00 to unsecured creditors and an aggregate of $646,848.80 to secured creditors. Debtor's First Plan imposes an involuntary release of his wife, and to any person anywhere in the world, to whom he transferred his assets to make himself poor. Through his objections on the record, this Debtor succeeded in delaying Bankruptcy Rule 2004 discovery and now proposes a plan of reorganization, with February 18, 2025, as the deadline to object to the proposed Disclosure Statement. That's seven days after the Court's scheduled hearing

on February 11, 2025, whether to compel Bankruptcy Rule 2004 discovery and whether to compel the U.S. Trustee to appoint a creditors' committee. That's not enough time for Moving Creditors to complete discovery and for an official committee, if organized, to investigate all claims in this case and determine if objections and adversary proceedings should be filed. We have contemporaneously filed a motion for a case management order, but we seek here immediate relief for the Court to direct Debtor to amend his forms and schedules by a date certain or else he will face consequences.

Here, Debtor was put on notice by Official Form 106, "Making a false statement concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both." [ECF No. 108 (citing 18 U.S.C. §§ 152, 1341, 1519, and 3571)]. The Debtor filed his forms and schedules on November 8, 2024 [ECF Nos. 108 to 120] and has subsequently amended Official Form 107 [ECF No. 180] after it was learned during the Section 341 Examination that he failed to disclose all of his business entities. We cannot have a system where this Debtor purposefully or recklessly omits material information and then continually amends his statements and forms each and every time our investigation shows he didn't tell the truth.

We ask the Court to set a date certain, and we suggest on or before February 7, 2025, for Debtor to amend his official forms and schedules, including Official Form 107, to correct any deficiencies. Or else the Court will thereafter make referral to the U.S. attorney for investigation if any evidence subsequently shows the Debtor made a materially false or fraudulent statement therein. That will be his last chance to do the right thing. The integrity of bankruptcy proceedings is very dependent on the candor and truthfulness of the Debtor: "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to

6

schedule, for the benefit of creditors, all his interests and property rights." *In re* Gunsmith's, Inc.,

271 B.R. 487, 491 (S.D. Miss. 2000).

**CONCLUSION**

**WHEREFORE**, based on the foregoing, the Court should grant this Motion on an

emergent basis and enter the proposed Order, setting February 7, 2025, or another date certain, for

Debtor to amend his official forms and schedules or else the Court will thereafter make referral to

the U.S. Attorney for investigation under 18 U.S.C. § 158(d) if any further evidence shows the

Debtor failed to materially comply, and may impose additional sanctions against the Debtor.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: January 30, 2025      By:   /s/ Joel A. Ready
      Joel A. Ready, Esquire
      PA Attorney I.D. # 321966
      Benjamin J. Lewis, Esquire
      PA Attorney I.D. # 313733
      8500 Allentown Pike, Suite 3
      Blandon, PA 19510
      (610) 926-7875