# Exhibit A

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| ALAN REDMOND | : | VIOLATIONS:<br>26 U.S.C. § 7202 (failure to account for<br>and pay over tax – 6 counts) |

## I N D I C T M E N T

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1. Bene Market LLC ("Bene Market") was a corporation doing business in Reading, Pennsylvania, which was within the Eastern District of Pennsylvania. Bene Market operated as a call center from at least in or about 2019 through at least in or about 2021, and paid wages to its employees. Bene Market purported to act as a broker of insurance, selling health insurance and related products over the telephone to individuals throughout the United States. Bene Market was an employer engaged in interstate commerce and in industries affecting interstate commerce.

2. Defendant ALAN REDMOND was the 96% general partner of Bene Market and a person known to the grand jury was the 4% limited partner.

3. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

4. Pursuant to the Internal Revenue Code and associated statutes and regulations, employers were required to withhold amounts from their employees' gross pay

including Federal Insurance and Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and federal income taxes. Employers were required to remit these taxes (referred to in this indictment collectively as "trust fund taxes" because employers hold the withheld amounts in trust until paid over to the United States) to the IRS on a quarterly basis, no later than the last day of the month following the end of the quarter.

5.    In addition to the trust fund taxes that must be withheld from pay, employers were separately required to make contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Such employer contributions were likewise required to be remitted to the IRS no later than the last day of the month following the end of the quarter. Collectively, these five components required to be remitted quarterly were commonly referred to as "employment taxes," made up of the trust fund taxes withheld from the employee's paycheck (individual income, Social Security, and Medicare taxes) and the matching amounts contributed by the employer.

6.    Employers were required to file, one month after the conclusion of the calendar quarter, an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), setting forth the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits.

7.    A person was responsible for collecting, accounting for, and paying over the employment taxes if he or she had the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact. More than one person may be considered a "responsible person" for the purpose of

collecting, accounting for, and paying over employment taxes, including trust fund amounts and employers' matching amounts.

8.      Defendant ALAN REDMOND, in addition to being the 96% general partner of Bene Market, ran the day-to-day operations of Bene Market and directed control over its financial affairs by, among other acts, directing employees, approving payments, controlling bank accounts, approving employee payroll and bonuses, signing forms submitted to the IRS, and making financial decisions. Ultimate and final decision-making authority regarding Bene Market's business activities and financial affairs rested with defendant REDMOND. Thus, defendant REDMOND was a responsible person for collecting trust fund taxes, accounting for the employment taxes by filing Forms 941 with the IRS, and paying over to the IRS the employment taxes for the employees of Bene Market.

9.      From at least in or about April 2019 through at least in or about December 2021, defendant ALAN REDMOND, and his agents working at his direction, caused Bene Market to pay wages to its employees. During this same period, defendant REDMOND, and his agents working at his direction, also caused Bene Market to withhold trust fund taxes from these wages and to issue Wage and Tax Statements ("W-2" forms) to the Bene Markets employees indicating that trust fund taxes had been withheld from those wages and implying that those trust fund taxes had been paid over to the IRS.

10.     As a result, during the period from the second quarter of 2019 through the fourth quarter of 2021, defendant ALAN REDMOND caused Bene Market to withhold trust fund taxes from its employees' paychecks and file Forms 941 reporting these taxes with the IRS for each tax quarter, but over this same period, defendant REDMOND caused Bene Market to fail to

3

pay over all of the trust fund taxes due and owing to the IRS on behalf of its employees.

11.     During the period from the second quarter of 2019 through the fourth quarter of 2021, defendant ALAN REDMOND caused Bene Market to make thousands of dollars of expenditures for his own personal benefit, including purchases of real property, airline tickets, event tickets, limousine services, vehicle purchases, mortgage payments, and partnership distributions, while, at the same time, failing to pay over to the IRS the trust fund taxes withheld from the paychecks of Bene Market's employees.

12.     Altogether, during the six calendar quarters alleged in Counts One through Six of this indictment, defendant ALAN REDMOND caused Bene Market to fail to pay over approximately $1,068,680.47 in trust fund taxes to the IRS.

13.     On or about the dates listed in the table below, for each of the calendar quarters listed below, in the Eastern District of Pennsylvania and elsewhere, defendant

**ALAN REDMOND**

willfully failed to pay over the trust fund taxes due and owing to the IRS on behalf of the employees of Bene Market, with each quarter constituting a separate count:

| Count | Quarter (Year-Month) | Appx. Date of Offense (i.e., Filing Date for Form 941) | Approximate Trust Fund Taxes Due and Owing |
|---|---|---|---|
| 1 | 2019-06 | July 29, 2019 | $142,665.72 |
| 2 | 2019-09 | October 30, 2019 | $143,591.46 |
| 3 | 2019-12 | January 30, 2020 | $228,125.75 |
| 4 | 2020-03 | April 29, 2020 | $188,953.17 |
| 5 | 2020-12 | January 30, 2021 | $149,298.17 |
| 6 | 2021-12 | January 31, 2022 | $216,046.20 |

4

All in violation of Title 26, United States Code, Section 7202.

A TRUE BILL:

_____

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No.\_ \_ \_ \_ \_ \_ \_ \_ \_ \_

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

ALAN REDMOND

INDICTMENT

26 U.S.C. § 7202 (failure to account for and pay over tax – 6 counts)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INDICTMENT

DESIGNATION FORM to be used by counsel to indicate the category of the case for the
purpose of assignment to appropriate calendar.

Address of Plaintiff:   615 Chestnut Street, Suite 1250, Philadelphia, PA 19106-4476

Post Office:  Philadelphia                          County:   Philadelphia

City and State of Defendant:    Reading, Pennsylvania

County:   Reading          Register number:  N/A

Place of accident, incident, or transaction:          Eastern District of Pennsylvania

Post Office:  Reading                          County:    Reading
RELATED CASE, IF ANY:

Criminal cases are deemed related when the answer to the following question is "yes".

Does this case involve a defendant or defendants alleged to have participated in the same
action or transaction, or in the same series of acts or transactions, constituting an offense
or offenses?

YES/NO: NO

Case Number:  N/A                          Judge: N/A

CRIMINAL:   (Criminal Category - FOR USE BY U.S. ATTORNEY ONLY)

1.          ○ Antitrust

2.          ◉ Income Tax and other Tax Prosecutions

3.          ○ Commercial Mail Fraud

4.          ○ Controlled Substances

5.          ○ Violations of 18 U.S.C. Chapters 95 and 96 (Sections 1951-55 and 1961-68)
            and Mail Fraud other than commercial

6.          ○ General Criminal
            (U.S. ATTORNEY WILL PLEASE DESIGNATE PARTICULAR CRIME AND
            STATUTE CHARGED TO BE VIOLATED AND STATE ANY PREVIOUS
            CRIMINAL NUMBER FOR SPEEDY TRIAL ACT TRACKING PURPOSES)
            26 U.S.C. § 7202 (failure to account for and pay over tax – 6 counts)

DATE:   10/17/2024              /s/ Mary E. Crawley
                               MARY E. CRAWLEY
                               SAMUEL S. DALKE
File No. 2020R00362            Assistant United States Attorneys
U.S. v. ALAN REDMOND

# Exhibit B

# Exhibit B

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

**HOME**

View Search Results

Entity Details

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

Status Retrieved: 12/19/2024 at 4:08 PM EST

Email Status

| | | | |
|---|---|---|---|
| File Number: | 5471889 | Incorporation Date / Formation Date: | **1/27/2014** (mm/dd/yyyy) |
| Entity Name: | **NEXTGEN LEADS, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **State:** |
| Status: | **Good Standing** | Status as of: | **1/27/2014** |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Last Annual Report Filed: | **0** | Tax Due: | **$ 0** |
| Annual Tax Assessment: | **$ 300** | Total Authorized Shares: | |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **PARACORP INCORPORATED** |
| Address: | **2140 S DUPONT HWY** |
| City: | **CAMDEN** |
| State: | **DE** |
| Phone: | **302-697-4590** |

| | |
|---|---|
| County: | **Kent** |
| Postal Code: | **19934** |

**FILING HISTORY (Last 5 Filings)**

| Seq | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|
| 1 | LLC | 1 | 1/27/2014 | 3:03 PM | 1/27/2014 |

Back to Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

# Exhibit C

# Exhibit C

NICOLE M. NIGRELLI, ESQUIRE
NNIGRELLI@CIARDILAW.COM

# CIARDI CIARDI & ASTIN

1905 Spruce Street
Philadelphia, PA 19103
Phone: 215-557-3550 x 115
Fax: 215-557-3551

January 21, 2025

*Via Email*
Joel Ready, Esquire
Cornerstone Law Firm, LLC
8500 Allentown Pike, Ste 3
Blandon, PA  19510
joel@cornerstonelaw.us

  **Re:** ***In re Alan Christopher Redmond, Case No. 24-13093(PMM)***

Mr. Ready,

  Last week, you served subpoenas on a number of parties without an order from the Court.  On Thursday January 16, 2024, I sent you email correspondence stating that the subpoenas you served were not proper. As you are aware, the Court has not ruled on your 2004 Motion and you do not have an order from the court allowing these subpoenas to go forward.   Accordingly, ***please withdrawal all of the subpoenas immediately***. Failure to withdrawal these subpoenas may result in the Debtor seeking sanctions against you, your firm as well as your client.

  Be guided accordingly.

      Very truly yours,

      ***/s/ Nicole M. Nigrelli***
      Nicole M. Nigrelli, Esquire

NMN/dt

cc: Albert A. Ciardi, III, Esquire (via email aciardi@ciardilaw.com)
  Kevin Callahan, Esquire (via email Kevin.P.Callahan@usdoj.gov)
  John Schanne, Esquire (via email John.Schanne@usdoj.gov)

---

**PHILADELPHIA**
1905 Spruce Street
Philadelphia, PA  19103
Phone: (215) 557-3550
Fax: (215) 557-3551

**WILMINGTON**
1204 North King Street
Wilmington, DE 19801
Phone: (302) 658-1100
Fax: (302) 658-1300

**NEW JERSEY**
52 Haddonfield-Berlin Road
Suite 1000
Cherry Hill, NJ 08034
Phone: (856) 368-2001
Fax: (856) 368-2002

# Exhibit D

Exhibit D



8500 Allentown Pike, Suite 3
Blandon, PA 19510

January 22, 2025

**Nicole M. Nigrelli, Esquire**
Ciardi Ciardi & Astin
1905 Spruce St.
Philadelphia, PA 19103
Counsel for Debtor
Via e-mail: nnigrelli@ciardilaw.com

>      **Re:     Rule 2004 Practice**
>      **Jordan v. Redmond, Case No. 24-00145-PMM.**
>      **U.S. Bankruptcy Court for the Eastern District of Pennsylvania**

Dear Attorney Nigrelli,

This letter responds to your letter dated January 21, 2025.

On December 20, 2024, at ECF No. 157, my clients filed a Motion to Compel Rule 2004 Production as to Nonparty Registered Agents and State Departments. This related to the Delaware Department of State, the Pennsylvania Department of State, A Registered Agent, Inc., Corporation Trust Company, Harvard Business Services, Inc., Northwest Registered Agent, LLC, and Paracorp Incorporated. The subpoenas attached to that motion relate to document production only, not examinations. None of the requested information is privileged.

On December 30th, at ECF No. 170, Debtor objected to the Motion on the basis of due process that the nonparties have not been given any notice. [ECF No. ¶ 7]. In our system, notice is effected by service of process. As the specific result of your objection, I arranged for service of the subpoenas and the motion. Several attorneys have voluntarily accepted service for their client as shown on the certificates filed on the docket.

Now, per your January 21st letter, you have objected that I have served the subpoenas and papers, thereby effecting notice as the law requires. The subpoenas contain a court-approved notice, setting out the recipient's right to object. The motion to compel sets forth why we're asking for a court order and references Bankruptcy Rule 2004, and the nonparties are capable of reading that document and reviewing it with their counsel.

If you believe there is an additional requirement that isn't being met here and which I cannot find on the face of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, then please describe in

detail what that is, together with citation and discussion of pertinent authority so that I can understand the law rather than your client's personal preference.

Under Local Rule 2004-1(b)(1), if the recipient voluntarily cooperates with a subpoena for documents in which case, "No motion, subpoena or court order is required." Please give a responsive explanation why, in your opinion, nonparties are prevented from voluntarily cooperating with our request for nonprivileged documents rather than waiting for a court order.

Neither have you attempted to describe what prejudice your client might have incurred here. Your client's desire to filibuster is not prejudice. At best, if there somehow is a technical error here that I haven't comprehended, but the information is nonprivileged and my clients were entitled to have it, your suggestion of a motion for sanctions is not well-taken.

Now that you've broached the subject of sanctions, we have been forced to resort to this practice of seeking information from nonparties precisely because of your client's persistent inability to remember and recite accurate information while under oath, whether he submits official forms and schedules or he testifies in-person. Your client continues to assert that entities are "defunct" while public records show the same are active. This is not the "honor system" here, particularly where the monthly operating report at ECF 175-1 shows your client had exactly $30.05 in the DIP account while ECF No. 180 shows that his income of $1,143.904 in 2021 disappeared to $0.00 in 2023, and ECF No. 117, Question 8b, shows his wife is receiving $40,000 *per month* just from interest and dividends.

Unless your client has something to hide, despite having more than 90 days to investigate and multiple opportunities to amend his Official Form 107 and Schedule A/B following the Section 341 Examination, there's no legitimate objection from the Debtor to the process that was followed here and nothing in the law prohibits the nonparties from voluntarily cooperating with document production. I respectfully suggest you inform your client that this is his last chance to come clean or else there may be consequences for him if any of these nonparties produce documents showing ownership of business entities he didn't disclose. Your client had ample opportunity to do the right thing.

Sincerely,

By: *Joel A. Ready*

Joel A. Ready, Esquire

Cc:
Counsel for Debtor:
Albert A. Ciardi, III, Esquire, aciardi@ciardilaw.com
Daniel Siedman, Esquire, dSiedman@ciardilaw.com

U.S. Trustee Program:
Kevin P. Callahan, Esquire, kevin.p.callahan@usdoj.gov
John Schanne, Esquire, john.schanne@usdoj.gov

| **From:** | Albert A. Ciardi III <Aciardi@ciardilaw.com> |
| **Sent:** | Thursday, January 23, 2025 5:32 AM |
| **To:** | Valeria Amato; Nicole Nigrelli |
| **Cc:** | Joel A. Ready, Esq.; Daniel Siedman; kevin.p.callahan@usdoj.gov; john.schanne@usdoj.gov |
| **Subject:** | RE: Jordan v. Redmond, Case No. 24-00145-PMM |

Mr. Ready

You have a tendency to make factual determinations which, last I checked, are the province of the Judge. If you believe you have followed the rules, I will not debate you. As stated, we will simply note your non compliance with the Court and let the Court handle it.

Albert A Ciardi III
1905 Spruce Street
Philadelphia PA 19103
215-599 2018 (o)

**From:** Valeria Amato <Valeria@cornerstonelaw.us>
**Sent:** Wednesday, January 22, 2025 11:31 AM
**To:** Nicole Nigrelli <nnigrelli@ciardilaw.com>
**Cc:** Joel A. Ready, Esq. <joel@cornerstonelaw.us>; Albert A. Ciardi III <Aciardi@ciardilaw.com>; Daniel Siedman <dSiedman@ciardilaw.com>; kevin.p.callahan@usdoj.gov; john.schanne@usdoj.gov
**Subject:** Jordan v. Redmond, Case No. 24-00145-PMM

Good Morning:

Attached, please find correspondence from Attorney Ready in regards to the above-referenced matter.

Thank you,
Valeria

**Valeria Amato**
*Paralegal*

8500 Allentown Pike
Suite 3
Blandon, PA 19510

1

# Exhibit E

# Exhibit E

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
                                )
IN RE:                          )   24-13093
                                )
ALAN CHRISTOPHER REDMOND,       )   Conducted via telephone
                                )   conference
                 Debtor.        )   November 22, 2024
```

TRANSCRIPT OF SECTION 341 HEARING
BEFORE KEVIN CALLAHAN, U.S. TRUSTEE
HEARING OFFICER

APPEARANCES:

For the Debtor:             NICOLE M. NIGRELLI, ESQ.
                             CIARDI CIARDI & ASTIN
                             1905 Spruce Street
                             Philadelphia, PA 19103

For the Creditors,          JOEL A. READY, ESQ.
Jason Scott Jordan, Ethan   CORNERSTONE LAW FIRM, LLC
Shalter:                     8500 Allentown Pike, Suite 3
                             Blandon, PA 19510

For the Creditor,           JESSICA M. GULASH, ESQ.
WBL SPO I, LLC, WBL SPO     LUNDY, BELDECOS & MILBY, PC
II, LLC:                     450 N. Narberth Ave., Suite 200
                             Narberth, PA 19072

For the Creditor,           JOHN KETTERING, ESQ.
Complete Business           PIETRAGALLO GORDON ALFANO BOSICK &
Solutions Group, Inc.       RASPANTI, LLP
d/b/a Par Funding:           1818 Market Street, Suite 3402
                             Philadelphia, PA 19103

Also Present:               John Schanne
                             Trial Attorney, Office of the U.S.
                             Trustee

Proceedings recorded by electronic sound recording.

                    Joseph Burstein, CDLT-189
                           eScribers
                    7227 North 16th Street
                         Suite #207
                      Phoenix, AZ 85020
                       (800) 257-0885
```

19

Bene Market, LLC. What is that?

THE WITNESS: Bene Market, LLC was a company that I owned ninety-six -- well, actually, I still own ninety-six percent. It was an insurance agency, Mr. Callahan.

HEARING OFFICER: Uh-huh. And is it still operating?

THE WITNESS: It is not.

HEARING OFFICER: National Brokers of America?

THE WITNESS: Unfortunately, National Brokers of America entered bankruptcy, I believe, the beginning of 2019, maybe the end of 2018. But that is currently in -- in bankruptcy.

HEARING OFFICER: How about the Redmond Group, LLC?

THE WITNESS: That didn't do much of anything. The idea was that it was going to be a marketing agency to provide leads to insurance companies. It didn't really get off the ground. It has not generated any income in the last four to six years, maybe -- maybe a little bit longer, Mr. Callahan. It is defunct.

HEARING OFFICER: How about Redmond Marketing, LLC?

THE WITNESS: Same situation, sir, as to Redmond Group, now defunct.

HEARING OFFICER: Okay. And I see, in your responses to the other questions, with respect to assets, you list none until you reach question number 34, which discloses --

THE WITNESS: Mr. Callahan, sorry to -- sorry to

20

interrupt you, sir.  I apologize.  As I was going through these again with -- with Nicole, there are some amendments that I will need to provide to number 19.  There are three other businesses now defunct.  But I was -- as -- as I was going through my -- my timelines, I do need to provide you an amendment on question 19, sir.

HEARING OFFICER:  Okay.  Do you want to just quickly name the entities and we can amend the documents later?

THE WITNESS:  Yes, sir.  And again, I apologize.

The first entity is U.S. Consolidation (ph.).  That is defunct, made very little money.  The next one is a company called Next -- excuse me, Mr. Callahan.  I owned that a hundred percent, U.S. Consolidation.  The next LLC is Next Gen Leads (ph.), as in G-E-N.  Again, that company is defunct, never really got off the ground much.  And the final company -- and I owned at a hundred percent also, sir.  And the final company was U.S. Trifecta (ph.).  U.S. Trifecta was a partnership with a former partner, and I owned that company fifty percent.  That has not been operational since, I believe, the end of 2022.

HEARING OFFICER:  Let's go to question 34.  And counsel for Mr. Jordan is here.  But is it your belief that the debtor has a possible claim against Mr. Jordan, Ethan Shalter, and/or Cornerstone Law?

THE WITNESS:  Yes, that is correct, sir.

HEARING OFFICER:  And with respect to the joinder

43

Consolidation --

THE WITNESS:  Yes, sir.

MR. READY:  -- what type of entity is that?  Is it an LLC, a corporation?

THE WITNESS:  I believe it's an LLC.  That was four, five, six years ago.  I believe it's an LLC.  Let me just --

MR. READY:  And I'm sorry; I'm getting a lot of interference.

Where was that formed?  Is that Delaware, Pennsylvania, somewhere else?

THE WITNESS:  I believe it was in Pennsylvania.

MR. READY:  Same question for Next Gen --

THE WITNESS:  But I will check that.

MR. READY:  Okay.  Same question for Next Gen Leads, what type of entity and where was it formed?

THE WITNESS:  Next Gen Leads, it would have been an LLC.  I believe it was formed in Delaware or Pennsylvania.  That's where I -- I formed LLCs, but I can provide you that, also, Mr. Ready.

MR. READY:  All right.  Same question for U.S. Trifecta?

THE WITNESS:  My partner at the time, sir, was from Florida.  I believe it was formed in Pennsylvania, but again, I can provide that to you, sir.

MR. READY:  And do you know if it was an LLC or a

44

corporation?

THE WITNESS:  I believe it was an LLC.

MR. READY:  And who was your former partner?

THE WITNESS:  I'll spell -- spell this, Mr. Ready: Seni, S-E-N-I, last name Sok, S-O-K.

MR. READY:  Okay.  How much money did U.S. Trifecta make?

THE WITNESS:  I'm not exactly sure.  I would need to -- to provide that to you, sir.

MR. READY:  What would you look to to answer that question?

THE WITNESS:  I would contact Mr. Sok.  He was the keeper of finances.  I would ask him that question.

MR. READY:  What kind of business was U.S. Trifecta in?

THE WITNESS:  U.S. Trifecta was an MGA, what's known as a managing general agency.  Mr. Sok had various connections in the insurance business, the medical device business.  I did the tech side of things, Mr. Ready, the technology side.  Mr. Sok was more of the salesman recruiting agencies to sell the -- the various products that he had brought to the table.

MR. READY:  What was your wife's involvement, if any, in U.S. Trifecta?

THE WITNESS:  Shannon really showed an interest in the insurance business probably around 2019, 2018, end the 2018.