**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN, CORNERSTONE LAW FIRM, LLC, AND ETHAN SHALTER'S MOTION FOR A CASE MANAGEMENT ORDER**

Moving Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter, file this Motion under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 2002(m), 3003(c), 3007(a)(1), and 3018(a)(1), for a case management order; and submit the following:

**FACTS**

**I.     In a First Plan of Reorganization, Debtor Proposes to Use $3.58 Million of His Wife's Money to Pay a Fraction of the $62,986,902 in Aggregate Claims while Releasing His Wife and All Persons in the World for All Assets Debtor Transferred to Them and without Any Disclosure.**

Before the Court could hear and decide pending motions relative to compelling the formation of a creditors' committee and Bankruptcy Rule 2004 discovery, which are scheduled to be heard on February 11, 2025, the Debtor filed a First Plan of Reorganization at ECF No. 221 and a proposed Disclosure Statement at ECF No. 222.

The Debtor noticed the Disclosure Statement for approval by the Court on February 25, 2025, requiring all interested parties to file objections by February 18, 2025.

The First Plan of Reorganization contains, among other things:

(1)     An involuntary release of Debtor's wife, Shannon Kroemmelbein, and any and all persons anywhere in the world for "all" causes of action "to recharacterize the ownership of property or assets." [ECF No. 221 § 13.3 at 21].

(2)     Only the Debtor may object to any claims after confirmation and only the Debtor has

1

authority to settle all claims against him without court approval. [Id. §§ 13.2, 15.3].

(3)     Debtor has the right to setoff and withhold payment as to any creditor based on any unliquidated claim asserted by the Debtor. [Id. § 7.1(d), at 15].

(4)     Debtor is the disbursing agent. [Id. § 5.4].

(5)     All payments are "null and void" if a check is not deposited or cash in 90 days after issuance. [Id. § 7.1(c)].

(6)     The Debtor proposes that his wife will fund the plan with $2,933,350.00 for unsecured creditors paid out over the course of two years [id. § 3.4], in addition to payments of $544,032.85, $38,457.97, and $64,357.98 for three secured creditors [id. §§ 3.1 to 3.3.]. The unsecured claims aggregate $62,986,902.

(7)     The Debtor disclosed that he paid $1,054,856.04 to the Internal Revenue Service, presumably, using assets he transferred to his wife. [Id. at § 4.2 n.1 at 13].

(8)     The Debtor proposes the authority modify the Plan after confirmation and without court approval. [Id. § 11.3].

Debtor's proposed Disclosure Statement fails to disclose the following:

(1)     The totality of assets that he transferred into his wife's name or to any other person who will ostensibly be covered by the involuntary release.

(2)     The pendency of the criminal action against Debtor at Case No. 5:24-CR-00376-JLS in the U.S. District Court for the Eastern District of Pennsylvania for the felony offense of Tax Evasion, 26 U.S.C. § 7202, which has an authorized sentence of five years of imprisonment per infraction. The Indictment alleges six counts, aggregating in $1,068,680.47 of monies that Debtor withheld from employee salary for tax purposes but did not remit to the U.S. Government. [Exhibit A]. Under the U.S. Sentencing Guidelines, the Debtor has an offense level of 36 which, assuming no

further modifications, carries a recommended sentence of between 188 months and 235 months (or, 15.66 and 19.58 years).

**II.     Debtor Has Persistently Failed to Give Full and Complete Information on His Forms and Schedules and Obstructed Rule 2004 Discovery by Raising Objections Where He Lacked Standing.**

At ECF No. 180, Debtor reports that he received $1,143,904.00 in tax year 2021 as income, but that his income dwindled to $0.00 in tax year 2023. In the schedule at ECF No. 117, Question 8b (Page 2), Debtor disclosed that his wife, Shannon Kroemmelbein, is receiving $40,000 per month just from interest and dividends alone. Official Form 107, Question 27, requires Debtor to disclose all business entities where he had actual or beneficial ownership within four years pre-petition. Official Schedule A/B, Question 19, requires Debtor to disclose all current ownership of business entities. Debtor initially submitted these schedules on November 8, 2024 at ECF Nos. 108 to 120.

During his Section 341 Examination, the Debtor disclosed that he had, within four years prepetition, owned additional business entities that were not disclosed on Official Form 107, Question 27. Following the examination, Debtor amended Official Form 107 at ECF No. 180 to provide for additional entities while asserting they are "defunct." [ECF No. 180, Question 27, at 7-8]. One of these entities is NextGen Leads, LLC. [Id.]. During the Section 341 Examination, Debtor disclosed that this entity was formed in either Delaware or Pennsylvania. [Exhibit E, Tr. at 43:14-19]. A search of the public registries by the Delaware and Pennsylvania departments of state showed there is no entity in Pennsylvania but an active entity in Delaware. [Exhibit B, File No. 5471889, Delaware Department of State]. Upon further investigation,[1] this entity is headquartered in San Diego, California, and is actively selling "leads," i.e., potential customer information, to

---

[1] The San Diego entity is the same Delaware limited liability company per the records of the California Secretary of State. [File No. 201403510089, California Department of State].

insurance brokers (available at https://nextgenleads.com). Hypothetically, if this is not the entity

Debtor had meant, it certainly raises a difficult question of fact that warrants further investigation.

Further investigation showed that ostensibly "defunct" entities were, in fact, shown to be active by public records. The Turner House of Reading, LLC [File No. 6912108, Pennsylvania Department of State], which Debtor omitted from his original Schedule A/B and Form 107, is in active standing with the Pennsylvania Department of State. Debtor nevertheless claims the entity is defunct based on his uncorroborated say-so. [ECF No. 180, at 8].

On December 20, 2024, Moving Creditors filed a Motion to Compel Rule 2004 Production as to Nonparty Registered Agents and State Departments, at ECF No. 157. The subpoenas were directed at five registered agents which Debtor had a history of retaining for business services, as well as the Delaware and Pennsylvania departments of state. The subpoenas are intended to locate additional business entities that may have a relationship with the Debtor, after it was clear the Debtor had not fully disclosed all the information required by Official Form 107 and Schedules A/B, as well as investigate whether Debtor was the owner of entities where he claimed he was just an independent contractor.

The Debtor filed an Objection at ECF No. 170. Debtor did not assert any attorney-client privilege, but stated, "The Debtor reserves and preserves all attorney client privilege which he may have." [ECF No. 170 ¶ 1]. Debtor further objected for lack of notice on the parties being subpoenaed. [Id. ¶ 3]. The Debtor raised additional objections for which he lacks standing. [Id. ¶¶ 2, 4-10].

As a result, Moving Creditors obtained process servers and served the subpoenas and filed returns of service on the docket. [ECF Nos. 194 to 198, 205 to 206].

After we filed the returns of service, Debtor's counsel submitted a demand on January 21,

4

2025, asserting that no court order had been entered, "Accordingly, *please withdrawal (sic) all of the subpoenas immediately*." [Exhibit C (emphasis in original)]. The next day, we submitted a letter in response. Among other things, we stated, "Please give a responsive explanation why, in your opinion, nonparties are prevented from voluntarily cooperating with our request for nonprivileged documents rather than waiting for a court order." [Exhibit D at 2]. Debtor's counsel declined to give such a responsive explanation.

That same day, Moving Creditors filed an amended Rule 2004 Motion to Compel, attaching all corrected subpoenas (the originals had erroneous dates due to the change from the year 2024 to 2025), and asking for leave to file subpoenas for such records from additional registered agents and business service-providers. [ECF No. 211].

## ARGUMENT

**I.    The Court Should Stay the Plan Confirmation Process until Discovery and Investigation are Complete.**

Under 11 U.S.C. § 105(a), this Court has inherent power to regulate its own proceedings, including the timing and sequence of discovery, and can enter a case management order. *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989). In Chapter 11 cases, the Court may set the date where the Debtor and interested parties may begin solicitation relating to a plan and the scope and format of the disclosure statement, 11 U.S.C. § 105(d)(2), and the time by which persons may accept or reject a Chapter 11 plan of reorganization. Fed. R. Bankr. P. 3018(a)(1).

Through his objections on the record, this Debtor succeeded in delaying Bankruptcy Rule 2004 discovery and now proposes a plan of reorganization, with February 18, 2025, as the deadline to object to the proposed Disclosure Statement. That's seven days after the Court's scheduled hearing on February 11, 2025, whether to compel Bankruptcy Rule 2004 discovery and whether to compel the U.S. Trustee to appoint a creditors' committee. That's not enough time for Moving

Creditors to complete discovery and for an official committee, if organized, to investigate all claims in this case and determine if objections and adversary proceedings should be filed.

The Debtor announced that he paid off his $1,054,856.04 debt to the IRS, and that he proposes using his wife's assets to pay $2,933,350.00 to unsecured creditors and an aggregate of $646,848.80 to secured creditors. Debtor's First Plan imposes an involuntary release of his wife, and to any person anywhere in the world, to whom he transferred his assets to make himself poor.

For obvious reasons, Moving Creditors are severely and irrevocably prejudiced by any attempt to move forward on the First Plan of Reorganization and the proposed Disclosure Statement prior to the completion of all discovery and any formation of the Creditors' Committee. Without discovery, we cannot fully determine the extent of the "adequate information" Debtor must provide in the Disclosure Statement under 11 U.S.C. § 1125, as well as our ability to provide accurate information to other creditors when the time comes for soliciting votes against the First Plan under Section 1126 of the Code. The confirmability of the First Plan under "§ 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125." *In re* PWS Holding Corp., 228 F.3d 224, 247 (3d Cir. 2000). A creditor can maintain that "he would have had a better shot at defeating the plan if [debtor] had made full disclosure." Everett v. Perez (*In re* Perez), 30 F.3d 1209, 1217 (9th Cir. 1994).

A Disclosure Statement should be denied if it is inaccurate or "replete with deficiencies." *In re* Hirt, 97 B.R. 981, 982-83 (Bankr. E.D. Wis. 1989); *In re* Radco Props., Inc., 402 B.R. 666, 682-83 (Bankr. E.D.N.C. 2009); *In re* M.E.S., Inc., 148 B.R. 1, 1-2 (D. P.R. 1992). Courts recognize the Disclosure Statement must give "a complete description of the available assets and their value," "the actual or projected value that can be obtained from avoidable transfers," "the existence, likelihood and possible success of nonbankruptcy litigation," and "the relationship of

the debtor with affiliates." *In re* Scioto Valley Mortg. Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988).

Here, the Disclosure Statement is entirely meaningless where Debtor transferred all or

substantially all of his assets into the name of his wife while continuing to control the same.

The U.S. Court of Appeals for the Third Circuit also agrees a Disclosure Statement should

not be approved if the proposed plan is unconfirmable on its face. *In re* American Capital Equip.,

LLC, 688 F.3d 145, 155 (3d Cir. 2012). That too applies here, and it shows why Debtor is not

prejudiced by staying the plan confirmation process. The First Plan here allows Debtor to modify

the same after confirmation and without court approval, contrary to 11 U.S.C. § 1127(b). Section

1127(b) is "the exclusive means" of modifying a Chapter 11 plan. *In re* SC SJ Holdings, LLC,

2024 U.S. App. LEXIS 7317, at *5 (3d Cir. Mar. 28, 2024). Allowing such modification, as well

as settlement of claims, without court approval is violative of the Code. *In re* Beyond.com Corp.,

289 B.R. 138, 143-44 (Bankr. N.D. Cal. 2003).

The First Plan and the proposed Disclosure Statement, on their face, demonstrate the

dangers of allowing the plan confirmation process to move forward prior to the completion of all

discovery and any investigation of claims after the formation of a Creditors' Committee:

Debtor proposes to have the unilateral authority to object to claims before Moving

Creditors can conduct discovery and determine if all of the debts to the Debtor are bona fide, or

subject to recovery under Code provisions, or whether objection to allowance should be made. The

fact that the First Plan includes a termination of right to payment if the check is not cashed in 90

days (§ 7.1(c)) and settle claims without Court approval (§ 13.2) are fair indicia that some of the

debts are not bona fide and some of the creditors may be straw parties or otherwise have liability

under the Code.

Debtor proposes a nonconsensual release of his wife, Shannon Kroemmelbein, and to any

other person anywhere in the world, without acknowledging much less disclosing all assets that he transferred to any of them, as well as Ms. Kroemmelbein's current net worth. Schedule I discloses his wife's income, but not her record or beneficial ownership in entities with retained earnings and certainly not the entire amount of assets transferred to her pre-petition. Neither does the First Plan and the Disclosure Statement identify by name all other persons who will be released as a result. "[A]s a general matter, non-consensual releases of nondebtor third parties are looked upon with disfavor." *In re* Continental Airlines, 1995 U.S. Dist. LEXIS 22119, at \*22 (D. Del. Mar. 16, 1995). To bar a non-consenting creditor's claim against third parties requires "unusual circumstances." *In re* Dow Corning Corp., 280 F.3d 648, 658 (6th Cir. 2002). Third party releases are stricken if lacking proper descriptions and identification of the parties. *In re* Lower Bucks Hosp., 488 B.R. 303, 317-21 (E.D. Pa. 2013).

Debtor proposes to make himself the Disbursing Agent when he currently has a sentencing exposure of between 188 months and 235 months (or, 15.66 and 19.58 years) if he's convicted on all six counts of Tax Evasion. This is bait-and-switch at its finest: Debtor proposes to reserve until after confirmation of the First Plan to raise objections to claims and that he has a right of setoff for unliquidated claims in the First Plan, thereby creating a system, once again, where he gets to pay the creditors he likes and ignore the creditors he dislikes. But there is a duty to disclose potential adversary proceedings against creditors before they vote. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988). Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003).

By reason of the Debtor submitting a plan, Moving Creditors are barred from submitting a competing plan of reorganization until 180 days after the order for relief, 11 U.S.C. § 1121(c)(3), which is March 31, 2025.

8

Based on the foregoing, Moving Creditors are severely and irrevocably prejudiced and none of the creditors in this case can make an informed decision whether to vote in favor or against the First Plan, and whether the Disclosure Statement is proper, prior to the completion of discovery and the formation of an official creditors' committee. We therefore request that the Court's powers are used to stay, until further order of the Court, all consideration of the plan confirmation process initiated by the Debtor until the completion of Rule 2004 discovery, and to give an official creditors' committee sufficient time to investigate and determine if objections and adversary proceedings should be commenced.

II. **The Court Should Order the Debtor to Amend His Forms and Schedules by a Date Certain or Else He Will Face Sanctions and Consequences if Evidence Shows False or Incomplete Information.**

We have contemporaneously filed an Emergency Motion for Sanctions, ECF No. 247, which is incorporated by reference in its entirety and re-requested here in the event the Court does not grant the same on an emergent basis.

III. **A Case Management Order is Necessary to Set a Bar-Date and Other Pertinent Deadlines and Regulate the Manner of Giving Notice.**

Under Fed. R. Bankr. P. 3003(c)(3), the Court may impose a bar date for filing claims. Under Fed. R. Bankr. P. 3007(a)(1), the Court has authority to set a deadline for filing objections to claims. Under Fed. R. Bankr. P. 2002(m), the Court can modify the manner of submitting notice on parties.

We therefore request that these powers are used to set a bar date for claims and deadlines for objections to claims, for filing adversary proceedings and for lifting the stay of State actions for purposes of removal.

We further request that the Court modify the rules on the manner of serving parties to provide that e-notice under the Court's Electronic Document Filing System is sufficient for all

9

parties and nonparties where an attorney has made an entry of appearance on the docket. Additionally, we ask the Court to exempt service by mail on the Debtor's Creditor Matrix on all matters other than relating to plan confirmation process, but create a list of "Core Parties," where any interested party may opt-in, for service of papers by e-mail on any matter unrelated to plan confirmation. In other words, the Debtor has creditors who may not be interested in receiving any papers that are unrelated to plan confirmation, thereby conserving resources on Moving Creditors and other parties by not having to constantly print and mail hundreds of pages of documents for no apparent purpose.

### **CONCLUSION**

**WHEREFORE**, based on the foregoing, the Court should afford the parties an opportunity to be heard, grant this Motion, and enter a Case Management Order which will do the following:

(A)      Staying, until further order of court, all plan confirmation process initiated by the Debtor, including Debtor's First Plan of Reorganization [ECF No. 221] and any approval of the Disclosure Statement [ECF No. 222], any subsequent plans and disclosure statements submitted by Debtor, and any solicitation of voting.

(B)      Affording Moving Creditors a reasonable opportunity to complete discovery and organize as an official creditors' committee, if the Court will compel the formation of the same, and to investigate all claims and to prepare a competing plan of reorganization.

(C)      Setting February 7, 2025, or another date certain, for Debtor to amend his official forms and schedules or else the Court will thereafter make referral to the U.S. Attorney for investigation under 18 U.S.C. § 158(d) if any further evidence shows the Debtor failed to materially comply.

(D)      Setting a bar-date for claims and deadlines to object to claims, to file adversary proceedings, and to lift stay of State actions for purposes of removal.

(E)      Providing for the manner of giving notice to parties in that (1) electronic notice under the

Court's Electronic Document Filing System is sufficient for all parties where an attorney made an

entry of appearance on the docket; and (2) exempt service by mail the Debtor's Creditor Matrix

for matters unrelated to plan confirmation process, but create a list of Core Parties, where any

interested party may opt-in, for service of papers by electronic mail on any matter unrelated to plan

confirmation. And directing the U.S. Trustee to maintain and file such list of Core Parties on the

docket.

AND any other relief the Court deems necessary, just, and appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: January 30, 2025           By:     /s/ Joel A. Ready
                                          Joel A. Ready, Esquire
                                          PA Attorney I.D. # 321966
                                          Benjamin J. Lewis, Esquire
                                          PA Attorney I.D. # 313733
                                          8500 Allentown Pike, Suite 3
                                          Blandon, PA 19510
                                          (610) 926-7875

11