**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN, CORNERSTONE LAW FIRM, LLC, AND ETHAN SHALTER'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION TO APPROVE DISCLOSURE STATEMENT**

Moving Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter, file this Response in opposition to Debtor's Motion at ECF No. 223, and submit the following:

## FACTS

Debtor filed a First Plan of Reorganization at ECF No. 221 and a proposed Disclosure Statement at ECF No. 222. The First Plan of Reorganization contains, among other things:

(1)     An involuntary release of Debtor's wife, Shannon Kroemmelbein, and any and all persons anywhere in the world for "all" causes of action "to recharacterize the ownership of property or assets." [ECF No. 221 § 13.3 at 21].

(2)     Only the Debtor may object to any claims after confirmation and only the Debtor has authority to settle all claims against him without court approval. [Id. §§ 13.2, 15.3].

(3)     Debtor has the right to setoff and withhold payment as to any creditor based on any unliquidated claim asserted by the Debtor. [Id. § 7.1(d), at 15].

(4)     Debtor is the disbursing agent. [Id. § 5.4].

(5)     All payments are "null and void" if a check is not deposited or cash in 90 days after issuance. [Id. § 7.1(c)].

(6)     The Debtor proposes that his wife will fund the plan with $2,933,350.00 for unsecured

1

creditors paid out over the course of two years [id. § 3.4], in addition to payments of $544,032.85, $38,457.97, and $64,357.98 for three secured creditors [id. §§ 3.1 to 3.3.]. The unsecured claims aggregate $62,986,902.

(7)     The Debtor disclosed that he paid $1,054,856.04 to the Internal Revenue Service, presumably, using assets he transferred to his wife. [Id. at § 4.2 n.1 at 13].

(8)     The Debtor proposes the authority to modify the Plan after confirmation and without court approval. [Id. § 11.3].

Debtor's proposed Disclosure Statement fails to disclose the following:

(1)     The totality of assets that he transferred into his wife's name or to any other person who will ostensibly be covered by the involuntary release.

(2)     After the order for relief was entered, Debtor was indicted on October 17, 2024—and the Indictment wasn't unsealed until October 29, 2024. [Exhibit A]. The pendency of the criminal action against Debtor at Case No. 5:24-CR-00376-JLS in the U.S. District Court for the Eastern District of Pennsylvania (the "Criminal Action") for the felony offense of Tax Evasion, 26 U.S.C. § 7202, which has an authorized sentence of five years of imprisonment per infraction. The Indictment alleges six counts, aggregating in $1,068,680.47 of monies that Debtor withheld from employee salary for tax purposes but did not remit to the U.S. Government. Under the U.S. Sentencing Guidelines, the Debtor has an offense level of 36 which, assuming no further modifications, carries a recommended sentence of between 188 months and 235 months (or, 15.66 and 19.58 years).

## ARGUMENT

I.     **The Disclosure Statement Fails to Comply with Section 1125 of the Code and the First Plan is Unconfirmable on Its Face.**

The Court may approve the Disclosure Statement if finding that it contains "adequate

2

information." 11 U.S.C. § 1125(b). This means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor" and the financial condition of the debtor, as would allow creditors "to make an informed judgment about the plan." Id. § 1125(a). A Disclosure Statement should be denied if it is inaccurate or "replete with deficiencies." In re Hirt, 97 B.R. 981, 982-83 (Bankr. E.D. Wis. 1989); In re Radco Props., Inc., 402 B.R. 666, 682-83 (Bankr. E.D.N.C. 2009); In re M.E.S., Inc., 148 B.R. 1, 1-2 (D. P.R. 1992). Courts recognize the Disclosure Statement, among other things, must give "a complete description of the available assets and their value," the "anticipated future of the debtor," the "source of the information provided in the disclosure statement," "[i]nformation regarding claims against the estate," "[i]nformation relevant to the risks being taken by the creditors and interest holders," "the actual or projected value that can be obtained from avoidable transfers," "the existence, likelihood and possible success of nonbankruptcy litigation," and "the relationship of the debtor with affiliates." In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). The Disclosure statement must also include a "liquidation analysis setting for the estimated return the creditors would receive under Chapter 7." Id. The confirmability of the First Plan under "§ 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125." In re PWS Holding Corp., 228 F.3d 224, 247 (3d Cir. 2000).

Additionally, the U.S. Court of Appeals for the Third Circuit also agrees a Disclosure Statement should not be approved if the proposed plan is unconfirmable on its face. In re American Capital Equip., LLC, 688 F.3d 145, 155 (3d Cir. 2012). Among other things, the plan must comply with all provisions of Title 11 and Chapter 11 and "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(1)-(3).

Based on the foregoing, the Motion should be denied.

A.      **Debtor Cannot Release Undisclosed Persons, Such as Unnamed Entities that His Wife Purportedly Owns, and Must Disclose the Estimated Value of All Property He Transferred or Caused to be Transferred to the Same.**

The First Plan identifies the Debtor's wife for a nonconsensual release, but goes further than that and purports to release "***all*** claims, causes of action under Pennsylvania law, the Bankruptcy Code or any other basis which exist up through the Effective Date including all Chapter 5 claims under the Bankruptcy Code and any claim to recharacterize the ownership of property or assets." [ECF No. 221 § 13.3 at 21 (emphasis added)]. The Disclosure Statement further clarifies that the release will cover "any claim that could be asserted by or through the Debtor's estate against Shannon Kroemmelbein, ***any entity owned by Shannon Kroemmelbein*** and any property in which she is an owner." [ECF No. 222 at 10 (emphasis added)].

Plans containing third party releases are not confirmable if lacking proper descriptions and identification of the parties. <u>In re</u> <u>Lower Bucks Hosp.</u>, 488 B.R. 303, 317-21 (E.D. Pa. 2013). To release "all" claims, rather than those applicable to Shannon Kroemmelbein individually, therefore purports to release undisclosed persons anywhere in the world to whom the Debtor may have transferred his assets to make himself poor. Generally, in the absence of a Code provision, substantive rights, including property, are governed by State law. <u>Butner v. United States</u>, 440 U.S. 48 (1979); <u>Barnhill v. Johnson</u>, 503 U.S. 393 (1992). It's well-settled that business entities, whether a corporation, partnership, or limited liability company, are legal persons distinct from their owners. <u>Viso v. Werner</u>, 369 A.2d 1185, 1188 (Pa. 1977); 15 <u>Pa.C.S.</u> §§ 8421(a) (partnerships), 8818(a) (LLCs). The law rejects any gamesmanship that separate legal existence of a business entity can be set aside whenever it serves the economic interest of the owners. <u>Sams v. Redevelopment Auth.</u>, 244 A.2d 779, 781 (Pa. 1968) ("[A]fter incorporation has been selected, the shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, whichever suits their present economic

4

interest.").

Based on these authorities, the Disclosure Statement and First Plan must list each and every entity purportedly owned by Shannon Kroemmelbein, as well as any other person that would be governed by the involuntary release, which includes all persons to whom the Debtor transferred his assets to make himself poor. The Debtor must further identify the estimated value of what he transferred to Ms. Kroemmelbein and such persons and the estimated net worth of Shannon Kroemmelbein and such entities.

Additionally, "The Third Circuit, courts within the Third Circuit, and other courts have repeatedly recognized the statutory authority of bankruptcy courts to issue nonconsensual third-party releases under appropriate circumstances." *In re* Boy Scouts of Am. & Delaware BSA, LLC, 650 B.R. 87, 135 (D. Del. 2023). "[A]s a general matter, non-consensual releases of nondebtor third parties are looked upon with disfavor." *In re* Continental Airlines, 1995 U.S. Dist. LEXIS 22119, at *22 (D. Del. Mar. 16, 1995).

"The hallmarks of permissible non-consensual releases" are "fairness" and "necessity to the reorganization," requiring "specific factual findings to support these conclusions," Gillman v. Continental Airlines (*In re* Continental Airlines), 203 F.3d 203, 214 (3d Cir. 2000). Involuntary releases must be "given in exchange for fair consideration." *In re* Lower Bucks Hosp., 571 F. App'x 139, 144 (3d Cir. 2014). To bar a non-consenting creditor's claim against third parties requires "unusual circumstances." *In re* Dow Corning Corp., 280 F.3d 648, 658 (6th Cir. 2002). "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." *In re* Gunsmith's, Inc., 271 B.R. 487, 491 (S.D. Miss. 2000).

The U.S. Court of Appeals for the Third Circuit agrees that non-consensual, third party

5

releases are not valid if the Disclosure Statement did not appraise the creditors "with any information regarding the merits or value of the potential claims" that "would be released by the Plan." Lower Bucks Hosp., 571 F. App'x at 141 & 142-43 (affirming the decision).  Where a plan seeks to involuntarily release a third party for fraudulent transfers, without a proper description of what those transfers were and the value of the claim, "It is far from evident in these circumstances that 'the elementary obligation of full disclosure' has been met." In re Cyr Brothers Meat Packing, Inc., 2 B.R. 620, 627 (Bankr. D. Me. 1980) (quoting American United Mut. Life Ins. v. City of Avon Park, 311 U.S. 138, 145 (1940)). The Disclosure Statement must include "the actual or projected value that can be obtained from avoidable transfers . . ." In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

Based on these authorities, the Disclosure Statement does not set forth any unusual circumstances warranting such releases. In other words, why does Shannon Kroemmelbein and any entity owned by her need a release? To set forth an unusual circumstance, the Disclosure Statement must unequivocally admit all transfers that Debtor made, the estimated value of the same, and that the same were made without any consideration by Shannon Kroemmelbein or any other recipient. All of that is necessary so that all creditors may determine whether to accept the First Plan or, alternatively, seek to have all such assets returned to the bankruptcy estate, whether by means of appointing a Chapter 11 trustee, conversion to Chapter 7, or by adversary proceedings under derivative standing obtained from the Court.

There is no informed consent by the creditors for anything less than that. The veil of secrecy needs to come off now.

> **B.** **The Disclosure Statement Fails to Disclose the Criminal Action and the Debtor's Sentencing Exposure.**

The Disclosure Statement must include the "condition and performance of the debtor while

in Chapter 11" and "[i]nformation relevant to the risks being taken by the creditors and interest holders . . ." *In re* Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). Here, during the pendency of this case and after the Court entered the order for relief, the Debtor was indicted for six counts of Tax Fraud in the Criminal Action. The Disclosure Statement discloses neither the Criminal Action nor Debtor's sentencing exposure of between 188 months and 235 months (or, 15.66 and 19.58 years) and that he has an authorized sentence of 30 years if he's convicted on all six counts of felony. Debtor clearly cannot serve as the Disbursing Agent from behind a prison wall, and the First Plan reserves to make all distributions "null and void" if not cashed within 90 days after "issuance" rather than delivery to the distributee. That opens the door for fraud by this Debtor, where he may delay the mailing of any check or even backdate when the date of "issuance" had occurred. Clearly, the creditors cannot make an informed judgment without all of this information.

**C.    Illusory and Fraudulent Promises of Distributions: Debtor Cannot Reserve the Right to Object to Claims without Disclosing the Nature of His Objections; Cannot Make Himself the Disbursing Agent while He's Imprisoned and Cancel the Right to Payment for Creditors; and Cannot Setoff Unliquidated Claims.**

Debtor's First Plan is clearly submitted in bad faith in violation of the Code. 11 U.S.C. § 1129(a)(3). It contains certain terms described below which, in their totality, renders the promise of distributions illusory and fraudulent.

Debtor proposes to make himself the Disbursing Agent when he currently has a sentencing exposure of imprisonment between 188 and 235 months (or, 15.66 and 19.58 years) if he's convicted on all six counts of Tax Evasion. The First Plan further provides all payments are "null and void" if a check is not deposited or cash in 90 days after "issuance," not the date of delivery. [ECF No. 221 § 7.1(c)]. Additionally, Debtor reserves a purported right of setoff against any payment based on an unliquidated claim against the distributee. [Id. § 7.1(d), at 15]. This is bait-

and-switch at its finest: Debtor proposes to reserve until after confirmation of the First Plan to raise objections to claims. As a matter of bad faith, the First Plan creates a system, once again, where Debtor gets to unilaterally decide whether to pay the creditors he likes and ignore the creditors he dislikes. Debtor claims that, while he's imprisoned in a federal jail, he can "issue" a check, but not deliver the same to the recipient, and then claim that the right to payment is null and void if there was no deposit in 90 days. This opens the door for fraud by the Debtor, whether he delays the mailing of any check or even backdates the date of "issuance" of a check.

But there is a duty to disclose potential adversary proceedings against creditors before they vote. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988). Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003). In the absence of a Code provision, substantive rights are governed by State law. Butner v. United States, 440 U.S. 48 (1979); Barnhill v. Johnson, 503 U.S. 393 (1992). Under Pennsylvania and State law, "A court will not offset an unliquidated claim against a final judgment." 47 AM. JUR. 2d Judgments § 813; accord. Harrison v. Stoeckert, 85 A.2d 154, 155 (Pa. 1952) ("To a judgment there can be no set-off of a debt not in judgment."). Moreover, the U.S. Court of Appeals for the Third Circuit agreed that allowing a creditor to raise a setoff post-confirmation would be "unfair to other creditors and the Debtors, and [could] conceivably undermine the plan of reorganization and the objectives and structure of the Bankruptcy Code." United States v. Continental Airlines (In re Continental Airlines), 134 F.3d 536, 542 (3d Cir. 1998). "[T]he right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim." Id.

The result in Continental Airlines applies with equal force to this Debtor. Nothing in the Code relieves the Debtor of reducing any of his claims to judgment before asserting a right of

8

setoff against distributees under the First Plan. More to the point, Debtor has no right of setoff against Jordan and Cornerstone Law Firm, LLC based on unliquidated claims. Consequently, the First Plan creates an illusory promise of payment to creditors which constitutes bad faith.

**D.      Debtor Fails to Disclose How He Paid the $1,165,057.82 Claim by the IRS.**

The First Plan states that the "Debtor" himself "has paid all obligations due and owing to the Internal Revenue Service . . ." [ECF No. 221 at 13 n.1]. The IRS filed Claim 2-2 with this Court, showing a claim of $1,165,057.82. Nothing in the Disclosure Statement provides how the Debtor had paid off that, when he reports he has no income for 2023 and 2024. [ECF No. 180, Official Form 107 at 1-2]. If he had meant Shannon Kroemmelbein had paid the same, then that, too, must be included in the Disclosure Statement and further illustrates the harm described above where her estimated net worth and the value of the transfers to her are undisclosed.

**E.      Debtor Cannot Mislead Creditors with Patently Frivolous Contentions that are Barred by Res Judicata or Collateral Estoppel.**

The Disclosure Statement would inform creditors, "to the extent the Debtor or Reorganized Debtor recovers any money from the litigation pending against Jason Scott Jordan in the Court of Common Pleas of Philadelphia County (the 'Litigation'), the Allowed Class 4 Claims will also receive twenty (20%) percent of any recovery after all expenses are paid in the Litigation." [ECF No. 221 § 3.4(a)(2) at 11]. In that case (the "Philadelphia Litigation"), Complete Business Solutions Group, Inc. seeks to recover $35,293,618.31 from Debtor based on personal guarantees for the debts, which began in 2019, of National Brokers of America, Inc. and Bene Market, LLC. [ECF No. 10-2 at 221-24 (Compl. ¶¶ 9-20)]. Debtor's so-called "claim" is that, after freezing Jordan out of NBOA in 2014, Jordan somehow must indemnify or pay half of all debts that Debtor personally guaranteed without Jordan's consent beginning in 2019. Debtor further seeks to pierce the veil of NBOA and Bene Market, LLC, claiming that doing so results in Jordan (rather than

9

Debtor, standing alone) having to pay half the debts that Debtor personally guaranteed.

In addition to not estimating the "expenses" of the Philadelphia Litigation, the Disclosure Statement fails to inform creditors that Debtor is bound by res judicata and collateral estoppel in this claim as a result of Jordan's final judgment in the Berks County Court of Common Pleas. As shown in the Findings of Fact by Judge Timothy Rowley, Debtor froze Jordan out of NBOA since August 4, 2014. [ECF No. 10-2, at 4-5, Findings of Fact ¶¶ 21-28]. Redmond then created an "identical business," Bene Market, LLC, and took NBOA's employees and book of business. [Id. ¶¶ 66-77]. In breach of his fiduciary duties, Debtor "misappropriated" $15,496,492 from NBOA and Bene Market, LLC, and Jordan was entitled to have of that amount. [Id. ¶ 78]. Judge Rowley considered and rejected any adjustment of the judgment against Debtor based on the fact that Debtor personally guaranteed the debts of NBOA and Bene Market, LLC.

In the Philadelphia Litigation, Debtor maintains a patently frivolous theory, with no precedent whatsoever, that the tort victim (i.e., Jordan) indemnifies the tortfeasor (i.e., Debtor) for the tortfeasor's debts. It's patently frivolous on its face, such as to have zero value. Under a successful veil-piercing ("VP") claim in Pennsylvania law, personal liability is imposed "only where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." Mortimer v. McCool, 255 A.3d 261, 270 (Pa. 2021). The scope of VP liability, in other words, is applied to the extent "the rights of innocent parties are not prejudiced . . ." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978). Here, by freezing Jordan out of the business continuously since 2014 and then, afterwards, personally guaranteeing debts without Jordan's knowledge, consent, or control, then Jordan is an innocent party and VP liability cannot reach him. Veil-piercing these entities results in personal liability imposed on Debtor alone.

The Disclosure Statement and First Plan affirmatively misrepresent to the creditors the

10

extent of a purported "claim" against Jordan that is barred by res judicata or collateral estoppel.

**F.       Debtor Cannot Modify the Plan without Court Approval.**

The First Plan here allows Debtor to modify the same after confirmation and without court approval, contrary to 11 U.S.C. § 1127(b). Section 1127(b) is "the exclusive means" of modifying a Chapter 11 plan. *In re* SC SJ Holdings, LLC, 2024 U.S. App. LEXIS 7317, at *5 (3d Cir. Mar. 28, 2024). Allowing such modification, as well as settlement of claims, without court approval is violative of the Code. *In re* Beyond.com Corp., 289 B.R. 138, 143-44 (Bankr. N.D. Cal. 2003).

**II.      A Case Management Order is Necessary to Set a Bar-Date and Other Pertinent Deadlines and Regulate the Manner of Giving Notice.**

Moving Creditors have moved for a case management order, ECF No. 248, incorporated by reference, which further supports denying Debtor's Motion.

<u>**CONCLUSION**</u>

**WHEREFORE**, based on the foregoing, the Court should deny the Motion.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: February 18, 2025          By:     /s/ Joel A. Ready
                                                    Joel A. Ready, Esquire
                                                    PA Attorney I.D. # 321966
                                                    Benjamin J. Lewis, Esquire
                                                    PA Attorney I.D. # 313733
                                                    8500 Allentown Pike, Suite 3
                                                    Blandon, PA 19510
                                                    (610) 926-7875