**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | : |
| | : **CHAPTER 11** |
| **ALAN CHRISTOPHER REDMOND,** | : |
| | : **BANKRUPTCY NO. 24-13093pmm** |
| **Debtor.** | : |
| | : |

**FIRST AMENDED PLAN OF REORGANIZATION
PROPOSED BY ALAN CHRISTOPHER REDMOND DEBTOR-IN-POSSESSION**

CIARDI CIARDI & ASTIN

Dated: March 25 ~~13~~, 2025          By: _____

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA 19103
T (215) 557-3550
F (215) 557-3551
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com
Counsel to the Debtor

| Field Code Changed |
| Field Code Changed |

Alan Christopher Redmond, the Debtor and Debtor-in-Possession (the "Debtor"), hereby proposes the following First Amended Plan of Reorganization (the "Plan") under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

**ARTICLE I**
**Definitions**

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth, such meanings to be equally applicable to the singular and plural forms of the terms defined except as the context otherwise requires. Any term defined in the Bankruptcy Code and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless the context otherwise requires.

1.1 **"ADMINISTRATIVE CLAIM"** means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2 **"ADMINISTRATIVE CLAIMANT"** means the holder of an Administrative Claim.

1.3 **"ALLOWANCE DATE"** means the date a Claim becomes an Allowed Claim, respectively.

1.4 **"ALLOWED"** The use of the term "Allowed" with reference to a Claim (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth

in a Proof of Claim properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof), and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

1.5   **"ALLOWED CLAIM"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in his Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

1.6   **"ASSETS"** means all of the Debtor's property, real and personal, tangible and intangible, including without limitation accounts receivable, goods, chattel paper, documents, instruments, money, fixtures, contract rights, causes of action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.7   **"BANKRUPTCY CODE"** means title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

1.8   **"BANKRUPTCY COURT" or "COURT"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

1.9 **"BANKRUPTCY RULES"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time promulgated by the Supreme Court of the United States.

1.10 **"BAR DATE"** means the last date fixed by Order of the Court for the filing of proofs of claim.

1.11 **"BUSINESS DAY"** means any day except a Saturday, Sunday, or other day on which commercial banks located in Pennsylvania, are authorized by law to close.

1.12 **"CASE"** means the reorganization case of the Debtor under Chapter 11 of the Bankruptcy Code presently captioned "In re Alan Christopher Redmond, Case No 24-13093PMM."

1.13 **"CAUSES OF ACTION"** means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including, without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

1.14 **"CLAIM"** means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

1.15 **"CLAIMANT"** A person or entity holding a Claim (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

1.16 **"CLASS"** means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan.

1.17 **"CONFIRMATION DATE"** means the date on which the Order confirming the Plan is filed on the docket.

4

1.18  **"CONFIRMATION HEARING"** means the hearing at which the Court considers confirmation of this Plan.

1.19  **"CONFIRMATION ORDER"** means the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.20  **"CONTESTED CLAIM" or "DISPUTED CLAIM"** means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Bankruptcy Code and Bankruptcy Rules, which objection has not been determined by a final order or a claim which is scheduled as contingent or disputed.

1.21  **"CREDITOR"** means the holder of a Claim against the Debtor.

1.22  **"DEBTOR"** means Alan Christopher Redmond.

1.23  **"DEFICIENCY CLAIM"** means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

1.24  **"DISBURSING AGENT"** has the meaning given to such term in Section 5.4 hereof.

1.25  **"DISPUTED CLAIM"** means any Claim which is scheduled as disputed, contingent or unliquidated, or which is objected to in whole or in part before the Effective Date.

1.26    **"DISTRIBUTION"** means any payment by the Debtor to a Creditor or Disbursing Agent on account of a Claim.

1.27    **"EFFECTIVE DATE"** means fifteen (15) days after the date upon which the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

1.28    **"FEE CLAIM"** means a claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Chapter 11 case.

1.29    **"FINAL ORDER"** means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment, order or other decree described in clause (a) above.

1.30    **"IMPAIRED CLASS"** means any Class of Claims which is impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.31    **"INSIDER"** means any "insider" as that term is defined in the Bankruptcy Code.

1.32    **"LIEN"** means, with respect to any of the Assets of the Debtor, any mortgage, lien, pledge, charge, security interest, or other security device (including a lease which is not a true lease) or encumbrance of any kind affecting such Asset.

6

1.33 **"PERSON"** means a person within the meaning of Section 101(41) of the Bankruptcy Code.

1.34 **"PETITION DATE"** means September 3, 2024, the date upon which the Involuntary Petition was filed against the Debtor.

1.35 **"PETITION"** means the Involuntary Petition filed against the Debtor which commenced this proceeding.

1.36 **"PLAN"** means this Plan of Reorganization, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

1.37 **"PLAN PROPONENT"** means the Debtor.

1.38 **"PRIORITY NON-TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

1.39 **"PRIORITY TAX CLAIM"** shall mean a Claim or a portion of a Claim for which priority is asserted under Section 507(a)(8) of the Bankruptcy Code.

1.40 **"PRO RATA"** means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Claims of such Class, including Contested Claims.

1.41 **"PROPONENT"** means the Debtor.

1.42 **"REJECTION CLAIM"** means any claim for amounts due as a result of the rejection of any executory contract or lease which is rejected by the Debtor by Final Order.

1.43 **"REORGANIZED DEBTOR"** means Alan Christopher Redmond, as reorganized on the Effective Date.

7

1.44    **"SCHEDULES"** means the schedules of assets and liabilities, as amended, filed by the Debtor with the Office of the Clerk of the Court pursuant to Bankruptcy Rule 1007.

1.45    **"SECURED CLAIM"** shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

1.46    **"TAX CLAIM"** means any Claim of the kind specified in Sections 502(i) and 507(a)(8), but only to the extent such Claim is entitled to such priority.

1.47    **"UNIMPAIRED CLASS"** means any Class of Claims which is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.48    **"UNSECURED CLAIM"** means any Claim, whether or not disputed, liquidated or contingent, including a Rejection claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

### ARTICLE II
### Classification of Claims

For the purpose of this Plan, Claims are divided into the classes set forth in Article III. A Proof of Claim asserting a claim which is properly included in more than one class is included in each such class to the extent that it qualifies within the description of such class.

2.1    **Claims Classified.** For purposes of voting and all confirmation matters, except as otherwise classified herein, all Claims (except for Administrative Claims), are classified as set forth in Article III of the Plan.

8

2.2     **Administrative Claims.**   As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims shall not be classified for purposes of voting or receiving distributions under the Plan.  Rather, all such claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article IV of this Plan.

**ARTICLE III**
**Treatment of Classes of Claim**

The treatment set forth in Article III shall be in full and final satisfaction and discharge of all claims of any creditor in any Class.

3.1.    **Class 1.**       **Secured Claim of WBL SPO, II, LLC**.  Class 1 consists of the secured claim of WBL SPO II, LLC ("WBL").  Class 1 is impaired.  WBL is secured on the Debtor's real property located at 2005 Regency Drive, Reading, PA (the "Property").  As of the Petition Date, the Class 1 Claim was $336,181.41~~544,032.85~~.  Except as otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor.  Upon the Effective Date of the Plan, the Debtor proposes to pay WBL a monthly payment on the Class 1 Claim of approximately $4,200.34 determined as follows:

(a) interest accruing at eight (8%) percent~~t the contract non-default rate~~;

(b) level monthly payments of principal and interest based on a ten (10)~~twenty~~-year amortization;

(c) escrow payment of $25,000.00 applied to the balloon payment due sixty (60) months after the Effective Date;~~and~~

(de) balloon payment of $154,340.72 payable sixty (60) months after ~~all outstanding principal, attorneys fees and costs within forty-eight months of~~ the Effective Date.

3.2.    **Class 2.**       **Secured Claim of Mercedes Benz of West Chester**.  Class

9

Formatted: Line spacing: single

Formatted: Line spacing: single

2 consists of the secured claim of Mercedes Benz of West Chester ("Mercedes"). Class 2 is unimpaired. Mercedes is secured on the 2021 Mercedes Benz S580. Since the Petition Date, the Debtor has been making payments to the Class 2 Creditor and as a result, as of December, 2024, the Class 2 Claim was reduced to $ 38,457.97 ("Mercedes Claim"). Except as otherwise provided herein, the treatment and consideration to be received by Class 2 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor. Upon the Effective Date of the Plan, the treatment of the Mercedes Claim shall be monthly payments of $1910.80 for the remaining term of the loan.

3.3    **Class 3.**    <u>**Secured Claim of Berks County.**</u> Class 3 consists of the real estate taxes due and owing to Berks County for the Property. Class 3 is Impaired. As of the Petition Date, the Class 3 Claim was $64,357.98 (the "Real Estate Tax Claim"). <u>The Debtor is confirming the amount due and owing for the Real Estate Tax Claim and reserves his rights to validate the numbers set forth in the Real Estate Tax Claim.</u> Commencing on the Effective Date of the Plan, the Class 3 Claimant shall receive equal monthly payments of principal and interest for 24 months in full settlement, satisfaction, release and discharge of the Real Estate Tax Claim.

3.4    Class 4.    <u>**Secured Claim of Pennsylvania Department of Revenue.**</u> Class 4 consists of taxes, interest, lien fees and penalties alleged to be due and owing to the Pennsylvania Department of Revenue ("PaDOR"). Class 4 is Impaired. As set forth in the amended proof of claim, the Class 4 Claim is $808,407.25 (the "Total Pa DOR Claim")[1]. The PaDOR has alleged in its claim that the secured portion of the Total Pa DOR Claim is $94,494.24.

---

[1] The Debtor's ability to validate certain amounts alleged to be due has been hindered by the Internal Revenue Service's failure to process certain amended tax returns and credits applied for, among other matters. As such, the Debtor reserves his rights to validate the numbers set forth in the PaDOR Claim.

10

Commencing on the Effective Date of the Plan, the Class 4 Claimant shall receive monthly payments with interest of eight (8%) percent for sixty (60) months from the Petition Date.

The Debtor's 2023 tax returns have not been filed yet. As set forth in the Total Pa DOR Claim, the Pennsylvania Department of Revenue has asserted an estimated claim for the 2023 tax liability. The Pennsylvania Department of Revenue has estimated that $496,590.80 of the Total Pa DOR Claim will be a priority claim. To the extent that a different amount is entitled to priority treatment, the Pennsylvania Department of Revenue will amend the Total Pa DOR Claim. Any and all priority claim due and owing to the Pennsylvania Department of Revenue will be paid in accordance with 11 U.S.C. §507(a)(8).

The Debtor's 2024 tax returns will be put on extension and will be paid in the normal and ordinary course.

3.54    **Class 54.**        **Unsecured Claims.** Class 54 consists of Alleged Unsecured Claims. Class 54 is Impaired. Class 54 Claims are $62,986,902.07, although that includes certain disputed claims. Except as otherwise provided herein, the treatment and consideration to be received by Class 54 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor.

a.    Class 54 Payments.

1.    Payment: Class 54 creditors shall receive a pro-rata payment of $2,933,350.00 (the "Payment") paid as follows:

(a)    $466,670.00 fifteen (15) days after entry of the Confirmation Order on March 31, 2025;

(b)    $333,340.00 on June 30, 2025;

(c)    $333,340.00  on September 30, 2025;

11

(d)    $800,000.00 on December 31, 2025;

(e)    $1,000,000.00 on March 31, 2026.

2.    <u>Additional Participation in Recovery on Litigation</u>. In addition to the Payment, to the extent that the Debtor or Reorganized Debtor recovers any money from the litigation pending against Jason Scott Jordan in the Court of Common Pleas of Philadelphia County (the "Litigation"), the Allowed Class 54 Claims will also receive twenty (20%) percent of any recovery after all expenses are paid relating to the Litigation.

3.    <u>Cure Period</u>. The Debtor will have a cure period of twenty-one (21) days for each of the scheduled payments.

### ARTICLE IV
### TREATMENT OF UNCLASSIFIED CLAIMS

4.1    **Administrative Claims**. All Administrative Claims shall be treated as follows:

a.    <u>Time for Filing Administrative Claims</u>. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and his counsel, notice of such Administrative Claim within (30) days after the Confirmation Date. Such notice must include at minimum (i) the name of the holder of the claim, (ii) the amount of the claim and (iii) the basis of the claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

b.    <u>Time for Filing Fee Claims</u>. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within thirty (30) days after the

12

Effective Date. Failure to file the fee application timely shall result in the fee claim being forever barred and discharged.

        c.      <u>Allowance of Administrative Claims</u>. An Administrative Claim with respect to which notice has been properly filed pursuant to Section 4.1(a) of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application has been properly filed pursuant to Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

        d.      <u>Payment of Allowed Administrative Claim</u>. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

        e.      <u>Professional Fees Incurred After the Effective Date</u>. Any professional fees incurred by the Debtor after the Effective Date without deduction must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

13

4.2 **Tax Claims.** Priority Tax Claims are certain unsecured income, employment, payroll, sales and other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled. Therefore, the Reorganized Debtor will pay to the holders of such claims the full amount due and owing, in equal monthly installments, for five years, with interest accruing at the statutory rate as of the Petition Date. As of the Petition Date, it has been alleged that the Debtor has unpaid tax obligations to the Berks County Tax Bureau, the Pennsylvania Department of Revenue, and the Internal Revenue Service.[2] The Debtor's ability to validate certain amounts alleged to be due has been impacted by the delays and failures to process amended tax returns and credits applied for, among other matters. To the extent that an Allowed Tax Claim is secured against Property of the Debtor, the secured lien shall remain intact until the Allowed Tax Claim is paid in full.

**ARTICLE V**
**Provisions for Execution of the Plan**

5.1 **Plan Funding and Release**. The Plan will be primarily funded by the Debtor receiving a contribution from his wife on the Effective Date and on the dates schedule for payment in Class 54 in exchange for releases of all estate causes of action and any claim that could be asserted by or through the Debtor's estate against Shannon Krommelbein, any entity owned by Shannon Krommelbein and any property in which she is an owner.

The Debtor has included a liquidation analysis in the First Amended Disclosure Statement.

---

[2] The Debtor believes he it has paid all obligations due and owing to the Internal Revenue Service but has listed them out of an abundance of caution. The Debtor intends on objecting to the claim filed by the Internal Revenue Service as the Internal Revenue Service has failed to properly apply tax payments made by the Debtor to the Internal Revenue Service, failed to apply certain ERC credits due and owing to the Debtor, and improperly assessed penalties and interest against the Debtor. Nothing in this Plan or the Disclosure Statement shall constitute an admission of liability, fault or wrongdoing.

5.2     Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

5.3     This Plan may be altered, amended, or modified by the Proponent before or after the Confirmation Date, as provided in Section 1127 of the Code.

5.4     **Disbursing Agent.** Alan Christopher Redmond shall be the Disbursing Agent herein ("Disbursing Agent").

## ARTICLE VI
## Additional Provisions Applicable To All Classes

6.1     The payments, distributions and other treatments provided in respect of each Allowed Claim in the Plan shall be in full settlement and complete satisfaction discharge and release of such Allowed Claim.

6.2     Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim or Interest which at such date or time are disputed, unliquidated or contingent shall not be made on the disputed portion until such Claim becomes an Allowed Claim, whereupon such payment and distribution shall be made promptly pursuant to and in accordance with this Plan.

## ARTICLE VII
## Provisions Governing Distributions and General Provisions

7.1     Distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as may be otherwise ordered by the Court.

Formatted: Line spacing: single

Formatted: Line spacing: single

Formatted: Line spacing: single

Formatted: Line spacing: single

15

a.      Delivery of Distributions. Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. All claims for undeliverable distributions must be made to the Disbursing Agent within one hundred twenty (120) days after the respective distribution was made. After that date, all unclaimed property will revest with the Disbursing Agent for redistribution pro-rata to the remaining creditors in the appropriate class, and the Claim of any holder with respect to such distribution will be discharged and forever barred.

b.      Means of Cash Payment. Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. All cash distributions will be made by the Disbursing Agent.

c.      Time Bar to Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of their issuance. Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim with respect to which the check originally was issued. Any claim in respect of such a voided check must be made on or before ninety (90) days after the date of issuance of the check. After the date, all claims in respect of void checks will be discharged and forever barred and the cash, including interest earned shall be the property of the Reorganized Debtor.

d.      Setoffs. The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any claims of any nature whatsoever the Debtor may have against the claimant, but neither the failure to do

16

so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such claimant.

e. De Minimis Distributions. No cash payment of less than twenty-five dollars ($25.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to Debtor to make such a payment.

f. Saturday, Sunday or Legal Holiday. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

7.2 Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received, or if mailed, five (5) days after the date of mailing as such may have been sent by certified mail, return receipt requested, and if sent to:

(a) If to the Reorganized Debtor, addressed to:

Alan Christopher Redmond
2 High Road
Wyomissing, PA 19610

(b) With copies to Counsel:

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street,
Philadelphia, PA 19103

7.3 No default shall be declared under this Plan unless any payment due under this Plan shall not have been made within 21 days after written notice to the Reorganized Debtor and counsel for the Debtor for failure to make payment when due under the Plan.

**ARTICLE VIII**

Formatted: Line spacing: single

17

### Effect of Confirmation

**Formatted:** Line spacing: single

8.1    **Injunction.** Except as otherwise expressly provided in this Plan or to enforce its provisions, the Confirmation of the Plan shall act to permanently enjoin on or after and as long as the Debtor comply with the Plan on the Effective Date, all Persons who have held, hold or may hold Claims of or against the Debtor and the Reorganized Debtor (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Reorganized Debtor or the Property of the Reorganized Debtor with respect to any such Claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtor thereof, or against the property of the Reorganized Debtor with respect to any such Claim or, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Reorganized Debtor thereof, or against the property of the Reorganized Debtor, with respect to any such Claim.

8.2    **Term of Injunctions or Stays.** Unless otherwise provided in this Plan, all injunctions or stays provided for in this Chapter 11 Case pursuant to Sections 105 or 362 of the Code or otherwise and extant on the Confirmation Date shall remain in full force and effect, until such time as the Bankruptcy Court orders otherwise. Upon the occurrence of a default hereunder, creditors shall have the right to seek relief from the stays and/or termination of the injunctions provided for herein.

8.3    **Injunction Against Interference With Plan.** Except as otherwise permitted under the Plan, no entity may commence or continue any action or proceeding, or

18

perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

**ARTICLE IX**
**Executory Contracts**

9.1     **Rejection**.  As of the Effective Date, the Debtor assumes all executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code.

9.2     **Damages**.  Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the Clerk of the Court within thirty days after the date of rejection.  If a Rejection Claim becomes an Allowed claim then it shall constitute a general unsecured claim under Class 5 as appropriate.

**ARTICLE X**
**Cramdown Provisions and Confirmation Request**

10.1    In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provision of Section 1129(b) of the Bankruptcy Code.

**ARTICLE XI**

**Modification of the Plan**

11.1    **Pre-Confirmation Modification**.  At any time before the Confirmation Date, the Plan may be modified by the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

11.2    **Pre-consummation Modification**.  At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by

19

the Proponent upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

11.3    **Non-Material Modifications.** At any time, the Proponent may, without the approval of the Court, so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

## ARTICLE XII
## Retention of Jurisdiction

12.1    The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

(a)    to determine any and all objections in the allowance of claims and amendments to schedules;

(b)    to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

(c)    to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d)    to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e)    to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the

20

rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f) to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g) to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

(h) to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j) to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k) to enforce all discharge provisions under the Plan; and

(l) to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

### ARTICLE XIII
### Causes of Action

13.1 **Suits, Etc.** Except as otherwise provided in this Plan, the Debtor reserves the right to initiate or continue any litigation or adversary proceeding permitted under Title 11 of the United States Code and applicable Federal Rules of bankruptcy procedure with respect to any Cause of Action.

21

13.2    **Powers**. The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action from time to time in his discretion. To the extent any Cause of Action results in a claim against the Debtor, such claims shall be treated in Class 4.

13.3    **Releases**. In exchange for the contribution by Shannon Krommelbein in Section 5.1, the Debtor and the estate hereby release and discharge all claims, causes of action under Pennsylvania law, the Bankruptcy Code or any other basis which exist up through the Effective Date including all Chapter 5 claims under the Bankruptcy Code and any claim to recharacterize the ownership of property or assets.

TO BE CLEAR, the releases contained herein covers the Debtor, Shannon Krommelbein and any company where Shannon Krommelbein has an ownership interest.

**Formatted:** Font: Times New Roman, 12 pt

### ARTICLE XIV
### Miscellaneous

14.1    **Choice of Law.** Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law rules thereof.

14.2    **Payment of Statutory Fees**. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. With specific regard to those fees attributable to the Office of the United States Trustee, Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed or closed pursuant to a final decree.

22

14.3     **Discharge of Debtor**.  Except as otherwise provided in this Plan or in any Judgment of this Court on a dischargeability complaint, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, any of his assets or properties and the Debtor's Estate to the full extent permitted by the Bankruptcy Code.  Except as otherwise provided in this Plan or in any other order or judgment of this Court (i) on the Motion of the Debtor pursuant to Section 1141(d)(5), all Claims against the Debtor will be satisfied, discharged and released in full and (ii) all Persons shall be precluded from asserting against Debtor, successors, or his assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date as is solely permitted by the Bankruptcy Code.

14.4     **Discharge of Claims; Injunction**.  Except as otherwise provided in this Plan or in any other order or judgment of this Court, the rights afforded in this Plan and the payments and distributions to be made under the Plan shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature or description whatsoever against the Debtor, the estate or any of his assets, all existing Claims against the Debtor, the estate and all of his assets and properties will be, and be deemed to be, exchanged, satisfied, discharged and released in full; and all holders of claims shall be precluded and enjoined from asserting against the Debtor, the Reorganized Debtor, the Disbursing Agent, his successor or his respective Assets or properties any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation of the Plan, whether or not the holder filed a proof of claim.

23

14.5    **Effect of Confirmation Order**. Except as provided in Section 1141(d) of the Bankruptcy Code and except as otherwise provided in this Plan, the provisions of the Plan and the Confirmation Order shall bind the Reorganized Debtor and all holders of claims and will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code and whether or not such holder is impaired under the Plan and whether or not such holder has accepted the Plan, and shall terminate all rights, claims and interests of such holder, except as provided in the Plan.

14.6    **Severability**. Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

14.7    **Successors and Assigns**. The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that Person.

14.8    **Binding Effect**. The Plan will be binding upon and inure to the benefit of the Debtor and his Creditors.

14.9    **Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign

24

taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

14.10   **Disclaimer and Reservation of Rights Concerning Tax Obligations and Criminal Proceedings.** The inclusion of any tax claims in the Disclosure Statement or this Plan is not an admission of any wrongdoing or any impropriety of the Debtor, but merely acknowledges that certain claims have been filed by the taxing authorities. Furthermore, the Debtor specifically objects to any claim(s) asserted by the Internal Revenue Service and intends on filing a claim objection to the claim filed by the Internal Revenue Service in the amount of $1,165,057.82 as the Debtor believes he has paid all obligations due and owing to the Internal Revenue Service. The Debtor does not waive any Fifth Amendment or other constitutional rights by providing these disclosures. All statements regarding tax obligations are included solely to fulfill Bankruptcy Code requirements and shall not be construed as admissions. Nothing in this Plan shall constitute an admission of liability, fault or wrongdoing.

**ARTICLE XV**
**Provisions for Resolving and Treating Claims**

15.1   **Objections.** Within sixty (60) days after the Confirmation Date, all objections to Claims, unless an objection has already been filed, will be filed with the Court and served on the holders of each of the Claims to which objections are made. If no objection to a claim is filed within sixty (60) days after the Confirmation Date, the claim will be deemed allowed. The Debtor is still reviewing proof of claims but the Debtor does intend to object to the Claim of Ethan Shalter and the claim of the Internal Revenue Service.

15.2   **Prosecution of Objections.** After the date of entry of the Confirmation Order, only the Disbursing Agent will have authority to file objections, litigate to judgment, settle

25

or withdraw objections to Contested Claims. Any objections to claims which have been filed by the Debtor which are pending on the Effective Date shall be transferred to the Disbursing Agent.

15.3   **No Distributions Pending Allowance**. No payments or distributions will be made with respect to any Contested Claim except to the extent that the Contested Claim becomes an Allowed Claim. If only a portion of a claim is disputed (and in the absence of a basis for set off or counterclaim), the distribution will be made on a pro rata basis on the uncontested portion of the claim, pending resolution of the portion which is disputed.

15.4   **Distributions after Allowance**. Payments and distribution to each holder of a Contested Claim, to the extent that the Contested Claim becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs as soon as practicable after the date that the order or judgment of the Court allowing the Claim becomes a Final Order.

Dated: March 25~~13~~, 2025          **ALAN CHRISTOPHER REDMOND**

By:   _____
      Debtor


                                **CIARDI CIARDI & ASTIN**

By:   */s/ Albert A. Ciardi, III*
      Albert A. Ciardi, III, Esq.
      Nicole M. Nigrelli, Esq.
      1905 Spruce Street,
      Philadelphia, PA  19103
      (215) 557-3550

      Attorneys for Debtor

26