**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **ALAN CHRISTOPHER REDMOND,** | : | **Case No. 24-13093(PMM)** |
| | : | |
| **Debtor.** | : | |
| | : | |

**FIRST AMENDED DISCLOSURE STATEMENT RELATED TO THE FIRST
AMENDED PLAN OF REORGANIZATION PROPOSED BY ALAN CHRISTOPHER
REDMOND AS A DEBTOR-IN-POSSESSION**

Formatted: No underline

Dated: March 25~~January 21~~, 2025

**Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA  19103
T: (215) 557-3550
F: (215)557-3551
Email: aciardi@ciardilaw.com
Email: nnigrelli@ciardilaw.com
Attorneys for the Debtor and
Debtor-In-Possession**

Field Code Changed

Field Code Changed

1

## I.  GENERAL BACKGROUND

Alan Christopher Redmond (the "Debtor") provides this First Amended Disclosure Statement ("Disclosure Statement") to all of his known Creditors entitled to same pursuant to section 1125 of title 11, as amended (the "Bankruptcy Code") in connection with his First Amended Plan of Reorganization (the "Plan"). A copy of the Plan accompanies the Disclosure Statement. The purpose of this Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Plan. The capitalized items used in this Disclosure Statement, if not defined herein, shall have the same meaning as indicated in the Plan.

**NO REPRESENTATION CONCERNING THE DEBTOR-IN-POSSESSION (INCLUDING THOSE RELATING TO FUTURE OPERATIONS, THE VALUE OF ASSETS, ANY PROPERTY, OR CREDITORS AND OTHER CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED. ALL FINANCIAL INFORMATION IS BASED UPON THE DEBTOR'S REPRESENTATIONS.**

On September 3, 2024 (the "Petition Date"), Jason Scott Jordan, Cornerstone Law Group, LLC and Ethan Shalter (the "Petitioning Creditors") filed an involuntary petition against Alan Christopher Redmond. On October 3, 2024, an order for relief was entered under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). The Debtor remains in possession of his property and continues to operate his business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal business reorganization section of the United States Bankruptcy Code but may also be used by individuals to reorganize their affairs. Pursuant to Chapter 11, a Debtor is permitted to reorganize his business or personal affairs for his own benefit and that of his creditors,

The objective of a Chapter 11 case is the formulation of a plan of reorganization of the Debtor and his affairs. Creditors are given an opportunity to vote on any proposed plan, and the plan must be confirmed by the Bankruptcy Court to be valid and binding on all parties. Once the plan is confirmed, all claims against the Debtor which arose before the Chapter 11 proceeding was initiated are extinguished, unless specifically preserved in the Plan.

## DISCLAIMERS

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF THE STATEMENT AND REPRESENTATIONS CONTAINED HEREIN ARE MADE SOLELY BY OR AT THE INSTANCE OF PLAN PROPONENT.

CERTAIN OF THE INFORMATION PROVIDED, BY ITS NATURE, IS FORWARD LOOKING, CONTAINS ESTIMATES AND ASSUMPTIONS WHICH MAY PROVE TO BE FALSE OR INACCURATE AND CONTAINS PROJECTIONS WHICH MAY BE MATERIALLY DIFFERENT FORM ACTUAL FUTURE EXPERIENCES.    SUCH ESTIMATES AND ASSUMPTIONS ARE MADE FOR INFORMATIONAL PURPOSES ONLY.

## VOTING PROCEDURE

The United States Bankruptcy Court has reviewed this Disclosure Statement and entered an Order determining that this document contains "adequate information" such that creditors can meaningfully evaluate the Plan. A copy of the Bankruptcy Court Order approving the Disclosure

1

Statement is included in this package. Only after creditors have had an opportunity to vote on the Plan will the Court consider the Plan and determine whether it should be approved or confirmed.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
Ciardi Ciardi & Astin
1905 Spruce Street
Philadelphia, PA 19103

BALLOTS MUST BE RECEIVED ON OR BEFORE 5:00 P.M. ON _____, 2025 TO BE COUNTED IN THE VOTING. BALLOTS RECEIVED AFTER THIS TIME WILL NOT BE COUNTED IN THE VOTING UNLESS THE COURT SO ORDERS.

THE DEBTOR RECOMMENDS A VOTE "FOR ACCEPTANCE" OF THE PLAN.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with Section 1125 of the Bankruptcy Code and is provided to all of the known holders of Claims against the Debtor whose Claims are impaired under the Plan. The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan. Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

A.    **Persons Entitled to Vote on Plan**

Only the votes of classes of claimants which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally, and subject to the specific provisions of

2

Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of their claims.

In determining the acceptance of the Plan, a vote will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who has timely filed with the Court a proof of claim which has not been objected to or disallowed prior to computation of the votes on the Plan. The Ballot Form does not constitute a proof of claim. If you are in any way uncertain if your Claim has been correctly scheduled, you may check the Debtor's Schedules which are on file in the Bankruptcy Court, but it is suggested that you file a Proof of Claim. The Clerk of the Bankruptcy Court will not provide this information by telephone.

**B.      Hearing on Confirmation**

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

**C.      Acceptances Necessary to Confirm Plan**

At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired class. Under Section 1126 of the Bankruptcy Code, an impaired class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is acceptance of the Plan by all members of an impaired class, the Bankruptcy Court must also determine that under the Plan class members will receive property of a value, as of the Effective

3

Date of the Plan, that is not less than the amount that such class members would receive or retain if the Debtor's estate was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

**D.    Confirmation of the Plan Without the Necessary Acceptances**

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes. This provision is set forth in Section 1129(b) of the Bankruptcy Code.

E.    Statement Regarding Tax Claims and Reservation of Rights.

The inclusion of any tax claims in this Disclosure Statement or the Debtor's Plan is not an admission of any wrongdoing or any impropriety of the Debtor, but merely acknowledges that certain claims have been filed by the taxing authorities. Furthermore, the Debtor specifically objects to any claim(s) asserted by the Internal Revenue Service and intends on filing a claim objection to the claim filed by the Internal Revenue Service in the amount of $1,165,057.82 as the Internal Revenue Service has failed to apply tax payments of the Debtor, failed to apply certain ERC credits due and owing to the Debtor and improperly assessed certain penalties and interest against the Debtor. The Debtor does not waive any Fifth Amendment or other constitutional rights by providing these disclosures. All statements regarding tax obligations are included solely to fulfill Bankruptcy Code requirements and shall not be construed as admissions.

**II.    THE LITIGATION AND FILING OF THE INVOLUNTARY BANKRUPTCY**

As set forth above, on September 3, 2024, the Petitioning Creditors filed an involuntary petition against Alan Christopher Redmond. On October 3, 2024, this Court entered an order for

4

relief under the Bankruptcy Code. Prior to the filing of the involuntary bankruptcy, there has been over a decade of litigation between the Debtor, Jason Scott Jordan ("Jordan") and Cornerstone Law Group. The first piece of litigation was filed on or about August 8, 2014 in the Berks County Court of Common Pleas captioned *National Brokers of America, Inc. and Alan Christopher Redmond v. Jason Scott Jordan,* C.A. No. 14-17117. In that case, Jordan filed several amended counterclaims alleging breach of contract, breach of fiduciary duty, breach of the wage payment and collection law and conversion. In February of 2019, National Brokers of America, Inc. filed a bankruptcy petition under chapter 7. As a result of the bankruptcy filing, the Berks County litigation was stayed as against National Brokers of America, Inc.

Since the filing of the involuntary petition, Jordan has filed numerous pleadings including an ex parte motion for a Preliminary Injunction and/or a temporary restraining order, issued dozens of subpoenas without serving the subpoenas on opposing counsel, filed multiple motions including a motion to remove state court proceeding to bankruptcy court, complaint to determine the Debtor's dischargeability of debts as to Jordan, motion to compel delivery of non-debtor assets, and motion to compel formation of an official committee of unsecured creditors.

On October 17, 2024, the Debtor was indicted. A true and correct copy of the indictment is attached hereto and incorporated herein as Exhibit "A."

### III. FINANCIAL CONDITION OF DEBTOR

#### A. Liquidation Value of the Debtor

##### 1. The Assets of the Debtor are the following:

Personal Property
| | |
|---|---|
| Household Goods, Clothes, and Jewelry | $ 42,750.00 |
| interest in vehicles | $ 8340,0070.00 |
| Interest in Partnerships and LLCs | $ 50,000.00 |

5

Real Property
    2005 Regency Drive                 $1,00450,000.00

Total Property                     $ 1,175582,7570.00

           **2.**      **The Liabilities of Debtor are as follows:**      ← − − − | **Formatted:** Indent: Left: 0.5" |

Secured Debt

WBL SPO, II                   $ 548,750.76[1]  − − − − − − − − − − − − < − − | **Formatted:** Superscript |
                                                | **Formatted:** Superscript |

Mercedes Benz of West Chester      $ 30,000.00

Unsecured Priority Debt            $ 2,644,912.48

Unsecured Debt                  $ 62,986,902.07

Total Liabilities                  $ 66,205,847.40

All liabilities are taken from the filed Schedules or filed proof of claim.

Attached as Exhibit "B" is a list of all of the Debtor's real and personal property, any  − − − | **Formatted:** Not Highlight |

security interest asserted against the property, and remaining available for unsecured creditors.

Attached as Exhibit "C" is a list of all of the partnerships and LLCs in which the Debtor has an

ownership interest, their current operating status and any value attributed to the LLC. ~~The assets~~

~~listed above are based upon the amounts shown in the Liquidation Analysis prior to any~~

~~discounts on liquidation or costs of liquidation. These are similar to the amounts on the~~

~~Summary of Assets and Liabilities in the Debtor's Schedules, which also reflected fair market~~

---

[1] WBL filed a proof of claim in the amount of $548,750.76; the Debtor believes the secured claim is $336,181.41. However, because there is a dispute as to the amount of the secured claim, the Debtor has used the higher number.

6

value. The numbers set forth above have not been discounted by the Debtor to adjust for what the Debtor would realize from an actual sale of the assets if sold at auction. Those discounts are addressed in the Liquidation Analysis. The Liquidation Analysis is attached hereto and incorporated herein as Exhibit "A" and solely represents the Debtor's estimate of the results of a liquidation.

    2.    The Liabilities of Debtor are as follows:

| Secured Debt | |
|---|---|
| WBL SPO, II | $ 544,032.85 |
| Mercedes-Benz of West Chester | $ 30,000.00 |
| Unsecured Priority Debt | $ 2,644,912.48 |
| Unsecured Debt | $ 62,986,902.07 |
| Total Liabilities | $ 66,205,847.40 |

All liabilities are taken from the filed Schedules.

## IV.    SUMMARY OF PLAN OF REORGANIZATION

The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan itself. The Plan, if confirmed, will be binding upon the Debtor, his creditors and shareholders. All creditors are urged to carefully read the Plan.

### A.    Classes of Claims

The Plan divides Claims into various separate classes. Under the Plan, there are four separate classes of creditors (classes 1 through 54).

### B.    Treatment of Classes of Claim

Class 1.    **Secured Claim of WBL SPO, II, LLC**. Class 1 consists of the secured

7

claim of WBL SPO II, LLC ("WBL"). Class 1 is impaired. WBL is secured on the Debtor's real property located at 2005 Regency Drive, Reading, PA (the "Property"). As of the Petition Date, the Class 1 Claim was $336,181.41544,032.85. Except as otherwise provided herein, the treatment and consideration to be received by Class 1 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor. Upon the Effective Date of the Plan, the Debtor proposes to pay WBL a monthly payment on the Class 1 Claim of approximately $4,200.34 determined as follows:

(a) interest accruing at eight (8%) percent;t the contract non default rate;

(b) level monthly payment of principal and interest based on a twentten (10)y year amortization;

(c) escrow payment of $25,000.00 applied to the balloon payment due sixty (60) months after the Effective Date; and

(de) balloon payment of $154,340.72all outstanding principal, attorneys fees and costs within payable sixty (60)forty eight months after theof the Effective Date.

Class 2. **Secured Claim of Mercedes Benz of West Chester.** Class 2 consists of the secured claim of Mercedes Benz of West Chester ("Mercedes"). Class 2 is unimpaired. Mercedes is secured on the 2021 Mercedes Benz S580. Since the Petition Date, the Debtor has been making payments to the Class 2 Creditor and as a result, as of December, 2024, the Class 2 Claim was reduced to $ 38,457.97 ("Mercedes Claim"). Except as otherwise provided herein, the treatment and consideration to be received by Class 2 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor. Upon the Effective Date of the Plan, the treatment of the Mercedes Claim shall be monthly payments of $1910.80 for the remaining term of the loan.

8

**Class 3.** **Secured Claim of Berks County.** Class 3 consists of the real estate taxes due and owing to Berks County for the Property. Class 3 is Impaired. As of the Petition Date, the Class 3 Claim was $64,357.98 (the "Real Estate Tax Claim"). The Debtor is confirming the amount due and owing for the Real Estate Tax Claim, if any, and the Debtor reserves his rights to validate the numbers set forth in the Real Estate Tax Claim. Commencing on the Effective Date of the Plan, the Class 3 Claimant shall receive equal monthly payments of principal and interest for 24 months in full settlement, satisfaction, release and discharge of the Real Estate Tax Claim.

**Class 4.** **Secured Claim of Pennsylvania Department of Revenue**. Class 4 consists of taxes, interest, lien fees and penalties asserted by the Pennsylvania Department of Revenue ("PaDOR"). Class 4 is Impaired. As set forth in the amended proof of claim, the Class 4 Claim is $808,407.25 (the "Total Pa DOR Claim")[2]. The PaDOR allege in its claim that the secured portion of the Total Pa DOR Claim is $94,494.24. Commencing on the Effective Date of the Plan, the Class 4 Claimant shall receive monthly payments with interest of eight (8%) percent for sixty (60) months from the Petition Date.

The Debtor's 2023 tax returns have not been filed yet. As set forth in the Total Pa DOR Claim, the Pennsylvania Department of Revenue has asserted an estimated claim for the 2023 tax liability. The Pennsylvania Department of Revenue has estimated that $496,590.80 of the Total Pa DOR Claim will be a priority claim. To the extent that a different amount is entitled to priority treatment, the Pennsylvania Department of Revenue will amend the Total Pa DOR

---

[2] The Debtor's ability to validate certain amounts alleged to be due has been hindered by the Internal Revenue Service's failure to process certain amended tax returns and credits applied for, among other matters. As such, the Debtor reserves his rights to validate the numbers set forth in the PaDOR Claim.

9

Claim. Any and all priority claim due and owing to the Pennsylvania Department of Revenue will be paid in accordance with 11 U.S.C. §507(a)(8).

The Debtor's 2024 tax returns will be put on extension and will be paid in the normal and ordinary course.

**Class 5.     Unsecured Claims.** Class 54 consists of Alleged Unsecured Claims. Class 54 is Impaired. Class 54 Claims are $62,986,902.07, although that includes certain disputed claims. Except as otherwise provided herein, the treatment and consideration to be received by Class 54 shall be in full settlement, satisfaction, release, and discharge of its respective Claims and Liens against the Debtor.

**Formatted: Font: Bold**

a.   Class 54 Payments.

1.   Payment: Class 54 creditors shall receive a pro-rata payment of $2,933,350.00 (the "Payment") paid as follows:

    (a)   $466,670.00 fifteen (15) days after entry of the Confirmation Orderon March 31, 2025;

    (b)   $333,340.00 on June 30, 2025;

    (c)   $333,340.00 on September 30, 2025;

    (d)   $800,000.00 on December 31, 2025;

    (e)   $1,000,000.00 on March 31, 2026.

2.   Additional Participation in Recovery on Litigation. In addition to the Payment, to the extent that the Debtor or Reorganized Debtor recovers any money from the litigation pending against Jason Scott Jordan in the Court of Common Pleas of Philadelphia County(the "Litigation"), the Allowed Class 54 Claims will also receive twenty (20%) percent of any recovery after all expenses are paid relating to the Litigation.

10

3.    Cure Period. The Debtor will have a cure period of twenty-one (21) days for each of the scheduled payments.

C.    Administrative Claims. All Administrative Claims shall be treated as follows:

1.    Time for Filing Administrative Claims. The holder of an Administrative Claim, other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and his counsel, notice of such Administrative Claim within thirty (30) days after the Confirmation Date. Such notice must include at a minimum (i) the name of the holder of the claim, (ii) the amount of the claim, and (iii) the basis of the claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged. However, any claim that has been previously established by order of this Court, need not be noticed further.

2.    Time for Filing Fee Claims. Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a fee application within thirty (30) days after the Effective Date. Failure to file the fee application timely shall result in the Fee Claim being forever barred and discharged.

3.    Allowance of Administrative Claims. An Administrative Claim with respect to which notice is required and has been properly filed pursuant to Section 4.1(a) this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim. If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. An Administrative Claim that is a Fee Claim, and with respect to its fee application having been properly filed pursuant to

11

Section 4.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order. Allowed Fee Claims shall be paid on the Effective Date or immediately upon entry of an order approving said fees.

4. Payment of Allowed Administrative Claim. Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim upon the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder as long as no payment is made thereon prior to the Effective Date, or (iii) payment in the manner and at such time (including prior to the Effective Date) as may otherwise have been or in the future may be ordered by the Court, or (iv) if arising in the ordinary course such Administrative Claim may be paid in the ordinary course of business by the Debtor, unless otherwise required by an Order of the Court.

5. Professional Fees Incurred After the Effective Date. Any professional fees incurred by the Debtor after the Effective Date must be approved by the Debtor and, thereafter, paid. Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes. In the event of such dispute, the Debtor shall promptly pay that portion of the fees, if any, which is not in dispute.

D. **Treatment of Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; (ii) the amount of such holder's Allowed Claim, plus interest accrued at the applicable statutory rate, in equal monthly cash payments in accordance with the provisions of Subsection 1129(a)(9)(c) of the Bankruptcy Code commencing on the Effective Date or (iii) such other treatment as may be

12

agreed upon in writing by the Debtor and such Creditor. As of the Petition Date, it has been alleged that the Debtor has unpaid tax obligations to the Berks County Tax Bureau, the Pennsylvania Department of Revenue, and the Internal Revenue Service.[3] The Debtor's ability to validate certain amounts alleged to be due has been hindered by the Internal Revenue Service's failure to process certain amended tax returns and credits applied for, among other matters. To the extent that an Allowed Tax Claim is secured against Property of the Debtor, the secured lien shall remain intact until the Allowed Tax Claim is paid in full.

**E.      Provisions for Execution of the Plan.**

1.      Plan Funding and Release.   The Plan will be primarily funded by the Debtor receiving a contribution from his wife on the Effective Date and on the dates schedule for payment in Class 54 **in exchange for releases of all estate causes of action and any claim that could be asserted by or through the Debtor's estate against Shannon Krommelbein, any entity owned by Shannon Krommelbein and any property in which she is an owner**. Prior to the hearing on the Disclosure Statement, the Debtor will attach as Exhibit "D" either a letter from a third party confirming the first payment to unsecured creditors is set aside in an escrow account in their possession or a bank statement confirming that the money is set aside.[4]   In addition, Shannon Krommelbein is the sole owner of the real property located at 2 High Road, Wyomissing, PA (the "High Road Property"). The High Road Property has been appraised several times. The appraised value for the High Road Property has been $3,340,000 on December 10, 2021, $2,800,000 on September 1, 2023 and $3,831,000 on September 14, 2023.

---

3 The Debtor believes he has paid all obligations due and owing to the Internal Revenue Service but has listed them only to acknowledge the proof of claim filed by the Department of Revenue. The Debtor intends on objecting to the claim of the Internal Revenue Service.

4 The first payment in the amount of $466,670.00 will be due fifteen (15) days after entry of the Confirmation Order.

13

The mortgage on the property is $1,575,544.43 which leaves an equity cushion of approximately $1,224,455.57 - $2,255,455.57 after payment of mortgage.

2.      Execution of Documents.  Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

3.      Alterations, Amendments or Modifications.  This Plan may be altered, amended, or modified by the written agreement of Proponents before or after the Confirmation Date, as provided in Section 1127 of the Bankruptcy Code.

4.      Final Decree.  Upon satisfaction of the Claims against and interests in the Debtor as provided in this Plan, the Case shall be closed.  Nothing herein shall prevent the Debtor from completing or instituting such proceedings as may be necessary for the enforcement of any claim of the Debtor which may have existed against any third party before or which may exist after Confirmation which may have not been enforced or prosecuted prior to Confirmation.

5.      11 U.S.C. § 1146(a) and the transfer of the Real Estate.  Pursuant to this Plan, any transfer of real estate owned by the Debtor individually as set forth in the Debtor's Schedules from the Debtor to any third party or any lender shall be exempt from all taxes on such transfer including any Realty Transfer Tax in Pennsylvania or any political subdivision thereof or any poundage or other costs for a period of two years from the Effective Date.

6.      Retention and Enforcement of Claims.  The Debtor shall retain any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or his estate, including without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553 thereof.

V.      **FEASIBILITY**

14

A.      Payments Under the Plan.      Based upon the contributions of the Debtor's wife, the Debtor believes that the Plan is feasible. The Plan will be primarily funded by the Debtor receiving a contribution from his wife on the Effective Date and on the dates schedule for payment in Class 54 in exchange for releases of all estate causes of action and any claim that could be asserted by or through the Debtor's estate against Shannon Krommelbein, any entity owned by Shannon Krommelbein and any property in which she is an owner.

B.      Releases under the Plan.      **The Debtor, as trustee, has sole standing to assert all of the Chapter 5 causes of action including, but not limited to, any fraudulent transfer claim(s). The Debtor has stated that there have not been any fraudulent transfers to Shannon Krommelbein, or any entity in which Shannon Krommelbein has an ownership interest and there is absolutely no evidence of same. If the Plan is confirmed, this release bars any person or entity from commencing an action against Shannon Krommelbein or any entity owned by Shannon Krommelbein for any cause of action listed in chapter 5 of the Bankruptcy Code.**

**TO BE CLEAR, the releases contained herein covers the Debtor, Shannon Krommelbein and any company where Shannon Krommelbein has an ownership interest.**

## VI.     COMPARISON OF LIQUIDATION VS. REORGANIZATION

As a condition to confirmation of the Plan, Section 1129(a)(7)(A)(ii) of the Bankruptcy Code requires that each impaired class of claims or interests must receive or retain at least the amount or value it would receive if the Debtor would liquidate under a Chapter 7 on the Effective Date of the Plan. As set forth in Exhibits "B" and "C," the Debtor has met his burden of proof.

## VII.    TREATMENT OF EXECUTORY CONTRACTS

15

A.  **Assumption/Rejection**.

The Debtor assumes all current contracts.

B.  **Damages**.

To the extent that there is a contract to be assumed, any Claim for damages arising by reason of the rejection of any Contract will constitute a Rejection Claim, if, but only if, a proof of claim therefore shall be filed with the Clerk of the Court within thirty (30) days after the date of rejection.  If a Rejection Claim becomes an Allowed Claim then it shall constitute a general unsecured claim under Class 54.

## VIII.  EFFECTS OF CONFIRMATION

A.  **Injunction**

**Except as otherwise expressly provided in the Plan, the entry of the Confirmation order shall act to, among other things, permanently enjoin all Persons who have held, hold or may hold Claims in the Debtor after the Confirmation Date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Property of the Debtor with respect to any such Claim or Interest, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such Claim, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation**

16

due from the Debtor thereof, or against the property of the Debtor, with respect to any such Claim.

B.    **Term of Injunctions or Stays.**

Unless otherwise provided in this Plan, all injunctions or stays provided for in this Chapter 11 Case pursuant to Sections 105 or 362 of the Code or otherwise and extant on the Confirmation Date shall remain in full force and effect, until such time as the Bankruptcy Court orders otherwise.  Upon the occurrence of a default hereunder, creditors shall have the right to seek relief from the stays and/or termination of the injunctions provided for herein.

C.    **Injunction Against Interference With Plan.**

Except as otherwise permitted under the Plan, no entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

## IX.    CRAMDOWN PROVISIONS AND CONFIRMATION REQUEST

In the event that sufficient votes to confirm said Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provisions to the provisions of Section 1129 (b) of the Bankruptcy Code.

## X.    MODIFICATION OF THE PLAN

A.    **Pre-Confirmation Modification.**

At any time before the Confirmation Date, the Plan may be modified by the written agreement of both Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code.  In the event that there is a modification of the Plan, then the Plan as modified, shall become the Plan.

17

**B.**  **Pre-Consummation Modification.**

At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified by the Proponents and upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this section, becomes a Plan only if the Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

**C.**  **Non-Material Modifications.**

At any time, the Proponents may, without the approval of the Court so long as it does not materially or adversely effect the interest of Creditors, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, as such matters may be necessary to carry out the purposes, intent and effect of this Plan.

**XI.**  **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of the case after the Confirmation Date for the following purposes:

A.   to determine any and all objections in the allowance of claims and amendments to schedules;

B.   to classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting, to determine such objections as may be filed to Claims;

C.   to determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

D.   to determine any and all applications for allowance of compensation and reimbursement of expenses herein;

18

E.      to determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

F.      to determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

G.      to determine any and all proceedings for recovery of payments pursuant to any Cause of Action;

H.      to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

I.      to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

J.      to determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

K.      to enforce all provisions under the Plan;

L.      to enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary.

## XII.    CAUSES OF ACTION

### A.    Powers.

The Debtor shall have the right to settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action, without notice to creditors or Court approval from time to time in his discretion.

19

### XIII.  OBJECTIONS TO CLAIMS

#### A.     Objection to Claims

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, the Debtor may object to the allowance of any claim not previously allowed by final order whether or not a Proof of Claim has been filed and whether or not the Claim has been filed and whether or not the Claim has been scheduled as non-disputed, non-contingent and liquidated. At this time, the Debtor is still reviewing proof of claims and does not have a complete list of claims that he intends to object to in the Bankruptcy. However, the Debtor does intend on objecting to the claim of Ethan Shalter and the claim of the Internal Revenue Service.

#### B.     Contested Claims

Notwithstanding any other provision of this Plan, a Contested Claim will be paid only after allowance by the Court or upon stipulation of the Debtor and the claimant involved, as approved by the Court.  If allowed, the Contested Claim will become an Allowed Claim and shall be paid on the same terms as if there had been no dispute. The need for resolution of Contested Claims will not delay other payments under the Plan. No distribution shall be made to a Contested Claim until it is Allowed.

### XIV.  CHOICE OF LAW

Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the State of Pennsylvania, without regard to the choice of law rules thereof.

### XVI.  MISCELLANEOUS

#### A.     Payment of Statutory Fees

20

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Court at the hearing pursuant to section 1128 of the Bankruptcy Code, will be paid on or before the Effective Date. With specific regard to those fees attributable to the Office of the United States Trustee, Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed or closed pursuant to a final decree.

### B.    Discharge of Debtor

The Debtor will seek a discharge pursuant to §1141(d)(5).

### C.    Effect of Confirmation Order

Except as provided for in this Plan, the Confirmation Order will be a judicial determination of discharge of the Debtor from all debts that arose before the Confirmation Order and any liability on a Claim that is determined under Section 502 of the Bankruptcy Code as if such Claim had arisen before the Confirmation Date, whether or not a proof of claim based on any such date or liability is filed under Section 501 of the Bankruptcy Code and whether or not a Claim based on such debt or liability is allowed under Section 502 of the Bankruptcy Code.

### D.    Severability

Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any provision of the Plan.

### E.    Binding Effect

The Plan will be binding upon and inure to the benefit of the Debtor, his Creditors, and his respective successors and assigns.

### F.    Governing Provisions

21

Where a provision of this Plan contains a summary or description of one or more provision of any of the documents attached to the Plan as an Exhibit that conflicts or appears to conflict with any such provision of an Exhibit, the provision of the Exhibit will govern.

G.     **Filing of Additional Documents**

On or before substantial consummation of this Plan, the Debtor will file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

H.     **Withholding and Reporting Requirements**

In connection with the Plan and all instruments issued and distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

Dated: March 25 ~~January 21~~, 2025     **ALAN CHRISTOPHER REDMOND**

_____

Alan Christopher Redmond


**CIARDI CIARDI & ASTIN**

*/s/ Albert A. Ciardi, III*
_____
Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
1905 Spruce Street
Philadelphia, PA  19103
Counsel to the Debtor and
Debtor-in-Possession

22