**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Bankruptcy No. 24-13093-PMM |
| | Involuntary Chapter 11 |

**JASON SCOTT JORDAN, CORNERSTONE LAW FIRM, LLC, AND ETHAN SHALTER'S OPPOSITION TO DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT**

Moving Creditors, Jason Scott Jordan, Cornerstone Law Firm, LLC, and Ethan Shalter, file this response in opposition to Debtor's First Amended Disclosure Statement and offer the following:

**SUBMISSION OF RECORDS UNDER SEAL**

With this Motion, Moving Creditors are prepared to submit under seal, at the Court's direction, bank records that were produced by Mid Penn Bank in response to the Court's approval of the Rule 2004 subpoena at ECF No. 289. The bank records are submitted as an Appendix and bates numbered 1 through 1175 and reference to such Appendix is made herein. The Appendix has been produced, or will be produced contemporaneously with this submission, to Debtor's counsel and to Trial Attorney John Schanne for the U.S. Trustee Program.

**SCHEDULE OF EXHIBITS**

Summaries of the bank records for purposes of Fed. R. Evid. 1006 are appended to this Motion as Exhibits A through D. Additional exhibits are submitted, but not for purposes of Evidence Rule 1006.

1

| Exhibit | Description | Motion Appendix |
|---|---|---|
| A | Summary of 2023 transfers from Seguro Medico, LLC to Debtor | 8 to 955. |
| B | Summary of 2023 and 2024 transfers from Seguro Medico, LLC to All Web Leads, Inc., Bochetto & Lentz, P.C., Cardflex, Inc., Duane Morris, LLP, and Rush Law Group | 334 to 763 |
| C | Summary of 2023 transfers to All Web Leads, LLC from the Debtor's Personal Accounts | 764 to 955 |
| D | Summary of 2023 and 2024 transfers from Seguro Medico, LLC to Majestic Financial Holdings, LLC and NuBridge Commercial Lending | 334 to 763 |

## **FACTS**

**I.      Throughout This Proceeding and in the Proposed First Amended Disclosure Statement and First Amended Plan of Reorganization, Debtor has Committed Rank Perjury and Fraud on the Court and on the U.S. Trustee Program.**

**A.      Debtor Received in Excess of $960,000.00 from Seguro Medico, LLC in Addition to Payment of Personal Expenses.**

Throughout this proceeding, Debtor repeatedly claimed he had no income in the years 2023 and 2024 on his Official Form 107. He first said that on September 27, 2024 [ECF No. 75, Question 4]. On November 8, 2024, Debtor amended Official Form 107, writing he had "Unknown" income in 2023 and "$0.00" income in 2024. [ECF No. 119, Question 4]. On January 6, 2025, Debtor yet again amended Official Form 107, writing he had "$0.00" income in 2023 and in 2024. [ECF No. 180, Question 4].

Exhibit A is an Evidence Rule 1006 summary of all 2023 transfers from Seguro Medico, LLC, for its account number ending in 8170 and 6145, to Debtor's personal account numbers ending in 8283 and 6101.[1] As shown in Exhibit A:

---

[1] Exhibit A corresponds to the Motion Appendix 8 to 955.

| CHART 1: 2023 TRANSFERS FROM SEGURO MEDICO, LLC TO DEBTOR | | |
|---|---|---|
| **Item** | **Description** | **Amount** |
| A | Transfers to Debtor from Seguro Medico, LLC's Account Ending in No. 8170: | $1,130,580.00 |
| B | Transfers to Debtor from Seguro Medico, LLC's Account Ending in No. 6145: | $683,648.00 |
| C | Return Deposits to Seguro Medico, LLC from Debtor | ($853,688.18) |
| | **Total:** | **$960,539.82** |

During 2023, Debtor transferred an aggregate of $1,814,228.00 from the two Seguro Medico accounts into his two personal accounts. Debtor then periodically returned some of the money to Seguro Medico. In 2023, he returned approximately $853,688.18 to Seguro Medico's accounts.

Consequently, during 2023 the Debtor had **a net gain of $960,539.82** transferred to him from Seguro Medico, LLC while lying to the Court and to his creditors by asserting zero income. These transfers do not account for the fact that Debtor ran his personal expenses through Seguro Medico, LLC as shown below, in 2023 and in 2024, which also constitutes imputed income.

Debtor's First Amended Disclosure Statement reads in part, "The Debtor's 2023 tax returns have not been filed yet." [ECF No. 312 at 10]. Also, "The Debtor's 2024 tax returns will be put on extension and will be paid in the normal and ordinary course." [Id. at 11]. Cleary, Debtor is seeking to conceal from the Court and from his creditors the fact of his income from 2023 and in 2024. No plan of reorganization by the Debtor should be permitted until all income tax returns for 2023 and 2024 are filed and disclosed.

> **B.     Debtor Created Seguro Medico, LLC and Opened and Controls Seguro Medico's Bank Accounts; Debtor therefore Lied to the Court and to His Creditors that He Never Transferred Seguro Medico, LLC to Shannon Kroemmelbein.**

In the First Amended Disclosure Statement, the Debtor states "that there have not been any fraudulent transfers to Shannon Kroemmelbein, or any entity in which Shannon Kroemmelbein

has an ownership interest and there is absolute no evidence of same." [ECF No. 312 at 16].

On January 6, 2025, on his Second Amended Official Form 107, Debtor told the Court and his creditors on Question 18 that, within two years before the Bankruptcy Petition, he transferred to his wife, Shannon Kroemmelbein, "Rental Income from Regency Property." [ECF No. 180, Question 18]. Testifying before the Court on October 1, 2024, and during his Section 341 Examination, Debtor has maintained a false narrative that Seguro Medico, LLC is his wife's company and he never created the same.

In Motion App. 4 and 6, the Court will observe that Debtor is a signatory to the accounts for Seguro Medico, LLC. He opened the account ending in 6145 on November 6, 2021, and he opened the account ending in 8170 on April 4, 2022. For both of these accounts, the Court will observe that Shannon Kroemmelbein and Arthur W. Walsh, Jr. were not added as signatories until May 9, 2023 [Mot. App. 5, 7]. The Court will further observe that Kroemmelbein's 2023 signatures are remarkably different from the 2021 and 2022 signature cards, once again indicating an obvious forgery by the Debtor in 2021 and 2022. Thus, the Debtor opened both bank accounts in 2021 and in 2022, signing for himself and forging his wife's signatures. But Kroemmelbein and Walsh were not added as signatories until May 9, 2023—less than two years before the Bankruptcy Petition was filed on September 2, 2024.

A registered agent, Harvard Business Services, Inc., responded to the Rule 2004 subpoena that we propounded on it. Harvard Business Services, Inc. was hired to incorporate Seguro Medico, LLC in 2019. For the LLC's "Members," the record provides, "Alan Redmond." [Exhibit H]. Attorney Katherine Downing submitted the incorporation request in her capacity as corporate counsel for Bene Market, LLC. [Id.; Exhibit I (Katherine Downing Response 2(a))]. Debtor owns and controls Bene Market, LLC.

Consequently, by using corporate counsel that he retained through his company, Bene Market, LLC, the Debtor created Seguro Medico, LLC and opened and continually controls its bank accounts. As shown below, Debtor runs his personal expenses through Seguro Medico's accounts, treating the same as his personal piggybank. He therefore is attempting to commit perjury and continued fraud in the First Amended Disclosure Statement and First Amended Plan of Reorganization.

**C.     Debtor is Running His Personal Expenses through Seguro Medico, LLC and Repeatedly Lied to the Court on the Monthly Operating Reports Concerning His Imputed Income.**

As a signatory on the accounts for Seguro Medico, LLC, Debtor is running his personal expenses through the same while lying about that on his Monthly Operating Reports submitted to the Court and to the U.S. Trustee Program. One illustration of his personal expense is his two children's private school tuition to the Wyndcroft School in Pottstown. These are not Shannon Kroemmelbein's children but Debtor's, from his prior marriage. At Mot. App. 731, the Court will observe that Seguro Medico's account ending in No. 6145 submitted a wire transfer of $5,150.00 to the Wyndcroft School on October 31, 2024.

On February 11, 2025, Debtor filed an Amended Monthly Operating Report for October of 2024. He disclosed that he received $6,929 in payments made on his behalf. [ECF No. 259, Part 1(e)]. He attached a Third Party Payment Schedule, itemizing for "Childcar[e], Education," "[$]3,303 Third Party/Shannon [Kroemmelbein]." [EF No. 258-1]. This is a false statement. Seguro Medico, LLC made the payment, not Shannon Kroemmelbein, and the amount was $5,150.00. This is significant fraud and perjury because all personal expenses paid by Seguro Medico, LLC constitute imputed income to the Debtor. Kroemmelbein has no legal obligation to support Debtor's two children from his prior marriage. For "Gross income (receipts) from salary and wages" or from self-employment, the same Amended Monthly Operating Report recites

5

"$0.00." [ECF No. 259, Part 8].

At Mot. App. 723, the Court will observe that Seguro Medico, LLC submitted a payment of $25,000 to the firm of Ciardi Ciardi & Astin. Debtor omits this transaction from the same Amended Monthly Operating Report filed at EFC No. 259.

Debtor is pervasively concealing his imputed income from Seguro Medico, LLC, thereby committing fraud on the Court, on the U.S. Trustee Program, and on creditors.

**D.      Some of the Scheduled Claims are Fraudulent and Intended to Gerrymander the Vote for Any Plan of Reorganization.**

The Debtor has scheduled fraudulent claims and is using the First Amended Plan of Reorganization to quietly pay himself while gerrymandering the vote. In the First Amended Plan of Reorganization, Debtor makes himself the disbursing agent [ECF No. 310 § 5.4] and all payments are "null and void" if a check is not deposited or cashed in 90 days after issuance. [Id. § 7.1(c)]. Debtor proposes to have all of his creditors, including the scheduled claims, vote whether to accept or reject the plan. [ECF No. 312, at 7-8]. Thus, the First Plan of Reorganization is calculated to conceal whether the Debtor has scheduled fraudulent claims.

At ECF No. 114, being Schedule E/F, the Debtor scheduled the following claims where the creditor did not file any claim with the Court:

| CHART 2: DEBTOR'S SCHEDULED CLAIMS WHERE THE CREDITOR DID NOT FILE ANY CLAIM WITH THE COURT | | |
|---|---|---|
| **Creditor** | **Amount** | **Categorization** |
| All Web Leads | $667,413.87 | "Other." |
| Bochetto & Lentz, P.C. | $41,333.46 | "Other," "Legal Fees" |
| Cardflex, Inc. | $805,000.00 | "Other." |
| Duane Morris, LLP | $128,402.26 | "Other." |
| Rush Law Group, LLC | $5,843.11 | "Other." |

On February 3, 2025, Cardflex submitted Claim No. 12 for $4,052,493.17. Cardflex then withdrew

6

the claim 10 days later at ECF No. 275.

Exhibit B is an Evidence Rule 1006 summary of all 2023 and 2024 transfers from Seguro Medico, LLC, for its account number ending in 8170 and 6145, to Debtor's scheduled claims from Chart 2, namely, All Web Leads, Duane Morris, LLP, Bochetto & Lentz, P.C., Rush Law Group, LLC, and Cardflex, Inc.[2] Exhibit B shows the following aggregate payments in 2023 and 2024 to each of them:

| Item | Creditor | 2024 Payments | 2023 Payments |
|------|----------|---------------|---------------|
| CHART 3: 2023—2024 AGGREGATE PAYMENTS TO CREDITORS FROM SEGURO MEDICO, LLC |
| A | All Web Leads, Inc. | $490,175.00 | $2,264,729.11 |
| B | Bochetto & Lentz, P.C. | $599,246.79 | $263,608.50 |
| C | Cardflex, Inc. | $788,000.00 | None |
| D | Duane Morris, LLP | $385,543.72 | None |
| E | Rush Law Group, LLC | $61,500.00 | $172,500.00 |

Exhibit C is an Evidence Rule 1006 summary of transfers in 2023 from the Debtor's personal bank accounts to All Web Leads, Inc., which shows the following:[3]

| Item | Account Ending in No. | 2023 Payments |
|------|----------------------|---------------|
| CHART 4: 2023 AGGREGATE PAYMENTS TO ALL WEB LEADS, INC. FROM DEBTOR'S PERSONAL ACCOUNTS |
| A | 8283 | $325,585.00 |
| B | 6101 | $148,230.00 |
| | Total: | $473,815.00s |

These massive payments are deeply concerning and warrant further discovery whether no actual debt exists, because the same appear to have been paid-in-full by Seguro Medico, LLC. During his Section 341 Examination, Debtor admitted that Duane Morris was hired for purposes

---

[2] Exhibit B corresponds to the Motion Appendix 334 to 763.
[3] Exhibit C corresponds to the Motion Appendix 764 to 955.

of defending him against criminal matters. In fact, the Court will observe at Mot. App. 728 that Seguro Medico submitted a $25,000.00 payment to Duane Morris, LLP on October 24, 2024—during this proceeding and after Debtor was indicted in the U.S. District Court for the Eastern District of Pennsylvania.

On March 27, 2025, Debtor's counsel produced 194 documents in response to the Rule 2004 subpoena. Instantly relevant, however, is that the subpoena included Item 33, "All documents evidencing each and every debt you disclosed on your schedules, including any amendments to the schedules, filed on the docket in the instant case." [ECF No. 289 at 6]. Debtor produced a forbearance agreement he signed with Producer Advance, LLC, but that's about it. No invoicing was produced for any of the scheduled claims of All Web Leads, Duane Morris, LLP, Bochetto & Lentz, P.C., Rush Law Group, LLC, and Cardflex, Inc.

Where Seguro Medico has fully paid the above-noted scheduled claims, Debtor has therefore committed fraud on the Court and is seeking to gerrymander the vote relative to his First Amended Plan of Reorganization. None of these scheduled claims are legitimate and Debtor has not submitted any supporting documentation that he is liable for the same. Furthermore, to the extent Seguro Medico's payments were for the benefit of Debtor, personally, that constitutes imputed income which Debtor failed to disclose on his schedules and monthly operating reports.

**E.    Debtor is Concealing His Payments to Other Creditors.**

The Rule 2004 subpoena to Debtor included Item 8, "All documents evidencing payments made on your behalf, by any person other than Shannon Kroemmelbein, and within one year before September 3, 2024." [ECF No. 289 at 2]. Debtor produced no responsive documents.

On November 8, 2024, the Debtor scheduled a "disputed" claim of $942,609.36 to Producer Advance, LLC, a Delaware limited liability company. [ECF No. 114, at 6]. The Court may judicially notice its own claims register that, on February 27, 2025, Producer Advance filed

Claim No. 14 for $1,579,126.00 and attached a Stipulated Final Judgment in the Circuit Court of the Fifteenth Judicial Circuit of Florida for $1,579,126 against Debtor and Bene Market, LLC. The Stipulated Final Judgment was entered on June 21, 2021.

From the publicly-accessible records of the Florida Secretary of State, the Court may judicially notice that the sole member of Producer Advance, LLC is Majestic Financial Holdings, LLC, with an address of 1625 S. Congress Ave., Suite 200, Delray Beach, FL 33445. [Document No. M16000009373, 2022 Foreign Limited Liability Company Annual Report (Mar. 7, 2022), Florida Secretary of State] [Exhibit J].[4]

From our review of the Mid Penn Bank records, Seguro Medico, LLC has been remitting payments to Majestic Financial Holdings, LLC. Exhibit D is an Evidence Rule 1006 summary of all 2024 transfers to Majestic Financial Holdings, LLC from Seguro Medico, LLC, for its account number ending in 6145.[5] Those payments aggregate to $75,000.00. Where, as here, Seguro Medico had no liability to Producer Advance or Majestic Financial Holdings, LLC, the $75,000.00 constitutes imputed income to Debtor for 2024 and further illustrates his control over Seguro Medico, LLC.

As a signatory on the account, Debtor had access to all monthly statements for Seguro Medico and therefore could have produced documents evidencing all payments for his personal expenses. Moving Creditors believe and aver that Debtor may be utilizing other entities to make payments to his creditors while misstating the claim in this Court and gerrymandering the vote.

**F.      Debtor has Failed to Disclose All His Entities and the Same Do have Assets and are Used by Debtor for Conduit Transfers.**

The exhibits to the First Amended Disclosure Statement, at ECF No. 312-3 at 2, do not

---

[4] *Available at*
https://search.sunbiz.org/Inquiry/CorporationSearch/ByDocumentNumber
[5] Exhibit D corresponds to the Motion Appendix 334 to 763.

disclose all of Debtor's entities. On July 18, 2024—1.5 months before the Involuntary Petition was filed in this case—Debtor formed a Pennsylvania limited liability company, Friends of Hurst, LLC. [Ex. E].

During a hearing on February 25, 2025, Debtor's counsel asserted to the Court that Debtor had additional, undisclosed entities which were "defunct" and did not have any assets. The records from Mid Penn Bank disprove that and show that Debtor is pervasively lying to his own counsel. On February 20, 2025, Friends of Hurst, LLC transferred $60,000.00 to Seguro Medico, LLC. [Mot. App. 1169]. On February 24, 2025, Friends of Hurst transferred an additional $6,400.00 to Seguro Medico, LLC. [Mot. App. 1168]. Our additional review of the records from Mid Penn Bank show that, far from defunct, these active entities are used by Debtor for purposes of conduit transfers. His concealment of these entities is therefore intentional and fraudulent.

## II.     Debtor has Stymied Rule 2004 Discovery and His Insiders Have Liability Exposure for Contempt for Refusing to Obey the Court's Order for Rule 2004 Discovery.

This Debtor has delayed Rule 2004 discovery by more than 60 days while trying to rush through a plan of reorganization to prevent any further discovery of his fraud and perjury. After raising meritless objections, the Court ordered Rule 2004 discovery to proceed by Order filed February 24, 2025 at ECF No. 289 as applied to Debtor, Shannon Kroemmelbein, Seguro Medico, LLC, Arthur W. Walsh, Jr., Stephanie Farris Miller, C. Malcolm Smith & Company, P.C., C. Malcolm Smith, III, Norman Valz, Esquire, Katherine Downing, Esquire, and Mid Penn Bank. The Court overruled all objections and ordered them to produce the documents we had subpoenaed.

The due date was March 26, 2025. As of that date, only Mid Penn Bank has attempted to comply. On March 27th, Debtor's counsel submitted documents, with unauthorized redactions, and failed to comply with material items in the subpoena. A motion for relief is forthcoming but,

in the main, the tax returns the Debtor provided included Schedule Cs with the names of the companies removed—thereby preventing us from sourcing Debtor's income as well as the income of Shannon Kroemmelbein. Additionally, the Debtor provided no documents showing the disposition of $35,239,618.31 that he personally guaranteed from Complete Business Solutions Group, Inc. The Debtor refused to disclose his 2020 income tax returns, and refused to disclose corporate tax returns for the entities where he admitted ownership, such as Bene Market, LLC.

On March 6, 2025, Attorney William Rush submitted a letter to undersigned counsel, raising new, meritless objections to the Rule 2004 discovery, purporting to jointly represent Kroemmelbein, Smith, Walsh, Miller, and Seguro Medico, LLC. [Exhibit F]. As a result, none of them have produced anything along with the Debtor. Moving Creditors are in the process of submitting papers with the Court for relief.

William Rush is Debtor's criminal defense attorney and has a long-standing relationship with the Debtor. At Mot. App. 1170 to 1175 the Court will observe that, during this bankruptcy proceeding, Seguro Medico has been remitting checks to Attorney Rush in his personal capacity and mailed to his private home in Mount Penn Borough as shown in Chart 5:

| CHART 5: | | |
|---|---|---|
| SUSPICIOUS PAYMENTS TO ATTORNEY WILLIAM RUSH IN HIS PERSONAL CAPACITY | | |
| **Date** | **Amount** | **Recipient** |
| 9/5/2024 | $5,443.00 | William Rush |
| 9/23/2024 | $5,443.00 | William Rush |
| 10/4/2024 | $6,433.00 | William Rush |
| 10/9/2024 | $5.247.38 | William Rush |
| 10/23/2024 | $4,573.80 | William Rush |
| **Total:** | **$27,140.00** | |

During those same times, Attorney Rush submitted a Declaration to the Court under penalty of perjury, "As previously acknowledged, there have been no payments to RLG [Rush Law Group]

by the Debtor since the Petition Date." [ECF No. 125 ¶ 11]. The Court will further observe at Mot. App. 1170 to 1175, in each of these transactions Attorney Rush cashed the check using Square Mobile, an online platform that would permit him to re-route the payment to another recipient.

### III.     Debtor Substantially and Fraudulently Understates His Assets in the First Amended Disclosure Statement.

Besides committing perjury and fraud on the Court in his schedules and disguising his control over assets and companies titled in the name of other persons, the Debtor also substantially and fraudulently understates the value of his assets in the First Amended Disclosure Statement. Debtor's Liquidation Analysis asserts that his interest in ARC Realty, LLC and ARC Realty 1, LLC is **$50,000.00**. [ECF No. 312-2 at 2]. ARC Realty, LLC holds title to two valuable real properties, 1198 Reading Blvd., Wyomissing and 8 Morgan Drive, Wyomissing, Pennsylvania. [Id. at 3]. 1198 Reading Blvd is worth approximately $1.5 million. [Id.]. 8 Morgan Drive is worth approximately $1.075 million. [Id.]. Both are income-producing properties.

A preliminary report by a professional business appraiser, Steven M. Frank, CPA/ABV, indicates that a 50% ownership interest in ARC Realty, LLC is worth at least **$214,000.00** after discounted for lack of marketability and lack of control. Mr. Frank has identified additional information he requires in discovery to provide a complete appraisal, and observes that ARC Realty, LLC may be more profitable by reason that 1198 Reading Blvd and 8 Morgan Drive are both income-producing properties. [Exhibit G]. He maintains that discovery should examine the rents that ARC Realty, LLC has received from both properties since 2022. [Id.]. He further observes that no financial statements have been provided on the outstanding balances for these mortgages, which affects the outcome.

That this Debtor marked-down an asset worth at least $214,000 to $50,000 must be considered within the totality of his behavior, including his fraudulent schedules and monthly

operating reports.

The Debtor maintains there are mortgages on both of these properties held by ARC Realty, LLC, but no corroborating evidence has been provided on the current outstanding balance. The Court may judicially notice Instrument No. 2021022544 in the Berks County Recorder of Deeds. A mortgage in the amount of $1.120 million was taken on 1198 Reading Blvd by World Business Lenders on April 27, 2021, and then assigned to a subsidiary, WBL SPO I, LLC, by Instrument No. 2021050252. The Court may judicially notice Instrument No. 2023025607 in the Berks County Recorder of Deeds. A mortgage in the amount of $840,000.00 was taken on 8 Morgan Drive property by NuBridge Commercial Lending, LLC in California.

In the First Amended Disclosure Statement, however, Debtor asserts that the 1198 Reading Blvd. property is encumbered by a mortgage at $1,367,605.27, and that the 8 Morgan Drive property is encumbered by a mortgage at $1,035,000. [ECF No. 312-2, at 3].

From our tentative review of the Mid Penn Bank records, Seguro Medico, LLC has been submitting mortgage payments to NuBridge Commercial Lending, LLC in respect of the 8 Morgan Drive Property. Exhibit D is an Evidence Rule 1006 summary of all transfers to NuBridge from Seguro Medico, LLC, for its account number ending in 6145.[6] Those payments aggregate to $127,725.60 since 2023.

Here, the Court should not allow this process to move forward based on uncorroborated statements by this Debtor. The Court should order an appraisal of ARC Realty, LLC, including current financial statements on rents and the current outstanding balances for any mortgages for the underlying assets.

---

[6] Exhibit D corresponds to the Motion Appendix 334 to 763.

13

**IV.     Debtor Continues His Pattern of Bad Faith and Seeks to Gerrymander the Vote.**

    **A.     Debtor Continues an Illusory Promise to Pay.**

The Debtor did not remove any of the objectionable provisions that were previously pointed out. Under the First Amended Plan, as did the previous plan:

(1)     Only the Debtor may object to any claims after confirmation and only the Debtor has authority to settle all claims against him without court approval. [ECF No. 310 §§ 13.2, 15.3].

(2)     Debtor has the right to setoff and withhold payment as to any creditor based on any unliquidated claim asserted by the Debtor. [Id. § 7.1(d), at 15].

(3)     Debtor is the disbursing agent. [Id. § 5.4].

(4)     All payments are "null and void" if a check is not deposited or cash in 90 days after issuance. [Id. § 7.1(c)].

(5)     The Debtor proposes the authority to modify the Plan after confirmation and without court approval. [Id. § 11.3].

The First Amended Disclosure Statement purports to attach the Indictment as an exhibit [ECF No. 312 at 7], but that was not done. [See ECF No. 312-1 at 1-16]. The First Amended Disclosure Statement contains no information on the Debtor's sentencing exposure under the U.S. Sentencing Guidelines while the First Amended Plan would make Debtor the disbursing agent.

    **B.     The Secured Creditors are Not Impaired; Debtor's Attempt Otherwise is Impermissible Gerrymandering.**

Debtor holds title to real estate at 2005 Regency Drive in Wyomissing, Pennsylvania. In the First Amended Disclosure Statement, Debtor corrected the fact that the real estate is valued at $1,000,000 instead of $450,000 as he previously (and fraudulently) submitted. [ECF No. 313 at 7-8 (showing markup of Part III)]. But Debtor continues the fiction that the secured creditors are impaired when, in fact, that is simply not true.

14

Under the First Amended Plan of Reorganization, the Debtor classifies his secured creditor, WBL SPO II, LLC as "Class 1." The plan writes, "Class 1 is impaired." [ECF No. 310 ¶ 3.1]. WBL SPO II, LLC holds a mortgage of $336,181.41 on the $1,000,000.00 real estate of 2005 Regency Drive. [Id.]. Instead of paying off the mortgage, the Debtor creatively suggests monthly payments of $4,200.34 with a balloon payment of $154,340.72. [Id.].

Debtor has therefore artificially suggested terms to impair Class 1 for the purpose of gerrymandering the vote. With the real estate valued at $1,000,000, there is no good faith basis to impair Class 1 other than to bypass the unsecured creditors by having another class approve the plan.

### C. In Bad Faith and Noncompliance with the Code, Debtor Ignores Jason Scott Jordan's Judicial Lien.

As a judgment creditor, Pennsylvania law vests Jason Scott Jordan with a judicial lien on Debtor's 2005 Regency Drive property, which lien is junior-in-position to the mortgage-holder, WBL SPO II, LLC. 42 Pa.C.S. § 4303. Despite being put on notice of Jordan's previous objection, the First Amended Plan makes no provision for the payment of Jordan from recourse to the sale of the 2005 Regency Drive property, after payment of WBL SPO II, LLC. This is bad faith and noncompliance with the Code.

### V. Debtor, Once Again, Fails to Identify What Entities are Purportedly Owned by Shannon Kroemmelbein while Seeking a Release for the Same.

The First Amended Disclosure Statement neither discloses any entities supposedly owned by his wife, Shannon Kroemmelbein, while the First Amended Plan seeks to give her a release. The First Amended Disclosure Statement fails to disclose what assets the Debtor had transferred to her, or to any of those entities, and the value of the same if recovered through an adversary proceeding.

**ARGUMENT**

The Court must deny a disclosure statement if it fails to provide "adequate information," 11 U.S.C. § 1125(b), or if the plan is unconfirmable on its face. *In re* American Capital Equip., LLC, 688 F.3d 145, 155 (3d Cir. 2012). Among other things, the plan must comply with all provisions of Title 11 and "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(1)-(3). The confirmability of the Amended First Plan under "§ 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125." *In re* PWS Holding Corp., 228 F.3d 224, 247 (3d Cir. 2000). A disclosure statement must provide adequate information, which means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor" and the financial condition of the debtor, as would allow creditors "to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

A Disclosure Statement should be denied if it is inaccurate or "replete with deficiencies." *In re* Hirt, 97 B.R. 981, 982-83 (Bankr. E.D. Wis. 1989); *In re* Radco Props., Inc., 402 B.R. 666, 682-83 (Bankr. E.D.N.C. 2009); *In re* M.E.S., Inc., 148 B.R. 1, 1-2 (D. P.R. 1992). Here, the First Amended Plan is unconfirmable and the First Amended Disclosure Statement is defective and fraudulent. At a minimum, this Debtor cannot move forward with any Disclosure Statement or plan of reorganization until Rule 2004 discovery is completed; his 2023 and 2024 income tax returns are filed; and he formally admits all assets that he transferred to Shannon Kroemmelbein and to other persons. The entire structure of the Code assumes that discovery is completed *before* allowing voting and plan confirmation to proceed. Without the Court's enforcement of these provisions, Moving Creditors are materially and irrevocably prejudiced because the Code imposes a time limit of 180 days after confirmation to revoke an order of confirmation due to fraud. 11

16

U.S.C. § 1144. This is a complex case with substantial evidence of ongoing fraud, we need to fully investigate the same, and 180 days are not sufficient.

**I.      Through Repeated Fraud on the Court and on Others, Debtor Has Not Complied with Applicable Provisions under the Code.**

A plan is unconfirmable on its face if "[t]he proponent of the plan" did not comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." *In re* Gunsmith's, Inc., 271 B.R. 487, 491 (S.D. Miss. 2000). "[S]erious violations of the Bankruptcy Code by a Debtor can and should result in a denial of confirmation of a plan under § 1129(a)(2)," *In re* Landing Assocs., Ltd., 157 B.R. 791, 810 (Bankr. W.D. Tex. 1993). Making post-petition payments to creditors without court approval is a ground for denying a plan. *In re* Lapworth, 1998 Bankr. LEXIS 1383, at *9-10 (Bankr. E.D. Pa. Nov. 2, 1998).

In violation of the Bankruptcy Code, the Debtor has done the following:

(1)     Filed three versions of Official Form 107 at ECF Nos. 75, 119, and 180 where he repeatedly lied on Question 4 by asserting no income for 2023 and 2024. Our investigation has shown that Debtor received a net of $960,000 in direct monetary transfers from Seguro Medico, LLC, in 2023, where he transferred approximately $1,814,228.00 to himself and returned approximately $853,688.18. For both 2023 and 2024, Debtor has significant imputed income (in an amount to be determined through further discovery) where he is running his personal expenses through Seguro Medico, LLC.

(2)     Filed three versions of Official Form 107 at ECF Nos. 75, 119, and 180 where he repeatedly lied on Question 18 by asserting either he transferred nothing to his wife, Shannon Kroemmelbein, or that he transferred only his interest in ARC Realty, LLC. In reality, Debtor

created Seguro Medico, LLC and later added his wife and Arthur W. Walsh, Jr., as signatories to the bank accounts in 2023 while he continued to control the same.

(3)     Filed three versions of Official Form 107 at ECF Nos. 75, 119, and 180 where he repeatedly lied on Question 27 relative to business entities he owned or controlled within four years pre-petition. The Friends of Hurst, LLC was formed 1.5 months pre-petition and it did have in excess of $60,000 in assets. This is offered to show that Debtor's actions are intentional concealment, and we believe he still hasn't fully disclosed all his business entities.

(4)     Is repeatedly filing Monthly Operating Reports which do not disclose his imputed income each and every time Seguro Medico, LLC or any other business entity pays his personal expenses. The Amended Monthly Operating Report at ECF No. 258 and 258-1, for the month of October of 2024, is inexcusable. Seguro Medico, LLC, not Shannon Kroemmelbein, paid Debtor's $5,150.00 private school payment for his two children from a prior marriage. Debtor neither discloses $5,150.00 nor identifies Seguro Medico as the payor.

(5)     In the absence of discovery, it strongly appears the Debtor has scheduled claims on Schedule B and Schedule E/F for non-existent debts that were paid-in-full by Seguro Medico, LLC as imputed income, i.e., All Web Leads, Duane Morris, LLP, Bochetto & Lentz, P.C., Rush Law Group, LLC, and Cardflex, Inc. [ECF Nos. 75, 109, 114].

Based on the foregoing, the Debtor has lost the right to submit any plans and the Code disables him from doing so until, at a minimum, he has cured all violations.

**II.     The First Amended Plan Constitutes Improper Gerrymandering.**

A plan is not confirmable if it fails to comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). Under Section 1122 of the Code, "thou shalt not classify" claims "in order to gerrymander an affirmative vote on a reorganization plan." *In re* Greystone III Joint Venture, 995 F.2d 1274 (5th Cir. 1991), followed, *In re* Tribune Co., 476 B.R. 843, 855 (Bankr. D. Del.

2012). Classification of claims or interests "must be 'reasonable,' and cannot be grouped together for arbitrary or fraudulent purposes," In re W.R. Grace & Co., 475 B.R. 34, 110 (D. Del. 2012) or for "the sole purpose and effect of creating multiple classes" to "mold the outcome of plan voting," John Hancock Mut. Life Ins. v. Route 37 Bus. Park Assocs. (In re Route Bus. Park Assocs.), 987 F.2d 154, 158 (3d Cir. 1993).

The First Amended Plan fails the aforementioned standard on two levels.

First, there's no basis for impairing the secured claim of WBL SPO II, LLC. Debtor admits that he disputes the amount of the claim. But whether it is $548,750.76 (as per Claim No. 5) or $336,181.41 (as the Debtor disputes, ECF No. 312-2 at 2 n.1), it is secured by the real estate at 2005 Regency Drive. That real estate is valued at $1,000,000. The secured claim is not impaired, and it is improper to mislead creditors in suggesting otherwise.

Second, at this juncture there's no evidence of any legitimate debts owed for the scheduled claims of All Web Leads, Duane Morris, LLP, Bochetto & Lentz, P.C., Rush Law Group, LLC, and Cardflex, Inc. Debtor cannot list debts paid-in-full by Seguro Medico, LLC as imputed income, which is a fraudulent attempt to gerrymander the vote for unsecured claims that are one-half in number. 11 U.S.C. § 1126(c).

## III.     The First Amended Disclosure Statement and the First Amended Plan Fail to Properly Classify Jordan's Secured Claim as a Judgment Creditor.

A plan is not confirmable if it doesn't satisfy the requirements of Section 1129, in addition to claim classification under Section 1121. Among those requirements is that the holders of secured claims "retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims," and that the holder receive at least the value of such interest in the property. 11 U.S.C. § 1129(b)(2)(A).

Here, Jason Scott Jordan is a judgment-creditor who filed a writ of execution pre-petition, thereby creating a judicial lien by operation of law on Debtor's real estate at 2005 Regency Drive, Wyomissing. 42 Pa.C.S. § 4303. The U.S. Court of Appeals for the Third Circuit agrees this is a security interest which qualifies as a secured claim. In re Nelson Co., 959 F.2d 1260, 1264-65 (3rd Cir. 1992). "[T]he protections afforded secured creditors under the Code generally adhere first to the principle that the secured creditor is entitled to priority payment out of its collateral." 4 COLLIER ON BANKRUPTCY ¶ 506.02 (16th ed. 2025 cum. supp.).

Neither the First Amended Disclosure Statement nor the First Amended Plan make provision for Jordan's secured claim in 2005 Regency Drive as required by the Code. Section 1121 requires claims "which share common priority and rights against the debtor's estate" to "be placed in the same class." In re Save Our Springs (S.O.S.) Alliance, Inc., 632 F.3d 168, 174 (5th Cir. 2011). Creditors with liens on the same property must be placed in the same class. In re Keck, Mahin & Cate, 241 B.R. 583, 589-90 (Bankr. N.D. Ill. 1999).

Consequently, Class 1 under the First Amended Plan must include Jordan's judicial lien by operation of 42 Pa.C.S. § 4303. Debtor's failure to do so results in materially misleading his creditors whether to support or oppose acceptance of the First Amended Plan.

**IV.     The First Amended Disclosure Statement Provides No Information on the Assets Debtor Transferred to Other Persons, Including to Shannon Kroemmelbein, and Seeks to Release Undisclosed Entities.**

We pointed this out previously, but the Debtor refuses to cure the same: The Disclosure Statement must identify all assets that the Debtor transferred to other persons, including his wife, Shannon Kroemmelbein, and the value of those assets. The First Amended Plan, once again, seeks to give a release to Kroemmelbein "and any company where Shannon Kroemmelbein has an ownership interest" for all claims by the Debtor or the bankruptcy estate [ECF No. 310 ¶ 13.3]. But none of these entities are identified, either in the First Amended Plan or in the First Amended

20

Disclosure Statement.

The Disclosure Statement, among other things, must give "a complete description of the available assets and their value," the "anticipated future of the debtor," the "source of the information provided in the disclosure statement," "[i]nformation regarding claims against the estate," "[i]nformation relevant to the risks being taken by the creditors and interest holders," "the actual or projected value that can be obtained from avoidable transfers," "the existence, likelihood and possible success of nonbankruptcy litigation," and "the relationship of the debtor with affiliates." In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988). The Disclosure statement must also include a "liquidation analysis setting for the estimated return the creditors would receive under Chapter 7." Id.

Here, no information is provided in the First Amended Disclosure Statement regarding any assets that Debtor transferred to other persons, such as his wife, Shannon Kroemmelbein, which could have been recovered if this case was converted to Chapter 7. We have shown that Debtor created Seguro Medico, LLC and added his wife and Arthur W. Walsh, Jr., as signatories on the account at a later point. We believe other assets exist which Debtor has not disclosed.

Debtor again raises the propriety of releasing Shannon Kroemmelbein and undisclosed entities that she purportedly owns. A Chapter 11 plan of reorganization cannot release third party claims against nondebtors. Harrington v. Purdue Pharma. L.P., 603 U.S. 204, 226-27 (2024). Here, the Debtor asserts that the release would only bind himself and the bankruptcy estate. But this Court has authority to grant derivative standing to creditors to pursue Chapter 5 remedies, as well as nonbankruptcy relief under the Uniform Voidable Transactions Act, in order to recover assets of the bankruptcy estate. Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 580 (3d Cir. 2003) (en banc); In re Rosenblum, 545

21

B.R. 846, 863 (Bankr. E.D. Pa. 2016).

Consequently, the Debtor is asking to deprive *the Court* of its authority to allow recovery of voidable transfers, which isn't warranted in the law. However, if it was warranted under the law, then Moving Creditors are materially and irrevocably prejudiced where, as here, Debtor has thwarted our ability to complete Rule 2004 discovery in order to ascertain if there are voidable transfers by the Debtor or assets that could be recovered into the bankruptcy estate. Here, the The Debtor has materially refused to obey the Rule 2004 subpoena that issued to him and which the Court approved. The Debtor did not provide all of his tax returns, such as the returns for the year 2020 or for any corporate entity where he admitted ownership. For the returns he did disclose, he removed the names of the corporations from the Schedule Cs so we couldn't determine the source of the income for himself and Shannon Kroemmelbein. Additionally, the Debtor provided no documents showing the disposition of $35,239,618.31 that he personally guaranteed from Complete Business Solutions Group, Inc. Once again, the Debtor won't answer a basic question: Where did the money go?

Debtor's criminal defense attorney, William Rush, has also prevented material witnesses from obeying the Court's order directing for compliance with Rule 2004 subpoenas, raising new objections after the Court had overruled the same.

Rule 2004 discovery expressly contemplates plans of reorganization and the facts behind a disclosure statement. Besides the Debtor's acts, conduct, property, liabilities, and financial condition, the scope of Rule 2004 includes "any other matter relevant to the case or to formulating a plan." Fed. R. Bankr. P. 2004(b)(2)(C). Clearly, if the Debtor is asking for the Court to prevent any adversary proceedings to recover assets of the bankruptcy estate, then a condition-precedent is full and complete participation in Rule 2004 discovery before allowing any voting and plan

22

confirmation to proceed. That hasn't happened here. If this Debtor will keep submitting plans that involve releasing anyone, then the Court must grant our Motion for a Case Management Order at ECF No. 248.

The First Amended Disclosure Statement provides, "The Debtor has stated that there have not been any fraudulent transfers to Shannon Kroemmelbein, or any entity in which Shannon Kroemmelbein has an ownership interest and there is absolutely no evidence of same." [ECF No. 312 at 16]. If that's true, then the release is unnecessary and should be removed. But here, by refusing to even identify what entities are being released, Debtor continues his pattern of fraud on the Court. Debtor won't identify these identities because the same, clearly, contain assets that he fraudulently transferred out of his name to make himself poor.

Debtor had two options in any plan of reorganization: Either omit any third party releases entirely (and allow the completion of Rule 2004 discovery before proceeding further) or include the same but identify by name each and every entity that is being released and describe in detail the value of the assets that were transferred by Debtor to each and every entity. Anything less than that constitutes fraudulent concealment, which is bad faith. 11 U.S.C. § 1129(a)(3).

Generally, there is a duty to disclose potential adversary proceedings against creditors before they vote. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003). Third party releases are not valid if the Disclosure Statement did not appraise the creditors "with any information regarding the merits or value of the potential claims" that "would be released by the Plan." *In re* Lower Bucks Hosp. (*Lower Bucks Hosp. II*), 571 F. App'x 139, 141 & 142-43 (3d Cir. 2014) (affirming the decision); *In re* Lower Bucks Hosp. (*Lower Bucks Hosp. I*), 488 B.R. 303, 317-21 (E.D. Pa. 2013). Where a plan seeks to release a third party for fraudulent

23

transfers, without a proper description of what those transfers were and the value of the claim, "It is far from evident in these circumstances that 'the elementary obligation of full disclosure' has been met." *In re* Cyr Brothers Meat Packing, Inc., 2 B.R. 620, 627 (Bankr. D. Me. 1980) (quoting American United Mut. Life Ins. v. City of Avon Park, 311 U.S. 138, 145 (1940)). The Disclosure Statement must include "the actual or projected value that can be obtained from avoidable transfers . . ." *In re* Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

Based on the foregoing, the plan is unconfirmable and the First Amended Disclosure Statement contains fraudulently misleading information as well as fails to provide adequate information that would permit creditors to make an informed judgment. The plan constitutes a bad faith attempt to prevent any recovery of assets into the bankruptcy estate while concealing the entities to which the Debtor has transferred assets.

**V.      The Court Should Order an Appraisal of ARC Realty, LLC with Related Discovery.**

Here, our evidence shows that ARC Realty, LLC is a valuable assets, far in excess of the Debtor's assertion of $50,000.00. Discovery is necessary to determine the going concern value of ARC Realty, LLC, where it owns income-producing properties. Additionally, the Debtor has not produced any current outstanding balances for the mortgages on the real estate owned by ARC Realty, LLC. The Code vests the Court with discretion whether to order an appraisal of the Debtor's assets. 11 U.S.C. § 1125(b). Under the House Judicial Report, "[I]n some cases, a valuation or appraisal will be necessary to develop adequate information. The court will be able to determine what is necessary in light of the facts and circumstances of each particular case." H. Rept. 95-595, 95th Cong., 1st Sess. (1977), reprinted in, 11 U.S.C. § 1125.

Here, given a significant discrepancy between $50,000 and at least $250,000, an appraisal is necessary to develop adequate information on the value of Debtor's assets. The Court should order the same subject to discovery. The need is amplified by Debtor's fraudulent behavior.

**VI.      Once Again, the First Amended Plan Contains an Illusory Promise of Distributions Coupled with Illegal Provisions.**

We pointed this out previously, but the Debtor refuses to cure the same: Debtor's First Amended Plan is submitted in bad faith in violation of the Code. 11 U.S.C. § 1129(a)(3). It contains certain terms described below which, in their totality, renders the promise of distributions illusory and fraudulent. In other words, this Debtor doesn't intend to remit distributions as promised.

The exhibits to the First Amended Disclosure Statement fail to include Debtor's Indictment in the U.S. District Court, even though referenced by the First Amended Disclosure Statement. Debtor proposes to make himself the Disbursing Agent when he currently has a sentencing exposure of imprisonment between 188 and 235 months (or, 15.66 and 19.58 years) if he's convicted on all six counts of Tax Evasion. The First Plan further provides all payments are "null and void" if a check is not deposited or cash in 90 days after "issuance," not the date of delivery. [ECF No. 311 § 7.1(c)]. Additionally, Debtor reserves a purported right of setoff against any payment based on an unliquidated claim against the distributee. [Id. § 7.1(d), at 15]. This is bait-and-switch: Debtor proposes to reserve until after confirmation of the First Amended Plan to raise objections to claims. As a matter of bad faith, the First Amended Plan creates a system, once again, where Debtor gets to unilaterally decide whether to pay the creditors he likes and ignore the creditors he dislikes. Debtor claims that, while he's imprisoned in a federal jail, he can "issue" a check, but not deliver the same to the recipient, and then claim that the right to payment is null and void if there was no deposit in 90 days. This opens the door for fraud by the Debtor, whether he delays the mailing of any check or even backdates the date of "issuance" of a check.

But there is a duty to disclose potential adversary proceedings against creditors before they vote. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988). Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003).

In the absence of a Code provision, substantive rights are governed by State law. Butner v. United States, 440 U.S. 48 (1979); Barnhill v. Johnson, 503 U.S. 393 (1992). Under Pennsylvania and State law, "A court will not offset an unliquidated claim against a final judgment." 47 AM. JUR. 2d *Judgments* § 813; accord. Harrison v. Stoeckert, 85 A.2d 154, 155 (Pa. 1952) ("To a judgment there can be no set-off of a debt not in judgment."). Moreover, the U.S. Court of Appeals for the Third Circuit agreed that allowing a creditor to raise a setoff post-confirmation would be "unfair to other creditors and the Debtors, and [could] conceivably undermine the plan of reorganization and the objectives and structure of the Bankruptcy Code." United States v. Continental Airlines (*In re* Continental Airlines), 134 F.3d 536, 542 (3d Cir. 1998). "[T]he right of a creditor to set-off in a bankruptcy reorganization proceeding must be duly exercised in the bankruptcy court before the plan of reorganization is confirmed; the failure to do so extinguishes the claim." Id.

The result in Continental Airlines applies with equal force to this Debtor. Nothing in the Code relieves the Debtor of reducing any of his claims to judgment before asserting a right of setoff against distributees under the First Amended Plan. More to the point, Debtor has no right of setoff against Jordan and Cornerstone Law Firm, LLC based on unliquidated claims. Consequently, the First Amended Plan creates an illusory promise of payment to creditors which constitutes bad faith.

Finally, the First Amended Plan here allows Debtor to modify the same after confirmation and without court approval, contrary to 11 U.S.C. § 1127(b). Section 1127(b) is "the exclusive means" of modifying a Chapter 11 plan. *In re* SC SJ Holdings, LLC, 2024 U.S. App. LEXIS 7317, at *5 (3d Cir. Mar. 28, 2024). Allowing such modification, as well as settlement of claims, without court approval is violative of the Code. *In re* Beyond.com Corp., 289 B.R. 138, 143-44 (Bankr. N.D. Cal. 2003).

## CONCLUSION

**WHEREFORE**, based on the foregoing, the Court should deny the Motion.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: March 31, 2025      By:     /s/ Joel A. Ready
Joel A. Ready, Esquire
PA Attorney I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875

27