**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*In re:*

                                        **Chapter 11**

**ALAN CHRISTOPHER REDMOND,**

           **Debtor.**                 **Case No. 24-13093 (PMM)**

**MOTION OF SHANNON KROEMMELBEIN (a/k/a MRS. SHANNON REDMOND), A
THIRD PARTY, TO QUASH OR MODIFY JASON SCOTT JORDAN'S SUBPOENA
DATED JANUARY 7, 2024 DIRECTED TO SHANNON KROEMMELBEIN
(a/k/a MRS. SHANNON REDMOND)**

Shannon Kroemmelbein (a/k/a Mrs. Shannon Redmond) (the "Third Party" or

"Kroemmelbein") respectfully, by and through her undersigned counsel, hereby files this motion

(the "Motion") for entry of an order, in the form attached hereto as Exhibit A, to quash or modify

the subpoena issued by Jason Scott Jordan and Cornerstone Law Firm (the seeking "Creditors")

directed to Shannon Kroemmelbein (the "Subpoena Recipient" or "Kroemmelbein"), dated

January 7, 2025 (the "Subpoena"), and represents in support hereof as follows:

**PRELIMINARY STATEMENT**

1. Before this Honorable Court is Kroemmelbein's motion to quash the subpoena issued by

   Jason Scott Jordan and Cornerstone Law Firm directed to her and attached as Exhibit "B"

   hereto for the reasons set forth herein. The subpoenas are overly broad, overly burdensome

   and will lead to unreasonable expense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The legal predicates for the relief requested herein are Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules").

## BACKGROUND

4. On September 3, 2024, an involuntary petition was filed against Alan Christopher Redmond.

5. On October 3, 2024 (the "Petition Date"), an order for relief was entered under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").  The Debtor remains in possession of his property and continues to operate his business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On January 7, the Seeking Creditors issued the Subpoena, which seeks the following:

   1. Your original birth certificate, including any amendments to the same.

   2. Your Social Security card.

   3. All your active driver's licenses in any jurisdiction.

   4. All your passports.

5. All of your federal income tax returns, with all schedules, including Form W2s and 1099s, for the years 2014 through the most recent filing.

6. Your most recent curriculum vitae or professional resume.

7. All curriculum vitae and professional resume you have used within five years before September 3, 2024.

8. All contracts between you and the Pottstown School District.

9. All documents evidencing the policy of Pottstown School District regarding outside employment and which is in effect during your period of employment with Pottstown School District.

10. All contracts between you and the Bucks County Intermediate Unit.

11. Any document evidencing the policy of Bucks County Intermediate Unit regarding outside employment and which was in effect during your period of employment with the Bucks County Intermediate Unit.

12. Any document evidencing the date of your resignation from employment with the Bucks County Intermediate Unit.

13. All invoices you received for any debt within one year before September 3, 2024.

14. All documents evidencing payments made by you and within one year before September 3, 2024.

15. All documents evidencing payments made on your behalf, by Alan Christopher Redmond, and within one year before September 3, 2024.

16. All documents evidencing payments made on your behalf, by any person other than Alan Christopher Redmond, and within one year before September 3, 2024.

17. All documents evidencing transfer of your assets, valued at $1,000.00 or more, within five years before September 3, 2024.

18. All documents evidencing transfer of assets (1) regardless of the title of those assets, (2) caused by, or requested by, you, (3) valued at $1,000.00 or more, and (4) within five years before September 3, 2024.

19. All monthly statements for all your accounts at Mid Penn Bank since 2014 to the present.

20. All monthly statements for all your accounts which you cause, or permit, to be used by Alan Christopher Redmond and beginning five years before September 3, 2024 to the present.

21. All monthly statements for any account (1) within your possession or control, regardless of how the account is titled, and (2) five years before September 3, 2024.

22. All powers of attorney and proxy instruments that you signed at any time within five years before September 3, 2024.

23. All leases that you have signed at any time within five years before September 3, 2024.

24. All deeds to all real property located anywhere in the world and recorded during the years 2014 through the present, and which are titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part.

25. All unrecorded deeds to real property located anywhere in the world and which are titled in your name or titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part.

26. All contracts between you and Alan Christopher Redmond.

27. All contracts between you and any relative, former spouse, or insider of Alan Christopher Redmond.

28. All contracts between you and any creditor of Alan Christopher Redmond.

29. All contracts between you and any of your relatives, former spouses, or insiders.

30. All contracts between you and any current or former joint account holder, including Gaia Gebbia.

31. All contracts between you and any of the following entities, or between you and any current or former owner, or current or former member, of the following entities:

    a. Alan Redmond Charitable Foundation
    b. ARC Realty, LLC

4

    c. Bene Market, LLC
    d. Benefits Now, LLC
    e. The Leads House, LLC
    f. National Brokers of America, Inc.
    g. NextGen Leads, LLC
    h. Phase 1 Technology, LLC
    i. Q H Quick Health
    j. The Redmond Group, LLC
    k. Redmond Group Investments, LLC
    l. Redmond Holdings, Inc.
    m. Redmond Holdings 2, Inc.
    n. Redmond Holdings, LLC
    o. Redmond Investments, LLC
    p. Redmond Marketing, LLC
    q. Saoirse, LLC
    r. Saoirse Enterprise, LLC
    s. Saoirse Holdings, Inc.
    t. Seguro Medico, LLC
    u. U.S. Consolidation
    v. U.S. Trifecta Limited Liability Company

32. All federal income tax returns, with all schedules, filed for all business entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following:

    a. ABN Health
    b. ABN Network, LLC
    c. Alan Redmond Charitable Foundation
    d. ARC Realty, LLC
    e. ARC Realty 1, LLC
    f. Bene Market, LLC
    g. Benefits Now, LLC
    h. The Leads House, LLC
    i. National Brokers of America, Inc.
    j. NextGen Leads, LLC
    k. Phase 1 Technology, LLC
    l. Q H Quick Health
    m. The Redmond Group, LLC
    n. Redmond Group Investments, LLC
    o. Redmond Holdings, Inc.
    p. Redmond Holdings 2, Inc.
    q. Redmond Holdings, LLC
    r. Redmond Investments, LLC
    s. Redmond Marketing, LLC
    t. Saoirse, LLC
    u. Saoirse, LLP
    v. Saoirse Enterprise, LLC

w. Saoirse Holdings, Inc.
x. Seguro Medico, LLC
y. The Turner House of Reading, LLC
z. Two High Properties, LLC
aa. U.S. Consolidation
bb. U.S. Trifecta Limited Liability Company

33. All contracts between you and each and every one of the following persons:

a. Teresa Ammon
b. Heather Briscoe
c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz

34. All contracts in your possession, or control, where any of the following persons are a party (even if you are not a party):

a. Teresa Ammon
b. Heather Briscoe
c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz

35. All contracts between you and NP, Inc. and with any owner or inside of NP, Inc.

36. All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.

37. All contracts between you and each of your creditors.

38. All applications for loans, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to World Business Lenders, LLC and its affiliates or subsidiaries, including WBL SPO I, LLC and WBL SPO II, LLC.

39. All trust agreements, or trust indentures, in which you are a trustee or a beneficiary.

6

40. All trust agreements, or trust indentures, in which any of your relatives are a trustee or a beneficiary.

41. All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial authority, or control, or which you filed with a government agency on behalf of another person.

42. All written contracts in which you were a party in your personal capacity and which you signed at any time during the past 10 years, including bank service agreements, accounting services, employment contracts, promissory notes, mortgages, escrow, brokerage, personal guarantees, suretyship agreements, and attorney-client agreements.

43. Your written budget for personal and household expenses.

44. All Uniform Commercial Code filings, in any jurisdiction, which list you as a creditor or debtor.

45. Certificates of title in your name as to any motor vehicle, mobile home, aircraft, or watercraft.

46. Documents evidencing your title in personal property acquired prior to your marriage to Alan Christopher Redmond and which is valued in excess of $1,000.00.

47. All contracts between you and any of the following persons:

    a. Rosewood Custom Cabinetry, LLC
    b. Stone Arch Associates, LLC
    c. Willow Tree Remodeling, LLC
    d. Any creditor of each of the foregoing persons.

7. Because the Subpoena seeks confidential and sensitive commercial information from Kroemmelbein that affects Kroemmelbein's business (collectively, the "Confidential Business Information"), Third Party immediately filed this Motion asking the Court to quash the Subpoena, or to modify it, to ensure that confidential and proprietary information contained within the requested information are not divulged. The motion is timely. Counsel for the Third Party and the Seeking Creditors have attempted to negotiate a revised version of the subpoena.

8. On December 23, 2024, the undersigned counsel reached out directly to Attorney Reedy to voice the concerns as to both the breadth of the subpoenas, designed to harass, annoy or otherwise inconvenience the recipients, as well as the fact that the subpoenas, as written, seek confidential and irrelevant information designed to delay justice and with limited likelihood or utility in resolving the underlying bankruptcy.

9. Despite having more than two weeks prior to issuing such subpoenas (and three weeks before serving them), Attorney Reedy made no changes to such subpoenas.

10. A hearing was held before this Honorable Court on February 11, 2025, wherein this Honorable Court suggested certain limitations to the subpoenas and the examinations be negotiated between the attorneys for the seeking creditors and nonparty's counsel.

11. The undersigned attempted to reach out to confer with Mr. Reedy on or about March 6, 2025.

12. Mr. Reedy refused to narrow the scope of his subpoenas in any way in correspondence to the undersigned dated March 14, 2025.

**A. FACTS LEADING UP TO SUBPOENA**

13. Prior to the Petition Date, the Jordan and Cornerstone were principally engaged in an effort to enforce a disputed judgment in the Berks County Court of Common Pleas and an award of contempt stemming therefrom, respectively.

14. Kroemmelbein is the passive owner of several businesses engaged in the business of real estate investment, insurance sales and the like. Kroemmelbein is further employed as a

principal in the Pottstown School District where she oversees the educational needs of children with special needs.

15. Kroemmelbein has been subpoenaed as part of Reedy's to-date unsuccessful campaign to bring unrelated individuals and entities into the involuntary bankruptcy he filed on behalf of Jason Scott Jordan, Ethan Shalter and Cornerstone Law Firm. The idea behind the subpoena appears to be an effort to find assets of Debtor that the seeking creditor believes are hidden within Ms. Kroemmelbein's business and personal accounts.

16. To date, numerous subpoenas sent to these bank accounts have caused issues with Mr. Kroemmelbein's banks and disruptions to her personal and professional financial interests.

**<u>RELIEF REQUESTED</u>**

17. For all the reasons set forth herein, Kroemmelbein respectfully requests that this Honorable Court enter an order quashing the Subpoena or, in the alternative, modify the Subpoena with adequate safeguards to protect confidential business and/or proprietary information, privileged information, and to protect Kroemmelbein from harassment and abuse of the discovery process.

## BASIS FOR RELIEF

### A. THIRD PARTY HAS STANDING TO REQUEST THE COURT TO QUASH THE DEBTORS' SUBPOENA

18. Any party that "claims some personal right or privilege in respect to the subject matter of a subpoena" has standing to ask the court to quash a subpoena. *Savant Sys., LLC v. Crestron Elecs., Inc.*, 2012 U.S. Dist. LEXIS 39871, at 8 (E.D. Pa. 2012); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash."); *New Park Entertainment L.L.C. v. Electric Factory Concerts, Inc.*, 2000 U.S. Dist. LEXIS 531(E.D. Pa. 2000) (*nonparty alleging that requested documents contained confidential commercial information established sufficient standing to challenge the subpoena*).

19. In the present case, the Subpoena seeks information that Kroemmelbein considers to be highly sensitive, confidential information impacting its business as well as being privileged pursuant to Ms. Kroemmelbein's individual rights. Further, such subpoena is overbroad, unduly burdensome, unlikely to produce relevant or admissible information, and is unlikely to produce admissible or relevant information in this proceeding.

20. Thus, Kroemmelbein has appropriate standing to ask the Court to quash Jordan and Cornerstone's respective Subpoena.

### B. THE COURT SHOULD QUASH DEBTORS' SUBPOENA BECAUSE IT SEEKS SENSITIVE PRICING AND OTHER CONFIDENTIAL BUSINESS INFORMATION.

10

21. The Subpoena seeks confidential information and should be quashed. Bankruptcy Rule 9016 incorporates Federal Rule 45 which provides that a court may quash or modify a subpoena if compliance requires "disclosing a trade secret or other confidential research, development, or commercial information…". Fed. R. Civ. P. 45(d)(3)(B); *see Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (party may obtain "court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45" via a motion to quash). Motions to quash a subpoena are "'entrusted to the sound discretion of the court.'" *See Koch v. Pechota*, 2013 U.S. Dist. LEXIS 161688, at 3 (S.D.N.Y. Nov. 8, 2013) (*quoting In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)).

22. Courts evaluate whether to quash a subpoena through a three-step analysis that requires demonstrations by both the movant and the party seeking discovery. *Coca-Cola Bottling Co. of Shreveport, Inc., v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985). First, the moving party must show that the information sought is a "trade secret" or confidential research, development, or commercial information and "that disclosure of the secret might be harmful." *Coca-Cola*, 107 F.R.D. at 292. After that showing, "the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets [or confidential information] is relevant and necessary to the action." *Id.* (*quoting Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)). Thus, once the movant establishes that "the information sought is confidential and its disclosure might be harmful, then the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets and confidential information is relevant and necessary to its case." *Mannington Mills*, 206 F.R.D. at 528 (*quoting American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987). Without that showing, the discovery request is improper and the subpoena should

be quashed. *Id.* at 529 ("even if the information sought is relevant, discovery is not allowed where no need is shown"). Finally, if the party seeking discovery proves the confidential information is relevant and necessary, the court then "must balance the need for the information against the injury that would ensue if disclosure is ordered." *Coca-Cola*, 107 F.R.D. at 293.

**1. The Subpoena Seeks Sensitive Pricing, Proprietary Technological And Other Confidential Business Information**

23. The Subpoena seeks information that Kroemmelbein considers to be highly sensitive business information: [in particular, pricing and other sensitive aspects of its contracts and dealings with numerous business associates and other individuals with important business relationships to Kroemmelbein and her businesses as well as employment and education well beyond the scope of this proceeding.] *See paragraph 6 supra*.

24. The information is confidential in that it seeks privileged information and/or trade secrets of the companies in which Ms. Kroemmelbein has interests.

25. Thus, this Court should quash the Subpoena because the pricing information sought by the Debtors, in this case, is commercially sensitive information that qualifies as a trade secret and/or confidential commercial information under Federal Rule 45(d)(d)(3)(B).

**2. Jordan and Cornerstone Cannot Show That Requested Information is Relevant and Necessary to Them**

26. The Seeking Creditors, Jordan and Cornerstone, cannot show that the Information is relevant and necessary to them. *See Coca-Cola*, 107 F.R.D. at 292. For that reason alone, the Subpoena should be quashed. For but a few examples;

"All contracts between you and any of your relatives, former spouses, or insiders";

"All deeds to all real property located anywhere in the world and recorded during the years 2014 through the present, and which are titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part"; and

"All contracts between you and the Pottstown School District."

Again, to name but a few of the more egregious and harassing requests. Among other things, information protected by attorney-client privilege has been demanded.

27. Once the movant establishes that "the information sought is confidential and its disclosure might be harmful, then the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets and confidential information is relevant and necessary to its case." *Mannington Mills*, 206 F.R.D. at 528 (*quoting American Standard Inc.*, 828 F.2d at 741). Without that showing, the discovery request is improper and the subpoena should be quashed. Id. at 529 ("even if the information sought is relevant, discovery is not allowed where no need is shown").

28. Jordan and Cornerstone cannot meet their burden of showing why the Information is relevant and necessary and have made absolutely no attempt to offer such showing.

**3. Disclosure Will Gravely Harm Third Party**

29. Because the Debtors cannot show that the Confidential Business Information is relevant and necessary, there is no need for the Court to weigh the need for the information against the potential harm. Yet even if the Court were to do so, it is not difficult to conclude that the harm to Third Party would far outweigh any benefit to the Debtors.

30. If the Confidential Business Information were turned over in compliance with the Subpoena, the risk that it would be disclosed to competitors or other customers is high. The Debtors themselves may be competitors with the Third Party, and the Confidential Business Information could be made available to other interested parties in this proceeding. These future disclosures "will work a clearly defined and serious injury to the moving party." *Dish Network, L.L.C. v. WNET*, 2014 U.S. Dist. LEXIS 5728, at *10 (D. Colo. 2014) (*internal quotation omitted*). Disclosing trade secrets or confidential commercial information to a competitor is more harmful than disclosure to a non-competitor. *Coca-Cola*, 107 F.R.D. at 293; *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 742 (S.D. Ohio 2003).]

31. In addition to the undue burden and expense of producing documents that date back to the Obama administration, the information sought concerns Ms. Kroemmelbein's employment with two school districts. This information has no bearing on the involuntary bankruptcy or Debtor's financial activities. This is but one example.

32. Accordingly, the potential harm to Kroemmelbein is significant and would far outweigh any benefit to the Debtors. For this and all the reasons discussed above, this Court should quash the Subpoena pursuant to Federal Rule 45(d)(3)(B).

**C. ALTERNATIVELY, IF THE COURT UPHOLDS THE SUBPOENA, IT SHOULD BE MODIFIED TO ENSURE ADEQUATE PROTECTION OF THE CONFIDENTIAL BUSINESS INFORMATION.**

33. If the Court does not quash the Subpoena, Kroemmelbein requests this Court modify the Subpoena to craft a procedure for ensuring that privileged and confidential information will be adequately protected, and all other information will be limited to that which is admissible and likely to lead to relevant information regarding the proceedings.

34. Courts in similar situations have crafted protective order mechanisms that can strike an appropriate balance between confidentiality protection and document and information production. *Centurion Indus., Inc.*, 665 F.2d at 326; *Coca-Cola*, 107 F.R.D. at 300 (ordering production of trade secrets but only after the parties negotiated a more stringent protective order to prevent disclosure of sensitive trade secrets to possible competitors); *see also Rywkin v. New York Blood Ctr.*, 1998 U.S. Dist. LEXIS 13490 (S.D.N.Y. 1998), aff'd., *Rywkin v. New York Blood Ctr.*, 1999 U.S. Dist. LEXIS 9570 (S.D.N.Y. 1999).

35. A protective order is required because the scope of the discovery not only predates Kroemmelbein's marriage to Debtor, but it predates Kroemmelbein having even met Debtor by several years. Further, the materials requested are so vaguely-worded and overly broad as to exist solely for the purpose of harassment and delay.

36. Further, the subpoena issued to Kroemmelbein clearly imposes an undue burden and significant expense upon Kroemmelbein in violation Federal Rule 45.

37. Accordingly, if this Court does not quash the Subpoena, it should therefore limit the discovery so that any documents that are produced are limited in scope as to both time and nature and quantity. All contracts between Kroemmelbein and any creditors she has ever had over the course of ten years, for example, is overly broad and unlikely to result in any relevant information. Further, accumulating the information would come at great expense. Finding leases, credit card statements/agreements and student loan payment information dating back to before she met Debtor or knew of Debtor's existence is clearly inappropriate to the subpoenaing creditor's ostensible goals.

38. "If the subpoenaed nonparty demonstrates a 'clearly defined and serious injury' for a claim of undue burden under Rule 45(d)(3)(A), the Court conducts a balancing test… in which it weighs the subpoenaing party's interest in disclosure and the subpoenaed nonparty's interest in non-disclosure to determine whether the burden on the subpoenaed nonparty is, in fact, undue." *In re Domestic Drywall Antitrust Liquidation*, 300 F.R.D. 234, 239 (U.S. Dist. Ct., E.D.P.A. 2014).

39. The Court further held that "[i]f the subpoenaed nonparty demonstrates a 'clearly defined and serious injury' for a claim of protection under Rule 45(d)(3)(B), an additional step is required. The burden shifts to the subpoenaing party to show 'a substantial need for the testimony or material that cannot be otherwise met without undue hardship,' Fed.R.Civ.P. 45(d)(3)(C)(i), and demonstrate 'that the subpoenaed [nonparty] will be reasonably compensated,' *id.* 45(d)(3)(C)(ii)." *Id.*

40. Here, the injury is both clearly defined and serious. In addition to unreasonable burden and cost, the requested materials are designed to harass and annoy and have little likelihood of resulting in material or information relevant or material to seeking creditors' claims.

## CONCLUSION

WHEREFORE, Third Party Shannon Kroemmelbein respectfully requests the entry of an order in the form attached hereto as Exhibit A and further asks this Honorable Court to grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

**RUSH LAW GROUP, LLC**

By:     **/s/ William R. A. Rush**

Date: March 31, 2025

William R. A. Rush, Esquire
Attorney I.D. No. 209596
38 N. 6th Street, P.O. Box 758
Reading, PA 19603-758

17