**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| Alan Christopher Redmond | § | Case No.  24-13093 (PMM) |
| | § | |
| Debtor. | § | |
| | § | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE FIRST INTERIM APPLICATION OF CIARDI CIARDI & ASTIN, COUNSEL FOR THE DEBTOR, FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM OCTOBER 1, 2024 THROUGH APRIL 30, 2025**

The United States Trustee ("U.S. Trustee"), by and through counsel, and in furtherance of his duties pursuant to 28 U.S.C. § 586(a)(3) and (5), respectfully submits this objection ("Objection") to the *First Interim Application for Compensation for Services Rendered and Reimbursement of Expenses for the Period From October 1, 2024 Through April 30,* 2025 (the "Fee Application") (ECF No. 374) filed by counsel for the Debtor, Ciardi Ciardi & Astin ("CCA").

1.  This Court has jurisdiction to hear and determine this Objection.

2.  Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by this Objection.

**BACKGROUND**

**A.      The Bankruptcy Case.**

4.      On September 3, 2024, a Chapter 11 Involuntary Petition (the "Petition") was filed against Alan Christopher Redmond ("Redmond" or the "Debtor") by Joel Ready, Esq. ("Ready") on behalf of petitioning creditors James Scott Jordan ("Jordan"), Cornerstone Law Firm, LLC ("Cornerstone"), and Ethan Shalter (together, "Petitioning Creditors"). *See* ECF No. 1.

5.      On October 2, 2024, an Order for Relief was entered. *See* ECF No. 2. Since that date, the Debtor has acted as a debtor in possession of his assets and manages his affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

6.      On October 1, 2024, the Court entered an Order approving the application of the Debtor to employ Ciardi Ciardi & Astin ("CCA") as counsel over the objection of the Petitioning Creditors. *See* ECF No. 89.

7.      On October 29, 2024, the Debtor filed an application to employ Rush Law Group, LLC as special counsel for related state and federal proceedings. *See* ECF No. 103. The Debtor withdrew this application on December 19, 2024, after facing an objection by the Petitioning Creditors and filing two supplemental certifications that did not fully resolve informal comments provided by the U.S. Trustee. *See* ECF Nos. 106, 122, 125, 145.

8.      After the November 22, 2024, section 341(a) meeting of creditors, the Petitioning Creditors filed multiple adversary proceedings against the Debtor, which entailed extensive discovery of the Debtor and third parties and motions practice to resolve disputes. *See* Adv. Pro. Nos. 24-00144, 24-00145. The U.S. Small Business Administration also filed an adversary proceeding. *See* Adv. Pro. No. 25-00119. At least one other creditor has received an extension of

time to file an adversary proceeding against the Debtor through September 15, 2025. *See* ECF No. 377.

9. On January 22, 2025, the Debtor filed its First Plan of Reorganization and Disclosure Statement, and a Motion to Approve the Disclosure Statement. *See* ECF Nos. 221, 222, 223.

10. On January 30, 2025, the Petitioning Creditors filed a Motion to Stay Plan Confirmation Process and for Case Management Order until after discovery and investigations are complete, among other grounds. *See* ECF No. 248. This Motion was later withdrawn. *See* ECF No. 363.

11. On February 18, 2025, the Petitioning Creditors filed an objection to the Motion to Approve the Disclosure Statement. ECF No. 283.

12. On March 25, 2025, the Debtor filed a First Amended Plan and First Amended Disclosure Statement. *See* ECF Nos. 310-313.

13. On March 31, 2025, the Petitioning Creditors filed an objection to the First Amended Disclosure Statement. *See* ECF No. 318.

14. On April 1, 2025, the Debtor filed Exhibit D to the First Amended Disclosure Statement. *See* ECF No. 323.

15. On May 1, 2025, the Debtor filed two praecipes to withdraw the First Amended Disclosure Statement and First Amended Plan. *See* ECF Nos. 358-359.

16. Although the U.S. Trustee did not file a formal objection to any of the filed Disclosure Statements or Plans, the U.S. Trustee provided CCA with informal comments as to deficiencies in both documents during this time period, as reflected in the billing statements attached as Exhibit A to the Fee Application. Particularly, during the disclosure statement stage,

the Debtor never provided the parties, the U.S. Trustee, or the Court with any document proving that the Debtor's wife could fund plan payments.

**B.      The Fee Application and Objections Thereto.**

17.      On May 30, 2025, CCA filed the Fee Application.  *See* ECF No. 374.  Pursuant to the Fee Application, CCA requests fees for the period between October 1, 2024 and April 30, 2025 in the amount of $267,212.50 and expenses in the amount of $5,180.50 for a total of $272,393.00. *See id.*

18.      On June 6, 2025, the Petitioning Creditors emailed the U.S. Trustee a letter raising certain objections to the Fee Application and asking the U.S. Trustee to join its forthcoming objection. The same day, the U.S. Trustee responded that it would determine whether to oppose or respond to the Fee Application independent of the Petitioning Creditors' position.

19.      On June 9, 2025, CCA filed a Motion to Withdraw as Counsel for Debtor and Request that the Case be Stayed for 60 days. *See* ECF No. 379.

20.      On June 11, 2025, the U.S. Trustee emailed CCA to request that the Debtor agree to extend the time for the U.S. Trustee to respond to the Fee Application from June 13, 2025 to June 20, 2025. The U.S. Trustee also requested that CCA email the billing statements attached as Exhibit A in a searchable electronic format. CCA agreed to extend the U.S. Trustee's response deadline and provided Exhibit A as an Excel file the same day.

21.      On June 13, 2025, the Petitioning Creditors filed an Objection to the Fee Application. The Objection argues that the Court should disallow compensation for services that were not reasonably likely to benefit the debtor's estate or necessary to administration of the case, including the $48,290.00 sought for filing and withdrawing unconfirmable plans. Objection at 2-3. The Objection also notes that, during the course of the extensive Rule 2004 discovery, the

4

Petitioning Creditors learned that CCA received $35,000.00 in payments from Seguro Medico, LLC. *Id.* at 3-4. These payments violated Federal Rule of Bankruptcy Procedure 2016 because they were not disclosed in the Fee Application. *Id.* The Objection further notes that CCA does not comply with Local Rule 2016-2 by using improper project categories and using materially misleading project descriptions. *Id.* at 4-6. Finally, the Objection identifies two instances where more than one CCA professional attended a hearing or conference without any explanation. *Id.* at 6-7.[1]

22.    The U.S. Trustee objects to certain of the fees requested by CCA in the Fee Application as set forth below.

## **OBJECTION**

23.    11 U.S.C. § 330(a)(1) provides that after notice and a hearing, the court may award to a professional person employed under 11 U.S.C. § 327 "reasonable compensation for actual, necessary services rendered" by such a professional person.  *See* 11 U.S.C. § 330(a)(1).

24.    In assessing the reasonableness of compensation, section 330 of the Bankruptcy Code sets forth six (6) factors that are to be considered.  *See* 11 U.S.C. § 330.  These factors, focusing on the nature, extent, and value of the services provided by the professionals at the time incurred, include:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

---

[1] The Petitioning Creditors filed an Amended Objection that is substantively similar to their first objection but clarifies that the U.S. did respond to the June 6, 2025 letter. *See* ECF No. 387.

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. § 330(a)(3); *see also In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009).

25.     The standards set forth in § 330 of the Bankruptcy Code have been interpreted to provide that, "[t]he court may award 'reasonable compensation for actual, necessary services rendered' by . . . professionals 'based on (i) nature of the services, (ii) extent of the services, (iii) value of the services, (iv) time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases.'" *In re Channel Master Holdings, Inc.*, 309 B.R. at 861 *quoting In re Busy Beaver Building Centers, Inc.*, 19 F.3d at 840; *see also In re Fleming Companies, Inc.*, 304 B.R. at 89 (same). A bankruptcy court, however, "'should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case.'" *In re Fleming Companies, Inc.*, 304 B.R. at 89 (quoting 11 U.S.C. § 330(a)(4)(A)).

26.     It should be noted that professional fees may not be awarded unless and until the applicant shows that there is a reasonably likely benefit to the estate. *See* 11 U.S.C. § 330(a)(4)(A)(ii); *In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) (noting that fees are compensable where there is a reasonable chance of success that outweighs the cost in pursuing the action and at the outset, it was not clear that success was remote). In addition, the fees must be

reasonable and necessary. Thus, benefit to the estate and necessity is the critical threshold issues before the court may award any compensation. *See* 11 U.S.C. § 330(a)(4)(A)(ii); *see also In re Lederman Enters.*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (where the Court held that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative). The burden rests squarely with the party seeking compensation to prove that the compensation and expenses sought were reasonable and necessary. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995); *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Ark. Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)); *Johnson v. Holiday Express Inc.,* 488 F.2d 714 (6th Cir. 1974).

27. In analyzing whether a movant has satisfied its burden for approval of compensation, a bankruptcy court should evaluate the "two-tier[ed] test for determining whether and in what amount to compensate professionals. . . [f]irst, the court must be satisfied that the professionals performed actual and necessary services. . . [s]econd, the court must assess a reasonable value for those services." *In re Channel Master Holdings, Inc.*, 309 B.R. at 861 (internal quotation omitted); *see also In re Fleming Companies, Inc.*, 304 B.R. at 90.

28. The *Busy Beaver* opinion directs that professionals retained by a debtor "exercise[] the same 'billing judgment'" as they do when billing services for clients who are not involved in a bankruptcy case, such as "by, for example, writing off" charges "for which analogous non-bankruptcy clients typically decline to pay." *See In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d 833, 856 (3d Cir. 1994). This directive applies to the amount of time billed for professional services as well as to the amount of charges for those services.

29. Applicants may not fail to supply sufficient information to enable proper analysis of the services rendered as required by Fed. R. Bankr. P. 2016(a), which requires that an entity

7

seeking compensation for services set forth a detailed statement of the services rendered, time expended, and expenses incurred to allow the determination of whether the services were actual and necessary. *See id.* at 845. Professionals should not be compensated for excessive, duplicative, or redundant services. *Id.*

30. Here, it appears that certain of the fees requested by CCA were not reasonably likely to benefit the estate including, but not limited to, $8,632.50 for an application to employ special counsel that was eventually withdrawn, as well as between $48,290.00 and $57,257.50 for preparation of unapproved disclosure statements and unconfirmable plans that were later withdrawn. Thus, the Court should reduce or deny the amount of fees requested by CCA.

31. Exhibit A to the Fee Application shows that between October 8, 2024 and December 19, 2024, CCA spent almost 17 hours and $8,632.50 on drafting the application and two supplemental declarations to employ Rush Law Group, LLC as special counsel before the application was ultimately withdrawn. *See* attached Exhibit 1, excerpts of CCA's billing statements related to employing Rush Law Group. Of the 17 hours, Nicole Negrelli billed 15.30 hours, and associate Daniel Siedman billed a total of 1.6 hours. *See id*.

32. The U.S. Trustee objects to these fees because they were not reasonably likely to benefit the estate, as the supplemental declarations did not address all of the U.S. Trustee's concerns, and Rush Law Group ultimately was not retained. Additionally, many of the tasks billed by Ms. Nigrelli were unreasonable because they could have been billed by Mr. Siedman or another associate to avoid overcharging the Debtor for the routine work of preparing an employment application. *See In re Henson*, 637 B.R. 13, 18-19 (Bankr. S.D. Ohio 2022) (citing *In re Ferkauf, Inc.*, 42 B.R. 852, 858 (Bankr. S.D.N.Y. 1984)) (noting that counsel should push work down to the lowest available rate for which such work can be competently performed or otherwise adjust

8

the billing accordingly so that clients are not excessively billed for the level of the work performed").

33.     Further, Exhibit A to the Fee Application shows that between October 3, 2024 and April 30, 2025, CCA spent over 103 hours and approximately $57,257.50 on drafting the different versions of the plans and disclosure statements, including discussing issues and objections with creditors and the U.S. Trustee. *See* attached Exhibit 2, excerpts of CCA's billing statements related to time spent on the plans and disclosure statements. The Fee Application posits that CCA billed 89.3 hours for a total amount of $48,290.00 for the plans and disclosure statements. Regardless of this discrepancy, the U.S. avers that the Court should deny or substantially reduce the amount of fees for which CCA may be compensated.

34.     The most recently filed versions of the plan and disclosure statement did not satisfy sections 1125 and 1129 of the Bankruptcy Code and were withdrawn without any indication of whether the Debtor plans on refiling updated versions that can be approved and confirmed. Now that CCA also seeks to withdraw from representing the Debtor, the estate should not bear the significant expense borne by three failed plans and disclosure statements prepared by CCA since these services were not reasonably likely to benefit the estate. Courts can reduce or deny compensation for services performed after the point the professional knew or should have known that the services would not be successful, particularly where reorganization is unsuccessful or dubious. *See In re Mushroom Transp. Co., Inc.*, 486 B.R. 148, 165 (Bankr. E.D. Pa. 2013) (substantially reducing special counsel's fees when counsel objectively should have realized its efforts to collect judgments were dubious); *see also In re Lederman Enters., Inc.*, 997 F.2d at 1323-24 (holding that if it is clear to debtor's counsel that the prospect of reorganization was unrealistic or futile, professional fees may be disallowed). At this juncture, the U.S. Trustee is not

9

confident that the Debtor will be able to successfully reorganize under chapter 11. Thus, the U.S.

Trustee recommends that the fees requested in the Fee Application be denied or reduced as set

forth above.

WHEREFORE, the U.S. Trustee respectfully requests that the Court sustain the Objection

and grant other relief as it deems just and necessary.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: */s/ Samantha S. Lieb*
Samantha S. Lieb
Trial Attorney

Dated: June 20, 2025