# Exhibit A

# Exhibit A

Page 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA


IN RE:                 : CASE NO.:
ALAN CHRISTOPHER       : 24-13093-PMM
REDMOND,               :
                       : CHAPTER 11
    Debtor.            :


- - -

WEDNESDAY, JULY 9, 2025

- - -

EXAMINATION of STEPHANIE

MILLER, taken pursuant to Notice, was

held at 8500 Allentown Pike, Suite 3,

Blandon, Pennsylvania 19510, commencing

at 10:09 a.m., on the above date, before

Todd Thorpe, a Court Reporter and Notary

Public in and for the Commonwealth of

Pennsylvania.

- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



Page 2

APPEARANCES:
(In Person)

CORNERSTONE LAW FIRM, LLC
BY:  JOEL A. READY, ESQUIRE
8500 Allentown Pike
Suite 3
Blandon, PA 19510
(610) 926-7875
joel@cornerstonelaw.com
Representing Jason Scott Jordan

VAN DER VEEN, HARTSHORN & LEVIN
BY BRUCE L. CASTOR, JR., ESQUIRE
1219 Spruce Street
Philadelphia, PA 19107
(215) 546-1000
bcastor@mtvlaw.com
Representing Stephanie Miller

ALSO PRESENT:
TIMOTHY E. POSSENTI, ESQUIRE, Co-counsel
with Van Der Veen, Hartshorn

Page 3

- - -
I N D E X
- - -
TESTIMONY OF:  STEPHANIE MILLER    PAGE
   BY MR. READY.......................4

- - -
E X H I B I T S
- - -
NO.        DESCRIPTION              PAGE
Miller-1  Subpoena....................18
Miller-2  Bene Resolution.............21
Miller-3  2021 Tax Form...............79
Miller-4  Articles of Organization...112
Miller-5  Participant Profile........117
Miller-7  IRS Document...............135
Miller-8  Seguro Revenues............102

Page 4

THE REPORTER:  Good morning. The time is 10:09 a.m. and we are on the record.  This is Todd Thorpe.  I'm the court reporter with Magna Legal Services, and I'm going to start this morning by swearing in the witness.

Ma'am, if I could ask you to raise your right hand?

- - -

STEPHANIE MILLER, after having been duly sworn, was examined and testified as follows:

- - -

THE WITNESS:  I do.

THE REPORTER:  Thank you very much.

Counsel.

MR. READY:  All right.  Thank you.

- - -

EXAMINATION

- - -

BY MR. READY:

Page 5

Q.  Ms. Miller, good morning.

A.  Good morning.

Q.  I know we met a moment ago. My name is Joel Ready.  I represent Jason Scott Jordan, Ethan Schulter (ph), and Cornerstone Law Firm LLC in a bankruptcy with Alan Christopher Redmond.  You understand you're here today in response to a subpoena for a rule 2004 examination.

A.  Okay.

Q.  You understand that that's what you're here for.  Is that correct?

A.  Yes.

Q.  Okay.  So this will be, of course, stenographically recorded. Meaning that everything you say, our court reporter is going to take down. It's also being audio recorded in front of me and with his recorder for our records.  Do you understand that?

A.  Yes.

Q.  Okay.  Have you ever had your deposition taken before?

MAGNA
LEGAL SERVICES

Page 10

for a rule 2004 examination here today?

A.   Is that this court order thing, or is that the original subpoena?

Q.   Yeah, I can -- I can rephrase if it's not clear.

A.   Because I don't understand the 2004.

Q.   For sure.  That's fair.  2004 is a rule in bankruptcy court that allows us to send a subpoena that a court approved.  So all of these are a little interchangeable.  Let me ask it a different way.  When was the first time you heard about this bankruptcy?

A.   I believe it was in January.

Q.   Okay.

A.   No.  No.  December.

Q.   Okay.  In December of last year?

A.   2024, yes.

Q.   Who told you about it?

A.   I first received a phone call from Attorney Bill Rush --

Q.   Okay.

Page 11

A.   -- who indicated that I might be receiving a subpoena about this bankruptcy case.  And that if I did, I was to contact him, that he would be representing me.

Q.   Has Bill Rush represented you in the past?

A.   He has represented the company, and at times, Mr. Redmond would say, you know, she's covered under the company.

Q.   What company are you referring to?

A.   The NBOA or Bene Market?

Q.   Okay.

A.   You know.

Q.   Okay.  So Bene Market ceased operations when?

A.   I am unsure, because I retired in May of 2020 and was still contacted by Mr. Redmond to do projects, but I haven't been with the company for five years.

Q.   Okay.  So when Mr. Rush

Page 12

contacted you and said he'd be representing you, did he tell you what company you were falling under in that representation?

A.   No.

Q.   Okay.  Did you discuss with him the terms of your representation? Did he say you were going to pay for it? Somebody else was?

A.   He sent out an email that apparently was copied to a number of different people, indicating that you might be sending subpoenas to these people, which I was one of, and that he would be representing anybody that's on this email.

Q.   Okay.  Fair enough.  When was the next time you heard about this bankruptcy?

A.   January of 2024.  And I did receive a subpoena at my house.

Q.   January of 2025, correct?

A.   2025, yes, I apologize.

Q.   That's okay.  Just to

Page 13

clarify, so in January, the following month, you received a subpoena at your house?

A.   Correct.

Q.   How did you receive it?

A.   A lady came and delivered it.

Q.   Okay.  Did she hand it to you?

A.   Yes.

Q.   Okay.  And what did you do with the subpoena?

A.   I contacted Mr. Rush and sent him a copy.  I also indicated, because it had a date where I was going to be out of town, so I indicated that I would be out of town.

He instructed me at that time.  He said, Steph, this is all I need you to do.  Make a list on the right-hand side that says yes or no.  Indicate what things you have and what things you don't have and send it back to me, and I'll take care of it from there.

Q.   Okay.  Did you do that?

**MAGNA**
LEGAL SERVICES

Page 14

A. Yes.

Q. Okay. When roughly did you send it back to him?

A. I would say approximately the 26th of January '25.

Q. Okay. What happened next? What did you hear next?

A. Nothing.

Q. Okay. Did Mr. Rush ever ask you to produce documents related to that subpoena?

A. No.

Q. He just told you to give him information about what you did and didn't have. Is that right?

A. Correct.

Q. Okay. Did he tell you about any obligation to show up to this examination?

A. No. I had -- I'm not sure if it was a text or an email that I sent to him, because I was going on a cruise with my family, and I was going to be out of town from February 1st to February 8th,

Page 15

and just said, I, you know, want to reiterate I'm not going to be in town. He said no problem.

Q. Did he tell you that it was going to be rescheduled or --

A. No.

Q. Okay. He just said, no problem.

A. Uh-huh.

Q. Okay. And that's -- that's a yes?

A. Yes.

Q. Okay. Sorry. Just the uh-huhs can get you. Okay. All right. Have you had any employment with Seguro M dico LLC?

A. Yes.

Q. Okay. How long were you employed there?

A. On and off. That's the -- that's the company that I believe it was transitioning to as I left, and on and off over, I would say three years, Mr. Redmond would call me and say, hey, I --

Page 16

hey, I have a project I need done. Will you work on it for me? So I would work out of my home. I did not -- with probably a couple minor exceptions, I wasn't going into the office or anything. I was just working on projects from my house.

Q. Did you -- how were you paid for those projects? Was it a 1099 basis?

A. No, employee W-2.

Q. Okay. So you were on some sort of payroll, but it just wasn't -- you weren't always being paid. It was only when you had projects?

A. Correct.

Q. Okay. Can you approximate how many projects you were paid for over the last four years by Seguro?

A. Over the last two years, I would say probably none. Okay, because I haven't been doing it anymore. Over the prior two years, it just -- it just varied. Sometimes he had me doing something five days a week for two hours

Page 17

in the morning. Other times it was a do this, this, this, and you're done. It was just sporadic.

Q. Okay. Why nothing in the last two years?

A. In - in 2023 -- I'm just searching for the dates in my mind. In 2023, Mr. Walsh called and said we have no more projects for you. So that was it.

Q. When you say, Mr. Walsh, you're referring to Arthur Walsh.

A. Arthur Walsh, yes.

Q. All right. Let me clarify one thing. I'm sorry. You mentioned your interactions with Mr. Rush. After that interaction at the beginning of February, did you have any further contact with him about documents, appearances, anything at all?

A. On May 1st, he sent me a text and said, hey, do you have time to talk? And at that point in time, I had engaged attorneys, and I said he needed to go

MAGNA
LEGAL SERVICES

5 (Pages 14 to 17)

Page 18

through my attorneys.

Q.  Got it.  So you had no discussion with him directly at that -- after that?

A.  No, sir.

Q.  Okay.  Did he tell you at any point that you were being threatened with, or had sanctions entered against you by the bankruptcy court?

A.  Absolutely not.

Q.  Okay.

MR. READY: All right.  I'm going to go ahead and show you a copy.  I'm sorry.  I'll mark this as, I'm sorry, Number 1.

- - -

(Whereupon, Exhibit Miller-1 was marked for identification.)

- - -

MR. CASTOR:  Exhibit 1.

MR. READY:  Sorry?

MR. CASTOR:  Just Exhibit 1?

MR. READY:  Let's call it Miller-1 just to keep it consistent

Page 19

with our other copy as well.

So first of all, do you recognize this document?

THE WITNESS:  I have not seen this document before.  I saw a similar one in January, but not -- these are not the dates that -- it was the January one that came out. I have not seen this before.

BY MR. READY:

Q.  Okay.  So just to be clear, before sitting here today, you've never seen a copy of this specific order?

A.  No, I have not.

Q.  Okay.  I'm going to show you page two of this document that's in front of you, in Miller-1.

A.  Okay.

Q.  Now, there was a -- if you want to flip there.  There was a check I handed you earlier, which is a different check, but have you -- did you receive this check?

A.  I did receive that check.  I

Page 20

believe I was in -- no, I don't believe I received this check.  I believe Mr. -- no.

Q.  Let me just ask this. Before --

A.  This was referred to before.

Q.  Yeah.

A.  But I don't know that I saw it.

Q.  Fair enough.  Let me put it like this.  Before the check I handed you at the beginning of our conversation here this morning.  Have you ever received a check from Cornerstone Law Firm?

A.  Not that I'm aware of.

Q.  Okay.  So I'm going to point you now to schedule A, these pages, and I believe these were produced to me by your attorney.  Do you recognize these answers in blue?

A.  Yes.  Those are my answers.

Q.  Okay.  Other than your attorneys, did anyone help you in pulling together these answers and providing

Page 21

them?

A.  No.

Q.  Okay.  You submitted all these answers under oath and to the best of your knowledge.

A.  Correct.

MR. READY:  Okay.  I am going to go to, what we'll mark as Miller-2.

- - -

(Whereupon, Exhibit Miller-2 was marked for identification.)

- - -

BY MR. READY:

Q.  I'll take that one back from you.  I will provide each of them to -- I think we have enough for everybody.

And actually, I tell you what, before I -- before I get to that, let me ask you a few more things.  Sorry.  I'm sorry to skip around.  Back on Miller-1, item number 11.  I'll just read it to you --

**MAGNA**
LEGAL SERVICES

# Exhibit B

# Exhibit B

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

- - - -

MARTIN J. WALSH,                )
SECRETARY OF LABOR,             )
UNITED STATES DEPARTMENT        )
OF LABOR,                       )
                                )
          Plaintiff,            )
                                ) Civil Action No.
     -vs-                       ) 5:20-cv-04265
                                )
BENE MARKET, LLC,               )
NATIONAL BROKERS OF             )
AMERICA, INC., ALAN             )
REDMOND, and STEPHANIE          )
MILLER,                         )
                                )
          Defendants.           )


- - - -

REMOTE DEPOSITION OF:  STEPHANIE MILLER

- - - -


DATE:  April 29, 2021
       Thursday, 9:45 a.m.


REPORTED BY:  Kristin Lytle, RPR
              Notary Public
              Reference No. KL77522



STEPHANIE F. MILLER                                    April 29, 2021
MARTIN J. WALSH vs BENE MARKET                                     2

REMOTE DEPOSITION OF STEPHANIE MILLER, a witness, called by the Plaintiff for examination, in accordance with the Federal Rules of Civil Procedure, taken by and before Kristin Lytle, RPR, a Court Reporter and Notary Public in and for the Commonwealth of Pennsylvania, on Thursday, April 29, 2021, commencing at 9:45 a.m.

APPEARANCES:

        REMOTELY FOR THE PLAINTIFF:
   Jennifer L. Bluer, Esq.
   bluer.jennifer.l@dol.gov
   U.S. DEPARTMENT OF LABOR
   Office of the Solicitor
   1835 Market Street
   Mailstop 22/SOL
   Philadelphia, PA  19103
   215.861.5146


        REMOTELY FOR THE DEFENDANTS:
   William Rush, Esq.
   wrush@rushlawberks.com
   RUSH LAW GROUP
   38 North 6th Street
   Reading, PA  19601


        ALSO PRESENT:
   Jason Mowday, Department of Labor



                    *   I N D E X   *

Examination by Ms. Bluer   - - - - - - -   4
Examination by Mr. Rush    - - - - - - - - 170


Certificate of Court Reporter  - - - - - 172
Errata Sheet   - - - - - - - - - - - - - 173



            *   INDEX OF EXHIBITS   *

Exhibit 1 - advertisement  - - - - - - - 130
Exhibit 2 - Indeed.com advertisement - - 133
Exhibit 3 - Mighty Recruiter ad  - - - - 133
Exhibit 4 - sign-in sheets - - - - - - - 140
Exhibit 5 - Interrogatories  - - - - - - 142



Complaint.

MS. BLUER:  As I will.  I will follow up with my deficiency letter and, you know, my motion to -- you didn't answer the question.

MR. RUSH:  If she can answer it.

MS. BLUER:  I mean, she has an attorney representing her also who helped her, you know, respond to the discovery.

MR. RUSH:  I object to that statement.  That is  patently ridiculous.  I in no way helped her respond to any discovery.  The answers are her own.  Don't accuse me of something like that.  All right.  You want to talk about violations and deficiencies, don't start.  Don't start.  You know the rules.  If you want to continue this in a civil manner, please do.

BY MS.  BLUER:

Q.    Ms. Miller, are you aware of any affirmative defenses that you intend to



STEPHANIE F. MILLER
MARTIN J. WALSH vs BENE MARKET

raise in your defense in this case?

A.    I have no knowledge of any of this.  I have not seen a Complaint.  I have not seen an answer.  I don't know.  I can't answer this because I don't know.

Q.    You haven't seen the Complaint?

A.    No.  I wasn't even aware of the Complaint.

MR. RUSH:  Prior to my involvement.

THE WITNESS:  Yeah.  Prior to last week and still have not seen it.

BY MS. BLUER:

Q.    When Mr. Bambrick was representing you, you didn't see the Complaint at that time either?

A.    Mr. Bambrick never called me.  I have no idea -- I had no idea of any of this.

Q.    When did you first become aware of this case?

A.    Last Wednesday.  Last Wednesday I was given the Interrogatory and asked to answer it.  I answered it on Thursday.  And that was my complete involvement.



STEPHANIE F. MILLER
MARTIN J. WALSH vs BENE MARKET

April 29, 2021
154

Q.      You have never had any discussions with Mr. Redmond about the suit that was filed by the Department of Labor?

A.      No.

MS. BLUER:  So Mr. Rush, you have not given Ms. Miller a copy of the Complaint and the answer either?

MR. RUSH:  Without getting into any attorney-client privileges, I can say she hasn't reviewed every document in this case.  I have to leave it there at this time.  As of the time that we provided answers to the Interrogatories, no, she had not.

BY MS. BLUER:

Q.      So Interrogatory Number 5 says:  List the date that National Brokers of America, Inc., and Bene Market were established and, if applicable, ceased operation.  Identify all documents that memorialize this information.

And I know that you have testified roughly to your memory as to when National Brokers stopped selling insurance and why Bene Market started.



800.211.DEPO (3376)
EsquireSolutions.com