# EXHIBIT C

{01286051 }

Page 1

IN THE UNITED STATES

BANKRUPTCY COURT

FOR THE EASTERN DISTRICT

OF PENNSYLVANIA

* * * * * * * *

IN RE:                          *   Bankruptcy

ALAN CHRISTOPHER REDMOND,  *   No.: 24-13093-PMM

    Debtor                      *   Chapter

                                *   11

        * * * * * * * * * * * * * * * * * *


RULE 2004 EXAMINATION

OF

C. MALCOLM SMITH, III, INDIVIDUALLY

AND AS

CORPORATE DESIGNEE FOR C. MALCOLM SMITH & COMPANY,

P.C.

June 19, 2025

Any reproduction of this transcript is prohibited

without authorization by the certifying agency.



Page 2

RULE 2004 EXAMINATION OF

C. MALCOLM SMITH, III, INDIVIDUALLY AND AS CORPORATE

DESIGNEE FOR C. MALCOLM SMITH & COMPANY, P.C., taken

on behalf of the Plaintiff herein, pursuant to the

Rules of Civil Procedure, taken before me, the

undersigned, Jessica Ashman, a Court Reporter and

Notary Public, in and for the Commonwealth of

Pennsylvania, at the offices of Cornerstone Law Firm,

LLC, 8500 Allentown Pike, Suite 3, Blandon, PA, on

Thursday, June 19, 2025 beginning at 9:03 a.m.



A P P E A R A N C E S


SUSANNA M. FULTZ, ESQUIRE

Barley Snyder

2755 Century Boulevard

Wyomissing, PA  19610

     COUNSEL FOR C. MALCOLM SMITH, III


JOEL A. READY, ESQUIRE

Cornerstone Law Firm, LLC

8500 Allentown Pike, Suite 3

Blandon, PA  19510

     COUNSEL FOR JASON SCOTT JORDAN, CORNERSTONE LAW

     FIRM, LLC, AND ETHAN SHALTER



MAGNA
LEGAL SERVICES

representing the other parties.  And he said, you know, it would make sense.  I probably save some money if Bill represented me, too.  And so I thought okay.

Q. And Alan was paying for that representation. Is that right?

A. I don't know.

Q. Oh, okay.  You're not sure who paid for it?

A. No.

Q. You didn't pay for it, though. Correct?

A. No.

Q. Okay. What did Mr. Rush tell you about what you'd have to provide in terms of documents in this case?

A. He didn't tell me anything.

Q. Okay.

A. He didn't tell me anything.

Q. Okay. When did he tell you, if at all, that there was a subpoena served on you?

A. He didn't.

Q. Okay.

A. I received a subpoena while Barley Snyder was representing me, and that subpoena got squashed, was



Page 13

my understanding, because it was improperly served. Sometime after that, I think around April, I got a copy of a subpoena and I sent it to Bill Rush.  And Bill said --- I said, what is this?  What do I need to do?  And his reply was, you don't need to worry about that.  I said, okay.

Q. Was that sent by email?

A. Email.

Q. Okay.

A. And that was that.  The next thing I knew about a subpoena was I got it from you around May 2nd or so.  I got it three days before you wanted me here.  And that was the next time.

Q. From Bill Rush?

A. No, from you.

Q. Oh.  When I forwarded you the subpoena?

A. You mailed it to us in May.  It was very early May, and I was leaving for vacation in a couple of days.  And it was like, what is this?  So it was a --- pretty much a surprise.

Q. Did you speak --- that --- so let me just a couple questions.  That subpoena you received by mail in early May.  That was another copy of what Bill Rush had sent to you or that you sent to Bill Rush and asked about earlier?



Page 14

A. I don't know if it was the same thing.  I didn't examine it that closely.  There was a lack of communications from Bill Rush to me.  I wasn't real happy.  But anyway.

Q. The subpoena that you received in the mail, did you ask Bill Rush what to do with it?  The one that was, you said, a few days before vacation?

A. Well, yes.

Q. What did he tell you to do with it?

A. Oh, he said I was going to have to do it.  And I'm like, well, how am I going to do --- I said, I'm not going to be here.  So that he said he would get it rescheduled.  And I had some choice words over that whole thing, but, you know, that was the end of that relationship, basically.

Q. So he promised there on that couple days before that date in May, he would get it rescheduled?

A. Yeah.  He said he was going to contact you.  At that point, I contacted Barley and rehired them, sent it to them, and just, I was done with Bill Rush.

Q. Okay.

A. Okay.

So that's pretty much what I know.

Q. You referenced a subpoena and I didn't quite understand it, that was squashed from Barley Snyder?



Page 203

negotiate, though, to see if there's a way that maybe we could resolve any other questions through written documents.  This is with the understanding that as of today, the requirement for it that Mr. Smith and the company have made substantial compliance with the court's order in terms of appearing for the 2004 Examination.

Is that a fair statement of our stipulation?

ATTORNEY FULTZ:

Yes.

ATTORNEY READY:

Okay.  Great.

Then at this point, we'll go off the record.

                    *  *  *  *  *  *  *  *

                    DEPOSITION CONCLUDED AT 1:14 P.M.

                    *  *  *  *  *  *  *  *



Page 204

COMMONWEALTH OF PENNSYLVANIA  )

COUNTY OF BERKS                )

                    CERTIFICATE

I, Jessica L. Ashman, a Notary Public in and

for the Commonwealth of Pennsylvania, do hereby

certify:

That the witness, C. Malcolm Smith, III,

whose testimony appears in the foregoing deposition,

was duly sworn by me on June 19, 2025 and that the

transcribed deposition of said witness is a true

record of the testimony given by said witness;

That the proceeding is herein recorded fully

and accurately;

That I am neither attorney nor counsel for,

nor related to any of the parties to the action in

which these depositions were taken, and further that I

am not a relative of any attorney or counsel employed

by the parties hereto, or financially interested in

this action.

Dated the 25th day of June, 2025

*Jessica L. Ashman*

Jessica L. Ashman

