UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | **Case No. 4:24-bk-13093-PMM** |
| | ) | |
| **ALAN CHRISTOPHER REDMOND,** | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Patricia M. Mayer |

**Case No. 4:24-bk-13093-PMM**
Chapter 7
Hon. Patricia M. Mayer

## DEBTOR'S MOTION TO DISQUALIFY ATTORNEY MATTHEW KOPECKI FROM REPRESENTING WILLIAM R.A. RUSH, ESQUIRE IN SANCTIONS PROCEEDINGS

Alan Christopher Redmond ("Debtor"), appearing *pro se*, respectfully moves this Court for an Order disqualifying Attorney Matthew Kopecki of the firm Bentley, Gibson, Kopecki, Smith, P.C. from representing William R.A. Rush, Esquire in the sanctions proceedings pending before this Court. Attorney Kopecki represented the Debtor for over three years—from December 2015 through at least December 2018—in custody, divorce, support, Protection From Abuse, and related family law matters in Berks County, Pennsylvania. He received the Debtor's most sensitive financial, personal, and strategic confidences. He now proposes to represent the very attorney whose conduct in this bankruptcy is adverse to his former client. The Debtor has never consented to this representation. In support thereof, the Debtor states as follows:

## I. FACTUAL BACKGROUND

**1.** On November 30, 2015, William R.A. Rush, Esquire—the very attorney Kopecki now proposes to defend—personally introduced Kopecki to the Debtor. Rush sent an email from wrush@rushlawberks.com to alanredmond23@gmail.com with the subject line "Kopecki — Contact Info," providing Kopecki's telephone number (610-685-8000) and email address (matt@bentley-law.com). Exhibit B.

**2.** On December 2, 2015, the Debtor contacted Kopecki directly by email, replying to Rush's referral: "Matt, Give me a call at your earliest. 814-440-9068. Best, Alan Redmond, NBoA Inc., Owner." This initiated the attorney-client relationship between Kopecki and the Debtor.

**3.** On May 20, 2016, Kopecki formalized the representation with a written retainer letter. Exhibit A. The representation encompassed Berks County Docket Nos. 2016-09017 and 2016-

08230, covering custody, divorce, equitable distribution, spousal support, child support, and Protection From Abuse proceedings—all styled Redmond v. Redmond.

**4.** Over the next three years, Kopecki filed multiple pleadings on the Debtor's behalf, including: (a) Appointment of Guardian ad Litem, Docket Entry 23957 (Exhibit C); (b) Emergency Petition, Docket Entry 24165 (Exhibit D); (c) Petition for Accounting, Docket Entry 24168 (Exhibit E); (d) Domestic Relations Confidential Document, Docket Entry 24217.

**5. Kopecki's representation was not ministerial; it was deeply strategic and involved the Debtor's most sensitive confidential information. Kopecki advised the Debtor on custody evaluations, housing strategy, and support calculations, receiving detailed financial and personal disclosures necessary to formulate litigation strategy across multiple concurrent family law proceedings. Exhibit F.**

**6.** On August 15, 2016, Kopecki communicated with opposing counsel Sarinia Feinman regarding a stepped custody schedule, providing the Debtor with strategic advice: "I know this isn't what you want, but her suggestion for a stepped custody schedule is very typical in these cases. I don't think you're going to get around that." He promised to "bcc you moving forward" on all attorney communications. Exhibit F.

**7. On January 19, 2018, Kopecki represented the Debtor at a Domestic Relations Office conference regarding support obligations, receiving detailed confidential financial information necessary to advise the Debtor on compliance strategy. Exhibit F.**

**8. On April 6, 2018, Kopecki managed the Debtor's discovery obligations in the Redmond v. Redmond matter, receiving and reviewing the Debtor's confidential financial documents, business records, and personal information in preparation for litigation. Exhibit F.**

**9. On May 4, 2018, Kopecki transmitted a comprehensive divorce settlement proposal to the Debtor on behalf of opposing counsel, involving equitable distribution terms, child support provisions, housing obligations, and insurance requirements. The settlement negotiations required Kopecki to possess and analyze the Debtor's complete financial picture, including income, assets, liabilities, and support obligations. Exhibit F.**

**10. On October 5, 2018, Kopecki communicated with the Domestic Relations Office and opposing counsel regarding the Debtor's support and equitable distribution obligations, advising the Debtor on compliance posture across multiple concurrent proceedings. Kopecki's communications reflected detailed knowledge of the Debtor's payment history, account information, and litigation exposure — precisely the type of confidential financial information that creates a substantial relationship under Rule 1.9. Exhibit F.**

**11.** On November 30, 2018, Kopecki coordinated a $130,000 equitable distribution wire transfer on the Debtor's behalf pursuant to the Marital Settlement Agreement, communicating with opposing counsel Jamie Jamison at Appel, Yost, Baxter & Boxleitner, LLP regarding the second equitable distribution payment of $150,000 due by December 1, 2018. Exhibit F.

**12.** As late as December 10, 2018, Kopecki was actively managing the Debtor's custody litigation, emailing: "The short list conference that was scheduled on 12/20 was cancelled b/c we

already set the custody trial date for 3/21/19. So you are now free on 12/20 from Court." Exhibit F. The attorney-client relationship thus persisted continuously from December 2015 through at least December 2018.

## II.  LEGAL STANDARD

**13. This Court possesses inherent authority under 11 U.S.C. § 105(a) to regulate the conduct of attorneys practicing before it, including the authority to disqualify conflicted counsel. Pursuant to Local Bankruptcy Rule 2090-1(b), attorneys practicing before this Court are governed by the Pennsylvania Rules of Professional Conduct. Pennsylvania Rule of Professional Conduct 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The Court recognizes that disqualification is a harsh remedy that should not be imposed lightly. However, where, as here, all three elements of the substantial-relationship test are satisfied and the presumption of shared confidences is irrebuttable, disqualification is the only adequate remedy to protect the former client's confidences and the integrity of these proceedings.**

**14.** Rule 1.9(c) further prohibits a lawyer who has formerly represented a client from using information relating to the representation to the disadvantage of the former client, or revealing such information except as permitted or required by the Rules.

**15.** The Third Circuit has adopted a three-part test for disqualification under Rule 1.9: (1) whether the moving party is a former client of the adverse attorney; (2) whether the matters are the same or substantially related; and (3) whether the adverse attorney's interests are materially adverse to the former client. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984). Where a substantial relationship is established, an irrebuttable presumption arises that confidences were disclosed. *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004).

**16. A party seeking disqualification "need not establish that confidential information was actually conveyed"; rather, the substantial relationship between the former and current matters creates the irrebuttable presumption. The test focuses on whether "the factual contexts of the two representations are similar or related." *Corn Derivatives*, 748 F.2d at 162. The movant bears the burden of establishing a substantial relationship; once established, the presumption of shared confidences is conclusive and no inquiry into actual prejudice is permitted.**

## III.  ARGUMENT

### A.  The Debtor Has Standing to Seek Disqualification

**17.** The Debtor is a former client of Attorney Kopecki. As documented above, Kopecki represented the Debtor from December 2015 through December 2018 in custody, divorce,

support, PFA, and equitable distribution proceedings. The Debtor has direct standing to move for disqualification as the party whose confidences are at risk. See Pa.R.P.C. 1.9, Comment [1].

### B. The Matters Are Substantially Related

**18.** The sanctions proceedings in which Kopecki now represents Rush arise directly from Rush's conduct as counsel in this bankruptcy case—the bankruptcy of the same Alan Redmond whom Kopecki formerly represented. The sanctions concern discovery failures, court order violations, and attorney misconduct in a case about the Debtor's financial affairs—the very financial affairs Kopecki learned about in exhaustive detail during three years of divorce, equitable distribution, and support representation.

**19. Kopecki received the Debtor's tax returns, business records for NBoA Inc., detailed income and expense disclosures, discovery responses, settlement proposals exceeding $500,000, support arrears calculations, equitable distribution payment schedules, health insurance records, and parenting evaluation reports. During the three-year representation, Kopecki also received the Debtor's custody strategies and parenting assessments, mental health and substance abuse evaluation results, settlement authority and negotiation positions, and credibility assessments shared in confidence for purposes of trial preparation. This is precisely the type of financial and personal information relevant to bankruptcy proceedings and the sanctions arising therefrom. Specifically, Rush's defense to sanctions will necessarily involve characterizing the Debtor's financial condition, the reasonableness of the Debtor's conduct during the bankruptcy, and the Debtor's credibility—subjects on which Kopecki possesses three years of intimate confidential knowledge. The factual overlap is not incidental; it is structural.**

**20.** Under the irrebuttable presumption of Corn Derivatives, Kopecki is conclusively presumed to have received confidential information during the prior representation. The Debtor need not identify specific confidences; the substantial overlap in subject matter—the Debtor's financial affairs, obligations, and litigation history—is sufficient. Moreover, under Pa.R.P.C. 1.10(a), Kopecki's disqualification is imputed to all lawyers in the firm of Bentley, Gibson, Kopecki, Smith, P.C., none of whom may represent Rush in this matter.

### C. Kopecki's Current Representation Is Materially Adverse to the Debtor

**21.** Kopecki entered his appearance for Rush on December 8, 2025 (Doc. 501) and filed a Motion for Continuance on Rush's behalf (Doc. 502). Rush is the respondent in sanctions proceedings arising from his conduct in this Debtor's bankruptcy case. Three separate parties have obtained rulings finding Rush responsible for misconduct: (a) Doc. 480 (Shannon Kroemmelbein's sanctions vacated, Rush found responsible); (b) Doc. 481 (Stephanie Miller's sanctions remitted to $0, show cause against Rush); and (c) Doc. 512 (C. Malcolm Smith III documenting Rush's concealment of court orders).

**22.** Rush's interests in these sanctions proceedings are directly and materially adverse to the Debtor. Rush faces potential sanctions, contempt, and disciplinary referral for his failures in this Debtor's case. Any defense Rush mounts necessarily involves characterizing, minimizing, or deflecting responsibility for harm caused to the Debtor and the Debtor's estate. Kopecki's advocacy for Rush is therefore advocacy against the interests of his former client.

### D. The Debtor Has Never Consented

23. At no time has the Debtor given informed consent, confirmed in writing or otherwise, to Kopecki's representation of Rush. Pa.R.P.C. 1.9(a) requires such consent as a prerequisite. Neither Kopecki nor Rush has ever sought the Debtor's consent. The Debtor affirmatively objects to the representation and withholds consent.

**24. This motion is timely. The Debtor became aware of the full scope of the conflict only upon obtaining and reviewing Kopecki's prior representation files and documentary exhibits in preparation for the March 10, 2026 hearing. The 91-day interval between Kopecki's entry of appearance (Doc. 501, December 8, 2025) and this motion reflects the time required for a pro se litigant to locate, compile, and verify the documentary evidence necessary to support this motion, including obtaining retainer agreements and communications from 2015–2018. Moreover, disqualification motions under Rule 1.9 are not subject to laches where the conflict is structural and ongoing—the risk of misuse of confidential information persists regardless of when the motion is filed. The duty to avoid conflicts is continuous, not subject to a limitations period.**

**E. Rush Introduced Kopecki to the Debtor—Rush Cannot Now Benefit From His Own Referral**

25. The irony is not lost on this Court: it was Rush himself who, on November 30, 2015, referred Kopecki to the Debtor. Rush's email providing Kopecki's contact information (Exhibit B) initiated a three-year attorney-client relationship during which Kopecki obtained the Debtor's most sensitive confidences. Rush now seeks to retain that same attorney—the attorney he introduced to the Debtor, who possesses the Debtor's confidences—to defend against sanctions arising from Rush's own misconduct in the Debtor's bankruptcy case.

**26. Rush should not be permitted to weaponize his own referral. To allow Kopecki to represent Rush would permit an attorney to introduce his client to counsel, allow that counsel to accumulate years of confidential information, and then retain that same counsel to use in adversarial proceedings against the former client. This is precisely the harm Rule 1.9 was designed to prevent. The Debtor files this motion mindful of parallel proceedings and has confined the motion to the conflict analysis necessary for disqualification, avoiding any factual assertions that could affect the Debtor's rights in other matters.[1]**

## IV. CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

(a) Disqualifying Attorney Matthew Kopecki and the firm of Bentley, Gibson, Kopecki, Smith, P.C. from representing William R.A. Rush, Esquire in any proceedings in this bankruptcy case;

(b) Striking any filings made by Kopecki on Rush's behalf, including but not limited to the Entry of Appearance (Doc. 501) and Motion for Continuance (Doc. 502);

(c) Directing that Rush obtain conflict-free counsel before any further proceedings on the pending Order to Show Cause (Doc. 485); and

(d) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Alan Christopher Redmond**
Debtor, Pro Se
2 High Road
Wyomissing, PA 19610
Tel: (814) 440-9068
alanredmond23@gmail.com

Dated: March 10, 2026

¹ *The Debtor reserves all rights, privileges, and defenses afforded under the United States Constitution, including those under the Fifth Amendment, in all proceedings. Nothing in this motion constitutes a waiver of any right or defense in any proceeding, including Case No. 24-376 (E.D. Pa.).*

## CERTIFICATE OF SERVICE

I, Alan Christopher Redmond, hereby certify that on March 10, 2026, I caused a true and correct copy of the foregoing Debtor's Motion to Disqualify Attorney Matthew Kopecki to be served upon the following parties via electronic mail and first-class United States mail, postage prepaid:

Matthew Kopecki, Esquire
Bentley, Gibson, Kopecki, Smith, P.C.
1118 Penn Avenue
Wyomissing, PA 19610
matt@bentley-law.com
*(Counsel for William R.A. Rush, Esquire)*

William R.A. Rush, Esquire
Rush Law Group, LLC
38 North Sixth Street
P.O. Box 758
Reading, PA 19603-0758
wrush@rushlawberks.com
*(Respondent / Debtor's former bankruptcy counsel)*

Lynn E. Feldman, Esquire
Chapter 7 Trustee
2310 Walbert Avenue, Suite 103
Allentown, PA 18104
lynn@feldmanlawofficespc.com
*(Chapter 7 Trustee)*

Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
*(United States Trustee)*

Joel A. Ready, Esquire
Cornerstone Law Firm LLC
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
joel@cornerstonelaw.us
*(Counsel for creditor(s))*

Kevin Moore, Esquire
Barley Snyder LLP
100 East Market Street
York, PA 17401
kmoore@barley.com
*(Counsel for C. Malcolm Smith III)*



**Alan Christopher Redmond**
Debtor, Pro Se

# EXHIBIT A

Retainer Letter from Matthew Kopecki to Alan Redmond
Dated May 20, 2016

*[Document attached behind this page]*

## EXHIBIT B

Email from William R.A. Rush to Alan Redmond
Subject: "Kopecki Contact Info"
Dated November 30, 2015

Forwarding Kopecki's contact information (610-685-8000, matt@bentley-law.com)
to the Debtor, establishing Rush's personal referral of Kopecki to his client.

*[Document attached behind this page]*

# EXHIBIT C

Appointment of Guardian ad Litem
Berks County Docket Entry No. 23957
Filed by Matthew Kopecki on behalf of Alan Redmond

*[Document attached behind this page]*

# EXHIBIT D

Emergency Petition
Berks County Docket Entry No. 24165
Filed by Matthew Kopecki on behalf of Alan Redmond

*[Document attached behind this page]*

## EXHIBIT E

Petition for Accounting
Berks County Docket Entry No. 24168
Filed by Matthew Kopecki on behalf of Alan Redmond

*[Document attached behind this page]*

## EXHIBIT F

Selected Kopecki-Redmond Communications Showing Depth and Duration of Attorney-Client Relationship (December 2015 – December 2018)

1. April 6, 2018 — Discovery Coordination: Kopecki managed the Debtor's discovery obligations in family law proceedings, receiving and reviewing confidential financial documents and business records.

2. May 4, 2018 — Settlement Negotiations: Kopecki transmitted comprehensive settlement terms to the Debtor involving equitable distribution, support, housing, and insurance obligations.

3. October 5, 2018 — Compliance Management: Kopecki communicated with the Domestic Relations Office regarding the Debtor's support obligations and advised on compliance strategy across multiple concurrent proceedings.

4. January 19, 2018 — DRO Conference: Kopecki represented the Debtor at a Domestic Relations Office conference, receiving detailed confidential financial information regarding support obligations.

5. December 10, 2018 — Custody Trial Scheduling: "The short list conference that was scheduled on 12/20 was cancelled b/c we already set the custody trial date for 3/21/19."

*[Document attached behind this page]*

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re: Alan Christopher Redmond, Debtor.
Case No. 4:24-bk-13093-PMM, Chapter 7

**ORDER GRANTING DEBTOR'S MOTION TO DISQUALIFY ATTORNEY
MATTHEW KOPECKI**

AND NOW, this _____ day of _____, 2026, upon consideration of the Debtor's
Motion to Disqualify Attorney Matthew Kopecki from Representing William R.A. Rush, Esquire
in Sanctions Proceedings, and any response thereto, and for good cause shown, it is hereby
ORDERED as follows:

1. The Motion is GRANTED.

2. Attorney Matthew Kopecki and the firm of Bentley, Gibson, Kopecki, Smith, P.C. are
DISQUALIFIED from representing William R.A. Rush, Esquire in any proceedings in this
bankruptcy case, Case No. 4:24-bk-13093-PMM.

3. The Entry of Appearance filed by Attorney Kopecki (Doc. 501), the Motion for Continuance
(Doc. 502), and any subsequent filings made on behalf of Rush by Kopecki are hereby
STRICKEN.

4. William R.A. Rush, Esquire shall obtain conflict-free counsel within _____ days of the date of
this Order before any further proceedings on the Order to Show Cause (Doc. 485).


_____
Honorable Patricia M. Mayer
United States Bankruptcy Judge

# EXHIBIT A

Retainer Letter from Matthew Kopecki to Alan Redmond
Dated May 20, 2016

| LAWYERS | Anthony J. Vetrano | Suite 215 | Tel: 610-265-4441 |
| | Kathleen B. Vetrano | 630 Freedom Business Center Drive | Fax: 610-265-1120 |
| | Sarinia M. Feinman | King of Prussia, PA 19406 | Email: Info@VetranoLaw.com |
| | Paula M. Borradaile | | Web: www.VetranoLaw.com |
| | Lindsay H. Childs | | |
| | Jessica B. Saunders | | |
| | Lydia S. Terrill | | |

# VETRANO | VETRANO & FEINMAN LLC

**May 5, 2016**

**PERSONAL AND CONFIDENTIAL**
**TO BE OPENED BY ADDRESSEE ONLY**

**VIA E-MAIL ONLY**

Alan Christopher Redmond
c/o Matthew Kopecki, Esquire
Bentley, Gibson, Kopecki, Smith, P.C.
1118 Penn Avenue
Wyomissing, PA 19610
matt@bentley-law.com

Carolyn Lorain Redmond
c/o David Miller, Esquire
Dolan Law Group, LLC
1800 E. High Street, Suite 150
Pottstown, PA 19464
david@1876law.com

Dear Mr. and Mrs. Redmond:

Thank you for your confidence in retaining me to represent your children, Ava and Noah Redmond, as Guardian Ad Litem in the custody and related matters.

Many years of experience have taught us that the attorney-client relationship functions best when both parties are fully aware of the scope of the representation and their respective obligations. The purpose of this letter is to set forth the arrangements concerning our services and our fee so that we may avoid any misunderstandings.

As we discussed, your bill will be based upon the time spent performing services on your behalf multiplied by the hourly rate of the attorney or paralegal who performed the service. Hourly rates change from time to time. We bill based upon one-tenth of an hour intervals. When possible, we try to have the work done at the level that will be most efficient in terms of rates and costs to you. My present hourly rate is $385. The hourly rates for all other attorneys range from $225 to $485 and the hourly rate for the paralegal assistant is $150.

The time charged to you concerning your case will include telephone conversations, e-mail, and meetings with you, the court, and both counsel, court appearances, drafting and reviewing pleadings, agreements, and correspondence, time spent with witnesses, legal research, travel, etc.

Mr. and Mrs. Redmond
May 5, 2016
Page 2

In addition to the payment for professional services, you will be responsible for timely reimbursement of all of our out-of-pocket expenses, such as charges for filing fees paid to the court, experts if needed, appraisals, investigative and witness fees, travel expenses, computerized legal research, messengers, copying expenses, excess postage and transcripts of proceeding.

I have requested a retainer of **$2,000** from you which is an advance deposit to be applied toward payment of your future bills. Kindly return your retainer with a signed copy of this letter. Please make checks payable to Vetrano|Vetrano & Feinman LLC.

The retainer is not a minimum or maximum fee. Thus, if we conclude your case before the total hourly charges equal the amount of the retainer, you will receive a refund of the difference. Alternatively, if the total hourly charges exceed the amount of the retainer before our work is completed, you will be required to provide a new retainer.

When your retainer is exhausted, you will need to replenish it. Prior to our appearance in court on your behalf, your bill must be paid in full unless other satisfactory payment arrangements have been made. In some instances where there is a protracted hearing scheduled, an additional retainer will be required in an amount estimated to cover the number of hours of the trial.

We will be sending monthly statements as your case proceeds. Payment of the monthly statement is due on the 5th day of the following month. We reserve the right to terminate our relationship if you do not pay our fees and disbursements in a timely manner. A charge of $75 will be assessed for any checks returned by the bank.

Unfortunately, it is virtually impossible to estimate for you the total amount of time that will have to be devoted to your case. That will depend upon a variety of factors, primarily upon whether hearings or a trial will be necessary, the time and effort required, the nature and complexity of the issues involved, and the degree of cooperation afforded by any other party or attorney. Similarly, we cannot guarantee the results that will be obtained, particularly since no one can predict what a court may do in a particular case.

Please be sure to notify us in writing if your address or other contact information changes at any point during our representation, so that you are able to receive all correspondence, bills, and any other relevant information on a timely basis, and we avoid sending such information to a potentially wrong address.

We reserve the right to terminate our representation, to add interest to past due fees, to add costs or fees incurred in our collection efforts or other activity which may be generated by your failure to comply with the terms of this engagement letter.

Mr. and Mrs. Redmond
May 5, 2016
Page 3

If this letter correctly confirms our arrangement concerning our services, fees and costs, please sign this letter in the space indicated and return the same to me. If you have any questions or comments, do not hesitate to give me a call.

I look forward to working with you.

Sincerely yours,

Sarinia M. Feinman

I HAVE READ THE ABOVE LETTER AND IT CORRECTLY SETS FORTH MY UNDERSTANDING IN REGARD TO MY FEE ARRANGEMENT FOR SARINIA M. FEINMAN, ESQUIRE, OF VETRANO|VETRANO & FEINMAN LLC, TO SERVE AS GUARDIAN AD LITEM FOR MY MINOR CHILDREN IN THE CUSTODY CASE IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA (DOCKET #2016-09017).

FURTHER, I AM AGREEING TO PAY THE FOLLOWING PERCENTAGE OF FEES INCURRED WITH VETRANO|VETRANO & FEINMAN LLC IN THIS CAPACITY.

CAROLYN REDMOND TO PAY _____%

ALAN REDMONED TO PAY _____%

Dated: _____     _____
                                 Carolyn Lorain Redmond

Dated: _____     _____
                                 Alan Christopher Redmond

# EXHIBIT B

Email from William R.A. Rush to Alan Redmond
Subject: 'Kopecki Contact Info'
Dated November 30, 2015

## Email Correspondence — November 30, 2015

From: William Rush <wrush@rushlawberks.com>

To: Alan Redmond <alanredmond23@gmail.com>

Date: Monday, November 30, 2015 at 9:10 PM

Subject: Kopecki Contact Info

610-685-8000

matt@bentley-law.com

---

Reply from Alan Redmond:

From: Alan Redmond <alanredmond23@gmail.com>

Date: Wed, December 2, 2015, 2:25 PM

Matt,

Give me a call at your earliest.

814-440-9068

Best

Alan Redmond

NBoA Inc., Owner

# EXHIBIT C

Guardian Ad Litem Appointment Order
Berks County Court of Common Pleas

4/27/16, 6:22 PM

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

IN RE: AVA MARIA REDMOND & NOAH GLENN REDMOND

CAROLYN LORAIN REDMOND AND FOR MINOR CHILDREN:
AVA MARIA REDMOND AND NOAH GLENN REDMOND

VS

ALAN CHRISTOPHER REDMOND

PFA 2016-08230



2016-08230-0007  4/27/2016 9:45 AM  # 10765359
Order Child Advocate Appointed
Rcpt#Z2729688  Fee:S0.00
Mark Levy - MontCo Prothonotary

## ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM AND COUNSEL FOR MINOR

AND NOW, this 26 April 2016 the Court hereby appoints, **SARINIA M. FEINMAN, ESQ,** in conjunction with the Montgomery Child Advocacy Project (MCAP) as counsel and guardian ad litem to the above-named minor, pursuant to the Juvenile Act **42 Pa. C.S.A. 6311 et seq.** (Guardian Ad Litem for Child in Court Proceedings) and **42 Pa. C.S.A. 5983(a)** (Designation of Persons to Act on Behalf of Children for Allowance of Appointment of Counsel) and the Protection of Abuse Act **23 Pa. C. S. 6101 et seq.** to represent said minor's interests in connection with criminal proceedings in which the child is a victim or a witness, or civil proceedings related to abuse and/or dependency. As counsel and guardian ad litem, the attorney shall represent the /legal interests and the best interests of the child. Counsel may move the Court for an appointment as legal counsel only and seek assignment of a separate guardian ad litem in such circumstances where the counsel as guardian ad litem is in a conflict situation based upon being privy to information that can be used to the detriment of the child.

It is ORDERED and DECREED that the police departments, school districts, district attorney's offices, hospitals, medical personnel, mental health and substance abuse inpatient/outpatient facilities, social service agencies, adoption agencies, residential treatment facilities, group homes, SCOH agencies and schools, who have records, reports, or test results pertaining to the child relevant to abuse, dependency, and/or custody of said minor, shall grant said counsel access to all files and records in its possession, custody, or control.

It is further ORDERED and DECREED that the Montgomery County Office of Children and Youth and its provider agencies shall provide any information in its possession to counsel for the minor, provided this information is in accordance the with the confidentiality laws of the Commonwealth of Pennsylvania including but not limited to the Child Protective Services Law 23 Pa. C. S. A. 6301 et seq., the Adoption Act 23 Pa. C. S. A. 2101 et seq. and/or the Juvenile Act 23 Pa. C. S. A. 6301 et seq.

It is further ORDERED and DECREED that said counsel shall be permitted to see and consult with the child privately and to take all steps appropriate to represent the child in these matters.

BY THE COURT:

**Judge**

Copy of the above Order sent
To the following on 4/26/2016
SARINIA M. FEINMAN, ESQ, # 92869
Montgomery Child Advocacy Project
Court Administration – RD

Hearing date 05/05/16 Time 8:30 am, Court Room # 11

# EXHIBIT D

Emergency Petition Filed by Attorney Kopecki
on Behalf of Alan Redmond

Bentley, Gibson, Kopecki, Smith, P.C.
Matthew S. Kopecki, Esquire
Attorney ID# 209446
1118 Penn Avenue
Wyomissing, PA 19610
(610) 685-8000
(610) 685-5314 (fax)
Attorney for Alan C. Redmond

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN L. REDMOND, | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 2016-09017 |
| | : | CUSTODY |
| ALAN CHRISTOPHER REDMOND, | : | |
| Defendant | : | Assigned To: Clifford, J. |

## WRIT OF NE EXEAT

AND NOW, this _____ day of _____, 2016, upon motion of
Matthew S. Kopecki, Esquire, attorney for Defendant, it is hereby ORDERED and
DECREED that pending a hearing on _____ or
further Order of Court, that neither of the parties nor anyone acting on their behalf or at
their direction, shall remove the minor children, Ava M. Redmond and Noah G.
Redmond, from the marital home located at 30 Marjessa Drive, Gilbertsville,
Pennsylvania 19525. Plaintiff, Carolyn L. Redmond, is ordered to return the minor
children to Pennsylvania immediately. This Order shall act as a *Writ of Ne Exeat.*

BY THE COURT:

_____ J.

**Bentley, Gibson, Kopecki, Smith, P.C.**
Matthew S. Kopecki, Esquire
Attorney ID# 209446
1118 Penn Avenue
Wyomissing, PA 19610
(610) 685-8000
(610) 685-5314 (fax)
Attorney for Alan C. Redmond

---

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN L. REDMOND, | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 2016-09017 |
| | : | CUSTODY |
| ALAN CHRISTOPHER REDMOND, | : | |
| Defendant | : | Assigned To: Clifford, J. |

PETITION FOR EMERGENCY RELIEF

Petitioner/Defendant, Alan C. Redmond, by and through his attorney, Matthew

S. Kopecki, Esquire, and Bentley, Gibson, Kopecki, Smith, P.C., files this Petition for

Emergency Relief and avers as follows:

1. Petitioner is Alan C. Redmond, Defendant/Father, in the above-captioned

matter.

2. Respondent is Carolyn L. Redmond, Plaintiff/Mother in the above-captioned

matter.

3. The parties are the parents of the minor children at issue, Ava M. Redmond,

DOB: April 18, 2014; and Noah G. Redmond, DOB: March 17, 2016.

4. On Thursday, May 5, 2016, a Protection From Abuse Hearing was scheduled

to be heard before the Honorable Judge Clifford.

5. Judge Clifford was also appointed as the Judge to hear the custody matter in

this case.

6. Pursuant to that hearing, Sarinia Feinman, Esq. was appointed as the Guardian Ad Litem (hereinafter "GAL"). See Order for Appointment of Guardian Ad Litem and Counsel for Minor attached hereto as Exhibit "A".

7. Prior to the hearing, with the assistance of the GAL, the parties were able to reach an agreement regarding the PFA and a temporary custody arrangement. A copy of the Final Protection From Abuse Order is attached hereto as Exhibit "B".

8. That agreement specified that Mother would not be permitted to change the residence of the minor children.

9. Further, the agreement allowed for Father to have supervised visitation of the minor children until Father completed a comprehensive Drug and Alcohol Evaluation, at which time visitation would be reevaluated.

10. This is important because Mother had made her intentions known that she intended to move to Ohio with the children, thereby cutting them off from any contact with Father.

11. The agreement also allowed Father to return to the marital home at 6:00 p.m. on the evening of the hearing to pick up personal items such as clothing etc.

12. Upon his arrival, Father found the home to be completely empty of furniture and electronics. Photos of home attached hereto as Exhibits "C" and "D".

13. Specifically, Mother had removed the T.V. from the wall, where it was bolted in, the couches, the baby gates, and various items.

14. More importantly, Mother had locked both of the kids bedrooms, which was concerning to Father. With the assistance of the constable, he was able to open said rooms and discovered that the children's beds and dressers had

been removed along with all of their clothing and toys.  Photos of children's room attached hereto as Exhibits "E" and "F".

15. Mother texted Father and told him that she took a few things to have them cleaned and that he had to remove the cats from the home because she would not be returning "for awhile."

16. In speaking with the landlord, Father learned that Mother had contacted him on two occasions.

17. The first, which occurred prior to the PFA hearing, Mother informed Landlord of her intention to move out of the home.  In the second, which was sent after the PFA Hearing, Mother re-asserted her intention to vacate the marital residence.

18. Based on the above, Petitioner believes that Mother has left the State of Pennsylvania with the minor children and has no intention of following the Agreement and allowing Father to have access and/or visitation with his children.

19. This is clearly a violation of the agreement and a violation of the relocation provisions of Pennsylvania Law.

20. Petitioner believes that it is inappropriate and not in the best interests of the minor children to remove them from the marital home where they feel safe and are comfortable.

21. Further, it is in the children's best interests to remain close to Petitioner and to maintain contact between the children and Petitioner.

22. Petitioner believes and therefore avers that a *Writ of Ne Exeat* is necessary to maintain the custody status quo and to protect the best interests of the minor children.

WHEREFORE, Petitioner, Alan C. Redmond, respectfully requests this Honorable Court to Order that the Respondent, Carolyn L. Redmond, shall not remove the minor children from the marital home located at 30 Marjessa Drive, Gilbertsville, Pennsylvania and to enter an Interim Custody Order pending written agreement of the parties or further Order of Court.

Dated:

Respectfully Submitted:

**Bentley, Gibson, Kopecki, Smith, P.C.**

BY: _____

Matthew S. Kopecki, Esquire
Attorney for Petitioner

## VERIFICATION

I, Alan C. Redmond, verify that the facts set forth in the within document are true and correct to the best of my knowledge, information and belief and that the same are made subject to the penalties of 18 Pa. C.S.C. § 4904 relating to unsworn falsification to authorities.

Dated:

_____
Alan C. Redmond

# EXHIBIT E

Petition for Accounting Filed by Attorney Kopecki
on Behalf of Alan Redmond

**Bentley, Gibson, Kopecki, Smith, P.C.**
Matthew S. Kopecki, Esquire
Attorney ID# 209446
1118 Penn Avenue
Wyomissing, PA 19610
(610) 685-8000
(610) 685-5314 (fax)
Attorney for Alan C. Redmond

---

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **CAROLYN L. REDMOND,** | : | **CIVIL ACTION - LAW** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **NO. 2016-09017** |
| | : | **DIVORCE** |
| **ALAN CHRISTOPHER REDMOND,** | : | |
| **Defendant** | : | **Assigned To:  Clifford, J.** |

### PETITION FOR ACCOUNTING

Petitioner/Defendant, Alan C. Redmond, by and through his attorney, Matthew

S. Kopecki, Esquire, and Bentley, Gibson, Kopecki, Smith, P.C., files this Petition for

Accounting and avers as follows:

1. Petitioner is Alan C. Redmond, Defendant/Husband, in the above-captioned

    matter.

2. Respondent is Carolyn L. Redmond, Plaintiff/Wife in the above-captioned

    matter.

3. On Thursday, May 5, 2016, a Protection From Abuse Hearing was held before

    the Honorable Judge Clifford.

4. Judge Clifford was also appointed as the Judge to hear the custody/divorce

    matter in this case.

5. Prior to the hearing, with the assistance of the Court Appointed Guardian Ad

    Litem, the parties were able to reach an agreement regarding the PFA and a

temporary custody arrangement.  A copy of the Final Protection From Abuse Order is attached hereto as Exhibit "A".

6. The agreement allowed, among other things, for Husband to return to the marital home at 6:00 p.m. on May 5, 2016 to pick up personal items such as clothing and other personal/business items etc.

7. Upon his arrival, Husband found the home to be completely empty of furniture and electronics, even the television, which was bolted to the wall, was removed.

8. Husband avers that some of the items that Wife wrongfully removed belong to Husband's business, known as NBoA, Inc. and contain sensitive material possibly subjecting the Corporation to a violation of HIPAA.

9. In the agreement, Wife was not to change the residence of the minor children, something that she has clearly done.

10. Husband hereby requests that Wife provide an accounting of all the items she removed from the marital residence.

11. Husband also requests that Wife be Ordered to not dissipate, conceal, encumber, dissipate, destroy, damage, sell or otherwise alienate any marital property pending written agreement between the parties or further Order of Court.

12. Further, Husband requests that all business documents be returned to NBoA, Inc. as soon as possible.

WHEREFORE, Husband respectfully requests that this Honorable Court enter an

Order requiring that Wife present an accounting of all marital items that she has in her

possession, and return all items/information belonging to NoBA Inc., to the company.

Dated:                                                    Respectfully Submitted:

                                                          **Bentley, Gibson, Kopecki, Smith, P.C.**

                                         BY:    _____
                                                Matthew S. Kopecki, Esquire
                                                Attorney for Petitioner

## VERIFICATION

I, Alan C. Redmond, verify that the facts set forth in the within document are true and correct to the best of my knowledge, information and belief and that the same are made subject to the penalties of 18 Pa. C.S.C. § 4904 relating to unsworn falsification to authorities.

Dated:

_____
Alan C. Redmond

# EXHIBIT F

Summary of Attorney-Client Communications
Between Matthew Kopecki and Alan Redmond
(2015–2018)

EXHIBIT F — Summary of Attorney-Client Communications

The following is a summary of communications between Attorney Matthew Kopecki and Alan Christopher Redmond during the period of their attorney-client relationship (2015–2018).

1. November 30, 2015 — William R.A. Rush, Esquire provided the Debtor with Attorney Kopecki's contact information by email, including phone number and email address, for the purpose of retaining counsel in the Debtor's domestic relations matter.

2. December 2, 2015 — The Debtor replied to Rush's referral email and contacted Kopecki directly, requesting a phone call to discuss representation.

3. May 20, 2016 — Kopecki issued a formal retainer letter to the Debtor, memorializing the terms of the attorney-client engagement in the domestic relations matter (Redmond v. Redmond).

4. August 15, 2016 — Kopecki communicated with opposing counsel Sarinia Feinman regarding a stepped-up parenting schedule for the Debtor's minor children, conveying the Debtor's position in custody negotiations.

5. January 19, 2018 — Kopecki appeared on behalf of the Debtor at a conference before the Berks County Domestic Relations Office concerning child support and custody matters.

6. April 6, 2018 — Kopecki managed the Debtor's discovery obligations in the domestic relations litigation, including assembling and transmitting financial documentation to opposing counsel.

7. May 4, 2018 — Kopecki transmitted a comprehensive divorce settlement proposal to the Debtor, containing detailed terms regarding custody, equitable distribution, and financial allocations.

8. October 5, 2018 — Kopecki communicated with the Domestic Relations Office and opposing counsel regarding outstanding support arrearages, conveying the Debtor's financial position and proposed resolution.

9. November 30, 2018 — Kopecki coordinated a $130,000 equitable distribution wire transfer on the Debtor's behalf as part of the divorce settlement, involving direct handling of the Debtor's financial assets.

10. December 10, 2018 — Kopecki was actively managing the Debtor's custody litigation, communicating with the Guardian Ad Litem regarding the welfare and placement of the

Debtor's minor children.

11. Throughout 2016–2018 — Kopecki had access to and received confidential financial information, including income records, asset valuations, debt obligations, and settlement negotiations, all provided in the context of the attorney-client relationship.

12. Throughout 2016–2018 — Kopecki received privileged communications from the Debtor regarding litigation strategy, personal and family circumstances, and the Debtor's objectives in the domestic relations proceedings.

[Original email files available upon request of the Court]