UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re:

ALAN CHRISTOPHER REDMOND,
Debtor.

)
)
)
)
)

Case No. 4:24-bk-13093-PMM
Chapter 7
Hon. Patricia M. Mayer

## DEBTOR'S NOTICE OF CONFLICT OF INTEREST REGARDING WILLIAM R.A. RUSH, ESQUIRE AND COUNSEL MATTHEW KOPECKI

Alan Christopher Redmond ("Debtor"), appearing pro se, files this Notice pursuant to the Court's inherent authority under 11 U.S.C. § 105(a) to alert the Court, the Chapter 7 Trustee, and all parties in interest to the existence of multiple, irreconcilable conflicts of interest affecting William R.A. Rush, Esquire and his newly retained counsel, Matthew Kopecki of Bentley, Gibson, Kopecki, Smith, P.C. Pursuant to Local Bankruptcy Rule 2090-1(b), Rush is governed by the Pennsylvania Rules of Professional Conduct while practicing before this Court. These conflicts directly threaten the Debtor's rights in this bankruptcy case and, critically, in a pending twenty-seven-count federal criminal prosecution.[1] The Debtor files this Notice concurrently with a Motion to Disqualify Attorney Kopecki.

### I. RUSH'S UNRESOLVABLE CONFLICT OF INTEREST

1. William R.A. Rush, Esquire is the Debtor's criminal defense attorney in United States v. Redmond, Case No. 24-376 (E.D. Pa.), a twenty-seven-count federal prosecution currently set for trial in September 2026. Rush's representation in the criminal matter is ongoing and active.

2. Rush is simultaneously the respondent in sanctions proceedings in this bankruptcy case. On October 21, 2025, the Court entered two Orders finding Rush—not the parties he represented—responsible for non-compliance with the Court's discovery orders: (a) Doc. 480, vacating sanctions against Shannon Kroemmelbein and finding Rush responsible; and (b) Doc.

481, remitting Stephanie Miller's sanctions to $0 and ordering a separate show cause proceeding against Rush.

**3.** On February 17, 2026, a third party—C. Malcolm Smith III, represented by Kevin Moore of Barley Snyder LLP—filed Doc. 512, a Motion to Lift Sanctions documenting that Rush concealed pending court orders from Malcolm Smith while representing him in this very bankruptcy case. Rush told Malcolm Smith there was "nothing for you to concern yourself with" while discovery orders were outstanding against Smith.

**4.** The Court has issued an Order to Show Cause against Rush at Doc. 485. Three separate parties in this case—Kroemmelbein, Miller, and Smith—have each established to this Court's satisfaction that Rush, not they, bears responsibility for the discovery failures. The pattern is undeniable.

**5.** Under Pennsylvania Rule of Professional Conduct 1.7(a)(2), a concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Rush's personal interest in avoiding sanctions, contempt, and potential disciplinary referral is in direct and irreconcilable collision with his duty to zealously defend the Debtor in the criminal prosecution. This conflict is non-waivable: no reasonable attorney could conclude that he can simultaneously defend himself against sanctions in a client's bankruptcy while also defending that same client in a federal criminal case.

**6.** Rush has been non-communicative with the Debtor since February 19, 2026. His last substantive communication was: "I am scrambling so can't do a further outline apart from telling you to look at the strategies for feds, support, etc from weeks and weeks ago." and "I don't have the time tonight. I have 3 lawsuits to file today. Strategy for all things is in email man. I am under the gun." Exhibit C.

## II. RISK TO THE DEBTOR'S CRIMINAL CASE

**7.** Any statements Rush makes at the sanctions hearing in this bankruptcy case are potentially discoverable by the United States Attorney's Office in Case No. 24-376. Rush is the Debtor's criminal defense attorney. If Rush testifies, makes admissions, offers explanations, or proffers facts to defend himself against sanctions, those statements become part of the record in a case involving the Debtor—and are available to the government.

**8.** Rush has not discussed this risk with the Debtor. On March 8, 2026, the Debtor sent a detailed email to Rush at wrush@rushlawberks.com demanding answers to three specific questions: (1) What is your position? (2) What are you going to say? (3) How does it affect my case? Exhibit B. As of the filing of this Notice, Rush has not responded.

**9.** The Debtor's March 8 email stated in pertinent part: "You are my criminal defense attorney in a 27-count federal case. Whatever you say Tuesday is potentially discoverable by the

government in 24-376. You have not discussed this with me. It affects me. It affects Shannon." Exhibit B.

**10.** This silence is itself a violation of Pennsylvania Rule of Professional Conduct 1.4(b), which requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Debtor cannot make informed decisions about his criminal defense if his criminal defense attorney refuses to communicate about a proceeding that directly threatens the criminal case.

### III.  RUSH'S ADVERSE POSTURE TOWARD FORMER CLIENT SHANNON KROEMMELBEIN

**11.** Rush previously represented Shannon Kroemmelbein in this bankruptcy case. He withdrew as her attorney on April 19, 2025 (Doc. 348). Shannon Kroemmelbein is the Debtor's wife.

**12.** On October 21, 2025, the Court vacated sanctions against Shannon Kroemmelbein at Doc. 480, finding Rush—not Shannon—responsible for the discovery failures. The Court entered a separate Order to Show Cause against Rush. Despite this ruling, Rush has alluded to Shannon bearing responsibility for the compliance failures, positioning himself adversely to his former client.

**13.** Under Pennsylvania Rule of Professional Conduct 1.9(a), Rush may not represent another person in the same or substantially related matter where that person's interests are materially adverse to Shannon Kroemmelbein, his former client, without her informed consent. Shannon has not consented. To the extent Rush's defense at the sanctions hearing involves shifting blame to Shannon—his former client—he violates Rule 1.9.

**14.** Rush is uniquely positioned to exploit confidential information gained during his representation of Shannon. He knows Shannon's involvement in document production, her communications with the Debtor, and her role in responding to discovery requests. If he uses any of this information to defend himself, he violates Rule 1.9(c)'s prohibition against using information relating to a former representation to the disadvantage of the former client.

### IV.  RUSH'S OWN ADMISSIONS OF NEGLECT AND SELF-INTEREST

**15. Rush's own written communications establish an unmistakable pattern of avoidance, abandonment, and silence. At every critical juncture, when the Debtor needed his attorney to act, Rush was absent. When confronted, Rush made promises and disappeared. The following verbatim exchanges—produced in full as Exhibit C— demonstrate that Rush was not merely negligent; he was systematically avoiding his obligations:**

**16.** July 6, 2016: Rush directly coordinated and directed Kopecki's representation of the Debtor, writing: "Kopecki has a very good relationship with that GAL and she seems to be on your side now, so proceed with caution." Exhibit C. This email, sent to the Debtor regarding

Kopecki's work in the custody proceedings, proves that Rush was not merely a referral source—he actively monitored, directed, and coordinated Kopecki's representation of the Debtor. Rush's subsequent retention of Kopecki to defend against sanctions in the Debtor's own case is all the more egregious in light of this coordination.

**17. July 3, 2025: When the Debtor sought follow-up on matters Rush had been retained to handle, Rush responded: "Sorry man, scrambling to make money. I will touch base later this afternoon." Exhibit C. He never touched base. The matter was abandoned.**

**18. January 31, 2026: In a back-and-forth email chain—reproduced in full as Exhibit C—the Debtor pressed Rush on case strategy and asked "Where the fuck have you been." Rush responded at 10:40 PM: "Man I am ready and fired up. Just got to work a little bit so the first thought each morning ain't money. Biggest distraction. But we are on fire in terms of actual movement and strategy. I feel the fire slowly growing back." Exhibit C. This was Rush's last engagement with the substance of any case. He then disappeared for eighteen days until February 19, 2026, when he admitted he had no time and directed the Debtor to review old emails for strategy.**

**19. February 19, 2026: In his final substantive communication—the last words the Debtor would receive from his attorney—Rush wrote: "I am scrambling so can't do a further outline apart from telling you to look at the strategies for feds, support, etc from weeks and weeks ago." / "I don't have the time tonight. I have 3 lawsuits to file today. Strategy for all things is in email man. I am under the gun." Exhibit C. After this message, Rush went completely silent. He did not respond to the Debtor's March 8, 2026 email (Exhibit B). He has not communicated with the Debtor in eighteen days as of this filing.**

**20. February 25, 2025: Rush asked the Debtor: "Are you SURE you do not need me to file your support modification?" Exhibit C. Despite receiving complete modification paperwork from Shannon Kroemmelbein in May 2025, Rush took no action for the next seven months. The modification was never filed. Rush simply stopped responding to inquiries about it.**

**21.** December 22–23, 2025: Rush claimed the modification petition was "prepped" and "requires in-person so filing first thing tomorrow AM," only to reverse himself the next day: "I got no packet but you have new counsel now so I will not file." Exhibit C. The Debtor had no new counsel for the support matter.

**22. Taken together, these communications—reproduced in their entirety as Exhibit C—reveal an attorney who was not merely failing to communicate; he was systematically absent at every critical juncture. Rush's pattern is consistent: promise action, go silent, surface with excuses about money, promise again, disappear. This cycle repeated for over a year, culminating in total silence since February 19, 2026, while his client faces a federal indictment and active bankruptcy proceedings.**

### V. RETENTION OF MATTHEW KOPECKI COMPOUNDS THE CONFLICT

**23.** On December 8, 2025, Matthew Kopecki of Bentley, Gibson, Kopecki, Smith, P.C. entered his appearance for Rush in this case (Doc. 501). Kopecki subsequently filed a Motion for Continuance on Rush's behalf (Doc. 502).

**24.** As set forth in the Debtor's concurrently filed Motion to Disqualify, Kopecki represented the Debtor from December 2015 through at least December 2018 in custody, divorce, support, PFA, and equitable distribution proceedings in Berks County (Docket Nos. 2016-09017 and 2016-08230). Kopecki received the Debtor's tax returns, business records, income disclosures, settlement proposals exceeding $500,000, support arrears data, and deeply personal information about the Debtor's family, credibility, parenting capacity, and relationships.

**25.** Kopecki's retention to represent Rush in sanctions proceedings arising from Rush's conduct in the Debtor's bankruptcy case creates an additional layer of conflict. The Debtor's former family law attorney is now defending the Debtor's former bankruptcy attorney against sanctions for misconduct in the Debtor's own case. The Debtor has never consented to this arrangement. Exhibit D (retainer letter).

**26.** It was Rush himself who referred Kopecki to the Debtor on November 30, 2015. Rush's email forwarding Kopecki's contact information initiated a three-year attorney-client relationship. Rush now seeks to benefit from the very referral he made—retaining the attorney he introduced to his client, who possesses that client's confidences, to defend against misconduct claims brought in that client's case.

## VI. PURPOSE OF THIS NOTICE

**27.** The Debtor files this Notice to ensure the Court is fully informed of the conflicts affecting Rush and Kopecki before the sanctions hearing proceeds. The Debtor respectfully submits that:

(a) Rush is operating under a non-waivable concurrent conflict of interest under Pa.R.P.C. 1.7(a)(2) that renders him incapable of representing the Debtor's interests in the criminal case while simultaneously defending himself in this bankruptcy case;

(b) Any statements Rush makes in defending against the Order to Show Cause may be discoverable by the government in Case No. 24-376, directly jeopardizing the Debtor's criminal defense;

(c) Rush's adverse posture toward Shannon Kroemmelbein, his former client, violates Pa.R.P.C. 1.9 and creates additional exposure for the Debtor and his family;

(d) Rush's own admissions demonstrate that his personal financial interests have materially impaired his representation of the Debtor;

(e) The retention of Matthew Kopecki—the Debtor's former attorney—to represent Rush compounds these conflicts and must be addressed by the Court; and

(f)  The Debtor reserves all rights to seek appropriate relief, including but not limited to motions to relieve Rush as criminal defense counsel, disciplinary referrals, and claims for damages arising from Rush's conflicted representation.

**28. This Notice is filed on the eve of the sanctions hearing because the Debtor's March 8, 2026 demand to Rush (Exhibit B) went unanswered, confirming that the conflicts identified herein remain active and unresolved. The Debtor requests that the Court take this Notice under advisement and consider the conflicts identified herein when evaluating the sanctions proceedings, any representations made by Rush or Kopecki, and any requests for continuance or adjournment. In the alternative, the Debtor requests that the Court conduct an inquiry into the conflicts identified herein before proceeding with the sanctions hearing.**

Respectfully submitted,

**Alan Christopher Redmond**
Debtor, Pro Se
2 High Road
Wyomissing, PA 19610
Tel: (814) 440-9068

alanredmond23@gmail.com

Dated: March 10, 2026

## CERTIFICATE OF SERVICE

I, Alan Christopher Redmond, hereby certify that on March 10, 2026, I caused a true and correct copy of the foregoing Debtor's Notice of Conflict of Interest to be served upon the following parties via electronic mail and first-class United States mail, postage prepaid:

Matthew Kopecki, Esquire
Bentley, Gibson, Kopecki, Smith, P.C.
1118 Penn Avenue
Wyomissing, PA 19610
matt@bentley-law.com
*(Counsel for William R.A. Rush, Esquire)*


William R.A. Rush, Esquire
Rush Law Group, LLC
38 North Sixth Street
P.O. Box 758
Reading, PA 19603-0758
wrush@rushlawberks.com
*(Respondent / Debtor's criminal defense counsel)*


Lynn E. Feldman, Esquire
Chapter 7 Trustee
2310 Walbert Avenue, Suite 103
Allentown, PA 18104
lynn@feldmanlawofficespc.com
*(Chapter 7 Trustee)*


Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
*(United States Trustee)*


Joel A. Ready, Esquire
Cornerstone Law Firm LLC
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
joel@cornerstonelaw.us
*(Counsel for creditor(s))*

Kevin Moore, Esquire
Barley Snyder LLP
100 East Market Street
York, PA 17401
kmoore@barley.com
*(Counsel for C. Malcolm Smith III)*

**Alan Christopher Redmond**
Debtor, Pro Se

[1] *The Debtor reserves all rights, privileges, and defenses afforded under the United States Constitution, including those under the Fifth Amendment, in all proceedings. Nothing in this Notice constitutes a waiver of any right or defense in any proceeding, including Case No. 24-376 (E.D. Pa.).*

# EXHIBIT A

## Cover Pages of Court Orders Finding Rush Responsible

Doc. 480 — Order Vacating Sanctions Against Shannon Kroemmelbein, Finding William R.A. Rush Responsible for Non-Compliance (Entered October 21, 2025)

Doc. 481 — Order Remitting Stephanie Miller's Sanctions to $0, Ordering Separate Show Cause Against William R.A. Rush (Entered October 21, 2025)

Doc. 485 — Order to Show Cause Against William R.A. Rush, Esquire (Entered October 21, 2025)

*[Document attached behind this page]*

# EXHIBIT B

**Email from Alan Redmond to William R.A. Rush**

**Subject: "Tuesday" — Dated March 8, 2026**

**UNANSWERED as of March 10, 2026**

---

—

**From:** Alan Christopher Redmond <alanredmond23@gmail.com>

**To:** William R.A. Rush <wrush@rushlawberks.com>

**Date:** March 8, 2026

**Subject:** Tuesday

---

—

William,

Judge Mayer vacated Shannon's sanctions and found you responsible. Docket Nos. 480 and 481. If your position Tuesday contradicts that finding by pointing at Shannon — your former client — I need to know before you say it to a judge.

You are my criminal defense attorney in a 27-count federal case. Whatever you say Tuesday is potentially discoverable by the government in 24-376. You have not discussed this with me. It affects me. It affects Shannon.

I need a call tomorrow. What is your position. What are you going to say. How does it affect my case. Three questions.

And frankly Bill, I am not going back and forth with an attorney who isn't communicating. Don't get me started about the invoice.

Alan

# EXHIBIT C

**Full Email Chains Documenting Rush's Pattern of Avoidance, Abandonment, and Silence**
*Note: The following communications are reproduced verbatim from their original email format to preserve their evidentiary integrity.*

**CHAIN 1:  THE JANUARY 31, 2026 EMAIL THREAD**
Subject: Re: Fw: Ch-7 24-13093-pmm Proof of Claim – Alan Christopher R

From: William Rush <wrush@rushlawberks.com>
To: Alan Redmond
Date: January 31, 2026, 1:32 PM
Subject: Fw: Ch-7 24-13093-pmm Proof of Claim – Alan Christopher R

"Is this for 8 Morgan?"

---

From: Alan Redmond <alanredmond23@gmail.com>
To: William Rush
Date: January 31, 2026, 1:39 PM

"No. This is WBL. You represented spo 1 and 2 in front of fudaman. Do you have it. I didn't sign for it"

---

From: Alan Redmond <alanredmond23@gmail.com>
To: William Rush
Date: January 31, 2026, 1:41 PM

"They likely seen ██████████████ 8 Morgan and thought it was ok. This Jessica Gulash counter part"

---

From: William Rush <wrush@rushlawberks.com>
To: Alan Redmond
Date: January 31, 2026, 1:43 PM

"No I know that, but I wanted to be sure they're not making simultaneous claims for the same property, one in County and one Federally. B/c that would be huge, very huge and very important information in the County foreclosure."

---

From: Alan Redmond <alanredmond23@gmail.com>
To: William Rush

Date: January 31, 2026, 5:03 PM

"I'm assuming if they are that would be sanctionable, I'm about to sit down tonight and finish up the push of legal for Monday delivery, Maybe tonight. How am I approaching this one – tell me what to look for and research pizan. I want to hit Nubridge (morgan), ████ and ████████ I seen the continuance at 3 months post – let that sit for a week and then hit with ██████████████

---

From: Alan Redmond <alanredmond23@gmail.com>
To: William Rush
Date: January 31, 2026, 5:05 PM

"████████████████████ Where the fuck have you been. Wouldn't mind someone joining me for all these fucking fights Feb March ████████████

---

From: William Rush <wrush@rushlawberks.com>
To: Alan Redmond
Date: January 31, 2026, 10:40 PM

"Man I am ready and fired up. Just got to work a little bit so the first thought each morning ain't money. Biggest distraction. But we are on fire in terms of actual movement and strategy. I feel the fire slowly growing back"

*[ WHAT FOLLOWED: 18 DAYS OF SILENCE. Rush did not follow up. No strategy. No movement. No fire. ]*

## CHAIN 2: RUSH'S FINAL SUBSTANTIVE COMMUNICATION — February 19, 2026

From: William Rush <wrush@rushlawberks.com>
To: Alan Redmond
Date: February 19, 2026
Subject: Re: Reminder: Waiting for you to sign

"I am scrambling so can't do a further outline apart from telling you to look at the strategies for feds, support, etc from weeks and weeks ago."

"I don't have the time tonight. I have 3 lawsuits to file today. Strategy for all things is in email man. I am under the gun."

*[ THESE WERE THE LAST WORDS RUSH COMMUNICATED TO HIS CLIENT. ]*
*[ 18+ DAYS OF TOTAL SILENCE AS OF MARCH 10, 2026. ]*

## CHAIN 3: THE MARCH 8, 2026 DEMAND — UNANSWERED

From: Alan Redmond <alanredmond23@gmail.com>
To: William R.A. Rush <wrush@rushlawberks.com>
Date: March 8, 2026
Subject: Tuesday

William,

Judge Mayer vacated Shannon's sanctions and found you responsible. Docket Nos. 480 and 481. If your position Tuesday contradicts that finding by pointing at Shannon — your former client — I need to know before you say it to a judge.

You are my criminal defense attorney in a 27-count federal case. Whatever you say Tuesday is potentially discoverable by the government in 24-376. You have not discussed this with me. It affects me. It affects Shannon.

I need a call tomorrow. What is your position. What are you going to say. How does it affect my case. Three questions.

And frankly Bill, I am not going back and forth with an attorney who isn't communicating. Don't get me started about the invoice.

Alan

*[ STATUS AS OF MARCH 10, 2026: UNANSWERED. THREE DIRECT QUESTIONS. NO RESPONSE. ]*

## EARLIER COMMUNICATIONS ESTABLISHING THE PATTERN

**July 6, 2016 — Rush to Alan:**
"Kopecki has a very good relationship with that GAL and she seems to be on your side now, so proceed with caution."
*[ Rush was directing and coordinating Kopecki's representation of the Debtor. ]*

**July 3, 2025 — Rush to Alan:**
"Sorry man, scrambling to make money. I will touch base later this afternoon."
*[ Rush never touched base. The client's matter was abandoned. ]*

**February 25, 2025 — Rush to Alan:**
"Trying to find that now…the judge is fucking weird in this case. Are you SURE you do not need me to file your support modification?"
*[ Rush received completed modification paperwork from Shannon in May 2025. He never filed it. Seven months of inaction followed. ]*

**July 9, 2025 — Rush re: missed hearing:**
"I heard nothing back from anyone regarding a continuance or a rescheduling or a phone option from anyone at DRO."
*[ Rush caused Alan to miss the June 30 in-person hearing by incorrectly advising it was by Zoom, then blamed DRO for his own failure. ]*

**December 22–23, 2025 — Rush to Alan:**
Dec 22: "Petition to modify prepped. Requires in-person so filing first thing tomorrow AM."
Dec 23: "I got no packet but you have new counsel now so I will not file."
*[ Rush promised to file, then reversed himself overnight. The modification was never filed. ]*

*[Documents and original .eml files available upon request of the Court]*

# EXHIBIT D

## Retainer Letter from Matthew Kopecki to Alan Redmond
## Dated May 20, 2016

Formalizing Kopecki's representation of the Debtor in Redmond v. Redmond, Berks
County Docket Nos. 2016-09017 and 2016-08230.

*[Document attached behind this page]*

LAWYERS   Anthony J. Vetrano
Kathleen B. Vetrano
Sarinia M. Feinman
Paula M. Borradaile
Lindsay H. Childs
Jessica B. Saunders
Lydia S. Terrill

Suite 215
630 Freedom Business Center Drive
King of Prussia, PA 19406

Tel:   610-265-4441
Fax:   610-265-1120
Email: Info@VetranoLaw.com
Web:   www.VetranoLaw.com

# VETRANO | VETRANO & FEINMAN LLC

**May 5, 2016**

**PERSONAL AND CONFIDENTIAL**
**TO BE OPENED BY ADDRESSEE ONLY**

**<u>VIA E-MAIL ONLY</u>**

Alan Christopher Redmond
c/o Matthew Kopecki, Esquire
Bentley, Gibson, Kopecki, Smith, P.C.
1118 Penn Avenue
Wyomissing, PA 19610
matt@bentley-law.com

Carolyn Lorain Redmond
c/o David Miller, Esquire
Dolan Law Group, LLC
1800 E. High Street, Suite 150
Pottstown, PA 19464
david@1876law.com

Dear Mr. and Mrs. Redmond:

Thank you for your confidence in retaining me to represent your children, Ava and Noah Redmond, as Guardian Ad Litem in the custody and related matters.

Many years of experience have taught us that the attorney-client relationship functions best when both parties are fully aware of the scope of the representation and their respective obligations. The purpose of this letter is to set forth the arrangements concerning our services and our fee so that we may avoid any misunderstandings.

As we discussed, your bill will be based upon the time spent performing services on your behalf multiplied by the hourly rate of the attorney or paralegal who performed the service. Hourly rates change from time to time. We bill based upon one-tenth of an hour intervals. When possible, we try to have the work done at the level that will be most efficient in terms of rates and costs to you. My present hourly rate is $385. The hourly rates for all other attorneys range from $225 to $485 and the hourly rate for the paralegal assistant is $150.

The time charged to you concerning your case will include telephone conversations, e-mail, and meetings with you, the court, and both counsel, court appearances, drafting and reviewing pleadings, agreements, and correspondence, time spent with witnesses, legal research, travel, etc.

Mr. and Mrs. Redmond
May 5, 2016
Page 2

In addition to the payment for professional services, you will be responsible for timely reimbursement of all of our out-of-pocket expenses, such as charges for filing fees paid to the court, experts if needed, appraisals, investigative and witness fees, travel expenses, computerized legal research, messengers, copying expenses, excess postage and transcripts of proceeding.

I have requested a retainer of **$2,000** from you which is an advance deposit to be applied toward payment of your future bills.  Kindly return your retainer with a signed copy of this letter. Please make checks payable to Vetrano|Vetrano & Feinman LLC.

The retainer is not a minimum or maximum fee.  Thus, if we conclude your case before the total hourly charges equal the amount of the retainer, you will receive a refund of the difference.  Alternatively, if the total hourly charges exceed the amount of the retainer before our work is completed, you will be required to provide a new retainer.

When your retainer is exhausted, you will need to replenish it.  Prior to our appearance in court on your behalf, your bill must be paid in full unless other satisfactory payment arrangements have been made.  In some instances where there is a protracted hearing scheduled, an additional retainer will be required in an amount estimated to cover the number of hours of the trial.

We will be sending monthly statements as your case proceeds.  Payment of the monthly statement is due on the 5th day of the following month.  We reserve the right to terminate our relationship if you do not pay our fees and disbursements in a timely manner.  A charge of $75 will be assessed for any checks returned by the bank.

Unfortunately, it is virtually impossible to estimate for you the total amount of time that will have to be devoted to your case.  That will depend upon a variety of factors, primarily upon whether hearings or a trial will be necessary, the time and effort required, the nature and complexity of the issues involved, and the degree of cooperation afforded by any other party or attorney.  Similarly, we cannot guarantee the results that will be obtained, particularly since no one can predict what a court may do in a particular case.

Please be sure to notify us in writing if your address or other contact information changes at any point during our representation, so that you are able to receive all correspondence, bills, and any other relevant information on a timely basis, and we avoid sending such information to a potentially wrong address.

We reserve the right to terminate our representation, to add interest to past due fees, to add costs or fees incurred in our collection efforts or other activity which may be generated by your failure to comply with the terms of this engagement letter.

Mr. and Mrs. Redmond
May 5, 2016
Page 3

  If this letter correctly confirms our arrangement concerning our services, fees and costs, please sign this letter in the space indicated and return the same to me.  If you have any questions or comments, do not hesitate to give me a call.

  I look forward to working with you.

Sincerely yours,

Sarinia M. Feinman

I HAVE READ THE ABOVE LETTER AND IT CORRECTLY SETS FORTH MY UNDERSTANDING IN REGARD TO MY FEE ARRANGEMENT FOR SARINIA M. FEINMAN, ESQUIRE, OF VETRANO|VETRANO & FEINMAN LLC, TO SERVE AS GUARDIAN AD LITEM FOR MY MINOR CHILDREN IN THE CUSTODY CASE IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA (DOCKET #2016-09017).

FURTHER, I AM AGREEING TO PAY THE FOLLOWING PERCENTAGE OF FEES INCURRED WITH VETRANO|VETRANO & FEINMAN LLC IN THIS CAPACITY.

CAROLYN REDMOND TO PAY _____%

ALAN REDMONED TO PAY _____%

Dated: _____    _____
                    Carolyn Lorain Redmond

Dated: _____    _____
                    Alan Christopher Redmond

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re:                                          )        **Case No. 4:24-bk-13093-PMM**
                                                )
**ALAN CHRISTOPHER REDMOND,**                   )        Chapter 7
                                                )
        Debtor.                                 )        Hon. Patricia M. Mayer

In re:

**ALAN CHRISTOPHER REDMOND,**
        Debtor.

**Case No. 4:24-bk-13093-PMM**
Chapter 7
Hon. Patricia M. Mayer

**DEBTOR'S MOTION TO DISQUALIFY ATTORNEY MATTHEW KOPECKI
FROM REPRESENTING WILLIAM R.A. RUSH, ESQUIRE
IN SANCTIONS PROCEEDINGS**

Alan Christopher Redmond ("Debtor"), appearing *pro se,* respectfully moves this Court for an
Order disqualifying Attorney Matthew Kopecki of the firm Bentley, Gibson, Kopecki, Smith,
P.C. from representing William R.A. Rush, Esquire in the sanctions proceedings pending before
this Court. Attorney Kopecki represented the Debtor for over three years—from December 2015
through at least December 2018—in custody, divorce, support, Protection From Abuse, and
related family law matters in Berks County, Pennsylvania. He received the Debtor's most
sensitive financial, personal, and strategic confidences. He now proposes to represent the very
attorney whose conduct in this bankruptcy is adverse to his former client. The Debtor has never
consented to this representation. In support thereof, the Debtor states as follows:

## I. FACTUAL BACKGROUND

**1.** On November 30, 2015, William R.A. Rush, Esquire—the very attorney Kopecki now
proposes to defend—personally introduced Kopecki to the Debtor. Rush sent an email from
wrush@rushlawberks.com to alanredmond23@gmail.com with the subject line "Kopecki
Contact Info," providing Kopecki's telephone number (610-685-8000) and email address
(matt@bentley-law.com). Exhibit B.

**2.** On December 2, 2015, the Debtor contacted Kopecki directly by email, replying to
Rush's referral: "Matt, Give me a call at your earliest. 814-440-9068. Best, Alan Redmond,
NBoA Inc., Owner." This initiated the attorney-client relationship between Kopecki and the
Debtor.

**3.** On May 20, 2016, Kopecki formalized the representation with a written retainer letter.
Exhibit A. The representation encompassed Berks County Docket Nos. 2016-09017 and 2016-

08230, covering custody, divorce, equitable distribution, spousal support, child support, and Protection From Abuse proceedings—all styled Redmond v. Redmond.

**4.** Over the next three years, Kopecki filed multiple pleadings on the Debtor's behalf, including: (a) Appointment of Guardian ad Litem, Docket Entry 23957 (Exhibit C); (b) Emergency Petition, Docket Entry 24165 (Exhibit D); (c) Petition for Accounting, Docket Entry 24168 (Exhibit E); (d) Domestic Relations Confidential Document, Docket Entry 24217.

**5. Kopecki's representation was not ministerial; it was deeply strategic and involved the Debtor's most sensitive confidential information. Kopecki advised the Debtor on custody evaluations, housing strategy, and support calculations, receiving detailed financial and personal disclosures necessary to formulate litigation strategy across multiple concurrent family law proceedings. Exhibit F.**

**6.** On August 15, 2016, Kopecki communicated with opposing counsel Sarinia Feinman regarding a stepped custody schedule, providing the Debtor with strategic advice: "I know this isn't what you want, but her suggestion for a stepped custody schedule is very typical in these cases. I don't think you're going to get around that." He promised to "bcc you moving forward" on all attorney communications. Exhibit F.

**7. On January 19, 2018, Kopecki represented the Debtor at a Domestic Relations Office conference regarding support obligations, receiving detailed confidential financial information necessary to advise the Debtor on compliance strategy. Exhibit F.**

**8. On April 6, 2018, Kopecki managed the Debtor's discovery obligations in the Redmond v. Redmond matter, receiving and reviewing the Debtor's confidential financial documents, business records, and personal information in preparation for litigation. Exhibit F.**

**9. On May 4, 2018, Kopecki transmitted a comprehensive divorce settlement proposal to the Debtor on behalf of opposing counsel, involving equitable distribution terms, child support provisions, housing obligations, and insurance requirements. The settlement negotiations required Kopecki to possess and analyze the Debtor's complete financial picture, including income, assets, liabilities, and support obligations. Exhibit F.**

**10. On October 5, 2018, Kopecki communicated with the Domestic Relations Office and opposing counsel regarding the Debtor's support and equitable distribution obligations, advising the Debtor on compliance posture across multiple concurrent proceedings. Kopecki's communications reflected detailed knowledge of the Debtor's payment history, account information, and litigation exposure — precisely the type of confidential financial information that creates a substantial relationship under Rule 1.9. Exhibit F.**

**11.** On November 30, 2018, Kopecki coordinated a $130,000 equitable distribution wire transfer on the Debtor's behalf pursuant to the Marital Settlement Agreement, communicating with opposing counsel Jamie Jamison at Appel, Yost, Baxter & Boxleitner, LLP regarding the second equitable distribution payment of $150,000 due by December 1, 2018. Exhibit F.

**12.** As late as December 10, 2018, Kopecki was actively managing the Debtor's custody litigation, emailing: "The short list conference that was scheduled on 12/20 was cancelled b/c we

already set the custody trial date for 3/21/19. So you are now free on 12/20 from Court." Exhibit F. The attorney-client relationship thus persisted continuously from December 2015 through at least December 2018.

## II. LEGAL STANDARD

**13. This Court possesses inherent authority under 11 U.S.C. § 105(a) to regulate the conduct of attorneys practicing before it, including the authority to disqualify conflicted counsel. Pursuant to Local Bankruptcy Rule 2090-1(b), attorneys practicing before this Court are governed by the Pennsylvania Rules of Professional Conduct. Pennsylvania Rule of Professional Conduct 1.9(a) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." The Court recognizes that disqualification is a harsh remedy that should not be imposed lightly. However, where, as here, all three elements of the substantial-relationship test are satisfied and the presumption of shared confidences is irrebuttable, disqualification is the only adequate remedy to protect the former client's confidences and the integrity of these proceedings.**

**14.** Rule 1.9(c) further prohibits a lawyer who has formerly represented a client from using information relating to the representation to the disadvantage of the former client, or revealing such information except as permitted or required by the Rules.

**15.** The Third Circuit has adopted a three-part test for disqualification under Rule 1.9: (1) whether the moving party is a former client of the adverse attorney; (2) whether the matters are the same or substantially related; and (3) whether the adverse attorney's interests are materially adverse to the former client. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984). Where a substantial relationship is established, an irrebuttable presumption arises that confidences were disclosed. *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004).

**16. A party seeking disqualification "need not establish that confidential information was actually conveyed"; rather, the substantial relationship between the former and current matters creates the irrebuttable presumption. The test focuses on whether "the factual contexts of the two representations are similar or related." Corn Derivatives, 748 F.2d at 162. The movant bears the burden of establishing a substantial relationship; once established, the presumption of shared confidences is conclusive and no inquiry into actual prejudice is permitted.**

## III. ARGUMENT

### A. The Debtor Has Standing to Seek Disqualification

**17.** The Debtor is a former client of Attorney Kopecki. As documented above, Kopecki represented the Debtor from December 2015 through December 2018 in custody, divorce,

support, PFA, and equitable distribution proceedings. The Debtor has direct standing to move for disqualification as the party whose confidences are at risk. See Pa.R.P.C. 1.9, Comment [1].

### B.  The Matters Are Substantially Related

18. The sanctions proceedings in which Kopecki now represents Rush arise directly from Rush's conduct as counsel in this bankruptcy case—the bankruptcy of the same Alan Redmond whom Kopecki formerly represented. The sanctions concern discovery failures, court order violations, and attorney misconduct in a case about the Debtor's financial affairs—the very financial affairs Kopecki learned about in exhaustive detail during three years of divorce, equitable distribution, and support representation.

19. **Kopecki received the Debtor's tax returns, business records for NBoA Inc., detailed income and expense disclosures, discovery responses, settlement proposals exceeding $500,000, support arrears calculations, equitable distribution payment schedules, health insurance records, and parenting evaluation reports. During the three-year representation, Kopecki also received the Debtor's custody strategies and parenting assessments, mental health and substance abuse evaluation results, settlement authority and negotiation positions, and credibility assessments shared in confidence for purposes of trial preparation. This is precisely the type of financial and personal information relevant to bankruptcy proceedings and the sanctions arising therefrom. Specifically, Rush's defense to sanctions will necessarily involve characterizing the Debtor's financial condition, the reasonableness of the Debtor's conduct during the bankruptcy, and the Debtor's credibility—subjects on which Kopecki possesses three years of intimate confidential knowledge. The factual overlap is not incidental; it is structural.**

20. Under the irrebuttable presumption of Corn Derivatives, Kopecki is conclusively presumed to have received confidential information during the prior representation. The Debtor need not identify specific confidences; the substantial overlap in subject matter—the Debtor's financial affairs, obligations, and litigation history—is sufficient. Moreover, under Pa.R.P.C. 1.10(a), Kopecki's disqualification is imputed to all lawyers in the firm of Bentley, Gibson, Kopecki, Smith, P.C., none of whom may represent Rush in this matter.

### C.  Kopecki's Current Representation Is Materially Adverse to the Debtor

21. Kopecki entered his appearance for Rush on December 8, 2025 (Doc. 501) and filed a Motion for Continuance on Rush's behalf (Doc. 502). Rush is the respondent in sanctions proceedings arising from his conduct in this Debtor's bankruptcy case. Three separate parties have obtained rulings finding Rush responsible for misconduct: (a) Doc. 480 (Shannon Kroemmelbein's sanctions vacated, Rush found responsible); (b) Doc. 481 (Stephanie Miller's sanctions remitted to $0, show cause against Rush); and (c) Doc. 512 (C. Malcolm Smith III documenting Rush's concealment of court orders).

22. Rush's interests in these sanctions proceedings are directly and materially adverse to the Debtor. Rush faces potential sanctions, contempt, and disciplinary referral for his failures in this Debtor's case. Any defense Rush mounts necessarily involves characterizing, minimizing, or deflecting responsibility for harm caused to the Debtor and the Debtor's estate. Kopecki's advocacy for Rush is therefore advocacy against the interests of his former client.

### D.  The Debtor Has Never Consented

**23.** At no time has the Debtor given informed consent, confirmed in writing or otherwise, to Kopecki's representation of Rush. Pa.R.P.C. 1.9(a) requires such consent as a prerequisite. Neither Kopecki nor Rush has ever sought the Debtor's consent. The Debtor affirmatively objects to the representation and withholds consent.

**24. This motion is timely. The Debtor became aware of the full scope of the conflict only upon obtaining and reviewing Kopecki's prior representation files and documentary exhibits in preparation for the March 10, 2026 hearing. The 91-day interval between Kopecki's entry of appearance (Doc. 501, December 8, 2025) and this motion reflects the time required for a pro se litigant to locate, compile, and verify the documentary evidence necessary to support this motion, including obtaining retainer agreements and communications from 2015–2018. Moreover, disqualification motions under Rule 1.9 are not subject to laches where the conflict is structural and ongoing—the risk of misuse of confidential information persists regardless of when the motion is filed. The duty to avoid conflicts is continuous, not subject to a limitations period.**

**E.  Rush Introduced Kopecki to the Debtor—Rush Cannot Now Benefit From His Own Referral**

**25.** The irony is not lost on this Court: it was Rush himself who, on November 30, 2015, referred Kopecki to the Debtor. Rush's email providing Kopecki's contact information (Exhibit B) initiated a three-year attorney-client relationship during which Kopecki obtained the Debtor's most sensitive confidences. Rush now seeks to retain that same attorney—the attorney he introduced to the Debtor, who possesses the Debtor's confidences—to defend against sanctions arising from Rush's own misconduct in the Debtor's bankruptcy case.

**26. Rush should not be permitted to weaponize his own referral. To allow Kopecki to represent Rush would permit an attorney to introduce his client to counsel, allow that counsel to accumulate years of confidential information, and then retain that same counsel to use in adversarial proceedings against the former client. This is precisely the harm Rule 1.9 was designed to prevent. The Debtor files this motion mindful of parallel proceedings and has confined the motion to the conflict analysis necessary for disqualification, avoiding any factual assertions that could affect the Debtor's rights in other matters.[1]**

## IV.  CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

(a)  Disqualifying Attorney Matthew Kopecki and the firm of Bentley, Gibson, Kopecki, Smith, P.C. from representing William R.A. Rush, Esquire in any proceedings in this bankruptcy case;

(b)  Striking any filings made by Kopecki on Rush's behalf, including but not limited to the Entry of Appearance (Doc. 501) and Motion for Continuance (Doc. 502);

(c)  Directing that Rush obtain conflict-free counsel before any further proceedings on the pending Order to Show Cause (Doc. 485); and

(d)  Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____

**Alan Christopher Redmond**
Debtor, Pro Se
2 High Road
Wyomissing, PA 19610
Tel: (814) 440-9068
alanredmond23@gmail.com

Dated: March 10, 2026

[1] *The Debtor reserves all rights, privileges, and defenses afforded under the United States Constitution, including those under the Fifth Amendment, in all proceedings. Nothing in this motion constitutes a waiver of any right or defense in any proceeding, including Case No. 24-376 (E.D. Pa.).*

## CERTIFICATE OF SERVICE

I, Alan Christopher Redmond, hereby certify that on March 10, 2026, I caused a true and correct copy of the foregoing Debtor's Motion to Disqualify Attorney Matthew Kopecki to be served upon the following parties via electronic mail and first-class United States mail, postage prepaid:

Matthew Kopecki, Esquire
Bentley, Gibson, Kopecki, Smith, P.C.
1118 Penn Avenue
Wyomissing, PA 19610
matt@bentley-law.com
*(Counsel for William R.A. Rush, Esquire)*

William R.A. Rush, Esquire
Rush Law Group, LLC
38 North Sixth Street
P.O. Box 758
Reading, PA 19603-0758
wrush@rushlawberks.com
*(Respondent / Debtor's former bankruptcy counsel)*

Lynn E. Feldman, Esquire
Chapter 7 Trustee
2310 Walbert Avenue, Suite 103
Allentown, PA 18104
lynn@feldmanlawofficespc.com
*(Chapter 7 Trustee)*

Office of the United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107
*(United States Trustee)*

Joel A. Ready, Esquire
Cornerstone Law Firm LLC
725 Skippack Pike, Suite 337
Blue Bell, PA 19422
joel@cornerstonelaw.us
*(Counsel for creditor(s))*

Kevin Moore, Esquire
Barley Snyder LLP
100 East Market Street
York, PA 17401
kmoore@barley.com
*(Counsel for C. Malcolm Smith III)*

FILED
2026 MAR 10 AM 9:27
U.S. BANKRUPTCY COURT

**Alan Christopher Redmond**
Debtor, Pro Se