# UNITED STATES BANKRUPTCY COURT

---

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
In re:                        )  Case No. 24-13093-PMM
                              )  Reading, Pennsylvania
ALAN CHRISTOPHER REDMOND,     )
                              )  October 21, 2025
           Debtor.            )  11:02 a.m.
```

Pages:     1 through 47

Place:     Reading, Pennsylvania

Date:      October 21, 2025

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1150 Connecticut Avenue, N.W., Suite 305
Washington, D.C.  20036
(202) 628-4888
contracts@hrcreporters.com

1

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


In re:                          )  Case No. 24-13093-PMM
                                )  Reading, Pennsylvania
ALAN CHRISTOPHER REDMOND,       )
                                )  October 21, 2025
                Debtor.         )  11:02 a.m.


TRANSCRIPT OF HEARING
PROPOSED MOTION FOR SANCTIONS TO BE LIFTED AND REQUESTING
RELIEF FROM BANK SANCTIONS; MOTION TO VACATE (RELATED
DOCUMENTS ORDER ON AMENDED MOTION, ORDER ON MOTION TO
COMPEL) MOTION TO VACATE SANCTION AND DISCOVER ORDERS;
OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS; CROSS-MOTION
TO COMPEL
BEFORE THE HONORABLE PATRICIA M. MAYER
UNITED STATES BANKRUPTCY JUDGE

        APPEARANCES:

FOR THE DEFENDANT:              van der Veen, Hartshorn &
                                  Levin
                               By:  Bruce Lee Castor, Jr.,
                               Esquire
                               1219 Spruce Street
                               Philadelphia, PA  19107
                               (215) 546-1000


FOR THE DEFENDANT:             Norman M. Valz, P.C.
                               By:  Norman M. Valz, Esquire
                               100 South Broad Street,
                               Suite 1430
                               Philadelphia, PA  19103
                               (215) 751-9855


FOR THE DEFENDANT:             Weir, LLP
                               By:  David V. Dzara, Esquire
                               The Widener Building
                               1339 Chestnut Street, Ste. 500
                               Philadelphia, PA  19107
                               (215) 665-8181

2

          APPEARANCES:   (Cont'd.)

FOR THE DEFENDANT:           Cornerstone Law Firm
                             By:  Benjamin J. Lewis,
                             Esquire
                             519 Walnut Street
                             Reading, PA  19601
                             (610) 926-7875

FOR THE TRUSTEE:             United States Trustee
                             By:  Lynn E. Feldman, Esquire
                             2310 Walbert Avenue, Suite 103
                             Allentown, PA  18104
                             (610) 437-7011

TRANSCRIPTION SERVICES:      Heritage Reporting Corporation
                             1150 Connecticut Avenue, N.W.
                             Suite 305
                             Washington, D.C.  20036
                             (202) 628-4888

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

3

# C O N T E N T S

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| For the Defendant: | | | | | |
| Stephanie Miller | 30 | 35 | -- | -- | -- |

Heritage Reporting Corporation
(202) 628-4888

4

P R O C E E D I N G S

(11:02 a.m.)

THE CLERK:  Okay.  We're moving on to Numbers 12, 13, 14, and 15, Alan Christopher Redmond, Motion for Sanctions to be Lifted and Requesting Relief, Motion to Vacate Sanction and Discovery Orders, Objection to Debtor's Claim of Exemptions, and Cross-Motion to Compel.

JUDGE MAYER:  Okay.  So let's get a roll call for everybody.  Mr. Ready's not here yet.  Mr. Lewis, are you here for Mr. Ready?

MR. LEWIS:  I am, Your Honor.

JUDGE MAYER:  Okay.  I just wanted to make sure we weren't starting without someone from his office.  Okay.

MR. LEWIS:  Sure.

JUDGE MAYER:  Ms. Feldman, I see you here.  That's good.

And, Mr. Castor and Mr. Valz, I assume that you're here on your respective motions.

MR. CASTOR:  That's correct.

MR. VALZ:  Yes, Your Honor.  Good morning.

MR. CASTOR:  Good morning.

JUDGE MAYER:  Okay.  So let's start with the 419, which is the Motion to Vacate the Sanctions and Discovery Orders with regard to Shannon Kroemmelbein.

So I think, Mr. Castor, is that your motion?

5

MR. CASTOR:  On behalf of Stephanie Miller, Your Honor, yes.

JUDGE MAYER:  Oh, no.  Wrong one.  Okay.

MR. CASTOR:  Okay.

MR. DZARA:  Your Honor, I'm here, David Dzara, with this one.

JUDGE MAYER:  Okay.  Okay.

MR. DZARA:  My partner, Walter Weir, signed, I think, the motion, but I heard this last week and I'm here today.

JUDGE MAYER:  Thank you.  Okay.  All right.  So it's your motion, so I will let you begin before I let Mr. Lewis respond.

MR. DZARA:  Thank you, Your Honor.  So I think there are -- we've been reviewing just now Mr. Castor's motion on behalf of Ms. Miller.  I think there is a similarity of the issues.  I think a little bit of a difference of a history, though.

But our motion concerns the -- really, the conduct by Attorney William Rush, who was Ms. Kroemmelbein's attorney earlier this year when the relevant matters and issues occurred.

So I'm not -- I have not attended these hearings, so I'm not sure how familiar the Court is with this history.  I can go into it a little bit to kind of set

6

the table.

JUDGE MAYER:  No, I'm good.

MR. DZARA:  Okay.

JUDGE MAYER:  I've been in this from the beginning, so I'm okay.  I know what's going on.

MR. DZARA:  Okay.  We're good with that.  I understand.

So, essentially, you know, it's our position and, which is, in actuality, the truth, that Mr. Rush was hand-picked by Debtor, Ms. Kroemmelbein's husband, to be their attorney once the subpoena was issued, and it is our position in reviewing the matter after being engaged following Mr. Rush's withdrawal in April that Mr. Rush clearly was protecting the interests of Debtor and not Ms. Kroemmelbein.

The arguments made in the motion practice before Your Honor regarding the orders that are at issue here were inadequate and were specifically Mr. Rush did not assert a Fifth Amendment privilege, which we felt was a fairly obvious issue and right that should have been asserted from the outset based on the overlap between this matter, the topics of the rule  (inaudible) examination, document requests in the subpoena, and the issues involved in the criminal matter, which are plain as day, revealing (inaudible).

7

The icing on the top of that cake is that Sapporo Medico (phonetic) is one of the defendants named in the indictment, and it is a company that (inaudible) owned or bought by my client, Ms. Kroemmelbein.

So we believe that there was, to put it bluntly, malpractice committed by Mr. Rush in representing Ms. Kroemmelbein, that he favored Debtor over her. He was Debtor's criminal attorney at the time. There was also other non-party attorneys in that matter.

And once we were retained in early summer, my partner, Walter Weir, immediately engaged in negotiations with Mr. Ready to, obviously, comply with the Court's orders. That was our immediate priority.

But, as we dug into this case and dug into all the issues and interviewed and spoke to Mr. (inaudible) and other attorneys about this matter and realized what a (inaudible) it was, what a long history it has, how many tentacles are involved, we became very concerned about our client's rights, particularly in light of her being named in the superseding indictment. She's not a defendant, but she's named in the indictment.

So, in an effort to try to resolve this with Mr. Ready, we explained in mid-July that we would produce her for an examination but that we would assert the Fifth Amendment privilege at the examination on a question like

8

(inaudible) and that we just need to slow down and figure this out because it's too much for us to go forward without really understanding what do we know, what are the documents, what does she have, what does she not have, what's responsive, what isn't, and what may or may not be protected by the Fifth Amendment privilege.

We conducted -- we -- Mr. Ready declined to have the examination.  We were then forced, essentially, to file our motion in August to protect our client's interests as we continued to dig and dig and dig and dig.

So where we are today, I'm happy to report, that we did provide responses to the document requests on October 3.  We did produce yesterday, last night, I'll admit it was last night, all of Ms. Kroemmelbein's documents that she has in her protection and custody we felt were responsive to the requests.  We did not withhold any based on the Fifth Amendment privilege based on the review of the documents that she had.

We, again, have said she's available for a deposition, where she may or may not assert the Fifth Amendment privilege.  It all depends.  But that's not ripe right now.  We have asserted a blanket privilege objection now.  It has to be question by question.  So we will let that play out.

If there is a dispute based on the answers, Mr.

9

Ready or probably Mr. Lewis can file a motion to compel (inaudible), et cetera, but that we're not -- that's not where we are today.  They have declined to have the deposition despite, as I say, being available since mid-July.

Also, the document requests, we produced everything that we have that's responsive.  We have not withheld anything based on privilege.  If requests, additional requests, are made at the deposition or whatever, yes, we may assert the privilege then.  But, for now, we don't think the privilege is ripe.

So we both spilled a lot of ink on our briefs that we filed, their opposition in September, our response October 3, getting into the response until the act of production doctrine in various exceptions to that rule, but, really, those are not ripe right now.

We produced everything that we have.  We haven't withheld any based on the privilege.  We'll make sure we have made her available since mid-July for an examination.  We'll assert the privilege objections there as necessary.  If anything comes of that, obviously, everybody -- they have already filed a motion to compel, and we can do that before the Court on specific questions, specific requests, and the Court can make its decisions on if the Fifth Amendment privilege is

10

applicable.

But, in light of that history, in light of what we believe to be outrageous representation by Mr. Rush, it's our position that it would be -- I don't say this lightly -- a miscarriage of justice to have these sanctions against Ms. Kroemmelbein, and, therefore, we respectfully request that you forbear involving imposing sanctions.

JUDGE MAYER: Okay. So you're asking that the sanctions, I guess, that started May 7 maybe through I guess when you produced them 10/3, that those sanctions be basically expunged? Is that what we're looking for?

MR. DZARA: Yes, Your Honor.

JUDGE MAYER: Okay.

MR. DZARA: In light of the history. I mean, we make this -- we don't make this request lightly. Obviously, we understand things would have been different if we were counsel back in December. And we understand what may be going through your head, Your Honor, that not to put thoughts in your head that, you know, sometimes parties are stuck with the conduct that their lawyers -- decisions they made.

But, here, I mean, this is just flat out outrageous, and I think the next motion you're going to hear is going to further address the outrageousness of

11

what happened with Mr. Rush because he didn't represent Ms. -- he had one party in mind, one party to protect, and everyone else was on their own until we discovered, you know, what happened.

So it is, you know, it is a bold motion and request to make, Your Honor, but we think it fits the history and the facts of this case, and (inaudible).

JUDGE MAYER:  Okay.  Mr. Lewis, do you want to respond?

MR. LEWIS:  I do, Your Honor.  So, first of all, as to the document production, and as I think counsel indicated, you know, we got these things very, very late. I mean, we requested them, I think, back in January when they were due in January.  We just recently received them, but even the production that we did receive, there's problems with.

They demanded that documents produced be used solely for this proceeding.  We can't agree to that restriction.  It's, you know, until -- you know, we have the right to use this in any adversary proceeding until, you know, this debt is paid.  So that's number one.

Number two --

JUDGE MAYER:  Do you think that's true of a 2004 exam and request for documents?  Do you think that's true?

12

MR. LEWIS:  I do.  I do, Your Honor.  At least that's our position.  Or, I guess, and maybe I'll split the difference here.  Maybe not any proceeding, but I think, to say it can only be used for this proceeding is at least overly restrictive.

JUDGE MAYER:  And this proceeding is defined as what?  The Chapter 7 case, your adversary that's been dismissed and is on appeal?  What is this proceeding that we're defining?

MR. LEWIS:  Well, what we -- if I may, Your Honor?

JUDGE MAYER:  Sure.

MR. LEWIS:  Let me just pull up the letter that we got.

JUDGE MAYER:  Sure.  Unless, Mr. Dzara, you have an answer to that?

MR. DZARA:  Well, yes.  In our response, the letter from my colleague, Mr. Weir, did say we would be asking for a confidentiality agreement, but we produced the documents without a confidentiality agreement being signed.  So we're fine with them being used in this proceeding.  If they start to get used for something else, we can cross that bridge when we come to it.  But I don't think there seems to be a roadblock to (inaudible).

JUDGE MAYER:  And you think this proceeding -- again, you believe this proceeding encapsulates the

13

Chapter 7 itself and any adversary but not anything outside the bankruptcy?

MR. DZARA:  I would say, yes, certainly.

JUDGE MAYER:  Okay.

MR. DZARA:  This proceeding being the bankruptcy proceeding.  It's the Chapter 7.

JUDGE MAYER:  Okay.

MR. DZARA:  Not outside.

MR. LEWIS:  Okay.

MR. DZARA:  I don't think creditors are parties in any other outside matter, so (inaudible).

JUDGE MAYER:  Okay.  I'm sorry, Mr. Lewis, you can continue.

MR. LEWIS:  No, no.  I don't object.  I'm sorry. I didn't mean to try and talk over you.

JUDGE MAYER:  I just wanted to make sure that I was couching it in the right terms.

MR. LEWIS:  Yeah.  Sure.  Understood.

As far as some of the documents that were produced, you know, one of the items that we requested was her Social Security card, which they produced it with a -- which they produced with the Social Security number redacted, which is not at all helpful.

Part of the problem here is, as Your Honor -- you know, as I know you know, there's -- one of the central

14

issues here is fraud that's being perpetrated, and so we're trying to make sure that she's not operating under more than one Social Security number.  Giving us her Social Security card with a blacked out Social Security number doesn't do us any good.

We also asked for copies of her passports, which she provided without copies of the visa pages showing the stamps of countries she's gone to.  Again, as you know, we've got some international overlap here.  There's at least the possibility that we have assets being moved abroad, and, you know, countries that she's visited certainly could speak to that issue.

And then we also subpoenaed her resume from the five years before September 3, 2024, in the October 23, 2025, letter.  Her attorney says that it will be produced, and it hasn't been, you know.  So those are just, you know, as of now kind of the issues that we've spotted.

You know, in terms of the in-person examination we want to do, our position is that the Fifth Amendment has been waived at this point.  I mean, she's made statements in open court.  She's made representations through Mr. --

JUDGE MAYER:  I don't think she's made any representations directly anywhere.  To the extent that you want to impute her attorney's statements to her, I

15

think we may have a problem.  But I don't believe that she has been deposed anywhere or involved anywhere where she has made any statements whatsoever.  I think, certainly, the Debtor may have implicated some of her behavior with his testimony, but I'm not certain that she has.

MR. LEWIS:  Well, okay.  She -- but she has, I guess, through, you know, pleadings that they've made and representations in this Court, I mean, that she has through counsel, I suppose, but, you know, made representations that we think have waived -- you know, that at this point, it's our position that it's been waived.  It's also, you know, the motion that her counsel filed is, you know, more than half a year after, you know, we made requests for this stuff.

And we do think, you know, look, is it possible that Mr. Rush did a bad job, and when I say bad job, maybe, you know, an outright, you know, corrupt, you know, job of representing her?  I don't know.  Maybe. But that's between herself and Mr. Rush.

So saying -- you know, counsel has said a couple times, well, we told them that, you know, she -- we'll make her available for examination, but telling us that she's going to come and sit and then just assert the Fifth Amendment for everything, again, that -- that's not

16

helpful to us.  So it's our position that -- you know, it's our position that, again, the Fifth Amendment privilege has been waived through, you know, representations have been made on her behalf and that she should still, you know, be made to sit and, you know, undergo this examination without being able to assert the Fifth Amendment.

And, again, you know, to the extent that -- and I'll probably be making this same issue with regard to some of the other motions that are out there, but I'll put it out there each time just so it's on the record -- you know, to the extent that Ms. Kroemmelbein or anybody else wants to point the finger at Bill Rush or at Attorney Rush and say, well, this was his fault, he misled us, he did whatever he did, and that's why we didn't comply, we're fine if Your Honor wants to hold this -- you know, kind of hold this in abeyance and issue a rule to show cause on Attorney Rush and make him answer for, you know, the advice he didn't give.  You know, we're totally fine with that.  But there's certainly been, you know, some gamesmanship and a lack of transparency here, and whoever is responsible needs to be held accountable for it.

JUDGE MAYER:  Mr. Dzara, do you want to respond to the waiver argument?

17

MR. DZARA:  Yes, Your Honor.  I think there were two -- you hit that there's two aspects of the waiver with respect to the examination questions that counsel brought up and how we now have the first issue.  We just probably never made any representations directly herself, her attorney did but her signing the papers.  And we distinguished the cases they cite in their papers as (inaudible) distinguishable.  She needs to (inaudible).

Second, to impute it to her, there are -- they cite cases to get that -- I don't know what the verb is of it, though -- not impution, but to impute it to her, the cases they cite, none concerned a waiver of a Fifth Amendment privilege.  I mean, this is a Constitutional right.

The cases they cite talk about when making an argument at trial, not to this level of protection of this right.  No cases say that.  We didn't find any to be able to have counsel's statements imputed to a client as the result of a waiver of a Constitutional right.  That seems like a pretty big stretch.

So, with respect to waiver on examination topics, that's our position.  Obviously, I don't -- we don't believe she's going to object (inaudible) when we ask her her name.  I mean, we're going to assert it where necessary.

18

So there are a comedy of errors or a slippery slope or what's going to happen once we get to the deposition, I think Mr. Weir, who has a lot of experience here, will be able to counsel Ms. Kroemmelbein to minimize overly asserting the privilege (inaudible).

JUDGE MAYER: Okay. So, Mr. Lewis, with respect to the 2004 exam itself, it sounds like counsel is willing to produce Ms. Kroemmelbein, not assert a blanket Fifth Amendment right but to, obviously, respond to the questions to the extent that she can and assert the privilege where it's necessary. But it sounds like they're willing to produce her.

So I'm not sure that we have any problem with that, and it sounds like most of the documents have been produced. To the extent that, obviously, there are problems with them, I'm going to try and leave that to you and Mr. Dzara and Mr. Weir to work that out. I understand the issue with redacting some things, and I would agree with you that that's a problem, and I think that you can probably work that out.

My question is, with respect to the sanctions, I know that we don't have Mr. Rush here, so I get that. But I suppose my issue is that I'm not certain that there was ever truly an engagement between Ms. Kroemmelbein and Mr. Rush directly. I don't have that information. As

19

far as I can tell from the papers, it sounds as though the Debtor sort of provided counsel to everybody at the start of this case, which, to me, sort of smacks of conflict of interest, but -- which has not been raised.

But my problem with sanctioning her is that I don't think I have enough on the record to say that anything that Mr. Rush did was specifically on her behalf and that it was a delay tactic to keep her from being compliant with discovery.

So, while I understand where we are, this case has been a really long case and there's been a lot of, how do I say this kindly, there's been a lot of delay for a multitude of reasons, some of which have been quite negative in scope, but having said that, I'm not sure that I see that necessarily as being something that Ms. Kroemmelbein has spearheaded as much as perhaps the Debtor has, and so I'm not sure that I'm willing to sanction her for those actions at this time.

MR. LEWIS:  Well --

JUDGE MAYER:  So go ahead.  Go ahead.

MR. LEWIS:  No.  And that's why I had said if you kind of want to -- especially with regard to Ms. Kroemmelbein, because we do acknowledge she did make a production, you know, we certainly acknowledge that, if you want to hold the issue of sanctioning her in abeyance

20

and, like you said, issue a rule on Attorney Rush, make him come in, give you, you know, some more of the picture, some more of the information, we would have no problem with that.

We just think, you know, like you said, we issued this stuff in January.  Somebody, whether it was these individual parties or Attorney Rush, somebody, you know, deliberately made a mess of this and drug this out, and they should be held accountable.

JUDGE MAYER:  Agreed.  Agreed.

Okay.  All right.  So, with respect to this motion, I'm going to consider the production and the fact that they are going to produce her for the 2004 responsive to your motion to compel.

With respect to the sanctions, I'm not going to rule on that today.  I'm going to set up an order to show cause, get Mr. Rush in front of me to explain what went on so that I can be more clear about who was directing --

MR. LEWIS:  Sure.

JUDGE MAYER:  -- the actions or inactions before I make that determination.  But, for now, I'm not willing to necessarily assign them to Ms. Kroemmelbein.

So I'll do that, and I'll separately set that up. But, at least with respect to the 2004 and the request for production of documents, I'll leave that to the

21

parties to work that out and get that scheduled and work out any issues with the documents.  If there is still an issue, presumably, you will let me know, and we can address it in the future, but, for now, I'll leave that as is.

MR. LEWIS:  That makes sense, Your Honor.  That's fine.

JUDGE MAYER:  Okay.  All right.  All right.  So that's 419.  420, I think, is the -- Mr. Castor's motion, right, with regard to Ms. Miller?

MR. CASTOR:  Yes, Your Honor.  Good morning.  I'm not as --

JUDGE MAYER:  Do you want to just say ditto, or did you want to --

MR. CASTOR:  No, no.  I am -- I don't see Ms. Miller as adversarial to anybody here.  But I have a couple of preliminary things if I could -- if I could -- if the Court would indulge me.

I filed a motion with numbered paragraphs, but I got no answer with numbered paragraphs.  So my client is somewhere out here in the ether waiting to provide testimony to prove the allegations I put in the petition, but I don't know what I have to prove because it was never answered.  It just was a, I don't know, some sort of a memo without telling me which was agreed to and

22

which wasn't.  And by rule, that means all of my averments are admitted.  But I don't know that there's any dispute over what I --

JUDGE MAYER:  Yeah.

MR. CASTOR:  -- put in my motion, but I don't know that there is.  So maybe -- I guess the first thing I need to know is, are the averments that I put in my motion agreed to or not?  Whether they support the requested relief is certainly another matter.

JUDGE MAYER:  Right.

MR. CASTOR:  But I don't know what evidence needs to be put before Your Honor.

JUDGE MAYER:  Okay.  Mr. Lewis, did you want to address any issues with respect to this motion?  I mean, I think it's much like the other one except that I think an actual 2004 was taken in July, I think, perhaps?

MR. CASTOR:  July the 9th, Your Honor, yes.

JUDGE MAYER:  Right.  Okay.  Okay.

MR. CASTOR:  Without reservation of any sort.

JUDGE MAYER:  Right.  So I think the only thing that we're looking at is whether or not the sanctions should apply from, if I have these dates right, 4/22 to 7/9, essentially.

MR. CASTOR:  Correct.

JUDGE MAYER:  Right.  And I think it is a little

23

bit different from the previous motion in that I'm not quite sure that Ms. Miller ever knew that she was being represented by Mr. Rush.  Is that the allegation, Mr. Castor?

MR. CASTOR:  It is, Your Honor, and that's why I'm curious about the response that I received to my motion. It seems to ascribe evidence to Mr. Rush, and I don't see how that isn't hearsay.

And, you know, Ms. Miller, obviously, retained me and is paying me for -- to put the motion before the Court and appear here today, and I don't understand how I can defend or how I can advance my motion and defend against the hearsay allegations that are in what is not actually a numbered response answer.

JUDGE MAYER:  Okay.

MR. CASTOR:  I mean, I don't -- I mean, I did this as a favor to Mr. Ready by taking the case because I was engaged in the District Court case.  And so I don't practice in Bankruptcy Court as a routine matter, but I assume the rules are the same where you file a motion with numbered paragraphs, you've got to answer it with numbered paragraphs, and then that tells the judge what has to be proven and what's not in dispute.  And I feel that I'm not in a good position to present my petition because I don't know what it is that the other side is

24

objecting to.

JUDGE MAYER:  Okay.  Mr. Lewis?

MR. LEWIS:  Yes?

JUDGE MAYER:  Do you want to respond?

MR. LEWIS:  I would like to, Your Honor.  Like he said, I'm kind of pinch-hitting for Mr. Ready on an emergency basis, so I apologize.  I don't know if I'm familiar or if I've seen counsel's motion that he's referring to or what it says.  I'm kind of looking through the file as we're talking right now.

But my understanding, again, is of how this all kind of shook out is that these, you know, these requests were made, and there was just, you know, a lack of response pretty much across the board.

Now I know Your Honor said there was a 2004 held back in July, but I don't know that we've gotten any, you know, any documents that were requested, and, again, I don't -- to what extent, you know, Bill Rush either had his hand in this or at least made enough of a mess, you know, to confuse everybody perhaps, including these other individuals, I think that, at least, you know, again, if that's something that bears further investigation and, you know, further examination, you know, at this point, we're okay with that.

MR. CASTOR:  Your Honor, all of the documents were

25

produced immediately upon my retention, and the client sat for a deposition as soon as my schedule permitted it to do so.

I do understand that this must be an enormous pain in everybody's neck, this case, but the discrete piece that involves Ms. Miller's motion today, I think, procedurally, the Court should grant the motion because not only did she comply, in our business, going from April 22 to July 9 is not exactly a long time, especially since my schedule made it difficult to find a day.

And I did file a motion, and I did expect to have a hearing, and I didn't get an answer. But I'm still ready to have a hearing and prove everything in my motion if that's what the Court desires.

But I would like the Court to consider that as soon as Ms. Miller became aware of the subpoena hired me and acted on the record at the deposition as she did without reserving any privilege. And Mr. Ready said on the record that she had -- she was in full compliance with the subpoena. So what is it that is the opposition to our motion? I'm not entirely getting it.

MR. LEWIS: Well, the opposition is, you know, counsel here and Attorney Dzara, you know, what I keep hearing is, well, as soon as I was retained or as soon as I got involved, we did X, Y, and Z. And that's all well

26

and fine.  You know, when counsel that's here today got involved, they did what they needed to do, and no one's saying necessarily otherwise, and no one's imputing anything to counsel that's sitting here today.

However, the fact is, you know, again, there were requests here that were made in January.  So, you know, whether they were sorted out in April, whether they were sorted in July, that's, you know, that's a delay, and we're -- you know, if it was, you know, the conduct of these parties to say, well, I got counsel and I dealt, you know, I dealt with it as quickly as I felt like, isn't really a defense.

Now, again, if they're saying, well, the reason I didn't deal with it promptly is because Bill Rush misled me, confused me, deceived me, whatever he did, okay. But, you know, then again, then I think we need to dig into this and get Mr. Rush in here before we just start dismissing things and striking off sanctions because, again, somebody was responsible.

And, you know, we're entitled -- we've been prejudiced at this point because let's not forget what's at issue here.  This is a, you know, bankruptcy proceeding against somebody who, again, we contend is actively engaged in fraud, is actively engaged in the moving and hiding of assets.  And so a delay, while maybe

27

under ordinary circumstances or in ordinary litigation, a delay of three months may not be that big a deal, but when we have assets that can disappear, that's a tremendous amount of time.

So, again, I don't think counsel coming in here and saying, well, as soon as they retained me, we did what we had to do, is a sufficient response. There's still -- that doesn't explain the delay from when these requests were made until when they were retained. And I think, again, you know, what's merited here is, you know, delving further and holding whoever is responsible accountable.

JUDGE MAYER: All right.

MR. CASTOR: And last --

JUDGE MAYER: This is what I'm going to -- what I'd like to do is, Mr. Castor, is I know your client's here, and I don't want to bring her back another time. So what I'd like to do is to at least hear from her with respect to the issue of notice of any of the discovery requests from the time that they were propounded the first time until you were then retained, specifically, with respect to her relationship, if any, with Mr. Rush, so that I can kind of at least determine from her side, you know, what the case was in terms of delay.

So why don't we do that, and then I'll at least be

28

able to deal with your motion with respect to her.  To the extent that I still hold something with respect to Mr. Rush and any sanctions that would go his way, I can do that separately without her.  But, at least since she's here, let's do that.

MR. CASTOR:  Yes, Your Honor.  From a procedural standpoint, I would like to call the Court's attention to Federal Rule of Civil Procedure 8(6), which says, "An allegation is admitted if a responsive pleading is required and the allegation is not denied.  If a responsive pleading is not required, an allegation is considered denied or voided."

I have created a petition.  There was no responsive pleading, and I know the Court wants to hear from Ms. Miller, which is fine.  But, as a matter of rule, these things are admitted.  And when I advance the notion that Mr. Rush did not have authority to speak for Ms. Miller, that is admitted because the other side didn't file a responsive pleading.  But I appreciate the Court's position, and I have no difficulty in examining Ms. Miller.  Her picture did show up on here originally, but now it's not here anymore.

JUDGE MAYER:  Yes.  She's here.  Oh, she's -- as far as I -- I can see her.

MR. CASTOR:  I cannot.

29

JUDGE MAYER:  So she just needs to unmute, and then we'll have her sworn in as soon as she unmutes.

Ms. Miller, can you find the unmute key somewhere?

MS. MILLER:  Can you hear me now?

JUDGE MAYER:  Yes, we can.

MS. MILLER:  All right.  Thank you.

JUDGE MAYER:  Keith, can you swear in Ms. Miller?

THE CLERK:  Yes, mm-hmm.  Please raise your right hand.

Whereupon,

STEPHANIE MILLER

having been duly sworn, was called as a witness and was examined and testified as follows:

THE CLERK:  Please state your name and spell it for the record.

THE WITNESS:  It's Stephanie Miller, S-T-E-P-H-A-N-I-E, M-I-L-L-E-R.

JUDGE MAYER:  Okay.  Mr. Castor, I don't know if you want her to just simply verify what you've already put in your motion or how you want to do it.  I leave that to you.

MR. CASTOR:  I was going to go through the motion and have her verify it right now.

JUDGE MAYER:  That is perfectly fine.

MR. CASTOR:  Okay.

30

DIRECT EXAMINATION

BY MR. CASTOR:

Q    Ms. Miller, thank you for being available today. I'm sorry that you had to sit through all the earlier stuff, but I appreciate you being here now.

A    No problem.

Q    In previous pleadings, it was represented that a lawyer named William Rush, by letter dated March 6, 2025, to a lawyer named Mr. Ready, said that he represented you.  You're aware of that, that that letter exists, are you not?

A    No, I was not aware of that letter.

Q    Okay.  Did you ever engage Mr. Rush at any point to represent you?

A    I received a phone call, a text, and an email from Mr. Rush in December of 2024 that indicated that I, along with others, with many others, might receive a subpoena from Attorney Joel Ready concerning Mr. Redmond's bankruptcy.  I was told that he was handling the response for all those listed.

JUDGE MAYER:  Ms. Miller, can I ask, are you reading from a document?

THE WITNESS:  I put my notes together.

JUDGE MAYER:  Okay.  Is it possible that you can answer the questions without your notes?

31

THE WITNESS:  Absolutely.

JUDGE MAYER:  Okay.

MR. CASTOR:  And just so you're aware, Ms. Miller, I am looking at the motion that we filed on your behalf, and I'm starting at paragraph 2, and I'm going to the next one, to 3, and all of us are expecting shorter answers.  And if the lawyers on the -- that are --

THE WITNESS:  Okay.

MR. CASTOR:  -- on the call want longer answers, they'll ask for it, okay?

THE WITNESS:  Okay.

JUDGE MAYER:  Do you have a copy of that motion, Ms. Miller?

THE WITNESS:  Not with me, no.

JUDGE MAYER:  Okay.  I just thought it might be easier, but that's fine.

MR. CASTOR:  I did send it.  You didn't receive it?

THE WITNESS:  Yes, you did.

MR. CASTOR:  Okay.  All right.

BY MR. CASTOR:

Q    Did you engage Mr. Rush as your lawyer?

A    No.

Q    Okay.  Did you ever sign a fee agreement to have him represent you?

32

A    No.

Q    Did Mr. Rush ever have any conversation with you concerning giving a deposition?

A    Yes, in January.

Q    Tell the Judge about that.

A    Okay.  I received at my answer -- at my house a subpoena, and I had been instructed if I did to contact Mr. Rush.  I did.  He instructed me, he said, listen, you know, don't worry about it.  Just put a column over to the side that says yes or no and indicate if you have the document or not.  And he indicated that that's all I needed to do.  I didn't need to produce any documents and that there was some procedural mistake that Mr. Ready had made and he was going to have this thrown out.

I also told him I would be out of town from February 1st to 8, and he said, don't worry about it, that date's not going to happen, which the date was, I believe, February 7th.

Q    When you said that you had to put yes or no, you're referring to a list of documents that was contained on the subpoena?

A    Correct.

Q    And did you, in fact, indicate which ones you had and which ones you didn't have?

A    I did, and I emailed that back to Mr. Rush on

33

January 24th.

Q   And did you have any further conversation with Mr. Rush concerning giving a deposition?

A   No.  The next contact I had from Mr. Rush was May 1st.  He sent a text that said do you have time for a phone call, and I said you need to talk to my lawyer.

Q   And who were you referring to as your lawyer at that time?

A   I had just engaged van der Veen, your organization.

Q   My law --

A   Your office.  And I had been given the name at that time of Melanie Fay and Dan Devlin, and I gave him that information, and he indicated that he was going -- he would contact them.

MR. CASTOR:  For the benefit of the Court and the other lawyers on the call, these are subordinates of mine at the law firm.

BY MR. CASTOR:

Q   Did you have any more contact with Mr. Rush after that?

A   No, sir.

Q   Did you eventually confer with me about that subpoena?

A   Yes.  Actually, you are how I found out about it.

34

You said to me are you aware that sanctions are being --
I don't know what the word is, but against me --

Q    Imposed?

A    Thank you, sir.  Imposed against me because of
noncompliance, and I had no idea whatsoever at that point
what was going on, and you helped me out, and as soon as
I found out about it, I immediately prepared the
documents and got them over to Attorney Ready.

Q    And did, in fact, you sit for a deposition at Mr.
Ready's office?

A    I did, July 9th.

Q    Was I there?

A    You were.

Q    Did you assert any Fifth Amendment privilege or
any privilege whatsoever to any of the questions?

A    No, sir.

Q    Did you answer truthfully and fully to the best of
your ability?

A    Yes, sir.

Q    Were you present when Mr. Ready said that he had
determined that you were in compliance then with the
subpoena?

A    Yes.

MR. CASTOR:  That's all the questions we have,
Your Honor.

35

JUDGE MAYER:  Okay.  Mr. Lewis, do you have any questions?

MR. LEWIS:  I do.

CROSS-EXAMINATION

BY MR. LEWIS:

Q    Good -- yeah, we're still in the morning.  Good morning, Ms. Miller.

So I'm just trying to understand this.  So you got the subpoena or the request from the documents I think you said in January, is that right?

A    Correct.

Q    Okay.  And you followed Attorney Rush's instructions with how to respond to them, is that right?

A    Yes.

Q    And then you returned the documents to Attorney Rush and assumed that he would do whatever needed to be done with the documents, is that correct?

A    Yes.

Q    Okay.  When did you next follow up as to what was going on with the matter?

A    I thought it was over.  There was no follow-up with -- Mr. Rush did not follow up with me, nor me with him, because, based on what he had told me, I thought it was a done deal.

Q    And this was until Mr. Rush asked you about

36

getting on a phone call, and you told him he would have to speak with your attorney, is that right?

A   You cut in and -- you cut in and out.

Q   Sure.

A   I apologize.  I couldn't quite get you.

Q   That's fine.  What I'm saying is I believe your testimony was then that the next communication you had about this was when Mr. Rush contacted you in some way asking you if you had time to set up a phone call?

A   Yes.  He texted me on May 1st.

Q   He texted you on May 1st.  Okay.  Okay.  Was your understanding you were just talking about the -- you know, first learning about the subpoena through Attorney Castor or his office, how was your under -- is your understanding that that was a different document than what you got in January?

A   I'm really not sure.  He sent me a list.  The list looked like the same list I got in January.

Q   Okay.

A   But, as far as the document, actually, I never even saw it until I was in there for the deposition on July 9th.

Q   Well, I don't understand.  How can that be if you said you answered yes or no to everything back in January and gave it to Mr. Rush?  How is it possible you didn't

37

see the document until July 9th?

A   I didn't see -- I -- the document they showed me on July 9th had different dates on it than the one I received in January.

Q   Okay.

A   So I believe there were two different documents.

MR. LEWIS:  All right.  Fair enough.

I think that's all I have for this witness.

JUDGE MAYER:  All right.  Mr. Castor, do you have anything else?

MR. CASTOR:  No, Your Honor.

(Witness excused.)

JUDGE MAYER:  Okay.  All right.  Well, with respect to your motion, I'm going to grant it with regard to absolving Ms. Miller of any sanctions.  I will reserve, again, in that same order to show cause to have Mr. Rush account for his actions in this matter, but with respect to Ms. Miller at least, I'm going to waive those sanctions.

MR. LEWIS:  Your Honor, if I may, and I understand your decision is your decision, but I just want to point out it seems like this is being argued both ways.  You know, counsel's whole premise of this was, well, Bill Rush never represented her, she never retained him, and yet, at the same time, what I'm hearing is, well, she did

38

respond because she gave answers to Bill Rush and Bill Rush was going to handle it.

So I guess my confusion is was he acting on her behalf or wasn't he?  Because they seem to be making both arguments at the same time.  So that's only my --

JUDGE MAYER:  Well, my issue is, I suppose, the problem for me is, whether or not he was representing her, she did what was asked, and then he didn't provide her with any of the follow-up motions, the motion to compel, the motion for sanctions.

And for me to hold her accountable for that time period, she would have at least had to have notice that there was something wrong with what she did in January. And I'm not sure -- at least from her testimony, I don't have that in front of me.

What he did or didn't do in terms of providing her with notice -- I mean, generally speaking, the subpoena's sent right to her, right, so she has notice of that. But, after that, my presumption, and you can, you know, enlighten me if I'm wrong --

MR. LEWIS:  Sure.

JUDGE MAYER:  -- but my presumption is that any of the motions would have been sent to Mr. Rush and would have been served on him, not on her directly.  So I don't know that she had any way of knowing that this was

39

continuing to escalate until the sanction order was already entered, so that's the reason for my decision of not sanctioning her.

So I will enter that order, and, again, I'll do a separate order to show cause for Mr. Rush to get him in to talk about both and assess whether or not the sanctions should be imposed on him separately.

But, with regard to Ms. Miller, I will enter my order granting your motion, Mr. Castor.

MR. CASTOR:  Thank you, Your Honor.

JUDGE MAYER:  All right.

MR. CASTOR:  Can we be excused, Your Honor?

JUDGE MAYER:  Yes.

MR. CASTOR:  Thank you.

JUDGE MAYER:  Okay.  All right.  So I think the last matter that we have on is the objection to exemptions, which I'm glad Ms. Feldman stayed on this long.

A couple of things.  One is, Mr. Lewis, that now we're in a Chapter 7.

MR. LEWIS:  Correct.

JUDGE MAYER:  The floor is pretty much Ms. Feldman's at this point to proceed with any type of turnover actions, et cetera.  So I presume that the two of you are talking.  But, with regard to your objection

40

to exemptions, I think, certainly, we can dispose of those, I would think today, because the reason that we didn't previously is because it was going to be dealt with in a Chapter 11 plan.

Now we're in a Chapter 7.  There is no plan.  So, to the extent that there is something that is not exemptable, I think that we can resolve that.

Ms. Feldman, have you had opportunity to look at the objection?

MS. FELDMAN:  Good morning, Your Honor.  Yes, I have --

JUDGE MAYER:  Okay.

MS. FELDMAN:  -- looked at the objections.  I'm trying to get up to speed with --

JUDGE MAYER:  Okay.  Yeah.  No, I know.

MS. FELDMAN:  -- the 400-plus docket entries.

JUDGE MAYER:  Yes.  It's been a long road.

MS. FELDMAN:  Yes.  And we just --

JUDGE MAYER:  As I understand it, I think the only objections that remain, and Mr. Lewis can inform me if I'm incorrect about this, is the attempted exemption of the rental property and the -- I think there's a (d)(4) exemption that doesn't -- that purports, I guess, to exempt in full something that's worth well over the limit.

41

So, Mr. Lewis, are those the two that we're talking about?  I think it's a (d)(3) and a (d)(4) exemption.

MR. LEWIS:  That's my understanding, yes, Your Honor.

JUDGE MAYER:  Okay.  So, Lynn, do you have any -- I don't know, any comment or any issue with regard to either one of those objections?

MS. FELDMAN:  Well, of course, I haven't examined the Debtor.  I don't know that the Debtor --

JUDGE MAYER:  Right.

MS. FELDMAN:  -- is going to appear.  I only know what I've been reading in the pleadings, and with respect to the pool of creditors of 60 million plus, I would just put Mr. Lewis on notice, and we'll talk privately, that unless I can make a meaningful distribution to creditors, the objections are somewhat meaningless, and I don't know that it would be worth anyone's time to spend a lot of time on that.

Frankly, I think it's -- I'd like to say at this point that I want to talk to Mr. Lewis and Mr. Ready privately, get some better sense of the case, get some better sense of what assets they think are out there, where they think they are, and how they can facilitate the Chapter 7 trustee in finding and liquidating those

42

assets because, as I'm sure Mr. Lewis is very aware, when a Chapter 7 is filed, there is no pot within which a trustee can pay professionals.  So those are the things that I think are necessary that we discuss.

So, while I don't have any objection necessarily to his objection to the claim of exemptions, I think it's part of a larger issue.  And, I mean, frankly, as long as the Debtor has in his possession or control over the assets that he's disclosed in the bankruptcy, I don't see why this really has to be decided today, Your Honor.

JUDGE MAYER:  Mr. Lewis, do you have any objection to essentially giving you some time to talk to the Trustee and see where you both are?  I can give this a new date, and you can decide whether or not you withdraw it, whether you keep it pending, whether you amend it, whatever.  But, at this point, I do need to give her some time to get her --

MR. LEWIS:  Sure.

JUDGE MAYER:  -- get her head around the 500-and-some docket entries that make up this case right now, so --

MR. LEWIS:  Yeah.  No.

JUDGE MAYER:  Okay.

MR. LEWIS:  No objection to that, Your Honor. That's fine.

43

JUDGE MAYER:  All right.  So why don't we do this.

Do you -- Lynn, do you know when the -- has the 341 been set yet?

MS. FELDMAN:  Yeah.  Let me just double-check, please.  I'm going to say the 29th, but bear with me.

JUDGE MAYER:  Okay.

MS. FELDMAN:  Which is another issue if you don't mind, Your Honor.  The -- I'm not sure how familiar Mr. Lewis and his colleagues are with respect to the timing allowed for a meeting of creditors.  It's 10 minutes.  I have 40 cases.  They're literally every 10 minutes.

MR. LEWIS:  Oh, geez.

MS. FELDMAN:  This is calendared for 10/29/25 at 9:20 a.m.  I have another one at 9:30 a.m.

MR. LEWIS:  Okay.

MS. FELDMAN:  This might be another thing we should talk about, whether or not we're going to call the meeting and then perhaps continue it for another day when there's more time.

And I also, if you don't mind, Your Honor, I also want to remind Mr. Lewis that a 341 meeting is not a 2004 exam, and, Your Honor, if that would be something that you could possibly quickly address now, we can save a lot of time.

JUDGE MAYER:  Well, on the upside, I think the

44

Debtor has actually already been deposed under 2004.

MS. FELDMAN:  Okay.

JUDGE MAYER:  So I think we've fought that battle and have had that accomplished.

MS. FELDMAN:  Great.

JUDGE MAYER:  So I don't think that Mr. Lewis or Mr. Ready are going to use the 341 for that purposes because there was a previous 341, obviously, on the 11th, there was a 2004 exam.

So, for, I guess, Mr. Lewis's purposes, just so that you know, this 341 is really about Ms. Feldman examining the Debtor and finding out what is going on with the case.

MR. LEWIS:  Sure.

JUDGE MAYER:  So it will be a very limited discussion and examination.  Certainly, to the extent that -- again, I didn't mention this with regard to the two motions, but understand that now that the case is a Chapter 7 rather than an 11 and your adversary proceeding has been dismissed, it's on appeal, but it's been dismissed --

MR. LEWIS:  Sure.

JUDGE MAYER:  -- you have very sort of limited options with respect to discovery in 2004s in this setting.

45

MR. LEWIS:  Yeah.

JUDGE MAYER:  To the extent that there is, you know, another adversary in the works, maybe you can do that, but, right now, again, your discussion with Ms. Feldman is going to sort of drive where this case goes in terms of discovery going forward, but it's not going to happen at the 341.

MR. LEWIS:  Sure.  I get that.

JUDGE MAYER:  Okay.  All right.  All right.  So, if that's the 29th, and, hopefully, someone will show up for that --

MS. FELDMAN:  Well, that's another matter, and just I'm concerned that now --

JUDGE MAYER:  Because I don't know what's going on with the criminal proceeding.

MS. FELDMAN:  And also there, the conversion order required the Debtor to file amended schedules, operating reports, statement of intent --

JUDGE MAYER:  Yeah.

MS. FELDMAN:  -- turn over the money if there is any, and I haven't received anything yet.

JUDGE MAYER:  Yeah, I don't think anything has happened.

So why don't we do this just for docket purposes. I'm going to move this to December 2, and we'll see where

46

we are at that point in time.  Hopefully, the 341 will have happened perhaps, documents perhaps will be forthcoming, and we'll see where we are.

I know that the -- both the conversion and the adversary, as I said, are on appeal, but I did deny the stay pending appeal.  So this case can go forward, but that may be some of the at least initial delay in getting everything set up for the Chapter 7.  So -- and I will in the interim set up separately the order to show cause with regard to Mr. Rush so that that'll happen before this 12/2 date.

MR. LEWIS:  Okay.

JUDGE MAYER:  Okay?  All right.  So I'm going to punt on the objection to exemptions for today, kind of like the Buccaneers last night over and over -- okay. I'll stop.

I don't think there's anything else on for today. I think we took care of everything?

MR. LEWIS:  As far as I'm aware, yeah.

JUDGE MAYER:  Okay.  All right.  So I will leave it at that.  So thank you, everyone.

MR. VALZ:  Thank you.

MR. LEWIS:  Thank you, Your Honor.

(Whereupon, these proceedings were concluded at 12:00 p.m.)

47

CERTIFICATE


DOCKET NO.:  24-13093-PMM

CASE TITLE:  Alan Christopher Redmond

HEARING DATE:  October 21, 2025

LOCATION:  Reading, Pennsylvania


I, court-approved transcriber, certify that the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


Date:  March 16, 2026


*Cecelia Black*

Cecelia Black
Transcriber
Heritage Reporting Corporation
Suite 305
1150 Connecticut Avenue, N.W.
Washington, D.C.  20036