**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND | Case No. 24-13093-PMM<br><br>Chapter 7 |

| | |
|---|---|
| IN RE: ALAN CHRISTOPHER REDMOND, Debtor<br><br>JASON SCOTT JORDAN,<br>Plaintiff,<br><br>v.<br><br>ALAN CHRISTOPHER REDMOND,<br>Defendant. | Case No. 24-13093-PMM<br><br>Chapter 7<br><br>Adv. Proc. No. 25-0254 (PMM) |

**JASON SCOTT JORDAN'S MOTION TO HOLD SHANNON KROEMMELBEIN IN
CONTEMPT AND FOR OTHER RELIEF**

Petitioning Creditor, Jason Scott Jordan and Cornerstone Law Firm, LLC, file this motion

to hold Shannon Kroemmelbein in contempt for fraud on the Court and to impose sanctions against

her and other relief.

**GROUNDS FOR RELIEF**

Unless shown otherwise, all references to ECF docket entries are to the Main Case, i.e.,

Case No. 24-13093-PMM.

**I.      Debtor Admits That He's Living out of His Wife's Bank Accounts and Transferred
Assets to Her for No Consideration.**

Debtor is married to Shannon Kroemmelbein. At the Original Section 341 examination,

Debtor admitted he possessed a Discover credit card that was titled in his wife's name. [ECF No.

140-3, Ex. B, Tr. 12:7-8, 39:15-25]. He additionally had a business credit card for Seguro Medico,

LLC. [Id. at 39:15-25]. After closing his Mid Penn bank accounts, Debtor admitted that he

1

regularly deposited his income into accounts in the name of his wife, Shannon Kroemmelbein. [Id. at 55:24-25 to 56:1-4]. An application to retain Attorney William Rush, which is now withdrawn, initially disclosed that Rush Law Group, LLC "received the following payments *from the Debtor*, for services rendered . . ." [ECF No. 103-2 ¶ 5 (emphasis added)]. Upon further clarification, Attorney Rush explained that the payments were not from the Debtor "but rather received funds from Third Parties on behalf of the debtor, namely Shannon Kroemmelbein *and entities that Ms. Kroemmelbein controls*." [ECF No. 122 ¶ 3 (emphasis added)].

Redmond disclosed that his wife is receiving $40,000 **per month** on income from interest and dividends alone. [ECF No. 117, at 2 (Question 8b)]. This is separate from her take-home pay from her employment in the Pottstown School District. [Id. (Question 7)].

On October 1, 2024 — during trial on the order for relief — Debtor freely admits that he transferred assets to his wife to avoid his creditors:

> Q.      What assets did you transfer to Shannon Kroemmelbein upon your marriage?
>
> A.      There was a real estate company, ARC Realty, that I owned. And we received advice from our attorneys that we should put that company in tenants in the entirety. And that's what we did.
>
> Q.      Okay. And what was the reason for putting it in tenants by the entirety?
>
> [Objection overruled]
>
> A.      We put it in tenants in the entirety. We had talked to one of our attorneys. We were in a dispute with Par Funding. And we thought that was the best course of action to protect our households—to protect our—our house that we were living in at the time.

[ECF No. 140-3, Exhibit A, Tr. 103:25 to 104:1-122]. During the Section 341 hearing, Redmond admitted that Ms. Kroemmelbein neither paid any consideration for these transfers nor executed any prenuptial agreements. [ECF No. 140-3, Exhibit B, Tr. 56:5-11]. In other words, he gave away

valuable assets to avoid creditors and for no consideration. Kroemmelbein is the sole titleholder to a $1,520,000.00 home in an upscale community, 2 High Road, Borough of Wyomissing, and Seguro Medico, LLC is paying the mortgage. The original lender was NP, Inc., which then subsequently assigned to another. [Exhibit D, Transaction ID 2022035110, Berks County Recorder of Deeds Office (Aug. 31, 2022)].

The Court should consider the following relevant timeline:

1/7/25: Petitioning Creditors moved the Court [ECF No. 183] to compel Kroemmelbein and others to submit to a document production and Rule 2004 Examination.

1/30/25: Kroemmelbein filed objections [ECF No. 241].

2/24/25: The Court entered an Order [ECF No. 289], directing Kroemmelbein to produce such documents and submit to a Rule 2004 examination.

3/31/25: Kroemmelbein filed a motion to quash [ECF No. 321].

4/2/25: The Court entered an Order [ECF No. 330], denying Kroemmelbein's motion.

4/14/25: Petitioning Creditors moved the Court [ECF No. 341] to compel compliance with its Order at ECF No. 289.

4/19/25: Kroemmelbein's counsel filed a motion withdraw [ECF No. 348].

4/22/25: The Court entered an Order [ECF No. 352], imposing $500.00 per day for each day that Kroemmelbein and others do not produce subpoenaed documents on and after May 2, 2025 and if a Rule 2004 Examination is not held on and after May 6, 2025.

8/12/25: Kroemmelbein, through Attorney Walter Weir, filed a Motion to Vacate Sanction and Discovery Orders [ECF No. 419]. Kroemmelbein averred to the Court that Attorney William R. A. Rush had "misadvise[ed] her about this matter" and had a conflict of interest, and "gave erroneous and inappropriate advice to Ms.

3

Kroemmelbein and likely committed malpractice in not asserting her Fifth Amendment rights" in response to the Rule 2004 discovery. [Id. ¶¶ 22, 33].

10/21/25:    The Court entered an order, granting Kroemmelbein's motion and vacating its orders at ECF No. 289 and 352. [ECF No. 480].

**II.    With the Knowledge and Assistance of Counsel, Shannon Kroemmelbein Lies and Conceals Documents in Response to the Court-Ordered Rule 2004 Subpoena.**

In adversary proceeding No. 25-00254, Attorney William R. A. Rush participated in a deposition in this proceeding that occurred on March 9 and 16, 2026. Attorney Rush additionally produced 533 pages of documents in connection with a Rule 45 subpoena for documents for the deposition. Despite having notice sent to him, Mr. Redmond did not appear for the deposition.

In the instant case, Kroemmelbein had retained Walter Weir, Esquire, to object to the Rule 2004 examination on her behalf under the Fifth Amendment privilege against self-incrimination. On October 3, 2025, and through Attorney Weir, Kroemmelbein certified in response to a Rule 2004 subpoena in the Main Case the following:

> 20.    All monthly statements for all your accounts which you cause, or permit, to be used by Alan Chirstopher Redmond and beginning five years before September 3, 2024 to the present.
>
> **RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**
>
> \* \* \*
>
> 32.    All federal income tax returns, with all schedules, filed for all businesses entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following:
>
> \* \* \*
>
> b.    ABN Network, LLC.
>
> \* \* \*
>
> x.    Seguro Medico, LLC.
>
> \* \* \*
>
> **RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have**

**documents responsive to this request within her possession, custody, or control.**

\* \* \*

36.     All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

\* \* \*

41.     All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial authority, or control, or which you filed with a government agency on behalf of another person.

**RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.**

[Ex B. (emphasis added)].

For Kroemmelbein to conceal any information regarding ABN Network, LLC, in particular, was significant and material because it was the sole source of revenue for Seguro Medico, LLC, holding contract receivables from insurance carriers for the work performed by Seguro Medico, and therefore very integral to Redmond's business.

The documents from Attorney Rush show that Kroemmelbein lied and her counsel knew that at all times. By e-mail dated September 23, 2025, which she sent to Rush and Weir, Kroemmelbein went through each enumerated request in the same Rule 2004 subpoena. For Item No. 20, she wrote, "I do not have access to ***all*** these accounts. Many have been closed, ***many have been opened due to the FBI involvement***." [Ex. C, at Bates No. 75-76 (emphasis added)]. For Item No. 32, she noted that she was a "partner" for ABN Network, LLC and 96% owner of Seguro Medico, LLC, and she wrote, "**I will contact the accountant to request records**." [Id. at 77

(emphasis added)]. For Item No. 36, she wrote, "I would need to dig up those documents as I do not have records. I have no contracts in my possession." [Id. at Bates No. 78]. For Item No 41, she wrote, "To be discussed. I have no contracts in my possession." [Ex. C, at Bates No. 78-79].

Redmond responded to Kroemmelbein's e-mail that same day:

These answers would not allign (sic) with discovery and testimony that have been presented by attorney rush, [Bill] mcswain, [David] heim to fbi [Federal Bureau of Investigations], George [Bochetto] to fbi, mcswain to fbi, you to attorneys et etc.

Mr. Weir/Shannon I would recommend you consult with myself, rush, George Bochetto or David hiem—former personal counsel and former counsel for seguro [Medico].

[Ex. C, at Bates No. 74 (alteration added)]. Kroemmelbein responded an hour later, "I would fully agree, and trust the previous council (sic)." [Id.].

In his deposition, Bill Rush produced a bounced check from ABN Network, LLC, signed by Kroemmelbein, demonstrating that she's a signatory to the account. [Ex. A, Rush Dep. (vol. 2) Tr. 49:11-25]. From this check, he testified that her responses to the Rule 2004 subpoena were false because she "has the control or flatout ownership of all the entities and all of the properties at which such documents would be kept." [Ex. A, Rush Dep. (vol. 2) Tr. 37:1-24]. Rush testified that he personally met with Kroemmelbein and Redmond at their home in 2025 and then and there reviewed income tax returns for Seguro Medico, LLC, that was in the house. [Id. at 46:22-25 to 1-13]. Kroemmelbein's responses to the contrary were therefore false. [Id.].

Rush also produced e-mails which demonstrate that Kroemmelbein regularly accesses business bank accounts. On March 17, 2025, Kroemmelbein e-mailed Rush, Bochetto, and Heim, and informed them, "Bill you should take the lead *as I am balancing cashflow* and you have been paid the most this year." [Ex. C, at Bates No. 69 (emphasis added)].

The e-mails produced by Rush also show that Kroemmelbein was actively involved in this

case since the Involuntary Petition was filed in September of 2024, and the same reflect her open contempt for this Court and its process. On February 1, 2025, after learning that the Court had authorized Rule 2004 subpoenas for registered agent and other business records, Kroemmelbein sent an e-mail to Attorneys Heim, Bochetto, Rush, Norman Valz, and Michael McCarrie in Media, Delaware County. She said, "I have been consulting with my husband and What I want to have us do is: Sue each registered agent. Sue little Mr. Reedy (sic). And of course sue the court, in particular Ms. Mayer, who Alan and now I, am not a fan of. She's a Temple grad I see (94th). Lehigh doctorate over here (Top 50)." [Ex. C, at Bates No. 60].

III.    **Kroemmelbein is Knowingly Allowing Redmond to "Use" Her Name as the Record Owner while He Controls the Asset.**

On February 3, 2025, Kroemmelbein submitted an e-mail to Attorneys Heim, Rush, and McCarrie. "I am writing to formally authorize my spouse, Alan Redmond, to communicate with you and your firms on my behalf regarding any legal matters. I trust Alan's judgment entirely, ***and there are no limitations to this authorization to act in my stead***." [Ex. C, at Bates No. 62 (emphasis added)]. As she artfully clarified to Attorney Rush on March 10, 2025, "I am not making any company wide operational decisions nor have I had those decisions in years past." [Id. at 65]. Precisely. Because it's really *Redmond's companies* and it's *Redmond* who's working for free while living out of "her" bank accounts that he controls.

IV.    **Attorney Rush Did Advise Kroemmelbein on the Fifth Amendment Implications of the Rule 2004 Discovery.**

Throughout this proceeding, Kroemmelbein had wanted to testify. On September 11, 2024, Kroemmelbein told Rush, "I believe it may be getting to the point where I need to intervene in some fashion here on behalf of the company, Arthur [Walsh, Jr.] and Seguro [Medico]." [Ex. C, at Bates No. 53]. On December 18, 2024, Rush conferred with Attorney David Heim, asking him to raise motions to quash the Rule 2004 discovery on behalf of the other non-parties. Rush told

Heim, "I think a lot of 5th Amendment issues are here." [Id. at 56]. On January 28, 2025, Kroemmelbein e-mailed Rush, "Please send me the Objections [to the subpoena] for review, all of them please." [Id. at 59]. Rush complied with her request. [Id.]. On April 28, 2025, Kroemmelbein texted Attorney Bill Rush, "When do I need to show for deposition[?]" [Id. at 47].

Before Attorney Weir's involvement, Kroemmelbein had no concern about invoking the Fifth Amendment because she was confident she did nothing wrong which would implicate her in the criminal action[1] in the U.S. District Court: "I am aware of the indictment counts being false. I have read Malcom [Smith's] letter. Either Malcolm fucked up or the FBI have fucked up, either way, we did not, and that will be up to this team to resolve quickly." [Ex. C, at Bates No. 61]. In his deposition, Attorney Rush explained that, before Weir was retained, it was Rush's plan to have Kroemmelbein appear for the examination and permit to answer any biographical-related questions and her identification, and he would otherwise have raised Fifth Amendment objections on a question-by-question basis. [Ex. A, Rush Dep. (vol. 2) 159:16-25 to 160:1-3)]. This, however, did not permit Kroemmelbein to (1) withhold documents relative to bank accounts titled in her name and (2) withhold her testimony to matters she admitted in open court. [See ECF No. 437].

## STANDARD OF REVIEW

"Rule 9014 governs a motion for a contempt order made by the United States trustee or a party in interest." Fed. R. Bankr. P. 9020. Contempt is therefore a contested matter under Fed. R. Bankr. P. 9014. The respondent must serve a response at least one day before the noticed hearing date. Fed. R. Bankr. P. 9006(d). "To establish that a party is liable for civil contempt, three elements must be proven: (1) that a valid order of the court existed; (2) that the defendant had knowledge of the order; and (3) that the defendant disobeyed the order." Berne Corp. v.

---

[1] Crim. A. No. 5:24-CR-00376.

Government of the Virgin Islands, 570 F.3d 130, 139 (3d Cir 2009). In fashioning a remedy for civil contempt, the object is "to coerce or to compensate" rather than "punish," the latter being criminal contempt. Id. (citation omitted).

### ARGUMENT

**I.    After Holding a Hearing, the Court Should Hold Kroemmelbein in Contempt and Impose Sanctions.**

Shannon Kroemmelbein made false statements, and aided and abetted Alan Christopher Redmond in concealing material information, in her responses to the Rule 2004 subpoena. She made false responses under Attorney Weir's representation. This occurred while the Court's Orders at ECF Nos. 289 and 352 were still in effect. Failure to obey a "subpoena or an order related to it," Fed. R. Civ. P. 45(g), is a proper ground for contempt. Fed. R. Bankr. P. 2004(c) (incorporating Fed. R. Bankr. P. 9016 (incorporating Fed. R. Civ. P. 45(g))). Additionally, under 11 U.S.C. § 105, a bankruptcy court is empowered "with statutory contempt powers, in addition to whatever inherent contempt powers the court may have." Simon v. FIA Card Servs., N.A., 732 F.3d 259, 279 (3d Cir. 2013) (quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000)). It is well-settled that "an order by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *In re* Miller, 2007 Bankr. LEXIS 4144, at *9 (Bankr. E.D. Pa. Dec. 11, 2007) (quoting United States v. Mine Workers, 330 U.S. 258, 293 (1947)).

"[T]he law affords courts considerable discretion in fashioning an appropriate sanction for contempt." Miller, 2007 Bankr. LEXIS 4144, at *12 (citing Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994)). Here, Jordan asks the Court to afford the parties an opportunity to be heard and to present evidence. Following such hearing, we ask the Court to find Kroemmelbein in contempt of court and impose the following;

9

(1)     Vacate the Order at ECF No. 480, thereby reinstating the Court's Orders at ECF Nos. 289 and 352 retroactively.

(2)     Order Shannon Kroemmelbein to correct her response to Jordan's Rule 2004 subpoena and to provide all federal tax returns, corporate formation documents, and bank records in connection with ABN Network, LLC and all other businesses or entities in which she has an ownership interest or control, and to appear for a Rule 2004 examination, holding that she waived all Fifth Amendment objections to the extent of her open-court admissions that our Rule 2004 subpoena sought information about "companies in which Ms. Kroemmelbein has interests" and "is the passive owner" [ECF No. 321 ¶¶ 14, 24], and that she "is affiliated with Seguro Medico, LLC" [ECF No. 241 ¶ 3]. As we had briefed the Court, "[T]he Supreme Court held that once a witness makes an incriminating admission he or she cannot stop testifying by claiming the Fifth Amendment privilege and may not refuse to disclose details unless such further disclosure would pose a real danger of further incrimination." *In re* Oxford Mushroom Prods., Inc., 46 B.R. 77, 79 (E.D. Pa. 1985) (discussing Rogers v. United States, 340 U.S. 367 (1951)).

(3)     Sanction Shannon Kroemmelbein under the Order of ECF No. 352, calculated as $500.00 per day from May 1, 2025 through the date that Kroemmelbein provides full and complete answers, together with reasonable attorneys' fees in favor of Jason Scott Jordan for having to prosecute this Motion and the Rule 2004 motions, and reduce such amount to final judgment and direct the Clerk to index with the District Court. Fed. R. Bankr. P. 9021; Fed. R. Bankr. P. 5003(c)(2).

II.     **Other Relief: Stay of Pretrial Deadlines in Adversary Proceeding No. 25-00254.**

At Adv. Proc. No. 25-00254, Jordan requests that the Court stay the discovery deadline and the unexpired balance of deadlines in the Pretrial Order at ECF No. 5, pending resolution of the contempt proceedings and additional discovery and subpoenas being propounded. "Courts have inherent power to manage their dockets and stay proceedings." Beacon Med., Ltd. v. Bartlett,

2019 U.S. Dist. LEXIS 218336, at *2 (E.D. Pa. Dec. 17, 2019) (quoting Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "In making its determination, the court may consider (1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship." FTC v. Nudge, LLC, 2021 U.S. Dist. LEXIS 15044, at *5 (D. Utah Jan. 26, 2021) (quotation omitted).

Here, given the extensive fraudulent concealment by Redmond and his wife of relevant records showing the whereabouts of potential assets of the bankruptcy estate, Jordan has been severely prejudiced by such a repeated perjury and fraud on the Court. A stay will help us gain additional, necessary information and determine the best way to move forward, whether that may result in assets being reclaimed for the bankruptcy estate. This evidence is also directly relevant to whether Redmond is not eligible for a discharge under 11 U.S.C. § 727(a), inclusive of whether Redmond "concealed" property before or after the petition date, id. § 727(a)(2), or refused to produce records to the Chapter 7 trustee, id. § 727(a)(4)(D), or refused to obey the Rule 2004 order, id. § 727(a)(6), or did any of those things "concerning an insider," his wife, id. § 727(a)(7). A stay therefore does avoid confusing or inconsistent results.

Redmond is not prejudiced by the stay. He is self-representing in the adversary proceeding. He did not propound any discovery or even show up to attend Bill Rush's deposition. The deadline for discovery is today, May 5, 2025—and so Redmond cannot say that he relied to his detriment on the running of this deadline.

11

**CONCLUSION**

**WHEREFORE**, based on the foregoing, Jason Scott Jordan respectfully requests that the Court order Shannon Kroemmelbein to show cause why she should not be held in contempt and sanctioned and, after affording the parties and Shannon Kroemmelbein an opportunity to be heard, that the Court enter an order granting this Motion and affording the following relief:

(A)     Find and hold Shannon Kroemmelbein in civil contempt of this Court for having violated the Court's Orders at ECF Nos. 289 and 352 and providing materially false statements and aiding and abetting Alan Christopher Redmond in concealing information.

(B)     Vacate the Order at ECF No. 480, thereby reinstating the Court's Orders at ECF Nos. 289 and 352 retroactively.

(C)     Order Shannon Kroemmelbein to correct her response to Jordan's Rule 2004 subpoena and to provide all federal tax returns, corporate formation documents, and bank records in connection with ABN Network, LLC and all other businesses or entities in which she has an ownership interest or control, and to appear for a Rule 2004 examination, holding that she waived all Fifth Amendment objections to the extent of her open-court admissions that our Rule 2004 subpoena sought information about "companies in which Ms. Kroemmelbein has interests" and "is the passive owner" [ECF No. 321 ¶¶ 14, 24], and that she "is affiliated with Seguro Medico, LLC" [ECF No. 241 ¶ 3].

(D)     Direct Jason Scott Jordan's counsel to submit an attorneys' fee affidavit.

(E)     Impose sanctions against Shannon Kroemmelbein under the Order of ECF No. 352, calculated as $500.00 per day from May 1, 2025 through the date that Kroemmelbein provides full and complete answers, together with reasonable attorneys' fees in favor of Jason Scott Jordan for having to prosecute this Motion and the Rule 2004 motions, and reduce such amount to final

12

judgment and direct the Clerk to index with the District Court.

(F)     Stay all deadlines in the Court's Pretrial Oder at ECF No. 5, in Adv. Proc. No. 25-00254,

inclusive of the deadline for fact discovery, which discovery continues.

(G)     Award such other relief as the Court deems necessary, just, or appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: May 5, 2026          By:     /s/ Joel A. Ready
                                    Joel A. Ready, Esquire
                                    PA Attorney I.D. # 321966
                                    8500 Allentown Pike, Suite 3
                                    Blandon, PA 19510
                                    (610) 926-7875