# Exhibit A

# Exhibit A

Page 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:                          ) CASE NO.:
ALAN CHRISTOPHER REDMOND,       ) 24-13093-PMM
                                )
                    Debtor      ) CHAPTER 11
                                )
                                )
                                )
JASON SCOTT JORDAN,             )
                                )
                    Plaintiff   )
                                )
        vs.                     )
                                )
ALAN CHRISTOPHER REDMOND,       )
                                )
                    Defendant   )


                      --oOo--


                      VOLUME II



    DEPONENT:       William R.A. Rush, Esquire

    TAKEN BY:       Plaintiff

    DATE/TIME:      Monday, March 16, 2026
                    10:10 a.m.

    LOCATION:       Cornerstone Law Firm, LLC
                    8500 Allentown Pike, Suite 3
                    Blandon, Pennsylvania

    REPORTER:       Joyce A. Wise, RMR
                    Notary Public


                Magna Legal Services
                    866-624-6221
                   www.MagnaLS.com



Page 2

APPEARANCES:
CORNERSTONE LAW FIRM, LLC
BY:  JOEL A. READY, ESQUIRE
8500 Allentown Pike
Suite 3
Blandon, PA  19510
(610) 926-7875
joel@cornerstonelaw.us
Counsel for Plaintiff

Page 25

Page 3

INDEX TO DEPONENT
EXAMINATION                    PAGE

By Mr. Ready                4

INDEX OF EXHIBITS
RUSH                        PAGE
3: Copy of bounced check          8
4: Contract Between the Board of     81
   School Directors and the
   Temporary Professional Employee
5: Mid Penn Bank Deposit Agreement,  82
   11/8/21
6: Mid Penn Bank Deposit Agreement,  85
   5/9/23
7: Digital Principles Corporation    86
   Stockholder/Officer Vote for
   Resolution Allowing for Opening
   of Bank Accounts in Pennsylvania
13: Weir LLP letter in response to    34
   Rule 2004 subpoena, 10/3/25
14: E-mail chain RE: Documents        39
   Request, 9/23/25
15: E-mail RE: Request, 1/28/25       44
16: E-mail chain RE: Bankruptcy:      57
   Not Being Defended, 3/18/25
17: Rush Law Group letter, 7/29/23    120
18: Florida litigation paperwork      29
19: ABN Network, LLC Resolution to    117
   Transfer Membership Interest/
   Memorandum of Understanding with
   HIC Group

Page 4

WILLIAM R.A. RUSH, ESQUIRE, called upon to give testimony, being duly sworn or affirmed by me, testified as follows:
EXAMINATION
BY MR. READY:

Q.    Mr. Rush, we are here for a continuation of the deposition that we started last week.

Are there any answers you gave last week that you, for any reason, believe you need to update or correct?

A.    Yes.  As a matter of fact, the avoidance -- you had asked me previously what the reasoning would be behind Smith, Miller, Kroemmelbein, Walsh and Redmond so adamantly, opposing, you know, submitting to the 2004 examinations, and I truthfully didn't know it was one of those things, in the midst of everything that was being filed, that I hadn't given any consideration to it.

But upon thinking about it, it made a fair amount of sense to me.  What I believe the necessity for the delay was, in hindsight, is that Mr. Smith, being asked to prepare records -- and certain text records had



2 (Pages 2 to 4)

Page 2

APPEARANCES:

CORNERSTONE LAW FIRM, LLC
BY:  JOEL A. READY, ESQUIRE
8500 Allentown Pike
Suite 3
Blandon, PA  19510
(610) 926-7875
joel@cornerstonelaw.us
Counsel for Plaintiff

Page 25

Page 3

INDEX TO DEPONENT
EXAMINATION                    PAGE

By Mr. Ready                4

INDEX OF EXHIBITS
RUSH                          PAGE
3: Copy of bounced check            8
4: Contract Between the Board of     81
   School Directors and the
   Temporary Professional Employee
5: Mid Penn Bank Deposit Agreement,  82
   11/8/21
6: Mid Penn Bank Deposit Agreement,  85
   5/9/23
7: Digital Principles Corporation    86
   Stockholder/Officer Vote for
   Resolution Allowing for Opening
   of Bank Accounts in Pennsylvania
13: Weir LLP letter in response to   34
   Rule 2004 subpoena, 10/3/25
14: E-mail chain RE: Documents       39
   Request, 9/23/25
15: E-mail RE: Request, 1/28/25      44
16: E-mail chain RE: Bankruptcy:     57
   Not Being Defended, 3/18/25
17: Rush Law Group letter, 7/29/23   120
18: Florida litigation paperwork     29
19: ABN Network, LLC Resolution to   117
   Transfer Membership Interest/
   Memorandum of Understanding with
   HIC Group

Page 4

WILLIAM R.A. RUSH, ESQUIRE, called upon to give testimony, being duly sworn or affirmed by me, testified as follows:

EXAMINATION

BY MR. READY:

Q.    Mr. Rush, we are here for a continuation of the deposition that we started last week.

Are there any answers you gave last week that you, for any reason, believe you need to update or correct?

A.    Yes.  As a matter of fact, the avoidance -- you had asked me previously what the reasoning would be behind Smith, Miller, Kroemmelbein, Walsh and Redmond so adamantly, opposing, you know, submitting to the 2004 examinations, and I truthfully didn't know it was one of those things, in the midst of everything that was being filed, that I hadn't given any consideration to it.

But upon thinking about it, it made a fair amount of sense to me.  What I believe the necessity for the delay was, in hindsight, is that Mr. Smith, being asked to prepare records -- and certain text records had



Page 33

Q.    When you refer to HIC, could that be HIC Group?

A.    It could be -- I think it is HIC Group, yes.

Q.    Do you know when it was transferred into Shannon's name alone?

A.    It would have been -- there was -- there was an -- I think I sent you the second documents or e-mails -- maybe that's a better word.

And I will -- I'm making reference to those now.

It would have been transferred on or about September 2023.  And there was an e-mail attachment -- or there was an attachment to that e-mail that discusses the transfer of the company.

Ms. Kroemmelbein is nowhere on the e-mails, I should note.  It's between Seni Sok and Alan Redmond.  On September 21, this e-mail chain gets forwarded, it appears, for the first time to Norman Valz, V-A-L-Z.

And then eventually I am included on September 24th.  There was a rudimentary agreement attached to the e-mail, which listed

Page 34

Norman Valz, the signatory for the company, unexecuted.

I did ask Norm about it.  I don't know that he prepared it, but I suspect -- he said he did eventually sign it.  He doesn't believe he signed in -- the document in the form it was in, because it listed him as the secretary as opposed to legal counsel.

But ultimately that got changed to reflect that he was legal counsel and the transfer was entirely from all of the then owners of ABN to Shannon individually.

So to the best of my knowledge, other than -- I mean, legally speaking -- other than being her husband, I can't think of a reason why he would be the signatory on that document.

Q.    All right.  Mr. Rush, let me go a slightly different direction at this point.

I want to show you what we will mark as Rush 13.

(Rush Deposition Exhibit Number 13 marked.)

BY MR. READY:

Q.    Have you had an opportunity to review Rush 13?

Page 35

A.    Yes.  It's the first time I've seen it, but yes.

Q.    I'm gonna direct your attention -- first of all, I'll represent to you this is in response to a Rule 2004 subpoena served on Kroemmelbein in the main case.

It was returned to her counsel from Walter Weir.  I want to point you to item 41.

A.    Okay.

Q.    We asked for all organizational documents, bylaws and operating agreements for any business, entity or non-profit entity in which you, being Shannon Kroemmelbein, have an owner interest, membership interest, managerial authority or control or which you filed with the government agency on behalf of another person.

The answer was, after a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody or control.

First of all, did I read that correctly?

A.    Yes, you read it exactly.

Q.    As in our prior discussion, we had

Page 36

discussed the Upjohn requirements and that confidential information can be revealed if it shows crime, fraud or perjury or fraud on the court.

So with that in mind, let me just ask you if this answer is accurate?

A.    Well, it can't be accurate, because, of course, two separate things could be true.

These documents, whether formed by -- you know, an entity formed by me or -- and I recall that at Mr. Redman's request -- I can't remember if we covered this last time -- for example, there's an NBOA, LLC, that was formed in Pennsylvania at Mr. Redman's, you know, insistence, suggestion.

And to my knowledge, Mr. Setley S-E-T-L-E-Y, and Attorney Valz and myself, whenever we prepared, you know, incorporating a document of any kind, of course we retained copies for our own records of having, you know, opened an entity or formed an entity, filed for opening an entity and we would have all given the same documents to Mr. Redmond and Ms. Kroemmelbein, whoever.

MAGNA
LEGAL SERVICES

Page 37

The reason I can't -- the reason I must say that that's incorrect is because it is alleged that an entity owned by Ms. Kroemmelbein occupies 8 Morgan Drive; that an entity over which she is at least a partial owner owns the property at 8 Morgan Drive, where Seguros and to my knowledge every other business entity we've referenced apart from NBOA, Bene Market does all their business.

And assuming arguendo, that ABN Network -- or whatever variation of that name it goes by, would have its offices at 2 High Road, as indicated by the bounced checks provided, every -- or any of the other properties -- what my issue with this answer is that Ms. Kroemmelbein has the control or flatout ownership of all the entities and all of the properties at which such documents would be kept.

And so the only way -- the only way I could see this being accurate is if the organizational documents were lost or they never created bylaws and operating agreements for any of the business entities that this is in response to.

I would ask, just to clarify, I'm

Page 38

going -- by my own memory here, but you said this is in response to a subpoena relative to the bankruptcy action, correct?

Q.    This is a 2004 request that subsequently they asked to have you sanctioned for not responding to.  And this is Mr. Weir's subsequent response, just for your clarity.

A.    Gotcha.  So this is the same Subpoena that would have been issued on the frist on December 2024?

Q.    Correct.

A.    And then re-issued by you, I think, early February or late early January of 2025?

Q.    Correct.

A.    Nothing has changed since then in terms of your questions and requests?

Q.    Correct.

A.    Okay.  If I look to number 31, are those the -- are those the entities to which you're seeking 31 and 32?

Those are the entities that you would be referring to in your request at Number 41?

Q.    Well, number 41 is maybe a little

Page 39

bit broader, in that it asks for any documents for any organization whether owned by or controlled by Ms. Kroemmelbein?

A.    Unless they were destroyed, they would -- I could not personally think of a reason why they would not be in her possession at one of the properties she purports to own or one of the businesses purports to own.

And I can't fathom why they wouldn't be located at the business locations that she controlled her own and under which they operate.  So, no, that makes no sense to me.

(Rush Deposition Exhibit Number 14 marked.)

BY MR. READY:

Q.    And do you recognize Rush 14?

A.    Yes.  This is an e-mail from September 23rd, 2025 after I was no longer Ms. Kroemmelbein's counsel, but which was cc'd to me and several other attorneys regarding what appear to be the documents requested in the October 3rd letter marked Rush 13.

Q.    And just out of an abundance of caution here to make sure the record is clear, you provided Rush 14 to us in response to our

Page 40

subpoena, is that correct?

A.    That is correct.  It's a responsive document to your subpoena and it is not privileged as it was presented to me as a third party at that point.

Q.    And in addition, does this document establish the crime of fraud or attempts of perjury or fraud on the court?

A.    It certainly does and in a couple ways.

One is that it contradicts a filed motion on behalf -- that Ms. Kroemmelbein's attorney filed.  It contradicts some of the facts stated forth in that motion.

My understanding from the judge's statements on Tuesday, the 10th of March of this year, would be that this would also contradict the -- whatever testimony was offered by Ms. Kroemmelbein during that time.

It doesn't do anything to contradict Ms. Miller's, but, yes, this would appear to contradict what I understand to be both written representations and what I believe to be testimony.

Q.    I want to read to you -- first of

MAGNA
LEGAL SERVICES

Page 2

APPEARANCES:
CORNERSTONE LAW FIRM, LLC
BY:  JOEL A. READY, ESQUIRE
8500 Allentown Pike
Suite 3
Blandon, PA  19510
(610) 926-7875
joel@cornerstonelaw.us
Counsel for Plaintiff

Page 25

Page 3

INDEX TO DEPONENT
EXAMINATION                PAGE

By Mr. Ready              4

INDEX OF EXHIBITS
RUSH                      PAGE
3: Copy of bounced check            8
4: Contract Between the Board of      81
   School Directors and the
   Temporary Professional Employee
5: Mid Penn Bank Deposit Agreement,   82
   11/8/21

6: Mid Penn Bank Deposit Agreement,   85
   5/9/23
7: Digital Principles Corporation     86
   Stockholder/Officer Vote for
   Resolution Allowing for Opening
   of Bank Accounts in Pennsylvania

13: Weir LLP letter in response to    34
    Rule 2004 subpoena, 10/3/25
14: E-mail chain RE: Documents        39
    Request, 9/23/25

15: E-mail RE: Request, 1/28/25       44

16: E-mail chain RE: Bankruptcy:      57
    Not Being Defended, 3/18/25
17: Rush Law Group letter, 7/29/23    120
18: Florida litigation paperwork      29
19: ABN Network, LLC Resolution to    117
    Transfer Membership Interest/
    Memorandum of Understanding with
    HIC Group

Page 4

WILLIAM R.A. RUSH, ESQUIRE, called upon to give testimony, being duly sworn or affirmed by me, testified as follows:
EXAMINATION
BY MR. READY:

Q.    Mr. Rush, we are here for a continuation of the deposition that we started last week.

Are there any answers you gave last week that you, for any reason, believe you need to update or correct?

A.    Yes.  As a matter of fact, the avoidance -- you had asked me previously what the reasoning would be behind Smith, Miller, Kroemmelbein, Walsh and Redmond so adamantly, opposing, you know, submitting to the 2004 examinations, and I truthfully didn't know it was one of those things, in the midst of everything that was being filed, that I hadn't given any consideration to it.

But upon thinking about it, it made a fair amount of sense to me.  What I believe the necessity for the delay was, in hindsight, is that Mr. Smith, being asked to prepare records -- and certain text records had



Page 37

The reason I can't -- the reason I must say that that's incorrect is because it is alleged that an entity owned by Ms. Kroemmelbein occupies 8 Morgan Drive; that an entity over which she is at least a partial owner owns the property at 8 Morgan Drive, where Seguros and to my knowledge every other business entity we've referenced apart from NBOA, Bene Market does all their business.

And assuming arguendo, that ABN Network -- or whatever variation of that name it goes by, would have its offices at 2 High Road, as indicated by the bounced checks provided, every -- or any of the other properties -- what my issue with this answer is that Ms. Kroemmelbein has the control or flatout ownership of all the entities and all of the properties at which such documents would be kept.

And so the only way -- the only way I could see this being accurate is if the organizational documents were lost or they never created bylaws and operating agreements for any of the business entities that this is in response to.

I would ask, just to clarify, I'm

Page 38

going -- by my own memory here, but you said this is in response to a subpoena relative to the bankruptcy action, correct?

Q. This is a 2004 request that subsequently they asked to have you sanctioned for not responding to. And this is Mr. Weir's subsequent response, just for your clarity.

A. Gotcha. So this is the same Subpoena that would have been issued on the frist on December 2024?

Q. Correct.

A. And then re-issued by you, I think, early February or late early January of 2025?

Q. Correct.

A. Nothing has changed since then in terms of your questions and requests?

Q. Correct.

A. Okay. If I look to number 31, are those the -- are those the entities to which you're seeking 31 and 32?

Those are the entities that you would be referring to in your request at Number 41?

Q. Well, number 41 is maybe a little

Page 39

bit broader, in that it asks for any documents for any organization whether owned by or controlled by Ms. Kroemmelbein?

A. Unless they were destroyed, they would -- I could not personally think of a reason why they would not be in her possession at one of the properties she purports to own or one of the businesses purports to own.

And I can't fathom why they wouldn't be located at the business locations that she controlled her own and under which they operate. So, no, that makes no sense to me.

(Rush Deposition Exhibit Number 14 marked.)

BY MR. READY:

Q. And do you recognize Rush 14?

A. Yes. This is an e-mail from September 23rd, 2025 after I was no longer Ms. Kroemmelbein's counsel, but which was cc'd to me and several other attorneys regarding what appear to be the documents requested in the October 3rd letter marked Rush 13.

Q. And just out of an abundance of caution here to make sure the record is clear, you provided Rush 14 to us in response to our

Page 40

subpoena, is that correct?

A. That is correct. It's a responsive document to your subpoena and it is not privileged as it was presented to me as a third party at that point.

Q. And in addition, does this document establish the crime of fraud or attempts of perjury or fraud on the court?

A. It certainly does and in a couple ways.

One is that it contradicts a filed motion on behalf -- that Ms. Kroemmelbein's attorney filed. It contradicts some of the facts stated forth in that motion.

My understanding from the judge's statements on Tuesday, the 10th of March of this year, would be that this would also contradict the -- whatever testimony was offered by Ms. Kroemmelbein during that time.

It doesn't do anything to contradict Ms. Miller's, but, yes, this would appear to contradict what I understand to be both written representations and what I believe to be testimony.

Q. I want to read to you -- first of

MAGNA
LEGAL SERVICES

Page 45

responsive documents to the 2004 request?

A. Yes. She seems to be asking if we do.

Q. Is it -- Ms. Kroemmelbein, in her statements that she does not have any documents, does not disclose that they may be under her possession and control.

So is it your understanding that Mr. Valz does have responsive documents to this request?

A. I don't know that he does. I certainly do not. And I would imagine if he does, they're merely copies.

That being said, when you receive an e-mail like this, and it's to your personal attorney asking if they would be in our possession, if they were, which is what she's stating or asking, it's hard to say, because it ends in a period as opposed to a question mark.

But I believe, personally my belief, would be that if that was a statement, that would still mean they were in her possession and control.

It's simple, hey, Norm, Bill, and Norm is not cc'd on this e-mail, you have the

Page 46

documents that are being asked for and that was incorrect in terms of me.

Again, I don't know if that was correct in terms of Norm. I strongly suspect it was not.

Q. Is Norm Valz the staff attorney referred to here?

A. Yes.

Q. Did Mr. Weir or anyone also ask you for documents in your possession or control that were responsive to the 2004 subpoena?

A. No. And I did review, if I did have those documents, apart from, I believe I found -- our realty formation documents, I believe -- whichever one I formed, I don't recall, I believe I provided. So that would be the total extent to the documents in my possession.

Q. I want to take you back to Rush 13, which is the letter from Mr. Weir --

A. Yes.

Q. -- on Ms. Kroemmelbein's behalf.

I want to start with number 32.

It asks for all federal income tax returns with all schedules filed for all business

Page 47

entities in which you currently or previously had a relationship of any kind, including but not limited to the following.

I will not read all of these into the record, but there are some 28 companies here, if I'm counting right.

A. That's correct.

Q. It says, after a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession custody or control.

Do you know if that's accurate?

A. I know for a fact it's not an accurate statement.

Q. How do you know it's not accurate?

A. So you're asking for federal income tax returns filed for all business entities.

The date of this letter is October 3rd, 2025. I am aware that as of sometime between December of 2024 and April or March of 2025 -- it might even be between December, January, over that timeframe that Mr. Redmond went and collected, I believe, two years' worth of Seguro Medico tax returns ready

Page 48

to be filed. They just needed a signature to be filed by presumably Ms. Kroemmelbein.

And they were hesitant to do it, preferred Walsh did it. But they discussed having these documents as recently as November or December, in my presence. The documents are at 2 High Road, as a matter of fact.

Q. How do you know they're at 2 High Road?

A. Well, that's where I had the meeting with Ms. Kroemmelbein and Mr. Redman where she mentioned that he needed to sign and file the returns. They were still there.

Q. Did -- Mr. Redmond has repeatedly represented under oath throughout this bankruptcy, both in person and in response to written documents, that he would not have access to these documents and only Ms. Kroemmelbein would.

Do you know if that's accurate?

A. That is not accurate.

Q. How do you know that was not accurate?

A. They were in his Bentley. They were in the front passenger seat. I didn't see

Page 49

the documents, but they were referred to as the returns.

And I certainly saw a folder full of papers. And I saw on more than one occasion. And each time it was represented that those were, in fact, it turns out, albeit unfiled, they were prepared.

Q. Who represented that to you?

A. Kroemmelbein, Redmond, Walsh, Smith.

Q. Do you believe that Ms. Kroemmelbein would have responsive federal income tax returns to ABN Network, LLC?

A. I would have to assume, just based on the fact that the company existed. It clearly did business. And, I mean, there were court filings and there's a transfer of member interest e-mail as of 2023.

They had checks that must have cleared at some point. Checks that were attached to a bank account with a banking number on it. And she was the authorized signer on it.

So I would have to assume that with a bank account open and a membership interest transfer, that the company must exist,

Page 50

plus, it's been sued, that tax returns must have been filed at some point -- or prepared -- or prepared.

I can't say they were filed, because, again, the Seguro returns I was just discussing with you that are in their possession, the last I was made aware, that they had not been signed and not filed, though they were fully prepared.

Q. How about for ARC Realty and Seguro Medico, LLC, same question?

A. Well, the Seguro taxes are -- they were in the car. And I think those taxes specifically cover the years 2022 and 2023 and possibly 2024.

Q. What did Ms. Kroemmelbein tell you about these documents insofar as you believe it conflicts with what's written here?

A. Well, that they exist; that they're in her possession. That would conflict whether or not those returns are accurate. Whether or not they've been filed, I don't know. I presume they have not been filed.

And I sincerely doubt that Malcom Smith has altered them since preparing them. I

Page 51

sincerely doubt it.

Q. I'm gonna turn your attention to number 17, still on Rush 13.

And I'll read it to you. It says, all documents evidencing transfer of your assets valued at a thousand dollars or more within five years before September 3rd, 2024.

Response, after a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody or control.

Do you know if that is an accurate response?

A. If -- sorry. Request number 17, referring to a transfer of assets, a thousand dollars or more, would include bank transfers from one entity to another even under her ownership, I assume it would include, then, no, that can't possibly be true.

Q. And why do you say that?

A. Because money was being transferred between multiple business accounts.

Q. You've also provided e-mails from 2023 showing transfer of interest in ABN Network, is that correct?

Page 52

A. That is correct.

Q. And that also would have been responsive to this request, correct?

A. It would have had to have been, because it's 2023 and this is a five-year look-back from 2024, based on your question.

And in reviewing additional e-mails and documents since our last deposition, I found that September 24, 2023, e-mail. As I said, it had a member transfer agreement attached to it, unsigned as I stated.

But I did contact Norman Valz to see whether or not that document had been executed and he said it had but not in whatever original form it was. So he confirmed that that was, indeed, a transfer.

And, you know, a thousand dollars, one would presume that that was a $1,000 -- at least a thousand dollars for that.

But, you know, if you're transferring it, and assuming all debt or potential debt as demonstrated by the state lawsuit out of Florida that I'm aware of, and the federal lawsuit out of Florida that you brought to my attention, obviously significant claims of

14 (Pages 49 to 52)

Page 157

about the pressure of the four of them sort of together, saying, you know, you got to delay this, you got to delay this. You got to file another motion to quash. And I said, I'm not doing it. The judge already said no.

And I reached out to Nicole Nigrelli on March 26 of last year. I was at the end of my rope with these people and I knew -- can I file this motion to quash? No, you absolutely can't. Great, it's done.

I said it's a dead matter. Told Shannon, dead matter. It's over with.

Within a day, I get a very lengthy -- you've seen her authorizing me to talk to them -- an e-mail that was just straight to the point, blunt, that I am to exclusively do so.

Q. Exclusively do what?

A. Communicate to Alan about her legal matters. It's straightforward. I'll provide it to you, because I'm gonna provide it under seal as a supplement to my testimony in this case.

And so I reached out and I go, listen, I'm not gonna file a motion to quash on this. I can't.

Page 158

Alan screams at me that if Shannon has to submit to your testimony, her school has said they are going to fire her and she cannot lose this job. And he provided me with names. This is her superintendent. This is so and so. She's freaking out. She is literally going to get fired if she proceeds with this.

And multiple calls, angry at the bankruptcy proceedings. And it's all documented. Until eventually I got to the point is, I can't file your blanket motion. But now that you've presented an employment detriment, I can file one on behalf of Shannon. That's it. You presented this new thing to me, we'll see what the Court has to say about it.

And if Joel reaches out to me, I'll tell him exactly why I'm doing it. But the Court responded pretty quickly. That's why it was only on Shannon's behalf. Because I told them, no one else had a reason. And she didn't either, as far as I knew, and that reason manifests itself.

If there's -- I didn't read any of Stephanie Miller's, I believe, transcript from her testimony in front of you guys.

Page 159

But I imagine she didn't know anything and didn't have any documents in her possession.

Arthur, I imagine, it was somebody else had the documents in his possession. He wasn't there sometimes. Didn't know what was going on. Maybe. I don't know. It would depend on the day.

Malcom doesn't know anything about certain companies. There's at lot of tax returns to be completed. He is very busy around the 15th of April. Very busy around the 15th of September. Very busy around the 15th of October. Or, oh, I still need the signatures back on that. I don't know.

That's pretty much in a nutshell what I imagine the testimony is. And I know what Shannon's would have been, because I would have -- as I said to you, walked in. I would have had her answer questions as to her biographical information. I would have had her present her stub, every piece of ID you asked for.

I just frankly don't see the harm in it. And then I would have advised her to

Page 160

plead the Fifth Amendment to anything that I thought could be potentially incriminating. That's how hers would have gone.

So the roundabout way, why are they in constant communication, concerns about two major cases and whatever was provided had to be identical in one to the other. Had to be.

Q. Is 2004, Malcom Smith denied having authority to transfer assets for Alan Redmond.

Do you know if that's correct?

A. Well, I know it's incorrect, but I can provide you -- in an e-mail dated March 24th of 2025, Malcom is communicating exclusively with a Benjamin Fidalgo, I can represent to all of you is an attorney for -- he's from the IRS's office of AG Counsel.

He is communicating directly to Benjamin. They have a call at some point. They reference that they're gonna have a call. They're talking about payments and it's negotiated.

Alan is cc'd, you know, on all these e-mails with Malcom and the IRS attorney. They're discussing payments. They have a call.

41 (Pages 157 to 160)

# Exhibit B

# Exhibit B

LAW OFFICES

# WEIR LLP

A Pennsylvania Limited Liability Partnership

The Widener Building, Fifth Floor
1339 Chestnut Street, Philadelphia Pennsylvania, 19107

WEIRLAWLLP.COM

Walter Weir, Jr.                                          Direct Dial (215) 241-7751
Member of PA, DC and NJ Bars                             E-mail: wweir@weirlawllp.com

October 3, 2025

VIA ELECTRONIC MAIL – *joel@cornerstonelaw.us*

Joel A. Ready, Esquire
Cornerstone Law
8500 Allentown Pike, Suite 3
Blandon, PA 19510

**Re:    Shannon Kroemmelbein – Subpoena duces tecum**

Dear Joel:

I am writing to respond to the document requests provided in your subpoena dated January 7, 2025.  Without waiving any applicable privilege, we will produce the following documents as indicated.  If any documents are being withheld, we will provide a privilege log.  Unless otherwise stated, each response below reflects a reasonable search for documents within Ms. Kroemmelbein's possession, custody, or control. Where she states, "After a reasonable inquiry" Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

RESPONSES

1.    Your original birth certificate, including any amendments to the same.

RESPONSE:  Ms. Kroemmelbein will produce a copy of her original birth certificate for inspection subject to a confidentiality agreement.

2.    Your Social Security card.

RESPONSE: Ms. Kroemmelbein will produce a copy of her Social Security Card for inspection subject to a confidentiality agreement.

3.    All your active driver's licenses in any jurisdiction.

RESPONSE:  Ms. Kroemmelbein will produce a copy of her active Pennsylvania driver's license for inspection subject to a confidentiality agreement.

4.    All your passports.

PENNSYLVANIA   ∞   NEW JERSEY   ∞   DELAWARE   ∞   NEW YORK

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 2

RESPONSE: Ms. Kroemmelbein will produce a copy of her passport make the original available for inspection subject to a confidentiality agreement.

5.      All of your federal income tax returns, with all schedules, including Form W2s and 1099s, for the years 2014 through the most recent filing.

RESPONSE:  Ms. Kroemmelbein will produce all tax filings in her possession subject to a confidentiality agreement.

6.      Your most recent curriculum vitae or professional resume to the extent they exist.

RESPONSE:  Ms. Kroemmelbein will produce the requested document to the extent one exists.

7.      All curriculum vitae and professional resume you have used within five years before September 3, 2024.

RESPONSE: Ms. Kroemmelbein will produce the requested documents to the extent they exist.

8.      All contracts between you and the Pottstown School District.

RESPONSE:  Ms. Kroemmelbein will produce the requested documents.

9.      All documents evidencing the policy of Pottstown School District regarding outside employment and which is in effect during your period of employment with Pottstown School District.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

10.     All contracts between you and the Bucks County Intermediate Unit.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

11.     Any document evidencing the policy of Bucks County Intermediate Unit regarding outside employment and which was in effect during your period of employment with the Bucks County Intermediate Unit.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 3

12.     Any document evidencing the date of your resignation from employment with the Bucks County Intermediate Unit.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

13.     All invoices you received for any debt within one year before September 3, 2024.

RESPONSE: Ms. Kroemmelbein will produce any documents that are in her possession to the extent they exist.

14.     All documents evidencing payments made by you within one year before September 3, 2024.

RESPONSE:   After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

15.     All documents evidencing payments made on your behalf by Alan Christopher Redmond, and within one year before September 3, 2024.

RESPONSE: Ms. Kroemmelbein will produce those documents that are in her possession to the extent they exist.

16.     All documents evidencing payments made on your behalf, by any person other than Alan Christopher Redmond, and within one year before September 3, 2024.

RESPONSE:   After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

17.     All documents evidencing transfer of your assets, valued at $1,000.00 or more, within five years before September 3, 2024.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

18.     All documents evidencing transfer of assets (1) regardless of the title of those assets, (2) caused by, or requested by, you, (3) valued at $1,000.00 or more, and (4) within five years before September 3, 2024.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

19.     All monthly statements for all your accounts at Mid Penn Bank since 2014 to the

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 4

present.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

20.    All monthly statements for all your accounts which you cause, or permit, to be used by Alan Christopher Redmond and beginning five years before September 3, 2024 to the present.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

21.    All monthly statements for any account (1) within your possession or control, regardless of how the account is titled, and (2) five years before September 3, 2024.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

22.    All powers of attorney and proxy instruments that you signed at any time within five years before September 3, 2024.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

23.    All leases that you have signed at any time within five years before September 3, 2024.

RESPONSE: To the extent any such documents exist, they will be produced.

24.    All deeds to all real property located anywhere in the world and recorded during the years 2014 through the present, and which are titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part.

RESPONSE: To the extent any such documents are in her possession, they will be produced.

25.    All unrecorded deeds to real property located anywhere in the world and which are titled in your name or titled in your name or titled in the name of a business entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part.

RESPONSE: To the extent any such documents are in her possession, they will be produced.

**WEIR LLP**

Joel A. Ready, Esquire
October 3, 2025
Page 5

26.     All contracts between you and Alan Christopher Redmond.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

27.     All contracts between you and any relative, former spouse, or insider of Alan Christopher Redmond.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

28.     All contracts between you and any creditor of Alan Christopher Redmond.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

29.     All contracts between you and any of your relatives, former spouses, or insiders.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

30.     All contracts between you and any current or former joint account holder, including Gaia Gebbia.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

31.     All contracts between you and any of the following entities, or between you and any current or former owner, or current or former member, of the following entities:

        a.     Alan Redmond Charitable Foundation
        b.     ARC Realty, LLC
        c.     Bene Market, LLC
        d.     Benefits Now, LLC
        e.     The Leads House, LLC
        f.     National Brokers of America, Inc.
        g.     NextGen Leads, LLC
        h.     Phase I Technology, LLC
        i.     Q H Quick Health
        j.     The Redmond Group, LLC
        k.     Redmond Group Investments, LLC
        l.     Redmond Holdings, Inc.

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 6

        m.      Redmond Holdings 2, Inc.
        n.      Redmond Holdings, LLC
        o.      Redmond Investments, LLC
        p.      Redmond Marketing, LLC
        q.      Saoirse, LLC
        r.      Saoirse Enterprise, LLC
        s.      Saoirse Holdings, Inc.
        t.      Seguro Medico, LLC
        u.      U.S. Consolidation
        v.      U.S. Trifecta Limited Liability Company

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

32.     All federal income tax returns, with all schedules, filed for all business entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following:

        a.      ABN Health
        b.      ABN Network, LLC
        c.      Alan Redmond Charitable Foundation
        d.      ARC Realty, LLC
        e.      ARC Realty 1, LLC
        f.      Bene Market, LLC
        g.      Benefits Now, LLC
        h.      The Leads House, LLC
        i.      National Brokers of America, Inc.
        j.      NextGen Leads, LLC
        k.      Phase 1 Technology, LLC
        l.      Q H Quick Health
        m.      The Redmond Group, LLC
        n.      Redmon Group Investments, LLC
        o.      Redmond Holdings, Inc.
        p.      Redmond Holdings 2, Inc.
        q.      Redmond Holdings, LLC
        r.      Redmond Investments, LLC
        s.      Redmond Marketing, LLC
        t.      Saoirse, LLC
        u.      Saoirse, LLP
        v.      Saoirse Enterprise, LLC
        w.      Saoirse Holdings, Inc.
        x.      Seguro Medico, LLC

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 7

   y.  The Turner House of Reading, LLC
   z.  Two High Properties, LLC
   aa.  U.S. Consolidation
   bb.  U.S. Trifecta Limited Liability Company

   RESPONSE:  After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

   33.  All contracts between you and each and every one of the following persons:

   a.  Teresa Ammon
   b.  Heather Briscoe
   c.  Lindsey K. Briscoe
   d.  Katherine Downing
   e.  Stephanie Miller
   f.  Gaia Gebbia
   g.  Seni Sok
   h.  Arthur W. Walsh, Jr.
   i.  Norman M. Valz

   RESPONSE:  After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

   34.  All contracts in your possession, or control, where any of the following persons are a party (even if you are not a party):

   a.  Teresa Ammon
   b.  Heather Briscoe
   c.  Lindsey K. Briscoe
   d.  Katherine Downing
   e.  Stephanie Miller
   f.  Gaia Gebbia
   g.  Seni Sok
   h.  Arthur W. Walsh, Jr.
   i.  Norman M. Valz

   RESPONSE:  After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

   35.  All contracts between you and NP, Inc. and with any owner or inside of NP, Inc.

   RESPONSE:  After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 8

36.      All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

37.      All contracts between you and each of your creditors

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

38.      All applications for loans, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to World Business Lenders, LLC and its affiliates or subsidiaries, including WBL SPO I, LLC and WBL SPO II, LLC. I do not have those records available.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

39.      All trust agreements, or trust indentures, in which you are a trustee or a beneficiary.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

40.      All trust agreements, or trust indentures, in which any of your relatives are a trustee or a beneficiary.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

41.      All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial authority, or control, or which you filed with a government agency on behalf of another person.

RESPONSE:  After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

42.      All written contracts in which you were a party in your personal capacity and which you signed at any time during the past 10 years, including bank service agreements, accounting services, employment contracts, promissory notes, mortgages, escrow, brokerage, personal

WEIR LLP

Joel A. Ready, Esquire
October 3, 2025
Page 9

guarantees, suretyship agreements, and attorney-client agreements

RESPONSE: To the extent any such documents exist, Ms. Kroemmelbein will produce them.

43.     Your written budget for personal and household expenses.

RESPONSE:  To the extent any such documents exist, Ms. Kroemmelbein will produce them.

44.     All Uniform Commercial Code filings, in any jurisdiction, which list you as a creditor or debtor.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

45.     Certificates of title in your name as to any motor vehicle, mobile home, aircraft, or watercraft.

RESPONSE: To the extent any such documents exist, Ms. Kroemmelbein will produce them.

46.     Documents evidencing your title in personal property acquired prior to your marriage to Alan Christopher Redmond and which is valued in excess of $1,000.00.

RESPONSE: To the extent any such documents exist, Ms. Kroemmelbein will produce them.

47.     All contracts between you and any of the following persons:

   a.     Rosewood Custom Cabinetry, LLC
   b.     Stone Arch Associates, LLC
   c.     Willow Tree Remodeling, LLC
   d.     Any creditor of each of the foregoing persons.

RESPONSE: After a reasonable inquiry, Ms. Kroemmelbein does not have documents responsive to this request within her possession, custody, or control.

The production of any documents containing personal identifiable information including, without limitation, Social Security numbers, driver's license numbers, passport numbers, dates of birth, financial account numbers, home addresses, and dependent/child names—will be designated Confidential and, where appropriate, Attorneys' Eyes Only. All such materials shall be used solely for this proceeding, stored securely, not disclosed to non-authorized persons, and returned or destroyed at the conclusion of the matter. We may redact personal identifiable information to last four digits (SSN/account numbers) and to month/year (DOB).  The parties

**WEIR LLP**

Joel A. Ready, Esquire
October 3, 2025
Page 10

agree that any disclosure of privileged or work-product material, whether inadvertent or otherwise, shall not constitute a waiver.  Upon written notice of a claw-back request, the recipient shall promptly sequester or destroy the specified material and any copies, pending resolution of any challenge.

Please confirm your agreement to the terms in the immediately preceding paragraph.

We anticipate being able to produce document within the next two weeks.

Sincerely yours,

Walter Weir, Jr.

WWJR/slm

# Exhibit C

Exhibit C



Outlook

**RE: Legal remedies**

**From** Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Date** Thu 9/12/2024 5:42 PM
**To** George Bochetto <gbochetto@bochettoandlentz.com>; Michael McCarrie <mjm@artzmccarrie.com>; Alan Redmond <alanredmond23@gmail.com>
**Cc** William Rush <wrush@rushlawberks.com>; David Heim <dheim@bochettoandlentz.com>; NORMAN VALZ <NVALZ@msn.com>

1. David and Alan and Albert – TRO with Albert ciardi all week. That's what's they have been working on. Great job david and alan.
2. What is the rest of the attorneys working on?
3. Inaction won't work here. We need seguro protected and myself and art protected.
4. Seguros staff attorney has been accused of fraud as art and I have. We just ended the federal investigation.

We need answers tonight gentleman.

What is the next move and action plan.

Contact alan and he will patch me in.

Shannon
On Sep 12, 2024 at 12:43 -0400, Michael McCarrie <mjm@artzmccarrie.com>, wrote:

# I will work in tandem with George as well.

# Thanks,

Michael J. McCarrie, Esquire

10 Beatty Road, Suite 202

Media, PA 19063

484-443-8232 office

484-442-8238 facsimile

mjm@artzmccarrie.com

000050

Hello legal team.

It appears I have this worked out with representation.

Norman as staff attorney for seguro and bill, as my personal attorney:

- We have received subpoenas of seguro staff from cornerstone law.
- We have been named in an involuntary bankruptcy proceeding that involves Alan Redmond and not seguro. This concerns us as we just finalized a federal investigation and a number of false allegations that could overflow.
- I have reviewed the TRO and there is so many false statements that are
- We have are staff attorney norm accused of a number of false things.

Bill and norm please compile a strategy and contact Alan and he will patch me in after we see this in email.

George or Michael - are you able to take the lead on this please and work with bill and Norm and provide us input.

Thank you,

Shannon

On Sep 12, 2024 at 08:05 -0400, Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>, wrote:

> Gentleman,
>
> Arthur and I have discussed this, this morning.
>
> We are now in a position as Segruo to sue Ethan shelter and cornerstone law.
>
> Our separate causes of action include:
>
> Torturous Interference.
> Defamation and slander.
> Potential criminal charges.
>
> We have been mentioned in this case with Jordan and now are being dragged into which is now effecting our ability to maintain business relationships and also our ability to earn a living, because here we go again with more legal fees and crazy amounts of stress, similar to the feds.
>
> I am traveling today. Please call Alan today, and he will patch art and I in.
>
> Thank you
>
> Shannon

On Sep 11, 2024 at 17:58 04:00, William Rush <wrush@rushlawberks.com>, wrote:

For documenting purposes, best to just communicate with me in email. If needed to loop anyone else in, we will.

I'm going to unleash hell on your behalf bc of the accusations in that absurd fucking nonsense.

Get Outlook for iOS

---

**From:** Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Sent:** Wednesday, September 11, 2024 4:41:59 PM
**To:** William Rush <wrush@rushlawberks.com>; David Heim <dheim@bochettoandlentz.com>; Albert A. Ciardi III <aciardi@ciardilaw.com>
**Subject:** Re: Legal remedies

Hi Bill,

Thank you for the legal advice.

Please review with David and Albert (nice to meet you albert)

****** and let me know the very next steps and when. *******

I really don't care about Alan's issues.

I want you to ensure you protect my assets and companies.

Please see asterisk above.

I'll be holding all attorneys accountable to performance.

Bill- Correct I am not a housewife, I'm a highly decorated business woman with a masters pursuing her doctorate. Thanks for that other email, that Alan sent along.

I'll look for your responses.

Thanks Bill, I appreciate you.

Should this email contain statements made in compromise negotiations relating to litigation or potential litigation, or statements that could be interpreted as being made in said course, it is the intent of the drafter that said statements were made with the intention of falling under the protections of Pa.R.E. 408 and F.R.E. 408.

---

**From:** Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Sent:** Wednesday, September 11, 2024 4:22 PM
**To:** William Rush <wrush@rushlawberks.com>; David Heim <dheim@bochettoandlentz.com>; George Bochetto <gbochetto@bochettoandlentz.com>
**Subject:** Legal remedies

David and Bill,

I believe it may be getting to the point where I need to intervene in some fashion here on behalf of the company, Arthur and Seguro.

What are my legal options to protect my company and myself?

Bill- you are my attorney and I am looking for guidance.

Please send me an email tonight.

I will be keeping everything in email (no text, no calls - unless Alan is present).

Thank you.

Shannon Kroemmelbein

000053

![Outlook icon] Outlook

---

**Re: Subpoena**

---

**From** Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Date** Sat 9/14/2024 9:57 AM
**To**   David Heim <dheim@bochettoandlentz.com>
**Cc**   Albert A. Ciardi III <Aciardi@ciardilaw.com>; George Bochetto <gbochetto@bochettoandlentz.com>;
Nicole Nigrelli <nnigrelli@ciardilaw.com>; William Rush <wrush@rushlawberks.com>; Alan Redmond
<alanredmond23@gmail.com>

I will be on the running track with the kids and their coaches.

I give authority to Alan to discuss my legal issues with you and the team and he will debrief me.
On Sep 14, 2024 at 09:46 -0400, David Heim <dheim@bochettoandlentz.com>, wrote:

> Call at 10:30.  Below is conference call info:
>
> Dial-in number:(605) 468-8792
>
> Access code:   983188
>
>
>
> **David P. Heim, Partner**
>
> *Attorney at Law*
>
> 1524 Locust Street
>
> Philadelphia, PA 19102
>
> (215) 735-3900
>
> dheim@bochettoandlentz.com

000054

On Sat, Sep 14, 2024 at 9:29 AM David Heim <dheim@bochettoandlentz.com> wrote:

Shannon,

==We are having a call this morning to discuss next week's plans including how these multiple subpoenas are to be handled and by whom.==

==I am suggesting 10 am this morning (roughly 30 minutes from now) but I am waiting for some confirmations.==



**David P. Heim, Partner**

***Attorney at Law***

1524 Locust Street

Philadelphia, PA 19102

(215) 735-3900

dheim@bochettoandlentz.com

On Sat, Sep 14, 2024 at 8:48 AM Shannon Kroemmelbein
<shannonkroemmelbein@gmail.com> wrote:

I just received service today.

I have a very important work engagement on Wednesday.

Find attached.

Please drop me an email David/George and Bill on next steps here.

Outlook

---

**AR's Bankruptcy Disco Thoughts**

---

From   William Rush <wrush@rushlawberks.com>
Date   Wed 12/18/2024 9:21 AM
To     dheim@bochettoandlentz.com <dheim@bochettoandlentz.com>

Dave,

Great talking Monday. Alan wants to follow up on some of that discussion. He would like us to prep (and you to issue) Motions to Quash on behalf of:

**\*Seguro.**

**\*Shannon (Alan wants to invoke the spousal privilege here as he has certain 5th Amendment rights...and that frankly is my HUGE concern with him being deposed at all).**

**\*Walsh.**

**\*Miller.**

**\*Malcolm (I represent Malcolm's business in various corporate matters so I can reach out to him).**

I think a lot of 5th Amendment issues are here.

What are your thoughts?

**Very Truly Yours,**

**William Rush, Esq.**
PA - NY - NJ - DC

**RUSH LAW GROUP, LLC**
**38 North Sixth Street, PO Box 758**
**Reading, PA 19603-0758**
**P. 610-413-5337**
**F. 610-927-6219**

This e-mail and any files transmitted with it are confidential attorney-client communication or may

000056

Outlook

---

**Quick email to discuss**

---

From  Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>

Date  Sat 2/1/2025 11:43 AM

To  David Heim <dheim@bochettoandlentz.com>; William Rush <wrush@rushlawberks.com>; Michael McCarrie <mjm@artzmccarrie.com>; George Bochetto <gbochetto@bochettoandlentz.com>; NORMAN VALZ <nvalz@msn.com>

*Hello Gentleman,*

*I hope you are having a nice relaxing Saturday. David please wish Celeste a happy belated birthday. Alan mentioned that a few weeks ago and due to our workload, I have been distracted.*

*It appears that my personal information and business information has been illegally obtained via attorney Reedy:*

- *with an improper subpoena that was served on various registered agents that I have used in the past,*
- *who then released personal and business information,*
- *under the watchful gaze of one Judge Patricia Mayer.*

*I have been consulting with my husband and What I plan to have us do is:*

- *Sue each registered agent.*

- *Sue little Mr. Reedy.*

- *And of course sue the court, in particular Ms. Mayer, who Alan and now I, am not a fan of. She's a Temple grad I see (94th). Lehigh doctorate over here(Top 50).*

- *a few other points include the violation of client attorney privilege, in particular with Norman and Bill. Alan and I are digesting the approach there.*

*I am at a spelling bee today with the children. Alan is working of course.*

*Communicate through Alan please, and i will be available the beginning of tomorrow and next week to discuss. I will be taking this off his plate as he is extremely busy, as you found out, from the train wreck of yesterday's meeting. I did hear it ended well though.*

000060

*Thanks David and George.*

==I believe I am represented by Rush,== David and Norm in various matters. ==David I would like you to take the lead.==

==Norman your name is all over this exhibit that Reedy has produced.== I will have that discussed with you on Monday after you handle the Bill Rush matter I am now aware of. That will be billed to Bill rush of course and not my company.

Norm - This appears that Aty. Reedy has pierced my attorney client privilege with you in particular, and I will need my rights explained to me. Someone will be held accountable for this.

My family has been through a lot in the last 3 years. As Alan may have explained to you at that meeting yesterday, which I am well aware of, we are not, and excuse my ignorance, fucking around in 2025. Also I am aware of the indictment counts being false. I have read Malcolm's letter. ==Either Malcolm fucked up or the FBI have fucked up, either way, we did not, and that will be up to this team to resolve quickly.==

Alan is aware of this email and brought me up to speed on the above.

==You may communicate with him throughout the weekend and next week while I keep the children busy and entertained== but I will be present for all calls related to me tomorrow and next week.

He has been working since 5am this morning to fix multiple businesses that have been ruined by the FBI, and to be frank, ==an incompetent CEO who was hired to do a job. Quite frankly the horrible legal advice from previous parties, has also caused much of this.==

Thank you all and I expect communication by Monday with a concise gameplan on my rights and who is getting sued first.

David - I have ccd Michael on this, but I am unsure if it is his correct email as he recently joined your team, which is exciting!

If it is incorrect please forward to him.

==Also David can you forward this to Alan and his involuntary bankruptcy people.==

Alan explicitly stated: we are seperate parties babe, let the attorneys work it out.

Thank you.

Shannon Redmond

000061

Outlook

---

**Subject: Authorization for Alan Redmond to Communicate on My Behalf**

---

**From** Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Date** Mon 2/3/2025 9:59 AM
**To**   David Heim <dheim@bochettoandlentz.com>; William Rush <wrush@rushlawberks.com>; Michael McCarrie <mjm@artzmccarrie.com>

Dear Attorneys David Heim, Bill Rush and the law firm of Bochetto and Lentz:

I hope this message finds you well. I am writing to formally authorize my spouse, Alan Redmond, to communicate with you and your firms on my behalf regarding any legal matters. I trust Alan's judgment entirely, and there are no limitations to this authorization to act in my stead.

Please feel free to provide Alan with any information he requests, as he will be assisting me in understanding and making decisions regarding my legal affairs.

Legal affairs will be limited to those on this email and Mr. Michael McCarrie and George Bochetto. Any additional staff you recommend will be approved in advance by Alan or me.

Thank you for your attention to this matter. Please confirm receipt of this authorization at your earliest convenience.

I may be on the 1230pm call, but I am assisting my staff with the set up of a rec room for disabled children we have just onboarded at my school. Wish me luck!

Kind regards,

Shannon Redmond
February 2, 2025

000062

 **Outlook**

## Follow Up

**From** Shannon Kroemmelbein <shannonk2k@gmail.com>
**Date** Mon 3/10/2025 10:30 PM
**To** William Rush <wrush@rushlawberks.com>; Alan Redmond <alanredmond23@gmail.com>

Alan and William –

As a follow up to our text conversation. Unfortunately, my phone was thrown and is now broken and I cannot communicate with it. This poses difficulties as I am unable to get a new phone during my work hours.

Please be advised that I am not receiving any communications with anyone at this time. Furthermore, be advised that I am not making any company wide operational decisions nor have I had those decisions in years past. Please let us know if there are any further supports that we can offer.

Outlook

---

**Re: Bankruptcy: not being defended:**

---

**From** William Rush <wrush@rushlawberks.com>
**Date** Tue 3/18/2025 2:30 PM
**To** alanredmond23@gmail.com <alanredmond23@gmail.com>; David Heim
<dheim@bochettoandlentz.com>; George Bochetto <gbochetto@bochettoandlentz.com>; Shannon
<shannonk2k@gmail.com>; Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Cc** Albert A. Ciardi III <aciardi@ciardilaw.com>

Shannon,

On this and reviewing all now. Will update you ASAP.

**Very Truly Yours,**

**William Rush, Esq.**
PA - NY - NJ - DC

**RUSH LAW GROUP, LLC**
**38 North Sixth Street, PO Box 758**
**Reading, PA 19603-0758**
**P. 610-413-5337**
**F. 610-927-6219**

This e-mail and any files transmitted with it are confidential attorney-client communication or may otherwise be privileged or confidential and are intended solely for the individual or entity to whom they are addressed. If you are not the intended recipient, please do not read, copy, or retransmit this communication but destroy it immediately. Any unauthorized dissemination, distribution, or copying of this communication is strictly prohibited.

Should this email contain statements made in compromise negotiations relating to litigation or potential litigation, or statements that could be interpreted as being made in said course, it is the intent of the drafter that said statements were made with the intention of falling under the protections of Pa.R.E. 408 and F.R.E. 408.

---

**From:** alanredmond23@gmail.com <alanredmond23@gmail.com>
**Sent:** Monday, March 17, 2025 11:01 AM
**To:** William Rush <wrush@rushlawberks.com>; David Heim <dheim@bochettoandlentz.com>;
George Bochetto <gbochetto@bochettoandlentz.com>; Shannon <shannonk2k@gmail.com>;
Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>
**Cc:** Albert A. Ciardi III <aciardi@ciardilaw.com>
**Subject:** Re: Bankruptcy: not being defended:

Husband and wife team. Shannon please provide you both I'm not sure which one you want to use.

David, George bill. The attorney proffer with the feds. I will need a debrief of the strategy in an email please before the call.

Ciardi has questions for my counsel on the acknowledgement. Bill - provide your comments. I also have ciardi in 10.

Bankruptcy wrapped up, Feds wrapped up. Rinse and repeat. And again. And again.

On Mar 17, 2025 at 10:54 -0400, Shannon Kroemmelbein <shannonkroemmelbein@gmail.com>, wrote:

> Good morning:
>
> It appears Mr Jordan's attorney is in control of my personal bank statements, including my personal business information. This would leave me to believe that he is potentially violating bankruptcy code.
>
> The facts:
>
> - Seguro is represented by B and L.
> - Shannon is represented by Rush and B and L.
> - Valz represents seguro.
>
> Please suggest a time to discuss with Alan and i today.
>
> I am available after 5pm this evening. I want this discussed today gentleman.
>
> - Bill you should take the lead as I am balancing cashflow and you have been paid the most this year.
>
> Thanks to all.
>
> If your excuse to not defend my husband and my 3 kids is your lack of payment, my husband is in a bankruptcy, which will end shortly, and short sightedness will not get you paid further.
>
> You have all been paid over 5 million dollars the last 2 years.
>
> I am running a school today. If you have comments or concerns you can talk to my Husband, which I have told you all multiple times.
>
> He is extremely intelligent and honest.
>
> Again I am available until after 5pm.

000069

Good day to you all.

George and David – I hope Chrissy and Celeste are well.

Shannon

000070

🗔 **Outlook**

---

**Re: Documents Request**

---

**From** Shannon Kroemmelbein <shannonk2k@gmail.com>
**Date** Tue 9/23/2025 5:33 PM
**To** AC <alanredmond23@gmail.com>
**Cc** William Rush <wrush@rushlawberks.com>; David Heim <dheim@bochettoandlentz.com>; gbochetto@bochettoandlentz.com <gbochetto@bochettoandlentz.com>; Weir, Walter <wweir@weirlawllp.com>; Dzara, David <ddzara@weirlawllp.com>

I would fully agree, and trust the previous council.
Any input on information that may not be the most factual would be greatly appreciated.
Thank you!
Shannon

On Tue, Sep 23, 2025 at 4:07 PM AC <alanredmond23@gmail.com> wrote:
These answers would not allign with discovery and testimony that have been presented by attorney rush, mcswain, heim to fbi, George to fbi, mcswain to fbi, you to attorneys etc. etc.

Mr. Weir/Shannon I would recommend you consult with myself, rush, George Bochetto or David heim - former personal counsel and former counsel for seguro.

AC

On Tue, Sep 23, 2025 at 15:50 Shannon Kroemmelbein <shannonk2k@gmail.com> wrote:

Please find my responses below in regards to the requested documents as previous in red - dated 7/9/25. I have updated the information in blue print to reflect current response:

1. Your original birth certificate, including any amendments to the same. I have and can produce.

2. Your Social Security card. I have and can produce. Still can produce
3. All your active driver's licenses in any jurisdiction. I have and can produce. Still can produce
4. All your passports. I have and can produce. Still can produce
5. All of your federal income tax returns, with all schedules, including Form W2s and 1099s, for the years 2014 through the most recent filing. I have reached out to the accountant and requested. I will follow back up with him to pick up on Monday. Did call. Never picked up. Do you want me to pick up any documents.

6. Your most recent curriculum vitae or professional resume. I have and can produce. Can produce. Will need to update.

7. All curriculum vitae and professional resume you have used within five years before September 3, 2024. I have the most recent version of my resume. I can produce that. The other versions. I can search for the other dated versions. I worked at the same organization for 22 years, and therefore, did not update often.  Can produce. Will need to update.

8. All contracts between you and the Pottstown School District. This is public information. I can provide though. Have on computer saved. Can produce.

9. All documents evidencing the policy of Pottstown School District regarding outside employment and which is in effect during your period of employment with Pottstown School District. To be discussed. Need clarification. This would be outlined in the Act 93 contract.

10. All contracts between you and the Bucks County Intermediate Unit. Again, this is public information. Do I need to produce this given it is public information - which he has access to. Again - Act 93 Contract - public knowledge. I no longer have access to this previous contract.  This would be outlined in the Act 93 contract. There will be no policies as it would not be a conflict of interest.

11. Any document evidencing the policy of Bucks County Intermediate Unit regarding outside employment and which was in effect during your period of employment with the Bucks
County Intermediate Unit. To be discussed. Need clarification.  This would be outlined in the Act 93 contract. There will be no policies as it would not be a conflict of interest.

12. Any document evidencing the date of your resignation from employment with the Bucks County Intermediate Unit. I can see if I can log onto systems, however, I no longer have access to that email.  This would be outlined in the Act 93 contract. There will be no policies as it would not be a conflict of interest.

13. All invoices you received for any debt within one year before September 3, 2024. I often rip up my mail. I do not have these readily available. I will need to create an excel spreadsheet and organize. I have no idea, as the debt amount is overwhelming.

14. All documents evidencing payments made by you and within one year before September 3, 2024. This could be extensive. I do not have these readily available. Banks have eliminated access to online access due to closure. Do not have hard copies. What would you advise?

15. All documents evidencing payments made on your behalf, by Alan Christopher Redmond, and within one year before September 3, 2024. To be discussed. Need clarification.   Banks have eliminated access to online access due to closure. Do not have hard copies. What would you advise?

16. All documents evidencing payments made on your behalf, by any person other than Alan Christopher Redmond, and within one year before September 3, 2024. There are none.

17. All documents evidencing transfer of your assets, valued at $1,000.00 or more, within five years before September 3, 2024. I have not transferred assets.   No transfers of my assets.

18. All documents evidencing transfer of assets (1) regardless of the title of those assets, (2) caused by, or requested by, you, (3) valued at $1,000.00 or more, and (4) within five years before September 3, 2024. None. Do not have documentation

19. All monthly statements for all your accounts at Mid Penn Bank since 2014 to the present. This account has been closed. Should I go in to request the statements? Do not have statements or online access.

20. All monthly statements for all your accounts which you **cause, or permit, to be used by Alan Christopher Redmond** and beginning five years before September 3, 2024 to the present. I do not have access to all these accounts. Many have been closed, many have

000075

been opened due to the FBI involvement. See previous statement

21. All monthly statements for any account (1) **within your possession or control**, regardless of how the account is titled, and (2) five years before September 3, 2024. The key word here is possession, and therefore, we will discuss. None within possession at this time.

22. All powers of attorney and proxy instruments that you signed at any time within five years before September 3, 2024. None.  None within possession at this time.

23. All leases that you have signed at any time within five years before September 3, 2024. None.  Actually - there may have been one for us to rent against ARC.

24. All deeds to all real property located anywhere in the world and recorded during the years 2014 through the present, and which are titled in your name or titled in the name of a business
entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or
managerial authority or control, in whole or in part. ARC Reality - 1198 Reading Blvd. Wyomissing PA 19610, 8 Morgan Dr. Sinking Spring, PA. Boy do I wish I had a house in the Virgin Islands, Florida, and Panama :)
2 High Rd. Wyomissing, PA 19610 - Shannon Kroemmelbein. I have the 1198 Reading Blvd deeds and docs as you recently pulled them for the tax sale.

25. All unrecorded deeds to real property located anywhere in the world and which are titled in your name or titled in your name or titled in the name of a business entity (or nonprofit entity)
in which you have an ownership interest, or membership interest, or managerial authority or control, in whole or in part. None. None

26. All contracts between you and Alan Christopher Redmond. None.  None

7. All contracts between you and any relative, former spouse, or insider of Alan Christopher Redmond. None.  None

28. All contracts between you and any creditor of Alan Christopher Redmond. Would this include previous tenants?  Do not obtain copies.

29. All contracts between you and any of your relatives, former spouses, or insiders. None. None

30. All contracts between you and any current or former joint account holder, including Gaia Gebbia. These documents would have been taken during the FBI raid in office. None  - any employment contracts would have been obtained in FBI raid.

31. All contracts between you and any of the following entities, or between you and any current or former owner, or current or former member, of the following entities:

a. Alan Redmond Charitable Foundation - Alans
b. ARC Realty, LLC - Both
c. Bene Market, LLC -  - None
d. Benefits Now, LLC -  -  - None
e. The Leads House, LLC -  -  -  - None
f. National Brokers of America, Inc. -  -  - None
g. NextGen Leads, LLC -  -  - None
h. Phase 1 Technology, LLC -  -  - None
i. Q H Quick Health -  -  - None
j. The Redmond Group, LLC -  -  - None
k. Redmond Group Investments, LLC -  -  - None
l. Redmond Holdings, Inc.  -  - None
m. Redmond Holdings 2, Inc. -  -  - None
n. Redmond Holdings, LLC -  -  - None

000076

o. Redmond Investments, LLC -   -   - None
p. Redmond Marketing, LLC -   -   - None
q. Saoirse, LLC -  -   - None
r. Saoirse Enterprise, LLC -    - None
s. Saoirse Holdings, Inc. -   - None
t. Seguro Medico, LLC -   - Shannon 96% / Art 4%
u. U.S. Consolidation -   -  - None
v. U.S. Trifecta Limited Liability Company -  - None
These documents would have been taken and are under FBI possession.

32. All federal income tax returns, with all schedules, filed for all business entities in which you currently or previously had a relationship of any kind, including (but not limited to) the following:
a. ABN Health -   - None
b. ABN Network, LLC   - Partner
c. Alan Redmond Charitable Foundation   - None
d. ARC Realty, LLC -   - Partner
e. ARC Realty 1, LLC -   - None
f. Bene Market, LLC -   - None
g. Benefits Now, LLC -   - None / Need to look into 0 9/23
h. The Leads House, LLC -   - None
i. National Brokers of America, Inc. -  - None
I will contact the accountant to request records.

Page 4 of 6

j. NextGen Leads, LLC   - None
k. Phase 1 Technology, LLC   - None
l. Q H Quick Health   - None
m. The Redmond Group, LLC   - None
n. Redmond Group Investments, LLC   - None
o. Redmond Holdings, Inc.  - None
p. Redmond Holdings 2, Inc.  - None
q. Redmond Holdings, LLC  - None
r. Redmond Investments, LLC  - None
s. Redmond Marketing, LLC  - None
t. Saoirse, LLC  - None
u. Saoirse, LLP  - None
v. Saoirse Enterprise, LLC  - None
w. Saoirse Holdings, Inc.  - None
x. Seguro Medico, LLC   - SHANNON 96%
y. The Turner House of Reading, LLC   - None
z. Two High Properties, LLC   - None
aa. U.S. Consolidation   - None
bb. U.S. Trifecta Limited Liability Company   - None

33. All contracts between you and each and every one of the following persons:

a. Teresa Ammon
b. Heather Briscoe

c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz
I have no contracts in my possession.  I have no contracts in my possession.

34. All contracts in your possession, or control, where any of the following persons are a party (even if you are not a party):

Page 5 of 6

a. Teresa Ammon
b. Heather Briscoe
c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz
I have no contracts in my possession.  I have no contracts in my possession.

35. All contracts between you and NP, Inc. and with any owner or inside of NP, Inc.' I have no contracts in my possession.  I have no contracts in my possession.
36. All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.
I would need to dig up those documents as I do not have records. I have no contracts in my possession.

37. All contracts between you and each of your creditors. None.  I have no contracts in my possession.
38. All applications for loans, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to World Business Lenders, LLC and its affiliates or
subsidiaries, including WBL SPO I, LLC and WBL SPO II, LLC. I do not have those records available. I would need to reach out to the lenders to request documents.  I have no contracts in my possession.
39. All trust agreements, or trust indentures, in which you are a trustee or a beneficiary. None.
40. All trust agreements, or trust indentures, in which any of your relatives are a trustee or a beneficiary. None.

41. All organizational documents, bylaws and operating agreements for any business entity (or nonprofit entity) in which you have an ownership interest, membership interest, managerial
authority, or control, or which you filed with a government agency on behalf of another

person. To be discussed. I have no contracts in my possession.

42. All written contracts in which you were a party in your personal capacity and which you signed at any time during the past 10 years, including bank service agreements, accounting services, employment contracts, promissory notes, mortgages, escrow, brokerage, personal

guarantees, suretyship agreements, and attorney-client agreements. I do not have any agreements or keep these types of documents. I have one for Rush that is in my possession.

43. Your written budget for personal and household expenses. I do not keep a budget unfortunately. Still have been in a state of delinquency

44. All Uniform Commercial Code filings, in any jurisdiction, which list you as a creditor or debtor. Will need clarification on this item.

45. Certificates of title in your name as to any motor vehicle, mobile home, aircraft, or - watercraft.

All of our assets have balances on them. I have a 2015 BMW that I can locate the title somewhere. That is about all of the titles in my name. 2 High Rd. in my name only. ARC Realty - and 2015 BMW that sister sent payments to purchase. Title not transferred due to these issues.

46. Documents evidencing your title in personal property acquired prior to your marriage to Alan Christopher Redmond and which is valued in excess of $1,000.00. I do not keep receipts for these items. Does this include purses, watches, jewelry and so forth?

47. All contracts between you and any of the following persons:

a. Rosewood Custom Cabinetry, LLC - No Idea of involvement.

b. Stone Arch Associates, LLC No Idea of involvement.

c. Willow Tree Remodeling, LLC No Idea of involvement.

d. Any creditor of each of the foregoing persons.No Idea of involvement.

I have no idea of those companies. They have never completed work for me. One of the companies is in MD from my quick research. No Idea of involvement.

On Wed, Jul 9, 2025 at 4:50 PM Shannon Kroemmelbein <shannonk2k@gmail.com> wrote:
Possibly this was not sent previously as this was in my draft box.

Please find my responses below in regards to the requested documents:

1. Your original birth certificate, including any amendments to the same. I have and can produce.

2. Your Social Security card. I have and can produce.

3. All your active driver's licenses in any jurisdiction. I have and can produce.

4. All your passports. I have and can produce.

5. All of your federal income tax returns, with all schedules, including Form W2s and 1099s, for the years 2014 through the most recent filing. I have reached out to the accountant and requested. I will follow back up with him to pick up on Monday.

6. Your most recent curriculum vitae or professional resume. I have and can produce.

7. All curriculum vitae and professional resume you have used within five years before

September 3, 2024. I have the most recent version of my resume. I can produce that. The other versions. I can search for the other dated versions. I worked at the same organization for 22 years, and therefore, did not update often.

8. All contracts between you and the Pottstown School District. This is public information. I can provide though.

9. All documents evidencing the policy of Pottstown School District regarding outside employment and which is in effect during your period of employment with Pottstown School
District. To be discussed. Need clarification

10. All contracts between you and the Bucks County Intermediate Unit. Again, this is public information. Do I need to produce this given it is public information - which he has access to.

11. Any document evidencing the policy of Bucks County Intermediate Unit regarding outside employment and which was in effect during your period of employment with the Bucks
County Intermediate Unit. To be discussed. Need clarification

12. Any document evidencing the date of your resignation from employment with the Bucks
County Intermediate Unit. I can see if I can log onto systems, however, I no longer have access to that email.

13. All invoices you received for any debt within one year before September 3, 2024. I often rip up my mail. I do not have these readily available.

14. All documents evidencing payments made by you and within one year before September
3, 2024. This could be extensive. I do not have these readily available.

15. All documents evidencing payments made on your behalf, by Alan Christopher Redmond, and within one year before September 3, 2024. To be discussed. Need clarification.

16. All documents evidencing payments made on your behalf, by any person other than Alan
Christopher Redmond, and within one year before September 3, 2024. There are none.

17. All documents evidencing transfer of your assets, valued at $1,000.00 or more, within five years before September 3, 2024. I have not transferred assets.

Page 2 of 6

18. All documents evidencing transfer of assets (1) regardless of the title of those assets, (2)
caused by, or requested by, you, (3) valued at $1,000.00 or more, and (4) within five years before September 3, 2024. None.

19. All monthly statements for all your accounts at Mid Penn Bank since 2014 to the present. This account has been closed. Should I go in to request the statements?

20. All monthly statements for all your accounts which you **cause, or permit, to be used by**
**Alan Christopher Redmond** and beginning five years before September 3, 2024 to the present. I do not have access to all these accounts. Many have been closed, many have been opened due to the FBI involvement.

21. All monthly statements for any account (1) **within your possession or control,** regardless
of how the account is titled, and (2) five years before September 3, 2024. The key word

here is possession, and therefore, we will discuss.

22. All powers of attorney and proxy instruments that you signed at any time within five years before September 3, 2024. None.

23. All leases that you have signed at any time within five years before September 3, 2024. None.

24. All deeds to all real property located anywhere in the world and recorded during the years
2014 through the present, and which are titled in your name or titled in the name of a business
entity (or nonprofit entity) in which you have an ownership interest, or membership interest, or
managerial authority or control, in whole or in part. ARC Reality - <u>1198 Reading Blvd. Wyomissing PA 19610</u>, 8 Morgan Dr. Sinking Spring, PA. Boy do I wish I had a house in the Virgin Islands, Florida, and Panama :)

2 High Rd. Wyomissing, PA 19610 - Shannon Kroemmelbein

25. All unrecorded deeds to real property located anywhere in the world and which are titled
in your name or titled in your name or titled in the name of a business entity (or nonprofit entity)
in which you have an ownership interest, or membership interest, or managerial authority or
control, in whole or in part. None.

26. All contracts between you and Alan Christopher Redmond. None.

7. All contracts between you and any relative, former spouse, or insider of Alan Christopher
Redmond. None.

28. All contracts between you and any creditor of Alan Christopher Redmond. Would this include previous tenants?

29. All contracts between you and any of your relatives, former spouses, or insiders. None.

30. All contracts between you and any current or former joint account holder, including Gaia
Gebbia. These documents would have been taken during the FBI raid in office.

31. All contracts between you and any of the following entities, or between you and any current or former owner, or current or former member, of the following entities:

a. Alan Redmond Charitable Foundation
b. ARC Realty, LLC
c. Bene Market, LLC

Page 3 of 6

d. Benefits Now, LLC
e. The Leads House, LLC
f. National Brokers of America, Inc.
g. NextGen Leads, LLC
h. Phase 1 Technology, LLC
i. Q H Quick Health
j. The Redmond Group, LLC

000081

k. Redmond Group Investments, LLC
l. Redmond Holdings, Inc.
m. Redmond Holdings 2, Inc.
n. Redmond Holdings, LLC
o. Redmond Investments, LLC
p. Redmond Marketing, LLC
q. Saoirse, LLC
r. Saoirse Enterprise, LLC
s. Saoirse Holdings, Inc.
t. Seguro Medico, LLC
u. U.S. Consolidation
v. U.S. Trifecta Limited Liability Company
These documents would have been taken and are under FBI possession.

32. All federal income tax returns, with all schedules, filed for all business entities in which
you currently or previously had a relationship of any kind, including (but not limited to) the
following:
a. ABN Health
b. ABN Network, LLC
c. Alan Redmond Charitable Foundation
d. ARC Realty, LLC
e. ARC Realty 1, LLC
f. Bene Market, LLC
g. Benefits Now, LLC
h. The Leads House, LLC
i. National Brokers of America, Inc.
I will contact the accountant to request records.

Page 4 of 6

j. NextGen Leads, LLC
k. Phase 1 Technology, LLC
l. Q H Quick Health
m. The Redmond Group, LLC
n. Redmond Group Investments, LLC
o. Redmond Holdings, Inc.
p. Redmond Holdings 2, Inc.
q. Redmond Holdings, LLC
r. Redmond Investments, LLC
s. Redmond Marketing, LLC
t. Saoirse, LLC
u. Saoirse, LLP
v. Saoirse Enterprise, LLC
w. Saoirse Holdings, Inc.
x. Seguro Medico, LLC
y. The Turner House of Reading, LLC
z. Two High Properties, LLC
aa. U.S. Consolidation

000082

33. All contracts between you and each and every one of the following persons:

a. Teresa Ammon
b. Heather Briscoe
c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz
I have no contracts in my possession.

34. All contracts in your possession, or control, where any of the following persons are a party (even if you are not a party):

Page 5 of 6

a. Teresa Ammon
b. Heather Briscoe
c. Lindsey K. Briscoe
d. Katherine Downing
e. Stephanie Miller
f. Gaia Gebbia
g. Seni Sok
h. Arthur W. Walsh, Jr.
i. Norman M. Valz
I have no contracts in my possession.

35. All contracts between you and NP, Inc. and with any owner or inside of NP, Inc.' I have no contracts in my possession.

36. All applications for a mortgage, with all supporting documentation relating to personal wealth and ownership of assets, that you submitted to NP, Inc. or any of its managers, servicers, affiliates, or subsidiaries.
I would need to dig up those documents as I do not have records.

37. All contracts between you and each of your creditors. None.

38. All applications for loans, with all supporting documentation relating to personal wealth
and ownership of assets, that you submitted to World Business Lenders, LLC and its affiliates or
subsidiaries, including WBL SPO I, LLC and WBL SPO II, LLC. I do not have those records available. I would need to reach out to the lenders to request documents.

39. All trust agreements, or trust indentures, in which you are a trustee or a beneficiary. None.

40. All trust agreements, or trust indentures, in which any of your relatives are a trustee or a
beneficiary. None.

41. All organizational documents, bylaws and operating agreements for any business entity
(or nonprofit entity) in which you have an ownership interest, membership interest, managerial
authority, or control, or which you filed with a government agency on behalf of another
person. To be discussed

42. All written contracts in which you were a party in your personal capacity and which you
signed at any time during the past 10 years, including bank service agreements, accounting
services, employment contracts, promissory notes, mortgages, escrow, brokerage, personal
guarantees, suretyship agreements, and attorney-client agreements. I do not have any
agreements or keep these types of documents. I have one for Rush that is in my
possession.

43. Your written budget for personal and household expenses. I do not keep a budget
unfortunately.

44. All Uniform Commercial Code filings, in any jurisdiction, which list you as a creditor or
debtor. Will need clarification on this item.

45. Certificates of title in your name as to any motor vehicle, mobile home, aircraft, or -
watercraft.
All of our assets have balances on them. I have a 2015 BMW that I can locate the title
somewhere. That is about all of the titles in my name.

Page 6 of 6

46. Documents evidencing your title in personal property acquired prior to your marriage to
Alan Christopher Redmond and which is valued in excess of $1,000.00. I do not keep
receipts for these items. Does this include purses, watches, jewelry and so forth?
47. All contracts between you and any of the following persons:
a. Rosewood Custom Cabinetry, LLC
b. Stone Arch Associates, LLC
c. Willow Tree Remodeling, LLC
d. Any creditor of each of the foregoing persons.
I have no idea of those companies. They have never completed work for me. One of the
companies is in MD from my quick research.

000084

# Exhibit D

# Exhibit D

 

**INSTRUMENT # 2022035110**

RECORDED DATE: 08/31/2022 03:09:39 PM



5106418-0020K

**Mary Kozak**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | |
|---|---|
| **Document Type:**  MORTGAGE | **Transaction #:**  5889320<br>**Document Page Count:**  26<br>**Operator Id:**  lmessersmith |
| **PARCEL ID(s): (See doc for additional parcel #'s)**<br>96439615633786 | **SUBMITTED BY:**<br>Wyomissing Abstract, LLC<br>1100 BERKSHIRE BLVDSUITE 100<br><br>WYOMISSING, PA 19610<br>(610) 372-8201 |

**\* PROPERTY DATA:**

**\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA**

**FEES / TAXES:**

| | |
|---|---|
| RECORDING FEES: MORTGAGE | $14.75 |
| AFFORDABLE HOUSING FEE | $11.50 |
| RECORDS IMPROVEMENT FUND | $5.00 |
| JUDICIAL FEE | $40.25 |
| WRIT TAX | $0.50 |
| PARCEL ID FEE | $10.00 |
| ADDITIONAL PAGE FEE | $44.00 |
| ADDITIONAL PAGE FEE (AFF) | $44.00 |
| **Total:** | $170.00 |

**INSTRUMENT #: 2022035110**
Recorded Date: 08/31/2022 03:09:39 PM

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Berks County, Pennsylvania.



**Mary Kozak**
**Recorder of Deeds**

**OFFICIAL RECORDING COVER PAGE**

Page 1 of 27

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.**

**When recorded, return to:**
**NP, Inc.**
**C/O DocProbe**
**1820 Swarthmore Avenue**
**P.O. Box 2132**
**Lakewood, NJ 08701**

**This document was prepared by:**
**NP, Inc.**
**4800 N Federal Hwy Bldg E, Ste 200**
**Boca Raton, FL 33431**
**561-886-0300**

**APN #:  96-4396-15-63-3786**
**2 High Rd, Wyomissing, PA 19610**

**Title Order No.: 15081-WA**
**Escrow No.: 15081-WA**                          **LOAN #: 92010132233**
——————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

| MIN: 1005914-4000091142-1 |
|---|

**MERS PHONE #: 1-888-679-6377**

### DEFINITIONS
Words used in multiple sections of this document are defined below and other words
are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of
words used in this document are also provided in Section 16.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 1 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

**(A) "Security Instrument"** means this document, which is dated **August 26, 2022,** together with all Riders to this document.

**(B) "Borrower"** is    **SHANNON KROEMMELBEIN.**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D) "Lender"** is    **NP, Inc..**

Lender is **A Florida Corporation,**                        organized and existing under the laws of **Florida.**                                                Lender's address is **4800 N Federal Hwy Bldg E, Ste 200, Boca Raton, FL 33431.**

**(E) "Note"** means the promissory note signed by Borrower and dated **August 26, 2022.**        The Note states that Borrower owes Lender  **ONE MILLION FIVE HUNDRED TWENTY THOUSAND AND NO/100*********************** ********************************** Dollars (U.S.  **$1,520,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **September 1, 2052.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                   Page 2 of 24                        PAEDEDL   0721
                                                                                                                    PAEDEDL (CLS)
                                                                                          08/26/2022 08:49 AM PST



Berks County~~Case 24-18093~~ Doc 56~~Document #~~ 2022035~~05/05/26~~ Page~~Entered~~ 1705/05/26 17:28:4~~05/31/20~~03:09:39 PM

Exhibit     Page 54 of 77

**LOAN #: 92010132233**

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.     Page 3 of 24     PAEDEDL 0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

**County**                                                      [Type of Recording Jurisdiction]
of **Berks**

[Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".
APN #: 96-4396-15-63-3786**

which currently has the address of    **2 High Rd, Wyomissing,**

[Street] [City]

Pennsylvania **19610**              ("Property Address"):

[Zip Code]

**PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)**
ICE Mortgage Technology, Inc.                **Page 4 of 24**                PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 5 of 24                           PAEDEDL  0721
                                                                                    PAEDEDL (CLS)
                                                                        08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

  **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

  If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

  Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

  **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 6 of 24                          PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



LOAN #: 92010132233

which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 7 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 8 of 24                PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.    Page 9 of 24    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 10 of 24                    PAEDEDL 0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.    Page 11 of 24    PAEDEDL 0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



Berks County Case 24-18093-pmm Document 1 2022 05/05/26 Entered 05/05/26 17:28:43 08/31/2022 03:09:39 PM
Exhibit     Page 63 of 77

**LOAN #: 92010132233**

Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)

ICE Mortgage Technology, Inc.                   Page 12 of 24                   PAEDEDL   0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 13 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



Berks County Case 24-18093-mmm Document 2-2 05/05/26 Entered 05/05/26 17:28:46 8/31/2022 03:09:39 PM
Exhibit    Page 65 of 77

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 14 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



LOAN #: 92010132233

settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.              Page 15 of 24                    PAEDEDL  0721
                                                                                      PAEDEDL (CLS)
                                                                           08/26/2022 08:49 AM PST



Berks County Case 24-18093-mmm     Document 2022-05/05/26   Entered 05/05/26 17:28:46 31/2022 03:09:39 PM
Exhibit     Page 67 of 77

**LOAN #: 92010132233**

extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 16 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.          Page 17 of 24                    PAEDEDL  0721
                                                                       PAEDEDL (CLS)
                                                           08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                  Page 18 of 24                  PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 19 of 24                    PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



LOAN #: 92010132233

be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 20 of 24                PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)

ICE Mortgage Technology, Inc.                    Page 21 of 24                    PAEDEDL   0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST



**LOAN #: 92010132233**

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



8/26/22                                                (Seal)

**SHANNON KROEMMELBEIN**                                    DATE

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)**
ICE Mortgage Technology, Inc.                Page 22 of 24                PAEDEDL  0721
PAEDEDL (CLS)
08/26/2022 08:49 AM PST

**LOAN #: 92010132233**

State of _____

County of _____

This record was acknowledged before me on this, the 26 day of August 2022 by SHANNON KROEMMELBEIN.

_____
**Signature of Notarial Officer**

**(STAMP)**

> Commonwealth of Pennsylvania - Notary Seal
> KAREN S MILLS - Notary Public
> Berks County
> My Commission Expires Mar 24, 2023
> Commission Number 1113198

**Title of Officer**

_____

**My commission expires**

_____

**Lender: NP, Inc.**
**NMLS ID: 75597**
**Broker: Primary Residential Mortgage, Inc.**
**NMLS ID: 3094**
**Loan Originator: Timothy Patrick  Horn**
**NMLS ID: 142824**



**LOAN #: 92010132233**

Certificate of Residence    **Karen S. Mills**
I, _____ **Settlement Officer** _____ , do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___26th___ day of ___August___ 2022

_____
                                                    Agent of Mortgagee

**Karen S. Mills**
**Settlement Officer**

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.               Page 24 of 24                    PAEDEDL   0721
                                                                            PAEDEDL (CLS)
                                                                    08/26/2022 08:49 AM PST



Berks County Case 24-18093 pmm Document 1 2023-05/05/26 Entered 05/05/26 17:28:43/31/2023 03:09:39 PM
Exhibit   Page 76 of 77

**EXHIBIT A**

PREMISES A

ALL THAT CERTAIN tract or piece of land together with the two and one-half story brick dwelling house, garage, and other improvements thereon erected, lying on the Easterly side of High Road, 60 feet wide, North of Lauers Lane, situate in the Borough of Wyomissing, County of Berks, and Commonwealth of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point in the Eastern building line of High Road, a corner of property now or late belonging to Wyomissing Foundation, Inc.; thence leaving said High Road and extending along said property now or late belonging to Wyomissing Foundation, Inc. North seventy-eight degrees twenty-nine minutes East (N. 78° 29' E.), a distance of two hundred ninety-nine and sixty-one one-hundredths feet (299.61') to a point; thence extending along property now or late of the Borough of Wyomissing South eleven degrees thirty minutes East (S. 11° 30' E.), a distance of three hundred fifty-seven and sixty-eight one-hundredths feet (357.68') to a point; thence extending along property now or late belonging to Marriott D. Sturgis and Lottie B. Sturgis, his wife, South eighty-three degrees five minutes West (S. 83° 05' W.), a distance of three hundred thirty-two and sixty-five one-hundredths feet (332.65') to a point in the curve of the aforesaid Eastern building line of High Road. Thence extending along said building line of High Road along the arc of a curve deflecting to the left, having a radius of eight hundred fifty feet (850'), a central angle of fifteen degrees forty-five minutes fifty-four seconds (15° 45' 54"), a distance along the arc of two hundred thirty-three and eighty-eight one-hundredths feet (233.88'), said arc having a chord bearing of North three degrees thirty-seven minutes three seconds West (N. 03° 37' 03" W.), a distance along the chord of two hundred thirty-three and fourteen one-hundredths feet (233.14') to a point of tangent in said building line; thence continuing along said building line of High Road North eleven degrees thirty minutes West (N. 11° 30' W.), a distance of one hundred and three one-hundredths feet (100.03') to the place of beginning.

CONTAINING in area two and four hundred thirty-three one-thousandths (2.433) acres.

Berks County Case 24-18093 pmm    Document # 2-2 05/05/26 Entered 05/05/26 17:28:46 5/31/2025 03:09:39 PM

**Legal Description- Page 2**

PREMISES B

ALL THAT CERTAIN irregular shaped lot or piece of ground representing that area lying between the former right-of-way line of High Road and the new right-of-way line of High Road, adjacent to property belonging to Joseph F. Welch on the East side of High Road, as shown on High Road - Relocation and Subdivision, dated May 25, 1984, prepared by McCloud, Scatchard, Derck and Edson, Landscape Architects, for Wyomissing Foundation, Inc., recorded in Berks County records in Plan Book No. 134 page 35, situate in the Borough of Wyomissing, County of Berks, and Commonwealth of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point in the Eastern right-of-way line or building line of High Road at P.C.C. Station 17 plus 03.14, a corner of property belonging to Marriott D. Sturgis and Lottie B., his wife; thence extending in a Northerly direction along the new right-of-way line of said High Road as shown on said Plan the three following courses and distances, viz: (1) along the arc of a curve deflecting to the left, having a radius of 363.23 feet, a central angle of 20 degrees 24 minutes 50 seconds, a distance along the arc of 129.42 feet, said arc having a chord bearing of North 14 degrees 29 minutes 02 seconds West, a distance along the chord of 128.73 feet to a point of tangent; (2) North 24 degrees 41 minutes 27 seconds West, a distance of 55.70 feet to a point of curve; and (3) along the arc of a curve deflecting to the right, having a radius of 1817.57 feet, a central angle of 04 degrees 38 minutes 57 seconds, a distance along the arc of 147.48 feet, said arc having a chord bearing of North 22 degrees 21 minutes 58 seconds West, a distance along the chord of 147.44 feet to a point in line of property belonging to the Borough of Wyomissing. Thence leaving said right-of-way line of High Road and extending along said property belonging to the Borough of Wyomissing North 69 degrees 56 minutes 30 seconds East, a distance of 30.00 feet to a point; thence extending in a Southerly direction along the former right-of-way line of High Road, being along property belonging to Joseph F. Welch and Marcia P., his wife, the two following courses and distances, viz: (1) South 20 degrees 02 minutes 29 seconds East, a distance of 100.04 feet to a point of curve, and (2) along the arc of a curve deflecting to the right, having a radius of 850.00 feet, a central angle of 15 degrees 45 minutes 53 seconds, a distance along the arc of 233.87 feet, said arc having a chord bearing of South 12 degrees 09 minutes 33 seconds East, a distance of 233.14 feet to the place of beginning.

CONTAINING in area 0.1308 acres.

BEING THE SAME PREMISES WHICH Joseph F. Welch and Marcia P. Welch, his wife, by Deed dated 07/27/2000 and recorded 07/28/2000 in the Office for the Recorder of Deeds in and for the County of Berks, and Commonwealth of Pennsylvania in Record Book 3225, Page 51, granted and conveyed unto Patrick J. Shields and Margaret M. Shields, husband and wife.